**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| LISA BARBOUNIS | : | CIVIL ACTION |
| Plaintiff, | : | NO. |
| -vs- | : | |
| | : | |
| THE MIDDLE EAST FORUM, | : | PLAINTIFF REQUESTS |
| DANIEL PIPES (*individually*), | : | TRIAL BY JURY |
| GREG ROMAN (*individually*), and | : | |
| MATTHEW BENNETT (*individually*), | : | |
| Defendants. | : | |

Plaintiff, Lisa Barbounis, by and through undersigned counsel hereby files this Civil Action Complaint against Defendants, Middle East Forum, Daniel Pipes (individually), Greg Roman (individually), and Matthew Bennett (individually) (collectively "Defendants") and upon information and belief avers the following:

## I. **PARTIES**

1. Plaintiff, Lisa Barbounis ("Plaintiff" or "Ms. Barbounis") is an adult individual who resides in the Commonwealth of Pennsylvania.

2. Defendant, Middle East Forum ("MEF") is a business organization existing under the laws of the Commonwealth of Pennsylvania with an address for the purposes of service 1650 Market Street, Suite 3600, Philadelphia, PA 19103.

3. Defendant, Daniel Pipes is an adult individual who resides in the Commonwealth of Pennsylvania with a business address for the purpose of service at 1650 Market Street, Suite 3600, Philadelphia, PA 19103.

4. Defendant, Greg Roman is an adult individual who resides in the Commonwealth of Pennsylvania with a business address for the purpose of service at 1650 Market Street, Suite 3600, Philadelphia, PA 19103.

5.      Defendant, Matthew Bennett is an adult individual who resides in the Commonwealth of Pennsylvania with a business address for the purpose of service at 1650 Market Street, Suite 3600, Philadelphia, PA 19103.

6.      At all times relevant to this Civil Action, Defendants, Daniel Pipes, Greg Roman, and Matthew Bennett were employees of Defendant, The Middle East Forum, and held supervisory authority over Plaintiff, Lisa Barbounis during Plaintiff's employment for Defendants.

7.      Defendant, Daniel Pipes is the President of The Middle East Forum and held supervisor authority over Plaintiff, Lisa Barbounis.

8.      Defendant, Greg Roman is the Director of The Middle East Forum and held supervisor authority over Plaintiff, Lisa Barbounis.

9.      Defendant, Matthew Bennett holds the position of Director of Development for The Middle East Forum and held supervisory authority of Plaintiff, Lisa Barbounis.

## II.     NATURE OF THE CASE

10.      Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 20003-17 (amended in 1972, 1978, by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"); 18 U.S.C.A. §§ 1591, Title 43 PS Labor § 955, the Pennsylvania Human Relations Act, as amended, 43 P.S. §§ 951, *et. seq.* ("PHRC"), under the laws of the Commonwealth of Pennsylvania; and under the Philadelphia Fair Practices Ordinance, § 9-1100 *et. seq.* ("PFPO") and seeks damages to redress injuries Plaintiff suffered as a result of Defendants' discrimination, harassment, retaliation and the hostile work environment which ultimately led to Plaintiff's unlawful termination from her employment for Defendants. Accordingly, Plaintiff brings this Civil Action to redress injuries Plaintiff suffered as a direct

result of violations of federal laws, the laws of the Commonwealth of Pennsylvania and the laws of the City of Philadelphia and seeks damages to redress the injuries Plaintiff has suffered as a result of being discriminated against on the basis of her sex and gender, sexually harassed, sexually assaulted, forced to endure a hostile work environment, and retaliated against by her employer for reporting such discrimination and harassment.

### III.  JURISDICTION AND VENUE

11.     This action involves a Question of Federal Law under Title VII of the Civil Rights Act of 1964 and under federal sex trafficking laws pursuant to 18 U.S.C.A. § 1591.   The honorable Court also has supplemental jurisdiction over the Commonwealth Law and Municipal Law Causes of Action.

12.     Venue is proper in the Eastern District of Pennsylvania as Plaintiff was employed by Defendants and worked in the City of Philadelphia in the Commonwealth of Pennsylvania where the discrimination, harassment and hostile work environment complained of occurred.

13.     On or around June 20, 2019, Plaintiff, Lisa Barbounis filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendants as set forth herein.   Plaintiff's Charge of Discrimination was dual filed with the Pennsylvania Human Relations Commission and the Philadelphia Commission on Human Relations.

14.     On or about July 31, 2019, the EEOC issued and sent a Dismissal and Notice of Rights to Plaintiff which required that Plaintiff file a civil action within ninety (90) days of the Dismissal and Notice of Rights.

15.     This action is hereby commenced within ninety (90) days of receipt of the Dismissal and Notice of Rights which is dated and was sent July 31, 2019.

## IV. <u>MATERIAL FACTS</u>

16.     Plaintiff, Lisa Barbounis began her employment for Defendant, The Middle East Forum ("MEF") sometime around October 16, 2017.

17.     Plaintiff was hired as an Executive Liaison and began her employment at MEF working with supervisors, Defendant, Daniel Pipes, Defendant, Greg Roman, and Defendant, Matthew Bennett.

18.     Defendant, Greg Roman is very high up in the organization of the Middle East Forum and currently holds the position of Director of the Middle East Forum.   At all times relevant to this civil action Defendant, Greg Roman held the position of Director of the Middle East Forum.

19.     As the Director of the Middle East Form, Defendant, Greg Roman was the penultimate person in charge of the Middle East Forum.   Accordingly, Defendant, Greg Roman along with Defendant, Daniel Pipes, ran and managed the Middle East Forum.

20.     Defendant, Greg Roman was and continues to be so high up in the organization that the only person to whom Defendant, Greg Roman reports is Defendant, Daniel Pipes.

21.     Defendant, Greg Roman is considered by Defendant, Daniel Pipes to be crucial to the operations and success of the Middle East Forum.

22.     Defendant, Greg Roman has the ability to create policy for the Middle East Forum.

23.     Defendant, Greg Roman must be considered a proxy and all discrimination and harassment to which Plaintiff, Lisa Barbounis was subjected including the sexual assault, sexual misconduct, sexual harassment, gender and sex discrimination and retaliation by Defendant,

4

Greg Roman must be held to a proxy-liability standard as the harasser-supervisor is a proxy for the Middle East Forum.

24.     Defendant, Daniel Pipes is currently the President of the Middle East Forum. There are no individuals employed by the Middle East Forum who hold positions above Defendant, Daniel Pipes.

25.     Defendant, Greg Roman and Defendant, Daniel Pipes are responsible for developing, enacting, and enforcing all policies, procedures, protocols employed to operate the Middle East Forum.

26.     At all times relevant to this Civil Action Defendant, Daniel Pipes was the President of The Middle East Forum.

27.     Sometime around the weekend of March 1 through March 3, 2018, Plaintiff, Lisa Barbounis and coworker, Patricia McNulty ("Ms. McNulty") attended a conference in Washington D.C.

28.     The conference in Washington D.C., which Ms. Barbourins and Ms. McNulty attended was called the American Israel Public Affairs Committee ("AIPAC").

29.     Other employees of the Middle East Forum in attendance at the AIPAC Conference included Defendant, Greg Roman, Defendant, Mathew Bennett, and coworker, Marnie Meyer.

30.     Defendant, Greg Roman and Defendant, Mathew Bennett booked and shared an Airbnb in Washington D.C. for the AIPAC Conference.

31.     Plaintiff, Lisa Barbounis booked a hotel room for the AIPAC Conference.

32.     The other female employees of the MEF who attended the AIPAC Conference also booked hotel rooms.   This includes Patricia McNulty and Marnie Meyer.

33.     After dinner, Defendant, Greg Roman invited Grantees from The Pinsker Center and a writing fellow named Raheem Kassam back to the Airbnb which was shared by Defendant, Greg Roman and Defendant, Matthew Bennett.

34.     Defendant, Greg Roman also asked Plaintiff, Lisa Barbounis, Patricia McNulty, and Marnie Meyer to come back to the Airbnb that he had booked.

35.     That evening, while at the Airbnb, Defendant, Greg Roman positioned himself on the couch between Plaintiff, Lisa Barbounis and coworker, Patricia McNulty.

36.     Defendant, Greg Roman put his arms around Plaintiff, Lisa Barbounis and coworker, Patricia McNulty.

37.     Defendant, Greg Roman grabbed coworker, Patricia McNulty by her upper thigh and violently yanked coworker, Patricia McNulty onto his lap.   Defendant, Greg Roman put his hand on Patricia McNulty's upper thigh and rear-end area in order to lift Patricia McNulty up and place Patricia McNulty on Defendant, Greg Roman's lap.

38.     Defendant, Greg Roman then began whispering inappropriate sexual advances in coworker, Patricia McNulty's ear.

39.     Defendant, Greg Roman attempted to yank Plaintiff, Lisa Barbounis toward him as well.

40.     Plaintiff, Lisa Barbounis was further away on the couch and therefore in a better position to resist Defendant, Greg Roman's attempt to pull Plaintiff, Lisa Barbounis toward Defendant, Greg Roman.

41.     Alternatively, Defendant, Greg Roman picked coworker, Patricia McNulty up by her upper thigh and rear end area and aggressively placed Patricia McNulty on his lap.

42.     Defendant, Greg Roman is a large man and used his size and height in his violent and aggressive interactions with female employees who Defendant, Greg Roman supervised.

43.     Defendant, Greg Roman used his size to intimidate and sometimes overpower female employees who Defendant, Greg Roman was in charge of as Director of the MEF.

44.     Plaintiff, Lisa Barbounis was present when Defendant, Greg Roman picked coworker, Patricia McNulty up and placed her on his lap.

45.     Plaintiff, Lisa Barbounis witnessed firsthand Defendant, Greg Roman's violent and aggressive sexual assault of coworker, Patricia McNulty.

46.     Coworker, Patricia McNulty tried to pull away and resisted Defendant, Greg Roman.

47.     Defendant, Greg Roman used his size, height and strength to overpower a female employee who worked for the MEF named Patricia McNulty.

48.     Defendant, Greg Roman used force and did not allow Patricia McNulty to get up or escape his grip.

49.     Defendant, Greg Roman then began whispering in Patricia McNulty's ear.

50.     Patricia McNulty resisted, and made it clear that she was rejecting Defendant, Greg Roman's inappropriate sexual misconduct and sexual advances.

51.     Thereafter, Plaintiff, Lisa Barbounis witnesses Defendant, Greg Roman get up from the couch and leave the room.

52.     Defendant, Greg Roman sexually assaulted Plaintiff's coworker, Patricia McNulty at the AIPAC conference which occurred in Washington D.C., when Defendant, Greg Roman violently yanked Patricia McNulty across the couch, onto his lap, and whispered inappropriate, unwelcome sexual advances in Ms. McNulty's ear.

