UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LISA BARBOUNIS | : | |
| | : | |
| Plaintiff, | : | |
| -vs- | : | |
| | : | CIVIL ACTION NO. 2:19-cv-05030 |
| THE MIDDLE EAST FORUM, | : | |
| DANIEL PIPES (*individually*), | : | |
| GREGG ROMAN *(individually)*, and | : | |
| MATTHEW BENNETT (*individually*) | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

David J. Walton
Leigh Ann Benson
COZEN O'CONNOR
One Liberty Place
1650 Market Street
Philadelphia, PA 19103
Phone: (215) 665-2000

*Attorneys for Defendants*
*The Middle East Forum, Gregg Roman,*
*Daniel Pipes, and Matthew Bennett*

# TABLE OF CONTENTS


I. INTRODUCTION ........................................................................................ 1

II. SUMMARY OF FACTUAL ALLEGATIONS ....................................................... 1

A. The Parties and Claims. ................................................................................ 1

B. Plaintiff's travel to Israel with Roman. ........................................................... 1

C. Seven months later, Plaintiff reported alleged misconduct and Roman was removed from the Forum's office.......................................................................................... 2

D. Plaintiff's alleged complaints regarding an uncomfortable work environment. ......... 3

III. STANDARD OF REVIEW............................................................................ 3

IV. ARGUMENT ............................................................................................ 4

A. Plaintiff's discrimination claims under Title VII and the PHRA are time-barred. ..... 4

1. The continuing-violation doctrine cannot save Plaintiff's untimely claims because her claims lack any detail or specificity as to when the alleged conduct occurred. ........................................................................................ 5

2. The break in time between the specifically alleged misconduct and Plaintiff's general, conclusory allegations of misconduct renders the continuing-violation doctrine inapplicable to her claims. ......................................................... 7

B. Plaintiff's claims for the infliction of emotional distress should be dismissed (Counts XII and XIII)......................................................................................... 9

1. Count XII: Intentional Infliction of Emotional Distress. .................................. 9

2. Count XIII: Negligent Infliction of Emotional Distress.................................. 10

C. Plaintiff's claim against Roman under 18 Pa. C.S. A. § 2013(b) (Count X) should be dismissed. ....................................................................................... 11

D. Plaintiff's claim under 18 U.S.C. §§ 1591, 1595, the Trafficking Victims Protections Act ("TVPA") (Count XI) should be dismissed. ........................................... 12

E. Plaintiff's "alternative" claim for negligence should be dismissed (Count XI). ....... 13

V. CONCLUSION ......................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Oral Techs., LLC v. Nutrex Research, Inc.*,
No. 10-5303, 2011 WL 1080204 (D.N.J. Mar. 21, 2011) ....................................................4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................................................3

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)...............................................................................................3, 4

*Buczek v. First Nat. Bank of Mifflintown*,
531 A.2d 1122 (Pa. Super. Ct. 1987)...........................................................................9

*Coombs v. Target Corp.*,
2013 WL 664186 (E.D. Pa. Feb. 25, 2013) ..................................................................8

*Dunn v. Bucks Cnty. Comm. Coll.*,
2014 WL 2158398 (E.D. Pa. May 22, 2014) ................................................................6

*Fala v. Perrier Grp. Of AM.*,
2000 WL 688175 (E.D. Pa. May 25, 2000)...................................................................8

*Hallman v. PPL Corp.*,
2014 WL 349714 (E.D. Pa. Jan. 31, 2014)................................................................6, 7

*Hodges v. UPMC Presbyterian Shadyside Hosp.*,
2007 WL 654319 (W.D. Pa. Feb. 27, 2007)..................................................................8

*Malleus v. George*,
641 F.3d 560 (3d Cir. 2011)..........................................................................................4

*Mandel v. M7Q Packaging Corp.*,
706 F.3d 157 (3d Cir. 2013)......................................................................................5, 6

*Riley v. St. Mary Medical Ctr.*,
2014 WL 1632160 (E.D. Pa. Apr. 23, 2014) ................................................................6

*Rooney v. City of Philadelphia*,
623 F.Supp.2d 644 (E.D.Pa.2009) .............................................................................13

*Shad v. Delta Air Lines, Inc.*,
No. Civ. A. 14-5509, 2015 WL 1808696 (E.D. Pa. Apr. 20, 2015) ............................9, 10, 11

