**COZEN O'CONNOR**
David J. Walton (PA #86019)
Leigh Ann Benson (PA #319406)
1650 Market Street, Suite 2800
Philadelphia, PA 19103
P: 215-665-2000
F: 215-665-2013
dwalton@cozen.com
lbenson@cozen.com

*Attorneys for Defendants*
*The Middle East Forum,*
*Daniel Pipes, and Gregg*
*Roman*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LISA BARBOUNIS | : | |
| Plaintiff, | : | CIVIL ACTION |
| -vs- | : | NO. 2:19-cv-05030-JDW |
| | : | |
| THE MIDDLE EAST FORUM, GREGG | : | |
| ROMAN (*individually*), DANIEL PIPES | : | |
| (*individually*), and MATTHEW | : | TRIAL BY JURY |
| BENNETT (*individually*), | : | |
| Defendants | : | |
| | : | |
| | : | |
| | : | |

## <u>DEFENDANTS THE MIDDLE EAST FORUM, MR. GREGG ROMAN, AND MR. DANIEL PIPES' ANSWER TO PLAINTIFF'S CONSOLIDATED CIVIL ACTION COMPLAINT WITH AFFIRMATIVE DEFENSES</u>

Defendants The Middle East Forum ("MEF"), Gregg Roman ("Mr. Roman"), and Daniel

Pipes ("Mr. Pipes"), (collectively, "Defendants"),[1] by counsel, hereby file the foregoing Answer

with Affirmative Defenses and Counterclaims to the Consolidated Complaint of plaintiff Lisa

Barbounis ("Ms. Barbounis" or "Plaintiff") and aver the following:

---

[1] Co-defendant Mr. Matthew Bennett will filed a separate Motion to Dismiss in lieu of an answer.

# I.    PARTIES

1.      Plaintiff Lisa Barbounis ("Plaintiff" or "Ms. Barbounis") is an adult individual who resides in the Commonwealth of Pennsylvania.

**Answer:  Admitted in part, denied in part.  Defendants admit that the plaintiff in this action is Ms. Lisa Barbounis.  Defendants are without knowledge as to Plaintiff's residence and therefore the remainder of the allegation is denied.**

2.      Defendant Middle East Forum ("MEF") is a business organization existing under the laws of the Commonwealth of Pennsylvania with an address for the purposes of service 1650 Market Street, Suite 3600, Philadelphia, PA 19103.

**Answer:  Admitted.**

3.      Defendant, Daniel Pipes is an adult individual who resides in the Commonwealth of Pennsylvania with a business address for the purpose of service at 1650 Market Street, Suite 3600, Philadelphia, PA 19103**.**

**Answer:  Admitted.**

4.      Defendant Greg Roman is an adult individual who resides in the Commonwealth of Pennsylvania with a business address for the purpose of service at 1650 Market Street, Suite 3600, Philadelphia, PA 19103.

**Answer:  Admitted.**

5.      Matthew Bennett is an adult individual who resides in the Commonwealth of Pennsylvania with a business address for the purpose of service at 1650 Market Street, Suite 3600, Philadelphia, PA 19103.

**Answer:  Denied**.

6.      At all times relevant to this action, Defendant, Greg Roman, Defendant, Matthew Bennett, and Defendant, Daniel Pipes aided and abetted under discrimination and harassment and retaliation in the workplace to which Plaintiff was subjected by Defendants.

**Answer:  Denied.**

7.      At all times relevant to this Civil Action, Defendant, Daniel Pipes, Defendant Greg Roman, and Defendant Matthew Bennett were employees of Defendant, The Middle East Forum, and held supervisory authority over Plaintiff, Lisa Barbounis during Plaintiff's employment for Defendants.

> **Answer:   Admitted in part, denied in part.  It is admitted only that at times, Mr. Pipes, Mr. Roman, and Mr. Bennett were employees of MEF.  It is admitted that at times Mr. Roman and Mr. Pipes had supervisory authority over Plaintiff.  It is denied that at all time relevant Mr. Roman had supervisory authority over Plaintiff. Mr. Roman did not have supervisory authority over Plaintiff after November 5, 2018.  It is denied that at all relevant times Mr. Bennett had supervisory authority over Plaintiff.**

8.      Defendant, Daniel Pipes is the President of The Middle East Forum and held supervisory authority over Plaintiffs, Lisa Barbounis.

**Answer:   Admitted.**

9.      Defendant, Greg Roman is the Director of The Middle East Forum and held supervisor authority over Plaintiff, Lisa Barbounis.

> **Answer:  Admitted in part, denied in part.  It is admitted that Mr. Roman held supervisory authority over Plaintiff until November 1, 2018.  It is denied that Mr. Roman held supervisory authority over Plaintiff after November 1, 2018.**

10.     Matthew Bennett holds the position of Director of Development for The Middle East Forum and held supervisory authority of Plaintiff, Lisa Barbounis.

> **Answer:  Admitted in part, denied in part.  It is admitted only that at times, Mr. Bennett held supervisory authority over Plaintiff.  It is denied that Mr. Bennett holds the position of Director of Development for The Middle East Forum.**

## II.      NATURE OF THE CASE

11.      Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as

codified, 42 U.S.C. §§ 2000e to 20003-17 (amended in 1972, 1978, by the Civil Rights Act of

1991, Pub. L. No. 102-166) ("Title VII"); Title 43 PS Labor § 955, the Pennsylvania Human

Relations Act, as amended, 43 P.S. §§ 951, *et. seq.* ("PHRC"), under the laws of the

Commonwealth of Pennsylvania; and under the Philadelphia Fair Practices Ordinance, § 9-1100

*et. seq.* ("PFPO") and seeks damages to redress injuries Plaintiff suffered as a result of

Defendants' discrimination, harassment, retaliation and the hostile work environment which

ultimately led to Plaintiffs unlawful termination from her employment for Defendants.

Accordingly, Plaintiff brings this Civil Action to redress injuries Plaintiff suffered as a direct

result of violations of federal laws, the laws of the Commonwealth of Pennsylvania and the laws

of the City of Philadelphia and seeks damages to redress the injuries Plaintiff has suffered as a

result of being discriminated against on the basis of her sex and gender, sexually harassed,

sexually assaulted, forced to endure a hostile work environment, and retaliated against by her

employer for reporting such discrimination and harassment.

> **Answer:  Admitted in part, denied in part.  It is admitted only that Plaintiff brings
> claims under Title VII of the Civil Rights Act of 1964.  It is denied that Plaintiff is
> bringing claims under the PHRC and PFPO.  Defendants further deny the
> remainder of this allegation and deny that Plaintiff was subject to any of the
> conduct complained of and deny all liability.**

## III.      JURISDICTION AND VENUE

12.      This action involves a Question of Federal Law under Title VII of the Civil Rights

Act of 1964.  The honorable Court will have supplemental jurisdiction over the Commonwealth

Law and Municipal Law Causes of Action.

> **Answer:  Admitted in part, denied in part.  It is admitted that this action involves a
> question of federal law under Title VII of the Civil Rights Act of 1964.  As Plaintiff**

**has not alleged claims under Pennsylvania and municipal common law, the remainder of this allegation is denied.  By way of further response, Plaintiff has alleged two tort claims which this Court may exercise supplemental jurisdiction over.  Defendants are not challenging Plaintiff's venue selection.**

13.     Plaintiffs causes of action under the Pennsylvania Human Relations Act and the Philadelphia Fair Practices Ordinance are ripe for suit as it has been more than one (1) year since Plaintiff's Charge of Discrimination was dual filed with the Pennsylvania Human Relations Commission and the Philadelphia Commissions on Human Relations.

**Answer:  Denied as a conclusion of law.**

14.     Venue is proper in the Eastern District of Pennsylvania as Plaintiff was employed by Defendants and worked in the City of Philadelphia in the Commonwealth of Pennsylvania where the discrimination, harassment and hostile work environment complained of occurred.

**Answer:  Admitted in part, denied in part.  It is admitted only that venue is proper In this district.  Defendants are not challenging Plaintiff's venue selection.  It is denied that Plaintiff was subject to the complained of discrimination, harassment, and a hostile work environment.**

15.     On or around June 20, 2019, Plaintiff, Lisa Barbounis filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendants as set forth herein.  Plaintiffs Charge of Discrimination was dual filed with the Pennsylvania Human Relations Commission and the Philadelphia Commission on Human Relations.

**Answer:  Admitted.**

16.     On or about December 31, 2019, Plaintiff, Lisa Barbounis filed a second Charge of Discrimination with the Equal Employment Opportunity Commission which was dual filed with the Pennsylvania Human Relations Commission and the Philadelphia Commission on Human Relations.

**Answer:   Admitted, upon information and belief.**

17.     The EEOC issued a Dismissal and Notice of Rights pursuant to both Charges of Discrimination filed at the EEOC.

**Answer:  Admitted, upon information and belief.**

18.     Both Civil Action Complaints were filed within ninety (90) days of the date with Plaintiff received the Dismissal and Noticed of Rights from the EEOC.

**Answer:   Denied.**

## IV.     MATERIAL FACTS

19.     Plaintiff, Lisa Barbounis began her employment for Defendant, The Middle East Forum ("MEF") sometime around October 16, 2017.

**Answer:  Admitted.**

20.     Plaintiff was hired as an Executive Liaison and began her employment at MEF working with supervisors, Defendant, Daniel Pipes, Defendant, Greg Roman, and Defendant, Matthew Bennett.

**Answer:  Admitted in part, denied in part.  It is admitted only that Plaintiff was hired as an Executive Liaison and she began her employment under the supervisory authority of Mr. Pipes and Mr. Roman.  It is denied that Mr. Bennett was Plaintiff's supervisor at any time.**

21.     From the onset of her employment, Defendant, Greg Roman subjected Plaintiff, Lisa Barbounis to discrimination and harassment in the workplace based upon Plaintiff's sex and gender.

**Answer:  Denied.**

22.     Defendant, Greg Roman sexually harassed Plaintiff, Lisa Barbounis and propositioned Plaintiff, Lisa Barbounis for sex and made unwelcome unwanted sexual advances.

**Answer:  Denied.**

23.     Defendant, Greg Roman has visited unwelcome, inappropriate, lewd, unwelcome sexual advances upon at least ten (10) women during his employment for Defendants.

**Answer:  Denied.**

24.     Defendant, Daniel Pipes is aware of Defendant, Greg Roman's inappropriate, lewd, unwelcome sexual harassment of female employees and female colleagues and at all times material to this civil action has protected, shielded and indemnified Defendant, Greg Roman for consequences for Defendant Greg Roman's unlawful inappropriate sexual conduct.

**Answer:  Denied.**

25.     Accordingly Defendant, Daniel Pipes has permitted, condoned, allowed and sanctioned the discrimination, harassment and unwelcome sexual misconduct of Defendant, Greg Roman.

**Answer:  Denied.**

26.     Plaintiff claims violations of the continuous violations doctrine as Plaintiff was subjected to severe and pervasive discrimination and harassment in the workplace beginning within months of when Plaintiff, Lisa Barbounis began her employment for Defendants which was around October 2017.

**Answer:  Admitted in part, denied in part.  It is admitted only that this allegation summarizes Plaintiff's action.  Defendants deny all liability and deny that Plaintiff was subjected to severe and pervasive discrimination and harassment in the workplace.**

27.     Defendant, Greg Roman's unwelcome sexual harassment of Plaintiff, Lisa Barbounis began sometime around October 2017 and continued until within 300 days of when Plaintiff filed a Charge of Discrimination with the EEOC sometime around June 2019.

**Answer:  Denied**.

28.     Defendant Greg Roman began a campaign of sexual harassment and abuse to which Plaintiff, Lisa Barbounis was subjected.

 **Answer:  Denied.**

29.     This campaign of sexual harassment and abuse began within months of when Plaintiff began her employment.

**Answer:  Denied.**

30.     Defendant Greg Roman continued his campaign of sexual harassment and abuse from sometime around December 2017 until November 2018 when Defendant, Greg Roman was forced to discontinue visited to MEF's Philadelphia office.

**Answer:  Denied.**

31.     Defendant, Daniel Pipes notified Defendant, Greg Roman that to protect the safety of the female staff, Defendant, Greg Roman was no longer permitted to visit the Philadelphia office and MEF headquarters.

**Answer:  Denied.**

32.     Defendant Greg Roman was forced to discontinue working at the MEF headquarters in Philadelphia because of the severe and pervasive discrimination and harassment to which he subjected Plaintiff, Lisa Barbounis and other female employees who worked for MEF.

**Answer:  Denied.**

33.     Defendant, Greg Roman's campaign of sexual harassment and abuse started sometime around December 2017 and continued for about one year until November 2018.  This one year period is the continuous period during which Plaintiff, Lisa Barbounis was subjected to a severe and pervasive, hostile work environment.

**Answer:  Denied.**

34.     The discrimination did not stop and start but occurred on a regular and continuous basis from December 2017 until December 2018.

**Answer**:  **Denied.**

35.     Defendant, Greg Roman initiated a campaign of continuous sexual abuse and sexual harassment to which Plaintiff, Lisa Barbounis was subjected during her employment for Defendants.

**Answer:  Denied.**

36.     Plaintiff filed her Charge of Discrimination June 20, 2019.  A theory predicated upon the continuous violations doctrine will include all acts that contributed to the hostile work environment as long as the last act occurred within the statutory period.  Plaintiff's statute of limitations for filing her Charge of Discrimination under federal protections and the Philadelphia Fair Practices Ordinance ("PFPO") is three-hundred (300) days.

**Answer:  Denied as a conclusion of law.**

37.     Three-hundred days prior to June 20, 2019 is August 25, 2018.  Defendant Greg Roman's continuous campaign of sexual harassment and abuse far beyond the August 25, 2018 statute of limitations and did not end until November 2018.

**Answer:  Denied.**

38.     Accordingly, Plaintiff, Lisa Barbounis claims violations of the continuing violations doctrine and includes all acts of sexual harassment and abuse that occurred beginning December 2017 and continuing until November 2018 which contributed to the hostile work environment.

**Answer:  Denied.**

39.     Defendant, Greg Roman's comments and conduct may have started before the August 25, 2019 statutory period, however, the campaign of sexual harassment and abuse continued without pause until November 2018 when Defendant, Greg Roman was forced to stop visiting Middle East Forum headquarters.

**Answer:  Denied.**

40.    Defendant, Greg Roman could no longer visit MEF headquarters because of the severe and pervasive sexual harassment to which Plaintiff, Lisa Barbounis was subjected on a continuous basis without pause from December 2017 until November 2018.

**Answer: Denied.**

41.    Within this period of time, Defendant Greg Roman spoke to Plaintiff, Lisa Barbounis about sex and sexually inappropriate topics.

**Answer: Denied.**

42.    Defendant, Greg Roman asked Plaintiff, Lisa Barbounis whether she would "be with" a Jewish man.

**Answer: Denied.**

43.    Defendant, Greg Roman asked Plaintiff what time of men she liked to date.

**Answer: Denied.**

44.    Defendant, Greg Roman asked Plaintiff what type of men she liked and what her type was.

**Answer: Denied.**

45.    Defendant, Greg Roman asked Plaintiff to describe the men she liked to hook up with.

**Answer: Denied.**

46.    Defendant, Greg Roman's attempts to engage Plaintiff, Lisa Barbounis in conversations about romantic and sexual relationships occurred on a regular basis and was part of Defendant, Greg Roman's sexual advances to which he subjected Plaintiff on a regular basis beginning December 2017 and ending November 2018.

**Answer: Denied.**

11

47.     Defendant, Greg Roman invited Plaintiff, Lisa Barbounis to his home on several occasions beginning prior to August 25, 2018 and extending until November 2018 attempted to lure Plaintiff, Lisa Barbounis to his home.

**Answer:  Denied.**

48.     Defendant, Greg Roman has a modus operandi where he attempts to lure women to his home or hotel room under the pretense of engaging in work and then uses the encounter to compel sex or make inpatriate unwelcome sexual advances.

**Answer:  Denied.**

49.     Defendant, Greg Roman sent text messages to Plaintiff late at night and made sexually suggestive and unwelcome comments.

**Answer:  Denied.**

50.     This conduct occurred on a continuous basis and extended from prior to August 25, 2018 until November 2018.

**Answer:  Denied.**

51.     Defendant, Greg Roman forced Plaintiff to sit with him alone in his office and watch videos.

**Answer:  Denied.**

52.     Defendant, Greg Roman would not simply send Plaintiff a link to a video and suggest or request that Plaintiff viewed the video.  Defendant, Greg Roman ordered Plaintiff to get a chair and bring it behind his desk so that they had to sit next to one-another to watch the videos.

**Answer:  Denied.**

53.     Defendant, Greg Roman leered at Plaintiff in a sexually suggestive manner and sat inappropriately close to Plaintiff and stared at Plaintiff.

**Answer:  Denied.**

54.     Defendant, Greg Roman's sexual advances to which he subjected Plaintiff on a regular basis began December 2017 and ending November 2018.

**Answer:  Denied.**

55.     Defendant, Greg Roman stared at Plaintiff's backside and spoke to Plaintiff in a sexually inappropriate manner.

**Answer:  Denied.**

56.     Defendant, Greg Roman's sexual advances to which he subjected Plaintiff on a regular basis began December 2017 and ending November 2018.

**Answer:  Denied.**

57.     Defendant, Greg Roman invited Plaintiff Lisa Barbounis to to spend time with him socially.  This conduct started December 2017 and ended November 2018.

**Answer:  Denied as stated.  By way of further response, Mr. Roman and Ms. Barbounis engaged in social settings outside of the Middle East Forum offices.  Most often, Barbounis initiated the social interactions and invited Mr. Roman to socialize outside of the office.  At other times, Mr. Roman initiated the social activities.  At no time was Plaintiff pressured or forced to socialize with Mr. Roman against her own wishes or free will. Ms. Barbounis invited Mr. Roman on multiple occasions to events outside of the office including Happy Hours, Bowling, Children's Birthday Parties, and Shopping Trips.**

58.     In April 2018, Defendant, Greg Roman sexually assaulted Plaintiff, Lisa Barbounis when he stuck his foot under Plaintiff's rear-end and made an unwelcome sexual suggestion.

**Answer:  Denied.**

13

59.     Defendant, Greg Roman's physical use of force was aimed at the same objectives which Defendant, Greg Roman had tried to achieve from December 2017 until November 2018.

**Answer:  Denied.**

60.      Defendant, Greg Roman tried once again to proposition Plaintiff however in April 2018, Defendant, Greg Roman used force to do so.

**Answer:  Denied.**

61.     Defendant, Greg Roman also subjected Plaintiff, Lisa Barbounis to unwelcome touching in March 2018 at the AIPAC Conference.

**Answer:  Denied.**

62.     Defendant, Greg Roman's unwelcome sexual contact in March 2018 and April 2018 was part of a pattern of sexual harassment and abuse that began December 2017 and continued without pause until November 2018.

**Answer:  Denied.**

63.     Importantly, the only reason that Defendant, Greg Roman stopped the unwelcome sexual harassment and sexual abuse in November 2018 was because Defendant, Greg Roman was no longer allowed at the MEF Philadelphia headquarters because of the risk of harm that Defendant, Greg Roman's presence had related to the female staff.

**Answer:  Denied.**

64.     Defendant, Greg Roman was ordered to discontinue all visits to the MEF Philadelphia headquarters immediately in November 2018 to protect the safety of female employees who had to work at MEF's Philadelphia offices.

**Answer:  Denied.**

65.     After the March 2018 assault, Defendant, Greg Roman's conduct and comments only increased.

**Answer:  Denied.**

66.     Defendant, Greg Roman continued the campaign of sexual abuse and harassment through March, into April 2018 and until November 2018.

**Answer:  Denied.**

67.     Defendant, Greg Roman's campaign of sexual abuse and harassment only stopped when Plaintiff, Lisa Barbounis and several coworkers reported Defendant, Greg Roman's severe and pervasive sexual harassment.

**Answer:  Denied.**

68.     Defendant, Greg Roman was forced to discontinue all visits to MEF headquarters as a direct result of his continuous and nonstop campaign of sexual harassment and abuse to which Plaintiff, Lisa Barbounis was subjected by Defendant, Greg Roman.

**Answer:  Denied.**

69.     Defendant, Greg Roman is very high up in the organization of the Middle East Forum and currently holds the position of Director of the Middle East Forum.

**Answer:  Admitted in part, denied in part.  It is admitted only that Mr. Roman currently holds the position of Director of the Middle East Forum.**

70.     Defendant, Greg Roman is also a corporate officer of the Middle East Forum.

**Answer:  Admitted.**

71.     At all times relevant to this civil action Defendant, Greg Roman held the position of Director of the Middle East Forum.

**Answer:  Admitted.**

72.     As the Director of the Middle East Form, Defendant, Greg Roman was the penultimate person in charge of the Middle East Forum.  Accordingly, Defendant, Greg Roman along with Defendant, Daniel Pipes, ran and managed the Middle East Forum.

**Answer:  Denied.**

73.     Defendant, Greg Roman was and continues to be so high up in the organization that the only person to whom Defendant, Greg Roman reports is Defendant, Daniel Pipes.

