# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| LISA BARBOUNIS | : | CIVIL ACTION |
| Plaintiff, | : | NO. 2:19-cv-05030-JDW |
| -vs- | : | |
| | : | |
| THE MIDDLE EAST FORUM, | : | ANSWER AND AFFIRMATIVE |
| DANIEL PIPES (*individually*), and | : | DEFENSES TO COUNTERCLAIM |
| GREG ROMAN (*individually*), | : | |
| Defendants. | : | |
| | : | |

Plaintiff, Lisa Barbounis ("Ms. Barbounis" or "Defendant") hereby files this Answer with Affirmative Defenses to the Counterclaim filed by Defendant, The Middle East Forum ("Plaintiff" or "MEF") and avers as follows:

1.      These Counterclaims are brought to remedy the damage caused by Barbounis through her planning and execution of a scheme to abandon her duties as an employee and director of MEF, to illicitly divert MEF funds from their rightful recipients and into the hands of her paramour, and to cover her tracks with deception and threats.

**It is denied that Lisa Barbounis through her planning and execution of a scheme to abandon her duties as an employee and director of MEF illicitly diverted MEF funds from their rightful recipients and into the hands of her "paramour."  It is denied that Lisa Barbounis caused MEF to suffer damages.  It is denied that the reason for these counterclaims is anything other than unlawful retaliation by Greg Roman, Daniel Pipes and The Middle East Forum.  Lisa Barbounis has alleged that Greg Roman sexually harassed and/or sexually assaulted multiple female employee who he worked with during his employment with The Middle East Forum.  Plaintiff, Lisa Barbounis filed a lawful**

**complaint based on discrimination and harassment in the workplace to which she alleged she was subjected by Greg Roman who was Lisa Barbounis's supervisor when the alleged sexual harassment and sexual assault occurred.  The Middle East Forum has unlawfully violated its agreement with donors by allowing Greg Roman, the same individual accused of unlawful conduct to be in charge of the legal defense which has turned into an unlawful offense.  Instead of defending Ms. Barbounis's lawful claims, Greg Roman, Daniel Pipes, and The Middle East Forum has attacked the victim of Greg Roman's sexual misconduct. This constitutes retaliation in violation of state and federal laws.  In these unlawful objectives, Greg Roman and Daniel Pipes have diverted donations which are gifts made to The Middle East Forum by the individuals who have been assured their donations are being spent to achieve The Middle East Forum's mission.   Instead The Middle East Forum has spent these donations toward a campaign of retaliation in violation of state, city and federal laws.  Plaintiff, Lisa Barbounis alleges that this is the reason for these counterclaims. Accordingly, the allegations in Paragraph 1 are denied.**

2.     As MEF has long suspected, and as the evidence has now revealed, in 2018, Barbounis, a married woman and mother of young children, hatched a plan to emigrate to the United Kingdom to start a new life with a man named Daniel Thomas, whom she met through her work at MEF, and with whom she soon after began a sexual affair.

**It is denied that MEF long suspected that Lisa Barbounis hatched a plan to emigrate to the United Kingdom.  The remaining allegations in this paragraph are denied.**

3.      Apparently motivated by her desire to move to the United Kingdom and pursue her relationship

with Thomas, Barbounis developed a conspiracy to pay for this scheme by diverting MEF

funds to Thomas, by using MEF funds and resources to travel to the United Kingdom and

Europe to spend time with Thomas, and ultimately, by levying sexual harassment and assault

allegations against MEF and its director, Gregg Roman ("Roman") in the hopes that such

allegations would lead to a large financial settlement that would fund her new life in the United

Kingdom. *See* Exhibit A.


**Denied.  It is specifically denied that The Middle East Forum has uncovered any evidence**

**of unlawful conduct on the part of Lisa Barbounis.  To the contrary,  because Lisa**

**Barbounis did not engage in unlawful conduct.  The Middle East Forum is attempting to**

**avoid responsibility and liable for unlawful sexual harassment by its Director, Greg Roman**

**who  has been accused of sexually harassing and sexually assaulting at least 2 employees**

**who worked for him at The Middle East Forum.  The Middle East Forum seeks to defense**

**the lawful, supported claims of Lisa Barbounis by attacking her character and accusing Ms.**

**Barbounis of unlawful conduct.  This is the reason for these counterclaims.  Accordingly,**

**this paragraph is denied.**

4.      As her relationship with Thomas fell apart and her scheme was at risk of being revealed to

MEF and others, Barbounis resorted to an extended campaign of threats against  Jazmin

Bishop ("Bishop"), Thomas's girlfriend, fiancée, or wife2 and the mother of his children,

even invoking the power of the office of her current employer, Congressman Randy Weber,

in an effort both to preserve her adulterous relationship with Thomas and to ensure that her

illegal diversion of MEF funds to Thomas would remain hidden.


**Denied.  It is specifically denied that The Middle East Forum has uncovered any evidence**

**of unlawful conduct on the part of Lisa Barbounis.  To the contrary,  because Lisa**

**Barbounis did not engage in unlawful conduct.  The Middle East Forum is attempting to**

**avoid responsibility and liable for unlawful sexual harassment by its Director, Greg Roman**

**who  has been accused of sexually harassing and sexually assaulting at least 2 employees**

**who worked for him at The Middle East Forum.  The Middle East Forum seeks to defense**

**the lawful, supported claims of Lisa Barbounis by attacking her character and accusing Ms.**

**Barbounis of unlawful conduct.  This is the reason for these counterclaims.  Accordingly,**

**this paragraph is denied.**

5.     Barbounis' conduct in carrying out her scheme has been both extreme and outrageous,

and the harms that Barbounis has caused MEF and Roman are substantial.


**Denied.  It is specifically denied that The Middle East Forum has uncovered any evidence**

**of unlawful conduct on the part of Lisa Barbounis.  To the contrary,  because Lisa**

**Barbounis did not engage in unlawful conduct.  The Middle East Forum is attempting to**

**avoid responsibility and liable for unlawful sexual harassment by its Director, Greg Roman**

**who  has been accused of sexually harassing and sexually assaulting at least 2 employees**

**who worked for him at The Middle East Forum.  The Middle East Forum seeks to defense**

**the lawful, supported claims of Lisa Barbounis by attacking her character and accusing Ms.**

**Barbounis of unlawful conduct.  This is the reason for these counterclaims.  Accordingly,**

**this paragraph is denied.**

6.    Having finally uncovered the evidence of Barbounis' unlawful conduct, MEF now seeks,

through these counterclaims, to begin the process of repairing the damage she has caused.

**Denied.  It is specifically denied that The Middle East Forum has uncovered any evidence**

**of unlawful conduct on the part of Lisa Barbounis.  To the contrary,  because Lisa**

**Barbounis did not engage in unlawful conduct.  The Middle East Forum is attempting to**

**avoid responsibility and liable for unlawful sexual harassment by its Director, Greg Roman**

**who  has been accused of sexually harassing and sexually assaulting at least 2 employees**

**who worked for him at The Middle East Forum.  The Middle East Forum seeks to defense**

**the lawful, supported claims of Lisa Barbounis by attacking her character and accusing Ms.**

**Barbounis of unlawful conduct.  This is the reason for these counterclaims.  Accordingly,**

**this paragraph is denied.**

## BACKGROUND

### A. Barbounis Begins Working For MEF.

7.      Barbounis began her employment with MEF on or about October 16, 2017.

**It is admitted that Ms. Barbounis began her employment sometime around this time.**

8.      She was hired as an Executive Liaison for MEF and continued in that role until January of

2019.

**It is admitted that Ms. Barbounis began as an executive liaison.  The remaining**

**allegations are Denied.**

9.      From the inception of her employment until November 5, 2018, Barbounis reported to

Defendant Gregg Roman, the Director of MEF.

**It is admitted that Lisa Barbounis's direct supervisors was Defendant, Greg Roman.**

**The remaining allegations of this paragraph are denied.**

10.     Barbounis and Roman quickly developed a friendly working relationship, and Barbounis

liberally shared details of her personal life with Roman, including the most intimate

information about her health, her emotions, her marriage, and her children.

