```
1                    IN THE UNITED STATES DISTRICT COURT
                   FOR THE EASTERN DISTRICT OF PENNSYLVANIA
2                               -  -  -

3     LISA BARBOUNIS                    :  CIVIL ACTION NO.
                                        :  19-cv-05030
4        v.                             :
                                        :
5     THE MIDDLE EAST FORUM, DANIEL     :
      PIPES, individually, and GREG     :
6     ROMAN, individually               :
                                        :
7        and                            :
                                        :
8     DANIEL PIPES, THE MIDDLE EAST     :
      FORUM and GREG ROMAN             :
9                                       :
         v.                             :
10                                      :  MOTION HEARING
      LISA BARBOUNIS
11    _____

12                                      James A. Byrne U.S. Courthouse
                                        Via videoconference
13                                      Philadelphia, PA 19106
                                        November 13, 2020
14                                      Commencing at 10:42 a.m.

15    _____

                  BEFORE THE HONORABLE JOSHUA D. WOLSON
16    _____

17

18

19                               -  -  -

20
                      Ann Marie Mitchell, CRR, RDR, RMR
21                         Official Court Reporter
                              (267) 299-7250
22

23    Proceedings taken stenographically and prepared utilizing
      computer-aided transcription
24

25
```

```
 1   APPEARANCES:

 2

 3   FOR THE              DEREK SMITH LAW GROUP, PLLC
     PLAINTIFF/COUNTER    BY:  SETH D. CARSON, ESQUIRE
 4   DEFENDANT            1835 Market Street
                          Suite 2950
 5                        Philadelphia, Pennsylvania 19103
                          (215) 391-4790
 6                        seth@dereksmithlaw.com

 7

 8   FOR THE              COZEN O'CONNOR
     DEFENDANTS/COUNTER   BY:  DAVID J. WALTON, ESQUIRE
 9   CLAIMANTS            BY:  JONATHAN R. CAVALIER, ESQUIRE
                          BY:  LEIGH ANN BENSON, ESQUIRE
10                        One Liberty Place
                          1650 Market Street, Suite 2800
11                        Philadelphia, Pennsylvania 19103
                          (215) 665-2000
12                        dwalton@cozen.com
                          jcavalier@cozen.com
13                        lbenson@cozen.com

14

15
     FOR THE              SIDNEY L. GOLD & ASSOCIATES, PC
16   DEFENDANT/COUNTER    BY:  SIDNEY L. GOLD, ESQUIRE
     CLAIMANT GREG        BY:  WILLIAM REISER, ESQUIRE
17   ROMAN                Eleven Penn Center, Suite 515
                          1835 Market Street
18                        Philadelphia, Pennsylvania 19103
                          (215) 569-1999
19                        sgold@discrimlaw.net
                          breiser@discrimlaw.net
20

21

22                                -  -  -

23

24

25
```

1          (Court called to order at 10:41 a.m.)

2          THE COURT:  Good morning.  So we are here on the

3   motion for contempt that was filed in this case in ECF Number

4   72.

5          So I've read that motion and the exhibits, and

6   obviously I'm familiar with the procedural history in this

7   case.  You guys have been in front of me a number of times on

8   these matters.

9          Let me start with this:  Mr. Carson, it doesn't look

10  to me like you filed a certification that I ordered; is that

11  right?

12         MR. CARSON:  No.  I answered all the -- all the

13  document requests.  I provided written responses to the

14  document requests.  And I believe I sent over a certification

15  as well.

16         THE COURT:  I haven't seen a certification on the

17  docket, Mr. Carson.

18         MR. CARSON:  Oh, filed a certification.  I'm sorry.

19         THE COURT:  Yes.

20         MR. CARSON:  I guess no, I have not done that.

21         THE COURT:  You know that was one of the requirements,

22  right, that was in my order?

23         MR. CARSON:  I do.

24         THE COURT:  Okay.  So why did that not happen?

25         MR. CARSON:  It's just an oversight, just an honest

1   oversight.  I just didn't -- I just didn't --

2           THE COURT:  Okay.

3           Have the written discovery responses been served?

4           MR. CARSON:  Yes.

5           THE COURT:  Okay.  And Mr. Walton, from your

6   perspective, I didn't have the sense from your motion that the

7   written responses were the primary issue here, but from your

8   perspective, are they complete, or there are there still issues

9   with the written responses?

10          MR. WALTON:  Two quick issues with the responses, Your

11  Honor.

12          One, I believe Mr. Carson still asserted objections,

13  but I believe they were waived as per our last hearing.

14          And the responses indicate we received several hundred

15  thousand documents, which we haven't, and that all the

16  defendants received them at the same time, which we disagree

17  with.

18          But other than that, it's the same boilerplate

19  response to every single one of the requests.

20          THE COURT:  All right.  The document count -- I mean,

21  the record will show however many documents were produced.  I

22  assume they're being numbered somehow, so that doesn't trouble

23  me too much.

24          Mr. Carson, to the extent you include objections in

25  the document request responses, are you standing on any

1  objections?

2        MR. CARSON:  I mean, I'd have to look at them.  I

3  didn't think I put a lot of objections in there.  I thought the

4  only ones I'd probably -- I'd have to look at them, Your Honor,

5  to answer that question in a meaningful way.

6        THE COURT:  I mean, I do think there's a waiver issue

7  here if you haven't responded for -- I mean, you responded on

8  November 2nd per my order to requests that were served in I

9  think January.  So I think you've got a waiver issue if you're

10  standing on any objections.

11        MR. CARSON:  I mean, to the extent that there's a

12  waiver issue, I suggest it applies to both parties.  You know,

13  I received my interrogatory -- responses to interrogatories and

14  document requests six months after I sent them or five months

15  after I sent them.

16        THE COURT:  Well, that's not the issue in front of me,

17  Mr. Carson.  I don't have a motion about the interrogatory

18  responses.

19        MR. CARSON:  They agree.  I guess what I'm saying is

20  that both parties were aware that each other's discovery

21  responses were late and agreed that we wouldn't make waiver

22  arguments.  And I have emails from Mr. Walton to that effect.

23        THE COURT:  All right.  Well, I mean, I guess I need

24  to know if there's anything you're standing on.

25        MR. CARSON:  It might not be an issue.  You know what

1  I mean?  Like --

2          THE COURT:  That's what I'm saying.

3          MR. CARSON:  Yeah.

4          THE COURT:  If you put the verbiage in for objections

5  and you're not standing on them, then it doesn't really matter

6  and I'm not going to wade into it.  If there's objections that

7  you know you're standing on as a basis to withhold documents as

8  nonresponsive, then I think I need to know that.

9          MR. CARSON:  Yeah.  I haven't withheld any documents

10 based on -- that I'm aware of, based on -- based on objections.

11         THE COURT:  Okay. All right.  So Mr. Carson, where

12 does the document production stand at this point?

13         MR. CARSON:  As far as I know, every single document

14 has been produced.  There are no documents that --

15         THE COURT:  That includes media files, it includes

16 audio recordings, it includes pictures, you've reviewed all

17 those and produced what's responsive?

18         MR. CARSON:  Yeah.  I mean, I haven't reviewed every

19 picture out of the hundreds of thousands of pictures yet.  But

20 yes, I mean, as far as I know, every single -- I mean, I

21 provided -- I mean, this is -- this would be a very easy

22 conversation to have if defendants had ever decided to contact

23 me one time to talk about any of this stuff.

24         But I produced like 345 other documents, including an

25 audio file and images and -- you know, like, have I gotten

1  through the hundreds of thousands of documents that Cornerstone

2  gave us?  No.  But we both have all those documents.

3          THE COURT:  So let me break that down.

4          You have given to the defendants all of those images?

5  Because I thought that what I had heard was that the images

6  were being held back so that you could look at them because

7  there was an issue of sensitivity.

8          MR. CARSON:  Yeah.  So since -- since Cornerstone did

9  that, I have not looked through every single one of those

10  images, but I don't think that -- you know what I mean?  I

11  don't -- I don't think that there's anything there in addition

12  to what was already produced that's discoverable.

13          THE COURT:  How do you know that if you haven't looked

14  at them?

15          MR. CARSON:  I mean, just because they're all just

16  family photos, Your Honor.  It has nothing to do with this

17  case.

18          THE COURT:  Well, there are representations in the

19  motion that Ms. Barbounis took pictures of documents when she

20  was at the The Forum.  There are representations in the motion

21  that she recorded conversations while she was at work and

22  things like that.

23          So how do you know if those things are there if you

24  haven't reviewed them?

25          MR. CARSON:  I mean, I haven't come across anything

1    like that.  Nothing.  I haven't gotten through it all, so I
2    guess --
3             THE COURT:  How much is there left for you to review?
4             MR. CARSON:  I don't -- I don't know.  I'd have to
5    look.  I don't know.  But --
6             THE COURT:  So how am I supposed to know --
7    Mr. Carson, I mean, I issued an order that said you were
8    supposed to produce all remaining responsive documents by
9    November the 2nd.
10            MR. CARSON:  Right.
11            THE COURT:  Right.  How am I supposed to know if you
12   did that?
13            MR. CARSON:  Your Honor, it's just -- since -- since
14   you issued that order, I've had depositions like every day
15   since then.  I get -- every chance I get, I try to go look
16   through that stuff.
17            I've never one time looking through it seen a picture
18   of a document or heard an audio file that in any way relates to
19   this case or The Middle East Forum in any way, but --
20            THE COURT:  Did Ms. Barbounis testify that she had
21   recorded some conversations during her work at the The Forum
22   during her deposition?
23            MR. CARSON:  I don't recall, but I don't think so.  I
24   mean, I think those recordings have been turned over.  The ones
25   that she testified about have been turned over.

1          THE COURT:  Wait.  Okay.  So that's two different

2     answers to my question.  So start with my question.

3          Did she testify that she recorded conversations during

4     her time at MEF?

5          MR. CARSON:  There was testimony about a recording

6     between Ms. Barbounis and an employee named Marty Meyer, yes.

7     So -- and that recording has been turned over.

8          THE COURT:  Was there testimony about recordings with

9     conversations with anyone else, like Mr. Roman?

10         MR. CARSON:  I don't recall that, but I don't think

11    so.  I mean, if defendants -- if any counsel wants to correct

12    me on that, I just don't recall that.  I don't think there was,

13    no, Your Honor.

14         THE COURT:  Okay.  Mr. Walton, what is the material

15    that you're still concerned about in the way of -- let's talk

16    about media files for a moment?

17         MR. WALTON:  Your Honor, I'll try to break these down,

18    because Cornerstone uses "media files" in a very broad sense.

19         Number one, there are documents that have been turned

20    over to us with attachments where the attachments aren't there.

21    A lot of those attachments are media files.  So there's

22    potentially relevant documents without attachments, number one.

23         Number two is the pictures of the documents and the

24    other photos that may be relevant to the case, not her family

25    and stuff, but her trips that she went on with MEF, her

1  relationship with Danny Thomas, Tommy Robinson, et cetera.

2          Number three is her recordings.  She loved to record

3  things.

4          Mr. Gold can speak to this, but some of this stuff,

5  the reason we know it exists, it's been turned over to trade

6  secret case, which Mr. Gold is involved in, not us, not Cozen.

7  And so --

8          MR. CARSON:  Turned over to who?

9          MR. WALTON:  To -- I believe some of that was turned

10  over to Mr. Gold as part of the trade secret case, and then it

11  was pulled back when they found the censored materials.

12          So we, Cozen, in the case before Your Honor have not

13  received those materials.

14          THE COURT:  Okay.  Let me drill down on each of those

15  categories then.

16          So let's start with the documents with attachments.

17          Have you -- start with this.

18          Mr. Walton, have you identified for Mr. Carson the

19  documents with attachments that you've seen where you don't

20  have the attachments?

21          MR. WALTON:  No.  I think we put some exemplars in our

22  motion, but there are numerous.  Ms. Benson is on the phone --

23  or on the conference, she can speak to this better than I can,

24  but my understanding is there's thousands.

25          THE COURT:  Okay.  So who is segregating the files

1   from the -- from the attachments?  In other words, is that

2   being done by Cornerstone, or is that something, Mr. Carson,

3   that you're doing?

4          MR. WALTON:  It was being done, my understanding --

5   and I'm sorry if you didn't direct that at me, Your Honor.  But

6   my understanding is that it's being done pursuant to Judge

7   Sanchez's order in the trade secret case.  But Mr. Carson and

8   Mr. Gold can speak to that better than I can.

9          THE COURT:  Mr. Carson, why don't you tell me.

10          I mean, is the -- in the ordinary course of things in

11   discovery, I would expect you to maintain some sort of

12   relationship between the document and its attachment and its

13   production in order to be forensically sound.

14          So what's the basis for separating them?

15          MR. CARSON:  I'm not sure I understand what you mean.

16          THE COURT:  So if an email has an attachment,

17   Mr. Carson, you know, typically they are produced with either

18   some metadata to indicate the relationship, they're produced

19   together.  I mean, I assume you're producing things here in

20   some sort of document review format, document review tool,

21   whether it's Relativity --

22          MR. CARSON:  No.

23          THE COURT:  You're producing stuff as PDFs?

24          MR. CARSON:  Yeah.  I don't even know how we're doing

25   it.  I have no idea.

1          THE COURT:  What tool are you using to look at the

2     documents, Mr. Carson?

3          MR. CARSON:  Whatever Cornerstone gave us.

4          THE COURT:  What is it?  When you log in, what program

5     is it?

6          MR. CARSON:  I don't know.  I don't know what it's

7     called.

8          MR. WALTON:  It's called, Junto, Your Honor.

9     J-U-N-T-O.

10          THE COURT:  And is it a typical document review tool

11     with --

12          MR. WALTON:  Yeah.  It's like Relativity Light.

13          THE COURT:  Is there metadata associated with the

14     files?

15          MR. WALTON:  Yes.

16          THE COURT:  Okay.  So Mr. Carson, typically if you

17     produce a file that has an attachment, there's metadata that

18     indicates that and that maintains the relationships so they can

19     see that when they get it.

20          Are these things being separated?  In other words, if

21     an email comes around and you tag the email from production,

22     does the attachment get tagged as well?

23          MR. CARSON:  Your Honor, I have no idea.  I don't

24     know.

25          THE COURT:  Don't you need to know that if you're

1  trying to fulfill your discovery obligations?

