

## MOTION FOR RECONSIDERATION
## AND DISCOVERY UPDATE

November 25, 2020

*Via Email to Chambers_of_Judge_Wolson@paed.uscourts.gov*
United States District Court
Eastern District of Pennsylvania
Honorable Joshua D. Wolson
601 Market Street
Room 3809
Philadelphia, PA 19106-1726

          RE:    <u>Lisa Barbounis v. The Middle East Forum</u>
                No. 2:19-cv-05030-JDW

Dear Judge Wolson:

I write in connection with the above captioned matter to provide the Court with an update in connection with Plaintiff's attempt to comply with the Court's direction and Orders. Pursuant to the hearing held November 13, 2020, the parties worked on two primary issues.

**I.      Images that were Ordered to be Produced in the November 13, 2020 Order.**

The first issue was the images on her devices that were withheld from the initial production of documents to Defendants, The Middle East Forum, Greg Roman and Daniel Pipes. Plaintiff had repeatedly objected to producing every image in her device due to the personal, private nature of the images that have no relevance with the instant matter. Plaintiff had attempted to review the images to identify whether, if any, Plaintiff was in possession of images relevant to the claims or defenses subject to the instant matter. To date, Plaintiff has not yet identified a single image in her possession relevant to the instant matter, that has not already been produced. Pursuant to the November 13, 2020 hearing, Plaintiff continued to review images subject to the production of documents that Cornerstone placed on the Junto e-discovery

platform.  In an effort to make the search for relevant images more efficient, Cornerstone created

an additional category of images, through Junto.  There were 123,317 image files placed in this

folder.  It takes counsel for Plaintiff an average of approximately ten seconds per image.  Some

of the images take longer and some shorter, but the average is approximately ten seconds per

image.  Accordingly, it will take Plaintiff about 1,233,170 seconds to review all the images.

Calculating this time in hours, it will take Plaintiff about 342 hours and about 43 days to review

all the images.  This is if Plaintiff's counsel does nothing but review images for eight (8) hours

per day for 43 days consecutively.  Plaintiff has not produced any images subject to the Court's

November 13, 2020 Order because Plaintiff has not identified any images subject to production.

Plaintiff will continue to review these images, however, Plaintiff objects to and argues in

opposition to any suggestion that Plaintiff is somehow not in compliance with her discovery

obligations.  Plaintiff, through counsel, has remained in open communication with Defendants.

At ever turn, Plaintiff has demonstrated her willingness to engage in discovery and provide

Defendants with any information in her possession that is discoverable.  Plaintiff is not in

possession of any discoverable information that has not been produced.  Plaintiff will continue to

view every image in the Junto library and submit a certification upon completion that all

discoverable information has been reviewed and produced, however, Plaintiff is unable to

complete this task in the time afforded in the October 26, 2020 Order or the November 13, 2020

Order.  There is no mechanism at Plaintiff's disposal for reviewing 123,317 images that are only

available through an online portal in fifteen (15) days, which is the number of days from October

26, 2020, when the Court's initial Order was issued and November 10, 2020, when Defendants

filed a Motion for Contempt for failure to produce any discoverable images.  Also, between

October 26, 2020 and November 10, 2020, Defendants made a total of zero phone calls to

2

Plaintiff to discuss discovery.  Defendants sent a total of zero emails to Plaintiff to discuss

discovery.  But most importantly, between November 26, 2020 and November 10, 2020, there

was a sum total of zero discovery violations that can be afforded to Plaintiff.  The only part of

the October 26, 2020 discovery Order that Plaintiff did not comply with was filing a certification

that confirms that Plaintiff reviewed all of the images.  There are two certainties with regard to

the certification.  First, it was physically impossible for Plaintiff to view all of the images due to

the sheer volume and the time allotted.  Even if Plaintiff spent ten hours per day every day

consecutively from October 26, 2020 until November 10, 2020, less than half of the images

would have been viewed.  This is the reason why Cornerstone was retained in the first place.  It

was because counsel for Plaintiff and Plaintiff were unable to review the hundreds of thousands

of documents that were obtained from every one of Plaintiff's electronic devices including her

cell phones, social media accounts, cloud based storage accounts, texting applications, and email

accounts.  This is the reason why Cornerstone was selected.  And because Cornerstone had

already performed the searches using generally the same keywords that are applicable to the

instant matter, it made a lot of sense for the parties to agree to use this production of documents

in both cases.

There has been a lot of false and misleading arguments made about the keywords used

for the Cornerstone production.  To settle the matter, below is a list of the keywords:

1.  (DP*) OR (Daniel w/2 Pipes) OR (Pipes*)
2.  (GR*) OR (Roman*)
3.  ("mef") OR ("MEF") OR (Mef*) OR (Middle w/5 East w/5 Forum) OR ("Forum")
4.  (meltwater)
5.  (Tricia OR McNulty OR "TM")
6.  ("Tommy" OR Tommy w/2 Robinson OR "TR") OR (trnews*)
7.  (Dan* OR Tommo)
8.  (Jaz* OR Louise*)
9.  ("GOS" OR "gos" OR General w/25 Operating)