53.     Defendant, Greg Roman put his hands on coworker, Patricia McNulty's upper thigh and rear-end area and used force to overpower Patricia McNulty.

54.     During, Plaintiff's employment for MEF, Defendant, Greg Roman subjected Plaintiff, Lisa Barbounis to severe and pervasive discrimination and harassment based upon Plaintiff's sex and gender.

55.     Defendant, Greg Roman asked Plaintiff, Lisa Barbounis to visit his home to work at night time.

56.     Defendant, Greg Roman called and texted Plaintiff, Lisa Barbounis late at night.

57.     Defendant, Greg Roman made sexually suggestive, unwelcome comments to Plaintiff, Lisa Barbounis.

58.     Working with Defendant, Greg Roman meant that Plaintiff, Lis Barbounis would have to contend with Defendant, Greg Roman's inappropriate sexually suggestive conduct and comments.

59.     Employees who have worked with Defendant, Greg Roman who also have stated that working with Defendant, Greg Roman meant having to contend with Defendant, Greg Roman's inappropriate conduct and comments including sexually inappropriate conduct and comments include but is in no way limited to: (1) Plaintiff, Lisa Barbounis, (2) Patricia McNulty, (3) Marnie Meyer, (4) Tiffany Lee, (5) Caitriona Brady, (6) Delaney Yonchek, (7) Leah Merville, (8) Alana Goodman, (9) Eman Patel, (10) Samantha Mandalas, (11) Laura Frank, (12) Lara (last name unknown), (13) Rosie (last name unknown), and (14) Gabrielle Bloom.

60.     At all times relevant to this civil action, Defendant, Greg Roman was Plaintiff, Lisa Barbounis's direct supervisor and used his supervisory and proxy authority to subject Plaintiff to unwelcome sex and gender discrimination.

61.     At all times relevant to this civil action, Defendant, Greg Roman was Plaintiff, Lisa Barbounis's direct supervisor and used his supervisory and proxy authority to subject Plaintiff to unwelcome sexual harassment.

62.     At all times relevant to this civil action, Defendant, Greg Roman was Plaintiff, Lisa Barbounis's direct supervisor and used his supervisory and proxy authority to subject Plaintiff to unwelcome sexual misconduct including unwelcome sexual contact of a physical nature.

63.     At all times relevant to this civil action, Defendant, Greg Roman was Plaintiff, Lisa Barbounis's direct supervisor and used his supervisory and proxy authority to subject Plaintiff to unwelcome sexual advances including quid pro quo sexual suggestions which Plaintiff, Lisa Barbounis rejected.

64.     Plaintiff, Lisa Barbounis's rejection of Defendant, Greg Roman only made Plaintiff's work environment more hostile as Defendant, Greg Roman reacted to Plaintiff's rejections by using his proxy authority to retaliate against Plaintiff, Lisa Barbounis with tangible employment actions.

65.     Defendant, Greg Roman threatened Plaintiff, Lisa Barbounis's job with the MEF.

66.     The sexual harassment to which Plaintiff, Lisa Barbounis was subjected during her employment for MEF by Defendant, Greg Roman created a hostile work environment for Plaintiff, Lisa Barbounis.

67.     Defendant, Greg Roman subjected almost every female employee who he supervised at MEF to unwelcome sexual harassment and discrimination and harassment in the workplace due to sex and gender.

68.     Defendant, Greg Roman specifically used his position as a proxy for MEF to recruit very attractive female employees and prey upon his female staff by subjecting the female staff to unwelcome sexual advances.

69.     Before Plaintiff, Lisa Barbounis began her employment at MEF, there were two female employees of MEF named Laura Frank ("Laura") and Lara (last name unknown at this time) ("Lara).

70.     Laura and Lara were employees of MEF.   Their supervisors included Defendant, Daniel Pipes and Defendant, Greg Roman.

71.     Defendant, Greg Roman was the direct supervisor of Laura Frank and Lara (last name unknown).

72.     Laura and Lara were subjected to severe and pervasive discrimination and harassment due to their sex and gender.

73.     Laura and Lara were subjected to retaliation when they opposed and/or reported the severe and pervasive discrimination to which Laura and Lara were subjected during their employment at MEF.

74.     Laura and Lara discussed and considered initiating legal action to vindicate their rights due to the severe and pervasive discrimination and harassment in the workplace to which they were subjected during their employment at MEF.

75.     Laura and Lara used instant Google messaging to discuss the unwelcome sexual harassment to which Defendant, Greg Roman subjected Laura and Lara during their employment at MEF.

76.     Defendant, Greg Roman broke into Laura and Lara's computers after work one evening and discovered, by reading their private Google instant messaging, that Laura and Lara

were currently discussing their legal options due to Defendant, Greg Roman's discrimination and harassment in the workplace due to sex and gender.

77.     Defendant, Greg Roman discussed the instant Google messages between Laura and Lara with Defendant, Daniel Pipes.

78.     Defendant, Greg Roman and Defendant, Daniel Pipes decided to terminate both Laura and Lara's employment.

79.     The termination of Laura Frank and Lara (last name unknown) created empty positions that MEF had to staff.

80.     Soon after Laura and Lara's termination, Defendant, MEF hired Plaintiff, Lisa Barbounis.

81.     Defendant, Daniel Pipes and Defendant, Greg Roman refused to investigate Laura and Lara's feelings that they were subjected to unlawful conduct – sexual harassment in their employment for MEF.

82.     Defendants refused to initiate remedial measures as a result of Laura and Lara's instant Google messaging.   MEF did nothing to discover and remedy the severe and pervasive discrimination and harassment in the workplace.

83.     Defendant, Daniel Pipes and Defendant, Greg Roman have initiated, implemented and enforced policies which operate to frustrate the congressional intent of federal, state and city anti-discrimination laws enacted to protect female employees from discrimination and harassment in the workplace.

84.     Defendant, Daniel Pipes' objectives, policies and procedures have always been to protect Defendant, Greg Roman, despite ongoing continued allegations and reports of sexual harassment involving Defendant, Greg Roman.

85.     Defendant, Daniel Pipes has ignored, disregarded, and refused to consider protecting the female employees who worked at the MEF.

86.     Accordingly Defendant, Daniel Pipes has expressly communicated to Defendant, Greg Roman, Defendant, MEF and Defendant, Daniel Pipe's policy and practice to allow, sanction, permit and condone Defendant, Greg Roman's discrimination and harassment of the female employees who work at MEF.

87.     Defendant, Greg Roman's unlawful conduct and comments as Director of the MEF has occurred with express authorization from Defendant, MEF and Defendant, Daniel Pipes.

88.     This authorization has resulted in female employees of MEF being subjected to severe and pervasive sexual harassment, sexual assaults, sexual misconduct, quid pro quo sexual harassment, and discrimination and harassment based on sex and gender.

89.     Laura Frank and Lara (last name unknown) were unlawfully terminated in retaliation for discussing and considering reporting Defendant, Greg Roman's discrimination and harassment in the workplace.

90.     Laura and Lara were simultaneously terminated from their employment with MEF due to their sex and gender and in retaliation for opposing and reporting discrimination and harassment in the workplace.

91.     Plaintiff, Lisa Barbounis began her employment soon after Laura and Lara were unlawfully terminated from their employment by Defendant, Greg Roman, Defendant, Daniel Pipes and Defendant, MEF.

92.     Defendant, Daniel Pipes has a history of discriminatory conduct toward women based upon their sex and gender.

12

93.     Defendant, Greg Roman also has a history of discrimination and harassment of women based on their sex and gender.

94.     Female employees who worked with Defendant, Daniel Pipes have been subjected to ridicule, abuse, discrimination, and harassment due to their sex and gender.

95.     Rosie (last name unknown) ("Rosie") was a female employee who worked at The Middle East Forum.

96.     Rosie worked at The Middle East Forum about one year before Plaintiff, Lisa Barbounis.

97.     Defendant, Greg Roman asked Rosie to transition to a position as an assistant to Greg Roman.

98.     Defendant, Greg Roman unlawfully targeted and terminated Rosie's employment due to Rosie's membership in a protected class with the authorization, consent, knowledge, and permission of Defendant, Daniel Pipes.

99.     Rosie abandoned her employment for MEF to avoid working closely with Defendant, Greg Roman.

100.    Prior to leaving her employment for MEF, Rosie said, "I will be dead before working for Greg Roman."

101.    Rosie refused to work with Defendant, Greg Roman due to the severe and pervasive discrimination and harassment of female employees and the hostile work environment which Defendant, Greg Roman created for his female staff.

102.    Plaintiff, Lisa Barbounis is not the only female employee who Defendant, Greg Roman supervised who has alleged that Defendant, Greg Roman subjected her to sexual harassment and sexual misconduct and sexually inappropriate behavior.

13

103.    Defendant, Greg Roman has subjected multiple female employees to severe and pervasive sexual harassment.

104.    Many of these female employees who have worked for Defendant, Greg Roman have filed Charges of Discrimination at the EEOC to report Defendant, Greg Roman's sexual harassment, misconduct, and inappropriate sexual behavior.

105.    Female employees who have reported Defendant, Greg Roman's sexual harassment, sexual misconduct, sexually inappropriate behavior including quid pro quo sexual harassment, stalking like behavior, and in some cases sexual assaults, include (1) Plaintiff, Lisa Barbounis, (2) Patricia McNulty, (3) Tiffany Lee, (4) Caitriona Brady, and (5) Delaney Yonchek.

106.    Tiffany Lee is yet another employee who Defendant, Greg Roman supervised and subjected to discrimination, harassment and sexual harassment due to sex and gender.

107.    Sometime around May 2016, Defendant, Greg Roman invited Tiffany Lee to visit his home in Margate for the weekend.

108.    Defendant, Greg Roman made sure to inform Tiffany Lee that Defendant, Greg Roman's wife and children would not be home during Tiffany Lee's visit to Defendant, Greg Roman's home.

109.    Defendant, Greg Roman subjected Tiffany Lee to inappropriate sexual advances and called and texted Tiffany Lee at inappropriate times at night and on the weekends.

110.    Tiffany Lee reported Defendant, Greg Roman's discrimination and harassment and sexual harassment.

111.    Defendant, Daniel Pipes refused to investigate.

112.    Defendant, Daniel Pipes refused to initiate prompt remedial measures.

14

113.   Tiffany Lee was subjected to a campaign of retaliation by Defendant, Greg Roman which culminated in Tiffany Lee's termination which occurred a short time after Tiffany Lee reported Defendant, Greg Roman's sexual harassment.

114.   Defendant Greg Roman gave a former intern of the Middle East Forum (named above as Intern Number 1 – first and last name unknown) $1,500.00 in cash when interns do not receive compensation from the MEF.

115.   The intern voluntarily left the MEF and has stated that she left to avoid what she characterized as future, inappropriate sexual advances visited upon her by Defendant, Greg Roman.   She said she could see it coming.