*Sicalides v. Pathmark Stores, Inc.*,
2000 WL 760439 (E.D. Pa. June 12, 2000) .......... 8

*United States v. McIntyre*,
612 F. App'x 77 (3d Cir. 2015) .......... 12

*Washington-Morris v. Bucks Cnty. Transp., Inc.*,
2018 WL 2021081 (E.D. Pa. May 1, 2018) .......... 4

*Weiley v. Albert Einstein Med. Ctr.*,
51 A.3d 202 (Pa. Super. 2012) .......... 10

**Statutes**

18 Pa.C.S.A. 3000 .......... 11

18 Pa. C.S. A. § 2013(b) .......... 11

18 Pa.C.S.A. § 3012(a) .......... 11

18 Pa.C.S.A. § 3012(b) .......... 11

43 Pa. C.S. § 959(h) .......... 5

18 U.S.C. § 1591 .......... 12

18 U.S.C. §§ 1591, 1595 .......... 12

42 U.S.C. § 2000e-2(a)(1) .......... 5

77 Pa. Cons. Stat. §48 .......... 14

## I. INTRODUCTION

Defendants The Middle East Forum ("MEF" or the "Forum"), Daniel Pipes ("Pipes"), Gregg Roman ("Roman"), and Matthew Bennett ("Bennett") (collectively, "Defendants") move to dismiss Claims I-V and X-XIII of Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

## II. SUMMARY OF FACTUAL ALLEGATIONS

Plaintiff's Complaint includes nearly 500 allegations, most of which are repetitive, conclusory, and not relevant to any of her the claims. Thus, Defendants will set forth the relevant, factual allegations pertinent only to the claims at issue in this Motion.

### A. **The Parties and Claims**.

Plaintiff's Complaint alleges claims against MEF, Pipes, Roman, and Bennett. (Complaint, at ¶¶ 7-9.) Pipes is the Forum's President and its most-senior leader. (*Id.* at ¶ 24.) Roman is currently the Forum's Director. (*Id.* at ¶¶ 18-19.) Bennett is alleged to be the Forum's Director of Development. (*Id.* at ¶ 9).

Her claims, brought under both statutory and common law, sound in gender and sex-based discrimination, hostile work environment, retaliation, and harassment.

Plaintiff began working for the Forum in mid-October 2017. (*Id.* at ¶ 16.) MEF hired her as an Executive Liaison. (*Id.* at ¶ 17.) She resigned in August 2019.

### B. **Plaintiff's travel to Israel with Roman**.

Plaintiff and Roman traveled to Israel together in April 2018 on a work trip. behalf of the Forum. (*Id.* at ¶ 172.) Due to the confidential-nature of the trip's purpose and given budget constraints, Roman asked Plaintiff not to tell others, except for select office staff that she would be traveling to Israel with him. (*Id.* at ¶¶ 167, 174.) Prior to leaving for Israel, Roman and Plaintiff discussed that they would be sharing an AirBnb. (*Id.* at ¶ 168.) Plaintiff agreed to

travel with Roman knowing that they would be sharing living quarters for the entirety of the trip. (*Id.* at ¶¶ 168, 169.) He did not in any way conceal this set-up from Plaintiff; she committed to the trip aware of the accommodations. (*Id.*)

Plaintiff alleges that while in Israel together, Roman sat down next to her on a couch and "put his feet under [her] butt." (*Id.* at ¶ 201.) He then, allegedly, said "Now that my foot is on your ass we have reached a new level." (*Id.* at ¶ 203.)

Plaintiff alleges that the night following the couch incident, Roman returned late at night to the AirBnb after having been drinking and began talking about his personal sexual experiences. (*Id.* at ¶ 206-210.) Plaintiff alleges that while sharing intimate details of his personal life, Roman was "infuriated" and "behaving in a sexually inappropriate and aggressive manner by pacing back and forth" while "complaining" about "sexual frustrations." (*Id.* at ¶ 211.) Roman's commentary, Plaintiff alleges, left her "highly offended and scared." She alleges that this diatribe subjected her to "unwelcome sexual advances." (*Id.* at ¶ 231.) She makes no allegations that on that night (or any other night) Roman tried to touch her or engage in any sexual act with her. (*See generally*, Compl.) She alleges only statements that he made regarding his sexual interactions with other women. (*See id.* ¶¶ 206-237.)