**Answer:  Admitted in part, denied in part.  It is admitted only that Mr. Roman reports to Mr. Pipes.  The remainder of this allegation is denied.**

74.     Defendant, Greg Roman is considered by Defendant, Daniel Pipes to be crucial to the operations and success of the Middle East Forum.

**Answer:  Denied.**

75.     Defendant, Greg Roman has the ability to create policy for the Middle East Forum.

**Answer:  Denied.**

76.     Defendant, Greg Roman must be considered a proxy and all discrimination and harassment to which Plaintiff, Lisa Barbounis was subjected including the sexual assault, sexual misconduct, sexual harassment, gender and sex discrimination and retaliation by Defendant, Greg Roman must be held to a proxy-liability standard as the harasser-supervisor is a proxy for the Middle East Forum.

**Answer:  Denied.**

77.     Defendant, Daniel Pipes is currently the President of the Middle East Forum. There are no individuals employed by the Middle East Forum who hold positions above Defendant, Daniel Pipes.

**Answer:  Admitted.**

78.     Defendant, Greg Roman and Defendant.  Daniel Pipes are responsible for developing, enacting, and enforcing all policies, procedures, protocols employed to operate the Middle East Forum.

**Answer:  Denied.**

79.     At all times relevant to this Civil Action Defendant, Daniel Pipes was the President of The Middle East Forum.

**Answer:  Admitted.**

80.     Sometime around the weekend of March 1 through March 3, 2018, Plaintiff, Lisa Barbounis and coworker, Patricia McNulty ("Ms. McNulty") attended a conference in Washington D.C.

**Answer:  Denied.**

81.     The conference in Washington D.C., which Ms. Barbounis and Ms. McNulty attended was called the American Israel Public Affairs Committee ("AIPAC").

**Answer:  Denied.**

82.     Other employees of the Middle East Forum in attendance at the AIPAC

Conference included Defendant, Greg Roman, Defendant, Mathew Bennett, and coworker,

Marnie Meyer.

**Answer: Admitted in part, denied in part.  It is admitted only that Mr. Roman and Mr. Bennett attended the AIPAC conference.  Ms. Meyer was present in Washington D.C. at the time the conference was occurring, but she did not attend the conference.**

83.     Defendant, Greg Roman and Defendant, Mathew Bennett booked and shared an

Airbnb in Washington D.C. for the AIPAC Conference.

**Answer:  Admitted.**

84.     Plaintiff, Lisa Barbounis booked a hotel room for the AIPAC Conference.

**Answer:  Denied.  Defendants lack knowledge or information sufficient to form a belief about the truth of this allegation and it is therefore denied.**

85.     The other female employees of the MEF who attended the AIPAC Conference

also booked hotel rooms.  This includes Patricia McNulty and Mamie Meyer.

**Answer:  Denied.  Defendants lack knowledge or information sufficient to form a belief about the truth of this allegation and it is therefore denied.**

86.     After dinner, Defendant, Greg Roman invited Grantees from The Pinsker Center

and a writing fellow named Raheem Kassam back to the Airbnb which was shared by Defendant,

Greg Roman and Defendant, Matthew Bennett.

**Answer:  Admitted in part, denied in part.  It is admitted that other, third-parties were present at the AirBnB shared by Mr. Roman and Mr. Bennett.  It is denied that Mr. Roman invited them.**

87.     Defendant, Greg Roman also asked Plaintiff, Lisa Barbounis, Patricia McNulty,

and Marnie Meyer to come back to the Airbnb that he had booked.

**Answer:  Denied.**

88.     That evening, while at the Airbnb, Defendant, Greg Roman positioned himself on the couch between Plaintiff, Lisa Barbounis and coworker, Patricia McNulty.

**Answer:  Denied.**

89.     Defendant, Greg Roman put his arms around Plaintiff, Lisa Barbounis and coworker, Patricia McNulty.

**Answer:  Denied.**

90.     Defendant, Greg Roman grabbed coworker, Patricia McNulty by her upper thigh and violently yanked coworker, Patricia McNulty onto his lap.  Defendant, Greg Roman put his hand on Patricia McNulty's upper thigh and rear-end area in order to lift Patricia McNulty up and place Patricia McNulty on Defendant, Greg Roman's lap**.**

**Answer:  Denied.**

91.     Defendant, Greg Roman then began whispering inappropriate sexual advances in coworker, Patricia McNulty's ear.

**Answer:  Denied.**

92.     Defendant, Greg Roman attempted to yank Plaintiff, Lisa Barbounis toward him as well.

**Answer:  Denied.**

93.     Plaintiff, Lisa Barbounis was further away on the couch and therefore in a better position to resist Defendant, Greg Roman's attempt to pull Plaintiff, Lisa Barbounis toward Defendant, Greg Roman.

**Answer:  Denied.**

94.     Alternatively, Defendant, Greg Roman picked coworker, Patricia McNulty up by her upper thigh and rear end area and aggressively placed Patricia McNulty on his lap.

**Answer:  Denied.**

95.     Defendant, Greg Roman is a large man and used his size and height in his violent and aggressive interactions with female employees who Defendant, Greg Roman supervised.

**Answer:  Denied.**

96.     Defendant, Greg Roman used his size to intimidate and sometimes overpower female employees who Defendant, Greg Roman was in charge of as Director of the MEF.

**Answer:  Denied.**

97.     Plaintiff, Lisa Barbounis was present when Defendant, Greg Roman picked coworker, Patricia McNulty up and placed her on his lap.

**Answer:  Denied.**

98.     Plaintiff, Lisa Barbounis witnessed firsthand Defendant, Greg Roman's violent and aggressive sexual assault of coworker, Patricia McNulty.

**Answer:  Denied.**

99.     Plaintiff, Lisa Barbounis was also subjected to Defendant, Greg Roman's violent use of force to compel sexual behavior or make unwelcome sexual advances.

**Answer:  Denied.**

100.    Plaintiff, Lisa Barbounis tried to pull away from Defendant Greg Roman.

**Answer:  Denied.**

101.    Coworker, Patricia McNulty tried to pull away and resisted Defendant, Greg Roman.

**Answer:  Denied.**

102.     Defendant, Greg Roman used his size, height and strength to overpower a female employee who worked for the MEF named Patricia McNulty.

**Answer:  Denied.**

103.     Defendant, Greg Roman used force and did not allow Patricia McNulty to get up or escape his grip.

**Answer:  Denied.**

104.     Defendant, Greg Roman then began whispering in Patricia McNulty's ear.

**Answer:  Denied.**

105.     Patricia McNulty resisted, and made it clear that she was rejecting Defendant, Greg Roman's inappropriate sexual misconduct and sexual advances.

**Answer:  Denied.**

106.     Thereafter, Plaintiff, Lisa Barbounis witnesses Defendant, Greg Roman get up from the couch and leave the room.

**Answer:  Denied.**

107.     Defendant, Greg Roman sexually assaulted Plaintiffs coworker, Patricia McNulty at the AIPAC conference which occurred in Washington D.C., when Defendant, Greg Roman violently yanked Patricia McNulty across the couch, onto his lap, and whispered inappropriate, unwelcome sexual advances in Ms. McNulty's ear.

**Answer:  Denied.**

108.     Defendant, Greg Roman put his hands on coworker, Patricia McNulty's upper thigh and rear-end area and used force to overpower Patricia McNulty.

**Answer:  Denied.**

109.     During, Plaintiffs employment for MEF, Defendant, Greg Roman subjected

Plaintiff, Lisa Barbounis to severe and pervasive discrimination and harassment based upon

Plaintiffs sex and gender.

**Answer:  Denied.**

110.     Defendant, Greg Roman asked Plaintiff, Lisa Barbounis to visit his home to work

at night time.

**Answer:  Denied.**

111.     Defendant, Greg Roman called and texted Plaintiff, Lisa Barbounis late at night.

**Answer:  Admitted.  By way of further response, given the nature of the Middle
East Forum's work and the multiple time zones they work in, it is not uncommon
for employees and colleagues to communicate outside of traditional working hours.
Ms. Barbounis initiated as many, if not more, text changes with Mr. Roman after
hours.**

112.     Defendant, Greg Roman made sexually suggestive, unwelcome comments to

Plaintiff, Lisa Barbounis.

**Answer:  Denied.**

113.     Working with Defendant, Greg Roman meant that Plaintiff, Lis Barbounis would

have to contend with Defendant, Greg Roman's inappropriate sexually suggestive conduct and

comments.

**Answer:  Denied.**

114.     Employees who have worked with Defendant, Greg Roman who also have stated

that working with Defendant, Greg Roman meant having to contend with Defendant, Greg

Roman's inappropriate conduct and comments including sexually inappropriate conduct and

comments include but is in no way limited to: (1) Plaintiff, Lisa Barbounis, (2) Patricia McNulty,

(3) Mamie Meyer, (4) Tiffany Lee, (5) Caitriona Brady, (6) Delaney Yonchek, (7) Leah

Merville, (8) Alana Goodman, (9) Eman Patel, (10) Samantha Mandalas, (11) Laura Frank, (12) Lara (last name unknown), (13) Rosie (last name unknown), and (14) Gabrielle Bloom.

**Answer:  Denied.**

115.    At all times relevant to this civil action, Defendant, Greg Roman was Plaintiff, Lisa Barbounis's direct supervisor and used his supervisory and proxy authority to subject Plaintiff to unwelcome sex and gender discrimination.

**Answer:  Denied.**

116.    At all times relevant to this civil action, Defendant, Greg Roman was Plaintiff, Lisa Barbounis's direct supervisor and used his supervisory and proxy authority to subject Plaintiff to unwelcome sexual harassment.

**Answer:  Denied.**

117.    At all times relevant to this civil action, Defendant, Greg Roman was Plaintiff, Lisa Barbounis's direct supervisor and used his supervisory and proxy authority to subject Plaintiff to unwelcome sexual misconduct including unwelcome sexual contact of a physical nature.

**Answer:  Denied.**

118.    At all times relevant to this civil action, Defendant, Greg Roman was Plaintiff, Lisa Barbounis's direct supervisor and used his supervisory and proxy authority to subject Plaintiff to unwelcome sexual advances including quid pro quo sexual suggestions which Plaintiff, Lisa Barbounis rejected.

**Answer:  Denied.**

119.     Plaintiff, Lisa Barbounis's rejection of Defendant, Greg Roman only made Plaintiffs work environment more hostile as Defendant, Greg Roman reacted to Plaintiffs rejections by using his proxy authority to retaliate against Plaintiff, Lisa Barbounis with tangible employment actions.

**Answer:  Denied.**

120.     Defendant, Greg Roman threatened Plaintiff, Lisa Barbounis's job with the MEF.

**Answer:  Denied.**

121.     The sexual harassment to which Plaintiff, Lisa Barbounis was subjected during her employment for MEF by Defendant, Greg Roman created a hostile work environment for Plaintiff, Lisa Barbounis.

**Answer:  Denied.**

122.     Defendant, Greg Roman subjected almost every female employee who he supervised at MEF to unwelcome sexual harassment and discrimination and harassment in the workplace due to sex and gender.

**Answer:  Denied.**

123.     Defendant, Greg Roman specifically used his position as a proxy for MEF to recruit very attractive female employees and prey upon his female staff by subjecting the female staff to unwelcome sexual advances.

**Answer:  Denied.**

124.     Before Plaintiff, Lisa Barbounis began her employment at MEF, there were two female employees of MEF named Laura Frank ("Laura") and Lara (last name unknown at this time) ("Lara").

**Answer:  Admitted.**

125.     Laura and Lara were employees of MEF.  Their supervisors included Defendant, Daniel Pipes and Defendant, Greg Roman.

**Answer:  Admitted.**

126.     Defendant, Greg Roman was the direct supervisor of Laura Frank and Lara (last name unknown).

**Answer:  Admitted.**

127.     Laura and Lara were subjected to severe and pervasive discrimination and harassment due to their sex and gender.

**Answer:  Denied.**

128.     Laura and Lara were subjected to retaliation when they opposed and/or reported the severe and pervasive discrimination to which Laura and Lara were subjected during their employment at MEF.

**Answer:  Denied.**

129.     Laura and Lara discussed and considered initiating legal action to vindicate their rights due to the severe and pervasive discrimination and harassment in the workplace to which they were subjected during their employment at MEF.

**Answer:  Denied.**

130.     Laura and Lara used instant Google messaging to discuss the unwelcome sexual harassment to which Defendant, Greg Roman subjected Laura and Lara daring their employment at MEF.

**Answer:  Denied.**

131.    Defendant, Greg Roman broke into Laura and Lara's computers after work one evening and discovered, by reading their private Google instant messaging, that Laura and Lara were currently discussing their legal options due to Defendant, Greg Roman's discrimination and harassment in the workplace due to sex and gender.

**Answer:  Denied.**

132.    Defendant, Greg Roman discussed the instant Google messages between Laura and Lara with Defendant, Daniel Pipes.

**Answer:  Denied.**

133.    Defendant, Greg Roman and Defendant, Daniel Pipes decided to terminate both Laura and Lara's employment.

**Answer:  Denied as stated.  Both Laura and Lara entered into separation agreements with MEF.**

134.    The termination of Laura Frank and Lara (last name unknown) created empty positions that MEF had to staff.

**Answer:  Admitted in part, denied in part.  It is admitted that after Ms. Frank and Lara were no longer employed at MEF, MEF had to hire additional employees.  It is denied that their departure created "empty positions."  By way of further response, MEF made the strategic decision to restructure several roles.  After Ms. Frank and Lara's departure, the position of Assistant was eliminated and a new position of Liaison was created.**

135.    Soon after Laura and Lara's termination, Defendant, MEF hired Plaintiff, Lisa Barbounis.

**Answer:  Denied.  By way of further response, Plaintiff was not hired until five months after Ms. Frank and Lara's departure from MEF.**

136.     Defendant, Daniel Pipes and Defendant, Greg Roman refused to investigate Laura and Lara's feelings that they were subjected to unlawful conduct - sexual harassment in their employment for MEF.

**Answer:  Denied.**

137.     Defendants refused to initiate remedial measures as a result of Laura and Lara's instant Google messaging.  MEF did nothing to discover and remedy the severe and pervasive discrimination and harassment in the workplace.

**Answer:  Denied.**

138.     Defendant, Daniel Pipes and Defendant, Greg Roman have initiated, implemented and enforced policies which operate to frustrate the congressional intent of federal, state and city anti-discrimination laws enacted to protect female employees from discrimination and harassment in the workplace.

**Answer:  Denied.**

139.     Daniel Pipes' objectives, policies and procedures have always been to protect Defendant, Greg Roman, despite ongoing continued allegations and reports of sexual harassment involving Defendant, Greg Roman.

**Answer:  Denied.**

140.     Daniel Pipes has ignored, disregarded, and refused to consider protecting the female employees who worked at the MEF.

**Answer:  Denied.**

141.     Accordingly Daniel Pipes has expressly communicated to Defendant, Greg Roman, Defendant, MEF and Defendant, Daniel Pipe's policy and practice to allow, sanction, permit and condone Defendant, Greg Roman's discrimination and harassment of the female employees who work at MEF.

**Answer:  Denied.**

142.     Defendant, Greg Roman's unlawful conduct and comments as Director of the MEF has occurred with express authorization from Defendant, MEF and Daniel Pipes.

**Answer:  Denied.**

143.     This authorization has resulted in female employees of MEF being subjected to severe and pervasive sexual harassment, sexual assaults, sexual misconduct, quid pro quo sexual harassment, and discrimination and harassment based on sex and gender.

**Answer:  Denied.**

144.     Laura Frank and Lara (last name unknown) were unlawfully terminated in retaliation for discussing and considering reporting Defendant, Greg Roman's discrimination and harassment in the workplace.

**Answer:  Denied.**

145.     Laura and Lara were simultaneously terminated from their employment with MEF due to their sex and gender and in retaliation for opposing and reporting discrimination and harassment in the workplace.

**Answer:  Denied.**

146.     Plaintiff, Lisa Barbounis began her employment soon after Laura and Lara were unlawfully terminated from their employment by Defendant, Greg Roman, Daniel Pipes and Defendant, MEF.

**Answer:  Denied.**

147.     Daniel Pipes has a history of discriminatory conduct toward women based upon their sex and gender.

**Answer:  Denied.**

148.     Defendant, Greg Roman also has a history of discrimination and harassment of women based on their sex and gender.

**Answer:  Denied.**

149.     Female employees who worked with Daniel Pipes have been subjected to ridicule, abuse, discrimination, and harassment due to their sex and gender.

**Answer:  Denied.**

150.     Rosie (last name unknown) ("Rosie") was a female employee who worked at The Middle East Forum.

**Answer:  Denied.**

151.     Rosie worked at The Middle East Forum about one year before Plaintiff, Lisa Barbounis.

**Answer:  Denied.**

152.     Defendant, Greg Roman asked Rosie to transition to a position as an assistant to Greg Roman.

**Answer:  Denied.**

153.     Defendant, Greg Roman unlawfully targeted and terminated Rosie's employment due to Rosie's membership in a protected class with the authorization, consent, knowledge, and permission of Daniel Pipes.

**Answer:  Denied.**

154.     Rosie abandoned her employment for MEF to avoid working closely with Defendant, Greg Roman.

**Answer:  Denied.**

155.     Prior to leaving her employment for MEF, Rosie said, "I will be dead before working for Greg Roman."

**Answer:  Denied.  Defendants lack knowledge or information sufficient to form a belief about the truth of this allegation and it is therefore denied.**

156.     Rosie refused to work with Defendant, Greg Roman due to the severe and pervasive discrimination and harassment of female employees and the hostile work environment which Defendant, Greg Roman created for his female staff.

**Answer:  Denied.**

157.     Plaintiff, Lisa Barbounis is not the only female employee who Defendant, Greg Roman supervised who has alleged that Defendant, Greg Roman subjected her to sexual harassment and sexual misconduct and sexually inappropriate behavior.

**Answer:  Denied.**

158.     Defendant, Greg Roman has subjected multiple female employees to severe and pervasive sexual harassment.

**Answer:  Denied.**

159.     Many of these female employees who have worked for Defendant, Greg Roman have filed Charges of Discrimination at the EEOC to report Defendant, Greg Roman's sexual harassment, misconduct, and inappropriate sexual behavior.

**Answer:  Admitted in part, denied in part.  It is admitted that Plaintiff is not the only female employee of the Middle East Forum who has filed a Charge of Discrimination with the EEOC.  All other allegations are denied.**

160.     Female employees who have reported Defendant, Greg Roman's sexual harassment, sexual misconduct, sexually inappropriate behavior including quid pro quo sexual harassment, stalking like behavior, and in some cases sexual assaults, include (1) Plaintiff, Lisa Barbounis, (2) Patricia McNulty, (3) Caitriona Brady, and (5) Delaney Yonchek.

**Answer:  Denied as stated.  While some of the women identified in this allegation made "reports" regarding Mr. Roman's alleged misconduct, these report were/are false.  Defendants deny vehemently that Mr. Roman engaged in sexual harassment, sexual misconduct, sexually inappropriate behavior, *quid pro quo* harassment, stalking, and/or sexual assaults.**

161.     Defendants were on notice of Defendant, Greg Roman and the risk Defendant, Greg Roman presented for the female staff who worked with MEF.

**Answer:  Denied.**

162.     Daniel Pipes refused to investigated.

**Answer:  Denied.**

163.     Daniel Pipes refused to investigate.

**Answer:  Denied.**

164.     Defendant Greg Roman gave a former intern of the Middle East Forum (named above as Intern Number 1 - first and last name unknown) $1,500.00 in cash when interns do not receive compensation from the MEF.

**Answer:  Denied.**

165.    The intern voluntarily left the MEF and has stated that she left to avoid what she characterized as future, inappropriate sexual advances visited upon her by Defendant, Greg Roman.  She said she could see it coming.

**Answer:  Denied.**

166.    Defendant, Greg Roman also called and texted Plaintiff, Lisa Barbounis at inappropriate times.

**Answer:  Denied.**

167.    Defendant, Greg Roman also invited Plaintiff, Lisa Barbounis to him home to work, however, Plaintiff, Lisa Barbounis never visited Defendant, Greg Roman's home and made sure Defendant, Greg Roman understood she never would visit his home.

**Answer:  Admitted in part, denied in part.  Defendants admit that Plaintiff did not visit Mr. Roman's home.  Defendants deny the remainder of this allegation.  Mr. Roman has no current recollection of inviting Plaintiff to his home.**

168.    Plaintiff, Lisa Barbounis and coworker, Patricia McNulty's description of Defendant, Greg Roman's sexual harassment mirrors accounts of several other female employees who Defendant, Greg Roman supervised and sexually harassed.

**Answer:  Denied.**

169.    Defendant, Greg Roman's method of operation is that of a sexual predator.

**Answer:  Denied.**

170.    Defendant, Greg Roman uses his position and proxy-authority as a supervisor to recruit very attractive female employees to staff the MEF.