**Denied.  It is denied that Ms. Barbounis liberally shared details of her life with Defendant,**

**Greg Roman.**

11.     In March of 2018, Barbounis and Roman travelled to Israel together on MEF business.

   **It is admitted that Lisa Barbounis traveled to Israel with Defendant, Greg Roman as part of her responsibilities in her employment for MEF.**

12.     Barbounis encouraged this intimacy. For example, on March 20, 2018, she wrote to Roman, "You should feel comfortable telling me when you are upset," and, "Ok. I'm focused but I want you to know you should feel comfortable telling me when I piss you of. (sic)" *See* Exhibit B.

   **Any written memorandum is a document that speaks for itself, and any characterization of the same by Defendant is denied.  The remaining allegations are denied.**

*13.*     Barbounis often engaged in playful banter with Roman via text message, often using flirtatious language and emoticons, and calling him "baby." *Id.*

   **Any written memorandum is a document that speaks for itself, and any characterization of the same by Defendant is denied.  The remaining allegations are denied.**

14.    Barbounis sent Roman sent personal videos of her children crying, she complained to him about the burdens of being a mother, detailed to him how she despised her in- laws in Florida, and graphically recounted how she had been domestically abused by her husband.

**Any written memorandum or video is a document or communication that speaks for itself, and any characterization of the same by Defendant is denied.  The remaining allegations are denied.**

15.    At the same time, MEF and Roman were planning to start a social welfare entity separate and apart from MEF and shared his plans with Barbounis, who volunteered to assist him with the founding of this 501(c)(4) organization.

**It is admitted that Lisa Barbounis worked with MEF and was willing to assist with any assignment provided by her supervisors.  The remaining allegations are denied.**

16.    In response to this offer, on July 12, 2018, Barbounis sent Roman a list of items that he would need for creating a 501(c)(4) organization.

**Any written memorandum is a document that speaks for itself, and any characterization of the same by Defendant is denied.  The remaining allegations are denied.**

17.   On July 26, 2018, Barbounis communicated with Ari Morgenstern, Director of

Communications and Policy for the Christians United for Israel, and informed him of Roman's

plans to start a new social welfare organization.

**Any written memorandum is a document that speaks for itself, and any characterization**

**of the same by Defendant is denied.  The remaining allegations are denied.**

18.   In August 2018, Roman authorized MEF's attorneys and representatives to speak with

Barbounis about the new organization.

**Plaintiff is without knowledge or information sufficient to form a belief as to the truth of the**

**averments, which are denied, and strict proof thereof is demanded at trial of this matter.**

19.   As a result of her involvement, Barbounis was acutely aware of MEF's and Roman's plans to

start a new 501(c)(4) organization, and how important this new organization was to him.

**Denied.**

20.     Simultaneously, Barbounis was competing with her coworker, Marnie Meyer, for status and

power within MEF.

**Denied.**

21.     Barbounis complained to Roman when she found out that Meyer might get an assistant before

Barbounis: "Is it the assistant thing? She said you promised her Delaney and she will be pissed

if someone gets an assistant before her. Her and I have been getting along pretty well, or so I

thought, so I'm rather shocked to hear she was shooting down having my role modified. you are

my boss and she is HR. How is it that she gets to make performance judgments? I know we are

a small place but we need structure. I want to make my time here successful for both me and

MEF. I want to live up to my potential. I know you can help me achieve that. How 'can we fix

this?'". *See* Exhibit C.

**Any written memorandum is a document that speaks for itself, and any characterization**

**of the same by Defendant is denied.  The remaining allegations are denied.**

22.     Nevertheless, as of September 17, 2018, Barbounis remained confident and secure in her

position with MEF, stating, "...everyone in here loves me, Tricia, Delaney, Matt, Thelma. Cliff,

Sam, and EJ all love me. No one else [other than Marnie Meyer] has a problem with me..." *See*

Exhibit D.

**Any written memorandum is a document that speaks for itself, and any characterization**

**of the same by Defendant is denied.  The remaining allegations are denied.**

23.     At the same time, Barbounis continued to share intimate medical and personal details about her

life with Roman, including information about her various health concerns, and personal

information about children and husband.

**Any written memorandum is a document that speaks for itself, and any characterization**

**of the same by Defendant is denied.  The remaining allegations are denied.**

24.     Through October 2018, Barbounis seemed to be happy in her role at MEF and in her working

relationship with Roman, and never indicated to Roman or anyone else at MEF that she had any

problems or issues of any kind with Roman or anyone else at MEF, except Meyer.

**Plaintiff is without knowledge or information sufficient to form a belief as to the truth of the**

**averments, which are denied, and strict proof thereof is demanded at trial of this matter.**

**A. Barbounis Meets Daniel Thomas, Begins A Sexual Affair With Him, And
Hatches A Plan To Emigrate To The United Kingdom Using MEF Funds.**

25.     In May of 2017, MEF began working with Stephen Christopher Yaxley-Lennon, better known

by his alias Tommy Robinson ("Robinson"), a United Kingdom-based activist.


**Denied.**


26.     In the Spring of 2018, Barbounis began working on MEF's behalf in support of Robinson.

**At some time in 2018, Ms. Barbounis was assigned by Greg Roman to work on issues
connected with Tommy Robinson.  The remaining allegations are denied.**

27.     Barbounis' first point of contact was with Daniel Thomas ("Thomas"), another United

Kingdom-based activist, who was organizing a rally to support Robinson.

**At some time in 2018, Ms. Barbounis was assigned by Greg Roman to work on issues
connected with Tommy Robinson.  In these assignments, it is admitted that Daniel
Thomas was throwing an event to support issues related to Tommy Robinson.  The
remaining allegations are denied.**


28.     At the behest of Barbounis, MEF provided Thomas with US$32,000 (all dollars at USD) to fund

a rally to show support for Robinson, who had recently been jailed for contempt of court.


**Denied.**

29.    MEF entered into a contract with Thomas that detailed the methods and means by which MEF's

money would be spent and detailed the specific costs of the rally MEF would be funding. *See*

Exhibit E.

**Plaintiff is without knowledge or information sufficient to form a belief as to the truth of the**

**averments, which are denied, and strict proof thereof is demanded at trial of this matter.**

30.    On or about June 8, 2018, Barbounis traveled to London with Patricia McNulty, another MEF

employee, to supervise and attend the rally that MEF had funded. *See* Exhibit F.

**It is admitted that Lisa Barbounis was in London for the event with coworker, Patricia**

**McNulty.  The remaining allegations are denied.**

31.    While in London for the rally, Barbounis met Thomas in person for the first time.

**Admitted.**

32.    Almost immediately, Barbounis began an adulterous sexual relationship with Thomas.

**Denied.**

33.    Almost immediately, Barbounis began neglecting her job duties and responsibilities to

MEF as she devoted substantial attention to her sexual relationship with Thomas.

**Denied.**

34.     At the time of the rally or shortly thereafter, Barbounis became aware that, of the

        $32,000 provided to support the Robinson rally, Thomas had misappropriated at least $7,000 for

        his own personal use. *See* Exhibit A.


        **Denied.**


35.     This misappropriation of funds was not authorized or approved by MEF or Roman, who until

        2020 had no idea that it had occurred because Barbounis had effectively hidden her illegal

        actions and threatened others who attempted to reveal her misdeeds to MEF.


        **Denied.**


36.     Thomas used the money from MEF to help move his family into a newer home in a nicer area.

        *Id.*


        **Plaintiff is without knowledge or information sufficient to form a belief as to the truth of the**

        **averments, which are denied, and strict proof thereof is demanded at trial of this matter.**


37.     Barbounis repeatedly assured Thomas that she would not tell MEF management about his

        misappropriation of funds.  *Id.*


        **Any written memorandum is a document that speaks for itself, and any characterization**

        **of the same by Defendant is denied.  The remaining allegations are denied.**

38.     Despite her position with MEF and her duties to the organization, Barbounis never told

        Pipes or Roman that MEF's monies had been misappropriated.\

        **It is denied that Plaintiff had knowledge that money was misappropriated.  The**

        **remaining allegations are therefore denied.**

39.     Between June 2018 and November of 2018, Barbounis traveled on several occasions to

        the United Kingdom to continue her affair with Thomas.

        **It is admitted that Plaintiff traveled to the U.K. sometime around 2018.  The**

        **remaining allegations are Denied.**

40.     On information and belief, Barbounis' trips included but were not limited to a visit with

        Thomas in July of 2018.

        **It is admitted that Plaintiff traveled to the U.K. sometime around 2018.  It is**

        **admitted that Ms. Barbounis met with Mr. Thomas. The remaining allegations are**

        **Denied.**

*41.*    Thomas reports that Barbounis showed up "unannounced" in the United Kingdom to visit him.