2          MR. CARSON:  I'm not the one producing it.

3  Cornerstone produced it.

4          THE COURT:  No.  Mr. Carson, Cornerstone is generating

5  the document files.

6          MR. CARSON:  But they're giving it to us both at the

7  same time.  They have equal access to it.

8          THE COURT:  I thought they don't have equal access to

9  some of these media files?

10          MR. CARSON:  I guess.  I mean, some of the pictures,

11  the family photos and things like that, were held back,

12  because --

13          THE COURT:  Cornerstone didn't go through and figure

14  out which media files were family photos and which ones

15  weren't.  Right?

16          MR. CARSON:  No, I don't think they did that.

17          THE COURT:  So they just held back media files en

18  masse.  Right?

19          MR. CARSON:  Right.

20          THE COURT:  And if there was a media file attached to

21  an email, then it sounds to me like Cornerstone separated those

22  and maybe made the email available but held the attachment

23  back; is that right?

24          MR. CARSON:  I guess, if that's what Mr. Walton is

25  saying happened.  I don't know, because I've never received a

1 single phone call from anyone who is representing defendants to

2 just talk to me about this and explain --

3         THE COURT:  Mr. Carson, don't you need to know what

4 Cornerstone is doing if they're making a production of your

5 client's materials?

6         MR. CARSON:  Sure, yeah, I do, but I was overruled in

7 that aspect, so...

8         THE COURT:  What do you mean, you were overruled?  You

9 were told you aren't allowed to have the information?

10         MR. CARSON:  Yeah.  I was told I wasn't allowed to

11 have the information first.

12         THE COURT:  I'm not asking first.

13         But don't you need to know what they're doing?  I

14 mean, just to answer these questions, don't you need to know?

15         MR. CARSON:  Yeah.  I mean, I have an idea what

16 they're doing.  I've logged in and looked at it.  I'm

17 100 percent certain I have not looked at everything they've

18 looked at, you know, because I don't have any kind of

19 e-discovery tools.

20         THE COURT:  That's not what I'm asking you,

21 Mr. Carson.  I'm trying to understand what you're doing to

22 fulfill your discovery obligations.

23         And again, I am not interested in what you were told

24 in the trade secret case.  If you're leveraging the production

25 in the trade secret case to fulfill your discovery obligations

1  in this case, that's fine.  That may be an efficient way to go

2  about it.

3          But you've got your discovery obligations in this

4  case, and I need them to be fulfilled.  And I don't know how

5  you can be fulfilling them if you don't know what's being

6  produced and, you know, you don't know what's -- you know, you

7  don't know what's being produced and you don't know what

8  methodology is being used.

9          MR. CARSON:  Your Honor, I've said on the record, one

10  of the ways that Cornerstone produced information is in like

11  snippets.

12          So during depositions, you know, they'll put a text

13  message.  It will be like one sentence, you know.  There's no

14  context.  And I've told defendants during every single

15  deposition that's taken place in this case so far, why don't

16  you guys call me when this deposition is over so we can discuss

17  trying to get some context for these text messages, you know.

18  And I was like, I'll agree to give you information from before

19  and after so we can see what's being spoken about here.

20          And I think this is relevant in the context of if

21  there's attachments that are part of these messages or

22  attachments that are part of these emails, I have no problem

23  turning those over so that we can understand what the

24  attachments are.

25          But, you know what I mean, I don't know what

1    defendants are even talking about here.

2         And they've never called me to discuss it with me and

3    instead -- this is like the 80th, you know, contempt motion

4    they filed against me.  Before any of these contempt motions,

5    they don't call and talk to me, because they're more interested

6    in -- you know, how am I supposed to produce discovery if

7    I'm -- all I'm ever doing is responding to contempt motions.

8         And by the way, that's the point.  That's the point of

9    what they're doing, so --

10        THE COURT:  Mr. Carson, first of all, let's set the

11   hyperbole aside, okay, because it's the second time they've

12   come to me on contempt, not the 80th.

13        MR. CARSON:  If you add them all together, Your Honor,

14   in all the cases, it's probably the 15th.

15        THE COURT:  I'm not interested in the other cases,

16   Mr. Carson.  I told you that last time.

17        MR. CARSON:  Okay.

18        THE COURT:  Okay?  You guys collectively made a

19   decision not to seek to consolidate these cases.  Right?  We

20   talked about this in January when you were here for the

21   Rule 16.  And it was apparent then that there were a whole

22   bunch of these, that there was going to be a lot of overlap.

23   You chose to file them separately.  You didn't mark them as

24   related or file them as a single action, Mr. Carson.  And the

25   fact that, you know -- and I've pointed this out to Mr. Walton

1  and Mr. Gold too.  They also made a decision not to move to

2  consolidate.  So that has consequences for everybody.  But one

3  of those consequences is that you've got a whole bunch of cases

4  running in parallel with independently existing discovery

5  obligations.  Okay?

6          So in my case that's in front of me, I have discovery

7  obligations.  I'm not interested in what's going on in the

8  other cases.  I'm interested in this case and in moving this

9  case forward.

10          And I'm not getting clarity here.  And I'm not getting

11  clarity on what exactly has been produced.  I'm not getting

12  clarity on what the methodology was.  And I don't know whether

13  you're in compliance with my order or not.  It sounds like the

14  answer is no, because there's no doubt that you haven't looked

15  at and produced everything, but I don't know.

16          I mean, I guess it's possible that in amongst those

17  files there's nothing responsive.  Right?

18          But the problem is, you can't tell me that.  And you

19  can't file the certification of compliance that I ordered on --

20  in October.  You know, I ordered it on October 26th that you

21  were supposed to do it by November 2nd.  And you can't do that

22  because you're not in compliance, or at least you don't know

23  you're in compliance.  Maybe you are by blind luck, but you

24  don't know that you are.

25          MR. CARSON:  I think that's right.

1          THE COURT:  And so the question is, you know, I need

2    you to get this done.  I thought I made this pretty clear when

3    we were on the phone three weeks ago or on the Zoom call three

4    weeks ago that this case needs to come to a close.  Discovery

5    in this case needs to come to a close.  And the only way to do

6    that was to get the documents out of the door so that these

7    depositions could take place.  And so I don't know where we

8    stand.

9          MR. CARSON:  I guess I thought I was in compliance,

10   Your Honor, and that if I wasn't, I think that there should be

11   some sort of opportunity -- you know, if defendants are

12   suggesting that there's stuff they still need that they think I

13   can get to them, then a simple discussion about that would

14   probably -- and then a call to Cornerstone would probably

15   facilitate that.

16         THE COURT:  All right.

17         Mr. Walton, we -- I talked about the documents with

18   the attachments.  There's pictures and other photos and things

19   like that.

20         Are you suggesting those things exist sort of as

21   standalone documents independently from being attachments, or

22   are you just saying those are the type of things that are

23   attachments?  Because that is the second category I wrote down

24   when you --

25         MR. WALTON:  If I'm following, Your Honor, and I

1  apologize if I'm not, I think it's a little bit of both.  It's

2  mostly attachments to documents and some standalone recordings

3  and stuff.

4        THE COURT:  Are the recordings standalone things or

5  are they attachments that Ms. Barbounis sent along as well?

6        MR. WALTON:  I believe they're mostly attachments.

7        THE COURT:  And what was her testimony with respect to

8  the recordings, Mr. Walton?  Was it that she recorded

9  conversations on a regular basis or that there were a few that

10  she had recorded?

11        MR. WALTON:  I didn't attend her deposition.  Mr.

12  Cavalier and Mr. Gold did.  We don't have a transcript yet.  My

13  understanding is that she admitted to one or two conversations

14  but that the evidence that we have shows that there are likely

15  many, many more.

16        THE COURT:  And what is that evidence?

17        MR. WALTON:  That evidence is evidence from other

18  witnesses about recordings.  It could have been some of the

19  stuff that was turned over in the trade secret case that Cozen

20  doesn't have access to yet.  And, you know, testimony and

21  memory from Greg Roman and other people that we have.

22        THE COURT:  Let me ask, is there a reason why --

23  Mr. Carson and Mr. Gold, maybe you know this from your role in

24  the trade secret case -- why whatever's been produced in the

25  trade secret case can't be made available to Cozen in this

1    case?

2         MR. GOLD:  I think there was a confidentiality order

3    entered in that case.  I'm not sure, Your Honor.  But my

4    understanding is the order only allows counsel of record in the

5    trade secret case to have access to the files and documents and

6    data that's on the Junto platform.

7         However, just so I can add, the trade secret case, the

8    search terms that were used were limited to -- I believe there

9    were 25 search terms, but they're all limited to the trade

10   secret case.  So information that was made available to us

11   through discovery, and that's on the Junto platform, probably

12   none of that -- a portion of that may be related to this case.

13        However, as I understand it -- I don't know whether

14   any search terms were ever provided in this case, but that

15   information is readily available to Mr. Carson.  He is counsel

16   of record.  All he has to do is go on the platform, enter his

17   password, and he's on there.  He can search documents.  He can

18   do whatever he needs with regard to that.

19        But that discovery is not in any way, shape or form

20   related to this case in the sense that it limits the

21   information that we need in this -- in the employment case.

22        THE COURT:  I understand that.  But I mean, if it's

23   been supplemental to what's been produced in this case and it's

24   part of what's out there, then I'm just trying to figure out if

25   there's a way to move things along.

1        You know, look, there's no search terms in this case.
2   You know, some of that is a function of the delays, you know,
3   the defendants engaged in too in terms of pursuing discovery in
4   this case.  And we're not just going to reset things --
5        MR. GOLD:  Right.
6        THE COURT:  -- and give everybody a pass.
7        MR. GOLD:  Your Honor, by the way, the data or the
8   files available on the trade secret case have been available
9   now for months.  And the reason that we had difficulties with
10  that, 'cause we had -- because of interactions we had with
11  Mr. Carson.  But I'm not going to go into that.
12       But the platform that we're using is relatively easy,
13  I mean, to use.  I'm not by any means an expert in the database
14  programs, but I'll tell you, I've been able to use it.  I've
15  been able to search for terms.  And Mr. Carson has total access
16  to that.
17       What he's complaining about is that at some point in
18  time, Judge Sanchez lost his patience and said, okay, just turn
19  everything over to Cornerstone.  And some of that is identified
20  as attorneys' eyes only.  Some of it is anyone can access it.
21  But he's had access now for months.  I mean, it's all there.
22       But I think what Mr. Walton is stating in this case is
23  that the documents that are related to this case have not been
24  turned over, and the documents in the trade secret case are not
25  a substitute for what needs to be turned over in this case.  I

1   don't expect -- we have hundreds of thousands of documents that

2   have been -- that are on the platform right now because of the

3   search terms we used.

4          But the cases have no relationship to each other in

5   terms of the factual issues or the legal issues.

6          MR. CARSON:  The parties are the same.

7          THE COURT:  All right.  Yeah.  I have a couple of

8   questions.

9          I mean, one of the issues that's floating around here

10  is the issue about Telegram which we haven't talked about yet.

11         Mr. Carson, have you talked to -- have you done

12  anything to try and retrieve messages from Telegram from

13  Ms. Barbounis's account?

14         MR. CARSON:  Yeah.  We have not been able to retrieve

15  any messages.  We tried -- it's my understanding that Lisa gave

16  all the two-factor authentication to Cornerstone and they

17  weren't able to retrieve any of them either.  I can double

18  check that for you again, but that's what it happened to be.

19         THE COURT:  Okay.  Have you conveyed that to

20  Mr. Walton, that that effort was made?

21         MR. CARSON:  I've had no meaningful conversations with

22  the defendants about discovery since the last time we spoke.

23         THE COURT:  Mr. Walton, do you have any reason to

24  think -- I know with some social media accounts, for example,

25  there are ways to pull down and download your history.

 1          Do you have any reason to think that that is feasible,

 2   that you can scrape the data out of Slack -- out of Telegram?

 3          MR. WALTON:  Yeah.  I have to talk to -- I mean, it's

 4   the first time I'm hearing about the Telegram accounts.

 5          We have been able to pull them down for our witnesses.

 6   I would have to talk to Cornerstone to see what the issue is

 7   and get a better understanding of it.

 8          THE COURT:  I want to get that done.  I want to

 9   understand what they're doing and whether it can be pulled

10   down.

11          I mean I think, you know, if the issue is, well, you

12   have to go through and do screenshots of messages and things

13   like that, that seems potentially unreasonable, depending on

14   how many messages it is and things like that, you know.

15          But if there's a way to scrape the data and put it

16   into a review tool or something like that, then it needs to be

17   done.  And I want that to happen.

18          MR. WALTON:  Would you like me to connect with

19   Cornerstone, Your Honor, and then update the Court by letter?

20          THE COURT:  Yes.  I want you to do that.

21          Mr. Carson should be on the call too.

22          MR. WALTON:  Certainly.

23          THE COURT:  I want everybody on the same page.  I want

24   to know what Cornerstone says.  And if there's not clarity,

25   then I'm going to get Cornerstone on the phone and figure it

1  out.

2          All right.  Let me ask a couple questions, Mr. Walton.

3          At this point as you sit here right now, are there

4  materials that you need from Ms. Barbounis for The Forum to

5  prove its counterclaim?

6          And I want to focus on the counterclaim for a minute

7  first.

8          Or is the material that you would get from

9  Ms. Barbounis really to flesh out her defenses?

10          MR. WALTON:  It's both, Your Honor.  I'm sorry for the

11  delay.  It's a little bit of both.  I mean, I think a lot of

12  attachments and the multimedia relates to the Tommy

13  Robinson/Danny Thomas issues, which of course have crossover

14  relating to both to our counterclaim and some of our defenses.

15          But it's hard to tell until we get everything.  And

16  we're still going through that 90,000 -- 90,000 documents that

17  we got.

18          And I would suspect, if we want to be complete with

19  discovery, that we should probably ask for some other search

20  terms.

21          But in terms of efficiency, I wanted to get what we

22  could first, assess it, and then perhaps ask for more search

23  terms.

24          THE COURT:  I mean --

25          MR. CARSON:  Your Honor, just so you know, the search

1   terms in the case were Tommy Robinson, Danny Tahoe (ph), The

2   Middle East Forum, Daniel Pipe.  It's all the same search terms

3   that were used in this case.

4         THE COURT:  I'm not wading into what the search terms

5   are.  And I will tell you, I mean, again, I understand the

6   problems you face, Mr. Walton.  I understand why you want more

7   search terms and more documents and things like that.