10.   ("AT&T" OR "att.com")
11.   ("Delaney" OR "Yonchek" OR "DY")
12.   (Dona* OR Dono*)
13.   202?821?6091
14.   ("tes-uk.co.uk")
15.   Shillman
16.   ("Marnie" OR "Meyer" OR "MMeyer!" OR "MM") OR (marniem*)
17.   203?984?8354
18.   856?803?8401
19.   Syd*
20.   609?472?1968
21.   44?7510?678118
22.   44?7729?634251
23.   44?7900?1711
24.   Paypal
25.   (1 of {confidentiality, non?disclosure, confidential}) p/20 (1 of {disclos*, party, consent, confidential, (third party), information})

     As is evidence from a glance, these are mostly the same keywords that would apply to the instant matter.  They include the names of all the parties in every form and derivation.  They include the names and phone numbers of the individuals relevant to both Plaintiff's claim and Defendants' Counter Claims.  The production of information garnered from these keywords included almost a hundred thousand documents that Defendants have used repeatedly in depositions and arguments.

     Importantly, Plaintiff and Defendants received the production of information from Cornerstone at precisely the same time.  There was no relevancy check.  There was no privilege check.  And because there was absolutely no discussion after the documents were received by the parties at precisely the same time, Plaintiff had no way to even know that Defendants considered the information deficient.  Defendants simply filed a Motion on November 10, 2020 presenting arguments that Plaintiff had no opportunity to cure.  In fact, almost every issue raised in Defendants' Motion for Contempt filed November 10, 2020, Plaintiff heard for the first time in Defendants' Motion.  There is an inherent obligation for parties to work amicably to resolve

discovery disputes.  Defendants repeatedly disregard this concept by filing motions, raising

issues with the Court that Defendants have not attempted to resolve with Plaintiff's counsel first.

In this case, the Court found Plaintiff in contempt for discovery violations that Plaintiff

had no way to know about, or, that Plaintiff had no opportunity to cure.  It was physically

impossible for Plaintiff to even review the images in the time allotted.  All other issues identified

in Defendants' November 10, 2020 Motion for Contempt were issues that Plaintiff heard for the

first time in Defendants' Motion.  Based on these facts, it is manifestly unjust to hold Plaintiff in

contempt of Court to the extent that Plaintiff is being asked to pay for the cost of Defendants to

file a Motion.

Moreover, Defendants chose to file their Motion for Contempt.   Defendants objective in

filing the Motion for Contempt was not to obtain discovery but to use the Motion for Contempt

as a punitive tool to retaliate against Plaintiff and her counsel. Defendants all but said this during

their depositions where Defendants Daniel Pipes and Greg Roman bragged about making money

from Plaintiff through their improper contempt Motions.

Plaintiff is not in possession of any other documents responsive to Defendants' Discovery

Requests.  Plaintiff has never withheld a single document in this case.  Plaintiff continues to

review the images.

## II.     The entire text threads that were Ordered Produced in the November 13, 2020 Order.

The Second issue is the text threads.  The Court's November 13, 2020 Order states:

> It is FURTHER ORDERED that, no later than November 16, 2020,
> Defendants shall provide to Plaintiff a list of all text messages in which a
> search term appears. Plaintiff shall arrange with the e-discovery vendor
> Cornerstone Discovery for the production of the complete text conversation
> for any text in which a search term appears, including all metadata necessary
> to identify related parts of a text conversation. The production shall be

complete no later than November 18, 2020. In the event that Plaintiff asserts
that any part of a text string is privileged, she may redact that portion of the
text string, and she shall produce a privilege log within 48 hours of the
document's production.

The parties contacted Cornerstone in connection with this Order to request that
Cornerstone produce the text threads.  Cornerstone notified the parties that they did not have the
ability to comply with the Court's Order.  Defendants provided Plaintiff with a list of 578 text
threads on November 18, 2020.  Plaintiff searched her records and does not have possession of
the text threads identified in Defendants' list.  Plaintiff and counsel for Defendants, Dave Walton
held several discussions over the past week, each discussion initiated by Plaintiff's counsel, to
discuss these text threads.  During one telephone call on November 18, 2020, the parties' counsel
discussed the 578 text threads.  With counsel on the call, Plaintiff's counsel attempted to locate
several of the text threads and was unsuccessful.  Cornerstone is in possession of these text
threads.  Counsel for Plaintiff provided Cornerstone with permission to produce these text
threads.  Counsel for Plaintiff provided Cornerstone with permission to unilaterally talk with
Dave Walton who is not just counsel for Defendants but specializes in e-discovery at Cozen
O'Connor.  Cornerstone and Dave Walton were unable to resolve the issue of the text threads.
Importantly, Plaintiff is not in possession of all of these text threads.  Any text threads to which
Plaintiff is in possession have been produced.  Plaintiff's counsel will continue to produce any
text threads in her possession that she can identify, however, the 578 threads represents a
tremendous amount of information.  Some of the text threads are hundreds of pages.  This
production represents tens of thousands of pages of documents, almost all of them entirely not
relevant to the instant matter.  Almost all of these text threads represent personal, private
communications between Plaintiff and friends or family.  Some of them include highly personal,

private photos that should not simply be produced in a huge data dump.  So while Plaintiff's

counsel has worked diligently to comply with the Court's November 13, 2020 Order, Plaintiff

objects to being required to turn over 568 text threads simply because one of the following words

or phrases was used.