116.   Defendant, Greg Roman also called and texted Plaintiff, Lisa Barbounis at inappropriate times.

117.   Defendant, Greg Roman also invited Plaintiff, Lisa Barbounis to him home to work, however, Plaintiff, Lisa Barbounis never visited Defendant, Greg Roman's home and made sure Defendant, Greg Roman understood she never would visit his home.

118.   Plaintiff, Lisa Barbounis and coworker, Patricia McNulty's description of Defendant, Greg Roman's sexual harassment mirrors accounts of several other female employees who Defendant, Greg Roman supervised and sexually harassed.

119.   Defendant, Greg Roman's method of operation is that of a sexual predator.

120.   Defendant, Greg Roman uses his position and proxy-authority as a supervisor to recruit very attractive female employees to staff the MEF.

121.   Defendant, Greg Roman then uses his proxy authority to pressure female employees to have sex with him.

15

122.     Defendant, Greg Roman begins to call and text the female staff at night and on weekends.

123.     Defendant, Greg Roman invites female staff to visit his home or hotel room to get work done.   Sometimes Defendant, Greg Roman will say that there is some work related documents at his home or hotel room and suggest that the female employee stop by.

124.     Defendant, Greg Roman uses his size and height to make female employees feel intimidated, threatened and uncomfortable.

125.     In almost every case, Defendant, Greg Roman offers female employees the hope of help, support, and assistance from as a proxy and supervisor of MEF. Then Defendant, Greg Roman attempts to leverage the female employees' hope of help, support, and assistance into sex or sexual acts.

126.     Defendant, Greg Roman's sexual harassment of female employees includes offering to work with female staff at his personal home or hotel room.

127.     Defendant, Greg Roman uses work assignments to leverage and lure female employees to his home and then propositions the female employees for sex and sexual favors.

128.     Defendant, Greg Roman also sexually harasses female staff by luring female employees to his hotel rooms.   Once at his hotel room, Defendant, Greg Roman attempts to trade work for sex.

129.     Defendant, Greg Roman's sexual harassment and quid pro quo sexual misconduct is not limited to the MEF's employees.   Defendant, Greg Roman also uses his position as Director of the MEF to proposition female individuals who Defendant, Greg Roman works with in other organizations.

130.    For example, as Director of the MEF, Defendant, Greg Roman often works with reporters from the Washington Post and Washington Examiner.

131.    The Middle East Forum is a political organization.   Accordingly, The Middle East Forum focuses tremendous resources in Washington D.C.

132.    The MEF has to work closely with the press in order to promote and communicate MEF objectives, endeavors, and messaging.

133.    Defendant, Greg Roman used his position and power as Director of the Middle East Forum to develop relationships with news reporters.

134.    Defendant, Greg Roman has attempted to leverage information Defendant, Greg Roman knows as Director of the MEF for sex with reporters; or sex for stories.

135.    Defendant, Greg Roman has sexually harassed and has pressured female reporters into trading sex in a quid pro quo arrangement for news-stories.

136.    Defendant, Greg Roman used his position as a Director of the Middle East Forum to develop relationships with prominent news outlets like the Washington Post and the Washington Examiner.

137.    Defendant, Greg Roman specifically targeted and preyed upon the women who he supervised as Director of the MEF, however, Defendant, Greg Roman also used his position and proxy authority to leverage sex from contacts in the press.

138.    The Middle East Forum and Defendant, Greg Roman works directly with lobbyists, politicians, news outlets, reporters, pundits, and many other organizations and individuals in Washington D.C.

139.    The Middle East Forum spends time, resources, and energy working with press agents, reporters, and television personalities.

140.    Defendant, Greg Roman has used his connections with reporters in his attempts to trade sex for stories.

141.    Defendant, Greg Roman has pressured female reporters to trade sex for stories in a quid pro quo arrangement.

142.    Defendant, Greg Roman was in Washington D.C., and encountered a female member of the press at a restaurant and bar.   This was a female member of the press who Defendant Greg Roman met in his position as Director of the Middle East Forum.

143.    Defendant, Greg Roman used his position as Director of the Middle East Forum to generate a relationship with this female member of the press and they had worked with one another several times in the past.

144.    Defendant, Greg Roman encountered this female member of the press and targeted and preyed upon this female member of the press and propositioned her in an attempt to trade Middle East Forum stories for sex.

145.    Defendant, Greg Roman lured the female employee outside of the restaurant and bar and exposed his penis in front of the female member of the press.

146.    Defendant, Greg Roman then ordered the female member of the press to come to his hotel room within the next hour.

147.    Defendant, Greg Roman pressured the female member of the press to engage in sexual acts with Defendant, Greg Roman in exchange for a good story.

148.    When the female member of the press made it clear that she had no interest in trading sex for stories, Defendant, Greg Roman became abusive and aggressive and began to threaten the female member of the press.

149.    Defendant, Greg Roman yelled across the bar and restaurant telling this female member of the press that she had one half hour to visit his hotel room or he would "give the story to the Washington Post."

150.    The Washington Post was a primary competitor organization of the organization with whom the female member of the press worked.

151.    Defendant Greg Roman's threat to give the story to the Washington Post was intended to coerce the female member of the press to change her mind and agree to the quid pro quo sexual arrangement; selling sex for stories from the Director of the MEF.

152.    This is just another example of Defendant, Greg Roman's sexual harassment, sexual misconduct, and sexually inappropriate behavior to which Defendant, Greg Roman subjected female individuals which whom Defendant, Greg Roman worked.

153.    Defendant, Greg Roman has also subjected Plaintiff, Lisa Barbounis's coworker, Marnie Meyer to severe and pervasive discrimination and harassment in the workplace.

154.    Marnie Meyer is the Director of Human Resources for Defendant, MEF.

155.    Defendant, Greg Roman has sexually harassed Marnie Meyer and has attempted to lure Marnie Meyer across national borders with the intention of uses fraud, physical force and/or coercion in order to engage Marnie Meyer in sexual acts.

156.    Defendant, Greg Roman expressly conditioned Marnie Meyer with a company trip to Israel, stating that Marnie Meyer could only accompany Defendant, Greg Roman if she agreed to share an Airbnb.

157.    Defendant, Greg Roman refused to allow Marnie Meyer to travel across national borders to Israel unless Marnie Meyer shared the same living space with Defendant, Greg Roman.

19

158.    Defendant, Marnie Meyer refused to share an Airbnb with Defendant, Greg
Roman due to the obvious implication in the inappropriate condition.

159.    Defendant, Greg Roman had already subjected Marnie Meyer to severe and
pervasive discrimination and harassment in the workplace based upon sex and gender.

160.    Marnie Meyer was also subjected to discrimination and harassment from
Defendant Greg Roman.

161.    Marnie Meyer was harassed and sexually harassed by Defendant, Greg Roman to
such an extent that Marnie Meyer had to notify Defendant, Greg Roman, "I am never going to
sleep with you."

162.    Accordingly, Marnie Meyer refused to travel across national borders with
Defendant, Greg Roman to Israel unless Marnie Meyer was allowed to book her own hotel room.

163.    When Marnie Meyer insisted on the condition that she be allowed to book her
own hotel room, Defendant, Greg Roman refused to allow Marnie Meyer to accompany him to
Israel.

164.    Therefore, Defendant, Greg Roman withdrew the opportunity for Marnie Meyer
to travel to Israel.

165.    After eliminating Marnie Meyer, Defendant, Greg Roman continued his objective
to find someone to lure across national borders in order to use fraud, force, or coercion to engage
in sexual acts.

166.    Defendant, Greg Roman asked Plaintiff, Lisa Barbounis to travel to Israel with
him.

167.    Defendant, Greg Roman instructed Plaintiff, Lisa Barbounis not to tell anyone she
was coming to Israel with him.

20

168.     Defendant, Greg Roman provided Plaintiff, Lisa Barbounis the same quid pro quo arrangement and conditioned the trip to Israel on sharing a living space with Defendant, Greg Roman.

169.     Defendant, Greg Roman informed Plaintiff, Lisa Barbounis that she could only travel across national borders to Israel if Plaintiff, Lisa Barbounis agreed to share an Airbnb.

170.     Plaintiff, Lisa Barbounis has always wanted to travel to Israel.

171.     Accordingly, Defendant, Greg Roman used Plaintiff, Lisa Barbounis desire to see Israel to lure her across national borders with the intent of using fraud, coercion and/or force to engage Plaintiff, Lisa Barbounis in sexual acts.

172.     Accordingly, in April 2018, Defendant, Greg Roman and Plaintiff, Lisa Barbounis traveled to Israel.

173.     Defendant, Greg Roman lured Plaintiff, Lisa Barbounis to Israel by promising that the work trip would be an invaluable opportunity for Plaintiff, Lisa Barbounis.

174.     Strangely, Defendant, Greg Roman ordered Plaintiff, Lisa Barbounis not to tell anyone that Plaintiff, Lisa Barbounis was accompanying Defendant, Greg Roman on the trip.

175.     Defendant Greg Roman used his influence, seniority, and proxy authority, to lure Plaintiff, Lisa Barbounis across national borders to Israel with the intent of subjecting Plaintiff, Lisa Barbounis to sexual advances and sex.

176.     Upon arrival, Plaintiff was surprised when she discovered that Defendant, Greg Roman had booked a small space with only one bathroom.

177.     Because of Defendant, Greg Roman's sexual advances, sexual harassment, sexual assault, and sexually inappropriate behavior, Plaintiff, Lisa Barbounis spent much of the time in Israel scared and emotionally distressed.

21

178.    Defendant, Greg Roman would not allow Plaintiff, Lisa Barbounis to travel to Israel unless she agreed to share an Airbnb with him.

179.    Plaintiff, Lisa Barbounis agreed on the condition that they book a two-bedroom **and two-bathroom** Airbnb.   There was only one bathroom upon arrival.

180.    Defendant, Greg Roman said to Plaintiff, Lisa Barbounis, "I really thought this place had two bathrooms."   The Airbnb clearly states the number of bathrooms on the cover page of the advertisement for the room.

181.    Defendant, Greg Roman lured Plaintiff, Lisa Barbounis to Israel based on a promise and assurance that the Airbnb had both two bathrooms and two bedrooms.

182.    Upon arrival, Defendant, Greg Roman was ready to explain why the Airbnb did not conform to the requirements Plaintiff, Lisa Barbounis provided.

183.    Defendant, Greg Roman specifically coerced Plaintiff, Lisa Barbounis into sharing an Airbnb with him and threatened to withhold the business trip and opportunity altogether if Plaintiff, Lisa Barbounis did not agree to put herself in a sexually vulnerable position by sharing the space.

184.    The level of Plaintiff, Lisa Barbounis's discomfort, fear, and apprehension during the trip to Israel is evidenced by text message communications between Plaintiff, Lisa Barbounis and Patricia McNulty during the trip.