### C. Seven months later, Plaintiff reported alleged misconduct and Roman was removed from the Forum's office.

On November 1, 2018, the Forum's Director of Human Resources, Ms. Meyer, prepared a hand-written notice of Plaintiff's complaints of Roman's alleged misconduct. (*Id.* at ¶ 277.) While Plaintiff and her co-workers complained of general disapproval for Roman's supervisory style, only two specific instances of misconduct were cited—the incident involving Plaintiff in Israel, and another, alleged separate incident involving Plaintiff's co-worker in Washington D.C. (*See id.* ¶¶ 290-304.)

Until the dual filing of a Charge of Discrimination with the EEOC and PHRC in June 2019, Plaintiff did not make any further reports of alleged misconduct to the Forum or Pipes. (*See generally*, the Compl.)

### D. <u>**Plaintiff's alleged complaints regarding an uncomfortable work environment**</u>.

Plaintiff alleges that Roman subjected her to "severe and pervasive discrimination based upon her gender and sex." (*Id.* at ¶ 272.) In support of this, her allegations include, *inter alia*, the following:

- Roman asked Plaintiff to visit his for work purposes at nighttime (¶ 55), but she never went (¶ 117);
- Roman texted Plaintiff late at night (¶ 56);
- Roman "made sexually suggestive, unwelcome comments" to her (¶ 57);
- Roman "threatened" Plaintiff's job (¶ 65);
- Roman "screamed" at her (¶ 240);
- Roman "cursed" at her (¶ 241); and
- Roman did not treat Plaintiff's "similarly situated male coworkers in [a] discriminatory, abusive, hostile, and intolerable manner" (¶ 242);
- Roman commented on other women's appearances (¶¶ 260-61); and
- Roman used his "size and height to intimidate" Plaintiff (¶ 265).

Plaintiff alleges that Pipes, as the leader of the Forum, did not act appropriately to address Roman's alleged conduct. (*Id.* at ¶¶ 84-86.)

## III. STANDARD OF REVIEW

Defendants move to dismiss Counts I-V, and X-XIII of Plaintiff's Complaint for failure to state a claim upon which relief can be granted. A plaintiff must plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do." *Twombly*, 550 U.S. at 555. Conclusory allegations are "not entitled to be assumed true." *Iqbal*, 556 U.S. at 681 (citing *Twombly*, 550 U.S. at 554-55). Moreover, the factual allegations

in a plaintiff's complaint must be enough to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Thus, allegations based upon a plaintiff's "information and belief" are insufficient because they are based on mere speculation. *See, e.g., Advanced Oral Techs., LLC v. Nutrex Research, Inc.*, No. 10-5303, 2011 WL 1080204, at *4 n. 6 (D.N.J. Mar. 21, 2011) ("Allegations made upon information and belief—which are little more than conjecture and wishful thinking—have little hope of salvaging an otherwise defective complaint.").

The Third Circuit uses a three-step process for determining the sufficiency of a complaint. First, this Court should "'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 675). Second, this Court "should identify those allegations that 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Third, "'w[hen] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id.*

## IV. ARGUMENT

### A. Plaintiff's discrimination claims under Title VII and the PHRA are time-barred.

Plaintiff alleges parallel claims under Title VII and the Pennsylvania Human Relations Act ("PHRA"). She brings two claims against MEF under Title VII: a claim for discrimination based a hostile work environment (Count I); and a retaliation claim (Count II). Plaintiff brings three claims under the PHRA. She brings two separate claims for discrimination—one against MEF (Count III) and a second against the individual defendants, Pipes, Roman, and Bennett (Count V). She also brings a PHRA claim for retaliation against all defendants (Count IV). Courts in Pennsylvania "generally interpret the PHRA in accordance with its federal counterparts, such as Title VII." *Washington-Morris v. Bucks Cnty. Transp., Inc.*, 2018 WL

2021081, *4 (E.D. Pa. May 1, 2018) (citing *Kell v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996)).

Before Plaintiff can file a claim under Title VII or the PHRA, she must exhaust administrative remedies. Claims filed with the EEOC alleging violations of Title VII must be filed within 300 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e-2(a)(1). Claims brought under the PHRA must first be filed as an administrative complaint with the PHRC within 180 days of the alleged discriminatory act. 43 Pa. C.S. § 959(h). "Discrete discriminatory acts are not actionable" if they are timed barred, "even when they are related to acts alleged in timely filed charges." *Mandel v. M7Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S.Ct. 2016, 153 L.Ed.2d 106 (2002)).