**Answer:  Denied.**

171.     Defendant, Greg Roman then uses his proxy authority to pressure female employees to have sex with him.

**Answer:  Denied.**

172.     Defendant, Greg Roman begins to call and text the female staff at night and on weekends.

**Answer:  Denied.**

173.     Defendant, Greg Roman invites female staff to visit his home or hotel room to get work done.  Sometimes Defendant, Greg Roman will say that there is some work related documents at his home or hotel room and suggest that the female employee stop by.

**Answer:  Denied.**

174.     Defendant, Greg Roman uses his size and height to make female employees feel intimidated, threatened and uncomfortable.

**Answer:  Denied.**

175.     In almost every case, Defendant, Greg Roman offers female employees the hope of help, support, and assistance from as a proxy and supervisor of MEF.  Then Defendant, Greg Roman attempts to leverage the female employees' hope of help, support, and assistance into sex or sexual acts.

**Answer:  Denied.**

176.     Defendant, Greg Roman's sexual harassment of female employees includes offering to work with female staff at his personal home or hotel room.

**Answer:  Denied.**

177.    Defendant, Greg Roman uses work assignments to leverage and lure female employees to his home and then propositions the female employees for sex and sexual favors.

**Answer:  Denied.**

178.    Defendant, Greg Roman also sexually harasses female staff by luring female employees to his hotel rooms.  Once at his hotel room, Defendant, Greg Roman attempts to trade work for sex.

**Answer:  Denied.**

179.    Defendant, Greg Roman's sexual harassment and quid pro quo sexual misconduct is not limited to the MEF's employees.  Defendant, Greg Roman also uses his position as Director of the MEF to proposition female individuals who Defendant, Greg Roman works with in other organizations.

**Answer:  Denied.**

180.    For example, as Director of the MEF, Defendant, Greg Roman often works with reporters from the Washington Post and Washington Examiner.

**Answer:  Denied as stated.  The term "often" is vague and ambiguous.**

181.    The Middle East Forum is a political organization.  Accordingly, The Middle East Forum focuses tremendous resources in Washington D.C.

**Answer:  Denied.  MEF is a non-profit research center that does not engage in political activities.**

182.    The MEF has to work closely with the press in order to promote and communicate MEF objectives, endeavors, and messaging.

**Answer:  Denied as stated.  The term "work closely" is vague and ambiguous.**

183.     Defendant, Greg Roman used his position and power as Director of the Middle East Forum to develop relationships with news reporters.

**Answer:  Denied.**

184.     Defendant, Greg Roman has attempted to leverage information Defendant, Greg Roman knows as Director of the MEF for sex with reporters; or sex for stories.

**Answer:  Denied.**

185.     Defendant, Greg Roman has sexually harassed and has pressured female reporters into trading sex in a quid pro quo arrangement for news-stories.

**Answer:  Denied.**

186.     Defendant, Greg Roman used his position as a Director of the Middle East Forum to develop relationships with prominent news outlets like the Washington Post and the Washington Examiner.

**Answer:  Admitted.  By way of further response, the nature of Mr. Roman's work requires him to have professional relationships with media professionals.**

187.     Defendant, Greg Roman specifically targeted and preyed upon the women who he supervised as Director of the MEF, however, Defendant, Greg Roman also used his position and proxy authority to leverage sex from contacts in the press.

**Answer:  Denied.**

188.     The Middle East Forum and Defendant, Greg Roman works directly with lobbyists, politicians, news outlets, reporters, pundits, and many other organizations and individuals in Washington D.C.

**Answer:  Admitted.**

189.    The Middle East Forum spends time, resources, and energy working with press agents, reporters, and television personalities.

**Answer:  Admitted.**

190.    Defendant, Greg Roman has used his connections with reporters in his attempts to trade sex for stories.

**Answer:  Denied.**

191.    Defendant, Greg Roman has pressured female reporters to trade sex for stories in a quid pro quo arrangement.

**Answer:  Denied.**

192.    Defendant, Greg Roman was in Washington D.C., and encountered a female member of the press at a restaurant and bar.  This was a female member of the press who Defendant Greg Roman met in his position as Director of the Middle East Forum.

**Answer: Denied as stated.  This allegation is too vague and ambiguous for Defendants to admit or deny.  It does not state enough specificity in order for Defendants to frame an adequate response.**

193.    Defendant, Greg Roman used his position as Director of the Middle East Forum to generate a relationship with this female member of the press and they had worked with one another several times in the past.

**Answer:   Denied as stated.  This allegation is too vague and ambiguous for Defendants to admit or deny.**

194.    Defendant, Greg Roman encountered this female member of the press and targeted and preyed upon this female member of the press and propositioned her in an attempt to trade Middle East Forum stories for sex.

**Answer:  Denied.**

195.     Defendant, Greg Roman lured the female employee outside of the restaurant and bar and exposed his penis in front of the female member of the press.

**Answer:  Denied.**

196.     Defendant, Greg Roman then ordered the female member of the press to come to his hotel room within the next hour.

**Answer:  Denied.**

197.     Defendant, Greg Roman pressured the female member of the press to engage in sexual acts with Defendant, Greg Roman in exchange for a good story.

**Answer:  Denied.**

198.     When the female member of the press made it clear that she had no interest in trading sex for stories, Defendant, Greg Roman became abusive and aggressive and began to threaten the female member of the press.

**Answer:  Denied.**

199.     Defendant, Greg Roman exposed his penis to a reporter and propositioned the reporter for sex.

**Answer:  Denied.**

200.     Defendant, Greg Roman threatened the reporter when the reporter refused to trade sex for stories.

**Answer:  Denied.**

201.     Defendant, Greg Roman yelled across the bar and restaurant telling this female member of the press that she had one half hour to visit his hotel room or he would "give the story to the Washington Post."

**Answer:  Denied.**

202.    The Washington Post was a primary competitor organization of the organization with whom the female member of the press worked.

**Answer:  Denied. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding this paragraph and, therefore, deny the same.**

203.    Defendant Greg Roman's threat to give the story to the Washington Post was intended to coerce the female member of the press to change her mind and agree to the quid pro quo sexual arrangement; selling sex for stories from the Director of the MEF.

**Answer:  Denied.**

204.    This is just another example of Defendant, Greg Roman's sexual harassment, sexual misconduct, and sexually inappropriate behavior to which Defendant, Greg Roman subjected female individuals which whom Defendant, Greg Roman worked.

**Answer:  Denied.**

205.    Defendant, Greg Roman has also subjected Plaintiff, Lisa Barbounis's coworker, Marnie Meyer to severe and pervasive discrimination and harassment in the workplace.

**Answer:  Denied.**

206.    Marnie Meyer is the Director of Human Resources for Defendant, MEF.

**Answer:  Denied.**

207.    Defendant, Greg Roman has sexually harassed Mamie Meyer and has attempted to lure Marnie Meyer across national borders with the intention of uses fraud, physical force and/or coercion in order to engage Marnie Meyer in sexual acts.

**Answer:  Denied.**

208.     Defendant, Greg Roman expressly conditioned Marnie Meyer with a company

trip to Israel, stating that Marnie Meyer could only accompany Defendant, Greg Roman if she

agreed to share an Airbnb.

**Answer:  Denied as stated.  When Mr. Roman was planning the trip to Israel, the budget was limited, and security was imperative.  It was necessary for Defendants to be cost-conscious.  Mr. Roman was fully transparent with Ms. Meyer when he explained to her that should she choose to travel to Israel, the accommodations would be a multi-bedroom Airbnb.  These were the same accommodations that were also offered to male employees.  Mr. Roman, on previous trips, stayed with other staff members at AirBnBs.**

209.     Defendant, Greg Roman refused to allow Marnie Meyer to travel across national

borders to Israel unless Marnie Meyer shared the same living space with Defendant, Greg

Roman.

**Answer: Denied.**

210.     Defendant, Marnie Meyer refused to share an Airbnb with Defendant, Greg

Roman due to the obvious implication in the inappropriate condition.

**Answer:  Denied.**

211.     Defendant, Greg Roman had already subjected Mamie Meyer to severe and

pervasive discrimination and harassment in the workplace based upon sex and gender.

**Answer:  Denied.**

212.     Marnie Meyer was also subjected to discrimination and harassment from

Defendant Greg Roman.

**Answer:  Denied.**

213.    Mamie Meyer was harassed and sexually harassed by Defendant, Greg Roman to such an extent that Marnie Meyer had to notify Defendant, Greg Roman, "I am never going to sleep with you."

**Answer:  Denied.**

214.    Accordingly, Marnie Meyer refused to travel across national borders with Defendant, Greg Roman to Israel unless Marnie Meyer was allowed to book her own hotel room.

**Answer:  Denied.  Defendants lack knowledge or information sufficient to form a belief about the truth of this allegation and it is therefore denied.**

215.    When Marnie Meyer insisted on the condition that she be allowed to book her own hotel room, Defendant, Greg Roman refused to allow Marnie Meyer to accompany him to Israel.

**Answer:  Denied.**

216.    Therefore, Defendant, Greg Roman withdrew the opportunity for Marnie Meyer to travel to Israel.

**Answer:  Denied.**

217.    After eliminating Marnie Meyer, Defendant, Greg Roman continued his objective to find someone to lure across national borders in order to use fraud, force, or coercion to engage in sexual acts.

**Answer:  Denied.  By way of further response, Mr. Roman also asked Mr. Bennett to go on the trip before he decided to let Plaintiff go.**

218.    Defendant, Greg Roman asked Plaintiff, Lisa Barbounis to travel to Israel with him.

**Answer: Denied.**

219.    Defendant, Greg Roman instructed Plaintiff, Lisa Barbounis not to tell anyone she was coming to Israel with him.

**Answer:  Denied.**

220.    Defendant, Greg Roman provided Plaintiff, Lisa Barbounis the same quid pro quo arrangement and conditioned the trip to Israel on sharing a living space with Defendant, Greg Roman.

**Answer:  Denied.**

221.    Defendant, Greg Roman informed Plaintiff, Lisa Barbounis that she could only travel across national borders to Israel if Plaintiff, Lisa Barbounis agreed to share an Airbnb.

**Answer:  Denied as stated.  By way of further response, When Plaintiff asked if she could go with Mr. Roman to Israel, he told her that should she decide to come with him, they would be sharing a multi-bedroom AirBnb.  Given certain budget constraints and security considerations, a multi bedroom AirBnb was the chosen arrangement which was made known to Plaintiff.**

222.    Plaintiff, Lisa Barbounis has always wanted to travel to Israel.

**Answer:  Denied.  Defendants lack knowledge or information sufficient to form a belief about the truth of this allegation and it is therefore denied.**

223.    Accordingly, Defendant, Greg Roman used Plaintiff, Lisa Barbounis desire to see Israel to lure her across national borders with the intent of using fraud, coercion and/or force to engage Plaintiff, Lisa Barbounis in sexual acts.

**Answer:  Denied.**

224.    Accordingly, in April 2018, Defendant, Greg Roman and Plaintiff, Lisa Barbounis traveled to Israel.

**Answer:  Admitted in part, denied in part.  It is admitted only that Mr. Roman and Plaintiff traveled to Israel.  It is denied that the travel was according to the foregoing allegations.**

225.     Defendant, Greg Roman lured Plaintiff, Lisa Barbounis to Israel by promising

that the work trip would be an invaluable opportunity for Plaintiff, Lisa Barbounis.

**Answer:  Denied.  By way of further response, Plaintiff aggressively pursued the
opportunity to travel to Israel with Mr. Roman and after he presented her with a
full description of the trip's logistics, she eagerly elected to travel with him.**

226.     Strangely, Defendant, Greg Roman ordered Plaintiff, Lisa Barbounis not to tell

anyone that Plaintiff, Lisa Barbounis was accompanying Defendant, Greg Roman on the trip.

**Answer:  Denied.**

227.     Defendant Greg Roman used his influence, seniority, and proxy authority, to lure

Plaintiff, Lisa Barbounis across national borders to Israel with the intent of subjecting Plaintiff,

Lisa Barbounis to sexual advances and sex.

**Answer:  Denied.  Defendants deny all allegations of inappropriate sexual conduct
and sexual harassment including all allegations that Mr. Roman "lured" Plaintiff to
travel with him with any improper intent.**

228.     Upon arrival, Plaintiff was surprised when she discovered that Defendant, Greg

Roman had booked a small space with only one bathroom.

**Answer:  Denied.**

229.     Because of Defendant, Greg Roman's sexual advances, sexual harassment, sexual

assault, and sexually inappropriate behavior, Plaintiff, Lisa Barbounis spent much of the time in

Israel scared and emotionally distressed.

**Answer:  Denied.**

230.     Defendant, Greg Roman would not allow Plaintiff, Lisa Barbounis to travel to

Israel unless she agreed to share an Airbnb with him.

**Answer:  Denied.  By way of further response, Plaintiff eagerly pursued the
opportunity to travel to Israel with Mr. Roman and after he presented her with a
full description of the trip's logistics, she elected to travel with him.**

231.    Plaintiff, Lisa Barbounis agreed on the condition that they book a two-bedroom *and two-bathroom* Airbnb.  There was only one bathroom upon arrival.

**Answer: Denied.**

232.    Defendant, Greg Roman said to Plaintiff, Lisa Barbounis, "I really thought this place had two bathrooms."  The Airbnb clearly states the number of bathrooms on the cover page of the advertisement for the room.

**Answer:  Denied.**

233.    Defendant, Greg Roman lured Plaintiff, Lisa Barbounis to Israel based on a promise and assurance that the Airbnb had both two bathrooms and two bedrooms.

**Answer:  Denied.**

234.    Upon arrival, Defendant, Greg Roman was ready to explain why the Airbnb did not conform to the requirements Plaintiff, Lisa Barbounis provided.

**Answer:  Denied.**

235.    Defendant, Greg Roman specifically coerced Plaintiff, Lisa Barbounis into sharing an Airbnb with him and threatened to withhold the business trip and opportunity altogether if Plaintiff, Lisa Barbounis did not agree to put herself in a sexually vulnerable position by sharing the space.

**Answer:  Denied.  By way of further response, Plaintiff pushed to travel to Israel with Mr. Roman fully aware that they would be sharing an AirBnb.**

236.    The level of Plaintiff, Lisa Barbounis's discomfort, fear, and apprehension during the trip to Israel is evidenced by text message communications between Plaintiff, Lisa Barbounis and Patricia McNulty during the trip.

**Answer:  Denied.  Text messages are written communications, the contents of which speak for themselves and Plaintiff's characterization thereof is denied.**

237.    While in Israel, Plaintiff, Lisa Barbounis texted, "I am going to put a knife in my room."  This message indicated that Plaintiff, Lisa Barbounis did not feel safe in the same living space with Defendant, Greg Roman.

**Answer:  Denied.  Text messages are written communications the contents of which speak for themselves and Plaintiff's characterization thereof is denied.**

238.    While in Israel, Plaintiff, Lisa Barbounis texted, "He's creepy.  Talking about stuff he shouldn't be and too drunk."

**Answer:  Denied.  Text messages are written communications the contents of which speak for themselves and Plaintiff's characterization thereof is denied.**

239.    While in Israel, Plaintiff, Lisa Barbounis texted, "I'm so uncomfortable."

**Answer:  Denied.  Text messages are written communications the contents of which speak for themselves and Plaintiff's characterization thereof is denied.**

240.    While in Israel, Plaintiff, Lisa Barbounis texted, "I can't wait to come home."

**Answer:  Denied.  Text messages are written communications the contents of which speak for themselves and Plaintiff's characterization thereof is denied.**

241.    While in Israel, Plaintiff, Lisa Barbounis texted, "He drank too much."

**Answer:  Denied.  Text messages are written communications the contents of which speak for themselves and Plaintiff's characterization thereof is denied.**

242.    While in Israel, Plaintiff, Lisa Barbounis texted, "The shit he is saying is so strange I can't type it all anyway."

**Answer:  Denied.  Text messages are written communications the contents of which speak for themselves and Plaintiff's characterization thereof is denied.**

243.    While in Israel, Plaintiff, Lisa Barbounis texted, "Talking about women and his wife and conquests and graphic."

**Answer:  Denied.  Text messages are written communications the contents of which speak for themselves and Plaintiff's characterization thereof is denied.**

244.     While in Israel, Plaintiff, Lisa Barbounis texted, "He said he fucked Lea (indicating MEF intern Leah Merville) and tried to meet up with her again and it didn't work out. This test message referred to Defendant, Greg Roman's attempts to meet with former MEF intern Leah Merville who lived in Israel at that time.  Defendant, Greg Roman propositions Leah Merville for sex and Leah Merville rejected Defendant, Greg Roman's advances.

**Answer:  Denied.  Text messages are written communications the contents of which speak for themselves and Plaintiff's characterization thereof is denied.**

245.     Defendant, Greg Roman spent the Israel trip attempting to coerce Plaintiff, Lisa Barbounis into engaging in sexual acts with him, Defendant, Greg Roman acted like sex with Plaintiff, Lisa Barbounis was a certainty because they were sharing a room.

**Answer:  Denied.  Defendants deny all allegations of inappropriate sexual conduct and sexual harassment, including any allegation that Mr. Roman coerced Plaintiff to engage in sexual acts with him and that he acted like having sex with Plaintiff was certain.**

246.     Defendant, Greg Roman attempted to engage Plaintiff, Lisa Barbounis in conversations that were about sex or suggested sex multiple times throughout the trip.

**Answer:  Denied.**

247.     Defendant, Greg Roman subjected Plaintiff, Lisa Barbounis to quid pro quo sexual harassment by conditioning the trip on Plaintiff sharing the Airbnb with intention of using the opportunity to engage Plaintiff is sexual advances.

**Answer:  Denied.**

248.     Before the Israel trip, Defendant, Greg Roman instructed Plaintiff, Lisa Barbounis not to tell anyone that she was coming on the trip.

**Answer:  Denied.**

249.     Defendant, Greg Roman said, "Don't tell your family.  Don't tell Daniel (indicating Daniel Pipes).  Don't tell anyone in the office."

**Answer:  Denied.**

250.     While on the trip, Plaintiff, Lisa Barbounis was sitting a couch in the living space. The couch was positioned on the terrace with large sliding glass doors leading out.

**Answer:  Denied.**

251.     Defendant Gregg Roman asked Plaintiff, Lisa Barbounis to join him while he smoked a cigarette.

**Answer:  Denied.**

252.     Plaintiff, Lisa Barbounis joined Defendant, Greg Roman on the terrace and sat down on the far end of one side of the couch.

**Answer:  Denied.**

253.     Defendant, Greg Roman sat down next to Plaintiff Lisa Barbounis.  Defendant, Greg Roman then put his legs on the couch and his feet under Plaintiff Lisa Barbounis's butt.

**Answer:  Denied.**

254.     Defendant, Greg Roman used his feet to unlawfully subject Plaintiff, Lisa Barbounis to unwelcome sexually inappropriate touching.

**Answer:  Denied.**

255.     Defendant, Greg Roman's feet were right under Plaintiff, Lisa Barbounis's butt, and this would have been an intimate touching had it been consensual.  While his feet were in Plaintiffs butt, Defendant, Greg Roman said: "now that my foot is on your ass we have reached a new level."

**Answer:  Denied.**

256.    Plaintiff Lisa Barbounis was highly uncomfortable.  So she got up, walked away and tried to laugh it off.

**Answer:  Denied.**

257.    Plaintiff Lisa Barbounis was highly uncomfortable by this unwelcome sexual touching.

**Answer:  Denied.**

258.    The next evening, Defendant, Greg Roman left the Airbnb to socialize and drink at bars and/or restaurants.

**Answer:  Denied as stated.  Both Plaintiff and Mr. Roman went to a restaurant for dinner in the evening.**

259.    Plaintiff Lisa Barbounis stayed home to work and finish a Power Point presentation.  This is evidence by text message communications where Plaintiff, Lisa Barbounis writes, "He just came back I stayed in."

**Answer:  Denied.**

260.    Defendant, Greg Roman arrived at the room and confessed to Plaintiff Lisa Barbounis that he had a sexual relationship with a former MEF employee/intern named Leah Merville.

**Answer:  Denied.**

261.    Upon his return, Defendant, Greg Roman informed Plaintiff, Lisa Barbounis that Defendant, Greg Roman attempted to meet Leah Merville that evening.  Defendant, Greg Roman also said he visited his ex-girlfriend while he was out.

**Answer:  Denied.**

262.     Defendant, Greg Roman indicated that he had propositioned both Leah Merville and his ex-girlfriend for sex and was rejected both times.

**Answer:  Denied.**

263.     Defendant, Greg Roman was infuriated, and began behaving in a sexually inappropriate and aggressive manner by pacing back and forth and complaining loudly about his sexual frustrations.

**Answer:  Denied.**

264.     Plaintiff, Lisa Barbounis maintained a text message conversation with Patricia McNulty and referenced Defendant, Greg Roman's inappropriate conduct and comments.

**Answer:  Denied as stated.  Text messages are written communications, the contents of which speak for themselves.**

265.     Plaintiff, Lisa Barbounis texted, "He said he fucked Lea and tried to meet up with her again and it didn't work out."

**Answer:  Denied as stated.  Text messages are written communications, the contents of which speak for themselves.**

266.     When Leah Merville was employed by MEF, Defendant, Greg Roman, as Director of the MEF, held supervisory authority over Leah Merville.