        *Id.*

        **Any written memorandum is a document that speaks for itself, and any characterization**

        **of the same by Defendant is denied.  The remaining allegations are denied.**

*42.*     During these visits, Barbounis and Thomas would stay together in the same hotel room

(sometimes unwittingly paid for by MEF), engage in sexual relations, and use illegal drugs. *Id.*


**Any written memorandum is a document that speaks for itself, and any characterization
of the same by Defendant is denied.  It is denied that Lisa Barbounis used MEF money to
pay for her travel.**


*43.*     Thomas reports that he and Barbounis would use cocaine "every time I saw her," and "every

time we were out, she would ask me to get it and we would do cocaine all night." *Id.*


**Any written memorandum is a document that speaks for itself, and any characterization
of the same by Defendant is denied.  The remaining allegations are denied.**


*44.*     Thomas estimates that he and Barbounis would use "five, six hundred dollars of cocaine every

evening." *Id*


**Any written memorandum is a document that speaks for itself, and any characterization
of the same by Defendant is denied.  The remaining allegations are denied.**


45.     This misappropriation of funds was not authorized or approved by MEF or Roman, who until

2020 had no idea that it had occurred because Barbounis had effectively hidden her illegal

actions and threatened others who attempted to reveal her misdeeds to MEF.

**Denied.**

*46.*    Thomas used the money from MEF to help move his family into a newer home in a nicer area. *Id.*

**Plaintiff is without knowledge or information sufficient to form a belief as to the truth of the averments, which are denied, and strict proof thereof is demanded at trial of this matter.**

*47.*    Barbounis repeatedly assured Thomas that she would not tell MEF management about his misappropriation of funds.  *Id.*

**Any written memorandum is a document that speaks for itself, and any characterization of the same by Defendant is denied.  The remaining allegations are denied.**

48.    Despite her position with MEF and her duties to the organization, Barbounis never told Pipes or Roman that MEF's monies had been misappropriated.

**It is denied that Lisa Barbounis had any knowledge that money was misappropriated and therefore the allegations in this paragraph are denied.**

49.    Between June 2018 and November of 2018, Barbounis traveled on several occasions to the United Kingdom to continue her affair with Thomas.

**It is admitted that Lisa Barbounis traveled to the United Kingdom sometime around this time.  The remaining allegations are denied.**

50.    On information and belief, Barbounis' trips included but were not limited to a visit with Thomas in July of 2018.

**It is admitted that Lisa Barbounis traveled to the United Kingdom sometime around this time.  The remaining allegations are denied.**

51.    Thomas reports that Barbounis showed up "unannounced" in the United Kingdom to visit him. *Id.*

**Any written memorandum is a document that speaks for itself, and any characterization of the same by Defendant is denied.  The remaining allegations are denied.**

52.    During these visits, Barbounis and Thomas would stay together in the same hotel room (sometimes unwittingly paid for by MEF), engage in sexual relations, and use illegal drugs. *Id.*

**Any written memorandum is a document that speaks for itself, and any characterization of the same by Defendant is denied.  The remaining allegations are denied.**

53.    Thomas reports that he and Barbounis would use cocaine "every time I saw her," and "every time we were out, she would ask me to get it and we would do cocaine all night." *Id.*

**Any written memorandum is a document that speaks for itself, and any characterization of the same by Defendant is denied.  The remaining allegations are denied.**

54.    Thomas estimates that he and Barbounis would use "five, six hundred dollars of cocaine every evening." *Id.*

**Any written memorandum is a document that speaks for itself, and any characterization of the same by Defendant is denied.  The remaining allegations are denied.**

55.   Barbounis also sent Thomas money and other resources at various times, including

approximately $1,000 in cash and a credit card that Thomas used to buy Christmas presents

for his children.  *Id.*


**Any written memorandum is a document that speaks for itself, and any characterization**

**of the same by Defendant is denied.  The remaining allegations are denied.**


56.   The source of these funds is presently unknown to MEF, but its investigation is continuing.

**Plaintiff is without knowledge or information sufficient to form a belief as to the truth of the**

**averments, which are denied, and strict proof thereof is demanded at trial of this matter.**


57.   Due to Barbounis' acute financial problems during this timeframe, including a six-figure IRS

lien, MEF believes it possible that the money Barbounis sent to Thomas belonged to MEF.

**Plaintiff is without knowledge or information sufficient to form a belief as to the truth of the**

**averments, which are denied, and strict proof thereof is demanded at trial of this matter.**


58.   During this time, Barbounis told Thomas that she was unhappy with her family life, her

husband, and her job, and that she wanted to leave the United States and move to join him in

the United Kingdom.  *Id.*


**Any written memorandum is a document that speaks for itself, and any characterization**

**of the same by Defendant is denied.  The remaining allegations are denied.**

59.  Thomas reports that Barbounis confided in him that, to fund her anticipated move to the United Kingdom, she had concocted a plan to enrich herself illegally at the expense of the Middle East Forum by asserting that Roman had inappropriately pressured her to engage in sexual activity with him, and that she would make "loads" from this scheme.  *Id.*

**Any written memorandum is a document that speaks for itself, and any characterization of the same by Defendant is denied.  The remaining allegations are denied.**

60.  Thomas reports that Barbounis "wanted to leave her husband" and "come to the United Kingdom," buy a home and continue her relationship with Thomas.  *Id.*

**Any written memorandum is a document that speaks for itself, and any characterization of the same by Defendant is denied.  The remaining allegations are denied.**

61.  Thomas reports that Barbounis told him, "I'll say, 'Gregg's done this, Gregg's done that. And then I'm going to take it to court and get, and they'll have to pay out. They'll pay me loads. They'll pay me loads, and then I'll have enough money to do whatever the hell we want to do.'"  *Id.*

**Any written memorandum is a document that speaks for itself, and any characterization of the same by Defendant is denied.  The remaining allegations are denied.**

62.  Thomas told Roman that Barbounis "had it in for you, Gregg. She had it in for you. From, from the time we ever spoke about you, she wanted your job. And then when she

realized she couldn't get the job or something, then she wanted to go down the route of

destroying you, destroying you and making 'loads' of money from it. I had many conversations

about that with her, um, over that, so that w- that's definitely something that was, uh, was

definitely on her, on the plate from very early on from me speaking to her." *Id.*

**Any written memorandum is a document that speaks for itself, and any characterization**

**of the same by Defendant is denied.  The remaining allegations are denied.**

63.     In October of 2018, Barbounis traveled to Bedford, United Kingdom to attend a dinner and

        demonstration to support Robinson. *See* Exhibit G.

**It is admitted that Lisa Barbounis traveled to the United Kingdom around this time.  It is**

**admitted that Ms. Barbounis attended a dinner.  The remaining allegations are denied.**

64.     While in the United Kingdom, Barbounis stayed in a hotel with Thomas and continued her

        adulterous sexual affair with him. *See* Exhibit A.

**Denied.**

65.     Due to her many and protracted trips to the United Kingdom and her relationship with Thomas,

        Barbounis' work performance at MEF began to suffer and her mistakes and errors increased,

        including mathematical errors involving seven-figure disparities. *See* Exhibit H.

**Denied.**

66.     On October 30, 2018, Barbounis and Meyer got into an argument because Meyer, at Roman's

        request, was documenting Barbounis' work performance failings.

        **Denied.**

67.     The following day, Meyer and Barbounis met to discuss these issues and, in keeping with the

        scheme she had divulged to Thomas, Barbounis for the first time alleged that Roman had

        inappropriately pressured her to engage in sexual activity with him during their trip to Israel

        some seven months prior.

        **Denied.**

68.     Based in part on Barbounis' allegation, Meyer prepared a handwritten note to Daniel Pipes,

        President of MEF, informing him of alleged issues in the office, including those raised to

        Meyer by Barbounis.