8         You know, I look at the timeline, though, in this

9   case.  And there is an issue, you know, where it took months

10  and months and months for The Forum to follow up on its

11  discovery requests.  And, you know, I don't think that we

12  should just reset discovery by starting ESI again with new

13  search terms.  This case needs to come to a close.  And the

14  time to do search terms was in June and July and August, it's

15  not now at the very end of discovery.

16        And if there were problems getting the documents then,

17  then the issue should have been brought to my attention then.

18  And so that's why I'm hesitant on some of these issues.  Okay?

19        MR. WALTON:  May I respond to that real quickly, Your

20  Honor?

21        THE COURT:  Yep.

22        MR. WALTON:  In June, July and August, Mr. Carson

23  didn't have possession of the materials anymore.  My

24  understanding is that they were in Cornerstone in an order

25  governed by Judge Sanchez.

1          THE COURT:  That's not my case.  And if there was a
2    problem, you should have brought it to me then.  And if it
3    needed coordination with what was going on with Judge Sanchez's
4    case, we could have dealt with it then.
5          If it was -- you know, but it seems like what happened
6    is you basically put the discovery in this case on the back
7    burner because of what was going on in the trade secret case.
8          And my problem with that is that, you know, I have a
9    case that I need to move forward.  And, you know, you waited
10   until very late in the process.  I mean, we're ten months into
11   discovery, which is an extraordinarily long time for discovery.
12   I don't typically allow that kind of time in discovery in my
13   cases.  I think they can move faster than that.
14         And I'm being told now that, you know, we're basically
15   going back to -- I don't know if it's square one, but it's
16   square two in terms of the discovery process if we're talking
17   about ESI search terms.
18         MR. WALTON:  Well, I think most of what we got -- most
19   of what -- I haven't seen the search terms, but I've heard
20   they're broad.  So I think most of what we got is what we're
21   going to get.  We started taking depositions.  We've taken
22   Ms. Barbounis's deposition all ready.  We took Ms. McNulty's
23   deposition.
24         I hear what Your Honor is saying.  We are moving
25   forward.  I'm not proposing that we go back to square one and

1  we start discovery all over.  I think in some sense, we're

2  going to get what we're going to get, and we need to move

3  forward.

4        And I agree with that.  And we are planning to move

5  forward.  We have a deposition set for Mr. Roman, Mr. Pipes,

6  Mr. Fink, a couple board members.  So the case is moving along

7  in terms of depositions.

8        THE COURT:  Right.  And I understand that.  I mean,

9  you know, there's an order that requires them to happen.

10        I just -- you know, there's a tension in what you're

11  telling me, Mr. Walton, because on the one hand you're saying,

12  well, I need to go back and do new search terms.  On the other

13  hand, you're telling me that you have most of what you think

14  you're going to get.  You have them in a way that you can

15  certainly run your own searches and hone in on the stuff you

16  want.

17        You know, if there are some gaps in what's being

18  provided -- I mean, I am troubled about the media files, that

19  that's something that needs to be dealt with.  But it doesn't

20  sound like there's a lot of other documentary information.  I

21  mean, maybe there's some Telegram stuff that may or may not be

22  recoverable, I just don't know.  But otherwise, it just doesn't

23  sound like there's a ton of additional material to be given.

24  It's really these media files.

25        MR. WALTON:  It's the media files, Your Honor, and

1   also like Mr. Carson was saying earlier, the text messages.

2           MR. CARSON:  I was about to say that too.

3           MR. WALTON:  We only have, Your Honor -- I can try to

4   use my hand to explain it to you.

5           You know how you have a string of text messages --

6           THE COURT:  Yes.

7           MR. WALTON:  -- with a bunch of different bubbles?

8           THE COURT:  Yes.

9           MR. WALTON:  So we only have the bubble with the hit.

10  Nothing above it, nothing below it, just the bubble with the

11  hit.

12          THE COURT:  I don't understand what Cornerstone is

13  doing then, because to me, if you're going to produce the text

14  messages, you need some sort of threading process in order to

15  get that information.

16          I would have thought that's a relatively

17  straightforward process.  Either you get the whole text

18  message, or alternatively, they load the text messages into

19  this platform and then there's some metadata that indicates the

20  relationship so that you can see the thread.

21          If that's not what Cornerstone is doing, then they

22  need to fix that, because every time I ever looked at text

23  messages in my private practice in discovery, that was

24  certainly what we did, was we got the threading information and

25  we were looking at the text message chains as a whole.  So I

1   don't understand why they would be doing that.

2          MR. WALTON:  I think part of it was Judge Sanchez's

3   order, because part of the order was they could only produce

4   the bubble with the hit, and if you needed context, it was on,

5   you know, Mr. Gold or MEF's counsel to ask for more context.

6          So when Seth was trying to leverage that production to

7   us, I believe that they just turned it over in the same way.  I

8   don't know why, but I think that originates back with Judge

9   Sanchez's order.

10          MR. CARSON:  Your Honor, I've offered to help deal

11   with this problem, though, like four times now.  I think the

12   solution is easy.

13          Because there's a lot of text messages, right, that

14   are between her and -- they're really personal, private stuff.

15   We're talking about hundreds of pages, and the whole thread is

16   not relevant.

17          So like where there's a hit, I said, let's identify

18   the ones that you think you're going to use in the case and

19   tell me what they are, and then I'll produce -- I can

20   facilitate the production of the context, like 24 hours before

21   and after the hit so everyone can see what's being spoken about

22   there.

23          And I've said that on the record in every deposition

24   that has taken place in this case so far.  And defendants

25   haven't taken me up on that at all.  And I put that out there

1   again as an option to try to deal with it.

2           MR. WALTON:  This wasn't raised until our very last

3   dep.

4           MR. CARSON:  You weren't at the other deps.  It was

5   raised at every deposition so far.

6           MR. WALTON:  Mr. Gold can speak about that.  But they

7   haven't been produced.  We asked for the text messages --

8           MR. CARSON:  You haven't asked for them.

9           MR. WALTON:  Excuse me.

10          THE COURT:  Okay.  I don't want crosstalk.  Okay?

11  Enough.

12          All right.  I think I've heard what I need to hear,

13  but I'm going to ask you guys all to hold on, because I want to

14  take a recess -- actually, I'm reminded, I have one other

15  question.

16          There was an issue mentioned in the motion about

17  redactions of some of what was produced.

18          Mr. Carson, I think it was your recent production

19  materials were redacted; is that right?

20          MR. CARSON:  I don't think so, no.  I think -- for all

21  the redactions that I provided documents for, there was a

22  redaction log.  It was pretty limited.

23          THE COURT:  The motion says the production on November

24  4th had a lot of redactions.

25          Mr. Walton, am I reading correctly?

1          MR. CARSON:  Your Honor, this is the exact same

2    redactions that we dealt with earlier this year, where you

3    ordered to us provide a redaction log and to unredact stuff,

4    and that's all been done.

5          THE COURT:  So you're just reproducing stuff on

6    November 4th?

7          MR. CARSON:  No.  Like I don't think I redacted

8    anything on November -- in the new stuff that I gave them on

9    November 4th.  Again, I guess maybe ask Dave about it.

10         THE COURT:  Mr. Walton, were there new redactions on

11   the 4th?

12         MR. WALTON:  Yes.

13         MR. CARSON:  Where?

14         THE COURT:  Okay.  So let me...

15         Mr. Carson, this says that there were 274 documents

16   produced on November 4th, including data pulled from Ms.

17   Barbounis's Twitter and Instagram accounts, and those documents

18   are heavily redacted without explanation.

19         So was that stuff that was produced before?

20         MR. CARSON:  No.  I don't even know what they were

21   talking about before.  I didn't produce anything from Twitter

22   accounts, and I didn't redact anything.

23         Can they give a Bates stamp number as, like, an

24   example?

25         MR. WALTON:  I think we had some exhibits to our

1    motion, Your Honor.

2            THE COURT:  The motion -- let me see.  Because the

3    motion --

4            MR. WALTON:  It's like 90-some pages.

5            MR. CARSON:  I mean, I can look right now.  I'm in

6    front of my computer.

7            I don't recall redacting anything, and that was a week

8    ago.

9            MR. WALTON:  We definitely have redactions.

10           THE COURT:  I don't have anything here that's redacted

11   in front of me, or at least not -- I see text messages that

12   you're sending that you attached.  I don't see any redactions.

13           So I don't really have any context for this.

14           MR. CARSON:  I'm looking at it right now, and there's

15   no redactions.

16           THE COURT:  Then you guys may need to work on --

17           MR. WALTON:  Just -- Your Honor, I can explain just

18   quickly.

19           When Mr. Carson produces documents, he does it by

20   Dropbox.  And he'll say -- he'll send us an email.  He'll say,

21   there's some more documents on Dropbox for you.

22           So we got a link from Cornerstone on November 4th with

23   no explanation of what it was.  And that's the information,

24   Seth, that we're talking about on November 4th.

25           MR. CARSON:  A link from Cornerstone?

1          MR. WALTON:  Yes.

2          MR. CARSON:  Again, I mean, instead of filing a motion

3   for contempt, maybe --

4          THE COURT:  Okay.  Mr. Carson, I don't want -- I

5   understand you're trying to get some information, but I don't

6   want argument back and forth between you.  This isn't the time

7   or the place.

8          MR. CARSON:  Sorry.

9          THE COURT:  We're going to take a recess.  I'm going

10  to turn off my camera and mute myself.  You're welcome to do

11  the same.  I'd like you back in front of your screens by 11:30

12  so that we can resume when I'm ready.

13         MR. CARSON:  Your Honor, can I ask you one other

14  thing?

15         THE COURT:  Yes.

16         MR. CARSON:  In the counterclaim, I served some

17  document requests.  I don't think I served any interrogatory

18  requests, just document requests, asking them to produce

19  whatever documents they have that confirms or supports their

20  claims alleged in the counterclaim.

21         I think the 30-day deadline for that is like two days

22  after fact discovery, so I just wanted to -- I think plaintiff

23  or counterclaim defendant has a right to review documents if

24  they're going to support a counterclaim against her in order to

25  make a valid consideration of dispositive motions.

1          THE COURT:  I'm not sure what you're asking me,

2     Mr. Carson.  I'm not going to give some legal advice or

3     advisory opinion about how you're managing your discovery.

4          MR. CARSON:  I just -- since the deadline is two days

5     after the end of fact discovery, I just wanted to maybe ask

6     whether or not, you know, they could have to respond to that,

7     those documents.

8          THE COURT:  I don't have a live dispute in front of me

9     right now about that, Mr. Carson.  I don't know what their

10    position is going to be.  I don't have a motion in front of me.

11    You guys haven't met and conferred.  So it's certainly not a

12    ripe issue, so it's not one that I'm prepared to provide an

13    answer to.

14         MR. CARSON:  Understood.  Thank you, Your Honor.

15         THE COURT:  We're going to stand in recess.  Be back

16    by 11:30.  Thanks.

17         (Recess at 11:24 a.m. until 11:41 a.m.)

18         THE COURT:  All right.  Here's where I am on this.

19         I think that the discovery process in this case has

20    been something of a hash.  And I think everybody bears some

21    responsibility for that, as I've indicated before.

22         Mr. Carson, it's not clear to me that what you've been

23    doing is fulfilling your discovery obligations in the case.

24         I know this is not exactly the normal case for you,

25    but you don't seem to be -- you don't seem to understand the

1  e-discovery process here.  You don't seem to understand the
2  platform you're using.  And I understand there's some interplay
3  with the trade secret case, but, you know, documents are being
4  pushed out without review, and it's not clear to me that you
5  understand some of the technical implications around all that,
6  which is troubling to me.
7         I do think, Mr. Carson, that you in significant ways
8  ignored my order of October 26th.  I didn't get the
9  certification that was required.  And as you've acknowledged,
10 you're not in a position to file that certification.
11        That's troubling to me.  I think what I tried to
12 convey at the last hearing and what the order tried to convey
13 is that I expected a fairly herculean effort to get the
14 documents out and produced so that discovery could wrap up in
15 this case.  There was an effort but I don't know there was a
16 herculean effort to really kind of just buckle down and get
17 everything done.
18        In terms of the remedy here, I think, you know, my
19 view is somewhat tempered, as I've said before, by the fact
20 that some of this is a mess of The Forum's making in terms of
21 the pacing of discovery meet and confers.  There's something of
22 a wait and hurry up approach.
23        Again, I know that there's an interplay with the trade
24 secret case.  I know there's interplay with these other cases.
25 But you all made a decision not to coordinate them or ask the

1  various judges who had them to coordinate them.  And the

2  consequences of that were that they had to proceed on parallel

3  tracks and not have one take the lead.

4        And contempt is at bottom an equitable remedy, and so

5  I consider everybody's conduct.

6        So here's what I want to do.  I am going to take these

7  category by category based on what I've heard.

8        For the media files that are outstanding, I want a

9  report from Cornerstone regarding the number of media files

10 that are out on the database.  I want that broken down by type

11 of file, and I want it categorized in terms of static pictures,

12 videos and audio files.  I want to see what kind of file

13 extensions they are.  And I want to -- I want all -- all of you

14 are going to talk with Cornerstone to get me that report.  I

15 want that report by the end of Monday at the latest.

16        And I want to know from that report what documents

17 have been reviewed and what documents still need to be reviewed

18 for production in this case.  I'm not interested in the trade

19 secret case and whether they've been produced in the trade

20 secret case.  I want to know what has to be reviewed in this

21 case.

22        Some of that may get overtaken by a couple of my other

23 orders -- by some of the rest of this, but I want that done for

24 the media files in case there's standalone media files or media

25 files that were attached to emails that have not yet been

1  produced, so I want to know that for all media files.

2        With respect to the text messages, I want all threads,

3  all text conversations in which there has been a hit to be

4  produced.  I understand that may capture some stuff that's not

5  responsive.  If there's stuff that needs to be designated

6  attorneys' eyes only for confidentiality purposes, that's fine,

7  but I want all text threads produced if there's a hit in any of

8  them.

9        So Mr. Walton, it will probably fall to you in the

10  first instance to identify the threads in which there's been a

11  hit.  I want that given to Mr. Carson.  And then the three of

12  you can make arrangements with Cornerstone to get the threads

13  produced.  And it should be produced with whatever metadata is

14  necessary to maintain the complete text thread.