1.      (DP*) OR (Daniel w/2 Pipes) OR (Pipes*)
2.      (GR*) OR (Roman*)
3.      ("mef") OR ("MEF") OR (Mef*) OR (Middle w/5 East w/5 Forum) OR ("Forum")
4.      (meltwater)
5.      (Tricia OR McNulty OR "TM")
6.      ("Tommy" OR Tommy w/2 Robinson OR "TR") OR (trnews*)
7.      (Dan* OR Tommo)
8.      (Jaz* OR Louise*)
9.      ("GOS" OR "gos" OR General w/25 Operating)
10.     ("AT&T" OR "att.com")
11.     ("Delaney" OR "Yonchek" OR "DY")
12.     (Dona* OR Dono*)
13.     202?821?6091
14.     ("tes-uk.co.uk")
15.     Shillman
16.     ("Marnie" OR "Meyer" OR "MMeyer!" OR "MM") OR (marniem*)
17.     203?984?8354
18.     856?803?8401
19.     Syd*
20.     609?472?1968
21.     44?7510?678118
22.     44?7729?634251
23.     44?7900?1711
24.     Paypal
25.     (1 of {confidentiality, non?disclosure, confidential}) p/20 (1 of {disclos*, party, consent, confidential, (third party), information}).

## MOTION FOR RECONSIDERATION

### I.      INTRODUCTION

Defendant, Lisa Reynolds-Barbounis hereby moves the Court pursuant to Federal Rule of

Civil Procedure 59(e)1 and Local Civil Rule 7.1(g), for reconsideration of this Court's November 13,

2020 Order compelling Defendant, Lisa-Reynolds-Barbounis to turn over all her text threads simply

based on a word used in the thread.  Defendant, Lisa Reynolds-Barbounis files this Motion for

Reconsideration to correct a clear error of law and to prevent a manifest injustice. Accord General Instrument Corp of Delaware. v. Nu-Tek Elecs. & Mfg., Inc., 3 F. Supp. 2d 602, 606 (E.D. Pa. 1998), aff'd., 197 F.3d 83 (3d Cir. 1999).

On November 13, 2020, this honorable Court issued a discovery Order compelling Ms. Barbounis to produce every text thread, which we now know is at least 568 threads, almost all of it communications that have no relation at all to the instant matter.

The November 13, 2020 Order provides that Defendant, The Middle East Forum is to receive the entire text threads of at least 568 threads based only upon the arbitrary use of a certain word in one of the threads. The Order provides almost no restriction other than attorney-client privilege. Defendants were not even required to prove relevance as any relevance consideration was disregarded entirely.  The parties had previously made an agreement to produce information through Cornerstone based on certain keywords.  The Court's November 13, 2020 Order disregarded entirely the parties agreement and required that all of Plaintiff's text messages be produced including all attachments.  This will result in a manifest injustice as Plaintiff's text threads include a tremendous amount of personal, private, information that is not relevant to the instant matter and should not be turned over to an adverse party that has demonstrated a propensity for retaliation.

This method of discovery is based upon a clear misapplication of the Federal Rules of Civil Procedure, Rule 26(b)(1), which requires "the party seeking the discovery has the burden of clearly showing the relevancy of the information sought. Fed. R. Civ. P. 26(b)(1), 37(a)(1). See Federal Rule of Civil Procedure 37(a)(3)(B) ("[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection."). See also Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1310 (3d Cir. 1995) (Cowen, J.) (citing Fed. R. Civ. P. 37(a)(1)) ("In order to succeed on a motion to compel discovery, a party must first prove that it sought discovery from its opponent."). Caver v. City of Trenton, 192 F.R.D. 154, 159 (D.N.J. 2000) ("[t]he party seeking the discovery has

the burden of clearly showing the relevancy of the information sought.").

That Defendants did not even request all of these documents in their First Request for Production of Documents was disregarded.   This is the very definition of an overly broad and improper discovery order; and it goes against the express requirements provided in the Federal Rules of Civil Procedure. Importantly, cell phones contain a plethora of personal and private information and it is an impossible task for Ms. Barbounis to identify all non-relevant information.  The parties can, however, identify relevant information are discuss production of the same. According to the Order, Defendants will receive the entire contents of almost every text thread Plaintiff has ever sent or received in a huge data dunp, regardless of relevance to the case.

In issuing the November 13, 2020 Order, the Court gave no consideration to Ms. Barbounis's right to privacy; a right clearly impacted by the disclosure of electronically stored information ("ESI") contained in all of her cell phones, social medial accounts, texting applications, and emails.  In Lawson v. Love's Travel Stops & Country Stores, Inc., the court explained:

> Cellphones and cellphone technology are now a ubiquitous part of our lives. For many, the most personal and intimate facts of their lives are carried and saved in their personal electronic devices. Therefore, requests for wide-ranging discovery of cellphone contents often implicate important privacy interests, interests which must be weighed against the need for such disclosure. Lawson v. Love's Travel Stops & Country Stores, Inc., No. 1:17-CV-1266, 2020 WL 109654, at *2 (M.D. Pa. Jan. 9, 2020).