185.    While in Israel, Plaintiff, Lisa Barbounis texted, "I am going to put a knife in my room."   This message indicated that Plaintiff, Lisa Barbounis did not feel safe in the same living space with Defendant, Greg Roman.

186.    While in Israel, Plaintiff, Lisa Barbounis texted, "He's creepy.   Talking about stuff he shouldn't be and too drunk."

187.   While in Israel, Plaintiff, Lisa Barbounis texted, "I'm so uncomfortable."

188.   While in Israel, Plaintiff, Lisa Barbounis texted, "I can't wait to come home."

189.   While in Israel, Plaintiff, Lisa Barbounis texted, "He drank too much"

190.   While in Israel, Plaintiff, Lisa Barbounis texted, "The shit he is saying is so strange I can't type it all anyway."

191.   While in Israel, Plaintiff, Lisa Barbounis texted, "Talking about women and his wife and conquests and graphic."

192.   While in Israel, Plaintiff, Lisa Barbounis texted, "He said he fucked Lea (indicating MEF intern Leah Merville) and tried to meet up with her again and it didn't work out…"   This test message referred to Defendant, Greg Roman's attempts to meet with former MEF intern Leah Merville who lived in Israel at that time.   Defendant, Greg Roman propositions Leah Merville for sex and Leah Merville rejected Defendant, Greg Roman's advances.

193.   Defendant, Greg Roman spent the Israel trip attempting to coerce Plaintiff, Lisa Barbounis into engaging in sexual acts with him.   Defendant, Greg Roman acted like sex with Plaintiff, Lisa Barbounis was a certainty because they were sharing a room.

194.   Defendant, Greg Roman attempted to engage Plaintiff, Lisa Barbounis in conversations that were about sex or suggested sex multiple times throughout the trip.

195.   Defendant, Greg Roman subjected Plaintiff, Lisa Barbounis to quid pro quo sexual harassment by conditioning the trip on Plaintiff sharing the Airbnb with intention of using the opportunity to engage Plaintiff is sexual advances.

196.   Before the Israel trip, Defendant, Greg Roman instructed Plaintiff, Lisa Barbounis not to tell anyone that she was coming on the trip.

197.     Defendant, Greg Roman said, "Don't tell your family.   Don't tell Daniel (indicating Defendant, Daniel Pipes).   Don't tell anyone in the office."

198.     While on the trip, Plaintiff, Lisa Barbounis was sitting a couch in the living space. The couch was positioned on the terrace with large sliding glass doors leading out.

199.     Defendant Gregg Roman asked Plaintiff, Lisa Barbounis to join him while he smoked a cigarette.

200.     Plaintiff, Lisa Barbounis joined Defendant, Greg Roman on the terrace and sat down on the far end of one side of the couch.

201.     Defendant, Greg Roman sat down next to Plaintiff Lisa Barbounis.   Defendant, Greg Roman then put his legs on the couch and his feet under Plaintiff Lisa Barbounis's butt.

202.     Defendant, Greg Roman used his feet to unlawfully subject Plaintiff, Lisa Barbounis to unwelcome sexually inappropriate touching.

203.     Defendant, Greg Roman's feet were right under Plaintiff, Lisa Barbounis's butt, and this would have been an intimate touching had it been consensual.   While his feet were in Plaintiff's butt, Defendant, Greg Roman said: "now that my foot is on your ass we have reached a new level."

204.     Plaintiff Lisa Barbounis was highly uncomfortable.   So she got up, walked away and tried to laugh it off.

205.     Plaintiff Lisa Barbounis was highly uncomfortable by this unwelcome sexual touching.

206.     The next evening, Defendant, Greg Roman left the Airbnb to socialize and drink at bars and/or restaurants.

207.    Plaintiff Lisa Barbounis stayed home to work and finish a Power Point presentation.   This is evidence by text message communications where Plaintiff, Lisa Barbounis writes, "He just came back I stayed in."

208.    Defendant, Greg Roman arrived at the room and confessed to Plaintiff Lisa Barbounis that he had a sexual relationship with a former MEF employee/intern named Leah Merville.

209.    Upon his return, Defendant, Greg Roman informed Plaintiff, Lisa Barbounis that Defendant, Greg Roman attempted to meet Leah Merville that evening.   Defendant, Greg Roman also said he visited his ex-girlfriend while he was out.

210.    Defendant, Greg Roman indicated that he had propositioned both Leah Merville and his ex-girlfriend for sex and was rejected both times.

211.    Defendant, Greg Roman was infuriated, and began behaving in a sexually inappropriate and aggressive manner by pacing back and forth and complaining loudly about his sexual frustrations.

212.    Plaintiff, Lisa Barbounis maintained a text message conversation with Patricia McNulty and referenced Defendant, Greg Roman's inappropriate conduct and comments.

213.    Plaintiff, Lisa Barbounis texted, "He said he fucked Lea and tried to meet up with her again and it didn't work out."

214.    When Leah Merville was employed by MEF, Defendant, Greg Roman, as Director of the MEF, held supervisory authority over Leah Merville.

215.    Defendant, Greg Roman lured Leah Merville to his hotel room in Israel and used his proxy authority as a supervisor and Director of The Middle East Forum to convince Leah Merville to engage in sexual intercourse.

216.    Leah Merville was an intern in Pennsylvania at MEF.   When her internship ended, Defendant, Greg Roman helped Leah Merville obtain an internship in Israel.

217.    Defendant, Greg Roman explained to Plaintiff, Lisa Barbounis that he suggested that Leah Merville visit his hotel room, to sign certain paperwork.

218.    Defendant, Greg Roman said, I will sign it and give it to you.   The paperwork was apparently required paperwork for Leah Merville's completion of her internship.

219.    Leah Merville is a young girl who was an intern at MEF.   Leah Merville is from France and was in a strange country with no good friends or family nearby.   Defendant, Greg Roman used his position of authority to engage Leah Merville in sexual intercourse.

220.    Defendant, Greg Roman told Leah Merville to come to his hotel room because that is where he had the paperwork that Leah Merville needed.

221.    During the next trip to Israel, when Plaintiff, Lisa Barbounis attended, Defendant, Greg Roman attempted to engage Leah Merville in sexual intercourse again.   This time Leah Merville rejected Defendant, Greg Roman.

222.    Defendant, Greg Roman sexually harassed female employee of the MEF and attempted to use fraud, coercion, and/or force to lure female employees to his room and/or to hotel rooms including Airbnb's.

223.    After attempting to engage Leah Merville in sexual intercourse, Defendant, Greg Roman arrived back at the Airbnb, where Plaintiff, Lisa Barbounis remained in order to complete work and finish a Power Point.

224.    Defendant, Greg Roman then began to subject Plaintiff, Lisa Barbourins to severe sexual harassment and sexual misconduct.

225.     Defendant, Greg Roman said to Plaintiff, Lisa Barbounis, Leah Merville gives a really great blowjob.

226.     Defendant, Greg Roman said, "her body is so tight."

227.     Defendant, Greg Roman continued to describe in detail his sexual acts to Plaintiff Lisa Barbounis.

228.     Plaintiff Lisa Barbounis was highly offended and scared and no longer felt comfortable alone with Defendant, Greg Roman.

229.     When Plaintiff, Lisa Barbounis received a text asking whether she thought that Defendant, Greg Roman would try to "touch you kind of way?"   Plaintiff, Lisa Barbounis responded, "Like maybe.   Enough doubt to make me uncomfortable."

230.     Plaintiff, Lisa Barbounis's text history is available and will be produced to substantiate the allegations contained in this Complaint.

231.     Defendant, Greg Roman subjected Plaintiff, Lisa Barbounis to unwelcome sexual advances.

232.     Defendant, Greg Roman told Plaintiff, Lisa Barbounis, "I just need a sexual release."

233.     Defendant, Greg Roman informed Plaintiff Lisa Barbounis, "I really need a blowjob."

234.     The entire time that Defendant, Greg Roman spoke to Plaintiff Lisa Barbounis, he aggressively paced the room and said, I just need a blow job.   I just need a release.

235.     Plaintiff Lisa Barbounis was scared, offended, harassed, and creeped out.

236.     Defendant, Greg Roman's aggressive sexual conduct escalated.

237.     Defendant, Greg Roman's voice got louder as he continued to visit his sexual advances upon Plaintiff Lisa Barbounis.

238.     When Plaintiff, Lisa Barbounis and Defendant, Greg Roman returned to the United States from their trip to Israel, Defendant, Greg Roman continued his inappropriate unwelcome sexual misconduct and sexual harassment.

239.     Defendant, Greg Roman also subjected Plaintiff, Lisa Barbounis to discrimination based on sex and gender and was violently aggressive toward female staff members including Plaintiff, Lisa Barbounis.

240.     Defendant, Greg Roman screamed at Plaintiff, Lisa Barbounis.

241.     Defendant, Greg Roman cursed at Plaintiff, Lisa Barbounis.

242.     Defendant, Greg Roman did not treat Plaintiff's similarly situated male coworkers in this discriminatory, abusive, hostile and intolerable manner.

243.     Defendant, Greg Roman also subjected Plaintiff's female coworkers to discrimination and harassment due to their sex and gender.

244.     Defendant, Greg Roman also subjected coworker, Patricia McNulty to severe and pervasive discrimination and harassment based upon her sex and gender.

245.     Defendant, Greg Roman also subjected Plaintiff's coworker, Caitriona Brady to severe and pervasive discrimination and harassment based upon her sex and gender.

246.     Defendant, Greg Roman also subjected Plaintiff's coworker, Delaney Yonchek to severe and pervasive discrimination and harassment based upon her sex and gender.

247.     Defendant, Greg Roman also subjected Plaintiff's coworker, Marnie Meyer to severe and pervasive discrimination and harassment based upon her sex and gender.

248.     At all times, Defendant, Greg Roman was Plaintiff Lisa Barbounis's direct supervisor and held proxy authority as the number two executive of the MEF.

249.     Defendant, Greg Roman has subjected several other female employees who worked at the MEF to discrimination and harassment based upon their sex and gender.

250.     Defendant, Greg Roman development, implemented and enforced policies, procedures and protocols designed to limit employees' access to President Daniel Pipes.

251.     These policies which were strictly enforced which eliminated employees' ability to talk directly to Defendant, Daniel Pipes essentially set of Defendant, Greg Roman as the very top MEF employee who employees could go to for assistance.

252.     Defendant, Greg Roman developed and enforced these policies with the intention of limiting Plaintiff, Lisa Barbounis's ability to report Defendant, Greg Roman's unwelcome sexual harassment and sexual misconduct and comments.

253.     Defendant, Greg Roman had developed, implemented and enforced policies which were approved by Defendant, Daniel Pipes whereby employees including Plaintiff, Lisa Barbounis were not allowed to go directly to Defendant, Daniel Pipes to express concerns or obtain assistance.