Here, Plaintiff has not alleged a single, discrete incident which occurred within the statutorily-prescribed windows. (*See generally*, Compl.) Her complaint is filled with literally hundreds of vague, conclusory allegations referring to Roman's behavior and MEF's and Pipes' reactions to reports of Roman's behavior. But she has not alleged a single incident which is tied to any date within the relevant time period. Her only specific allegations involve the Israel trip. But this occurred in April 2018 (*id.* at ¶ 172), well outside the 180/300 day limitations periods. Without any specific dates tied to the allegations of wrongdoing, Plaintiff's pleading fails to show that her claims are timely. They should, therefore, be dismissed.

1. **The continuing-violation doctrine cannot save Plaintiff's untimely claims because her claims lack any detail or specificity as to when the alleged conduct occurred.**

The continuing-violation doctrine provides that "discriminatory acts that are not individually actionable may be aggregated to make out a hostile work environment claim; such acts 'can occur at any time so long as they are linked in a pattern of actions which continues into

the applicable limitations period.'" *Mandel*, 706 F.3d at 165 (quoting *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006)). "To allege a continuing violation, the plaintiff must show that all acts which constitute the claim are part of the same unlawful employment practice and that at least one act falls within the applicable limitations period." *Mandel*, 706 F.3d at 165-66. This is done by "show[ing] that: (1) 'at least one discriminatory act occurred within the 300-day period;' and (2) the incidents are a continuing pattern of discrimination, rather than isolated or sporadic acts of intentional discrimination.'" *Dunn v. Bucks Cnty. Comm. Coll.*, 2014 WL 2158398, at *4 (E.D. Pa. May 22, 2014) (quoting *Horvath v. Rimtec Corp.*, 102 F.Supp.2d 219, 230 (D.N.J. 2000)). The Third Circuit directs its district courts "to examine the subject matter of the underlying occurrences (that is, whether the occurrences constitute the same type of discrimination), and the frequency of those occurrences" when determining "whether the conduct or action(s)" a plaintiff alleges "are properly characterized as a discrete act or a continuing violation." *Hallman v. PPL Corp.*, 2014 WL 349714, *13 (E.D. Pa. Jan. 31, 2014).

Alleging specific dates is critical, because without dates a court cannot determine whether claims are timely. Where a plaintiff fails to allege "when or what other acts were part of a pattern of discrimination" it is too "unclear" for the court to be able to determine whether the continuing violation doctrine applies. *Dunn v. Bucks Cnty. Comm. Coll.*, 2014 WL 2158398, at *4 (E.D. Pa. May 22, 2014) (granting motion to dismiss as to claims arising prior to the date 300 days before EEOC charge was filed). If some specific acts are alleged along with other general acts which "continued throughout periods of [a plaintiff's] employment," at least one of the specific acts must "fall within the limitations period." *See Riley v. St. Mary Medical Ctr.*, 2014 WL 1632160, *3-4 (E.D. Pa. Apr. 23, 2014) (dismissing hostile work environment claim under PHRA as time-barred). If no specifically dated incident is alleged to have occurred during the

applicable 300 or 180-day windows, the claims should be dismissed. *Id.* In *Hallman*, the district court concluded that a retaliation claim premised upon actions taken two-plus years before the incidents alleged within 300 days of the filing of the EEOC charge were barred. *Hallman*, 2014 WL 349714 at *14. The time between the alleged retaliatory conduct and a later-incident more than two years later was found not to be a "persistent, ongoing pattern" supportive of a continuing violation claim. *Id.*

Here, Plaintiff has not alleged a single, discrete incident which occurred within the statutorily-prescribed window. (*See generally*, Compl.) Her complaint is filled with literally hundreds of vague, conclusory (and redundant) allegations. The only specific allegation against Roman (the Israel trip) happened more than 450 days before the Plaintiff filed her EEOC/PHRC charges. Further, the allegations relating to the Israel trip involve unwanted touching. But the series of undated allegations are much different; they are more akin to general workplace gripes. Thus, they are not related enough to support an application of the continuing-violation doctrine. *See Hallman*, 2014 WL 349714 at *14. She alleges that Roman yelled, cursed, and made her feel uncomfortable, but she has not alleged a single incident of the same which is tied to any date within the relevant time period. She alleges that Pipes essentially turned a blind eye to Roman's behavior, but she likewise has not alleged a single incident having occurred during the relevant time period. Without any specific dates tied to the allegations of wrongdoing, Plaintiff's pleading fails to show that her claims are timely. Therefore they should be dismissed.