**Answer:  Denied as stated.  Ms. Merville was an intern who worked with Mr. Roman and others at MEF.**

267.     Defendant, Greg Roman lured Leah Merville to his hotel room in Israel and used his proxy authority as a supervisor and Director of The Middle East Forum to convince Leah Merville to engage in sexual intercourse.

**Answer:  Denied.**

268.     Leah Merville was an intern in Pennsylvania at MEF.  When her internship ended,

Defendant, Greg Roman helped Leah Merville obtain an internship in Israel.

**Answer:  Admitted in part, denied in part.  It is admitted that Ms. Merville was an intern at MEF in Pennsylvania.  The remainder of this allegation is denied.**

269.     Defendant, Greg Roman explained to Plaintiff, Lisa Barbounis that he suggested

that Leah Merville visit his hotel room, to sign certain paperwork.

**Answer:  Denied.**

270.     Defendant, Greg Roman said, I will sign it and give it to you.  The paperwork was

apparently required paperwork for Leah Merville's completion of her internship.

**Answer:  Denied.**

271.     Leah Merville is a young girl who was an intern at MEF.  Leah Merville is from

France and was in a strange country with no good friends or family nearby.  Defendant, Greg

Roman used his position of authority to engage Leah Merville in sexual intercourse.

**Answer:  Admitted in part, denied in part.  It is admitted only that Ms. Merville was an intern for MEF, and she is from France.  Defendants deny the remainder of this allegation.**

272.     Defendant, Greg Roman told Leah Merville to come to his hotel room because

that is where he had the paperwork that Leah Merville needed.

**Answer:  Denied.**

273.     During the next trip to Israel, when Plaintiff, Lisa Barbounis attended, Defendant,

Greg Roman attempted to engage Leah Merville in sexual intercourse again.  This time Leah

Merville rejected Defendant, Greg Roman.

**Answer:  Denied.**

274.     Defendant, Greg Roman sexually harassed female employee of the MEF and attempted to use fraud, coercion, and/or force to lure female employees to his room and/or to hotel rooms including Airbnb's.

**Answer:  Denied.  Defendants deny all allegations of sexual harassment and inappropriate sexual conduct, including any use of fraud, coercion, and/or force to lure female employees to hotel rooms and AirBnbs.**

275.     After attempting to engage Leah Merville in sexual intercourse, Defendant, Greg Roman arrived back at the Airbnb, where Plaintiff, Lisa Barbounis remained in order to complete work and finish a Power Point.

**Answer:  Denied.**

276.     Defendant, Greg Roman then began to subject Plaintiff, Lisa Barbourins to severe sexual harassment and sexual misconduct.

**Answer:  Denied.**

277.     Defendant, Greg Roman said to Plaintiff, Lisa Barbounis, Leah Merville gives a really great blowjob.

**Answer:  Denied.**

278.     Defendant, Greg Roman said, "her body is so tight."

**Answer:  Denied.**

279.     Defendant, Greg Roman continued to describe in detail his sexual acts to Plaintiff Lisa Barbounis.

**Answer:  Denied.**

280.     Plaintiff Lisa Barbounis was highly offended and scared and no longer felt comfortable alone with Defendant, Greg Roman.

**Answer:  Denied.**

281.   When Plaintiff, Lisa Barbounis received a text asking whether she thought that Defendant, Greg Roman would try to "touch you kind of way?"  Plaintiff, Lisa Barbounis responded.  "Like maybe, enough doubt to make me uncomfortable."

**Answer:  Denied.  Text messages are written communications the contents of which speak for themselves.**

282.   Plaintiff, Lisa Barbounis's text history is available and will be produced to substantiate the allegations contained in this Complaint.

**Answer:  Denied.  Defendants lack knowledge or information sufficient to form a belief about the truth of this allegation and it is therefore denied.**

283.   Defendant, Greg Roman subjected Plaintiff, Lisa Barbounis to unwelcome sexual advances.

**Answer:  Denied.**

284.   Defendant, Greg Roman told Plaintiff, Lisa Barbounis, "I just need a sexual release."

**Answer:  Denied.**

285.   Defendant, Greg Roman informed Plaintiff Lisa Barbounis, "I really need a blowjob."

**Answer:  Denied.**

286.   The entire time that Defendant, Greg Roman spoke to Plaintiff Lisa Barbounis, he aggressively paced the room and said, I just need a blowjob.  I just need a release.

**Answer:  Denied.**

287.   Plaintiff Lisa Barbounis was scared, offended, harassed, and creeped out.

**Answer:  Denied.**

288.     Defendant, Greg Roman's aggressive sexual conduct escalated.

**Answer:  Denied.**

289.     Defendant, Greg Roman's voice got louder as he continued to visit his sexual advances upon Plaintiff Lisa Barbounis.

**Answer:  Denied.**

290.     When Plaintiff, Lisa Barbounis and Defendant, Greg Roman returned to the United States from their trip to Israel, Defendant, Greg Roman continued his inappropriate unwelcome sexual misconduct and sexual harassment.

**Answer:  Denied.**

291.     Defendant, Greg Roman also subjected Plaintiff, Lisa Barbounis to discrimination based on sex and gender and was violently aggressive toward female staff members including Plaintiff, Lisa Barbounis.

**Answer:  Denied.**

292.     Defendant, Greg Roman screamed at Plaintiff, Lisa Barbounis.

**Answer:  Denied.**

293.     Defendant, Greg Roman cursed at Plaintiff, Lisa Barbounis.

**Answer:  Denied.**

294.     Defendant, Greg Roman did not treat Plaintiffs similarly situated male coworkers in this discriminatory, abusive, hostile and intolerable manner.

**Answer:  Denied.**

295.    Defendant, Greg Roman also subjected Plaintiffs female coworkers to discrimination and harassment due to their sex and gender.

**Answer:  Denied.**

296.    Defendant, Greg Roman also subjected coworker, Patricia McNulty to severe and pervasive discrimination and harassment based upon her sex and gender.

**Answer:  Denied.**

297.    Defendant, Greg Roman also subjected Plaintiffs coworker, Caitriona Brady to severe and pervasive discrimination and harassment based upon her sex and gender.

**Answer:  Denied.**

298.    Defendant, Greg Roman also subjected Plaintiffs coworker, Delaney Yonchek to severe and pervasive discrimination and harassment based upon her sex and gender.

**Answer:  Denied.**

299.    Defendant, Greg Roman also subjected Plaintiffs coworker, Marnie Meyer to severe and pervasive discrimination and harassment based upon her sex and gender.

**Answer:  Denied.**

300.    At all times, Defendant, Greg Roman was Plaintiff Lisa Barbounis's direct supervisor and held proxy authority as the number two executive of the MEF.

**Answer:  Denied.**

301.    Defendant, Greg Roman has subjected several other female employees who worked at the MEF to discrimination and harassment based upon their sex and gender.

**Answer:  Denied.**

302.     Defendant, Greg Roman development, implemented and enforced policies, procedures and protocols designed to limit employees' access to President Daniel Pipes.

**Answer: Denied.**

303.     These policies which were strictly enforced which eliminated employees' ability to talk directly to Daniel Pipes essentially set of Defendant, Greg Roman as the very top MEF employee who employees could go to for assistance.

**Answer: Denied.**

304.     Defendant, Greg Roman developed and enforced these policies with the intention of limiting Plaintiff, Lisa Barbounis's ability to report Defendant, Greg Roman's unwelcome sexual harassment and sexual misconduct and comments.

**Answer: Denied.**

305.     Defendant, Greg Roman had developed, implemented and enforced policies which were approved by Daniel Pipes whereby employees including Plaintiff, Lisa Barbounis were not allowed to go directly to Daniel Pipes to express concerns or obtain assistance.

**Answer: Denied.**

306.     After the trip to Israel, Defendant, Greg Roman made inappropriate comments to Plaintiff, Lisa Barbounis including but not limited to, "you know you are my work wife, right."

**Answer: Denied.**

307.     After the trip to Israel, Defendant, Greg Roman made inappropriate comments to Plaintiff, Lisa Barbounis including but not limited to, "I got your back you know I will always take care of you."

**Answer: Denied.**

54

308.     After the trip to Israel, Defendant, Greg Roman made inappropriate comments to Plaintiff, Lisa Barbounis including but not limited to, "we are at a new level we have to take care of each other."

**Answer:  Denied.**

309.     Defendant, Greg Roman called Lisa Barbounis into his office and ordered Plaintiff to sit next to him and share the computer screen.  Defendant, Greg Roman then made Plaintiff, Lisa Barbounis view inappropriate pictures on his computer.

**Answer:  Denied.**

310.     Defendant, Greg Roman showed Plaintiff pictures of girls that he had claimed to have sexual intercourse with.

**Answer:  Denied.**

311.     Defendant, Greg Roman made comments about women's' looks, saying, Look how hot this one it, look how hot that one is.

**Answer:  Denied.**

312.     Pursuant to the sexual advances described above and the assault on coworker, Patricia McNulty, Defendant, Greg Roman began subjecting Plaintiff Lisa Barbounis to discrimination and harassment in the office based upon Plaintiffs sex and gender.

**Answer:  Denied.**

313.     This discrimination and harassment escalated significantly after the Israel trip and after Plaintiff, Lisa Barbounis rejected Defendant's Greg Roman's unwelcome sexual advances.

**Answer:  Denied.**

314.     Defendant, Greg Roman followed Plaintiff Lisa Barbounis around the office.

**Answer:  Denied.**

315.     Defendant, Greg Roman used his size and height to intimidate Plaintiff, Lisa
Barbounis.

**Answer:  Denied.**

316.     Defendant, Greg Roman entered Plaintiff Lisa Barbounis' office when she was
not present and explored her computer including personal emails, chat history, and internet
browser history.

**Answer:  Denied.**

317.     This is the same conduct which Defendant, Greg Roman subjected Laura and
Lara and led to Laura and Lara's termination.

**Answer:  Denied.**

318.     Defendant, Greg Roman undertook to discriminate and harass female staff,
including subjecting female staff to sexual harassment and sexual misconduct with the express
understanding that Daniel Pipes would protect Defendant, Greg Roman.

**Answer:  Denied.**

319.     Defendant, Greg Roman asked other employees including Mamie Meyer to spy
on Plaintiff Lisa Barbounis.

**Answer:  Denied.**

320.     Defendant, Greg Roman stalked Plaintiff, Lisa Barbounis while Plaintiff worked.
Defendant, Greg Roman counted and tracked the number of times that Plaintiff used the
bathroom.

**Answer:  Denied.**

321.     Defendant, Greg Roman sat and stared at Plaintiff, Lisa Barbounis using the camera system and made comments to Plaintiff, Lisa Barbounis to communicate to Plaintiff, Lisa Barbounis that she was being watched.

**Answer:  Denied.**

322.     Defendant, Greg Roman subjected Plaintiff to severe and pervasive discrimination and harassment based upon her sex and gender.

**Answer:  Denied.**

323.     This discrimination and harassment was evident in the way that Defendant, Greg Roman spoke to Plaintiff, the assignments he required Plaintiff to complete, the tone of voice he used, body language, expressions, use of language and cursing, and other threatening conduct.

**Answer:  Denied.**

324.     Defendant, Greg Roman created a hostile work environment for Plaintiff, Lisa Barbounis.  The work environment was severe and pervasive.

**Answer:  Denied.**

325.     Plaintiff reported the discrimination and harassment to which she was subjected by Defendant, Greg Roman.

**Answer:  Denied.**

326.     Plaintiff, Lisa Barbounis notified Marnie Meyer who was the Director of Human Resources.

**Answer:  Denied.**

327.     Marnie Meyer prepared a handwritten letter addressed to Daniel Pipes and provided the letter on November 1, 2018.

**Answer:  Admitted in part, denied in part.  It is admitted only that Ms. Meyer prepared a handwritten letter addressed to Mr. Pipes.  The remainder of this allegation is denied because the letter is a written document the contents of which speak for themselves.**

328.     Marnie Meyer notified Daniel Pipes that Defendant, Greg Roman was using his supervisory authority as Director of the MEF to "railroad" Plaintiff, Lisa Barbounis and "set her up for failure."

**Answer:  Denied.  Ms. Meyer's letter is a written document the contents of which speak for themselves.**

329.     Defendant, Greg Roman said to Marnie Meyer that he could get Plaintiff, Lisa Barbounis to drop complaints and reports of Defendant, Greg Roman.

**Answer:  Denied.**

330.     Marnie Meyer also reported a hostile work environment which was created by Defendant, Greg Roman.

**Answer:  Denied.**

331.     Marnie Meyer also reported to Defendant, Daniel Pipes that Defendant, Greg Roman had sex with an MEF intern named Leah Merville.  Mamie Meyer reported that Leah Merville was eighteen (18) years old at the time, that Defendant, Greg Roman had sex with Leah Merville in a hotel room in Israel, at a time when Leah Merville needed Defendant, Greg Roman to sign paperwork for her, After reporting this to Daniel Pipes, Mamie Meyer reported that this was just "the tip of the iceberg."

**Answer:  Admitted in part, denied in part.  It is admitted only that Ms. Meyer reported the above-described conduct to Mr. Pipes.  The remaining allegations are denied.**

332.     Marnie Meyer also explained that she reported Defendant, Greg Roman's unlawful discrimination and harassment with handwritten letters because Defendant, Greg Roman used the knowledge he gained as Director of the MEF, including secure passwords to computers, to spy on employees emails and files.  Importantly, this is what led to Laura Frank and Lara (last name unknown)'s termination.

**Answer:  Denied as stated.  At some point, Ms. Meyer reported what she contended to be improper conduct by Mr. Roman.  She further told Mr. Pipes why she was doing it by handwritten letters rather than email.  Defendants deny that Mr. Roman's conduct was improper; deny that Ms. Meyers's complaints were valid; and deny all other allegations in this paragraph.**

333.     Accordingly, Marnie Meyer hand wrote her reports to Daniel Pipes because she was scared to create an electronic record that could be accessed by Defendant, Greg Roman.

**Answer:  Denied.  Defendants lack knowledge or information sufficient to form a belief about the truth of this allegation and it is therefore denied.**

334.     Marnie Meyer's fear of creating an electronic record was directly due to Defendant, Greg Roman's conduct including stalking and spying.

**Answer:  Denied.**

335.     Defendant, Daniel Pipes spoke to Plaintiff, Lisa Barbounis about Plaintiffs reports of discrimination and harassment in the workplace.

**Answer:  Admitted.**

336.     Plaintiff reported Defendant, Greg Roman's sexual harassment and sexual misconduct during the Israel trip.

**Answer:  Denied.  Several months after the Israel trip, Plaintiff spoke with Mr. Pipes about what she contended was alleged misconduct by Mr. Roman but none of this conduct actually constitutes sexual harassment or sexual misconduct. Defendants deny that Mr. Roman ever engaged in sexual harassment or sexual misconduct.**

337.    Plaintiff, Lisa Barbounis also notified and reported Defendant, Greg Roman's

sexual harassment, sexual misconduct and sexual assault during the A1PAC Conference.

**Answer:  Denied.  Several months after the AIPAC conference, Plaintiff spoke with Mr. Pipes about what she contended was alleged misconduct by Mr. Roman but none of this conduct actually constitutes sexual harassment, sexual misconduct, or sexual assault.  Defendants deny that Mr. Roman ever engaged in sexual harassment or sexual misconduct or that he ever committed a sexual assault.**

338.    Plaintiff, Lisa Barbounis described to Daniel Pipes the way that Defendant, Greg

Roman's behavior changed significantly after Plaintiff rejected his unwelcome sexual advances.

**Answer:  Admitted in part, denied in part.  It is admitted only that Plaintiff described what she contended was alleged inappropriate behavior to Mr. Pipes.  Defendants deny all allegations of unwelcome sexual advances.**

339.    Plaintiff, Lisa Barbounis explained that Defendant, Greg Roman was causing a

hostile work environment.

**Answer:  Admitted in part, denied in part.  It is admitted only that Plaintiff made false and inaccurate reports about Mr. Roman.  Defendants deny all allegations of a hostile work environment.**

340.    In addition to the reports of discrimination and harassment which Plaintiff

provided, several other employees at the Middle East Forum also spoke to Daniel Pipes on

November 1, 2018.

**Answer:  Admitted in part, denied in part.  It is admitted only that Plaintiff was not the only employee who spoke to Mr. Pipes on November 1, 2018 regarding Mr. Roman's conduct.  Defendants deny all allegations of discrimination and harassment.**

341.    Marnie Meyer made a report to notify Daniel Pipes about Defendant, Greg

Roman's sexual harassment, sexual misconduct, and/or gender and sex discrimination.

**Answer:  Admitted in part, denied in part.  It is admitted only that Ms. Meyer contacted Mr. Pipes about some concerns regarding Mr. Roman.   Defendants deny that her reports were about alleged conduct that, in any way, constituted sexual harassment, sexual misconduct, and/or discrimination.**

342.    Patricia McNulty made a report to notify Daniel Pipes about Defendant, Greg

Roman's sexual harassment, sexual misconduct, and/or gender and sex discrimination.

> **Answer:  Admitted in part, denied in part.  It is admitted only that Ms. McNulty contacted Mr. Pipes about some concerns regarding Mr. Roman.   Defendants deny that her reports were about alleged conduct that, in any way, constituted sexual harassment, sexual misconduct, and/or discrimination.**

343.    Caitriona Brady made a report to notify Daniel Pipes about Defendant, Greg

Roman's sexual harassment, sexual misconduct, and/or gender and sex discrimination.

> **Answer:  Admitted in part, denied in part.  It is admitted only that Ms. Brady contacted Mr. Pipes about some concerns regarding Mr. Roman.   Defendants deny that her reports were about alleged conduct that, in any way, constituted sexual harassment, sexual misconduct, and/or discrimination.**

344.    Delaney Yonchek made a report to notify Daniel Pipes about Defendant, Greg

Roman's sexual harassment, sexual misconduct, and/or gender and sex discrimination.

> **Answer:  Admitted in part, denied in part.  It is admitted only that Ms. Yoncheck contacted Mr. Pipes about some concerns regarding Mr. Roman.   Defendants deny that her reports were about alleged conduct that, in any way, constituted sexual harassment, sexual misconduct, and/or discrimination.**

345.    Prior to November 1, 2018, Daniel Pipes was already on express and actual notice

regarding Defendant, Greg Roman's sexual harassment, sexual misconduct and sex and gender

discrimination.

> **Answer:  Denied.**

346.     Prior to November 1, 2018, and by at least December 2016, Daniel Pipes was notified about a Charge of Discrimination filed with the Equal Employment Opportunity Commission alleging that Defendant, Greg Roman subjected female employees to sexual harassment and sexual misconduct.

**Answer:  Admitted in part, denied in part.  It is admitted only that prior to November 1, 2018, a Charge of Discrimination had been filed with the Equal Employment Opportunity Commission.  A Charge of Discrimination is a written document the contents of which speak for themselves therefore the remainder of this allegation is denied.**

347.     Daniel Pipes was in possession of and had express and actual knowledge about numerous reports of Defendant, Greg Roman's sexual harassment and sexual misconduct to which Defendant, Greg Roman subjected female employees who worked at The Middle East Forum.

**Answer:  Denied.**

348.     Daniel Pipes remained loyal to Defendant, Greg Roman, who has been accused of preying on female employees of The Middle East Forum for at least five (5) years.

**Answer:  Denied.**

349.     At every opportunity, Daniel Pipes has introduced policies, procedures, and protocols designed to punish the female employees of The Middle East Forum who have claimed abuse and sexual abuse, while rewarding the individual accused of abusing these same female employees.

**Answer:  Denied.**

350.     Had Daniel Pipes considered and acted in accordance with federal, state and local anti-discrimination laws, Plaintiff, Lisa Barbounis would never have been subjected to severe and pervasive discrimination and harassment in the workplace.

**Answer:  Denied.  Defendants deny all allegations of violations of federal, state, and local anti-discrimination laws and deny all allegations of discrimination and harassment.**

351.     Due to Daniel Pipes refusal to investigate and remediate earlier reports of discrimination and harassment in the workplace, Plaintiff, Lisa Barbounis and many other of Plaintiffs female coworkers were subjected to a campaign of discrimination and harassment due to their sex and gender.

**Answer:  Denied.**

352.     Had Daniel Pipes considered and acted in accordance with laws aimed at protecting women from sexual harassment in the workplace, he would have investigated Defendant, Greg Roman as early as 2016 and prompt remedial measures would have been implemented to ameliorate and/or eliminate completely the future sexual harassment and sexual misconduct that occurred in 2018 to Plaintiff, Lisa Barbounis.

**Answer:  Denied.  Defendants deny all allegations that Mr. Pipes failed to act in accordance with any law and deny all allegations of sexual harassment and sexual misconduct.**

353.     Defendant Daniel Pipes held a group meeting on November 1, 2018, during which, Plaintiff, Lisa Barbounis, Patricia McNulty, Marnie Meyer, Caitriona Brady, and Delaney Yonchek all expressed grave concerns regarding Defendant, Greg Roman's discrimination and harassment of the female staff.