**It is admitted that Marnie Meyer reported Greg Roman's severe and pervasive sexual**

**harassment to Daniel Pipes including sexual harassment of sexual female employees and**

**including the quid pro quo sexual harassment of a young female intern who Greg Roman**

**pressured to engage in a sexual relationship using his position and power as Director of**

**The Middle East Forum.  Greg Roman allegedly lured the young intern into a hotel room**

**under the guise of having to sign MEF documents which the young intern needed.  Greg**

**Roman then allegedly pressured the young intern into engaging in a sexual relationship.**

**It was alleged that Greg Roman attempted to pressure the young intern into engaging into**

**a sexual relationship again when he traveled to Israel with Lisa Barbounis.  This time**

**Greg Roman had no paperwork that he could use and hold over her the young intern's**

**head.  Greg Roman was unable to pressure the young female into engaging into sexual**

**intercourse and so she rejected Greg Roman's inappropriate sexual advances.  Greg**

**Roman was highly agitated by the rejection.  This was allegedly  the second female who**

**rejected Greg Roman's sexual advances during the trip to Israel.  Greg Roman returned**

**to the shared living space and began to subject Lisa Barbounis to sexual harassment,**

**suggesting that Lisa Barbounis perform oral sex for Greg Roman.  It was because of Greg**

**Roman's unlawful conduct and comments including but not limited to the sexual**

**harassment of sexual female employees that worked for The Middle East Forum that**

**caused Marnie Meyer to report Greg Roman's unlawful conduct.  Daniel Pipes performed**

**an investigation into Greg Roman's sexual harassment, sexual assaults, and sexual**

**misconduct and Daniel Pipes, Mark Fink (Legal Counsel for The Middle East Forum)**

**concluded that for the safety of female employees who work for The Middle East Forum,**

**Greg Roman was no longer permitted to visit The Middle East Forum headquarters in**

**person.   For more than a year after Marnie Meyer's reports alleged in this paragraph,**

**The Middle East Forum for forced to maintain a separate set of procedures, protocols and**

**policies for protecting female employees from Greg Roman. Greg Roman was ejected**

**from The Middle East Forum's headquarters office in Philadelphia Pennsylvania.  These**

**are the reasons that Marnie Meyer reported Greg Roman's sexual harassment, sexual**

**assaults and the inappropriate sexual misconduct.**

69.    Pipes investigated the allegations raised by Meyer, including those made indirectly by

Barbounis, and called a staff meeting for November 5, 2018.


**It is denied that Lisa Barbounis reported Greg Roman's sexual harassment indirectly.    It is**

**further denied that Daniel Pipes performed in investigation.**

70.     On November 4, 2018, Pipes sent an email to Barbounis stating, "I have investigated this matter and found the following: You say that Gregg made unwarranted sexual advances toward you. Gregg maintains that he never made such advances." *See* Exhibit I.


**Any written memorandum is a document that speaks for itself, and any characterization of the same by Defendant is denied.  The remaining allegations are denied.**


71.     On November 4, 2018, Barbounis responded to Pipes's email stating that Roman's "inappropriate behavior is the least of my concern," and raised new grievances about Roman's "absurd requests, mismanagement, outrageous expectations and demands . . . abusive tone, language, never-ending lies and manipulation [which] have the entire office in a constant state of disarray." *See* Exhibit J.


**Any written memorandum is a document that speaks for itself, and any characterization of the same by Defendant is denied.  The remaining allegations are denied.**


*72.*    Pursuant to the scheme she had divulged to Thomas, Barbounis informed Pipes that she desired a change in job duties and that she believed it necessary for Roman to be removed from his position.  *Id.*


**73.    Any written memorandum is a document that speaks for itself, and any characterization of the same by Defendant is denied.  The remaining allegations are denied.**

74.     On November 6, 2018, based in part on Barbounis accusations against Roman, Pipes set new
        conditions for Roman's employment, which included: "No involvement in the Forum's
        accounting, finances, office affairs, personnel issues, and property management. No authority
        over the Forum's administrative staff. No authority to approve expenses of projects or
        initiatives. No authority to hire or fire Forum employees, including project directors. No
        authority to offer or approve contracts on behalf of the Forum. No authority over Middle East
        Forum Education Fund monies. No access to the Forum's Philadelphia office. No contact with
        the Forum's female employees outside of business hours other than using Forum e-mail. That
        means no after-hours telephone calls, texts, other e-mails, social media, drinks, meals, outings,
        trips, shared lodgings, and so forth. And during business hours, interactions will be business-
        related, within reason." *See* Exhibit K.

        **Any written memorandum is a document that speaks for itself, and any characterization
        of the same by Defendant is denied.  The remaining allegations are denied.**

75.     Pipes also informed Roman that, based in part on Barbounis' allegations against him, he
        canceled his prior plan for Roman to succeed Pipes as principal and chief executive officer of
        MEF in 2019.

        **Plaintiff is without knowledge or information sufficient to form a belief as to the truth of the
        averments, which are denied, and strict proof thereof is demanded at trial of this matter.**

76.     Given his newly diminished role and with MEF authorization, Roman began making plans
        to activate the 501(c)(4) organization that he had discussed previously with Barbounis, and
        began actively planning and raising money for the new organization.

        **Plaintiff is without knowledge or information sufficient to form a belief as to the truth of the
        averments, which are denied, and strict proof thereof is demanded at trial of this matter.**

        **B.  <u>Barbounis' Relationships With Thomas Turns Sour.</u>**

77.     On November 23, 2019, Daniel Thomas's father, Russel Thomas, wrote to Barbounis aware of
        the MEF funds and asking her to make this a "regular" payment. *See* Exhibit L.

        **Any written memorandum is a document that speaks for itself, and any characterization
        of the same by Defendant is denied.  The remaining allegations are denied.**

*78.*     Russel Thomas wrote: "Daniel has a wife and three children. He is dedicating himself to the

developing [Tommy Robinson] movement but at the financial detriment of his personal life. I

know you have recently financially help him which is much appreciated, however, Daniel

needs, or more importantly his family needs some kind of financial stability. Would it be

possible for you to arrange some form of 'regular' financial assistance directly to Daniel or

perhaps his wife?" *Id.*

**Any written memorandum is a document that speaks for itself, and any characterization**

**of the same by Defendant is denied.  The remaining allegations are denied.**

79.     On December 10, 2018, Pipes wrote to Barbounis with a concern that Barbounis was

neglecting her duties to MEF: "I have the sense that your position at MEF is distinctly less

important than your activities with Tommy Robinson. This is not good." *See* Exhibit M.

**Any written memorandum is a document that speaks for itself, and any characterization**

**of the same by Defendant is denied.  The remaining allegations are denied.**

*80.*     Pipes added that he was concerned Barbounis had taken a long period off from work to do

work for Robinson without telling Pipes or asking him whether doing so was permissible.  *Id.*

**Any written memorandum is a document that speaks for itself, and any characterization**

**of the same by Defendant is denied.  The remaining allegations are denied.**

81.     Barbounis acknowledged the validity of Pipes's concerns: "I can see why you would feel that

        way. And all I can do is apologize and do better. The Tommy stuff was something I was good

        at. I finally felt like I was contributing. I can see why it looks the way it does. I guess I got

        carried away. I thought I was doing the right thing. Certainly wasn't trying to neglect MEF or

        hide things from you." *See* Exhibit N.


        **Any written memorandum is a document that speaks for itself, and any characterization**
        **of the same by Defendant is denied.  The remaining allegations are denied.**


82.     Despite the representation that she was not trying "to hide things" from Pipes and MEF,

        Barbounis was doing precisely that, as she did not disclose that Thomas had misappropriated

        approximately $7,000 USD that MEF provided for the Robinson event.


        **Any written memorandum is a document that speaks for itself, and any characterization**
        **of the same by Defendant is denied.  The remaining allegations are denied.**


83.     Barbounis also consistently disregarded the admonition from Pipes that she focus on MEF

        work.


        **Denied.**

84.     Barbounis took a trip from January 28 to February 5, 2019 to Brussels, Belgium to continue

        her sexual affair with Thomas. *See* Exhibit O.

        **Any written memorandum is a document that speaks for itself, and any characterization**
        **of the same by Defendant is denied.  The remaining allegations are denied.**

85.   While there, Barbounis stayed with Thomas in a hotel room and engaged in sexual activity and illegal drug use. *See* Exhibit A.

**Any written memorandum is a document that speaks for itself, and any characterization of the same by Defendant is denied.  The remaining allegations are denied.**

*86.*   While in Brussels, Thomas told Barbounis that he was suspending or ending their sexual relationship.  *Id.*

**Any written memorandum is a document that speaks for itself, and any characterization of the same by Defendant is denied.  The remaining allegations are denied.**

87.   Barbounis reacted very poorly to Thomas suspending or ending their sexual relationship and protested vehemently against his decision.