15        So I'm going to want a report on all of this by the

16  end of Monday as to what the status is and when it's going to

17  be done.  And to the extent any of this can be done by the end

18  of Monday, I want to see progress on these materials being

19  produced by the end of Monday, because there's not a lot for

20  Cornerstone to do in terms of slicing and dicing the

21  information they have.  A lot of it is going to be pushing it

22  out.

23        On Telegram, I want you guys to have a conversation

24  with Cornerstone.  I want all of you to participate in that

25  conversation.  And I want to know what has been done to date in

1    an effort to get the information that's on Telegram.  I want to

2    know what problems Cornerstone has encountered and whether

3    there's any possible solutions to them.  And if they're not, if

4    they're not retrievable, I want to know that too, but I want to

5    know all of it.  And I want to know that by the end of Monday.

6          With respect to the attachments, for any email that

7    has been produced that has an attachment, I think the entire

8    family needs to be produced.  So that means the email with

9    attachments.  And you can either -- I think what should happen

10   is assuming that Cornerstone can do it, it should push out the

11   attachments along with metadata so that the parent-child

12   relationship can be maintained and identified.

13         If that can't be done, then I guess a second best

14   approach would be to reproduce everything with the attachments

15   and the metadata, but that's going to require some additional

16   work to go back and identify and match up the new production to

17   the old documents.

18         So if that is what has to happen, if the documents

19   have to be pushed out that way with the reproduction, then

20   Cornerstone needs to generate a report, which they should be

21   able to do from the MD5 hash information in the metadata as to

22   where the overlap is in the documents.  And that report needs

23   to come as well.

24         And so I want that information.  I want the report by

25   Monday as to the process of getting that done.  And I want a

1  hard deadline as fast as possible.  If Cornerstone can do it by

2  Monday, I want them to do it.

3       So I think that those are the things for Cornerstone

4  for you guys to deal with.  Most of them require you to deal

5  with Cornerstone and come back with a couple of things.  I

6  pretty strongly recommend that when we hang up here or

7  disconnect here, that you guys reach out to Cornerstone and try

8  to set up a call today because I don't want to hear that you

9  tried to get them on Monday and you couldn't be available until

10  Tuesday and so forth and so on.  I want that process moving

11  so that --

12       MR. CARSON:  Your Honor, I'm going to be in a

13  deposition for the rest of the day today.  I'm in one now.

14       THE COURT:  Then, Mr. Carson, you're going to have to

15  find a way to take a break from that and at least reach out to

16  Cornerstone.  I'm sorry, but I want answers to this by the end

17  of Monday.

18       MR. WALTON:  We can reach out to Cornerstone and keep

19  you posted, Mr. Carson.

20       MR. CARSON:  I can't do it today.  I mean, I took a

21  huge break today for this.

22       THE COURT:  I'm not interested in hearing "I can't do

23  it," Mr. Carson.  Okay?  I mean, a deposition is something that

24  has some flexibility to it.  A court order is not.  So unless

25  that deposition is taking place pursuant to a specific court

1  order that you can send me that shows me that you have no

2  flexibility, then you're going to have to work around my court

3  order.

4        I'm not asking you to spend the rest of your day on

5  this, but I am asking you to find time to talk to Cornerstone,

6  whether it is after the end of the deposition, whether it is

7  another half hour break from the deposition, I don't know, but

8  you're going to do this.

9        And then the other issue that's out there is the

10 redaction issue.  You know, I can't tell from the arguments

11 what was redacted.  I don't have examples.  I don't have a log.

12 I think you all need to meet and confer.  And again, I want

13 that in your report to me on Monday.

14       I want to know what you've discussed.  I want to know

15 what the answers are.  If there were redactions in documents

16 that were produced on November 4th, then, Mr. Walton, identify

17 some of those to Mr. Carson by way of example so he can see

18 what they are.  Mr. Carson, give them an explanation as to the

19 basis for the redactions.  And if there's a log that needs to

20 be done as to the redactions, I want to know that too.  And I

21 want all that done by Monday.

22       I want all of this, the status report by Monday.  I

23 want it filed as a status report on the docket.  I don't just

24 want a letter.  So I want all that done.

25       And then the last thing, as far as this goes, as I

1  said at the outset here, I do think some of this, there was a

2  delay in dealing with discovery through this case, but a lot of

3  where we are now is a function of I think a combination of

4  Mr. Carson not really grasping or fulfilling discovery

5  obligations, including obligations that have come -- you know,

6  have been suggested from the ABA that everybody be technically

7  facile in this day and age, coupled with not following my

8  October 26th order.

9       So the last two things then that I'm going to want to

10  do is this.

11       Mr. Carson, I'm going to order you to pay the fees

12  that were incurred for them to prepare this motion.

13       And so today's the 13th.  So Mr. Walton, I'll give you

14  till next Friday, the 20th, to put in a fee petition.  And

15  then, Mr. Carson, you can look at the fee petition and respond

16  to it by -- let's say by -- I know Thanksgiving comes in there,

17  so --

18       Respond to it by the 11th, Mr. Carson.

19       And the fees go to preparing the motion and for this

20  hearing.

21       And then the last thing, Mr. Carson, once I get that

22  report from Cornerstone about the files that are -- the media

23  files that are out there.  And, you know, it may be that

24  there's not that many left to review once the attachments are

25  all produced per my order, but to the extent that there are

1   still media files that need to be produced, I want to see daily

2   updates on the progress of that.  And I want those by email to

3   my chambers.

4          So I'm going to get a report from you on Monday about

5   what's out there.

6          Hopefully what you can tell me is both what's out

7   there in the way of media files but also how many of them are

8   attachments that are going to be produced and what that's going

9   to lead for review.

10          MR. CARSON:  How am I going to get you that

11   information?

12          THE COURT:  You're going to email me to the Chambers

13   account, Mr. Carson, you're going to copy counsel in the case

14   how many files you've reviewed on a daily basis so that I have

15   information about the progress that's being made.  I want to

16   know the files that have been reviewed and the amount of time

17   that's spent reviewing them on a daily basis.  And you're going

18   to send emails to my Chambers account telling me that.

19          MR. CARSON:  Your Honor, if everything was produced, I

20   have to pay for them to file a motion when every possible thing

21   in the case was already produced?

22          THE COURT:  Mr. Carson, you're paying for them to file

23   a motion because it's clear to me that not everything is -- or

24   if everything has been produced, it's by blind luck.

25          MR. CARSON:  No, it's not by blind luck.  It's by all

1    the work that I've done in the case.

2            THE COURT:  You'd better be really careful.  This is

3    not the time you want to be arguing with me and snippy with me

4    about this, Mr. Carson.  I'm going to tell you right now that

5    you conceded earlier on the record that you can't file a

6    certification right now that you're in compliance with my order

7    of October 26th because you haven't reviewed all the media

8    files.  You don't know what's in those media files, so you

9    can't sit here and tell me that you know definitively that all

10   responsive materials have been produced.

11           MR. CARSON:  Right.

12           THE COURT:  Okay?  So that's why I'm ordering a fee

13   award.  You haven't complied with my order.

14           And so, you know, I don't know what else is out there.

15   I don't know about the email attachments, but it seems to me

16   that those are things that need to be dealt with in the course

17   of discovery ordinarily in any case with a heavy e-discovery

18   load.  And it just hasn't been handled correctly here.

19           Okay.  So that's -- we'll get you an order that, you

20   know, lays some of this out, but it's just going to refer back

21   to what's on the record.  So to the extent there's questions, I

22   am going to recommend someone order the transcript so you have

23   it, because it will lay out a lot of my reasoning.  But we'll

24   get you an order as well onto the docket.

25           So I'll look forward to your report.

1          As I said, I recommend that you try to get a hold of

2   Cornerstone, at least start the conversation today.

3          All right?  And with that, we're going to stand

4   adjourned.

5          MR. CARSON:  Your Honor, I have another question.

6          THE COURT:  Yes.

7          MR. CARSON:  So you ordered every text thread has to

8   be produced.  That's basically every text she's ever sent.

9          I mean, that's totally overly broad, unduly

10   burdensome, not calculated to lead to the discovery of

11   admissible evidence, it's not proportional to the case.  Every

12   single communication she ever sent has a hit of some sort.  So

13   you're basically saying for the last five years of her life,

14   she has to turn over every communication she's ever sent, with

15   anyone, including me, including her husband, including doctors,

16   including friends, including family.  That's just not fair.  It

17   makes no sense.

18          THE COURT:  Mr. Carson, I'm doing it because there

19   doesn't seem to have been a process to review.  There doesn't

20   seem to have been a sound e-discovery process in place in this

21   case, so I think objections have been waived.  If there were

22   privilege issues, I assume that they were logged.

23          MR. CARSON:  I've been objecting on the record the

24   entire time.

25          THE COURT:  I assume that, for instance,

1   communications between you and Ms. Barbounis have been logged.

2   If there are hits between you and Ms. Barbounis, then yes, you

3   don't have to produce those, but you do have produce a

4   privilege log about them.  Okay?

5          Beyond that, it seems to me that the objections as to

6   burden and things like are long since waived.

7          MR. CARSON:  I've been making them the entire time.

8          THE COURT:  Well, we're at a point, Mr. Carson, that

9   we're -- having not complied with your obligations, regardless

10  of whether you voiced the objection, having not complied with

11  your obligations, I'm deeming them waived.  Okay?

12         MR. CARSON:  They weren't waived.

13         THE COURT:  Or I'm overruling them, whichever verbiage

14  you want to use.

15         But we're at a point where at the end of the case,

16  this should have been dealt with.  And I'm ordering them

17  produced.

18         MR. CARSON:  I'm going to file a motion for

19  reconsideration.  I'll lay out my argument in that then.  But I

20  don't think that they should be produced until the issues are

21  briefed, because it's not -- I mean, what you're ordering is a

22  total intrusion into her personal and private life that has no

23  relevance to this case.  And it's what they've been after the

24  entire time, since the beginning.

25         I mean, plus, I think there's issues of res judicata

1   or claim preclusion where Judge Sanchez already ordered that

2   that stuff shouldn't be produced in the case.

3       THE COURT:  We, Mr. Carson, I don't want to hear claim

4   preclusion and res judicata.  That doesn't apply.  There are

5   two different cases with different scopes of discovery and

6   different discovery paths.  Okay?

7       I mean, if you want to seek reconsideration, you can.

8   I'm going to rule on it very quickly, because I want this dealt

9   with.  And my practices and procedures don't require responses

10  to reconsideration.  So if you want to do it, do it quickly,

11  because my obligation is still outstanding.  And if you run

12  afoul of it, I'm going to be really unhappy.

13      Okay?  So my order stands.  If you're going to seek

14  reconsideration, you can.  I'll look at it quickly.  I'll rule

15  on it.  But you're going to have to have a really good reason

16  to explain to me not just that it's burdensome, not just that

17  it's intrusive, but you're going to have to explain to me what

18  you did to fulfill your discovery obligations in this case

19  through an evaluation of metadata and email threading or text

20  threading in order to produce stuff with context.

21      MR. CARSON:  Your Honor, we produced every single text

22  that was sent between all the relevant parties in this case.

23  All right?  And then we got every single one of her devices,

24  social media accounts, email accounts, private storage

25  accounts, imaged.  And then we made an argument to produce all

1   the information in those accounts based on keywords.

2          THE COURT:  Did you make that agreement in this case,

3   Mr. Carson?

4          MR. CARSON:  Yes.

5          MR. WALTON:  No.

6          THE COURT:  You made that agreement with Mr. Walton?

7          MR. CARSON:  Yes.

8          MR. WALTON:  No.

9          THE COURT:  You better show me the agreement in

10  writing.

11         MR. CARSON:  I mean, we referenced the agreement in

12  the hearing, the last hearing, so I guess I'll get a transcript

13  of the hearing to do that too.

14         THE COURT:  My order stands.  Okay?  I'm not going to

15  revisit what I've ordered.  That's not my recollection of the

16  last hearing.  I have the transcript, I'll take a look at it,

17  but that's certainly not my recollection.

18         If you're going to move for reconsideration, you can,

19  but my order stands.

20         MR. CARSON:  Dave Walton and I have a lot of emails

21  back and forth where we discussed that we would produce the

22  information in this way.

23         THE COURT:  Okay.  Well, I don't know what the emails

24  say, Mr. Carson.  If you think that -- if you think you've been

25  compliant with your discovery obligations, you can try to show

1  me, but it sure doesn't look it to me.  Based on the

2  conversation I've had earlier today, I don't have any

3  confidence that you really know what's been produced in this

4  case or you've done it in a way that is forensically sound and

5  consistent with your ESI obligation.

6       And so my order stands.  I expect you to comply with

7  it.  You can move for reconsideration if you want to.  If you

8  get it in in time, I'll look at it quickly and we'll see where

9  it stands.  Okay?  I mean, I'm always hoping to be persuaded,

10 but, you know, you need to continue to proceed as though my

11 order is in place until it's not.  Okay?

12      MR. CARSON:  Okay.

13      THE COURT:  All right.  All right.  We'll stand

14 adjourned.  Thank you.

15      (Proceedings concluded at 12:02 p.m.)

16

17

18      I certify that the foregoing is a correct transcript

19 from the record of proceedings in the above-entitled matter.