The Lawson v. Love's Travel court went on to explain:

> … [W]e must be mindful of the fact that social media is at once both ubiquitous and often intensely personal, with persons sharing through social media, and storing on electronic media, the most intimate of personal details on a host of matters, many of which may be entirely unrelated to issues in specific litigation. As the Supreme Court has observed in a criminal context: "[T]here is an element of pervasiveness

that characterizes cell phones but not physical records. Prior to the digital age, people did not typically carry a cache of sensitive personal information with them as they went about their day. Now it is the person who is not carrying a cell phone, with all that it contains, who is the exception." Lawson v. Love's Travel Stops & Country Stores, Inc., No. 1:17-CV-1266, 2020 WL 109654, at *2 (M.D. Pa. Jan. 9, 2020) citing Riley v. California, 573 U.S. 373, 395, 134 S. Ct. 2473, 2490, 189 L. Ed. 2d 430 (2014).

The Court's November 13, 2020 Order disregarded Ms. Barbounis's right to privacy by requiring the entire text thread for almost every text message Ms. Barbounis has ever sent or received to be furnished directly to Defendants regardless of relevance.   Plaintiff was not even afforded an opportunity to review the information for relevance or privilege before it was produced.  As the party seeking discovery, Defendant, MEF has the burden of clearly showing the relevancy of the information sought. Fed.R.Civ.P. 26(b)(1), 37(a)(1). Accord Romero v. Allstate Ins. Co., 271 F.R.D. 96 (E.D. Pa. 2010) ("The party … seeking discovery must demonstrate the relevancy of the requested information. Fed.Rules Civ.Proc.Rule 26(b)(1), 28 U.S.C.A.").

Ms. Barbounis does not seek to deprive Defendants of obtaining relevant, discoverable ESI. Ms. Barbounis only seeks a more narrowly tailored request supported by a more specific showing of relevance.  Lisa Barbounis does not wish for her entire life to be turned over for inspection. Ms. Barbounis's position is premised upon the objective of protecting personal, private, confidential information contained in her personal electronic devices.

The November 13, 2020 Order does not consider that discovery requests must be relevant to the claims presented. And "[w]hile the scope of relevance in discovery is far broader than that allowed for evidentiary purposes, it is not without limits." Fassett v. Sears Holdings Corp., 319 F.R.D. 143, 149–50 (M.D. Pa. 2017). Defendant, Lisa Barbounis requests only that Defendants be required to limit its discovery requests by identifying specific text threads which Defendants seek based on a showing of relevance.  Defendants list of 568 text threads is not a list of relevant information.  It is a list of

1

almost every text thread contained in Ms. Barbounis's electric devices based on the arbitrary use of a single word or number. Requesting that the entire contents of 568 text threads must be turned over without inspection or consideration for relevance is manifestly unjust and flies in the face of Plaintiff's constitutional rights to privacy.  It also violates the Federal Rules of Civil Procedure.   The current Order will certainly and unequivocally result in personal and private information, which is entirely unrelated to the instant matter, being furnished. This is a bell that cannot be un-rung which violates the rules of discovery provided for in the Federal Rules of Civil Procedure and violates Ms. Barbounis's right to withhold non-relevant private, personal information. Ms. Barbounis's right to protect irrelevant, private, personal information contained in her electronic devices ***can only be made prior to its disclosure***. This Motion is the one opportunity for Plaintiff, Lisa Barbounis to protect this information.  Ms. Barbounis has a right to protect irrelevant, confidential and private information contained in her personal electronic devices.

## II.  STANDARD OF REVIEW

Courts should grant motions for reconsideration sparingly, reserving them for instances where there has been "(1) an intervening change in controlling law, (2) the emergence of new evidence not previously available, or (3) the need to correct a clear error of law or to prevent a manifest injustice." General Instrument Corp of Delaware v. Nu-Tek Elecs & Mfg., Inc., 3 F. Supp. 2d 602, 606 (E.D. Pa. 1998), aff'd., 197 F.3d 83 (3d Cir. 1999); see also Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985), cert. denied, 476 U.S. 1171 (1986) ("The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence."). Mere dissatisfaction with the court's ruling is not a proper basis for reconsideration. See United States v. Phillips, 2001 WL 527810, at *1 (E.D.Pa. May 17, 2001) (citing Burger King Corp. v. New England Hood and Duct Cleaning Co., 2000 WL 133756, at *2 (E.D.Pa. Feb. 4, 2000). When a court issues an interlocutory order, the court has the authority to reconsider the order "when it is consonant with justice to do so." United States v. Jerry, 487 F.2d 600, 605 (3d Cir. 1973) (citing United States

1

v. Bryson, 16 F.RD. 431, 435 (N.D. Cal. 1954), aff'd, 238 F.2d 657 (9th Cir. 1956)); Fed. R. Civ. P.

60(b) advisory committee's note to 1946 amendment (recognizing that interlocutory orders are

"subject to the complete power of the court rendering them to afford such relief from them as justice

requires"). Enslin v. Coca-Cola Co., No. 2:14-CV-06476, 2016 WL 7042206, at *1 (E.D. Pa. June 8,

2016).