254.     After the trip to Israel, Defendant, Greg Roman made inappropriate comments to Plaintiff, Lisa Barbounis including but not limited to, "you know you are my work wife, right."

255.     After the trip to Israel, Defendant, Greg Roman made inappropriate comments to Plaintiff, Lisa Barbounis including but not limited to, "I got your back you know I will always take care of you."

256.     After the trip to Israel, Defendant, Greg Roman made inappropriate comments to Plaintiff, Lisa Barbounis including but not limited to, "we are at a new level we have to take care of each other."

257.     Defendant, Greg Roman called Lisa Barbounis into his office and ordered Plaintiff to sit next to him and share the computer screen.   Defendant, Greg Roman then made Plaintiff, Lisa Barbounis view inappropriate pictures on his computer.

258.     Defendant, Greg Roman showed Plaintiff pictures of girls that he had claimed to have sexual intercourse with.

259.     Defendant, Greg Roman made comments about women's' looks, saying, Look how hot this one it, look how hot that one is.

260.     Defendant, Greg Roman made comments about a former employee named Tiffany Lee stating that she always had her boobs out and purposely did this to sexually entice him.

261.     Defendant, Greg Roman spoke about Tiffany Lee to Plaintiff, Lisa Barbounis and described the way that Tiffany Lee looked and blamed Tiffany Lee and the way she dressed for tempting Defendant, Greg Roman.

262.     Pursuant to the sexual advances described above and the assault on coworker, Patricia McNulty, Defendant, Greg Roman began subjecting Plaintiff Lisa Barbounis to discrimination and harassment in the office based upon Plaintiff's sex and gender.

263.     This discrimination and harassment escalated significantly after the Israel trip and after Plaintiff, Lisa Barbounis rejected Defendant's Greg Roman's unwelcome sexual advances.

264.     Defendant, Greg Roman followed Plaintiff Lisa Barbounis around the office.

265.    Defendant, Greg Roman used his size and height to intimidate Plaintiff, Lisa Barbounis.

266.    Defendant, Greg Roman entered Plaintiff Lisa Barbounis' office when she was not present and explored her computer including personal emails, chat history, and internet browser history.

267.    This is the same conduct which Defendant, Greg Roman subjected Laura and Lara and led to Laura and Lara's termination.

268.    Defendant, Greg Roman undertook to discriminate and harass female staff, including subjecting female staff to sexual harassment and sexual misconduct with the express understanding that Defendant, Daniel Pipes would protect Defendant, Greg Roman.

269.    Defendant, Greg Roman asked other employees including Marnie Meyer to spy on Plaintiff Lisa Barbounis.

270.    Defendant, Greg Roman stalked Plaintiff, Lisa Barbounis while Plaintiff worked. Defendant, Greg Roman counted and tracked the number of times that Plaintiff used the bathroom.

271.    Defendant, Greg Roman sat and stared at Plaintiff, Lisa Barbounis using the camera system and made comments to Plaintiff, Lisa Barbounis to communicate to Plaintiff, Lisa Barbounis that she was being watched.

272.    Defendant, Greg Roman subjected Plaintiff to severe and pervasive discrimination and harassment based upon her sex and gender.

273.    This discrimination and harassment was evident in the way that Defendant, Greg Roman spoke to Plaintiff, the assignments he required Plaintiff to complete, the tone of voice he used, body language, expressions, use of language and cursing, and other threatening conduct.

274.    Defendant, Greg Roman created a hostile work environment for Plaintiff, Lisa Barbounis.   The work environment was severe and pervasive.

275.    Plaintiff reported the discrimination and harassment to which she was subjected by Defendant, Greg Roman.

276.    Plaintiff, Lisa Barbounis notified Marnie Meyer who was the Director of Human Resources.

277.    Marnie Meyer prepared a handwritten letter addressed to Daniel Pipes and provided the letter on November 1, 2018.

278.    Marnie Meyer notified Defendant, Daniel Pipes that Defendant, Greg Roman was using his supervisory authority as Director of the MEF to "railroad" Plaintiff, Lisa Barbounis and "set her up for failure."

279.    Defendant, Greg Roman said to Marnie Meyer that he could get Plaintiff, Lisa Barbounis to drop complaints and reports of Defendant, Greg Roman.

280.    Marnie Meyer also reported a hostile work environment which was created by Defendant, Greg Roman.

281.    Marnie Meyer also reported to Defendant, Daniel Pipes that Defendant, Greg Roman had sex with an MEF intern named Leah Merville.   Marnie Meyer reported that Leah Merville was eighteen (18) years old at the time, that Defendant, Greg Roman had sex with Leah Merville in a hotel room in Israel, at a time when Leah Merville needed Defendant, Greg Roman to sign paperwork for her.   After reporting this to Defendant, Daniel Pipes, Marnie Meyer reported that this was just "the tip of the iceberg."

282.    Marnie Meyer also explained that she reported Defendant, Greg Roman's unlawful discrimination and harassment with handwritten letters because Defendant, Greg

32

Roman used the knowledge he gained as Director of the MEF, including secure passwords to computers, to spy on employees emails and files.   Importantly, this is what led to Laura Frank and Lara (last name unknown)'s termination.

283.    Accordingly, Marnie Meyer handwrote her reports to Defendant, Daniel Pipes because she was scared to create an electronic record that could be accessed by Defendant, Greg Roman.

284.    Marnie Meyer's fear of creating an electronic record was directly due to Defendant, Greg Roman's conduct including stalking and spying.

285.    Defendant, Daniel Pipes spoke to Plaintiff, Lisa Barbounis about Plaintiff's reports of discrimination and harassment in the workplace.

286.    Plaintiff reported Defendant, Greg Roman's sexual harassment and sexual misconduct during the Israel trip.

287.    Plaintiff, Lisa Barbounis also notified and reported Defendant, Greg Roman's sexual harassment, sexual misconduct and sexual assault during the AIPAC Conference.

288.    Plaintiff, Lisa Barbounis described to Defendant, Daniel Pipes the way that Defendant, Greg Roman's behavior changed significantly after Plaintiff rejected his unwelcome sexual advances.

289.    Plaintiff, Lisa Barbounis explained that Defendant, Greg Roman was causing a hostile work environment.

290.    In addition to the reports of discrimination and harassment which Plaintiff provided, several other employees at the Middle East Forum also spoke to Defendant, Daniel Pipes on November 1, 2018.

291.    Marnie Meyer made a report to notify Defendant, Daniel Pipes about Defendant, Greg Roman's sexual harassment, sexual misconduct, and/or gender and sex discrimination.

292.    Patricia McNulty made a report to notify Defendant, Daniel Pipes about Defendant, Greg Roman's sexual harassment, sexual misconduct, and/or gender and sex discrimination.

293.    Caitriona Brady made a report to notify Defendant, Daniel Pipes about Defendant, Greg Roman's sexual harassment, sexual misconduct, and/or gender and sex discrimination.

294.    Delaney Yonchek made a report to notify Defendant, Daniel Pipes about Defendant, Greg Roman's sexual harassment, sexual misconduct, and/or gender and sex discrimination.

295.    Prior to November 1, 2018, Defendant, Daniel Pipes was already on express and actual notice regarding Defendant, Greg Roman's sexual harassment, sexual misconduct and sex and gender discrimination.

296.    Prior to November 1, 2018, and by at least December 2016, Defendant, Daniel Pipes was notified about a Charge of Discrimination filed with the Equal Employment Opportunity Commission alleging that Defendant, Greg Roman subjected female employees to sexual harassment and sexual misconduct.

297.    Defendant, Daniel Pipes was in possession of and had express and actual knowledge about numerous reports of Defendant, Greg Roman's sexual harassment and sexual misconduct to which Defendant, Greg Roman subjected female employees who worked at The Middle East Forum.

298.    Defendant, Daniel Pipes remained loyal to Defendant, Greg Roman, who has been accused of preying on female employees of The Middle East Forum for at least five (5) years.

34

299.     At every opportunity, Defendant, Daniel Pipes has introduced policies, procedures, and protocols designed to punish the female employees of The Middle East Forum who have claimed abuse and sexual abuse, while rewarding the individual accused of abusing these same female employees.

300.     Had Defendant, Daniel Pipes considered and acted in accordance with federal, state and local anti-discrimination laws, Plaintiff, Lisa Barbounis would never have been subjected to severe and pervasive discrimination and harassment in the workplace.

301.     Due to Defendant, Daniel Pipes refusal to investigate and remediate earlier reports of discrimination and harassment in the workplace, Plaintiff, Lisa Barbounis and many other of Plaintiff's female coworkers were subjected to a campaign of discrimination and harassment due to their sex and gender.

302.     Had Defendant, Daniel Pipes considered and acted in accordance with laws aimed at protecting women from sexual harassment in the workplace, he would have investigated Defendant, Greg Roman as early as 2016 and prompt remedial measures would have been implemented to ameliorate and/or eliminate completely the future sexual harassment and sexual misconduct that occurred in 2018 to Plaintiff, Lisa Barbounis.

303.     Defendant Daniel Pipes held a group meeting on November 1, 2018, during which, Plaintiff, Lisa Barbounis, Patricia McNulty, Marnie Meyer, Caitriona Brady, and Delaney Yonchek all expressed grave concerns regarding Defendant, Greg Roman's discrimination and harassment of the female staff.

304.     During the November 1, 2018 meeting, Defendant, Daniel Pipes was notified about the sexual assault in Washington D.C., during the AIPAC Conference., when Defendant, Greg Roman forcefully, violently, and aggressively picked Patricia McNulty up by her upper

35

thigh and back-side, dropped her on his lap, and suggested that Ms. McNulty engage in sexual acts with Defendant, Greg Roman.

305.    During the November 1, 2018 meeting, Plaintiff, Lisa Barbounis reported the sexual harassment and sexual misconduct and sexual assault that occurred across national borders in Israel when Defendant, Greg Roman subjected Plaintiff, Lisa Barbounis to unwelcome lewd sexual advances including unwelcome sexual touching.

306.    November 1, 2018, The Middle East Forum's female staff informed Defendant, Daniel Pipes about Defendant, Greg Roman's ongoing severe and pervasive discrimination and harassment in the workplace.

307.    Defendant, Daniel Pipes responded to the reports of sexual harassment, sexual misconduct, and sexual assaults by telling Plaintiff, Lisa Barbounis, Marnie Meyer, Patricia McNulty, Caitriona Brady, and Delaney Yonchek that Defendant, Greg Roman's conduct was not that big a deal.

308.    Defendant, Daniel Pipes suggested that because priests who molest children were permitted by the Catholic Church to remain priests, Defendant, Greg Roman should be permitted to continue his employment at the MEF.

309.    Defendant, Daniel Pipes said, "priests have been accused of more and not lost their jobs."

310.    Defendant, Daniel Pipes did not apologize for the years of abuse described and reported by his female staff on November 1, 2018.