2. **The break in time between the specifically alleged misconduct and Plaintiff's general, conclusory allegations of misconduct renders the continuing-violation doctrine inapplicable to her claims.**

The break in time between the alleged misconduct which occurred in March 2018, Plaintiff's reporting of the incident to Pipes and the Forum in November 2018, and her filing with the EEOC is far too attenuated to support a viable claim under the doctrine. A "break in

time destroys the pattern of harassment and does not establish a continuing violation because the prior acts are temporarily too attenuated to enable Plaintiff to keep those claims alive." *Coombs v. Target Corp.*, 2013 WL 664186, at *4 (E.D. Pa. Feb. 25, 2013) (finding that nearly two-year breach destroyed the pattern of harassment) (citing *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 715 (3d Cir. 1997) (affirming district court's ruling that a seven-month break between two employment periods precluded plaintiff from claiming a continuing violation because the 'passage of nearly seven months [was] significant' because the 'hiatus provided an opportunity for the lingering effects of the prior incidents to dissipate"); *Hodges v. UPMC Presbyterian Shadyside Hosp.*, 2007 WL 654319, at *1 (W.D. Pa. Feb. 27, 2007) (finding alleged harassing acts from two years earlier to be "temporally too far removed to enable [p]laintiff to keep her claims alive"); *Sicalides v. Pathmark Stores, Inc*., 2000 WL 760439, at *6 (E.D. Pa. June 12, 2000) (concluding that a three-month break between alleged discriminatory acts precludes application of a continuing violation theory); *Fala v. Perrier Grp. Of AM.*, 2000 WL 688175, at *11-12 (E.D. Pa. May 25, 2000) (stating that "courts in this circuit have refused to apply a continuing violation theory…in cases involving prolonged period during which no harassment occurred" and concluding that a ten-month period between the last timely act of alleged discrimination and the first untimely act precluded the plaintiff from showing a continuing violation).

Plaintiff alleges that Roman touched her with his feet in April 2018. But she waited nearly seven months before reporting this "misconduct." And even after waiting this inexplicable period of time, she waited another eight months before dually filing her charge with the EEOC and PHRC. In the meantime, she alleges only vague and generalized allegations of conduct that made her feel "uncomfortable" in the Forum's office. And she does not allege when any of this

misconduct allegedly occurred. For this reason, too, Plaintiff's discrimination claims and hostile work environment claims under Title VII and the PHRA should be dismissed.

### B. Plaintiff's claims for the infliction of emotional distress should be dismissed (Counts XII and XIII).[1]

#### 1. Count XII: Intentional Infliction of Emotional Distress.

Plaintiff's pleading fails to set forth a claim for intentional infliction of emotional distress ("IIED"). "[T]he bar to show IIED is high" under Pennsylvania law, and Plaintiff has failed to meet that bar. *Shad v. Delta Air Lines, Inc.*, No. Civ. A. 14-5509, 2015 WL 1808696, at *14 (E.D. Pa. Apr. 20, 2015) (dismissing claim for IIED). IIED claims require that the plaintiff show that the conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Buczek v. First Nat. Bank of Mifflintown*, 531 A.2d 1122, 1125 (Pa. Super. Ct. 1987). It is not enough to constitute IIED under Pennsylvania law that the defendant "acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that this conduct has been characterized by malice, or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." *Shad*, 2015 WL 1808696, at *14 (quoting *Hoy*, 720 A.2d 745, 754 (Pa. 1998)).

The Pennsylvania Supreme Court has concluded that being "subjected to repeated sexual propositions, vulgar comments and profanity on a regular basis, off-color-jokes, [and] unwanted physical contact" falls "short of the egregious conduct IIED is meant to reach." *Id.* (citing *Hoy*, 720 A.2d at 747). And the Third Circuit has expressly addressed this principle in light of alleged sexual harassment: "As a general rule, sexual harassment alone does not rise to the level of

[1] Counts XII and XIII are both labeled as being an "Alternative Pleading." This designation is unknown to Defendants but they nonetheless move to dismiss the claims for the reasons set forth herein.

outrageous necessary to make out a cause of action for the intentional infliction of emotion distress." *Id.* (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1487 (3d Cir.1990)). Plaintiff's threadbare recitations of general unfavorable conduct is not sufficient to show outrageous conduct giving rise to an IIED claim.