**Answer:  Admitted in part; denied in part.  Defendants admit that a meeting occurred on November 1, 2018 but deny all other allegations in this paragraph.**

354.    During the November 1, 2018 meeting, Daniel Pipes was notified about the sexual

assault in Washington D.C., during the AIPAC Conference., when Defendant, Greg Roman

forcefully, violently, and aggressively picked Patricia McNulty up by her upper thigh and back-

side, dropped her on his lap, and suggested that Ms. McNulty engage in sexual acts with

Defendant, Greg Roman.

> **Answer:  Admitted in part, denied in part.  It is admitted only that on November 1,
> 2018, Mr. Pipes learned of this alleged incident.    Defendants deny the occurrence of
> any sexual assault or improper conduct having occurred in Washington D.C. during
> the AIPAC conference and the remainder of this allegation is therefore denied.**

355.    During the November 1, 2018 meeting, Plaintiff, Lisa Barbounis reported the

sexual harassment and sexual misconduct and sexual assault that occurred across national

borders in Israel when Defendant, Greg Roman subjected Plaintiff, Lisa Barbounis to unwelcome

lewd sexual advances including unwelcome sexual touching.

> **Answer:  Admitted in part, denied in part.  It is admitted only that Plaintiff
> reported an incident that allegedly occurred when she was in Israel with Mr.
> Roman.  Defendants deny that this report was accurate.  And Defendants deny the
> occurrence of any sexual harassment, sexual misconduct, sexual assault, and
> unwelcome sexual advances having occurred during Mr. Roman's and Plaintiff's
> time in Israel.  The remainder of this allegation is therefore denied.**

356.    November 1, 2018, The Middle East Forum's female staff informed Daniel Pipes

about Defendant, Greg Roman's ongoing severe and pervasive discrimination and harassment in

the workplace.

> **Answer:  Admitted in part, denied in part.  It is admitted only that female
> employees expressed some concerns about Mr. Roman.  Defendants deny that these
> concerns were accurate or that they constituted complaints about discrimination
> and harassment occurring in the workplace.  Defendants deny all allegations of
> workplace discrimination and harassment.  The remainder of this allegation is
> therefore denied.**

357.     Daniel Pipes responded to the reports of sexual harassment, sexual misconduct, and sexual assaults by telling Plaintiff, Lisa Barbounis, Marnie Meyer, Patricia McNulty, Caitriona Brady, and Delaney Yonchek that Defendant, Greg Roman's conduct was not that big a deal.

**Answer:  Denied.**

358.     Daniel Pipes suggested that because priests who molest children were permitted by the Catholic Church to remain priests, Defendant, Greg Roman should be permitted to continue his employment at the MEF.

**Answer:  Denied.**

359.     Daniel Pipes said, "priests have been accused of more and not lost their jobs."

**Answer:  Denied.**

360.     Daniel Pipes did not apologize for the years of abuse described and reported by his female staff on November 1, 2018.

**Answer:  Denied as stated.  There was no abuse to apologize for.**

361.     Daniel Pipes notified the female staff of The Middle East Forum including Plaintiff, Lisa Barbounis, Marnie Meyer, Patricia McNulty, Caitriona Brady, and Delaney Yonchek that The Middle East Forum maintains standards which informs when discipline for sexual harassment is warranted.

**Answer:  Admitted.**

362.     Daniel Pipes then told his female staff of The Middle East Forum that Defendant, Greg Roman's conduct and comments over the years had not risen to the level where discipline was warranted.

**Answer:  Denied**

363.     Daniel Pipes' conclusion that Defendant, Greg Roman's conduct and comments had not risen to the level where discipline was warranted was based upon MEF policies which Daniel Pipes claimed supported his conclusions.

**Answer:  Denied.**

364.     Daniel Pipes' conclusions that Defendant, Greg Roman's conduct and comments had not risen to the level where discipline was warranted was in response to learning that a female staff member of The Middle East Forum named Patricia McNulty had been sexually assaulted.

**Answer:  Denied.**

365.     Daniel Pipes' conclusions that Defendant, Greg Roman's conduct and comments had not risen to the level where discipline was warranted was in response to learning that a female staff member of The Middle East Forum named Marnie Meyer had been sexually harassed.

**Answer:  Denied.**

366.     Daniel Pipes' conclusions that Defendant, Greg Roman's conduct and comments had not risen to the level where discipline was warranted was in response to learning that a female staff member of The Middle East Forum, Plaintiff, Lisa Barbounis, had been subjected to unwelcome sexual touching, sexual assault, sexual harassment, and quid pro quo sexual propositions.

**Answer:  Denied.**

367.    Daniel Pipes' conclusions that Defendant, Greg Roman's conduct and comments had not risen to the level where discipline was warranted was in response to learning that the Director of the MEF, Defendant, Greg Roman engaged an eighteen (18) year old female intern named Leah Merville in sexual intercourse in his hotel room, and that he had lured Ms. Merville to the hotel room with the promise of signing important paperwork which Ms. Merville required.

**Answer:  Denied.**

368.    Accordingly, Daniel Pipes initiated no discipline.

**Answer: Denied as stated.**

369.    Plaintiff Lisa Barbounis, Marnie Meyer, Patricia McNulty were instructed to work from home the following Friday.

**Answer:  Denied as stated.**

370.    Daniel Pipes also instructed Plaintiff Lisa Barbounis, Marnie Meyer, Patricia McNulty to execute new Nondisclosure Agreements.

**Answer:  Denied.**

371.    Plaintiff, Lisa Barbounis refused to sign.

**Answer:  Denied as stated.  She did not sign.**

372.    Saturday, November 3, 2018, Plaintiff Lisa Barbounis received an email from Daniel Pipes instructing Plaintiff to attend a group meeting scheduled Monday, November 5, 2018.

**Answer:  Denied.  Any referenced email is a written communication the contents of which speak for themselves and Plaintiff's characterization thereof is denied.**

373.    This memorandum was sent as a group email to Plaintiff and her coworkers.

**Answer:  Denied.  Any memorandum is a written communication the contents of which speak for themselves and Plaintiff's characterization thereof is denied.**

374.    Defendant, Greg Roman was included in the email and invited to attend the group meeting.

**Answer:  Denied.  Any referenced email is a written communication the contents of which speak for themselves and Plaintiff's characterization thereof is denied.**

375.    Defendant, Greg Roman was specifically asked to attend the group meeting.

**Answer:  Admitted.**

376.    It was not until Monday, November 5, 2018 when a call was made to Defendant, Greg Roman asking that he stay home.  This call was made due to the female staff members all expressing extreme discomfort at the idea of holding a group meeting about Defendant, Greg Roman with Defendant, Greg Roman.

**Answer:  Admitted in part, denied in part.  Defendants admit that Mr. Roman was later asked to not come of the office on Monday, November 5, 2018.  The remainder of this allegation is denied.**

377.    Defendant, Greg Roman's sister attended the meeting and spent the entire meeting arguing in support of her brother.

**Answer:  Admitted in part, denied in part.  It is admitted only that MEF employee Stacy Roman is Mr. Roman's sister and that she was present at the meeting.  The characterization of the substance of Ms. Roman's communications is denied.**

378.    Defendant, Greg Roman's sister said that the woman who Defendant, Greg Roman sexually harassed were at fault for wearing revealing clothes.

**Answer:  Denied.**

379.    The November 5, 2018 meeting was indicative of Defendant, Daniel Pipes utter failure to bring his organization into compliance with state and federal anti-discrimination laws.

**Answer:  Denied.  By way of further response, Defendants deny all allegations of violations of state and federal anti-discrimination laws.**

380.     After the November 5, 2018 meeting, Daniel Pipes decided that Defendant, Greg Roman would retain his position, title, pay, and employment with the Middle East Forum.

**Answer:  Denied.**

381.     Daniel Pipes notified Plaintiff, Lisa Barbounis that Defendant, Greg Roman would work from home and that Plaintiff would no longer directly report to Defendant Greg Roman.

**Answer:  Admitted.**

382.     Daniel Pipes' claimed that Plaintiff, Lisa Barbounis would no longer be forced to work with Defendant, Greg Roman.

**Answer:  Denied.**

383.     Daniel Pipes did not enforce his self-prescribed remedial measures and Plaintiff, Lisa Barbounis was forced to continue working with Defendant, Greg Roman.

**Answer:  Denied.**

384.     For the next few months, Plaintiff, Lisa Barbounis was forced to continue working with Defendant, Greg Roman.

**Answer:  Denied.**

385.     The only change was that Defendant, Greg Roman did not visit the office.

**Answer:  Denied.**

386.     Defendant, Greg Roman's work duties, responsibilities, and authority remained unchanged.

**Answer:  Denied.**

387.     Plaintiff, Lisa Barbounis continued to be subjected to discrimination and harassment due to her sex and gender.  The big difference was that Defendant, Greg Roman set out on a mission of retaliation aimed at the female employees who reported his unlawful conduct.

**Answer:  Denied.**

388.     Plaintiff was still subjected to the same discrimination and harassment in the workplace.

**Answer:  Denied.**

389.     In fact, the discrimination and harassment got worse, as after the November 5, 2018 meeting, Defendant, Greg Roman unleashed a campaign of retaliation against Plaintiff, Lisa Barbounis, Patricia McNulty, Mamie Meyer, Caitriona Brady, and Delaney Yonchek.

**Answer:  Denied.**

390.     Defendant, Greg Roman openly voiced his retaliatory intent.

**Answer:  Denied.**

391.     Defendant, Greg Roman targeted the employees who Defendant, Greg Roman called "the usurpers."

**Answer: Denied.**

392.     Defendant Greg Roman also called the female staff who reported his sexual harassment and sexual misconduct, "backstabbers."

**Answer:  Denied.**

393.     Defendant, Greg Roman notified Defendant, Mathew Bennett, "they are all usurpers and I will never work with usurpers."

**Answer:  Denied.**

394.    Even more recently, Defendant, Greg Roman announced on a radio show that "all usurpers should be crushed."

**Answer:  Defendants deny all allegations that are inconsistent with the recording. Mr. Roman does not recall making this comment, but if he did, it was in reference to terrorist organizations.**

395.    Plaintiff was forced to continue working with Defendant, Greg Roman.

**Answer:  Denied.**

396.    Plaintiff was still forced to take orders from Defendant, Greg Roman.

**Answer:  Denied.**

397.    Defendant, Greg Roman was still the Director of the Middle East Forum.

**Answer:  Admitted.**

398.    Defendant, Greg Roman began a campaign of retaliation aimed at Plaintiff, Lisa Barbounis and the other female employees in the office who reported discrimination and harassment including Marnie Meyer, Patricia McNulty, Delaney Yonchek, and Caitriona Brady.

**Answer:  Denied.  Defendants deny all allegations of discrimination, harassment, and retaliation.**

399.    Sometime around March 2019, Daniel Pipes held a meeting with Marnie Meyer, Patricia McNulty and Plaintiff, Lisa Barbounis.  The meeting was about bringing Defendant, Greg Roman back to a position where he would resume almost all of his former responsibilities as Director of the Middle East Forum.

**Answer:  Admitted in part, denied in part.  It is admitted only that in March 2019 Mr. Pipes met with Plaintiff, Ms. Meyer, and Ms. McNulty about Mr. Roman's role at MEF.  Mr. Pipes held this meeting because Plaintiff and Ms. McNulty requested that Mr. Roman be permitted to assume his former role and responsibilities.**

400.     After this meeting Defendant, Greg Roman began working directly with the staff again, including the female staff who Defendant, Greg Roman had systemically victimized.

**Answer:  Denied.  Plaintiff asked for Mr. Roman's return.  He never victimized her.**

401.     The decision to bring Defendant, Greg Roman back to Director of the Middle East Forum was agreed upon with extreme reluctance.   The female staff who conceded to the decision which allowed Defendant, Greg Roman to resume his old responsibilities did so in order to help the Middle East Forum as an organization.

**Answer:  Denied. Plaintiff specifically requested Mr. Roman's return.**

402.     It was clear that the MEF was going through a rough patch and the organization seemed to be floundering.

**Answer: Denied.**

403.     It was apparent that Daniel Pipes was consulting with Defendant, Greg Roman behind the scenes and so the decision was made in the interest of helping Daniel Pipes and helping the organization.

**Answer:  Denied.**

404.     Because the MEF is a nonprofit organization with a specific objective, the employees who work at MEF do so based on a strong belief in the MEF mission.

**Answer:  Admitted in part; denied in part. Admitted that MEF is a nonprofit organization. Defendants lack knowledge or information sufficient to form a belief about the truth of the remainder of the allegation and it is therefore denied**

405.     Defendant, Greg Roman was brought back on what was labeled a strict probationary period.  Daniel Pipes promised strict rules, guidelines, scrutiny, and oversight. None of this occurred.

**Answer:  Denied.**

72

406.     Defendant, Greg Roman was moved back to a position where he would interact directly with the female staff who he prayed upon, abused, and harassed.

**Answer:  Denied.**

407.     The female staff members, and Plaintiff, Lisa Barbounis agreed to this reluctantly because they believed in the Middle East Forum's mission.

**Answer:  Denied.**

408.     The rules and guidelines agreed upon were intended to protect the female staff who Defendant, Greg Roman had systematically victimized and sexually abused and harassed.

**Answer:  Denied.**

409.     These rules and guidelines were quickly disregarded by Daniel Pipes and Defendant, Greg Roman.

**Answer:  Denied.**

410.     Accordingly, shortly after Defendant, Greg Roman's return, Plaintiff, Lisa Barbounis noted the discrimination and harassment and retaliation.

**Answer:  Denied.**

411.     Defendant, Greg Roman used his position as Director of the MEF to subject Plaintiff to tangible employment actions such as discipline and the threat of termination.

**Answer:  Denied.  Defendants deny all allegations of retaliation.**

412.     The female staff and Plaintiff, Lisa Barbounis were subjected to a continuing hostile work environment including retaliation due to their reporting and opposing Defendant, Greg Roman's discrimination and harassment in the workplace.

**Answer:  Denied.**

413.    The female staff including Plaintiff, Lisa Barbounis attempted to discuss the fact that bringing Defendant, Greg Roman back was not working, and that Defendant, Greg Roman was actively disregarding the guidelines and rules that the female staff and Daniel Pipes agreed upon.

**Answer:  Denied.**

414.    Daniel Pipes continued his same policy employed for at least the last five (5) years, of ignoring, disregarding, and refusing to take action in response to reports of discrimination, harassment and retaliation concerning Defendant, Greg Roman.

**Answer:  Denied.**

415.    Daniel Pipes and Defendant, Greg Roman used the female staffs dedication to the MEF mission to convince female staff to tolerate discriminatory and harassing working conditions.

**Answer:  Denied.**

416.    At all times Defendant, Greg Roman retained the position of Director of the Middle East Forum.

**Answer:  Admitted in part, denied in part.  Mr. Roman retained the title of Director, but his responsibilities and benefits were diminished beginning in November 2018.**

417.    At all times, Plaintiff was forced to continue working at the Middle East Forum with Defendant, Greg Roman.

**Answer:  Denied.**

418.    During the March 2019 meeting, Daniel Pipes announced that he was going to eliminate the purported safe measures initiated to protect the female staff from Defendant, Greg Roman's severe and pervasive discrimination, harassment, and retaliation.

**Answer:  Denied.**

419.    Accordingly, since March 2019, Plaintiff, Lisa Barbounis has been subjected to working with Defendant, Greg Roman.

**Answer: Denied**

420.    Defendant, Greg Roman's campaign of retaliation since March 2019 has been aimed at effecting Plaintiffs termination from the Middle East Forum.

**Answer:  Denied.  By way of further response, Plaintiff resigned from her position at MEF to pursue an opportunity to work with a politician.  Defendants deny all allegations of retaliation.**

421.    This was around the same time when Plaintiff, Lisa Barbounis and coworker Patricia McNulty learned about another allegation of sexual harassment involving Defendant, Greg Roman.

**Answer:  Denied.**

422.    Defendant, Greg Roman began a rumor that Marnie Meyer was having a sexual relationship with Caitriona Brady's father.

**Answer:  Denied.**

423.    Caitriona Brady is an employee at the Middle East Forum who holds the position Development Associate.

**Answer:  Denied.**

424.     When Defendant, Greg Roman first learned that another allegation of sexual harassment was reported, he did not yet know the details of the allegation.

**Answer:  Denied.**

425.     Accordingly, Defendant, Greg Roman and Defendant, Mathew Bennett began a guessing game where they attempted to guess what the allegation involved.

**Answer:  Denied.**

426.     Defendant, Greg Roman incorrectly guessed that the sexual harassment allegation involved a former intern named Gabrielle Bloom who Defendant, Greg Roman purportedly paid for sex.

**Answer: Denied.**

427.     Defendant, Greg Roman subjected two female interns to quid pro quo sexual harassment, as well as subjecting Plaintiff to a sexual assault.

**Answer:  Denied.**

428.     Defendant, Greg Roman also subjected Plaintiff, Lisa Barbounis to quid pro quo sexual harassment by conditioning a work trip to Israel on sharing the same Airbnb, Defendant, Greg Roman set these conditions with the intent of leveraging the close quarters for opportunities to make sexual advances.

**Answer:  Denied.**

429.     Just days after the March 2019 meeting when Defendant, Daniel Pipes announced that he was eliminating the measures designed to protect female staff from Defendant Greg Roman, Defendant, Greg Roman called Defendant, Mathew Bennett.

**Answer:  Denied.**

430.     Defendant, Greg Roman informed Defendant, Matthew Bennett, "now that I am back, I am going to begin searching for a replacement for the Director of Development."

**Answer:  Denied.**

431.     This was the position of a coworker, Patricia McNulty who also reported being subjected to discrimination and harassment by Defendant, Greg Roman.

**Answer: Denied**

432.     Defendant, Greg Roman's statement about Patricia McNulty indicated his intent to retaliate against the employees who he called "the usurpers."  These were the women who reported Defendant, Greg Roman's discrimination and harassment.

**Answer:  Denied.**

433.     Defendant, Greg Roman's primary targets were Patricia McNulty and Plaintiff, Lisa Barbounis.

**Answer:  Denied.**

434.     Defendant, Greg Roman initiated a campaign of discrimination, harassment, and retaliation against Plaintiff in an effort to effect Plaintiffs termination.

**Answer:  Denied.  Furthermore, Defendants further deny that Plaintiff was terminated.**

435.     Plaintiff reported this to Daniel Pipes.

**Answer:  Denied.**

436.     Daniel Pipes utterly disregarded all of Plaintiff s reports of ongoing discrimination, harassment and retaliation.

**Answer:  Denied.**

437.     If anything, Daniel Pipes has continued to provide Defendant, Greg Roman more access, authority, and opportunity with which to achieve his discriminatory and retaliatory agenda.

**Answer:  Denied.**

438.     Despite allowing Defendant, Greg Roman to return on probationary status, Daniel Pipes continued to protect, shield, indemnity and assist Defendant, Greg Roman from any and all impact caused by his severe and pervasive discrimination and harassment in the workplace.

**Answer:  Denied.**

439.     Daniel Pipes has allowed, permitted, sanctioned and condoned Defendant, Greg Roman's sexual harassment and sex and gender discrimination and has never considered meaningful measures designed to remediate the unlawful conduct.

**Answer:  Denied.**

440.     Accordingly, Defendant, Daniel Pipes has condoned, sanctioned, permitted, and allowed the discrimination, harassment, and retaliation to continue.

**Answer:  Denied.**

441.     Defendants have made Plaintiff's working conditions so onerous, abusive, and intolerable that no person in Plaintiffs shoes should be expected to continue working under such conditions.

**Answer:  Denied.**

442.     Plaintiff, Lisa Barbounis's resignation was void of free will.

**Answer:  Denied.**

443.     Plaintiff was constructively discharged from her employment due to the return of Defendant, Greg Roman and the severe and pervasive hostile work environment which Plaintiff, Lisa Barbounis was subjected to and due to the campaign of retaliation resulting from Plaintiffs opposition to and reports of discrimination and harassment in the workplace.

**Answer:  Denied.**

444.     Defendants and Daniel Pipes and Defendant, Greg Roman have been subjecting female staff of The Middle East Forum to discrimination and harassment and retaliation due to their sex and gender for years.

**Answer:  Denied.**

445.     The unlawful acts, comments and conduct described above all involved the same individual and the same pattern of behavior which includes sexual harassment, sexual misconduct, and sex and gender discrimination to which the female employees of MEF have been subjected to for at least the last five (5) years.

**Answer:  Denied.**

446.     The way in which Daniel Pipes ignored reports of discrimination and harassment in the workplace concerning Defendant, Greg Roman created a reasonable inference that any individual report of sexual harassment, sexual misconduct, or sex and gender discrimination by Defendant, Greg Roman would be futile and would most likely result in retaliation.

**Answer:  Denied.**

447.    Plaintiff, Lisa Barbounis was made aware of Laura Frank and Lara's (last name unknown) termination which resulted when Laura and Lara discussed Defendant, Greg Roman's discrimination and harassment in the workplace.  By providing this information to Plaintiff, Lisa Barbounis, it was essentially a warning not even to discuss reporting discrimination and harassment in the workplace.