**Denied.**

88.   On February 16, 2019, Thomas wrote Barbounis: "You're making things very intense for me right now Lisa, I don't like the direction all of this is taking. I've asked my father please help me to receive the income I need to do this, I need you to tell me how much money I've taken so I can start making payments to you. I do absolutely appreciate everything you have done for me Lisa, been my rock at many of times. But I am very stressed at the moment with

everything, I'm shouting at people I shouldn't that's just not you. I'm reacting in a way I don't

feel is right. But I need some space between us for a while. And get things right for the

direction MEF want to take. My whole life is slowly falling apart, it's time I did something

about it." *See* Exhibit P.


**Any written memorandum is a document that speaks for itself, and any characterization**

**of the same by Defendant is denied.  The remaining allegations are denied.**


89.     Barbounis refused to accept Thomas's decision to suspend or end their sexual relationship

and threatened to tell Bishop, Thomas's girlfriend, fiancée, or wife, about their affair. *See*

Exhibit A.


**90.     Any written memorandum is a document that speaks for itself, and any characterization**

**of the same by Defendant is denied.  The remaining allegations are denied.**


91.     Barbounis would soon make good on this threat.

  **Denied.**

92.     On March 7, 2019, Barbounis acknowledged that the money that Thomas had taken from

MEF was misappropriated and threatened to reveal what he had done: "Now that I know I'm

obligated to tell my work [MEF]. What do I do? That's theft." *See* Exhibit Q.


**Any written memorandum is a document that speaks for itself, and any characterization**

**of the same by Defendant is denied.  The remaining allegations are denied.**

93.     Despite this knowledge and threat, Barbounis never told MEF about the stolen

funds.

**It is denied that Lisa Barbounis had any knowledge that money was stolen.  The allegations**
**are therefore denied.**

94.     Instead, Barbounis used her knowledge of the stolen funds as leverage over Thomas in an

effort to force him to continue their sexual relationship. *See* Exhibit A.

**Any written memorandum is a document that speaks for itself, and any characterization**

**of the same by Defendant is denied.  The remaining allegations are denied.**

95.     Barbounis expressly threatened Thomas that, if he refused to continue their sexual relationship,

she would inform MEF about the stolen funds.  *Id.*

**Any written memorandum is a document that speaks for itself, and any characterization**

**of the same by Defendant is denied.  The remaining allegations are denied.**

96.     Thomas reports that when he told Barbounis about his intention to end their sexual

relationship, Barbounis replied that "she was somehow going to make it come out and fuck

my life up and get me, uh, you know, using that as a, as a way of trying to keep me in

contact with her."  *Id.*

**Any written memorandum is a document that speaks for itself, and any characterization**

**of the same by Defendant is denied.  The remaining allegations are denied.**

97.     Barbounis' threats to Thomas were effective, as Thomas relented and allowed Barbounis to

        visit him in the United Kingdom once more in Spring of 2019.

        **Any written memorandum is a document that speaks for itself, and any characterization**

        **of the same by Defendant is denied.  The remaining allegations are denied.**

98.     When asked about this trip, Barbounis told Pipes that her trip to visit Thomas was actually a

        vacation with her children. This was a falsehood.

        **Any written memorandum is a document that speaks for itself, and any characterization**

        **of the same by Defendant is denied.  The remaining allegations are denied.**

99.     Meanwhile, Barbounis approached Pipes and requested that Roman be invited to return to his

        prior administrative role at MEF, stating that MEF needed Roman's direction and leadership

        moving forward, and that she was impressed with the change in Roman's behavior. *See* Exhibit

        R.

        **Any written memorandum is a document that speaks for itself, and any characterization**

        **of the same by Defendant is denied.  The remaining allegations are denied.**

100. After Barbounis' visit with Thomas in Spring of 2019, Thomas once again terminated their sexual relationship, thwarting a major component of Barbounis' plans to move to the United Kingdom.

**Any written memorandum is a document that speaks for itself, and any characterization of the same by Defendant is denied.  The remaining allegations are denied.**

101. Incensed by Thomas's decision to end their relationship and instead remain with Bishop, Barbounis launched an extended campaign of extreme harassment and psychological abuse directed toward Bishop, the mother of Thomas's three children. *See* Exhibit A.

**Any written memorandum is a document that speaks for itself, and any characterization of the same by Defendant is denied.  The remaining allegations are denied.**

*102.* Barbounis falsely told Bishop that her affair with Thomas was continuing in an effort to undermine Bishop's trust in Thomas and her efforts to rebuild their relationship.  *Id.*

**Any written memorandum is a document that speaks for itself, and any characterization of the same by Defendant is denied.  The remaining allegations are denied.**

103.   Barbounis made many other harassing and derogatory comments to Bishop in writing, to

embarrass, threaten, ridicule, intimidate, and silence Bishop which include the

following:

- "But you know deep down because you're a fucking idiot. I'm telling you right now you keep this up you're gonna lose this one. And I am totally enjoying it." *See* Exhibit S.

- "He dogged you to me in texts you read.  He slept with me and came home to you. He posted pics of your kids with our songs. And lied to you the WHOLE time. I'm the one who told your everything and you still think I'm the liar. You are totally insane."  *Id.*

- "I am going to galas with the Vice President today. You think I care about two welfare losers [sic]". *Id.*

**Any written memorandum is a document that speaks for itself, and any**

**characterization of the same by Defendant is denied.  The remaining**

**allegations are denied.**

- "I'll protect him but don't want him. I have no relationship with you. The only reason I ever showed you anything in the first place was because I was sick of all the lies. But since you refuse to go anywhere there's not benefit in that for me. It's all a cost benefit analysis.  And there is no return on my investment from showing you anything."  *Id.*

- "That's why it's so funny for me you get all angry and call me all these names but deep down it's all because you know how awesome I am and it scares you. You see me as a threat to your life. And if you didn't think that I had any power over you or Danny you wouldn't be messaging me." *Id.*

**Any written memorandum is a document that speaks for itself, and any characterization of the same by Defendant is denied.  The remaining allegations are denied.**

104.    The harassment of Bishop by Barbounis also included voice mail messages.

**Any written memorandum is a document that speaks for itself, and any characterization of the same by Defendant is denied.  The remaining allegations are denied.**

105.    In voice messages to Bishop, Barbounis said the following, among other things:

- "Oh, but I do. I really do, because you were so pathetic and sad, you told me all of it. You poor thing. Have another abortion, you whore [laughter]. *See* Exhibit T.

- "I went to an Ivy League school twice and I work for Congress, she's plenty proud. You mom's a junkie that puts fucking drugs up her snatch. What a loser." *Id.*

- "Ha! Absolutely, positively not. Absolutely not. And I have proof. If he wants to call me, tell him. Because I'm free to ruin both your lives. It's not a problem for me at all." *Id.*

- "It's pathetic. Really is. You can't stop yourself. No self esteem or self control. No sense of pride or self worth because there is no reason for it. You are trash. [laughing emoji]." *Id.*

**Any written memorandum is a document that speaks for itself, and any characterization of the same by Defendant is denied.  The remaining allegations are denied.**

106.   On April 12, 2019, MEF received negative press coverage in the United Kingdom as a result of Barbounis' continuing unauthorized political work with Robinson. *See* Exhibit U.

**Any written memorandum is a document that speaks for itself, and any characterization of the same by Defendant is denied.  The remaining allegations are denied.**

107.   In response, Pipes confronted Barbounis about her political associations and frequent travel, his concern that she did not clear her continued work for Robinson with him, and his belief that she was too caught up in and focused on her activities with Robinson at the expense of her work for MEF. *See* Exhibit V.

**Any written memorandum is a document that speaks for itself, and any characterization of the same by Defendant is denied.  The remaining allegations are denied.**

*108.*   Pipes asked that Barbounis not surprise him with her travels and made clear that he was not convinced that she was focused on the tasks agreed upon in November 2018.  *Id.*

**Any written memorandum is a document that speaks for itself, and any characterization of the same by Defendant is denied.  The remaining allegations are denied.**

109.   On May 6, 2019, Bishop, fed up with Barbounis' harassment and denigration, wrote to Pipes: "Are you aware that Lisa was and possibly still is having an affair with Danny [Thomas]? I have all the evidence feel free to ask and I will send it." *See* Exhibit W.