20

21 _____

22 Ann Marie Mitchell, CRR, RDR, RMR
   Official Court Reporter

23 Date:  14th day of November, 2020

24

25

**100** [1] - 14:17
**10:41** [1] - 3:1
**11:24** [1] - 34:17
**11:30** [2] - 33:11, 34:16
**11:41** [1] - 34:17
**11th** [1] - 41:18
**12:02** [1] - 48:15
**13th** [1] - 41:13
**14th** [1] - 48:23
**15th** [1] - 16:14
**16** [1] - 16:21
**2020** [1] - 48:23
**20th** [1] - 41:14
**24** [1] - 29:20
**25** [1] - 20:9
**26th** [4] - 17:20, 35:8, 41:8, 43:7
**274** [1] - 31:15
**2nd** [3] - 5:8, 8:9, 17:21
**30-day** [1] - 33:21
**345** [1] - 6:24
**4th** [8] - 30:24, 31:6, 31:9, 31:11, 31:16, 32:22, 32:24, 40:16
**72** [1] - 3:4
**80th** [2] - 16:3, 16:12
**90,000** [2] - 24:16
**90-some** [1] - 32:4
**a.m** [3] - 3:1, 34:17
**ABA** [1] - 41:6
**able** [6] - 21:14, 21:15, 22:14, 22:17, 23:5, 38:21
**above-entitled** [1] - 48:19
**access** [7] - 13:7, 13:8, 19:20, 20:5, 21:15, 21:20, 21:21
**account** [3] - 22:13, 42:13, 42:18
**accounts** [8] - 22:24, 23:4, 31:17, 31:22, 46:24, 46:25, 47:1
**acknowledged** [1] - 35:9
**action** [1] - 16:24
**add** [2] - 16:13, 20:7
**addition** [1] - 7:11
**additional** [2] - 27:23, 38:15
**adjourned** [2] - 44:4, 48:14
**admissible** [1] - 44:11
**admitted** [1] - 19:13
**advice** [1] - 34:2
**advisory** [1] - 34:3
**afoul** [1] - 46:12
**age** [1] - 41:7
**ago** [3] - 18:3, 18:4, 32:8
**agree** [3] - 5:19, 15:18, 27:4
**agreed** [1] - 5:21
**agreement** [4] - 47:2, 47:6, 47:9, 47:11
**alleged** [1] - 33:20

**allow** [1] - 26:12
**allowed** [2] - 14:9, 14:10
**allows** [1] - 20:4
**alternatively** [1] - 28:18
**amount** [1] - 42:16
**Ann** [1] - 48:22
**answer** [4] - 5:5, 14:14, 17:14, 34:13
**answered** [1] - 3:12
**answers** [3] - 9:2, 39:16, 40:15
**apologize** [1] - 19:1
**apparent** [1] - 16:21
**applies** [1] - 5:12
**apply** [1] - 46:4
**approach** [2] - 35:22, 38:14
**arguing** [1] - 43:3
**argument** [3] - 33:6, 45:19, 46:25
**arguments** [2] - 5:22, 40:10
**arrangements** [1] - 37:12
**aside** [1] - 16:11
**aspect** [1] - 14:7
**asserted** [1] - 4:12
**assess** [1] - 24:22
**associated** [1] - 12:13
**assume** [4] - 4:22, 11:19, 44:22, 44:25
**assuming** [1] - 38:10
**attached** [3] - 13:20, 32:12, 36:25
**attachment** [6] - 11:12, 11:16, 12:17, 12:22, 13:22, 38:7
**attachments** [25] - 9:20, 9:21, 9:22, 10:16, 10:19, 10:20, 11:1, 15:21, 15:22, 15:24, 18:18, 18:21, 18:23, 19:2, 19:5, 19:6, 24:12, 38:6, 38:9, 38:11, 38:14, 41:24, 42:8, 43:15
**attend** [1] - 19:11
**attention** [1] - 25:17
**attorneys'** [2] - 21:20, 37:6
**audio** [4] - 6:16, 6:25, 8:18, 36:12
**August** [2] - 25:14, 25:22
**authentication** [1] - 22:16
**available** [7] - 13:22, 19:25, 20:10, 20:15, 21:8, 39:9
**award** [1] - 43:13
**aware** [2] - 5:20, 6:10
**Barbounis** [8] - 7:19, 8:20, 9:6, 19:5, 24:4, 24:9, 45:1, 45:2
**Barbounis's** [3] - 22:13, 26:22, 31:17
**based** [6] - 6:10, 36:7, 47:1, 48:1

**basis** [6] - 6:7, 11:14, 19:9, 40:19, 42:14, 42:17
**Bates** [1] - 31:23
**bears** [1] - 34:20
**beginning** [1] - 45:24
**below** [1] - 28:10
**Benson** [1] - 10:22
**best** [1] - 38:13
**better** [5] - 10:23, 11:8, 23:7, 43:2, 47:9
**between** [7] - 9:6, 11:12, 29:14, 33:6, 45:1, 45:2, 46:22
**beyond** [1] - 45:5
**bit** [2] - 19:1, 24:11
**blind** [3] - 17:23, 42:24, 42:25
**board** [1] - 27:6
**boilerplate** [1] - 4:18
**bottom** [1] - 36:4
**break** [5] - 7:3, 9:17, 39:15, 39:21, 40:7
**briefed** [1] - 45:21
**broad** [3] - 9:18, 26:20, 44:9
**broken** [1] - 36:10
**brought** [2] - 25:17, 26:2
**bubble** [3] - 28:9, 28:10, 29:4
**bubbles** [1] - 28:7
**buckle** [1] - 35:16
**bunch** [3] - 16:22, 17:3, 28:7
**burden** [1] - 45:6
**burdensome** [2] - 44:10, 46:16
**burner** [1] - 26:7
**calculated** [1] - 44:10
**camera** [1] - 33:10
**capture** [1] - 37:4
**careful** [1] - 43:2
**Carson** [55] - 3:9, 3:17, 4:12, 4:24, 5:17, 6:11, 8:7, 10:18, 11:2, 11:7, 11:9, 11:17, 12:2, 12:16, 13:4, 14:3, 14:21, 16:10, 16:16, 16:24, 19:23, 20:15, 21:11, 21:15, 22:11, 23:21, 25:22, 28:1, 30:18, 31:15, 32:19, 33:4, 34:2, 34:9, 34:22, 35:7, 37:11, 39:14, 39:19, 39:23, 40:17, 40:18, 41:4, 41:11, 41:15, 41:18, 41:21, 42:13, 42:22, 43:4, 44:18, 45:8, 46:3, 47:3, 47:24
**CARSON** [84] - 3:12, 3:18, 3:20, 3:23, 3:25, 4:4, 5:2, 5:11, 5:19, 5:25, 6:3, 6:9, 6:13, 6:18, 7:8, 7:15, 7:25, 8:4, 8:10, 8:13, 8:23, 9:5, 9:10, 10:8, 11:15, 11:22, 11:24, 12:3, 12:6, 12:23, 13:2, 13:6, 13:10, 13:16,

**13:19, 13:24, 14:6, 14:10,**
**14:15, 15:9, 16:13, 16:17,**
**17:25, 18:9, 22:6, 22:14,**
**22:21, 24:25, 28:2, 29:10,**
**30:4, 30:8, 30:20, 31:1, 31:7,**
**31:13, 31:20, 32:5, 32:14,**
**32:25, 33:2, 33:8, 33:13,**
**33:16, 34:4, 34:14, 39:12,**
**39:20, 42:10, 42:19, 42:25,**
**43:11, 44:5, 44:7, 44:23,**
**45:7, 45:12, 45:18, 46:21,**
**47:4, 47:7, 47:11, 47:20,**
**48:12**
**case** [76] - 3:3, 3:7, 7:17, 8:19, 9:24, 10:6, 10:10, 10:12, 11:7, 14:24, 14:25, 15:1, 15:4, 15:15, 17:6, 17:8, 17:9, 18:4, 18:5, 19:19, 19:24, 19:25, 20:1, 20:3, 20:5, 20:7, 20:10, 20:12, 20:14, 20:20, 20:21, 20:23, 21:1, 21:4, 21:8, 21:22, 21:23, 21:24, 21:25, 25:1, 25:3, 25:9, 25:13, 26:1, 26:4, 26:6, 26:7, 26:9, 27:6, 29:18, 29:24, 34:19, 34:23, 34:24, 35:3, 35:15, 35:24, 36:18, 36:19, 36:20, 36:21, 36:24, 41:2, 42:13, 42:21, 43:1, 43:17, 44:11, 44:21, 45:15, 45:23, 46:2, 46:18, 46:22, 47:2, 48:4
**cases** [9] - 16:14, 16:15, 16:19, 17:3, 17:8, 22:4, 26:13, 35:24, 46:5
**categories** [1] - 10:15
**categorized** [1] - 36:11
**category** [3] - 18:23, 36:7
**cavalier** [1] - 19:12
**censored** [1] - 10:11
**certain** [1] - 14:17
**certainly** [5] - 23:22, 27:15, 28:24, 34:11, 47:17
**certification** [8] - 3:10, 3:14, 3:16, 3:18, 17:19, 35:9, 35:10, 43:6
**certify** [1] - 48:18
**cetera** [1] - 10:1
**chains** [1] - 28:25
**chambers** [1] - 42:3
**Chambers** [2] - 42:12, 42:18
**chance** [1] - 8:15
**check** [1] - 22:18
**child** [1] - 38:11
**chose** [1] - 16:23
**claim** [2] - 46:1, 46:3
**claims** [1] - 33:20
**clarity** [4] - 17:10, 17:11, 17:12, 23:24
**clear** [4] - 18:2, 34:22, 35:4,

42:23
**client's** [1] - 14:5
**close** [3] - 18:4, 18:5, 25:13
**collectively** [1] - 16:18
**combination** [1] - 41:3
**communication** [2] - 44:12, 44:14
**communications** [1] - 45:1
**complaining** [1] - 21:17
**complete** [3] - 4:8, 24:18, 37:14
**compliance** [6] - 17:13, 17:19, 17:22, 17:23, 18:9, 43:6
**compliant** [1] - 47:25
**complied** [3] - 43:13, 45:9, 45:10
**comply** [1] - 48:6
**computer** [1] - 32:6
**conceded** [1] - 43:5
**concerned** [1] - 9:15
**concluded** [1] - 48:15
**conduct** [1] - 36:5
**confer** [1] - 40:12
**conference** [1] - 10:23
**conferred** [1] - 34:11
**confers** [1] - 35:21
**confidence** [1] - 48:3
**confidentiality** [2] - 20:2, 37:6
**confirms** [1] - 33:19
**connect** [1] - 23:18
**consequences** [3] - 17:2, 17:3, 36:2
**consider** [1] - 36:5
**consideration** [1] - 33:25
**consistent** [1] - 48:5
**consolidate** [2] - 16:19, 17:2
**contact** [1] - 6:22
**contempt** [7] - 3:3, 16:3, 16:4, 16:7, 16:12, 33:3, 36:4
**context** [8] - 15:14, 15:17, 15:20, 29:4, 29:5, 29:20, 32:13, 46:20
**continue** [1] - 48:10
**conversation** [5] - 6:22, 37:23, 37:25, 44:2, 48:2
**conversations** [8] - 7:21, 8:21, 9:3, 9:9, 19:9, 19:13, 22:21, 37:3
**convey** [2] - 35:12
**conveyed** [1] - 22:19
**coordinate** [2] - 35:25, 36:1
**coordination** [1] - 26:3
**copy** [1] - 42:13
**Cornerstone** [40] - 7:1, 7:8, 9:18, 11:2, 12:3, 13:3, 13:4, 13:13, 13:21, 14:4, 15:10, 18:14, 21:19, 22:16, 23:6,

23:19, 23:24, 23:25, 25:24, 28:12, 28:21, 32:22, 32:25, 36:9, 36:14, 37:12, 37:20, 37:24, 38:2, 38:10, 38:20, 39:1, 39:3, 39:5, 39:7, 39:16, 39:18, 40:5, 41:22, 44:2
**correct** [2] - 9:11, 48:18
**correctly** [2] - 30:25, 43:18
**counsel** [5] - 9:11, 20:4, 20:15, 29:5, 42:13
**count** [1] - 4:20
**counterclaim** [7] - 24:5, 24:6, 24:14, 33:16, 33:20, 33:23, 33:24
**couple** [5] - 22:7, 24:2, 27:6, 36:22, 39:5
**coupled** [1] - 41:7
**course** [3] - 11:10, 24:13, 43:16
**Court** [2] - 3:1, 48:22
**court** [3] - 39:24, 39:25, 40:2
**Cozen** [2] - 10:6, 10:12, 19:19, 19:25
**crossover** [1] - 24:13
**crosstalk** [1] - 30:10
**CRR** [1] - 48:22
**daily** [3] - 42:1, 42:14, 42:17
**Daniel** [1] - 25:2
**Danny** [2] - 10:1, 25:1
**data** [5] - 20:6, 21:7, 23:2, 23:15, 31:16
**database** [2] - 21:13, 36:10
**Date** [1] - 48:23
**date** [1] - 37:25
**Dave** [2] - 31:9, 47:20
**days** [2] - 33:21, 34:4
**deadline** [3] - 33:21, 34:4, 39:1
**deal** [4] - 29:10, 30:1, 39:4
**dealing** [1] - 41:2
**dealt** [6] - 26:4, 27:19, 31:2, 43:16, 45:16, 46:8
**decided** [1] - 6:22
**decision** [3] - 16:19, 17:1, 35:25
**deeming** [1] - 45:11
**defendant** [1] - 33:23
**defendants** [11] - 4:16, 6:22, 7:4, 9:11, 14:1, 15:14, 16:1, 18:11, 21:3, 22:22, 29:24
**defenses** [2] - 24:9, 24:14
**definitely** [1] - 32:9
**definitively** [1] - 43:9
**delay** [2] - 24:11, 41:2
**delays** [1] - 21:2
**dep** [1] - 30:3
**deposition** [14] - 8:22, 15:15, 15:16, 19:11, 26:22, 26:23, 27:5, 29:23, 30:5, 39:13, 39:23, 39:25, 40:6, 40:7

**depositions** [5] - 8:14, 15:12, 18:7, 26:21, 27:7
**deps** [1] - 30:4
**designated** [1] - 37:5
**devices** [1] - 46:23
**dicing** [1] - 37:20
**different** [5] - 9:1, 28:7, 46:5, 46:6
**difficulties** [1] - 21:9
**direct** [1] - 11:5
**disagree** [1] - 4:16
**disconnect** [1] - 39:7
**discoverable** [1] - 7:12
**discovery** [45] - 4:3, 5:20, 11:11, 13:1, 14:19, 14:22, 14:25, 15:3, 16:6, 17:4, 17:6, 18:4, 20:11, 20:19, 21:3, 22:22, 24:19, 25:11, 25:12, 25:15, 26:6, 26:11, 26:12, 26:16, 27:1, 28:23, 33:22, 34:3, 34:5, 34:19, 34:23, 35:1, 35:14, 35:21, 41:2, 41:4, 43:17, 44:10, 44:20, 46:5, 46:6, 46:18, 47:25
**discuss** [2] - 15:16, 16:2
**discussed** [2] - 40:14, 47:21
**discussion** [1] - 18:13
**dispositive** [1] - 33:25
**dispute** [1] - 34:8
**docket** [3] - 3:17, 40:23, 43:24
**doctors** [1] - 44:15
**document** [15] - 3:13, 3:14, 4:20, 4:25, 5:14, 6:12, 6:13, 8:18, 11:12, 11:20, 12:10, 13:5, 33:17, 33:18
**documentary** [1] - 27:20
**documents** [44] - 4:15, 4:21, 6:7, 6:9, 6:14, 6:24, 7:1, 7:2, 7:19, 8:8, 9:19, 9:22, 9:23, 10:16, 10:19, 12:2, 18:6, 18:17, 18:21, 19:2, 20:5, 20:17, 21:23, 21:24, 22:1, 24:16, 25:7, 25:16, 30:21, 31:15, 31:17, 32:19, 32:21, 33:19, 33:23, 34:7, 35:3, 35:14, 36:16, 36:17, 38:17, 38:18, 38:22, 40:15
**done** [21] - 3:20, 11:2, 11:4, 11:6, 18:2, 22:11, 23:8, 23:17, 31:4, 35:17, 36:23, 37:17, 37:25, 38:13, 38:25, 40:20, 40:21, 40:24, 43:1, 48:4
**door** [1] - 18:6
**double** [1] - 22:17
**doubt** [1] - 17:14
**down** [9] - 7:3, 9:17, 10:14, 18:23, 22:25, 23:5, 23:10, 35:16, 36:10