### III. ARGUMENT

**A**. **Litigants are responsible for preserving relevant information on their own.**

As a general matter, it is beyond question that a party to civil litigation has a duty to

preserve relevant information, including ESI, when that party "has notice that the evidence is

relevant to litigation or ... should have known that the evidence may be relevant to future

litigation." See Bull v. United Parcel Serv., Inc., 665 F.3d 68 (3d Cir. 2012); Fujitsu Ltd. v. Fed.

Express Corp., 247 F.3d 423, 436 (2d Cir.2001); see also Zubulake v. UBS Warburg LLC, 220

F.R.D. 212, 216–18 (S.D.N.Y.2003). The Sedona Principles are a set of authoritative guidelines

published by The Sedona Conference to aid members of the legal community involved in the

identification, collection, preservation, review and production of electronically stored information. The

Sedona Principles are often relied upon by our federal courts including the Eastern District of

Pennsylvania and the Third Circuit. According to The Sedona Principles: Best Practices,

Recommendations & Principles for Addressing Electronic Document Production, (The Sedona

Conference Working Group Series, 2007), "[i]t is the responsibility of the parties to ensure that relevant

ESI is preserved, and when that duty is breached, a district court may exercise its authority to impose

appropriate discovery sanctions. See Fed.R.Civ.P. 37(b). Accordingly, a federal court's authority to

compel the forensic imaging and production of computer hard-drives as a means to preserve relevant

electronic evidence is tempered by the litigants' responsibilities for preserving relevant information on

their own. Such drastic measures for preserving electronic information should only be employed in a

very limited set of circumstances. Cf. The Sedona Principles, supra, at 33 (noting that, because all litigants are obligated to preserve relevant information in their possession, preservation orders generally must be premised on a demonstration that a real danger of evidence destruction exists, a lack of any other available remedy, and a showing that the preservation order is an appropriate exercise of the court's discretion). John B. v. Goetz, 531 F.3d 448, 459 (6th Cir. 2008). In this case, there can be no opportunity for the destruction of evidence as all electronic information has been preserved by both Capsicum in February 2019 and Cornerstone in July 2019.

The discovery process is designed to be extrajudicial, and it relies on responding parties to search their own records and produce documents or other data. See Powers v. Thomas M. Cooley Law Sch., No. 5:05-CV-117, 2006 WL 2711512, at *5 (W.D. Mich. Sept. 21, 2006). The Advisory Committee Notes to Rule 34 recognize that courts must use caution in evaluating requests to inspect an opposing party's electronic devices or systems for ESI, in order to avoid unduly impinging on a party's privacy interests:

> Inspection or testing of certain types of electronically stored information or of a responding party's electronic information system may raise issues of confidentiality or privacy. The addition of testing and sampling to Rule 34(a) with regard to documents and electronically stored information is not meant to create a routine right of direct access to a party's electronic information system, although such access might be justified in some circumstances. Courts should guard against undue intrusiveness resulting from inspecting or testing such systems. Fed. R. Civ. P. 34, Advisory Committee Notes—2006 Amendment (emphasis added).

Numerous courts have also recognized this need to "guard against undue intrusiveness" and to be "cautious in requiring" the forensic inspection of electronic devices, in order to protect privacy interests. See John B. v. Goetz, 531 F.3d 448, 459-60 (6th Cir. 2008) (citing cases and concluding that the "compelled forensic imaging orders here fail[ed] to account properly for ... significant privacy and confidentiality concerns"). "Mere suspicion" or speculation that an opposing party may be withholding discoverable information is insufficient to support an "intrusive examination" of the

1

opposing party's electronic devices or information systems. <u>Scotts Co. LLC v. Liberty Mut. Ins. Co.</u>, No. 2:06-CV-899, 2007 WL 1723509, at *2 (S.D. Ohio June 12, 2007). In particular, a court must be cautious "where the request is overly broad in nature and where the connection between the party's claims and the [electronic device] is unproven." <u>A.M. Castle & Co. v. Byrne</u>, 123 F. Supp. 3d 895, 900-01 (S.D. Tex. 2015) (collecting cases); <u>see also</u> <u>Kickapoo Tribe of Indians of Kickapoo Reservation in Kan. v. Nemaha Brown Watershed</u> Joint Dist. No. 7, 294 F.R.D. 610, 619 (D. Kan. 2013) (denying a request to inspect personally-owned devices of defendant's employees in part because "the Court [had] significant concerns regarding the intrusiveness of the request and the privacy rights of the individuals to be affected"). <u>Hespe v. City of Chicago,</u> No. 13 C 7998, 2016 WL 7240754, at *4 (N.D. Ill. Dec. 15, 2016).

The Court's November 13, 2020 Order flies against the agreement the parties made to utilize discovery obtained through Cornerstone in this case.  The parties agreed to the production of all information on every one of Plaintiff's electronic devices and this production came in the form of electronic communications where the entire text thread was not produced.  Plaintiff does not object to the production of additional information to illuminate and supplement information contained in the electronic communications produced by Cornerstone.  Plaintiff objects to an Order that requires Defendants to receive a data dump of almost every electronic communication, with no check for relevance and no consideration for privacy.  The production required by the November 13, 2020 Order required the production of almost every text thread and every attachment Plaintiff has sent or received in the last decade.  Defendants did not even request this extreme measure.  As the Third Circuit described in <u>Race Tires Am., Inc. v. Hoosier Racing Tire Corp.,</u> there is a process connected with the production of documents in complex litigation:

> … The documents, or duplicates of the documents, were then reviewed to determine those that may have been relevant. The files designated as potentially relevant had to be screened for privileged or otherwise protected material. Ultimately, a large volume of documents would have

been processed to produce a smaller set of relevant documents. Race Tires Am., Inc. v. Hoosier Racing Tire Corp., 674 F.3d 158, 169 (3d Cir. 2012).