311.    Defendant, Daniel Pipes notified the female staff of The Middle East Forum including Plaintiff, Lisa Barbounis, Marnie Meyer, Patricia McNulty, Caitriona Brady, and

Delaney Yonchek that The Middle East Forum maintains standards which informs when discipline for sexual harassment in warranted.

312.    Defendant, Daniel Pipes then told his female staff of The Middle East Forum that Defendant, Greg Roman's conduct and comments over the years had not risen to the level where discipline was warranted.

313.    Defendant, Daniel Pipes' conclusion that Defendant, Greg Roman's conduct and comments had not risen to the level where discipline was warranted was based upon MEF policies which Defendant, Daniel Pipes claimed supported his conclusions.

314.    Defendant, Daniel Pipes' conclusions that Defendant, Greg Roman's conduct and comments had not risen to the level where discipline was warranted was in response to learning that a female staff member of The Middle East Forum named Patricia McNulty had been sexually assaulted.

315.    Defendant, Daniel Pipes' conclusions that Defendant, Greg Roman's conduct and comments had not risen to the level where discipline was warranted was in response to learning that a female staff member of The Middle East Forum named Marnie Meyer had been sexually harassed.

316.    Defendant, Daniel Pipes' conclusions that Defendant, Greg Roman's conduct and comments had not risen to the level where discipline was warranted was in response to learning that a female staff member of The Middle East Forum, Plaintiff, Lisa Barbounis, had been subjected to unwelcome sexual touching, sexual assault, sexual harassment, and quid pro quo sexual propositions.

317.    Defendant, Daniel Pipes' conclusions that Defendant, Greg Roman's conduct and comments had not risen to the level where discipline was warranted was in response to learning

that the Director of the MEF, Defendant, Greg Roman engaged an eighteen (18) year old female

intern named Leah Merville in sexual intercourse in his hotel room, and that he had lured Ms.

Merville to the hotel room with the promise of signing important paperwork which Ms. Merville

required.

318.    Accordingly Defendant, Daniel Pipes initiated no discipline.

319.    Plaintiff Lisa Barbounis, Marnie Meyer, Patricia McNulty were instructed to work

from home the following Friday.

320.    Defendant, Daniel Pipes also instructed Plaintiff Lisa Barbounis, Marnie Meyer,

Patricia McNulty to execute new Nondisclosure Agreements.

321.    Plaintiff, Lisa Barbounis refused to sign.

322.    Saturday, November 3, 2018, Plaintiff Lisa Barbounis received an email from

Defendant, Daniel Pipes instructing Plaintiff to attend a group meeting scheduled Monday,

November 5, 2018.

323.    This memorandum was sent as a group email to Plaintiff and her coworkers.

324.    Defendant, Greg Roman was included in the email and invited to attend the group

meeting.

325.    Defendant, Greg Roman was specifically asked to attend the group meeting.

326.    It was not until Monday, November 5, 2018 when a call was made to Defendant,

Greg Roman asking that he stay home.   This call was made due to the female staff members all

expressing extreme discomfort at the idea of holding a group meeting about Defendant, Greg

Roman with Defendant, Greg Roman.

327.    Defendant, Greg Roman's sister attended the meeting and spent the entire meeting

arguing in support of her brother.

328.   Defendant, Greg Roman's sister said that the woman who Defendant, Greg Roman sexually harassed were at fault for wearing revealing clothes.

329.   The November 5, 2018 meeting was indicative of Defendant, Daniel Pipes utter failure to bring his organization into compliance with state and federal anti-discrimination laws.

330.   After the November 5, 2018 meeting, Defendant, Daniel Pipes decided that Defendant, Greg Roman would retain his position, title, pay, and employment with the Middle East Forum.

331.   Defendant, Daniel Pipes notified Plaintiff, Lisa Barbounis that Defendant, Greg Roman would work from home and that Plaintiff would no longer directly report to Defendant Greg Roman.

332.   Defendant, Daniel Pipes' claimed that Plaintiff, Lisa Barbounis would no longer be forced to work with Defendant, Greg Roman.

333.   Defendant, Daniel Pipes did not enforce his self-prescribed remedial measures and Plaintiff, Lisa Barbounis was forced to continue working with Defendant, Greg Roman.

334.   For the next few months, Plaintiff, Lisa Barbounis was forced to continue working with Defendant, Greg Roman.

335.   The only change was that Defendant, Greg Roman did not visit the office.

336.   Defendant, Greg Roman's work duties, responsibilities, and authority remained unchanged.

337.   Plaintiff, Lisa Barbounis continued to be subjected to discrimination and harassment due to her sex and gender.   The big difference was that Defendant, Greg Roman set out on a mission of retaliation aimed at the female employees who reported his unlawful conduct.

39

338.    Plaintiff was still subjected to the same discrimination and harassment in the workplace.

339.    In fact, the discrimination and harassment got worse, as after the November 5, 2018 meeting, Defendant, Greg Roman unleashed a campaign of retaliation against Plaintiff, Lisa Barbounis, Patricia McNulty, Marnie Meyer, Caitriona Brady, and Delaney Yonchek.

340.    Defendant, Greg Roman openly voiced his retaliatory intent.

341.    Defendant, Greg Roman targeted the employees who Defendant, Greg Roman called "the usurpers."

342.    Defendant Greg Roman also called the female staff who reported his sexual harassment and sexual misconduct, "backstabbers."

343.    Defendant, Greg Roman notified Defendant, Mathew Bennett, "they are all usurpers and I will never work with usurpers."

344.    Even more recently, Defendant, Greg Roman announced on a radio show that "all usurpers should be crushed."

345.    Plaintiff was forced to continue working with Defendant, Greg Roman.

346.    Plaintiff was still forced to take orders from Defendant, Greg Roman.

347.    Defendant, Greg Roman was still the Director of the Middle East Forum.

348.    Defendant, Greg Roman began a campaign of retaliation aimed at Plaintiff, Lisa Barbounis and the other female employees in the office who reported discrimination and harassment including Marnie Meyer, Patricia McNulty, Delaney Yonchek, and Caitriona Brady.

349.    Sometime around March 2019, Defendant, Daniel Pipes held a meeting with Marnie Meyer, Patricia McNulty and Plaintiff, Lisa Barbounis.   The meeting was about bringing

Defendant, Greg Roman back to a position where he would resume almost all of his former responsibilities as Director of the Middle East Forum.

350.    After this meeting Defendant, Greg Roman began working directly with the staff again, including the female staff who Defendant, Greg Roman had systemically victimized.

351.    The decision to bring Defendant, Greg Roman back to Director of the Middle East Forum was agreed upon with extreme reluctance.   The female staff who conceded to the decision which allowed Defendant, Greg Roman to resume his old responsibilities did so in order to help the Middle East Forum as an organization.

352.    It was clear that the MEF was going through a rough patch and the organization seemed to be floundering.

353.    It was apparent that Defendant, Daniel Pipes was consulting with Defendant, Greg Roman behind the scenes and so the decision was made in the interest of helping Defendant, Daniel Pipes and helping the organization.

354.    Because the MEF is a nonprofit organization with a specific objective, the employees who work at MEF do so based on a strong belief in the MEF mission.

355.    Defendant, Greg Roman was brought back on what was labeled a strict probationary period.   Defendant, Daniel Pipes promised strict rules, guidelines, scrutiny, and oversight.   None of this occurred.

356.    Defendant, Greg Roman was moved back to a position where he would interact directly with the female staff who he prayed upon, abused, and harassed.

357.    The female staff members, and Plaintiff, Lisa Barbounis agreed to this reluctantly because they believed in the Middle East Forum's mission.

358.    The rules and guidelines agreed upon were intended to protect the female staff who Defendant, Greg Roman had systematically victimized and sexually abused and harassed.

359.    These rules and guidelines were quickly disregarded by Defendant, Daniel Pipes and Defendant, Greg Roman.

360.    Accordingly, shortly after Defendant, Greg Roman's return, Plaintiff, Lisa Barbounis noted the discrimination and harassment and retaliation.

361.    Defendant, Greg Roman used his position as Director of the MEF to subject Plaintiff to tangible employment actions such as discipline and the threat of termination.

362.    The female staff and Plaintiff, Lisa Barbounis were subjected to a continuing hostile work environment including retaliation due to their reporting and opposing Defendant, Greg Roman's discrimination and harassment in the workplace.

363.    The female staff including Plaintiff, Lisa Barbounis attempted to discuss the fact that bringing Defendant, Greg Roman back was not working, and that Defendant, Greg Roman was actively disregarding the guidelines and rules that the female staff and Defendant, Daniel Pipes agreed upon.

364.    Defendant, Daniel Pipes continued his same policy employed for at least the last five (5) years, of ignoring, disregarding, and refusing to take action in response to reports of discrimination, harassment and retaliation concerning Defendant, Greg Roman.

365.    Defendant, Daniel Pipes and Defendant, Greg Roman used the female staff's dedication to the MEF mission to convince female staff to tolerate discriminatory and harassing working conditions.

366.    At all times Defendant, Greg Roman retained the position of Director of the Middle East Forum.

367.    At all times, Plaintiff was forced to continue working at the Middle East Forum with Defendant, Greg Roman.

368.    During the March 2019 meeting, Defendant, Daniel Pipes announced that he was going to eliminate the purported safe measures initiated to protect the female staff from Defendant, Greg Roman's severe and pervasive discrimination, harassment, and retaliation.

369.    Accordingly, since March 2019, Plaintiff, Lisa Barbounis has been subjected to working with Defendant, Greg Roman.

370.    Defendant, Greg Roman's campaign of retaliation since March 2019 has been aimed at effecting Plaintiff's termination from the Middle East Forum.

371.    This was around the same time when Plaintiff, Lisa Barbounis and coworker Patricia McNulty learned about another allegation of sexual harassment involving Defendant, Greg Roman.

372.    Defendant, Greg Roman began a rumor that Marnie Meyer was having a sexual relationship with Caitriona Brady's father.

373.    Caitriona Brady is an employee at the Middle East Forum who holds the position Development Associate.

374.    When Defendant, Greg Roman first learned that another allegation of sexual harassment was reported, he did not yet know the details of the allegation.

375.    Accordingly, Defendant, Greg Roman and Defendant, Mathew Bennett began a guessing game where they attempted to guess what the allegation involved.

376.    Defendant, Greg Roman incorrectly guessed that the sexual harassment allegation involved a former intern named Gabrielle Bloom who Defendant, Greg Roman purportedly paid for sex.

377.     Defendant, Greg Roman subjected two female interns to quid pro quo sexual harassment, as well as subjecting Plaintiff to a sexual assault.

378.     Defendant, Greg Roman also subjected Plaintiff, Lisa Barbounis to quid pro quo sexual harassment by conditioning a work trip to Israel on sharing the same Airbnb.   Defendant, Greg Roman set these conditions with the intent of leveraging the close quarters for opportunities to make sexual advances.