Her IIED claim (Count XII) should be dismissed, with prejudice.

2. **Count XIII: Negligent Infliction of Emotional Distress.**

Plaintiff's claim for negligent infliction of emotional distress ("NIED") likewise fails due to being insufficiently pled. Claims for NIED are limited to "four factual scenarios: (1) situations where the defendant had a contractual or fiduciary duty toward the plaintiff; (2) the plaintiff was subjected to physical impact; (3) the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending injury; or (4) the plaintiff observed a tortious injury to a close relative." *Weiley v. Albert Einstein Med. Ctr.*, 51 A.3d 202, 217 (Pa. Super. 2012).

Plaintiff has not alleged any of these scenarios. She, in conclusory fashion, alleges that Defendants "owed [her] a duty of care to safeguard her mental and physical wellbeing." (Compl., at ¶ 486.) First, there is no basis for this alleged duty. Second, even if this were a duty owed to Plaintiff, it is neither a contractual nor fiduciary duty—the only two duties which, if breached, can give rise to an NIED claim. *See Weiley*, 51 A.3d at 217.

Furthermore, Pennsylvania courts have adopted the Restatement (Second) of Torts, § 436A, which bars recover for NIED where there is no bodily harm. *Shad*, 2015 WL 1808696, at *15 (citing *Crivellaro v. Pennsylvania Power & Light Co.*, 491 A.2d 207, 209 (Pa. Super. Ct. 1985)). "[V]ague and generalized ailments do not constitute the various specific injuries that satisfy the "bodily harm" element of an NIED claim. *Id.* Bodily harm is not established by allegations of "damage to reputation, severe emotional distress, humiliation, depression, and other physical ailments and emotional damages." *Id.* Even stress-related medical conditions for

which a plaintiff seeks and receives medical treatment does not satisfy the "bodily harm" requirement. *Id.* (dismissing NIED claim given lack of bodily harm). Plaintiff's only allegation of harm states that she suffered "genuine and emotional distress, which manifested itself in physical illness and psychological damage." (Compl., at ¶ 540.) This lone, generalized allegation, even taken as true, is not sufficient to establish bodily harm. *See Shad*, 2015 WL 1808696, at *15.

Plaintiff's claim for NIED (Count XIII) should be dismissed, with prejudice.

### C. **<u>Plaintiff's claim against Roman under 18 Pa. C.S. A. § 2013(b) (Count X) should be dismissed</u>.**

Plaintiff's attempt to bring a human trafficking claim against Roman is simply absurd. Her claim under Pennsylvania laws prohibiting "involuntary servitude" fails as she has not alleged that Roman engaged in any of the enumerated acts in 18 Pa.C.S.A. § 3012(b). A person is liable for subjecting another to "involuntary servitude" where he "knowingly … subjects an individual to labor servitude or sexual servitude" by way of any one of 13 enumerated means. 18 Pa.C.S.A. § 3012(a). These include, *inter alia*, "causing or threatening to cause serious harm to any individual"; "physically restraining or threatening to physically restrain another individual"; "kidnapping or attempting to kidnap any individual"; "taking or retaining the individual's personal property or real property"; "extortion"; "fraud"; and other expressly prohibited means. 18 Pa.C.S.A. § 3012(b). The statutory scheme defines "labor servitude" as labor "performed or provided by another individual and is induced or obtained by any of the means set forth in section 3012(b). 18 Pa.C.S.A. 3000. Similarly, "sexual servitude" is defined as "any sex act or performance involving a sex act for which anything of value is directly or indirectly given, promised to, or received by any individual or which is performed or provided by any individual and is induced or obtained" by the "means set forth in section 3012(b)." *Id.*

For many reasons made clear by even a cursory reading of the statute, Plaintiff's claim fails. She has not alleged that Roman committed a single one of the 13 methods of inducing servitude set forth under 3012(b). Furthermore, she has not alleged any "sex act" which could give rise to "sexual servitude."

This claim should be dismissed with prejudice.