**Answer:  Denied.**

448.    For these reasons Plaintiff, Lisa Barbounis was reasonably dissuaded from reporting Defendant, Greg Roman's discrimination and harassment.

**Answer:  Denied.**

449.    It helped Plaintiff feel more protected when Marnie Meyer, Patricia McNulty, Plaintiff, Lisa Barbounis, Caitriona Brady, and Delaney Yonchek all came together to report Defendant, Greg Roman's unlawful conduct and comments in November 2018.

**Answer:  Denied.**

450.    Defendants used to employ a female individual named Eman Patel.

**Answer:  Admitted.**

451.    Eman Patel was a gay Muslim female who worked at Middle East Forum.

**Answer:  Admitted.**

452.    Eman Patel was harassed by Defendant, Greg Roman until she was constructively discharged.  Defendant, Greg Roman's objective was to make Eman Patel's working conditions so intolerable that she decided to discontinue her employment in a manner which Defendant, Greg Roman and Defendant, Daniel Pipes considered voluntary.

**Answer:  Denied.**

453.     Both Daniel Pipes and Defendant, Greg Roman harassed Eman Patel until she quit.

**Answer:  Denied.**

454.     Because of the number of protected classes that she could be considered to fall within, Daniel Pipes and Defendant, Greg Roman called Eman Patel "a walking lawsuit."

**Answer:  Denied.**

455.     Daniel Pipes approved of the plan to harass and make Eman Patel's work life so intolerable that she quit on her own.

**Answer:  Denied.**

456.     Daniel Pipes and Defendant, Greg Roman used Eman Patel's gender to harass and discriminate.

**Answer:  Denied.**

457.     Eman Patel is yet another member of the MEF female staff who was subjected to discrimination and harassment due to her sex and gender.

**Answer:  Denied.**

458.     Samantha Mandalas was another female employee of the Middle East Forum.

**Answer:  Admitted.**

459.     Samantha Mandalas said in her exit interview "if I would have been a male I would have gotten more respect."

**Answer:  Denied.**

460.    Samantha Mandalas was subjected to discrimination and harassment due to her sex and gender.

**Answer:  Denied.**

461.    Plaintiff, Lisa Barbounis was subjected to a severe and pervasive atmosphere of discrimination and harassment in the workplace.

**Answer:  Denied.**

462.    Plaintiff now files this civil action lawsuit against the above named Defendants, Middle East Forum, Greg Roman, Daniel Pipes, and Matthew Bennett.  Plaintiff was employed at the Middle East Forum from October 2017 until her unlawful termination by constructive discharge August 2019.

**Answer:  Admitted in part, denied in part.  It is admitted only that Plaintiff has filed the instant civil action against the named Defendants.  The remainder of this allegation is denied.**

463.    Plaintiff Lisa Barbounis notified Defendants that she could no longer tolerate working in such hostile work conditions and resigned her position at the Middle East Forum to avoid further discrimination and harassment and retaliation to which Plaintiff was subjected by Defendants during her employment.

**Answer:  Denied.**

464.    Plaintiff's resignation letter notified Defendants that she could no longer tolerate the severe and pervasive discrimination and harassment which caused Plaintiff to suffer physical and mental distress.

**Answer:  Denied.  Plaintiff's resignation letter is a written document the contents of which will speak for themselves and Plaintiff's characterization thereof is denied.**

465.    Plaintiff reported the discrimination and harassment and was subjected to further retaliation.

**Answer: Denied.**

466.    When Plaintiff's first Charge was filed in June 2019, Plaintiff had not yet been discharged from her employment.

**Answer: Denied.  By way of further response, Plaintiff voluntarily resigned and was never discharged.**

467.    After filing her Charge, Plaintiff was subjected to further discrimination, harassment, and retaliation.

**Answer:  Denied.**

468.    Plaintiff attempted to continue her employment at the Middle East Forum however, Defendants initiated a campaign of retaliation against Plaintiff pursuant to Plaintiff's reports of discrimination and harassment and her attempts to vindicate her rights by filing a Charge of Discrimination.

**Answer:  Denied.**

469.    Plaintiff was subjected to tangible employment actions.  Plaintiff was subjected to a hostile work environment and the discrimination and harassment was so abusive, hostile, and intolerable that no reasonable person could have expected Plaintiff to continue working in such conditions such that Plaintiff's resignation was void of free will.

**Answer:  Denied.**

470.    Plaintiff's position with the Middle East Forum was changed and altered. Plaintiff's ability to do the work that she was responsible for changed at Defendants subjected Plaintiff to further discrimination and harassment and retaliation by reassigning Plaintiff or subjecting Plaintiff to discipline.

**Answer:  Denied.**

471.    Plaintiff was threatened.  Plaintiff was ignored.  The entire office Changed after Plaintiff filed her Charge and it was communicated to Plaintiff without any ambiguity that Plaintiff was no longer welcome at the Middle East Forum.

**Answer:  Denied.**

472.    Plaintiff was made to understand that she was not welcome at the Middle East Forum and that Plaintiff's future at the Middle East Forum would afford Plaintiff no opportunity for advancement and indeed Plaintiff would not even be permitted to perform the same responsibilities that she performed prior to Plaintiff submitting a Charge of Discrimination at the EEOC and PHRA.

**Answer:  Denied.**

473.    Defendants disparate treatment and retaliation against Plaintiff and the hostile work environment that began in October 2017 culminated in a tangible employment action: Plaintiff's termination.

**Answer:  Denied.**

474.    Plaintiff Lisa Barbounis also adds additional retaliation which Defendants have undertaken in their campaign of retaliation to which Defendants have subjected Plaintiff due to Plaintiff's reports of and opposition to Defendants discrimination and harassment in the workplace.

**Answer:  Denied.**

475.    Defendants and Defendant, Middle East Forum has filed a Civil Action Complaint against Plaintiff, Lisa Barbounis.  Defendants have accused Plaintiff of violations of Breach of Contract—Confidentiality & Non-Disclosure Agreement (Count I), Breach of Contract—Bring Your Own Device Agreement (Count II), Computer Fraud and Abuse Act (Count III), Pennsylvania Uniform Trade Secrets Act (Count IV), Defend Trade Secrets Act (Count V), Stored Communications Act (Count VI), Conversion of Confidential Information (Count VII), Breach of Fiduciary Duty (Count VIII), and Declaratory Judgment (Count IX).  Defendants attempt to litigate these frivolous claims is nothing more than retaliation.

**Answer:  Admitted in part, denied in part.  It is admitted only that MEF filed a civil action against Plaintiff. The remainder of this allegation is denied.**

476.    This purely frivolous suit is Defendants attempt to harass, embarrass, disparage, and discredit Plaintiff related to Plaintiff's protected activity.

**Answer:  Denied.**

477.    Plaintiff has filed a Charge of discrimination and harassment and upon receipt of her Right to Sue letter from the EEOC, Plaintiff filed a Civil Action lawsuit against Defendants. Defendants have answered Plaintiff's lawful charge and Civil Action Complaint with the above referenced frivolous Complaint.

**Answer:  Denied.**

478.    Defendants have forced Plaintiff to retain counsel, spent time and money to defend this frivolous suit.

**Answer:  Denied.**

479.     Defendants have retaliated against Plaintiff, Lisa Barbounis in a coordinated effort designed to effect Plaintiff's termination from subsequent employment held after Plaintiff's constructive discharge from employment with MEF.

**Answer: Denied.**

480.     The campaign of retaliation to which Plaintiff Lisa Barbounis is subjected is ongoing and continues today.

**Answer: Denied.**

481.     Defendants' campaign of retaliation is based on Defendants' refusal to accept responsibility for lawful claims of sexual harassment and sexual misconduct.

**Answer: Denied.**

482.     Defendants response to valid reports of discrimination and harassment in the workplace has been a coordinated attack of the same women who were already victimized by Defendants unlawful discrimination.

**Answer: Denied.**

483.     Accordingly, Defendants have responded to victim of sex and gender discrimination by victimizing the same women further.

**Answer: Denied.**

484.     Defendants have made false allegations and filed frivolous unfounded lawsuits in a coordinated and planned effort to force Plaintiff to spent time and money defending these unlawful actions.

**Answer: Denied.**

485.     At no time did Defendants initiated a proper investigation to discovery and remediate the severe and pervasive discrimination and harassment in the workplace.

**Answer:  Denied.**

486.     Defendants have manufactured false evidence in their coordinated retaliatory attack on Plaintiff, Lisa Barbounis.

**Answer:  Denied.**

487.     Defendants have engaged in criminal conduct by promising to pay for testimony in their coordinated retaliatory attack on Plaintiff, Lisa Barbounis.

**Answer:  Denied.**

488.     Defendants have provided false and misleading information to potential witnesses in order to incite retaliatory behavior.

**Answer:  Denied.**

489.     Defendants have threatened subsequent additional legal action based on unfounded allegations without evidence to support the same.

**Answer:  Denied.**

490.     Defendants have disparaged Plaintiff, Lisa Barbounis.

**Answer:  Denied.**

491.     Defendants have invented a narrative and accused female employees of engaging in a civil conspiracy.

**Answer:  Denied.**

492.     Defendants have accused Plaintiff, Lisa Barbounis of misappropriating MEF money without any valid evidence to support the frivolous claim.

**Answer:  Denied.**

493.    Defendants have responded to the civil action complaint and lawsuit by attacking the victims of Defendant, Greg Roman and Defendant Daniel Pipes discriminatory conduct, policies, and actions.

**Answer:  Denied.**

494.    Defendants have also caused Plaintiff to suffer further emotional distress.

**Answer: Denied.**

495.    As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

**Answer:  Denied.**

496.    The severe and pervasive discrimination and harassment in the workplace has caused Plaintiff to suffer an acerbation and aggravation of any preexisting condition involving emotional distress.

**Answer:  Denied.**

497.    As a result of Defendants' conduct, Plaintiff was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.  As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

**Answer:  Denied.**

498.    As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer a loss of income, loss of salary, bonuses, benefits and other compensation to which such employment entailed.

**Answer:  Denied.**

499.    Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

**Answer:  Denied.**

500.    Plaintiff has further experienced severe emotional and physical distress.

**Answer:  Denied.**

501.    Plaintiff has suffered from severe emotional distress causes physical manifestations as a result of Defendants' unlawful and severe and pervasive conduct and comments.

**Answer:  Denied.**

502.    Any preexisting condition which Plaintiff may have maintained prior to her employment for Defendant, MEF was acerbated and aggravated by the severe and pervasive discrimination and harassment in the workplace.

**Answer:  Denied.**

503.    As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against all the Defendants, jointly and severally.

**Answer:  Denied.**

504.    Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.  At all times material Defendants refused to investigate or take appropriate remedial action in response to Plaintiffs complaints of discrimination, harassment and hostile work environment.

**Answer:  Denied.**

505.    Defendants discriminatory conduct was severe and pervasive, and created a

hostile work environment for Plaintiff.

**Answer:  Denied.  The allegation is as a conclusion of law to which no response is
required, and it is therefore denied.  Furthermore, Defendants deny all allegations
of discrimination and a hostile work environment.**

506.    The above are just some examples of some of the discrimination and retaliation to

which Defendants subjected Plaintiff.

**Answer:  Denied.**

507.    Plaintiff claims a pattern and practice of discrimination, claims continuing

violations, and makes all claims herein under the continuing violations doctrine.  Defendants

have exhibited a pattern and practice of not only discrimination but also retaliation.

**Answer:  Denied.**

## FIRST CAUSE OF ACTION
## DISCRIMINATION UNDER TITLE VII
## HOSTILE WORK ENVIRONMENT AND DISPARATE TREATMENT
### (all corporate Defendants only)

508.    Plaintiff, Lisa Barbounis, hereby incorporates all allegations contained in

paragraphs one (1) through five-hundred-seven (507) as fully as if they were set forth at length.

**Answer: Denied.  Defendants incorporate the answers and denials set forth above as
fully as if they were set forth at length.**

509.    Plaintiffs claim for disparate treatment at this time relates to Plaintiffs

discriminatory pay.  Plaintiff was paid less than her male counterparts of the same or similar

work.

**Answer:  Denied.**

510.     Plaintiff was also constructively discharged, however, Plaintiff will amend her complaint when Plaintiff receives a second Right to Sue letter from the EEOC, When Plaintiff filed her first Charge of Discrimination, Plaintiff remained employed with the Middle East Forum.  Accordingly, Plaintiff did not include facts related to Plaintiffs constructive discharge in her first Charge of Discrimination because it had not yet occurred.  Plaintiff has since filed a second Charge of Discrimination with the EEOC and reserves the right to amend her Complaint to include an additional disparate treatment claim related to the hostile work environment, retaliation and Plaintiffs constructive discharge that occurred after Plaintiff filed her first Charge of Discrimination.

**Answer:  Denied.  The allegation is as a conclusion of law to which no response is required, and it is therefore denied.**

511.     This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.,* as amended, for relief based upon the unlawful employment practices of the above-named Defendants.  Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's race, color, and/or national origin.

**Answer:  Denied.  The allegation is as a conclusion of law to which no response is required, and it is therefore denied.**

512.  SEC. 2000e-2 *[Section 703]* states as follows:

(a)     Employer practices

It shall be an unlawful employment practice for an employer -

(1)     to fail or refuse to hire or to discharge an individual, or otherwise to discriminate against any individual with respect to his compensation,

terms, conditions, or privileges of employment, because of such

individual's race, color, religion, sex, or national origin; or

(2)     to limit, segregate, or classify his employees or applicants for employment

in any way which would deprive or tend to deprive any individual of

employment opportunities or otherwise adversely affect his status as an

employee, because of such individual's race, color, religion, sex, or

national origin.

**Answer:  Denied.  The allegation is as a conclusion of law to which no response is required, and it is therefore denied.**

513.     Defendants engages in unlawful employment practices prohibited by 42 U.S.C. § 2000e *et. seq.,* by discriminating against Plaintiff because of her sex and gender.

**Answer:  Denied.  The allegation is as a conclusion of law to which no response is required, and it is therefore denied.**

514.     Plaintiff, Lisa Barbounis was subjected to sexual harassment which was severe and pervasive.

**Answer:  Denied.  The allegation is as a conclusion of law to which no response is required, and it is therefore denied.**

515.     Plaintiff claims that she was subjected to a hostile work environment based upon the severe and pervasive discrimination and harassment in the workplace.

**Answer:  Admitted in part, denied in part.  It is admitted that this allegation describes Plaintiff's claims, but Defendants deny liability.**

516.     Plaintiff was also terminated from her employment based upon Plaintiffs sex and gender.

**Answer:  Denied.**

517.     Defendants engaged in several acts of discrimination and harassment that were so severe that a single act was sufficient to create a hostile work environment.

**Answer:  Denied.  The allegation is as a conclusion of law to which no response is required, and it is therefore denied.**

518.     Defendants also engaged on ongoing, continuous, daily abuse which was so pervasive as to create a hostile work environment.

**Answer:  Denied.  The allegation is as a conclusion of law to which no response is required, and it is therefore denied.  Defendants deny all allegations of abuse and hostile work environment.**

**SECOND CAUSE OF ACTION**
**RETALIATION UNDER TITLE VII**
**(against corporate Defendants only)**

519.     Plaintiff, Lisa Barbounis, hereby incorporates all allegations contained in paragraphs one (1) through five-hundred-eighteen (518) as fully as if they were set forth at length.

**Answer:  Denied.  Defendants incorporate the answers and denials set forth above as fully as if they were set forth at length.**

520.     Title VII of the Civil Rights Act of 1962, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to...discriminate against any of his employees... because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any matter in an investigation, proceeding, or hearing under this subchapter."

**Answer:  Denied.  The allegation is as a conclusion of law to which no response is required, and it is therefore denied.**

521.     Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e *et. seq.* by retaliating against Plaintiff with respect to the terms, conditions, and/or privileges of his employment because of her opposition to and reporting of the unlawful employment practices of Defendants.

**Answer:  Denied.  The allegation is as a conclusion of law to which no response is required, and it is therefore denied.**

522.     Plaintiff continued to oppose the severe and pervasive discrimination and harassment in the workplace and even submitted a written statement to report the discrimination and harassment in the workplace.

**Answer:  Denied.**

523.     Defendants refused to investigate Plaintiff s reports of discrimination and harassment in the workplace.

**Answer:  Denied.**

524.     Defendants refused to initiate prompt corrective actions.

**Answer:  Denied.**

525.     Accordingly, Defendants permitted, sanctioned, condoned, and allowed the discrimination and harassment to continue.

**Answer:  Denied.**

526.     Any corrective action taken by Defendants was not enforced and Plaintiff was subjected to a campaign of severe and pervasive retaliation which also created a hostile work environment.

**Answer:  Denied.  The allegation is as a conclusion of law to which no response is required, and it is therefore denied.**

## THIRD CAUSE OF ACTION
## NEGLIGENT HIRING, RETENTION, SUPERVISION
### (against corporate Defendants only)

527.     Plaintiff, Lisa Barbounis, hereby incorporates all allegations contained in

paragraphs one (1) through five-hundred-twenty-seven (527) as fully as if they were set forth at

length.

> **Answer:  Denied.  Defendants incorporate the answers and denials set forth above
> as fully as if they were set forth at length.**

528.     Pennsylvania recognizes claims for negligent hiring, retention and supervision

when an employer has failed to exercise reasonable care in the selection or training of its

employees.

> **Answer:  Denied.  The allegation is as a conclusion of law to which no response is
> required, and it is therefore denied.**

529.     To maintain such an action, plaintiff must establish all elements of negligence,

including causation.

> **Answer:  Denied.  The allegation is as a conclusion of law to which no response is
> required, and it is therefore denied.**

530.     Plaintiff has indeed established above the elements of negligence.  Defendant,

Middle East Forum owed a duty of care to its employees to use such care in the hiring, retention

and supervision of its employees.

> **Answer:  Denied.  The allegation is as a conclusion of law to which no response is
> required, and it is therefore denied.**

531.     An employer may be negligent for the failure to exercise reasonable care in determining an employee's propensity for violence in an employment situation where the violence would harm a third person.

**Answer: Denied. The allegation is as a conclusion of law to which no response is required, and it is therefore denied.**

532.     In these situations, a plaintiff must establish that the employer breached a duty to protect others against a risk of harm.

**Answer: Denied. The allegation is as a conclusion of law to which no response is required, and it is therefore denied.**

533.     When the plaintiff has no special relationship with the employer (i.e., as in the case of a stranger), the duty owed may be inferred from the general duty imposed on all persons not to place others at risk through their actions.

**Answer: Denied. The allegation is as a conclusion of law to which no response is required, and it is therefore denied.**

534.     The scope of this duty is limited to those risks that are reasonably foreseeable by the actor in the circumstances of the case.

**Answer: Denied. The allegation is as a conclusion of law to which no response is required, and it is therefore denied.**

535.     Plaintiff has alleged a history of sexual harassment, sexual abuse, and/or sex and gender discrimination by Defendant, Greg Roman to which the female employees working at the Middle East Forum have been subjected. Plaintiff has alleged facts that indicate that Defendant, Middle East Forum had sufficient knowledge to be fully cognizable of the risk of harm that Defendant, Greg Roman posed to Plaintiff, Lisa Barbounis.

**Answer: Denied. The allegation is as a conclusion of law to which no response is required, and it is therefore denied. Defendants deny all allegations of sexual harassment, sexual abuse, and/or discrimination.**

536.     Defendant, Middle East Forum breached its duty of care and this directly caused the sexual assault of Plaintiff, Lisa Barbounis.

**Answer:  Denied.  The allegation is as a conclusion of law to which no response is required, and it is therefore denied.**

537.     Defendant, Middle East Forum breaches its duty of reasonable care and this directly led to the severe and pervasive sexual harassment to which Plaintiff, Lisa Barbounis was subjected by Defendant, Greg Roman.

**Answer:  Denied.  The allegation is as a conclusion of law to which no response is required, and it is therefore denied.  Defendants deny all allegations of sexual harassment.**

538.     As a result of Defendant, Greg Roman's conduct, Plaintiff, Lisa Barbounis suffered a physical injury when Defendant.  Greg Roman sexually assaulted Plaintiff

**Answer:  Denied.  The allegation is a conclusion of law to which no response is required, and it is therefore denied.  Defendants deny all allegations of sexual assault.**

## FOURTH CAUSE OF ACTION
## DISCRIMINATION UNDER
## PHILADELPHIA CITY ADMINISTRATIVE ORDINANCE
### (against all Named Defendants)

539.     Plaintiff, Lisa Barbounis, hereby incorporates all allegations contained in paragraphs one (1) through five0hundred-thirty-eight (538) as fully as if they were set forth at length.

**Answer:  Denied.  Defendants incorporate the answers and denials set forth above as fully as if they were set forth at length.**

540.     The Philadelphia Fair Practices Ordinance § 9-1103(1) provides that "It shall be an unlawful discriminatory practice:  "It shall be an unlawful employment practice to deny or interfere with the employment opportunities of an individuals based upon his or her race, ethnicity, color, sex (including pregnancy, childbirth, or a related medical condition), sexual

orientation, gender identity, religion, national origin, ancestry, age, disability, marital status, familial status, genetic information, or domestic or sexual violence victim status, including but not limited to the following:  (a) For any employer to refuse to hire, discharge, or otherwise discriminate against any individual, with respect to tenure, promotion, terms conditions, or privileges of employment or with respect to any matter directly or indirectly related to employment."