**Any written memorandum is a document that speaks for itself, and any characterization of the same by Defendant is denied.  The remaining allegations are denied.**

110.   Thomas reports that, around this time, Bishop called Roman and left him a voice mail on his office machine concerning the affair between Barbounis and Thomas, but Barbounis intercepted the voice mail message and deleted it before Roman could listen to it. *See* Exhibit A.

**Any written memorandum is a document that speaks for itself, and any characterization of the same by Defendant is denied.  The remaining allegations are denied.**

111.   Despite prior warnings from Pipes, Barbounis continued to work for Robinson, now out of jail and running for a seat in the European Parliament.

**Any written memorandum is a document that speaks for itself, and any characterization of the same by Defendant is denied.  The remaining allegations are denied.**

112.   In May 2019, as a result of her work for Robinson, MEF received significant news coverage claiming that MEF was "meddling in British/EU politics," and referring to Barbounis as a Director of MEF. *See* Exhibit X.

**Any written memorandum is a document that speaks for itself, and any characterization of the same by Defendant is denied.  The remaining allegations are denied.**

113.   An article in the Guardian newspaper on May 17, 2019 spoke of Barbounis in the Robinson campaign, the author noting, "There has been a more surprising presence at Robinson's rallies, however: Lisa Barbounis, a senior executive of the conservative US thinktank the Middle East Forum, has been a central figure on Robinson's campaign team and present at many of his rallies, the Guardian has learned. Her exact role is unclear but Barbounis, who says she has worked on several Republican campaigns including John McCain's run for president in 2008, has been on the trail with Robinson for about a fortnight." *See* Exhibit Y.

**Any written memorandum is a document that speaks for itself, and any characterization of the same by Defendant is denied.  The remaining allegations are denied.**

114.   As a 501(c)(3) organization, MEF is subject to strict legal controls concerning its use of funds and involvement in political activities. Barbounis' activities with Robinson violated these controls and threatened to cost MEF its non-profit status.

**Any written memorandum is a document that speaks for itself, and any characterization of the same by Defendant is denied.  The remaining allegations are denied.**

115.    As a result of her actions that jeopardized MEF's non-profit status, Pipes emailed Barbounis on

May 28, 2019, concerning her poor work performance and political association: "In my April

16 note to you, I wrote 'Please don't surprise me with your travels.' But then it turns out the

Guardian had a mole who spotted you at three separate Tommy Robinson rallies; that definitely

counts as a surprise. From now on, you need express permission from me before engaging in

MEF travel and you must also clear with me any personal travel that includes a political

agenda." *See* Exhibit Z.


**Any written memorandum is a document that speaks for itself, and any characterization**

**of the same by Defendant is denied.  The remaining allegations are denied.**


*116.*    Pipes also reprimanded Barbounis for her continued poor work performance, including her

failure to get articles out on time to MEF subscribers; her failure to improve her public stature;

her failure to improve the composition of MEF's staff; her failure to increase publications; her

failure to hold monthly conference calls for subscribers; her failure to increase YouTube

videos; and her failure to make weekly reports. *Id.*


**Any written memorandum is a document that speaks for itself, and any characterization**

**of the same by Defendant is denied.  The remaining allegations are denied.**


117.    Barbounis, however, continued to disregard Pipes' directives.

   **Denied.**

118.    On June 5, 2019, Pipes again wrote to Barbounis: "The Guardian article from May 17 has a long,

insinuating paragraph about you along with a picture of you. The clear implication is that MEF

supports Tommy Robinson's campaign. This rates as both a surprise and an unwelcome

complication. The article could entirely disappear but it could also pop up in the future and make

trouble for us. I do not want potential trouble hanging over us, so am displeased. You and I have

already discussed the matter of your affiliating MEF too closely with Tommy Robinson and we

reached an informal agreement that you would stay away from his efforts. Given this

development, I am now imposing a formal limitation on you: No campaign work, even during

your private time, without clearance from me." *See* Exhibit AA.

**Any written memorandum is a document that speaks for itself, and any characterization**

**of the same by Defendant is denied.  The remaining allegations are denied.**

119.   Two days after receiving this admonishment, Barbounis filed an Charge of

Discrimination against MEF with the Equal Employment Opportunity Commission.


**Any written memorandum is a document that speaks for itself, and any characterization**

**of the same by Defendant is denied.  The remaining allegations are denied.**


120.   Disregarding Pipes' clear instructions, on July 1, 2019, Barbounis appeared in a press release

concerning Robinson's political campaign. The press release included full contact information

for Barbounis. *See* Exhibit BB.


**Any written memorandum is a document that speaks for itself, and any characterization**

**of the same by Defendant is denied.  The remaining allegations are denied.**


121.   On July 16, 2019, Barbounis again ignored Pipes' instructions and used MEF resources to send

out political communications in her role as "Director of Communications" for TR.News, where

TR stands for Tommy Robinson. *See* Exhibit CC.


**Any written memorandum is a document that speaks for itself, and any characterization**

**of the same by Defendant is denied.  The remaining allegations are denied.**


122.   On July 24, 2019, Barbounis completed an application and submitted her resume for a job with

the United States Congress. As part of her application, Barbounis knowingly and falsely stated

that, "Since entering my role as Director of Communication for the Middle East Forum I have

increased our social media engagement by 32%. From June 2018 through June 2019, I helped

place 1,128 articles by 56 experts in 97 outlets, from D.C.'s influential The Hill to the Wall

Street Journal, from The Washington Times to Foreign Policy. Additionally, I arranged for 27 of

our experts to be interviewed 92 times by 81 media outlets on both radio and television ranging

from outlets like I24 News and Al Jazeera to Fox News." *See* Exhibit DD.


**Any written memorandum is a document that speaks for itself, and any characterization**

**of the same by Defendant is denied.  The remaining allegations are denied.**


123.     To give one example of the falsehood: all the articles in the Wall Street Journal, The

Washington Times, and Foreign Policy were arranged without any involvement by Barbounis.


**Any written memorandum is a document that speaks for itself, and any characterization**

**of the same by Defendant is denied.  The remaining allegations are denied.**


124.     Despite these false representations, Barbounis submitted her application and certified "that all of

the foregoing information that I supplied in this submission form and resume is correct and

complete. I UNDERSTAND THAT ANY FALSIFICATION OR OMISSION OF ANY

INFORMATION CONSTITUTES GROUNDS FOR ANY HOUSE OF

REPRESENTATIVES EMPLOYER TO NOT EMPLOY ME OR TO DISMISS ME FROM

EMPLOYMENT." *Id.*

**Any written memorandum is a document that speaks for itself, and any characterization**

**of the same by Defendant is denied.  The remaining allegations are denied.**

125.   Upon information and belief, based on these representations, Barbounis secured employment

as Director of Communications in the United States House of Representatives for

Congressman Randy Weber.

**Any written memorandum is a document that speaks for itself, and any characterization**

**of the same by Defendant is denied.  The remaining allegations are denied.**

126.   On August 7, 2019, Barbounis resigned from MEF to accept this position.

**It is admitted that Plaintiff was constructively terminated from her employment with The**
**Middle East Forum sometime around August 7, 2019.**

127.   Upon information and belief, her work in support of Robinson continues to this

day.

**Plaintiff is without knowledge to confirm information that Defendants believe.  Strict proof**
**is demanded at trial.**

128.   Thomas reports that Barbounis used her position in the House of Representatives in October of 2019 to threaten Bishop and Thomas, including statements that she attended events with the Vice President of the United States, was now "in a position of power" and asking, "Do you know who I work for?" *See* Exhibit A.

   **Any written memorandum is a document that speaks for itself, and any characterization of the same by Defendant is denied.  The remaining allegations are denied.**

129.   Upon information and belief, Barbounis used her position as Director of Communications for a member of the House of Representatives to induce fear in Thomas and Bishop in an effort to induce Thomas to continue their relationship and to prevent Thomas or Bishop from notifying MEF about the funds misappropriated by Thomas with Barbounis' knowledge.

   **Plaintiff is without knowledge to confirm information that Defendants believe.  Strict proof is demanded at trial.**

130.   On September 24, 2019, Matthew Ebert, boyfriend of Marnie Meyer, called Roman via an unlisted, private number as an "anonymous source" with the stated intention of "blowing the lid off an employment litigation action by former employees" of MEF. *See* Exhibit EE.