**download** [1] - 22:25
**drill** [1] - 10:14
**Dropbox** [2] - 32:20, 32:21
**during** [5] - 8:21, 8:22, 9:3, 15:12, 15:14
**e-discovery** [4] - 14:19, 35:1, 43:17, 44:20
**East** [2] - 8:19, 25:2
**easy** [3] - 6:21, 21:12, 29:12
**ECF** [1] - 3:3
**effect** [1] - 5:22
**efficiency** [1] - 24:21
**efficient** [1] - 15:1
**effort** [5] - 22:20, 35:13, 35:15, 36:16, 38:1
**either** [4] - 11:17, 22:17, 28:17, 38:9
**email** [13] - 11:16, 12:21, 13:21, 13:22, 32:20, 38:6, 38:8, 42:2, 42:12, 43:15, 46:19, 46:24
**emails** [6] - 5:22, 15:22, 36:25, 42:18, 47:20, 47:23
**employee** [1] - 9:6
**employment** [1] - 20:21
**en** [1] - 13:17
**encountered** [1] - 38:2
**end** [10] - 25:15, 34:5, 36:15, 37:16, 37:17, 37:19, 38:5, 39:16, 40:6, 45:15
**engaged** [1] - 21:3
**enter** [1] - 20:16
**entered** [1] - 20:3
**entire** [4] - 38:7, 44:24, 45:7, 45:24
**entitled** [1] - 48:19
**equal** [2] - 13:7, 13:8
**equitable** [1] - 36:4
**ESI** [3] - 25:12, 26:17, 48:5
**et** [1] - 10:1
**evaluation** [1] - 16:21
**evidence** [5] - 19:14, 19:16, 19:17, 44:11
**exact** [1] - 31:1
**exactly** [2] - 17:11, 34:24
**example** [3] - 22:24, 31:24, 40:17
**examples** [1] - 40:11
**excuse** [1] - 30:9
**exemplars** [1] - 10:21
**exhibits** [2] - 3:5, 31:25
**exist** [1] - 18:20
**existing** [1] - 17:4
**exists** [1] - 10:5
**expect** [3] - 11:11, 22:1, 48:6
**expected** [1] - 35:13
**expert** [1] - 21:13
**explain** [5] - 14:2, 28:4, 32:17, 46:16, 46:17

**explanation** [3] - 31:18, 32:23, 40:18
**extensions** [1] - 36:13
**extent** [5] - 4:24, 5:11, 37:17, 41:25, 43:21
**extraordinarily** [1] - 26:11
**eyes** [2] - 21:20, 37:6
**face** [1] - 25:6
**facile** [1] - 41:7
**facilitate** [2] - 18:15, 29:20
**fact** [4] - 16:25, 33:22, 34:5, 35:19
**factor** [1] - 22:16
**factual** [1] - 22:5
**fair** [1] - 44:16
**fairly** [1] - 35:13
**fall** [1] - 37:9
**familiar** [1] - 3:6
**family** [6] - 7:16, 9:24, 13:11, 13:14, 38:8, 44:16
**far** [6] - 6:13, 6:20, 15:15, 29:24, 30:5, 40:25
**fast** [1] - 39:1
**faster** [1] - 26:13
**feasible** [1] - 23:1
**fee** [3] - 41:14, 41:15, 43:12
**fees** [2] - 41:11, 41:19
**few** [1] - 19:9
**figure** [3] - 13:13, 20:24, 23:25
**file** [14] - 6:25, 8:18, 12:17, 13:20, 16:23, 16:24, 17:19, 35:10, 36:11, 36:12, 42:20, 42:22, 43:5, 45:18
**filed** [5] - 3:3, 3:10, 3:18, 16:4, 40:23
**files** [31] - 6:15, 9:16, 9:18, 9:21, 10:25, 12:14, 13:5, 13:9, 13:14, 13:17, 17:17, 20:5, 21:8, 27:18, 27:24, 27:25, 36:8, 36:9, 36:12, 36:24, 36:25, 37:1, 41:22, 41:23, 42:1, 42:7, 42:14, 42:16, 43:8
**filing** [1] - 33:2
**fine** [2] - 15:1, 37:6
**Fink** [1] - 27:6
**first** [7] - 14:11, 14:12, 16:10, 23:4, 24:7, 24:22, 37:10
**five** [2] - 5:14, 44:13
**fix** [1] - 28:22
**flesh** [1] - 24:9
**flexibility** [2] - 39:24, 40:2
**floating** [1] - 22:9
**focus** [1] - 24:6
**follow** [1] - 25:10
**following** [2] - 18:25, 41:7
**foregoing** [1] - 48:18
**forensically** [2] - 11:13, 48:4

**form** [1] - 20:19
**format** [1] - 11:20
**forth** [3] - 33:6, 39:10, 47:21
**Forum** [6] - 7:20, 8:19, 8:21, 24:4, 25:2, 25:10
**Forum's** [1] - 35:20
**forward** [6] - 17:9, 26:9, 26:25, 27:3, 27:5, 43:25
**four** [1] - 29:11
**Friday** [1] - 41:14
**friends** [1] - 44:16
**front** [8] - 3:7, 5:16, 17:6, 32:6, 32:11, 33:11, 34:8, 34:10
**fulfill** [4] - 13:1, 14:22, 14:25, 46:18
**fulfilled** [1] - 15:4
**fulfilling** [3] - 15:5, 34:23, 41:4
**function** [2] - 21:2, 41:3
**gaps** [1] - 27:17
**generate** [1] - 38:20
**generating** [1] - 13:4
**given** [3] - 7:4, 27:23, 37:11
**GOLD** [3] - 20:2, 21:5, 21:7
**Gold** [6] - 10:4, 10:6, 10:10, 11:8, 17:1, 19:12, 19:23, 29:5, 30:6
**governed** [1] - 25:25
**grasping** [1] - 41:4
**Greg** [1] - 19:21
**guess** [11] - 3:20, 5:19, 5:23, 8:2, 13:10, 13:24, 17:16, 18:9, 31:9, 38:13, 47:12
**guys** [3] - 7:15, 16:18, 30:13, 32:16, 34:11, 37:23, 39:4, 39:7
**half** [1] - 40:7
**hand** [3] - 27:11, 27:13, 28:4
**handled** [1] - 43:18
**hang** [1] - 39:6
**hard** [2] - 24:15, 39:1
**hash** [1] - 34:20, 38:21
**hear** [4] - 26:24, 30:12, 39:8, 46:3
**heard** [5] - 7:5, 8:18, 26:19, 30:12, 36:7
**hearing** [9] - 4:13, 23:4, 35:12, 39:22, 41:20, 47:12, 47:13, 47:16
**heavily** [1] - 31:18
**heavy** [1] - 43:17
**held** [4] - 7:6, 13:11, 13:17, 13:22
**help** [1] - 29:10
**herculean** [2] - 35:13, 35:16
**hesitant** [1] - 25:18
**history** [2] - 3:6, 22:25
**hit** [9] - 28:9, 28:11, 29:4,

29:17, 29:21, 37:3, 37:7, 37:11, 44:12
**hits** [1] - 45:2
**hold** [2] - 30:13, 44:1
**hone** [1] - 27:15
**honest** [1] - 3:25
**Honor** [33] - 4:11, 5:4, 7:16, 8:13, 9:13, 9:17, 10:12, 11:5, 12:8, 12:23, 15:9, 16:13, 18:10, 18:25, 20:3, 21:7, 23:19, 24:10, 24:25, 25:20, 26:24, 27:25, 28:3, 29:10, 31:1, 32:1, 32:17, 33:13, 34:14, 39:12, 42:19, 44:5, 46:21
**hopefully** [1] - 42:6
**hoping** [1] - 48:9
**hour** [1] - 40:7
**hours** [1] - 29:20
**huge** [1] - 39:21
**hundred** [1] - 4:14
**hundreds** [4] - 6:19, 7:1, 22:1, 29:15
**hurry** [1] - 35:22
**husband** [1] - 44:15
**hyperbole** [1] - 16:11
**idea** [3] - 11:25, 12:23, 14:15
**identified** [3] - 10:18, 21:19, 38:12
**identify** [4] - 29:17, 37:10, 38:16, 40:16
**ignored** [1] - 35:8
**imaged** [1] - 46:25
**images** [4] - 6:25, 7:4, 7:5, 7:10
**implications** [1] - 35:5
**include** [1] - 4:24
**includes** [3] - 6:15, 6:16
**including** [8] - 6:24, 31:16, 41:5, 44:15, 44:16
**incurred** [1] - 41:12
**independently** [2] - 17:4, 18:21
**indicate** [2] - 4:14, 11:18
**indicated** [1] - 34:21
**indicates** [2] - 12:18, 28:19
**information** [20] - 14:9, 14:11, 15:10, 15:18, 20:10, 20:15, 20:21, 27:20, 28:15, 28:24, 32:23, 33:5, 37:21, 38:1, 38:21, 38:24, 42:11, 42:15, 47:1, 47:22
**Instagram** [1] - 31:17
**instance** [2] - 37:10, 44:25
**instead** [2] - 16:3, 33:2
**interactions** [1] - 21:10
**interested** [7] - 14:23, 16:5, 16:15, 17:7, 17:8, 36:18, 39:22
**interplay** [3] - 35:2, 35:23,

35:24
**interrogatories** [1] - 5:13
**interrogatory** [3] - 5:13, 5:17, 33:17
**intrusion** [1] - 45:22
**intrusive** [1] - 46:17
**involved** [1] - 10:6
**issue** [16] - 4:7, 5:6, 5:9, 5:12, 5:16, 5:25, 7:7, 22:10, 23:6, 23:11, 25:9, 25:17, 30:16, 34:12, 40:9, 40:10
**issued** [2] - 8:7, 8:14
**issues** [10] - 4:8, 4:10, 22:5, 22:9, 24:13, 25:18, 44:22, 45:20, 45:25
**J-U-N-T-O** [1] - 12:9
**January** [2] - 5:9, 16:20
**Judge** [7] - 11:6, 21:18, 25:25, 26:3, 29:2, 29:8, 46:1
**judges** [1] - 36:1
**judicata** [2] - 45:25, 46:4
**July** [2] - 25:14, 25:22
**June** [2] - 25:14, 25:22
**Junto** [3] - 12:8, 20:6, 20:11
**keep** [1] - 39:18
**keywords** [1] - 47:1
**kind** [4] - 14:18, 26:12, 35:16, 36:12
**last** [11] - 4:13, 16:16, 22:22, 30:2, 35:12, 40:25, 41:9, 41:21, 44:13, 47:12, 47:16
**late** [2] - 5:21, 26:10
**latest** [1] - 36:15
**lay** [2] - 43:23, 45:19
**lays** [1] - 43:20
**lead** [3] - 36:3, 42:9, 44:10
**least** [4] - 17:22, 32:11, 39:15, 44:2
**left** [2] - 8:3, 41:24
**legal** [2] - 22:5, 34:2
**letter** [2] - 23:19, 40:24
**leverage** [1] - 29:6
**leveraging** [1] - 14:24
**life** [2] - 44:13, 45:22
**Light** [1] - 12:12
**likely** [1] - 19:14
**limited** [3] - 20:8, 20:9, 30:22
**limits** [1] - 20:20
**link** [2] - 32:22, 32:25
**Lisa** [1] - 22:15
**live** [1] - 34:8
**load** [2] - 28:18, 43:18
**log** [6] - 12:4, 30:22, 31:3, 40:11, 40:19, 45:4
**logged** [3] - 14:16, 44:22, 45:1
**look** [16] - 3:9, 5:2, 5:4, 7:6, 8:5, 8:15, 12:1, 21:1, 25:8, 32:5, 41:15, 43:25, 46:14,

47:16, 48:1, 48:8
**looked** [7] - 7:9, 7:13, 14:16,
14:17, 14:18, 17:14, 28:22
**looking** [3] - 8:17, 28:25,
32:14
**lost** [1] - 21:18
**loved** [1] - 10:2
**luck** [3] - 17:23, 42:24, 42:25
**maintain** [2] - 11:11, 37:14
**maintained** [1] - 38:12
**maintains** [1] - 12:18
**managing** [1] - 34:3
**Marie** [1] - 48:22
**mark** [1] - 16:23
**Marty** [1] - 9:6
**masse** [1] - 13:18
**match** [1] - 38:16
**material** [3] - 9:14, 24:8,
27:23
**materials** [8] - 10:11, 10:13,
14:5, 24:4, 25:23, 30:19,
37:18, 43:10
**matter** [2] - 6:5, 48:19
**matters** [1] - 3:8
**McNulty's** [1] - 26:22
**MD5** [1] - 38:21
**me..** [1] - 31:14
**mean** [49] - 4:20, 5:2, 5:6,
5:7, 5:11, 5:23, 6:1, 6:18,
6:20, 6:21, 7:10, 7:15, 7:25,
8:7, 8:24, 9:11, 11:10, 11:15,
11:19, 13:10, 14:8, 14:14,
14:15, 15:25, 17:16, 20:22,
21:13, 21:21, 22:9, 23:3,
23:11, 24:11, 24:24, 25:5,
26:10, 27:8, 27:18, 27:21,
32:5, 33:2, 39:20, 39:23,
44:9, 45:21, 45:25, 46:7,
47:11, 48:9
**meaningful** [1] - 5:5, 22:21
**means** [2] - 21:13, 38:8
**media** [24] - 6:15, 9:16, 9:18,
9:21, 13:9, 13:14, 13:17,
13:20, 22:24, 27:18, 27:24,
27:25, 36:8, 36:9, 36:24,
37:1, 41:22, 42:1, 42:7, 43:7,
43:8, 46:24
**meet** [2] - 35:21, 40:12
**MEF** [2] - 9:4, 9:25
**MEF's** [1] - 29:5
**members** [1] - 27:6
**memory** [1] - 19:21
**mentioned** [1] - 30:16
**mess** [1] - 35:20
**message** [3] - 15:13, 28:18,
28:25
**messages** [15] - 15:17,
15:21, 22:12, 22:15, 23:12,
23:14, 28:1, 28:5, 28:14,
28:18, 28:23, 29:13, 30:7,