In Boeynaems v. LA Fitness Int'l, LLC Judge Baylson described his method of determination.

> Discovery need not be perfect, but discovery must be fair. In determining the boundaries of appropriate discovery in any case where the scope of discovery is subject to disputes, I have found it useful to adopt, as both a metaphor and a guide to determine what discovery is appropriate, a "discovery fence." The facts that are within the discovery fence are discoverable, and relevant materials should be produced; the facts that are outside the fence are not discoverable and documents or information need not be produced in discovery. Boeynaems v. LA Fitness Int'l, LLC, 285 F.R.D. 331, 333 (E.D. Pa. 2012)

In the instant matter there is no fence. There are no constraints. There is no consideration for Lisa Barbounis's right to privacy.  The November 13, 2020 Order provides that Defendants will get almost every text thread contained in Ms. Barbounis's personal devices. But see Enslin v. Coca-Cola Co. holding (… a party who is asked to produce ESI is "best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing [its] own electronically stored information" and that a requesting party therefore bears the burden of "show[ing] that a responding party's production of ESI was inadequate and that additional efforts are warranted,"). Enslin v. Coca-Cola Co., No. 2:14-CV-06476, 2016 WL 7042206, at *1 (E.D. Pa. June 8, 2016).  In an unpublished Tenth Circuit opinion, the court explained that mere skepticism that an opposing party has not produced all relevant information is not sufficient to warrant drastic electronic discovery measures. See McCurdy Group, LLC v. Am. Biomedical Group, Inc., 9 Fed.Appx. 822, 831 (10th Cir.2001).

A district court's discretion is limited in a number of significant ways by the scope of Rule 26 itself, which provides for discovery of only "nonprivileged matter that is relevant to any party's claim or defense." Lawson v. Love's Travel Stops & Country Stores, Inc., No. 1:17-CV-1266, 2020 WL 109654, at *3 (M.D. Pa. Jan. 9, 2020). "The Court's discretion in ruling on discovery issues is,

therefore, restricted to valid claims of relevance and privilege." Robinson v. Folino, No. 14-227, 2016 WL 4678340, at *2 (citing Jackson v. Beard, No. 11-1431, 2014 WL 3868228, at *5 (M.D. Pa. Aug. 6, 2014). Rule 26 therefore constrains that which can be obtained through discovery, and reaches any nonprivileged matter that is relevant to any party's claim or defense, and valid claims of relevance and privilege still cabin and restrict the court's discretion in ruling on discovery issues. Lawson v. Love's Travel Stops & Country Stores, Inc., No. 1:17-CV-1266, 2020 WL 109654, at *3 (M.D. Pa. Jan. 9, 2020).

     The concept of relevance is tempered by principles of proportionality. Courts must consider whether the discovery requests are "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, ***the parties' resources***, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Issues of proportionality must be considered in light of the information sought. This requirement has no greater significance as when an Order requires the production of almost every electronic communication from every device and account spanning years outside the time relevant to the case.  The Supreme Court of the United States explained in Riley v. California: "Thus, "[t]oday ... it is no exaggeration to say that many of the more than 90% of American adults who own a cell phone keep on their person a digital record of nearly every aspect of their lives—from the mundane to the intimate." Riley v. California, 573 U.S. 373, 395, 134 S. Ct. 2473, 2490, 189 L. Ed. 2d 430 (2014). Numerous courts have recognized a need to "guard against undue intrusiveness" and to be "cautious in requiring" the forensic inspection of electronic devices, in order to protect privacy interests. See John B. v. Goetz, 531 F.3d 448, 459-60 (6th Cir. 2008) (citing cases and concluding that the "compelled forensic imaging orders here fail[ed] to account properly for ... significant privacy and confidentiality concerns").  "Mere suspicion" or speculation that an opposing party may be withholding discoverable information is insufficient to support an "intrusive examination" of the

opposing party's electronic devices or information systems. Scotts Co. LLC v. Liberty Mut. Ins. Co., No. 2:06-CV-899, 2007 WL 1723509, at *2 (S.D. Ohio June 12, 2007); Hespe v. City of Chicago, No. 13 C 7998, 2016 WL 7240754, at *4 (N.D. Ill. Dec. 15, 2016). Lawson v. Love's Travel Stops & Country Stores, Inc., No. 1:17-CV-1266, 2020 WL 109654, at *4 (M.D. Pa. Jan. 9, 2020).