379.     Just days after the March 2019 meeting when Defendant, Daniel Pipes announced that he was eliminating the measures designed to protect female staff from Defendant Greg Roman, Defendant, Greg Roman called Defendant, Mathew Bennett.

380.     Defendant, Greg Roman informed Defendant, Matthew Bennett, "now that I am back, I am going to begin searching for a replacement for the Director of Development."

381.     This was the position of a coworker, Patricia McNulty who also reported being subjected to discrimination and harassment by Defendant, Greg Roman.

382.     Defendant, Greg Roman's statement about Patricia McNulty indicated his intent to retaliate against the employees who he called "the usurpers." These were the women who reported Defendant, Greg Roman's discrimination and harassment.

383.     Defendant, Greg Roman's primary targets were Patricia McNulty and Plaintiff, Lisa Barbounis.

384.     Defendant, Greg Roman initiated a campaign of discrimination, harassment, and retaliation against Plaintiff in an effort to effect Plaintiff's termination.

385.     Plaintiff reported this to Defendant, Daniel Pipes.

386.     Defendant, Daniel Pipes utterly disregarded all of Plaintiff's reports of ongoing discrimination, harassment and retaliation.

44

387.   If anything, Defendant, Daniel Pipes has continued to provide Defendant, Greg Roman more access, authority, and opportunity with which to achieve his discriminatory and retaliatory agenda.

388.   Despite allowing Defendant, Greg Roman to return on probationary status, Defendant, Daniel Pipes continued to protect, shield, indemnify and assist Defendant, Greg Roman from any and all impact caused by his severe and pervasive discrimination and harassment in the workplace.

389.   Defendant, Daniel Pipes has allowed, permitted, sanctioned and condoned Defendant, Greg Roman's sexual harassment and sex and gender discrimination and has never considered meaningful measures designed to remediate the unlawful conduct.

390.   Accordingly, Defendant, Daniel Pipes has condoned, sanctioned, permitted, and allowed the discrimination, harassment, and retaliation to continue.

391.   Defendants have made Plaintiff's working conditions so onerous, abusive, and intolerable that no person in Plaintiff's shoes should be expected to continue working under such conditions.

392.   Plaintiff, Lisa Barbounis's resignation was void of free will.

393.   Plaintiff was constructively discharged from her employment due to the return of Defendant, Greg Roman and the severe and pervasive hostile work environment which Plaintiff, Lisa Barbounis was subjected to and due to the campaign of retaliation resulting from Plaintiff's opposition to and reports of discrimination and harassment in the workplace.

394.   Defendants and Defendant, Daniel Pipes and Defendant, Greg Roman have been subjecting female staff of The Middle East Forum to discrimination and harassment and retaliation due to their sex and gender for years.

395.     The unlawful acts, comments and conduct described above all involved the same individual and the same pattern of behavior which includes sexual harassment, sexual misconduct, and sex and gender discrimination to which the female employees of MEF have been subjected to for at least the last five (5) years.

396.     The way in which Defendant, Daniel Pipes ignored reports of discrimination and harassment in the workplace concerning Defendant, Greg Roman created a reasonable inference that any individual report of sexual harassment, sexual misconduct, or sex and gender discrimination by Defendant, Greg Roman would be futile and would most likely result in retaliation.

397.     Plaintiff, Lisa Barbounis was made aware of Laura Frank and Lara's (last name unknown) termination which resulted when Laura and Lara discussed Defendant, Greg Roman's discrimination and harassment in the workplace.   By providing this information to Plaintiff, Lisa Barbounis, it was essentially a warning not even to discuss reporting discrimination and harassment in the workplace.

398.     Plaintiff, Lisa Barbounis was made aware of Tiffany Lee's attempts to vindicate her rights in 2016.   Defendant, Greg Roman spoke to Plaintiff, Lisa Barbounis about Tiffany Lee and blamed Tiffany Lee for temping Defendant, Greg Roman by wearing the wrong kind of clothes.   Plaintiff, Lisa Barbounis received the message clearly.

399.     For these reasons Plaintiff, Lisa Barbounis was reasonably dissuaded from reporting Defendant, Greg Roman's discrimination and harassment.

400.     It helped Plaintiff feel more protected when Marnie Meyer, Patricia McNulty, Plaintiff, Lisa Barbounis, Caitriona Brady, and Delaney Yonchek all came together to report Defendant, Greg Roman's unlawful conduct and comments in November 2018.

401.    Defendants used to employ a female individual named Eman Patel.

402.    Eman Patel was a gay Muslim female who worked at Middle East Forum.

403.    Eman Patel was harassed by Defendant, Greg Roman until she was constructively discharged.   Defendant, Greg Roman's objective was to make Eman Patel's working conditions so intolerable that she decided to discontinue her employment in a manner which Defendant, Greg Roman and Defendant, Daniel Pipes considered voluntary.

404.    Both Defendant, Daniel Pipes and Defendant, Greg Roman harassed Eman Patel until she quit

405.    Because of the number of protected classes that she could be considered to fall within, Defendant, Daniel Pipes and Defendant, Greg Roman called Eman Patel "a walking lawsuit."

406.    Defendant, Daniel Pipes approved of the plan to harass and make Eman Patel's work life so intolerable that she quit on her own.

407.    Defendant, Daniel Pipes and Defendant, Greg Roman used Eman Patel's gender to harass and discriminate.

408.    Eman Patel is yet another member of the MEF female staff who was subjected to discrimination and harassment due to her sex and gender.

409.    Samantha Mandalas was another female employee of the Middle East Forum.

410.    Samantha Mandalas said in her exit interview "if I would have been a male I would have gotten more respect."

411.    Samantha Mandalas was subjected to discrimination and harassment due to her sex and gender.

412.    As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

413.    The severe and pervasive discrimination and harassment in the workplace has caused Plaintiff to suffer an acerbation and aggravation of any preexisting condition involving emotional distress.

414.    As a result of Defendants' conduct, Plaintiff was caused to sustain serious and permanent personal injuries, including permanent psychological injuries. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

415.    As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer a loss of income, loss of salary, bonuses, benefits and other compensation to which such employment entailed.

416.    Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

417.    Plaintiff has further experienced severe emotional and physical distress.

418.    Plaintiff has suffered from severe emotional distress causes physical manifestations as a result of Defendants' unlawful and severe and pervasive conduct and comments.

419.    Any preexisting condition which Plaintiff may have maintained prior to her employment for Defendant, MEF was acerbated and aggravated by the severe and pervasive discrimination and harassment in the workplace.

420.    As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against all the Defendants, jointly and severally.

421.    Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.    At all times material Defendants refused to investigate or take appropriate remedial action in response to Plaintiff's complaints of discrimination, harassment and hostile work environment.

422.    Defendants discriminatory conduct was severe and pervasive, and created a hostile work environment for Plaintiff.

423.    The above are just some examples of some of the discrimination and retaliation to which Defendants subjected Plaintiff.

424.    Plaintiff claims a pattern and practice of discrimination, claims continuing violations, and makes all claims herein under the continuing violations doctrine. Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

**FIRST CAUSE OF ACTION**
**DISCRIMINATION UNDER TITLE VII**
**HOSTILE WORK ENVIRONMENT AND DISPARATE TREATMENT**
**(all corporate Defendants only)**

425.    Plaintiff, Lisa Barbounis, hereby incorporates all allegations contained in paragraphs one (1) through four-hundred-twenty-two (422) as fully as if they were set forth at length.

426.    This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.*, as amended, for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of

49

Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's race, color, and/or national origin.

427.   SEC. 2000e-2 *[Section 703]* states as follows:

(a)  Employer practices

It shall be an unlawful employment practice for an employer –

(1)  to fail or refuse to hire or to discharge an individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2)  to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

428.   Defendants engages in unlawful employment practices prohibited by 42 U.S.C. § 2000e *et. seq.*, by discriminating against Plaintiff because of her sex and gender.

429.   Plaintiff, Lisa Barbounis was subjected to sexual harassment which was severe and pervasive.

430.   Plaintiff claims that she was subjected to a hostile work environment based upon the severe and pervasive discrimination and harassment in the workplace.

431.   Plaintiff was also terminated from her employment based upon Plaintiff's sex and gender.

432.    Defendants engaged in several acts of discrimination and harassment that were so severe that a single act was sufficient to create a hostile work environment.

433.    Defendants also engaged on ongoing, continuous, daily abuse which was so pervasive as to create a hostile work environment.

## SECOND CAUSE OF ACTION
## RETALIATION UNDER TITLE VII
### (against corporate Defendants only)

434.    Plaintiff, Lisa Barbounis, hereby incorporates all allegations contained in paragraphs one (1) through four-hundred-thirty-three (433) as fully as if they were set forth at length.

435.    Title VII of the Civil Rights Act of 1962, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to…discriminate against any of his employees…because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any matter in an investigation, proceeding, or hearing under this subchapter."

436.    Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e *et. seq.* by retaliating against Plaintiff with respect to the terms, conditions, and/or privileges of his employment because of her opposition to and reporting of the unlawful employment practices of Defendants.

437.    Plaintiff continued to oppose the severe and pervasive discrimination and harassment in the workplace and even submitted a written statement to report the discrimination and harassment in the workplace.

438.    Defendants refused to investigate Plaintiff's reports of discrimination and harassment in the workplace.

439.    Defendants refused to initiate prompt corrective actions.

440.    Accordingly, Defendants permitted, sanctioned, condoned, and allowed the discrimination and harassment to continue.

441.    Any corrective action taken by Defendants was not enforced and Plaintiff was subjected to a campaign of severe and pervasive retaliation which also created a hostile work environment.

## THIRD CAUSE OF ACTION
## <u>DISCRIMINATION UNDER STATE LAW</u>
### (against Corporate Defendants Only)

442.    Plaintiff, Lisa Barbounis, hereby incorporates all allegations contained in paragraphs one (1) through four-hundred-forty-one (441) as fully as if they were set forth at length.

443.    The PHRA § 955 provides that it shall be an unlawful discriminatory practice:

(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or impendent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the service required.

444.    Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of Plaintiff's sex and gender.

445.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the PHRA § 955.

## FOURTH CAUSE OF ACTION
## <u>RETALIATION UNDER STATE LAW</u>
### (against all Named Defendants)

446.    Plaintiff, Lisa Barbounis, hereby incorporates all allegations contained in

paragraphs one (1) through four-hundred-forty-five (445) as fully as if they were set forth at

length.

447.    PHRA § 955(d) provides that it shall be an unlawful discriminatory practice: "For

any person, employer, employment agency or labor organization to discriminate in any manner

against any individual because such individual has opposed any practice forbidden by this act, or

because such individual has made a charge, testified or assisted, in any manner, in any

investigation, proceeding or hearing under this act."