**D. Plaintiff's claim under 18 U.S.C. §§ 1591, 1595, the Trafficking Victims Protections Act ("TVPA") (Count XI) should be dismissed.**

Plaintiff's claim under the TVPA fails because she has not alleged that she committed or engaged in any commercial sex act as a result of Roman's coercion, recruitment, or enticement. In fact, she has not alleged a single commercial sex act at all. Under § 1591, a defendant is liable where, in a way "affecting interstate or foreign commerce" he acts "knowing that force, fraud, or coercion will be used to cause the victim to engage in a commercial sex act." *See* 18 U.S.C. § 1591; *United States v. McIntyre*, 612 F. App'x 77, 81 (3d Cir. 2015). This statute makes it a "crime for anyone to recruit or entice a person to engage in a commercial sex act, 'knowing or in reckless disregard of the fact, that means of force, threats of force, fraud, [or] coercion…will be used to cause the [victimized] person to engage' in such act." *United States v. McIntyre*, No. Crim. A. 13-361, 2014 WL 1281054, at *1 (E.D. Pa. Mar. 31, 2014), *aff'd* 612 F. App'x 77 (3d Cir. 2015). A "commercial sex act" is "any sex act" performed or engaged in "on account of which anything of value is given or received."

First, Plaintiff's complaint is entirely devoid of any sex act at all, nonetheless one that was premised on any exchange for value. (*See generally*, Compl.) Plaintiff's only semi-relevant allegation refers to Roman's "**attempt**[] to coerce Plaintiff to engage in unwanted sexual act for a commercial benefit." (Compl., at ¶ 477 (emphasis added).) But Plaintiff does not allege a

specific sexual act. And, even if it were, it still would be insufficient because the statute requires that there be a committed act in order for liability to attach.

Second, Plaintiff has not alleged how Roman's conduct affected foreign commerce. She alleges that he engaged inappropriate conduct in Israel, a foreign nation, but there are no allegations that Roman's conduct in any way "affected foreign commerce." Nor could there be. Both Roman and Plaintiff willingly and independently travelled to Israel for business purposes.

Furthermore, to the extent Plaintiff's TVPA claims is based on the events she alleges occurred in Israel, this is simply not the type of conduct intended to be protected by the TVPA. If such conduct could give rise to a claim under a statute intended to prohibit human trafficking, an absurd and unfathomable volume of actions would result. This was not the intended purpose of the Act and Plaintiff's attempt to abuse a statutory scheme intended to protect a most deserving class of victims should be disregarded.

For these reasons, Plaintiff's claim under the TVPA should be dismissed, with prejudice.

**E. Plaintiff's "alternative" claim for negligence should be dismissed (Count XI).**[2]

Plaintiff's alternative claim for negligence brought against all Defendants fails because Defendants did not owe the alleged duty of care to Plaintiff. In order to make out a *prima* facie case for negligence, Plaintiff must establish: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the defendant's breach of the duty and the resulting injury; and (4) actual loss or damage suffered by the plaintiff. *Rooney v. City of Philadelphia*, 623 F.Supp.2d 644 (E.D. Pa. 2009). Here, Plaintiff alleges Defendants owed her the "duty of care to safeguard her mental and physical health and wellbeing." (Compl. at ¶ 486).

[2] Plaintiff has two "Eleventh Causes of Action" in her Complaint. The second Eleventh Cause (Count XI) is labeled as being an "Alternative Pleading." This designation is unknown to Defendants but they nonetheless move to dismiss the claims for the reasons set forth herein.

However, there is no such duty of care owed by an employer to an employee. It is clear that Plaintiff has set forth a frivolous claim. Plaintiff has failed to establish any duty of care owed by Defendants. Because there has been no standard of care that that Defendants deviated from, there is no breach of the duty. Further, even if a duty existed, Plaintiff's claim is covered by Pennsylvania's Worker's Compensation bar. 77 Pa. Cons. Stat. §481. Therefore, Plaintiff's negligence argument fails and should be dismissed with prejudice.

## V. CONCLUSION

For the reasons set forth above, the Court should dismiss with prejudice Ms. Barbounis' claims.

Respectfully submitted

By: */s/ David J. Walton*
David J. Walton
Leigh Ann Benson
COZEN O'CONNOR
One Liberty Place
1650 Market Street
Philadelphia, PA 19103
Phone: (215) 665-2000

*Attorneys for Defendants The Middle East Forum, Daniel Pipes, Gregg Roman, and Matthew Bennett*

Dated: November 27, 2019