> **Answer:  Denied.**

541.     Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of Plaintiff's disability.

> **Answer:  Denied. The allegation is as a conclusion of law to which no response is required, and it is therefore denied.**

542.     Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Philadelphia Fair Practices Ordinance Chapter 9-1100.  Plaintiff claims violations of the Philadelphia Fair Practice Ordinance due to Defendants' discrimination against Plaintiff due to Plaintiff's sex and gender.

> **Answer:  Denied.**

**FIFTH CAUSE OF ACTION**
**RETALIATION UNDER THE**
**PHILADELPHIA CITY ADMINISTRATIVE ORDINANCE**
**(against all named Defendants)**

543.    Plaintiff, Lisa Barbounis, hereby incorporates all allegations contained in

paragraphs one (1) through five-hundred-forty-two (542) as fully as if they were set forth at

length.

**Answer:  Denied.  Defendants incorporate the answers and denials set forth above as fully as if they were set forth at length.**

544.    The Philadelphia Fair Practices Ordinance § 9-1103(1)(g) provides that is shall be

unlawful discriminatory practice:  "For any person to harass, threaten, harm, damage, or

otherwise penalize, retaliate, or discriminate in any manner against any person because he, she,

or it has complied with the provisions of this Chapter, exercised his, her, or its rights under this

Chapter, enjoyed the benefits of this Chapter, or made a charge, testified, or assisted in any

manner in any investigation, proceeding, or hearing hereunder."

**Answer:  Denied.**

545.    Defendants engaged in an unlawful discriminatory practice in violation of

Philadelphia Fair Practices Ordinance § 9-1103(1)(g) by discriminating against the Plaintiff

because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

**Answer:  Denied.  The allegation of this paragraph is a conclusion of law to which no response is required and it is therefore denied.**

## SIXTH CAUSE OF ACTION
## DISCRIMINATION UNDER
## PHILADELPHIA CITY ADMINISTRATIVE ORDINANCE—AIDING AND ABETTING
### (against individual Defendants only and not against corporate Defendants)

546.     Plaintiff, Lisa Barbounis, hereby incorporates all allegations contained in
paragraphs one (1) through five-hundred-forty-five (545) as fully as if they were set forth at
length.

**Answer:  Denied.  Defendants incorporate the answers and denials set forth above
as fully as if they were set forth at length.**

547.     The Philadelphia Fair Practices Ordinance § 9-1103(1)(h) provides that it shall be
unlawful discriminatory practice:  "For any person to aid, abet, incite, induce, compel or coerce
the doing of any unlawful employment practice or to obstruct or prevent any person from
complying with the provisions of this Section of any order issued hereunder or to attempt
directly or indirectly to commit any act declared by this Section to be an unlawful employment
practice."

**Answer:  Denied.**

548.     Defendants engaged in an unlawful discriminatory practice in violation of
Philadelphia Fair Practices Ordinance § 9-1103(1)(h) by aiding, abetting, inciting, compelling
and coercing the above discriminatory, unlawful, and retaliatory conduct.  The individual
Defendants aided and abetting the campaign of discrimination, harassment, and retaliation
against Plaintiff due to Plaintiff's race, color, and gender and disability and in retaliation for
Plaintiff opposing said discrimination and harassment in the workplace.

**Answer:  Denied.  The allegation of this paragraph is a conclusion of law to which
no response is required and it is therefore denied.**

### SEVENTH CAUSE OF ACTION
### DISCRIMINATION UNDER STATE LAW
### (against corporate Defendants only)

549.    Plaintiff, Lisa Barbounis, hereby incorporates all allegations contained in paragraphs one (1) through five-hundred-forth-eight (548) as fully as if they were set forth at length.

**Answer: Denied. Defendants incorporate the answers and denials set forth above as fully as if they were set forth at length.**

550.    The PHRA § 955 provides that it shall be an unlawful discriminatory practice: "(a) For any employment because of the race, color, religious creed, ancestry, age, sex, national origin, or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual of independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required.

**Answer: Denied.**

551.    Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of Plaintiff's sex and gender.

**Answer: Denied. The allegation of this paragraph is a conclusion of law to which no response is required and it is therefore denied.**

552.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the PHRA §955.

**Answer: Denied.**

**EIGHTH CAUSE OF ACTION**
**RETALIATION UNDER STATE LAW**
**(against all named Defendants)**

553.    Plaintiff, Lisa Barbounis, hereby incorporates all allegations contained in paragraphs one (1) through five-hundred-fifty-two (552) as fully as if they were set forth at length.

**Answer:  Denied.  Defendants incorporate the answers and denials set forth above as fully as if they were set forth at length.**

554.    PHRA § 955(d) provides that it shall be an unlawful discriminatory practice: "For any person, employer, employment agency or labor organization to discriminate in any matter against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding, or hearing under this Act.

**Answer:  Denied.**

555.    Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, or otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.  Specifically, Defendants took action against Plaintiff due to Plaintiff's opposition to Defendants' discrimination and harassment of Plaintiff.  Defendants also took action against Plaintiff due to Plaintiff's involvement in a civil action lawsuit where, Defendant, Philadelphia Housing Authority was a named Defendant. Defendants also took action against Plaintiff due to Plaintiff's ongoing reports of and opposition to sexual harassment and discrimination based on sex and gender.

**Answer:  Denied.  The allegation of this paragraph is a conclusion of law to which no response is required and it is therefore denied.**

102

## NINHTH CAUSE OF ACTION
## DISCRIMINATION UNDER STATE LAW-AIDING AND ABETTING
### (against individual Defendants only and non against corporate Defendant)

556.    Plaintiff, Lisa Barbounis, hereby incorporates all allegations contained in paragraphs one (1) through five-hundred-fifty-five (555) as fully as if they were set forth at length.

**Answer:  Denied.  Defendants incorporate the answers and denials set forth above as fully as if they were set forth at length.**

557.    PHRA § 955(e) provides that it shall be an unlawful discriminatory practice: "For any person, employer, employment agency, labor organization or employee to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice."

**Answer:  Denied.  The allegations is a conclusion of law to which no response is required and it is therefore denied.**

558.    Defendants engaged in an unlawful discriminatory practice in violation of PHRA § 955(e) by committing assault and battery, aiding, abetting, inciting, compelling and coercing the discriminatory conduct.  Defendants aided and abetted the above discrimination based on Plaintiff's sex and gender.

**Answer:  Denied.  The allegation is as a conclusion of law to which no response is required, and it is therefore denied.**

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's Amended Complaint fails, in whole or in part, to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims may be barred in whole or in part by her failure to mitigate damages.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims may be barred in whole or in part by the exclusive remedy provisions of the Pennsylvania Workers' Compensation Act.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by the doctrine of after-acquired evidence.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part because Middle East Forum had in place at all applicable times a policy prohibiting discrimination, harassment, and retaliation and exercised reasonable care to prevent and promptly correct any such conduct.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by her unreasonable failure to take advantage of preventative and corrective opportunities, including those provided under applicable discrimination, harassment and/or retaliation policies.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims may be barred in whole or in part by the doctrines of laches, fraud, waiver, estoppel, and/or unclean hands.

## EIGHTH AFFIRMATIVE DEFENSE

The claims asserted in the Amended Complaint are barred in whole or in part because in every employment decision challenged herein, Middle East Forum acted based on legitimate, non-discriminatory, non-retaliatory factors.

## NINTH AFFIRMATIVE DEFENSE

Defendants at all times acted in good faith, based upon a reasonable belief that it was in compliance with all legal requirements.

## TENTH AFFIRMATIVE DEFENSE

Some or all of the claims in the Amended Complaint are barred in whole or in part by the applicable statute of limitations.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part because she failed to exhaust administrative remedies.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by her failure to mitigate her claimed damages.

## THIRTEENTH AFFIRMATIVE DEFENSE

The relief is requested by Plaintiff is barred by the doctrine of unclean hands.

## RESERVATION OF RIGHTS

Defendants have insufficient knowledge or information on which to form a belief as to whether it may have additional, as yet unstated, defenses available.  Defendants reserve the right to amend or assert additional defenses which may become known during the course of discovery or revealed during pretrial proceedings.

WHEREFORE, Defendants respectfully request that this Court grant judgment in defendants' favor and against plaintiff on all Counts of the Amended Complaint, and for such further relief as the Court deems just and proper.

## COUNTERCLAIMS AGAINST LISA BARBOUNIS

## INTRODUCTION

Defendant/Counterclaim Plaintiff The Middle East Forum ("MEF"), through its undersigned counsel, Cozen O'Connor, for MEF's Counterclaims against Plaintiff Lisa Barbounis ("Plaintiff," "Counterclaim Defendant" or "Barbounis"), states as follows

1.       These Counterclaims are brought to remedy the damage caused by Barbounis through her planning and execution of a scheme to abandon her duties as an employee and director of MEF, to illicitly divert MEF funds from their rightful recipients and into the hands of her paramour, and to cover her tracks with deception and threats.

2.       As MEF has long suspected, and as the evidence has now revealed, in 2018, Barbounis, a married woman and mother of young children, hatched a plan to emigrate to the United Kingdom to start a new life with a man named Daniel Thomas, whom she met through her work at MEF, and with whom she soon after began a sexual affair.

3.       Apparently motivated by her desire to move to the United Kingdom and pursue her relationship with Thomas, Barbounis developed a conspiracy to pay for this scheme by diverting MEF funds to Thomas, by using MEF funds and resources to travel to the United Kingdom and Europe to spend time with Thomas, and ultimately, by levying sexual harassment and assault allegations against MEF and its director, Gregg Roman ("Roman") in the hopes that such allegations would lead to a large financial settlement that would fund her new life in the United Kingdom. *See* Exhibit A.

4.       As her relationship with Thomas fell apart and her scheme was at risk of being revealed to MEF and others, Barbounis resorted to an extended campaign of threats against

Jazmin Bishop ("Bishop"), Thomas's girlfriend, fiancée, or wife[2] and the mother of his children, even invoking the power of the office of her current employer, Congressman Randy Weber, in an effort both to preserve her adulterous relationship with Thomas and to ensure that her illegal diversion of MEF funds to Thomas would remain hidden.

5.      Barbounis' conduct in carrying out her scheme has been both extreme and outrageous, and the harms that Barbounis has caused MEF and Roman are substantial.

6.      Having finally uncovered the evidence of Barbounis' unlawful conduct, MEF now seeks, through these counterclaims, to begin the process of repairing the damage she has caused.

## BACKGROUND

**A.  Barbounis Begins Working For MEF.**

7.      Barbounis began her employment with MEF on or about October 16, 2017.

8.      She was hired as an Executive Liaison for MEF and continued in that role until January of 2019.

9.      From the inception of her employment until November 5, 2018, Barbounis reported to Defendant Gregg Roman, the Director of MEF.

10.      Barbounis and Roman quickly developed a friendly working relationship, and Barbounis liberally shared details of her personal life with Roman, including the most intimate information about her health, her emotions, her marriage, and her children.

11.      In March of 2018, Barbounis and Roman travelled to Israel together on MEF business.

---

[2] Thomas refers to Bishop alternatively as his girlfriend and fiancée.  Thomas' father, in written correspondence with Barbounis, refers to Bishop as Thomas' wife.

12.     Barbounis encouraged this intimacy. For example, on March 20, 2018, she wrote to Roman, "You should feel comfortable telling me when you are upset," and, "Ok. I'm focused but I want you to know you should feel comfortable telling me when I piss you of. (sic)" *See* Exhibit B.

13.     Barbounis often engaged in playful banter with Roman via text message, often using flirtatious language and emoticons, and calling him "baby." *Id.*

14.      Barbounis sent Roman sent personal videos of her children crying, she complained to him about the burdens of being a mother, detailed to him how she despised her in-laws in Florida, and graphically recounted how she had been domestically abused by her husband.

15.     At the same time, MEF and Roman were planning to start a social welfare entity separate and apart from MEF and shared his plans with Barbounis, who volunteered to assist him with the founding of this 501(c)(4) organization.

16.     In response to this offer, on July 12, 2018, Barbounis sent Roman a list of items that he would need for creating a 501(c)(4) organization.

17.     On July 26, 2018, Barbounis communicated with Ari Morgenstern, Director of Communications and Policy for the Christians United for Israel, and informed him of Roman's plans to start a new social welfare organization.

18.     In August 2018, Roman authorized MEF's attorneys and representatives to speak with Barbounis about the new organization.

19.     As a result of her involvement, Barbounis was acutely aware of MEF's and Roman's plans to start a new 501(c)(4) organization, and how important this new organization was to him.

20.     Simultaneously, Barbounis was competing with her coworker, Marnie Meyer, for status and power within MEF.

21.     Barbounis complained to Roman when she found out that Meyer might get an assistant before Barbounis: "Is it the assistant thing? She said you promised her Delaney and she will be pissed if someone gets an assistant before her. Her and I have been getting along pretty well, or so I thought, so I'm rather shocked to hear she was shooting down having my role modified. you are my boss and she is HR. How is it that she gets to make performance judgments? I know we are a small place but we need structure. I want to make my time here successful for both me and MEF. I want to live up to my potential. I know you can help me achieve that. How 'can we fix this?'". *See* Exhibit C.

22.     Nevertheless, as of September 17, 2018, Barbounis remained confident and secure in her position with MEF, stating, "...everyone in here loves me, Tricia, Delaney, Matt, Thelma. Cliff, Sam, and EJ all love me. No one else [other than Marnie Meyer] has a problem with me..." *See* Exhibit D.

23.     At the same time, Barbounis continued to share intimate medical and personal details about her life with Roman, including information about her various health concerns, and personal information about children and husband.

24.     Through October 2018, Barbounis seemed to be happy in her role at MEF and in her working relationship with Roman, and never indicated to Roman or anyone else at MEF that she had any problems or issues of any kind with Roman or anyone else at MEF, except Meyer.

**B.  Barbounis Meets Daniel Thomas, Begins A Sexual Affair With Him, And Hatches A Plan To Emigrate To The United Kingdom Using MEF Funds.**

25.     In May of 2017, MEF began working with Stephen Christopher Yaxley-Lennon, better known by his alias Tommy Robinson ("Robinson"), a United Kingdom-based activist.

26.     In the Spring of 2018, Barbounis began working on MEF's behalf in support of Robinson.

27.     Barbounis' first point of contact was with Daniel Thomas ("Thomas"), another United Kingdom-based activist, who was organizing a rally to support Robinson.

28.     At the behest of Barbounis, MEF provided Thomas with US$32,000 (all dollars at USD) to fund a rally to show support for Robinson, who had recently been jailed for contempt of court.

29.     MEF entered into a contract with Thomas that detailed the methods and means by which MEF's money would be spent and detailed the specific costs of the rally MEF would be funding. *See* Exhibit E.

30.     On or about June 8, 2018, Barbounis traveled to London with Patricia McNulty, another MEF employee, to supervise and attend the rally that MEF had funded.  *See* Exhibit F.

31.     While in London for the rally, Barbounis met Thomas in person for the first time.

32.     Almost immediately, Barbounis began an adulterous sexual relationship with Thomas.

33.     Almost immediately, Barbounis began neglecting her job duties and responsibilities to MEF as she devoted substantial attention to her sexual relationship with Thomas.

34.     At the time of the rally or shortly thereafter, Barbounis became aware that, of the $32,000 provided to support the Robinson rally, Thomas had misappropriated at least $7,000 for his own personal use.  *See* Exhibit A.

35.     This misappropriation of funds was not authorized or approved by MEF or Roman, who until 2020 had no idea that it had occurred because Barbounis had effectively hidden her illegal actions and threatened others who attempted to reveal her misdeeds to MEF.

36.     Thomas used the money from MEF to help move his family into a newer home in a nicer area.  *Id.*

37.     Barbounis repeatedly assured Thomas that she would not tell MEF management about his misappropriation of funds.  *Id.*

38.     Despite her position with MEF and her duties to the organization, Barbounis never told Pipes or Roman that MEF's monies had been misappropriated.

39.     Between June 2018 and November of 2018, Barbounis traveled on several occasions to the United Kingdom to continue her affair with Thomas.

40.     On information and belief, Barbounis' trips included but were not limited to a visit with Thomas in July of 2018.

41.     Thomas reports that Barbounis showed up "unannounced" in the United Kingdom to visit him. *Id.*

42.     During these visits, Barbounis and Thomas would stay together in the same hotel room (sometimes unwittingly paid for by MEF), engage in sexual relations, and use illegal drugs. *Id.*

43.     Thomas reports that he and Barbounis would use cocaine "every time I saw her," and "every time we were out, she would ask me to get it and we would do cocaine all night."  *Id.*

44.     Thomas estimates that he and Barbounis would use "five, six hundred dollars of cocaine every evening."  *Id.*

45.     Barbounis also sent Thomas money and other resources at various times, including approximately $1,000 in cash and a credit card that Thomas used to buy Christmas presents for his children.  *Id.*

46.     The source of these funds is presently unknown to MEF, but its investigation is continuing.

47.     Due to Barbounis' acute financial problems during this timeframe, including a six-figure IRS lien, MEF believes it possible that the money Barbounis sent to Thomas belonged to MEF.

48.     During this time, Barbounis told Thomas that she was unhappy with her family life, her husband, and her job, and that she wanted to leave the United States and move to join him in the United Kingdom.  *Id.*

49.     Thomas reports that Barbounis confided in him that, to fund her anticipated move to the United Kingdom, she had concocted a plan to enrich herself illegally at the expense of the Middle East Forum by asserting that Roman had inappropriately pressured her to engage in sexual activity with him, and that she would make "loads" from this scheme.  *Id.*

50.     Thomas reports that Barbounis "wanted to leave her husband" and "come to the United Kingdom," buy a home and continue her relationship with Thomas.  *Id.*

51.     Thomas reports that Barbounis told him, "I'll say, 'Gregg's done this, Gregg's done that.  And then I'm going to take it to court and get, and they'll have to pay out.  They'll pay me loads.  They'll pay me loads, and then I'll have enough money to do whatever the hell we want to do.'"  *Id.*

52.     Thomas told Roman that Barbounis "had it in for you, Gregg.  She had it in for you.  From, from the time we ever spoke about you, she wanted your job.  And then when she

realized she couldn't get the job or something, then she wanted to go down the route of destroying you, destroying you and making 'loads' of money from it. I had many conversations about that with her, um, over that, so that w- that's definitely something that was, uh, was definitely on her, on the plate from very early on from me speaking to her." *Id.*

53.     In October of 2018, Barbounis traveled to Bedford, United Kingdom to attend a dinner and demonstration to support Robinson. *See* Exhibit G.

54.     While in the United Kingdom, Barbounis stayed in a hotel with Thomas and continued her adulterous sexual affair with him. *See* Exhibit A.

55.     Due to her many and protracted trips to the United Kingdom and her relationship with Thomas, Barbounis' work performance at MEF began to suffer and her mistakes and errors increased, including mathematical errors involving seven-figure disparities. *See* Exhibit H.

56.     On October 30, 2018, Barbounis and Meyer got into an argument because Meyer, at Roman's request, was documenting Barbounis' work performance failings.

57.     The following day, Meyer and Barbounis met to discuss these issues and, in keeping with the scheme she had divulged to Thomas, Barbounis for the first time alleged that Roman had inappropriately pressured her to engage in sexual activity with him during their trip to Israel some seven months prior.

58.     Based in part on Barbounis' allegation, Meyer prepared a handwritten note to Daniel Pipes, President of MEF, informing him of alleged issues in the office, including those raised to Meyer by Barbounis.

59.     Pipes investigated the allegations raised by Meyer, including those made indirectly by Barbounis, and called a staff meeting for November 5, 2018.

60.     On November 4, 2018, Pipes sent an email to Barbounis stating, "I have investigated this matter and found the following: You say that Gregg made unwarranted sexual advances toward you.  Gregg maintains that he never made such advances."  *See* Exhibit I.

61.     On November 4, 2018, Barbounis responded to Pipes's email stating that Roman's "inappropriate behavior is the least of my concern," and raised new grievances about Roman's "absurd requests, mismanagement, outrageous expectations and demands . . . abusive tone, language, never-ending lies and manipulation [which] have the entire office in a constant state of disarray."  *See* Exhibit J.

62.     Pursuant to the scheme she had divulged to Thomas, Barbounis informed Pipes that she desired a change in job duties and that she believed it necessary for Roman to be removed from his position.  *Id.*

63.     On November 6, 2018, based in part on Barbounis accusations against Roman, Pipes set new conditions for Roman's employment, which included: "No involvement in the Forum's accounting, finances, office affairs, personnel issues, and property management. No authority over the Forum's administrative staff. No authority to approve expenses of projects or initiatives. No authority to hire or fire Forum employees, including project directors. No authority to offer or approve contracts on behalf of the Forum. No authority over Middle East Forum Education Fund monies. No access to the Forum's Philadelphia office. No contact with the Forum's female employees outside of business hours other than using Forum e-mail. That means no after-hours telephone calls, texts, other e-mails, social media, drinks, meals, outings, trips, shared lodgings, and so forth. And during business hours, interactions will be business-related, within reason."  *See* Exhibit K.