   **Any written memorandum is a document that speaks for itself, and any characterization of the same by Defendant is denied.  The remaining allegations are denied.**

131.   Ebert told Roman that the women involved in the lawsuit are all "banking on a large settlement," and that the other women involved had questioned Barbounis' motivations for suing.  *Id.*

**Any written memorandum is a document that speaks for itself, and any characterization of the same by Defendant is denied.  The remaining allegations are denied.**

132.   The following day, Ebert called Roman ten times to convey the same message, which aligns in all significant detail with what Thomas has independently reported to MEF.

**Plaintiff is without knowledge to confirm or deny this allegation.  Strict proof is demanded.**

133.   Although neither MEF or Roman knew the identity of the caller at the time the calls were placed, Ebert has since admitted in testimony under oath that he placed the calls to Roman. *See* Exhibit FF.

**Any written memorandum is a document that speaks for itself, and any characterization of the same by Defendant is denied.  The remaining allegations are denied.**

134.   On October 27, 2019, Barbounis filed the instant lawsuit which, on information and belief, was based on her plan, as divulged to Thomas, to bring false allegations against MEF and Roman for the purpose of obtaining a monetary settlement to fund her move to the United Kingdom.

**Any written memorandum is a document that speaks for itself, and any characterization of the same by Defendant is denied.  The remaining allegations are denied.  Plaintiff is without knowledge to confirm or deny this allegation.  Strict proof is demanded.**

135.    The allegations in Barbounis' complaint are substantially similar to those she told Thomas that she planned to make up against MEF and Roman.

**Denied.**

136.    Subsequent to her resignation from MEF, MEF discovered that Barbounis had misappropriated MEF trade secrets, which is the subject of a separate lawsuit.

**Denied.**

137.    On July 17, 2020, Thomas provided MEF with records of Barbounis' travel to Europe, which aligned with the previous information that he had provided. *See* Exhibit GG.

**Any written memorandum is a document that speaks for itself, and any characterization of the same by Defendant is denied.  The remaining allegations are denied.**

138.    On July 18, 2020 Thomas agreed to provide his phones to a third-party electronic discovery

        vendor for imaging, searching and review because, according to Thomas, the phones contained

        information relevant to MEF's claims and defenses. *See* Exhibit HH.


        **Plaintiff is without knowledge to confirm or deny this allegation.  Strict proof is demanded.**


139.    Thomas also agreed to sit for a deposition voluntarily, and to answer any questions

        posed to him under oath.


        **Plaintiff is without knowledge to confirm or deny this allegation.  Strict proof is demanded.**

140.    Two days later, after the electronic discovery vendor had arranged for pickup of Thomas'

devices and in the midst of a discussion of about how to secure pickup on Thomas' phones,

Thomas abruptly cut off contact with MEF without explanation, stating, "I'm sorry I can't tell

you why but I can't be involved in this anymore. Please don't contact me again!" *Id.*


**Plaintiff is without knowledge to confirm or deny this allegation.  Strict proof is demanded.**


141.    Less than an hour later, Barbounis' counsel baselessly accused Roman of attempting to

manufacture evidence.


**Denied that any allegation made was baseless**


142.    MEF is currently attempting to ascertain the reason for Thomas' abrupt and unexplained

decision to cut off communication and to rescind his agreement to sit for deposition and provide

documents.


**Plaintiff is without knowledge to confirm or deny this allegation.  Strict proof is demanded.**


## COUNTERCLAIM COUNT I

### Breach of Duty of Loyalty


**The Court ruled that Defendants were not permitted to bring a Breach of Loyalty claim
and so Count I of this Answer and Counterclaim is in direct violation of the Court's Order.
To the extent an Answer is required the allegations in Count I are all conclusions of law to
which no response is required.**

143.    MEF repeats and realleges each of the previous paragraphs as if set forth fully

herein.

**The allegations are conclusions of law to which no response is required.**

144.    As an employee and director of MEF, Barbounis had a fiduciary duty to MEF.

**The allegations are conclusions of law to which no response is required.**

145.    As such, and as an employee and director of MEF, Barbounis also had duty to act in good faith

an solely for the benefit of MEF in all matters for which she was employed.

**The allegations are conclusions of law to which no response is required.**

146.    As set forth in detail above, Barbounis intentionally failed to act in good faith and solely for the

benefit of MEF in all matters for which she was employed in numerous ways, but specifically by

failing to disclose to MEF that Thomas had misappropriated MEF funds in breach of a contract

with MEF, and by carrying out political activities on behalf of Robinson and others on MEF's

time and using MEF resources.

**The allegations are conclusions of law to which no response is required.**

Barbounis' failure to act solely for MEF's benefit was a real factor in injuries to MEF, including

a loss of its resources resulting from Thomas's misappropriation of MEF funds and a loss of its

resources resulting from MEF paying Barbounis' salary while Barbounis was working not for

MEF but for other individuals and entities and traveling using MEF's monies on false pretenses.

**The allegations are conclusions of law to which no response is required.**

**To the extent a response is required the allegations are denied.**

147.    Barbounis' actions in breaching her duty of loyalty to MEF were knowing and intentional.

**The allegations are conclusions of law to which no response is required. To the extent a response is required the allegations are denied.**

148.    Barbounis' actions in breaching her duty of loyalty to MEF were extreme, outrageous, and shocking to the conscience of a reasonable person.

**The allegations are conclusions of law to which no response is required. To the extent a response is required the allegations are denied.**

149.    MEF suffered actual damages as a result of Barbounis' breaches of her duty of loyalty to MEF.

**150.    The allegations are conclusions of law to which no response is required. To the extent a response is required the allegations are denied.**

151.    MEF is entitled to punitive damages as a result of Barbounis' breaches of her duty of loyalty.

**The allegations are conclusions of law to which no response is required. To the extent a response is required the allegations are denied.**

**COUNTERCLAIM COUNT II**

**Civil Conspiracy**

152.    MEF repeats and realleges each of the previous paragraphs as if set forth fully

herein.

**The allegations are conclusions of law to which no response is required. To the extent a**

**response is required the allegations are denied.**


153.    Barbounis conspired with Thomas and, upon information and belief, other persons or entities, to

deprive MEF of the benefit of its funds.

**The allegations are conclusions of law to which no response is required. To the extent a**

**response is required the allegations are denied.**


154.    Barbounis and her co-conspirators acted with a common purpose to misappropriate and

conceal the misappropriation of MEF funds designated for a specific purpose.


**The allegations are conclusions of law to which no response is required. To the extent a**

**response is required the allegations are denied.**


155.    Specifically, Barbounis and her co-conspirators conspired to facilitate and conceal the

misappropriation of MEF funds by Thomas for improper and unlawful personal use.


**The allegations are conclusions of law to which no response is required. To the extent a**

**response is required the allegations are denied.**


156.    Barbounis committed overt acts in pursuance of this common purpose, including making

misrepresentations to MEF concerning the misappropriation of funds, facilitating Thomas'
misappropriation of those funds, and assisting Thomas in concealing the misappropriation of
those funds from MEF.

**The allegations are conclusions of law to which no response is required. To the extent a
response is required the allegations are denied.**

157.    As a result of Barbounis' actions, MEF suffered actual legal damage, including but not limited

to the loss of the funds misappropriated, the loss of the benefit of the funds which were issued

for a designated purpose, and the loss of the benefit of its contract with Thomas concerning the

use of the funds.

**The allegations are conclusions of law to which no response is required. To the extent a**

**response is required the allegations are denied.**

158.    As set forth above, Barbounis and Thomas acted in concert to plot, plan and conspire to carry out

the above-described misappropriation.

**The allegations are conclusions of law to which no response is required. To the extent a**

**response is required the allegations are denied.**

159.    Barbounis' actions in breaching conspiring with Thomas and others were, by her own

admission, knowing and intentional.

**The allegations are conclusions of law to which no response is required. To the extent a**

**response is required the allegations are denied.**

160.    Barbounis' actions in conspiring with Thomas and others were extreme, outrageous

and shocking to the conscience of a reasonable person.

**The allegations are conclusions of law to which no response is required. To the**

**extent a response is required the allegations are denied.**

161.    MEF is entitled to punitive damages as a result of Barbounis' actions in furtherance of

the conspiracy.

**The allegations are conclusions of law to which no response is required. To the**

**extent a response is required the allegations are denied.**

## COUNTERCLAIM COUNT III

### Fraudulent Misrepresentation

162.    MEF repeats and realleges each of the previous paragraphs as if set forth fully

herein.