32:11, 37:2
**met** [1] - 34:11
**metadata** [9] - 11:18, 12:13,
12:17, 28:19, 37:13, 38:11,
38:15, 38:21, 46:19
**methodology** [2] - 15:8,
17:12
**Meyer** [1] - 9:6
**Middle** [2] - 8:19, 25:2
**might** [1] - 5:25
**minute** [1] - 24:6
**Mitchell** [1] - 48:22
**moment** [1] - 9:16
**Monday** [3] - 36:15, 37:16,
37:18, 37:19, 38:5, 38:25,
39:2, 39:9, 39:17, 40:13,
40:21, 40:22, 42:4
**months** [8] - 5:14, 21:9,
21:21, 25:9, 25:10, 26:10
**morning** [1] - 3:2
**most** [5] - 26:18, 26:20,
27:13, 39:4
**mostly** [1] - 19:2, 19:6
**motion** [20] - 3:3, 3:5, 4:6,
5:17, 7:19, 7:20, 10:22, 16:3,
30:16, 30:23, 32:1, 32:2,
32:3, 33:2, 34:10, 41:12,
41:19, 42:20, 42:23, 45:18
**motions** [3] - 16:4, 16:7,
33:25
**move** [8] - 17:1, 20:25, 26:9,
26:13, 27:2, 27:4, 47:18,
48:7
**moving** [4] - 17:8, 26:24,
27:6, 39:10
**MR** [123] - 3:12, 3:18, 3:20,
3:23, 3:25, 4:4, 4:10, 5:2,
5:11, 5:19, 5:25, 6:3, 6:9,
6:13, 6:18, 7:8, 7:15, 7:25,
8:4, 8:10, 8:13, 8:23, 9:5,
9:10, 9:17, 10:8, 10:9, 10:21,
11:4, 11:15, 11:22, 11:24,
12:3, 12:6, 12:8, 12:12,
12:15, 12:23, 13:2, 13:6,
13:10, 13:16, 13:19, 13:24,
14:6, 14:10, 14:15, 15:9,
16:13, 16:17, 17:25, 18:9,
18:25, 19:6, 19:11, 19:17,
20:2, 21:5, 21:7, 22:6, 22:14,
22:21, 23:3, 23:18, 23:22,
24:10, 24:25, 25:19, 25:22,
26:18, 27:25, 28:2, 28:3,
28:7, 28:9, 29:2, 29:10, 30:2,
30:4, 30:6, 30:8, 30:9, 30:20,
31:1, 31:7, 31:12, 31:13,
31:20, 31:25, 32:4, 32:5,
32:9, 32:14, 32:17, 32:25,
33:1, 33:2, 33:8, 33:13,
33:16, 34:4, 34:14, 39:12,
39:18, 39:20, 42:10, 42:19,

42:25, 43:11, 44:5, 44:7,
44:23, 45:7, 45:12, 45:18,
46:21, 47:4, 47:5, 47:7, 47:8,
47:11, 47:20, 48:12
**multimedia** [1] - 24:12
**mute** [1] - 33:10
**named** [1] - 9:6
**necessary** [1] - 37:14
**need** [23] - 5:23, 6:8, 12:25,
14:3, 14:13, 14:14, 15:4,
18:1, 18:12, 20:21, 24:4,
26:9, 27:2, 27:12, 28:14,
28:22, 30:12, 32:16, 36:17,
40:12, 42:1, 43:16, 48:10
**needed** [2] - 26:3, 29:4
**needs** [12] - 18:4, 18:5,
20:18, 21:25, 23:16, 25:13,
27:19, 37:5, 38:8, 38:20,
38:22, 40:19
**never** [3] - 8:17, 13:25, 16:2
**new** [5] - 25:12, 27:12, 31:8,
31:10, 38:16
**next** [1] - 41:14
**none** [1] - 20:12
**nonresponsive** [1] - 6:8
**normal** [1] - 34:24
**nothing** [5] - 7:16, 8:1,
17:17, 28:10
**November** [12] - 5:8, 8:9,
17:21, 30:23, 31:6, 31:8,
31:9, 31:16, 32:22, 32:24,
40:16, 48:23
**Number** [1] - 3:3
**number** [7] - 3:7, 9:19, 9:22,
9:23, 10:2, 31:23, 36:9
**numbered** [1] - 4:22
**numerous** [1] - 10:22
**objecting** [1] - 44:23
**objection** [1] - 45:10
**objections** [10] - 4:12, 4:24,
5:1, 5:3, 5:10, 6:4, 6:6, 6:10,
44:21, 45:5
**obligation** [2] - 46:11, 48:5
**obligations** [13] - 13:1,
14:22, 14:25, 15:3, 17:5,
17:7, 34:23, 41:5, 45:9,
45:11, 46:18, 47:25
**obviously** [1] - 3:6
**October** [5] - 17:20, 35:8,
41:8, 43:7
**offered** [1] - 29:10
**Official** [1] - 48:22
**old** [1] - 38:17
**once** [2] - 41:21, 41:24
**one** [23] - 3:21, 4:12, 4:19,
6:23, 7:9, 8:17, 9:19, 9:22,
13:2, 15:9, 15:13, 17:2,
19:13, 22:9, 26:15, 26:25,
27:11, 30:14, 33:13, 34:12,
36:3, 39:13, 46:23

**ones** [4] - 5:4, 8:24, 13:14,
29:18
**opinion** [1] - 34:3
**opportunity** [1] - 18:11
**option** [1] - 30:1
**order** [36] - 3:1, 3:22, 5:8,
8:7, 8:14, 11:7, 11:13, 17:13,
20:2, 20:4, 25:24, 27:9,
28:14, 29:3, 29:9, 33:24,
35:8, 35:12, 39:24, 40:1,
40:3, 41:8, 41:11, 41:25,
43:6, 43:13, 43:19, 43:22,
43:24, 46:13, 46:20, 47:14,
47:19, 48:6, 48:11
**ordered** [7] - 3:10, 17:19,
17:20, 31:3, 44:7, 46:1,
47:15
**ordering** [3] - 43:12, 45:16,
45:21
**orders** [1] - 36:23
**ordinarily** [1] - 43:17
**ordinary** [1] - 11:10
**originates** [1] - 29:8
**otherwise** [1] - 27:22
**outset** [1] - 41:1
**outstanding** [2] - 36:8, 46:11
**overlap** [2] - 16:22, 38:22
**overly** [1] - 44:9
**overruled** [2] - 14:6, 14:8
**overruling** [1] - 45:13
**oversight** [2] - 3:25, 4:1
**overtaken** [1] - 36:22
**own** [1] - 27:15
**p.m** [1] - 48:15
**pacing** [1] - 35:21
**page** [1] - 23:23
**pages** [2] - 29:15, 32:4
**parallel** [2] - 17:4, 36:2
**parent** [1] - 38:11
**parent-child** [1] - 38:11
**part** [6] - 10:10, 15:21, 15:22,
20:24, 29:2, 29:3
**participate** [1] - 37:24
**parties** [4] - 5:12, 5:20, 22:6,
46:22
**pass** [1] - 21:6
**password** [1] - 20:17
**paths** [1] - 46:6
**patience** [1] - 21:18
**pay** [2] - 41:11, 42:20
**paying** [1] - 42:22
**PDFs** [1] - 11:23
**people** [1] - 19:21
**per** [3] - 4:13, 5:8, 41:25
**percent** [1] - 14:17
**perhaps** [1] - 24:22
**personal** [1] - 29:14, 45:22
**perspective** [2] - 4:6, 4:8
**persuaded** [1] - 48:9

**petition** [2] - 41:14, 41:15
**ph** [1] - 25:1
**phone** [4] - 10:22, 14:1, 18:3, 23:25
**photos** [5] - 7:16, 9:24, 13:11, 13:14, 18:18
**picture** [2] - 6:19, 8:17
**pictures** [7] - 6:16, 6:19, 7:19, 9:23, 13:10, 18:18, 36:11
**Pipe** [1] - 25:2
**pipes** [1] - 27:5
**place** [7] - 15:15, 18:7, 29:24, 33:7, 39:25, 44:20, 48:11
**plaintiff** [1] - 33:22
**planning** [1] - 27:4
**platform** [7] - 20:6, 20:11, 20:16, 21:12, 22:2, 28:19, 35:2
**plus** [1] - 45:25
**point** [7] - 6:12, 16:8, 21:17, 24:3, 45:8, 45:15
**pointed** [1] - 16:25
**portion** [1] - 20:12
**position** [2] - 34:10, 35:10
**possession** [1] - 25:23
**possible** [4] - 17:16, 38:3, 39:1, 42:20
**posted** [1] - 39:19
**potentially** [2] - 9:22, 23:13
**practice** [1] - 28:23
**practices** [1] - 46:9
**preclusion** [2] - 46:1, 46:4
**prepare** [1] - 41:12
**prepared** [1] - 34:12
**preparing** [1] - 41:19
**pretty** [3] - 18:2, 30:22, 39:6
**primary** [1] - 4:7
**private** [4] - 28:23, 29:14, 45:22, 46:24
**privilege** [2] - 44:22, 45:4
**problem** [5] - 15:22, 17:18, 26:2, 26:8, 29:11
**problems** [3] - 25:6, 25:16, 38:2
**procedural** [1] - 3:6
**procedures** [1] - 46:9
**proceed** [2] - 36:2, 48:10
**Proceedings** [1] - 48:15
**proceedings** [1] - 48:19
**process** [10] - 26:10, 26:16, 28:14, 28:17, 34:19, 35:1, 38:25, 39:10, 44:19, 44:20
**produce** [13] - 8:8, 12:17, 16:6, 28:13, 29:3, 29:19, 31:21, 33:18, 45:3, 46:20, 46:25, 47:21
**produced** [43] - 4:21, 6:14,

6:17, 6:24, 7:12, 11:17, 11:18, 13:3, 15:6, 15:7, 15:10, 17:11, 17:15, 19:24, 20:23, 30:7, 30:17, 31:16, 31:19, 35:14, 36:19, 37:1, 37:4, 37:7, 37:13, 37:19, 38:7, 38:8, 40:16, 41:25, 42:1, 42:8, 42:19, 42:21, 42:24, 43:10, 44:8, 45:17, 45:20, 46:2, 46:21, 48:3
**produces** [1] - 32:19
**producing** [3] - 11:19, 11:23, 13:2
**production** [11] - 6:12, 11:13, 12:21, 14:4, 14:24, 29:6, 29:20, 30:18, 30:23, 36:18, 38:16
**program** [1] - 12:4
**programs** [1] - 21:14
**progress** [3] - 37:18, 42:2, 42:15
**proportional** [1] - 44:11
**proposing** [1] - 26:25
**prove** [1] - 24:5
**provide** [2] - 31:3, 34:12
**provided** [5] - 3:13, 6:21, 20:14, 27:18, 30:21
**pull** [2] - 22:25, 23:5
**pulled** [3] - 10:11, 23:9, 31:16
**purposes** [1] - 37:6
**pursuant** [2] - 11:6, 39:25
**pursuing** [1] - 21:3
**push** [1] - 38:10
**pushed** [2] - 35:4, 38:19
**pushing** [1] - 37:21
**put** [8] - 5:3, 6:4, 10:21, 15:12, 23:15, 26:6, 29:25, 41:14
**questions** [4] - 14:14, 22:8, 24:2, 43:21
**quick** [1] - 4:10
**quickly** [6] - 25:19, 32:18, 46:8, 46:10, 46:14, 48:8
**raised** [2] - 30:2, 30:5
**RDR** [1] - 48:22
**reach** [3] - 39:7, 39:15, 39:18
**read** [1] - 3:5
**readily** [1] - 20:15
**reading** [1] - 30:25
**ready** [2] - 26:22, 33:12
**real** [1] - 25:19
**really** [11] - 6:5, 24:9, 27:24, 29:14, 32:13, 35:16, 41:4, 43:2, 46:12, 46:15, 48:3
**reason** [6] - 10:5, 19:22, 21:9, 22:23, 23:1, 46:15
**reasoning** [1] - 43:23
**received** [5] - 4:14, 4:16, 5:13, 10:13, 13:25

**recent** [1] - 30:18
**recess** [4] - 30:14, 33:9, 34:15, 34:17
**recollection** [2] - 47:15, 47:17
**recommend** [3] - 39:6, 43:22, 44:1
**reconsideration** [6] - 45:19, 46:7, 46:10, 46:14, 47:18, 48:7
**record** [10] - 4:21, 10:2, 15:9, 20:4, 20:16, 29:23, 43:5, 43:21, 44:23, 48:19
**recorded** [5] - 7:21, 8:21, 9:3, 19:8, 19:10
**recording** [2] - 9:5, 9:7
**recordings** [8] - 6:16, 8:24, 9:8, 10:2, 19:2, 19:4, 19:8, 19:18
**recoverable** [1] - 27:22
**redact** [1] - 31:22
**redacted** [5] - 30:19, 31:7, 31:18, 32:10, 40:11
**redacting** [1] - 32:7
**redaction** [3] - 30:22, 31:3, 40:10
**redactions** [11] - 30:17, 30:21, 30:24, 31:2, 31:10, 32:9, 32:12, 32:15, 40:15, 40:19, 40:20
**refer** [1] - 43:20
**referenced** [1] - 47:11
**regard** [1] - 20:18
**regarding** [1] - 36:9
**regardless** [1] - 45:9
**regular** [1] - 19:9
**related** [4] - 16:24, 20:12, 20:20, 21:23
**relates** [2] - 8:18, 24:12
**relating** [1] - 24:14
**relationship** [6] - 10:1, 11:12, 11:18, 22:4, 28:20, 38:12
**relationships** [1] - 12:18
**relatively** [2] - 21:12, 28:16
**Relativity** [2] - 11:21, 12:12
**relevance** [1] - 45:23
**relevant** [5] - 9:22, 9:24, 15:20, 29:16, 46:22
**remaining** [1] - 8:8
**remedy** [2] - 35:18, 36:4
**reminded** [1] - 30:14
**report** [14] - 36:9, 36:14, 36:15, 36:16, 37:15, 38:20, 38:22, 38:24, 40:13, 40:22, 40:23, 41:22, 42:4, 43:25
**Reporter** [1] - 48:22
**representations** [2] - 7:18, 7:20
**representing** [1] - 14:1