    **B.**   **Defendant, Lisa Barbounis's electronic devices contain sensitive information of a personal and private nature that extends well beyond the limited protections provide for in the January 15, 2020 Order.**

Since the Court issued its November 13, 2020 Order, Defendant, Lisa Barbounis has spent significant time considering the private, sensitive, personal information contained in the text threads which were Ordered produced. The November 13, 2020 Order does very little to protect the private, personal information contained in Defendant, Lisa Barbounis electronic devices, which Ms. Barbounis seeks to remain private. Ms. Barbounis seeks only to protect non-relevant information of a private, sensitive, personal nature. Ms. Barbounis text threads span years of Ms. Barbounis's life from before and after her time with The Middle East Forum. Just as personal and private as the messages are the attachments sent to loved ones and significant others which nobody should view but Ms. Barbounis and the intended recipient. These messages and attachments have no relation to the instant matter and the wholesale data dump of every electronic message Ms. Barbounis has ever sent is manifestly unjust. It is the mere act of copying all private information and then the review of that information which Ms. Barbounis wishes to prevent. The electronic information contained in Ms. Barbounis's personal electronic devices will most assuredly date back at least ten (10) years; well before relevant information could even have been contemplated, as Ms. Barbounis's employment with MEF began in 2017 and well after her employment ended in October 2019. Production of this information directly from vender to Defendants is the definition of casting a wide net. Ms. Barbounis seeks an Order that would protect Ms. Barbounis from producing non-relevant information of a private, sensitive nature to an adverse party that has clearly demonstrated a propensity for retaliation.

1

Ms. Barbounis's personal electronic devices have been used continuously for the past decade to conduct every facet of Ms. Barbounis's life. In the last two years alone, Ms. Barbounis would estimate that less than one-percent (1%) of the information contained in her personal electronic devices relates in any way to her employment at the Middle East Forum.

Plaintiff, Lisa Barbounis suggests that there must be a way to provide Defendant, MEF with the one-percent of relevant information without producing the other ninety-nine-percent (99%). (emphasis added). The remainder of non-relevant information (the 99%) contained in Ms. Barbounis's personal electronic devices relates to the most sensitive, intimate, and private aspects and thoughts of Lisa Barbounis's life, including, (1) her marriage and conversations with, about or to her husband including her relationship with her husband, (2) relationships with her friends including relationships of an extremely private, personal, and sensitive matters (2).

C.      **Plaintiff also seeks reconsideration of the Order to pay for the costs associated with Defendants filing a Motion for Contempt.**

Defendants, Daniel Pipes and Greg Roman both felt the need to ridicule Plaintiff's counsel at deposition bragging that Defendants have made money from the case to date due to their Motions for Contempt.  The Court's November 13, 2020 Order which provides that Plaintiff should pay for the cost of Defendants' Motion for Contempt is manifestly unjust for the reasons explained above.  It was physically impossible for Plaintiff to even view all the images in the time allotted.  It would be entirely unfair for Plaintiff to be burdened with the cost of paying for Defendants' Motion on any other issue because Plaintiff had not way to even know that Defendants thought that Plaintiff had violated her discovery obligations.  At no time did Defendants even inform Plaintiff that they believed there were discovery deficiencies.  The parties received the discovery at precisely the same time.  If Defendants felt there were deficiencies, they should have communicated that to Plaintiff. Defendants did not make a single phone call.  Defendants did not send a single email.  Instead Defendants manufactured a Motion for Contempt arguing deficiencies that Plaintiff either did not

1

know about, or that was impossible for Plaintiff to resolve.  Accordingly, Plaintiff requests

reconsideration of the November 13, 2020 Order requiring Plaintiff to pay for the cost of Defendants

filing a Motion for Contempt.

      **D.**    **Defendant, The Middle East Forum has demonstrated a propensity for retaliation.**

      The Middle East Forum finally provided definitive proof that the claims filed in this Court

against Plaintiff, Lisa Barbounis, including the Counterclaims in the instant action, were presented in

retaliation for Ms. Barbounis filing lawful, supported claims of discrimination and harassment in the

workplace. This occurred in October 2020, when MEF founder and President, Daniel Pipes,

contacted Ms. Barbounis outside of counsel and threatened her in an attempt to force Ms. Barbounis

to withdraw her lawful claims of discrimination and harassment in the workplace from the Eastern

District of Pennsylvania. It is important to remember, that Ms. Barbounis began litigation in the

Eastern District of Pennsylvania against MEF because she was sexually harassed and assaulted by

the Director of The Middle East Forum, Greg Roman. Greg Roman also sexually assaulted at least

one other MEF employee, and forced at least another MEF employee, a young intern, to engage in

sexual intercourse in a quid pro quo arrangement. Then, there are the other women who accused

Greg Roman of severe and pervasive discrimination and harassment while Greg Roman was MEF's

Director. There are at least seven (7) other women who have made these allegations to date. Because

of Greg Roman's sexual misconduct, Lisa Barbounis filed a Charge of Discrimination with the Equal

Employment Opportunity Commission. Ms. Barbounis then filed a civil action lawsuit in the Eastern