448.    Defendants engaged in an unlawful discriminatory practice by discharging,

retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to

the unlawful employment practices of Plaintiff's employer.

## FIFTH CAUSE OF ACTION
## <u>DISCRIMINATION UNDER STATE LAW</u>
### (against individual Defendants only)

449.    Plaintiff, Lisa Barbounis, here by incorporated all allegations contained in

paragraphs one (1) through four-hundred-forty-eight (448) as fully as if they were set forth at

length.

450.    PHRA § 955(e) provides that it shall be unlawful discriminatory practice: "For

any person, employer, employment agency, labor organization or employee, to aid, abet, incite,

compel or coerce the doing of any act declared by this section to be an unlawful discriminatory

practice, or to obstruct or prevent any person from complying with the provisions of this act or

any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice."

451.    Defendants engaged in an unlawful discriminatory practice in violation of PHRA § 955(e) by committing assault and battery, aiding, abetting, inciting, compelling, and/or coercing the discriminatory conduct.

**SIXTH CAUSE OF ACTION**
**DISCRIMINATION UNDER**
**PHILADELPHIA CITY ADMINISTRATIVE ORINANCE**
**(against all named Defendants)**

452.    Plaintiff, Lisa Barbounis, hereby incorporates all allegations contained in paragraphs one (1) through four-hundred-fifty-one (451) as fully as if they were set forth at length.

453.    The Philadelphia Fair Practices Ordinance § 9-1103(1) provides that "It shall be an unlawful discriminatory practice: "It shall be an unlawful employment practice to deny or interfere with the employment opportunities of an individual based upon his or her race, ethnicity, color, sex (including pregnancy, childbirth, or a related medical condition), sexual orientation, gender identity, religion, national origin, ancestry, age, disability, marital status, familial status, genetic information, or domestic or sexual violence victim status, including but not limited to, the following: (a) For any employer to refuse to hire, discharge, or otherwise discriminate against any individual, with respect to tenure, promotions, terms, conditions, or privileges of employment or with respect to any matter directly or indirectly related to employment."

454.    Defendants engages in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1) by creating and maintaining discriminatory

working conditions, and otherwise discriminating against Plaintiff because of Plaintiff's sex and gender.

455.   Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Philadelphia Fair Practices Ordinance Chapter 9-1100.

**SEVENTH CAUSE OF ACTION**
**RETALIATION UNDER**
**PHILADELPHIA CITY ADMINISTRATIVE ORINANCE**
**(against all named Defendants)**

456.   Plaintiff, Lisa Barbounis, hereby incorporates all allegations contained in paragraphs one (1) through four-hundred-fifty-five (455) as fully as if they were set forth at length.

457.   The Philadelphia Fair Practices Ordinance § 9-1103(1)(g) provides that it shall be unlawful discriminatory practice: "For any person to harass, threaten, harm, damage, or otherwise penalize, retaliate or discriminate in any manner against any person because he, she or it has complied with the provisions of this Chapter, exercised his, her or its rights under this Chapter, enjoyed the benefits of this Chapter, or made a charge, testified or assisted in any manner in any investigation, proceeding or hearing hereunder."

458.   Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1)(g) by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer

**EIGHTH CAUSE OF ACTION**
**DISCRIMINATION UNDER**
**PHILADELPHIA CITY ADMINISTRATIVE ORINANCE**
**(against individual Defendants)**

459.    Plaintiff, Lisa Barbounis, hereby incorporates all allegations contained in paragraphs one (1) through four-hundred-fifty-eight (458) as fully as if they were set forth at length.

460.    The Philadelphia Fair Practices Ordinance § 9-1103(1)(h) provided that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, induce, compel or coerce the doing of any unlawful employment practice or to obstruct or prevent any person from complying with the provisions of this Section or any order issued hereunder or to attempt directly or indirectly to commit any act declared by this Section to be an unlawful employment practice."

461.    Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1)(h) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.


**NINTH CAUSE OF ACTION**
**ASSAULT AND BATTERY**
**(Individually against Defendant, Greg Roman)**

462.    Plaintiff, Lisa Barbounis, hereby incorporates all allegations contained in paragraphs one (1) through four-hundred-sixty-one (461) as fully as if they were set forth at length.

463.    "Assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though

in ever so small a degree, upon the person." <u>Cohen v. Lit Brothers</u>, 166 Pa.Super. 206, 209, 70 A.2d 419, 421 (1950).

464.    Defendant, Greg Roman, assaulted and committed battery against Plaintiff herein and did cause unwelcomed contact.

465.    That Plaintiff did not consent to the contact and that the above contact was violent and offensive.

466.    As a direct and proximate result of these malicious and conscious wrongful actions, Plaintiff has sustained humiliation as well as severe mental and emotional distress from the indignity to which she was subjected, which resulted in bodily injury, and damages, including punitive damages, to be determined at trial.

**TENTH CAUSE OF ACTION**
**SEX TRAFFICKING**
**<u>18 Pa C.S.A. §§ 3012(b)</u>**
**(Individually against Defendant Greg Roman)**

467.    Plaintiff, Lisa Barbounis, hereby incorporates all allegations contained in paragraphs one (1) through four-hundred-sixty-six (466) as fully as if they were set forth at length.

468.    Defendant Greg Roman traveled for his business to the nation of Israel.

469.    Defendant Greg Roman and/or Defendant, The Middle East Forum paid for Plaintiff's trip to Israel, knowing that he would use fraud, physical force and/or coercion on Plaintiff in order to engage in sexual acts with Plaintiff.

470.    Defendant, Greg Roman arranged for Plaintiff to accompany him on this business trip in order to bring Plaintiff to a single Airbnb, outside his home county where he could engage in sexual acts with Plaintiff.

471.     Defendant, Greg Roman conditioned the trip on Plaintiff's agreement to share the same living space.

472.     Defendant, Greg Roman conditioned the trip on Plaintiff's agreement not to tell anyone that she was going to accompany Defendant, Greg Roman on the trip.

473.     Defendant Greg Roman was well aware that a position at his company, or the exercise of his influence on Plaintiff's professional reputation, was of significant commercial value to Plaintiff, and Defendant Greg Roman used this, or the prospective use of his influence on Plaintiff's professional reputation, to recruit and entice Plaintiff into engaging in sexual intercourse with him.

474.     As a direct and proximate result of these malicious and conscious wrongful actions, Plaintiff has sustained humiliation as well as severe mental and emotional distress from the indignity to which she was subjected, which resulted in bodily injury, and damages, pursuant to 18 Pa C.S.A. § 5747, to be determined at trial

## ELEVENTH CAUSE OF ACTION
## TRAFFICKING VICTIMS PROTECTION ACT (TVPA)
## 18 U.S.C.A. §§ 1591, 1595
### (Individually against Defendant Greg Roman)

475.     Plaintiff, Lisa Barbounis, hereby incorporates all allegations contained in paragraphs one (1) through four-hundred-seventy-four (474) as fully as if they were set forth at length.

476.     Plaintiff brings this claim pursuant to all applicable sections of 18 U.S.C.A. §§ 1591, 1595 in that "An individual who is a victim of a violation of Section 1589, 1590, or 1591 of title 18, United States Code, may bring a civil action in any appropriate district court of the

United States. The court may award actual damages, punitive damages, reasonable attorneys' fees, and other litigation costs reasonably incurred." 18 U.S.C.A. §1595(a).

477.    Defendants knowingly recruited, enticed, harbored, and obtained Plaintiff through means of force, threats of force, and by a combination of such forceful means, and attempted to coerce Plaintiff to engage in an unwanted sexual act for a commercial benefit.

478.    Defendants violated the sections cited hereto and Plaintiff suffered damage as a result.

**TWELFTH CAUSE OF ACTION**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ("IIED")**
**INDIVIDUAL AND VICARIOUS LIABILITY**

479.    Plaintiff, Lisa Barbounis, hereby incorporates all allegations contained in paragraphs one (1) through four-hundred-seventy-eight (478) as fully as if they were set forth at length.

480.    Plaintiff brings claims against all Defendants for intentional infliction of emotional distress ("IIED") and hold each vicariously liable for the acts of the others.

481.    To prove a claim of IIED, the following elements must be established: (1) the conduct must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; and (4) that distress must be severe. Hooten v. Penna. College of Optometry, 601 F.Supp. 1155 (E.D.Pa.1984); Hoy v. Angelone, 691 A.2d 476, 482 (Pa.Super. 1997); Restatement (Second) of Torts § 46.

482.    During Plaintiffs' employment, Defendants intentionally and recklessly harassed and inflicted emotional injury on Plaintiff by subjecting her to outrageous treatment beyond all bounds of decency.

483.     Defendants verbally, mentally and physically abused Plaintiff and treated her in a demeaning and inferior manner, which no reasonable person could be expected to endure.

484.     As a direct and proximate result of these malicious and conscious wrongful actions, Plaintiff has sustained severe emotional distress, resulting in bodily injury, and damages, including punitive damages, to be determined at trial.

## THIRTEENTH CAUSE OF ACTION
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS ("NIED")
### (ALTERNATIVE PLEADING)

485.     Plaintiff, Lisa Barbounis, hereby incorporates all allegations contained in paragraphs one (1) through four-hundred-eighty-four (484) as fully as if they were set forth at length.

486.     Defendants owed Plaintiff a duty of care to safeguard her mental and physical health and wellbeing; and Defendants' breach of this duty directly and proximately caused Plaintiff to suffer genuine and substantial emotional distress, which manifested itself in physical illness and serious psychological damage.

487.     Plaintiff's injuries were foreseeable because a reasonable person would have known that Defendants' actions would cause a reasonable person substantial emotional distress.

## ELEVENTH CAUSE OF ACITON
## NEGLIGENCE
### (ALTERNATIVE PLEADING)

488.     Plaintiff, Lisa Barbounis, hereby incorporates all allegations contained in paragraphs one (1) through four-hundred-eighty-seven (487) as fully as if they were set forth at length.

489.     Defendants owed Plaintiff a duty of care to safeguard her mental and physical

health and well-being.

490.     Defendants breached their duty of care by negligently, accidentally or recklessly

failing to safeguard Plaintiff's mental and physical health and well-being.

491.     Defendants' breach of this duty directly and proximately caused Plaintiff to

sustain severe emotional distress, resulting in physical illness and serious psychological damage.


## JURY DEMAND

Plaintiff requests a jury trial on all issued to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally,

in an amount to be determined at the time of trial plus interest, punitive damages, liquidated

damages, statutory damaged, attorney's fees, costs, and disbursement of action; and for such

other relief as the Court deems just and proper.


**DEREK SMITH LAW GROUP, PLLC**

By: _____

Seth D. Carson, Esquire
1835 Market Street, Suite 2950
Philadelphia, Pennsylvania 19103
Phone: 215.391.4790
Email: seth@dereksmithlaw.com

DATED: October 27, 2019