64.     Pipes also informed Roman that, based in part on Barbounis' allegations against him, he canceled his prior plan for Roman to succeed Pipes as principal and chief executive officer of MEF in 2019.

65.     Given his newly diminished role and with MEF authorization, Roman began making plans to activate the 501(c)(4) organization that he had discussed previously with Barbounis, and began actively planning and raising money for the new organization.

C.  **Barbounis' Relationships With Thomas Turns Sour.**

66.     On November 23, 2019, Daniel Thomas's father, Russel Thomas, wrote to Barbounis aware of the MEF funds and asking her to make this a "regular" payment.  *See* Exhibit L.

67.     Russel Thomas wrote: "Daniel has a wife and three children.  He is dedicating himself to the developing [Tommy Robinson] movement but at the financial detriment of his personal life.  I know you have recently financially help him which is much appreciated, however, Daniel needs, or more importantly his family needs some kind of financial stability. Would it be possible for you to arrange some form of 'regular' financial assistance directly to Daniel or perhaps his wife?"  *Id.*

68.     On December 10, 2018, Pipes wrote to Barbounis with a concern that Barbounis was neglecting her duties to MEF: "I have the sense that your position at MEF is distinctly less important than your activities with Tommy Robinson.  This is not good."  *See* Exhibit M.

69.     Pipes added that he was concerned Barbounis had taken a long period off from work to do work for Robinson without telling Pipes or asking him whether doing so was permissible.  *Id.*

116

70.      Barbounis acknowledged the validity of Pipes's concerns: "I can see why you would feel that way.  And all I can do is apologize and do better.  The Tommy stuff was something I was good at.  I finally felt like I was contributing.  I can see why it looks the way it does.  I guess I got carried away.  I thought I was doing the right thing.  Certainly wasn't trying to neglect MEF or hide things from you."  *See* Exhibit N.

71.      Despite the representation that she was not trying "to hide things" from Pipes and MEF, Barbounis was doing precisely that, as she did not disclose that Thomas had misappropriated approximately $7,000 USD that MEF provided for the Robinson event.

72.      Barbounis also consistently disregarded the admonition from Pipes that she focus on MEF work.

73.      Barbounis took a trip from January 28 to February 5, 2019 to Brussels, Belgium to continue her sexual affair with Thomas.  *See* Exhibit O.

74.      While there, Barbounis stayed with Thomas in a hotel room and engaged in sexual activity and illegal drug use.  *See* Exhibit A.

75.      While in Brussels, Thomas told Barbounis that he was suspending or ending their sexual relationship.  *Id.*

76.      Barbounis reacted very poorly to Thomas suspending or ending their sexual relationship and protested vehemently against his decision.

77.      On February 16, 2019, Thomas wrote Barbounis: "You're making things very intense for me right now Lisa, I don't like the direction all of this is taking.  I've asked my father please help me to receive the income I need to do this, I need you to tell me how much money I've taken so I can start making payments to you.  I do absolutely appreciate everything you have done for me Lisa, been my rock at many of times.  But I am very stressed at the moment with

everything, I'm shouting at people I shouldn't that's just not you. I'm reacting in a way I don't feel is right. But I need some space between us for a while. And get things right for the direction MEF want to take. My whole life is slowly falling apart, it's time I did something about it." *See* Exhibit P.

78.    Barbounis refused to accept Thomas's decision to suspend or end their sexual relationship and threatened to tell Bishop, Thomas's girlfriend, fiancée, or wife, about their affair. *See* Exhibit A.

79.    Barbounis would soon make good on this threat.

80.    On March 7, 2019, Barbounis acknowledged that the money that Thomas had taken from MEF was misappropriated and threatened to reveal what he had done: "Now that I know I'm obligated to tell my work [MEF]. What do I do? That's theft." *See* Exhibit Q.

81.    Despite this knowledge and threat, Barbounis never told MEF about the stolen funds.

82.    Instead, Barbounis used her knowledge of the stolen funds as leverage over Thomas in an effort to force him to continue their sexual relationship. *See* Exhibit A.

83.    Barbounis expressly threatened Thomas that, if he refused to continue their sexual relationship, she would inform MEF about the stolen funds. *Id.*

84.    Thomas reports that when he told Barbounis about his intention to end their sexual relationship, Barbounis replied that "she was somehow going to make it come out and fuck my life up and get me, uh, you know, using that as a, as a way of trying to keep me in contact with her." *Id.*

85.    Barbounis' threats to Thomas were effective, as Thomas relented and allowed Barbounis to visit him in the United Kingdom once more in Spring of 2019.

86.     When asked about this trip, Barbounis told Pipes that her trip to visit Thomas was actually a vacation with her children.  This was a falsehood.

87.     Meanwhile, Barbounis approached Pipes and requested that Roman be invited to return to his prior administrative role at MEF, stating that MEF needed Roman's direction and leadership moving forward, and that she was impressed with the change in Roman's behavior. *See* Exhibit R.

88.     After Barbounis' visit with Thomas in Spring of 2019, Thomas once again terminated their sexual relationship, thwarting a major component of Barbounis' plans to move to the United Kingdom.

89.     Incensed by Thomas's decision to end their relationship and instead remain with Bishop, Barbounis launched an extended campaign of extreme harassment and psychological abuse directed toward Bishop, the mother of Thomas's three children.  *See* Exhibit A.

90.     Barbounis falsely told Bishop that her affair with Thomas was continuing in an effort to undermine Bishop's trust in Thomas and her efforts to rebuild their relationship.  *Id.*

91.     Barbounis made many other harassing and derogatory comments to Bishop in writing, to embarrass, threaten, ridicule, intimidate, and silence Bishop which include the following:

- "But you know deep down because you're a fucking idiot.  I'm telling you right now you keep this up you're gonna lose this one. And I am totally enjoying it." *See* Exhibit S.

- "He dogged you to me in texts you read.  He slept with me and came home to you.  He posted pics of your kids with our songs.  And lied to you the WHOLE time.  I'm the one who told your everything and you still think I'm the liar.  You are totally insane."  *Id.*

- "I am going to galas with the Vice President today.  You think I care about two welfare losers [sic]". *Id.*

- "I'll protect him but don't want him. I have no relationship with you. The only reason I ever showed you anything in the first place was because I was sick of all the lies. But since you refuse to go anywhere there's not benefit in that for me. It's all a cost benefit analysis. And there is no return on my investment from showing you anything." *Id.*

- "That's why it's so funny for me you get all angry and call me all these names but deep down it's all because you know how awesome I am and it scares you. You see me as a threat to your life. And if you didn't think that I had any power over you or Danny you wouldn't be messaging me." *Id.*

92. The harassment of Bishop by Barbounis also included voice mail messages.

93. In voice messages to Bishop, Barbounis said the following, among other things:

- "Oh, but I do. I really do, because you were so pathetic and sad, you told me all of it. You poor thing. Have another abortion, you whore [laughter]. *See* Exhibit T.

- "I went to an Ivy League school twice and I work for Congress, she's plenty proud. You mom's a junkie that puts fucking drugs up her snatch. What a loser." *Id.*

- "Ha! Absolutely, positively not. Absolutely not. And I have proof. If he wants to call me, tell him. Because I'm free to ruin both your lives. It's not a problem for me at all." *Id.*

- "It's pathetic. Really is. You can't stop yourself. No self esteem or self control. No sense of pride or self worth because there is no reason for it. You are trash. [laughing emoji]." *Id.*

94. On April 12, 2019, MEF received negative press coverage in the United Kingdom as a result of Barbounis' continuing unauthorized political work with Robinson. *See* Exhibit U.

95. In response, Pipes confronted Barbounis about her political associations and frequent travel, his concern that she did not clear her continued work for Robinson with him, and his belief that she was too caught up in and focused on her activities with Robinson at the expense of her work for MEF. *See* Exhibit V.

96.     Pipes asked that Barbounis not surprise him with her travels and made clear that he was not convinced that she was focused on the tasks agreed upon in November 2018.  *Id.*

97.     On May 6, 2019, Bishop, fed up with Barbounis' harassment and denigration, wrote to Pipes: "Are you aware that  Lisa was and possibly still is having an affair with Danny [Thomas]?  I have all the evidence feel free to ask and I will send it."  *See* Exhibit W.

98.     Thomas reports that, around this time, Bishop called Roman and left him a voice mail on his office machine concerning the affair between Barbounis and Thomas, but Barbounis intercepted the voice mail message and deleted it before Roman could listen to it.  *See* Exhibit A.

99.     Despite prior warnings from Pipes, Barbounis continued to work for Robinson, now out of jail and running for a seat in the European Parliament.

100.     In May 2019, as a result of her work for Robinson, MEF received significant news coverage claiming that MEF was "meddling in British/EU politics," and referring to Barbounis as a Director of MEF.  *See* Exhibit X.

101.     An article in the Guardian newspaper on May 17, 2019 spoke of Barbounis in the Robinson campaign, the author noting, "There has been a more surprising presence at Robinson's rallies, however: Lisa Barbounis, a senior executive of the conservative US thinktank the Middle East Forum, has been a central figure on Robinson's campaign team and present at many of his rallies, the Guardian has learned. Her exact role is unclear but Barbounis, who says she has worked on several Republican campaigns including John McCain's run for president in 2008, has been on the trail with Robinson for about a fortnight."  *See* Exhibit Y.

102.     As a 501(c)(3) organization, MEF is subject to strict legal controls concerning its use of funds and involvement in political activities.  Barbounis' activities with Robinson violated these controls and threatened to cost MEF its non-profit status.

103.    As a result of her actions that jeopardized MEF's non-profit status, Pipes emailed

Barbounis on May 28, 2019, concerning her poor work performance and political association:

"In my April 16 note to you, I wrote 'Please don't surprise me with your travels.' But then it

turns out the Guardian had a mole who spotted you at three separate Tommy Robinson rallies;

that definitely counts as a surprise. From now on, you need express permission from me before

engaging in MEF travel and you must also clear with me any personal travel that includes a

political agenda."  *See* Exhibit Z.

104.    Pipes also reprimanded Barbounis for her continued poor work performance,

including her failure to get articles out on time to MEF subscribers; her failure to improve her

public stature; her failure to improve the composition of MEF's staff; her failure to increase

publications; her failure to hold monthly conference calls for subscribers; her failure to increase

YouTube videos; and her failure to make weekly reports. *Id.*

105.    Barbounis, however, continued to disregard Pipes' directives.

106.    On June 5, 2019, Pipes again wrote to Barbounis: "The Guardian article from

May 17 has a long, insinuating paragraph about you along with a picture of you. The clear

implication is that MEF supports Tommy Robinson's campaign.  This rates as both a surprise and

an unwelcome complication. The article could entirely disappear but it could also pop up in the

future and make trouble for us. I do not want potential trouble hanging over us, so am displeased.

You and I have already discussed the matter of your affiliating MEF too closely with Tommy

Robinson and we reached an informal agreement that you would stay away from his efforts.

Given this development, I am now imposing a formal limitation on you: No campaign work,

even during your private time, without clearance from me."  *See* Exhibit AA.

107.     Two days after receiving this admonishment, Barbounis filed an Charge of
Discrimination against MEF with the Equal Employment Opportunity Commission.

108.     Disregarding Pipes' clear instructions, on July 1, 2019, Barbounis appeared in a
press release concerning Robinson's political campaign.  The press release included full contact
information for Barbounis.  *See* Exhibit BB.

109.     On July 16, 2019, Barbounis again ignored Pipes' instructions and used MEF
resources to send out political communications in her role as "Director of Communications" for
TR.News, where TR stands for Tommy Robinson.  *See* Exhibit CC.

110.     On July 24, 2019, Barbounis completed an application and submitted her resume
for a job with the United States Congress.  As part of her application, Barbounis knowingly and
falsely stated that, "Since entering my role as Director of Communication for the Middle East
Forum I have increased our social media engagement by 32%. From June 2018 through June
2019, I helped place 1,128 articles by 56 experts in 97 outlets, from D.C.'s influential The Hill to
the Wall Street Journal, from The Washington Times to Foreign Policy. Additionally, I arranged
for 27 of our experts to be interviewed 92 times by 81 media outlets on both radio and television
ranging from outlets like I24 News and Al Jazeera to Fox News." *See* Exhibit DD.

111.     To give one example of the falsehood: all the articles in the Wall Street Journal,
The Washington Times, and Foreign Policy were arranged without any involvement by
Barbounis.

112.     Despite these false representations, Barbounis submitted her application and
certified "that all of the foregoing information that I supplied in this submission form and resume
is correct and complete. I UNDERSTAND THAT ANY FALSIFICATION OR OMISSION OF
ANY INFORMATION CONSTITUTES GROUNDS FOR ANY HOUSE OF

REPRESENTATIVES EMPLOYER TO NOT EMPLOY ME OR TO DISMISS ME FROM EMPLOYMENT." *Id.*

113.    Upon information and belief, based on these representations, Barbounis secured employment as Director of Communications in the United States House of Representatives for Congressman Randy Weber.

114.    On August 7, 2019, Barbounis resigned from MEF to accept this position.

115.    Upon information and belief, her work in support of Robinson continues to this day.

116.    Thomas reports that Barbounis used her position in the House of Representatives in October of 2019 to threaten Bishop and Thomas, including statements that she attended events with the Vice President of the United States, was now "in a position of power" and asking, "Do you know who I work for?" *See* Exhibit A.

117.    Upon information and belief, Barbounis used her position as Director of Communications for a member of the House of Representatives to induce fear in Thomas and Bishop in an effort to induce Thomas to continue their relationship and to prevent Thomas or Bishop from notifying MEF about the funds misappropriated by Thomas with Barbounis' knowledge.

118.    On September 24, 2019, Matthew Ebert, boyfriend of Marnie Meyer, called Roman via an unlisted, private number as an "anonymous source" with the stated intention of "blowing the lid off an employment litigation action by former employees" of MEF. *See* Exhibit EE.

119.    Ebert told Roman that the women involved in the lawsuit are all "banking on a large settlement," and that the other women involved had questioned Barbounis' motivations for suing.  *Id.*

120.    The following day, Ebert called Roman ten times to convey the same message, which aligns in all significant detail with what Thomas has independently reported to MEF.

121.    Although neither MEF or Roman knew the identity of the caller at the time the calls were placed, Ebert has since admitted in testimony under oath that he placed the calls to Roman.  *See* Exhibit FF.

122.    On October 27, 2019, Barbounis filed the instant lawsuit which, on information and belief, was based on her plan, as divulged to Thomas, to bring false allegations against MEF and Roman for the purpose of obtaining a monetary settlement to fund her move to the United Kingdom.

123.    The allegations in Barbounis' complaint are substantially similar to those she told Thomas that she planned to make up against MEF and Roman.

124.    Subsequent to her resignation from MEF, MEF discovered that Barbounis had misappropriated MEF trade secrets, which is the subject of a separate lawsuit.

125.    On July 17, 2020, Thomas provided MEF with records of Barbounis' travel to Europe, which aligned with the previous information that he had provided.  *See* Exhibit GG.

126.    On July 18, 2020 Thomas agreed to provide his phones to a third-party electronic discovery vendor for imaging, searching and review because, according to Thomas, the phones contained information relevant to MEF's claims and defenses. *See* Exhibit HH.

127.    Thomas also agreed to sit for a deposition voluntarily, and to answer any questions posed to him under oath.

128.     Two days later, after the electronic discovery vendor had arranged for pickup of Thomas' devices and in the midst of a discussion of about how to secure pickup on Thomas' phones, Thomas abruptly cut off contact with MEF without explanation, stating, "I'm sorry I can't tell you why but I can't be involved in this anymore.  Please don't contact me again!"  *Id.*

129.     Less than an hour later, Barbounis' counsel baselessly accused Roman of attempting to manufacture evidence.

130.     MEF is currently attempting to ascertain the reason for Thomas' abrupt and unexplained decision to cut off communication and to rescind his agreement to sit for deposition and provide documents.

### COUNTERCLAIM COUNT I
### Breach of Duty of Loyalty

131.     MEF repeats and realleges each of the previous paragraphs as if set forth fully herein.

132.     As an employee and director of MEF, Barbounis had a fiduciary duty to MEF.

133.     As such, and as an employee and director of MEF, Barbounis also had duty to act in good faith an solely for the benefit of MEF in all matters for which she was employed.

134.     As set forth in detail above, Barbounis intentionally failed to act in good faith and solely for the benefit of MEF in all matters for which she was employed in numerous ways, but specifically by failing to disclose to MEF that Thomas had misappropriated MEF funds in breach of a contract with MEF, and by carrying out political activities on behalf of Robinson and others on MEF's time and using MEF resources.

135.     Barbounis' failure to act solely for MEF's benefit was a real factor in injuries to MEF, including a loss of its resources resulting from Thomas's misappropriation of MEF funds and a loss of its resources resulting from MEF paying Barbounis' salary while Barbounis was

working not for MEF but for other individuals and entities and traveling using MEF's monies on false pretenses.

136.    Barbounis' actions in breaching her duty of loyalty to MEF were knowing and intentional.

137.    Barbounis' actions in breaching her duty of loyalty to MEF were extreme, outrageous, and shocking to the conscience of a reasonable person.

138.    MEF suffered actual damages as a result of Barbounis' breaches of her duty of loyalty to MEF.

139.    MEF is entitled to punitive damages as a result of Barbounis' breaches of her duty of loyalty.

## COUNTERCLAIM COUNT II
### Civil Conspiracy

140.    MEF repeats and realleges each of the previous paragraphs as if set forth fully herein.

141.    Barbounis conspired with Thomas and, upon information and belief, other persons or entities, to deprive MEF of the benefit of its funds.

142.    Barbounis and her co-conspirators acted with a common purpose to misappropriate and conceal the misappropriation of MEF funds designated for a specific purpose.

143.    Specifically, Barbounis and her co-conspirators conspired to facilitate and conceal the misappropriation of MEF funds by Thomas for improper and unlawful personal use.

144.    Barbounis committed overt acts in pursuance of this common purpose, including making misrepresentations to MEF concerning the misappropriation of funds, facilitating

Thomas' misappropriation of those funds, and assisting Thomas in concealing the misappropriation of those funds from MEF.

145.    As a result of Barbounis' actions, MEF suffered actual legal damage, including but not limited to the loss of the funds misappropriated, the loss of the benefit of the funds which were issued for a designated purpose, and the loss of the benefit of its contract with Thomas concerning the use of the funds.

146.    As set forth above, Barbounis and Thomas acted in concert to plot, plan and conspire to carry out the above-described misappropriation.

147.    Barbounis' actions in breaching conspiring with Thomas and others were, by her own admission, knowing and intentional.

148.    Barbounis' actions in conspiring with Thomas and others were extreme, outrageous and shocking to the conscience of a reasonable person.

149.    MEF is entitled to punitive damages as a result of Barbounis' actions in furtherance of the conspiracy.

## COUNTERCLAIM COUNT III
### Fraudulent Misrepresentation

150.    MEF repeats and realleges each of the previous paragraphs as if set forth fully herein.

151.    Barbounis misrepresented to MEF that her trip to the United Kingdom in Spring of 2019 was a family vacation with her children.

152.    In actuality, as MEF only recently discovered, Barbounis traveled to the United Kingdom to continue her sexual affair with Thomas.

153.    In making this false misrepresentation, Barbounis intended that MEF would act to maintain her employment status, job duties, and compensation with MEF.

154.     Barbounis' misrepresentation was intentional and fraudulent in nature.

155.     As Barbounis' employer, MEF was justified in relying on the misrepresentation by Barbounis.

156.     MEF suffered actual damages as a proximate result of its reliance on Barbounis' fraudulent misrepresentation, including but not limited to loss of monies paid to Barbounis as a faithless servant.

## REQUEST FOR RELIEF

**WHEREFORE**, having alleged these Counterclaims against Barbounis, MEF requests that the Court award the following relief:

(a)     An award of damages to MEF to be proven at trial in an amount in excess of $50,000.00, together with all costs, interest and reasonable attorney's fees;

(b)     An award of punitive damages to MEF

(c)     An award of such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated:  September 16, 2020          COZEN O'CONNOR

s/*David J. Walton*
David J. Walton (PA#86019)
Leigh Ann Benson (PA #319406)
Cozen O'Connor
1650 Market Street, Suite 2800
Philadelphia, PA 19103
P: (215) 665-2000

*Attorneys for Defendants*
*The Middle East Forum, Daniel Pipes, Gregg*
*Roman, and Matthew Bennett*

## **CERTIFICATE OF SERVICE**

I hereby certify that I served upon Seth Carson, Esq. a true and correct copy of the within Answer to Plaintiff's Consolidated Complaint with Affirmative Defenses and Counterclaims via ECF filing.


*/s/ David J. Walton*
David J. Walton, Esquire

**COZEN O'CONNOR**

*Attorney for Defendants,*
*The Middle East Forum, Daniel Pipes, Gregg Roman, and Matthew Bennett*

Dated: September 16, 2020