**The allegations are conclusions of law to which no response is required. To the extent a**
**response is required the allegations are denied.**

163.    Barbounis misrepresented to MEF that her trip to the United Kingdom in Spring of 2019 was a

family vacation with her children.


**The allegations are conclusions of law to which no response is required. To the extent a**

**response is required the allegations are denied.**


164.    In actuality, as MEF only recently discovered, Barbounis traveled to the United Kingdom to

continue her sexual affair with Thomas.

**The allegations are conclusions of law to which no response is required. To the extent a**

**response is required the allegations are denied.**


165.    In making this false misrepresentation, Barbounis intended that MEF would act to maintain her

employment status, job duties, and compensation with MEF.


**The allegations are conclusions of law to which no response is required. To the extent a**

**response is required the allegations are denied.**

166.   Barbounis' misrepresentation was intentional and fraudulent in nature.

**The allegations are conclusions of law to which no response is required. To the extent a response is required the allegations are denied.**

167.   As Barbounis' employer, MEF was justified in relying on the misrepresentation by Barbounis.

**The allegations are conclusions of law to which no response is required. To the extent a response is required the allegations are denied.**

168.   MEF suffered actual damages as a proximate result of its reliance on Barbounis' fraudulent misrepresentation, including but not limited to loss of monies paid to Barbounis as a faithless servant.

**The allegations are conclusions of law to which no response is required. To the extent a response is required the allegations are denied.**

WHEREFORE, Plaintiff denies that she is liable on the cause of action, and demands judgment in her favor.

## <u>JURY DEMAND</u>

The demand for a jury does not require a response.

## <u>AFFIRMATIVE DEFENSES</u>

### <u>First Affirmative Defense</u>

The Complaint fails to state a claim upon which relief can be granted.

<u>Second Affirmative Defense</u>

Plaintiff's claims are barred in whole or in part because Plaintiff has failed to properly mitigate any damages sustained.

<u>Third Affirmative Defense</u>

Plaintiff's claims are barred by the applicable statute of limitations, the relevant portions of which are incorporated herein by reference.

<u>Fourth Affirmative Defense</u>

Plaintiff's claims are barred by the doctrine of res judicata.

<u>Fifth Affirmative Defense</u>

Plaintiff's claims are barred by any release which she may have executed.

<u>Sixth Affirmative Defense</u>

It is averred that at all times concerning this litigation, Defendant acted in a manner which was proper, reasonable, lawful, and in the exercise of good faith.

<u>Seventh Affirmative Defense</u>

It is averred that at all times concerning this litigation, Defendant acted in accordance with her Confidentiality and Non-Disclosure Agreement.

<u>Eighth Affirmative Defense</u>

It is averred that at all times concerning this litigation, Defendant acted in accordance with her Bring Your Own Device Agreement.

### Ninth Affirmative Defense

It is averred that at all times concerning this litigation, Defendant acted in accordance with the regulations and requirements of the Computer Fraud and Abuse Act, 18 U.S.C. § 1080(g).

### Tenth Affirmative Defense

It is averred that at all times concerning this litigation, Defendant acted in accordance with the regulations and requirements of the Pennsylvania Uniform Trade Secrets Act, Pa Cons. Stat.  § 5304(a).

### Eleventh Affirmative Defense

It is averred that at all times concerning this litigation, Defendant acted in accordance with the regulations and requirements of the Defend Trade Secrets Act, 18 U.S.C.  § 1836(b)(1).

### Twelfth Affirmative Defense

It is averred that at all times concerning this litigation, Defendant acted in accordance with the regulations and requirements of the Stored Communications Act18 U.S.C. § 2107.

### Thirteenth Affirmative Defense

It is averred that at all times concerning this litigation, Defendant acted in accordance with the regulations and requirements of the Commonwealth of Pennsylvania governing conversation.

### Thirteenth Affirmative Defense

It is averred that at all times concerning this litigation, Defendant acted in accordance with the regulations and requirements of the Commonwealth of Pennsylvania governing breach of fiduciary duty.

## Fourteenth Affirmative Defense

It is averred that all claims based upon tort is barred by the gist of the action doctrine.

## Fifteenth Affirmative Defense

Plaintiff's claims are barred by the doctrine of qualified immunity.

## Sixteenth Affirmative Defense

Plaintiff's claims are barred to the extent that they violate and exceed the amounts recoverable, if any, under the provisions of any statutes pled by Plaintiff.

## Seventeenth Affirmative Defense

Plaintiff's claims are barred in whole or in part by the doctrine of laches.

## Eighteenth Affirmative Defense

Plaintiff's claims are barred in whole or in part because of Plaintiff's unclean hands.

## Nineteenth Affirmative Defense

Plaintiff's claims are barred by principles of sovereign immunity.

## Twentieth Affirmative Defense

Plaintiff's claims are barred in whole or part by waiver and estoppel.

<u>Twenty-First Affirmative Defense</u>

All claims for punitive damages under the Stored Communications Act18 U.S.C. § 2107. are barred.

<u>Twenty-Second Affirmative Defense</u>

Defendant is entitled to recover reasonable attorneys' fees, expert fees, costs and expenses upon prevailing on any or all of the claims alleged against Defendants to the extent that such recovery is allowed by law.

<u>Twenty-Third Affirmative Defense</u>

Plaintiff's breach of contract claims are barred by a lack of consideration.

<u>Twenty-Fourth Affirmative Defense</u>

Plaintiff's breach of contract claims are barred by a lack of consideration.

<u>Twenty-Fifth Affirmative Defense</u>

Ambiguity – Plaintiff did not clearly state the amount or the issue(s) in this case, which makes it hard for Defendant to respond. I ask the Court to allow Defendant to add more defenses at a later time if required.

<u>Twenty-Sixth Affirmative Defense</u>

Failure to Mitigate Damages – Plaintiff is not entitled to interest and/or attorneys' fees because Plaintiff has allowed these fees to add up unnecessarily by: (1) refusing a reasonable offer by Defendant.

<u>Twenty-Seventh Affirmative Defense</u>

Breach of Contract by Plaintiff - Plaintiff failed to comply with the terms of the contract.

## Twenty-Eighth Affirmative Defense

No Breach of Contract - Plaintiff complied with her obligations under the contract and Plaintiff substantially complied with the terms of the contract.

## Twenty-Ninth Affirmative Defense

Unclean Hands:  Plaintiff is attempting to benefit from its own wrongdoing.

## Thirtieth Affirmative Defense

Unjust enrichment.  Plaintiff is attempting to obtain money that Defendant is not entitled to through this civil action.

## Thirty-First Affirmative Defense

Defendant asserts intervening or superseding causation as an affirmative defense to the CFAA claim.

## Thirty-Second Affirmative Defense

It is averred that at no time was MEF am entity to which the regulations and requirements of the Computer Fraud and Abuse Act, 18 U.S.C. § 1080(g) applied.  MEF email accounts are not protected computers.

## Thirty-Third Affirmative Defense

It is averred that MEF has failed to state a case upon which relief can be granted under the Pennsylvania Uniform Trade Secrets Act, Pa Cons. Stat.  § 5304(a).

<u>Thirty-Fourth Affirmative Defense</u>

It is averred that MEF has failed to state a case upon which relief can be granted under the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(1).

<u>Thirty-Fifth Affirmative Defense</u>

It is averred that MEF has failed to state a case upon which relief can be granted under the Stored Communications Act, 18 U.S.C. § 2701.

Defendant reserve the right to amend their Answer to add affirmative defenses as they become available.

WHEREFORE, Defendant denies that she is liable on Plaintiff's cause of action, and demand judgment in her favor.

## **RESERVATION OF RIGHTS**

Plaintiff has insufficient knowledge or information on which to form a belief as to whether it may have additional, as yet unstated, defenses available. Plaintiff reserves the right to amend or assert additional defenses which may become known during the course of discovery or revealed during pretrial proceedings.

WHEREFORE, Plaintiff respectfully request that this Court grant judgment in defendants' favor and against Defendant, The Middle East Forum on all Counts of the Amended Complaint, and for such further relief as the Court deems just and proper

**DEREK SMITH LAW GROUP, PLLC**

By:   _____/s/ Seth D. Carson_____

Seth D. Carson, Esquire
1835 Market Street, Suite 2950
Philadelphia, Pennsylvania 19103
Phone: 215.391.4790
PA ID 319886
Email: seth@dereksmithlaw.com

DATED:  September 30, 2020