**reproduce** [1] - 38:14
**reproducing** [1] - 31:5
**reproduction** [1] - 38:19
**request** [1] - 4:25
**requests** [9] - 3:13, 3:14, 4:19, 5:8, 5:14, 25:11, 33:17, 33:18
**require** [3] - 38:15, 39:4, 46:9
**required** [1] - 35:9
**requirements** [1] - 3:21
**requires** [1] - 27:9
**res** [2] - 45:25, 46:4
**reset** [2] - 21:4, 25:12
**respect** [3] - 19:7, 37:2, 38:6
**respond** [2] - 25:19, 34:6, 41:15, 41:18
**responded** [1] - 5:7
**responding** [1] - 16:7
**response** [1] - 4:19
**responses** [11] - 3:13, 4:3, 4:7, 4:9, 4:10, 4:14, 4:25, 5:13, 5:18, 5:21, 46:9
**responsibility** [1] - 34:21
**responsive** [5] - 6:17, 8:8, 17:17, 37:5, 43:10
**rest** [3] - 36:23, 39:13, 40:4
**resume** [1] - 33:12
**retrievable** [1] - 38:4
**retrieve** [3] - 22:12, 22:14, 22:17
**review** [10] - 8:3, 11:20, 12:10, 23:16, 33:23, 35:4, 41:24, 42:9, 44:19
**reviewed** [9] - 6:16, 6:18, 7:24, 36:17, 36:20, 42:14, 42:16, 43:7
**reviewing** [1] - 42:17
**revisit** [1] - 47:15
**ripe** [1] - 34:12
**RMR** [1] - 48:22
**Robinson** [2] - 10:1, 25:1
**Robinson/Danny** [1] - 24:13
**role** [1] - 19:23
**Roman** [3] - 9:9, 19:21, 27:5
**rule** [2] - 46:8, 46:14
**Rule** [1] - 16:21
**run** [2] - 27:15, 46:11
**running** [1] - 17:4
**Sanchez** [3] - 21:18, 25:25, 46:1
**Sanchez's** [4] - 11:7, 26:3, 29:2, 29:9
**scopes** [1] - 46:5
**scrape** [2] - 23:2, 23:15
**screens** [1] - 33:11
**screenshots** [1] - 23:12
**search** [18] - 20:8, 20:9, 20:14, 20:17, 21:1, 21:15,

22:3, 24:19, 24:22, 24:25, 25:2, 25:4, 25:7, 25:13, 25:14, 26:17, 26:19, 27:12
**searches** [1] - 27:15
**second** [3] - 16:11, 18:23, 38:13
**secret** [18] - 10:6, 10:10, 11:7, 14:24, 14:25, 19:19, 19:24, 19:25, 20:5, 20:7, 20:10, 21:8, 21:24, 26:7, 35:3, 35:24, 36:19, 36:20
**see** [13] - 12:19, 15:19, 23:6, 28:20, 29:21, 32:2, 32:11, 32:12, 36:12, 37:18, 40:17, 42:1, 48:8
**seek** [3] - 16:19, 46:7, 46:13
**seem** [5] - 34:25, 35:1, 44:19, 44:20
**segregating** [1] - 10:25
**send** [3] - 32:20, 40:1, 42:18
**sending** [1] - 32:12
**sense** [5] - 4:6, 9:18, 20:20, 27:1, 44:17
**sensitivity** [1] - 7:7
**sent** [8] - 3:14, 5:14, 5:15, 19:5, 44:8, 44:12, 44:14, 46:22
**sentence** [1] - 15:13
**separated** [2] - 12:20, 13:21
**separately** [1] - 16:23
**separating** [1] - 11:14
**served** [4] - 4:3, 5:8, 33:16, 33:17
**set** [3] - 16:10, 27:5, 39:8
**Seth** [2] - 29:6, 32:24
**several** [1] - 4:14
**shape** [1] - 20:19
**show** [3] - 4:21, 47:9, 47:25
**shows** [2] - 19:14, 40:1
**significant** [1] - 35:7
**simple** [1] - 18:13
**single** [10] - 4:19, 6:13, 6:20, 7:9, 14:1, 15:14, 16:24, 44:12, 46:21, 46:23
**sit** [2] - 24:3, 43:9
**six** [1] - 5:14
**Slack** [1] - 23:2
**slicing** [1] - 37:20
**snippets** [1] - 15:11
**snippy** [1] - 43:3
**so..** [1] - 14:7
**social** [2] - 22:24, 46:24
**solution** [1] - 29:12
**solutions** [1] - 38:3
**someone** [1] - 43:22
**somewhat** [1] - 35:19
**sorry** [5] - 3:18, 11:5, 24:10, 33:8, 39:16
**sort** [6] - 11:11, 11:20, 18:11, 18:20, 28:14, 44:12

**sound** [5] - 11:13, 27:20, 27:23, 44:20, 48:4
**sounds** [2] - 13:21, 17:13
**specific** [1] - 39:25
**spend** [1] - 40:4
**spent** [1] - 42:17
**spoken** [2] - 15:19, 29:21
**square** [3] - 26:15, 26:16, 26:25
**stamp** [1] - 31:23
**stand** [5] - 6:12, 18:8, 34:15, 44:3, 48:13
**standalone** [4] - 18:21, 19:2, 19:4, 36:24
**standing** [5] - 4:25, 5:10, 5:24, 6:5, 6:7
**stands** [5] - 46:13, 47:14, 47:19, 48:6, 48:9
**start** [6] - 3:9, 9:2, 10:16, 10:17, 27:1, 44:2
**started** [1] - 26:21
**starting** [1] - 25:12
**static** [1] - 36:11
**stating** [1] - 21:22
**status** [3] - 37:16, 40:22, 40:23
**still** [4] - 4:8, 4:12, 9:15, 18:12, 24:16, 36:17, 42:1, 46:11
**storage** [1] - 46:24
**straightforward** [1] - 28:17
**string** [1] - 28:5
**strongly** [1] - 39:6
**stuff** [19] - 6:23, 8:16, 9:25, 10:4, 11:23, 18:12, 19:3, 19:19, 27:15, 27:21, 29:14, 31:3, 31:5, 31:8, 31:19, 37:4, 37:5, 46:2, 46:20
**substitute** [1] - 21:25
**suggest** [1] - 5:12
**suggested** [1] - 41:6
**suggesting** [2] - 18:12, 18:20
**supplemental** [1] - 20:23
**support** [1] - 33:24
**supports** [1] - 33:19
**supposed** [5] - 8:6, 8:8, 8:11, 16:6, 17:21
**suspect** [1] - 24:18
**tag** [1] - 12:21
**tagged** [1] - 12:22
**Tahoe** [1] - 25:1
**technical** [1] - 35:5
**technically** [1] - 41:6
**Telegram** [7] - 22:10, 22:12, 23:2, 23:4, 27:21, 37:23, 38:1
**tempered** [1] - 35:19
**ten** [1] - 26:10

**tension** [1] - 27:10
**terms** [26] - 20:8, 20:9, 20:14, 21:1, 21:3, 21:15, 22:3, 22:5, 24:20, 24:21, 24:23, 25:1, 25:2, 25:4, 25:7, 25:13, 25:14, 26:16, 26:17, 26:19, 27:7, 27:12, 35:18, 35:20, 36:11, 37:20
**testified** [1] - 8:25
**testify** [2] - 8:20, 9:3
**testimony** [4] - 9:5, 9:8, 19:7, 19:20
**text** [20] - 15:12, 15:17, 28:1, 28:5, 28:13, 28:17, 28:18, 28:22, 28:25, 29:13, 30:7, 32:11, 37:2, 37:3, 37:7, 37:14, 44:7, 44:8, 46:19, 46:21
**Thanksgiving** [1] - 41:16
**The Court** [104] - 3:2, 3:16, 3:19, 3:21, 3:24, 4:2, 4:5, 4:20, 5:6, 5:16, 5:23, 6:2, 6:4, 6:11, 6:15, 7:3, 7:13, 7:18, 8:3, 8:6, 8:11, 8:20, 9:1, 9:8, 9:14, 10:14, 10:25, 11:9, 11:16, 11:23, 12:1, 12:4, 12:10, 12:13, 12:16, 12:25, 13:4, 13:8, 13:13, 13:17, 13:20, 14:3, 14:8, 14:12, 14:20, 16:10, 16:15, 16:18, 18:1, 18:16, 19:4, 19:7, 19:16, 19:22, 20:22, 21:6, 22:7, 22:19, 22:23, 23:8, 23:19, 23:20, 23:23, 24:24, 25:4, 25:21, 26:1, 27:8, 28:6, 28:8, 28:12, 30:10, 30:23, 31:5, 31:10, 31:14, 32:2, 32:10, 32:16, 33:4, 33:9, 33:15, 34:1, 34:8, 34:15, 34:18, 39:14, 39:22, 42:12, 42:22, 43:2, 43:12, 44:6, 44:18, 44:25, 45:8, 45:13, 46:3, 47:2, 47:6, 47:9, 47:14, 47:23, 48:13
**they've** [5] - 14:17, 16:2, 16:11, 36:19, 45:23
**Thomas** [2] - 10:1, 24:13
**thousand** [1] - 4:15
**thousands** [4] - 6:19, 7:1, 10:24, 22:1
**thread** [4] - 28:20, 29:15, 37:14, 44:7
**threading** [4] - 28:14, 28:24, 46:19, 46:20
**threads** [4] - 37:2, 37:7, 37:10, 37:12
**three** [4] - 10:2, 18:3, 37:11
**timeline** [1] - 25:8
**today** [6] - 39:8, 39:13, 39:20, 39:21, 44:2, 48:2

**today's** [1] - 41:13
**together** [2] - 11:19, 16:13
**Tommy** [3] - 10:1, 24:12, 25:1
**ton** [1] - 27:23
**took** [4] - 7:19, 25:9, 26:22, 39:20
**tool** [4] - 11:20, 12:1, 12:10, 23:16
**tools** [1] - 14:19
**total** [2] - 21:15, 45:22
**totally** [1] - 44:9
**tracks** [1] - 36:3
**trade** [18] - 10:5, 10:10, 11:7, 14:24, 14:25, 19:19, 19:24, 19:25, 20:5, 20:7, 20:9, 21:8, 21:24, 26:7, 35:3, 35:23, 36:18, 36:19
**transcript** [5] - 19:12, 43:22, 47:12, 47:16, 48:18
**tried** [4] - 22:15, 35:11, 35:12, 39:9
**trips** [1] - 9:25
**trouble** [1] - 4:22
**troubled** [1] - 27:18
**troubling** [2] - 35:6, 35:11
**try** [8] - 8:15, 9:17, 22:12, 28:3, 30:1, 39:7, 44:1, 47:25
**trying** [6] - 13:1, 14:21, 15:17, 20:24, 29:6, 33:5
**Tuesday** [1] - 39:10
**turn** [3] - 21:18, 33:10, 44:14
**turned** [11] - 8:24, 8:25, 9:7, 9:19, 10:5, 10:8, 10:9, 19:19, 21:24, 21:25, 29:7
**turning** [1] - 15:23
**Twitter** [2] - 31:17, 31:21
**two** [10] - 4:10, 9:1, 9:23, 19:13, 22:16, 26:16, 33:21, 34:4, 41:9, 46:5
**two-factor** [1] - 22:16
**type** [2] - 18:22, 36:10
**typical** [1] - 12:10
**typically** [3] - 11:17, 12:16, 26:12
**understood** [1] - 34:14
**unduly** [1] - 44:9
**unhappy** [1] - 46:12
**unless** [1] - 39:24
**unreasonable** [1] - 23:13
**unredact** [1] - 31:3
**up** [7] - 25:10, 29:25, 35:14, 35:22, 38:16, 39:6, 39:8
**update** [1] - 23:19
**updates** [1] - 42:2
**uses** [1] - 9:18
**valid** [1] - 33:25
**various** [1] - 36:1
**verbiage** [2] - 6:4, 45:13

**videos** [1] - 36:12
**view** [1] - 35:19
**voiced** [1] - 45:10
**wade** [1] - 6:6
**wading** [1] - 25:4
**wait** [2] - 9:1, 35:22
**waited** [1] - 26:9
**waived** [5] - 4:13, 44:21, 45:6, 45:11, 45:12
**waiver** [4] - 5:6, 5:9, 5:12, 5:21
**Walton** [21] - 4:5, 5:22, 9:14, 10:18, 13:24, 16:25, 18:17, 19:8, 21:22, 22:20, 22:23, 24:2, 25:6, 27:11, 30:25, 31:10, 37:9, 40:16, 41:13, 47:6, 47:20
**WALTON** [36] - 4:10, 9:17, 10:9, 10:21, 11:4, 12:8, 12:12, 12:15, 18:25, 19:6, 19:11, 19:17, 23:3, 23:18, 23:22, 24:10, 25:19, 25:22, 26:18, 27:25, 28:3, 28:7, 28:9, 29:2, 30:2, 30:6, 30:9, 31:12, 31:25, 32:4, 32:9, 32:17, 33:1, 39:18, 47:5, 47:8
**wants** [1] - 9:11
**ways** [3] - 15:10, 22:25, 35:7
**week** [1] - 32:7
**weeks** [2] - 18:3, 18:4
**welcome** [1] - 33:10
**whatever's** [1] - 19:24
**whichever** [1] - 45:13
**whole** [5] - 16:21, 17:3, 28:17, 28:25, 29:15
**withheld** [1] - 6:9
**withhold** [1] - 6:7
**witnesses** [2] - 19:18, 23:5
**words** [2] - 11:1, 12:20
**wrap** [1] - 35:14
**writing** [1] - 47:10
**written** [4] - 3:13, 4:3, 4:7, 4:9
**wrote** [1] - 18:23
**year** [1] - 31:2
**years** [1] - 44:13
**Zoom** [1] - 18:3