District of Pennsylvania. MEF's response was to wage war against Ms. Barbounis using this Court to

do so. President Daniel Pipes confirmed this when he went rogue and emailed Ms. Barbounis directly

without informing any of the many lawyers who Daniel Pipes engaged to illegally wage his war

against Ms. Barbounis. Daniel Pipes emailed Ms. Barbounis and offered to withdraw all claims

against Ms. Barbounis and pay Ms. Barbounis's legal fees and costs if Ms. Barbounis dropped her

lawful sexual harassment case against MEF. Daniel Pipes informed Ms. Barbounis that if she refused

to pay her legal bill with Derek Smith Law Group, PLLC, he would pay for Ms. Barbounis's bankruptcy attorney.  Daniel Pipes also indicated his willingness to interfere with witnesses, and to illegally threaten Ms. Barbounis with more litigation, based on the exact same claims that have already been filed in this Court. Daniel Pipes informed Ms. Barbounis that The Middle East Forum was ramping up to file a new RICO lawsuit against Ms. Barbounis and promised to scuttle this RICO lawsuit if Ms. Barbounis withdrew her sexual harassment case against MEF. This is criminal conduct in the form of blackmail, plain and simple. Daniel Pipes warned Ms. Barbounis as part of the agreement, that Ms. Barbounis would have to "cooperate" with MEF to defend MEF cases involving at least two remaining litigants – who are Patricia McNulty and Marnie Meyer. The implication was clear that Ms. Barbounis was expected to take sides, truth notwithstanding. This is MEF's status quo. All Ms. Barbounis had to do in order for MEF's claims, counter claims, and future claims to all be dropped, was withdraw her sexual harassment case from this Court.  Both Patricia McNulty and Marnie Meyer maintain separate claims for sexual harassment in this Court stemming from Greg Roman's propensity to subject the female employees at The Middle East Forum to abusive, sexual misconduct. Daniel Pipes promised to end all litigation including the instant matter, and scuttle a RICO lawsuit that has not yet been filed if Ms. Barbounis withdrew her case against MEF and cooperated with MEF in other cases where MEF has been sued in this Court. Daniel Pipes also confirmed that he believes Ms. Barbounis is a "good person" and agreed to vouch for Ms. Barbounis in her future endeavors including future job opportunities. A very strange promise if he believes the allegations pled in MEF's instant claims and counterclaims. Daniel Pipes said he could not go so far as to admit to bringing the instant matter in retaliation, because doing so would admit his complicity in unlawful conduct, but assured Ms. Barbounis he would do everything he could to help Ms. Barbounis's future job opportunities. Lisa Barbounis and Daniel Pipes maintained a conversation for days where it was understood that MEF brough all claims against Ms.

2

Barbounis solely as a litigation tactic to improve MEF's bargaining position with Lisa
Barbounis. It is with this understanding that Lisa Barbounis objects to a wholesale data dump of
all of her text threads contained in her devices.

      E.    **Plaintiff, Lisa Barbounis's has one lawyer working with her to prove her case.**

In the weeks when it was expected of counsel for Plaintiff to review tens of thousands of
pages in text threads and 123,317 images that would take counsel 43 days working eight hours per
day consecutively, Plaintiff was also under an Order to conduct the depositions of (1) Defendant,
Greg Roman, (2) Defendant, Daniel Pipes, (3) Mark Fink, (4) Matthew Bennett, (5) Steve Levey, and
(6) Laurence Hollin.  Plaintiff's counsel was obligated to conduct depositions in a case that
Defendants have communicated will probably go to trial.  With over a hundred thousand documents
produced by the parties in this case, Plaintiff's counsel had to prepare for and conduct depositions
upon which the entire case turns.  Defendants have approximately six experienced lawyers, all
sharing in work with who knowns how many paralegals, legal assistants, interns, or document review
teams.  Plaintiff's counsel is working alone with no paralegal. Plaintiff therefore asks the Court for
some consideration in this regard.  At no time did Plaintiff intend to disregard any Court Order in this
Case.

## III.    CONCLUSION

Plaintiff, Lisa Reynolds Barbounis requests reconsideration of the November 13, 2020
Discovery Order, so that all discovery be in accord with the Federal Rules of Civil Procedure.
Specifically, Defendant seeks a more narrowly tailored discovery Order supported by a more specific
showing of relevance.

**WHEREFORE** Plaintiff requests that the November 13, 2020 Order requiring Plaintiff to
pay for the costs of Defendants filing a Motion for Contempt

Very Truly Yours,
**DEREK SMITH LAW GROUP, PLLC**

BY: ___/s/ Seth D. Carson_____
Seth D. Carson, Esquire


CC: David J. Walton and Sidney Gold and Jonathan Caviler (through ECF)

2

## CERTIFICATE OF SERVICE

I hereby certify that on this date that I caused a true and correct copy of Plaintiff's

Motion and Letter to be served via ECF:

David J. Walton (PA # 86019)
Leigh Ann Benson (PA #319406)
Cozen O'Connor
1650 Market Street, Suite 2800
Philadelphia, PA 19103
P: 215-665-2000
F: 215-665-2013
dwalton@cozen.com
lbenson@cozen.com

Sidney L. Gold sgold@discrimlaw.
Sidney L. Gold & Associates P.C.
1835 Market Street, Suite 515
Philadelphia, PA 19103
Tel: (215) 569-1999
Fax: (215) 569-3870
Counsel for The Middle East Forum

**DEREK SMITH LAW GROUP, PLLC**

BY:   /s/  Seth D. Carson

SETH D. CARSON

DATED: November 25, 2020