**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LISA BARBOUNIS | : | CIVIL ACTION |
| | : | NO. 2:19-cv-05030-JDW |
| Plaintiff, | : | NO. 2:20-cv-02946 |
| -vs- | : | |
| | : | |
| THE MIDDLE EAST FORUM, et al. | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**OMNIBUS MOTION FOR SUMMARY JUDGMENT**

---

Dated: March 1, 2021

Jonathan R. Cavalier
Leigh Ann Benson
Cozen O'Connor
1650 Market Street, Suite 2800
Philadelphia, PA  19103
(215) 446-0031

*Attorneys for Defendant*
*The Middle East Forum,*
*Daniel Pipes and Gregg Roman*

Sidney L. Gold
William Riser
Sidney L. Gold & Associates, P.C.
1835 Market Street, Suite 515
Philadelphia, PA 19103
(215) 569-1999

*Attorneys for Defendant*
*Gregg Roman*

# TABLE OF CONTENTS

**Page**

I.   STATEMENT OF UNDISPUTED MATERIAL FACTS ................................................. 1

II.  STANDARD OF REVIEW ................................................................................. 1

    A.   Summary Judgment Standards Governing Barbounis' Claims. ........................... 1

    B.   Summary Judgment Standards Governing the Forum's Counterclaims................ 2

III. LEGAL ARGUMENT IN SUPPORT OF DEFENDANTS' MOTION FOR
     SUMMARY JUDGMENT ON PLAINTIFF BARBOUNIS' CLAIMS. .......................... 3

    A.   The Forum Is Entitled To Summary Judgment On Counts I, IV and VII
       Because Plaintiff Has Not Established A *Prima Facie* Case For Sex
       Discrimination Based On Either Disparate Treatment Or An Alleged Hostile
       Work Environment................................................................................. 3

         1.   Plaintiff's Allegations Concerning Roman's Inappropriate Conduct In
            Israel And Washington DC Are Time Barred.............................................. 3

         2.   Plaintiff Has Not Established A *Prima Facie* Case For Sex
            Discrimination Based On An Alleged Hostile Work Environment............ 6

         3.   Plaintiff Has Failed to Establish That She Was Constructively
            Discharged. ........................................................................................ 10

         4.   Plaintiff's Claims For Hostile Work Environment Sexual Harassment
            Are Barred By The Supreme Court's Precedent In *Faragher* and
            *Ellerth*. ............................................................................................. 11

        a.   The Forum Exercised Reasonable Care To Prevent And Promptly Correct
          Any Harassing Behavior. ...................................................................... 12

        b.   *Faragher-Ellerth* doctrine is intended to encourage and incentivize.  Plaintiff
          Unreasonably Failed To Take Advantage Of the Forum's Preventative Or
          Corrective Opportunities........................................................................ 17

    B.   The Forum Is Entitled To Summary Judgment On Counts II, V And VII
       Because Plaintiff Has Not Established A *Prima Facie* Case For Retaliation....... 18

         1.   The Record is Devoid of Evidence of Any Employment-Based
            Retaliation Against Barbounis. .............................................................. 18

         2.   To the Extent Barbounis' Relies On Litigation Brought Against Her
            by the Forum to Support Her Claims of Retaliation, Those Claims
            Must Also Fail..................................................................................... 21

C.      The Forum Is Entitled To Summary Judgment On Count III Because Plaintiff Has Not Established A *Prima Facie* Case For Negligent Hiring, Retention or Supervision, And Because Her Claim Is Barred By The Pennsylvania Workers Compensation Act. .................................................................................. 24

D.      The Forum Is Entitled To Summary Judgment On Counts IV and IX Because Plaintiff Cannot Establish A Claim For "Aiding And Abetting" Discrimination or Retaliation .......................................................................................................... 26

IV.     LEGAL ARGUMENT IN SUPPORT OF THE FORUM'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY ON ITS COUNTERCLAIMS AGAINST BARBOUNIS. .................................................................................................................... 28

A.      The Forum Is Entitled To Summary Judgment On Its Counterclaim For Breach Of Duty Of Loyalty. ...................................................................................... 28

1.      Barbounis Negligently or Intentionally Failed to Act in Good Faith and Solely for the Benefit of the Forum in All Matters for Which She was Employed. ................................................................................................. 29

2.      The Forum Suffered Injury. ...................................................................... 31

3.      Barbounis' Failure to Act Solely for The Forum's Benefit was a Real Factor in Bringing About its Injuries. ....................................................... 32

B.      The Forum Is Entitled To Summary Judgment On Its Counterclaim For Fraudulent Misrepresentation. ................................................................................. 32

C.      The Forum Is Entitled To Summary Judgment On Its Counterclaim For Civil Conspiracy. ............................................................................................................... 34

V.      CONCLUSION.............................................................................................................. 35

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abramson v. William Paterson Coll. of N.J.*,
　260 F.3d 265 (3d Cir. 2001)................................................................................7

*Anderson v. Liberty Lobby, Inc.*,
　477 U.S. 242 (1986)...........................................................................................1, 2

*Bloch v. Mack Trucks, Inc.*,
　240 F. Supp. 3d 365 (E.D. Pa. 2017) .................................................................20

*Brown v. Kessler Inst. for Rehab. Inc.*,
　504 F. App'x 83 (3d Cir. 2012) .........................................................................11

*Bumbarger v. New Enterprise Stone and Lime Co., Inc.*,
　170 F. Supp. 3d 801 .................................................................................12, 13, 17

*Burlington N. & Santa Fe Ry. Co. v. White*,
　548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006)................................19, 20

*Cacciola v. Work N Gear*,
　23 F.Supp.3d (E.D. Pa. 2014) ...........................................................................17

*Carey v. KOS Pharm., Inc.*,
　No. CIV.A. 305CV0688, 2006 WL 1071774 (M.D. Pa. Apr. 21, 2006)...............25

*Celotex Corp. v. Catrett*,
　477 U.S. 317 (1986)...........................................................................................1, 2

*Childers v. Trustees of the Univ. of Pennsylvania*,
　No. 14-2439, 2016 WL 1086669 (E.D. Pa. Mar. 21, 2016) .................................3

*Coleman v. Sears, Roebuck & Co.*,
　319 F. Supp. 2d 544 (W.D. Pa. 2003)................................................................32

*Conoshenti v. Public Serv. Elec. & Gas*,
　364 F.3d 135 (3d Cir. 2004)................................................................................1

*Delahanty v. First Pennsylvania Bank, N.A.*,
　318 Pa.Super. 90, 464 A.2d 1243 (1983)............................................................33

*Dickinson v. Millersville Univ. of Pa.*,
　No. 13-5022, 2014 WL 1327610 (E.D. Pa. 2014) ..............................................27

*Elmarakaby v. Wyeth Pharm., Inc.*,
No. CIV.A. 09-1784, 2015 WL 1456686 (E.D. Pa. Mar. 30, 2015)........................................27

*Evans v. Gordon Food Servs.*,
No. 3:14-CV-01242, 2015 WL 4566817 (M.D. Pa. July 29, 2015) .........................................4

*Fantazzi v. Temple Univ.*,
No. CIV. A. 00-CV-4175, 2001 WL 872455 (E.D. Pa. June 11, 2001) .................................25

*Faragher v. City of Boca Raton*,
524 U.S. 775, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998)..................................................8, 11

*Feit v. Lehigh Univ.*,
No. 5:19-CV-02336-JDW, 2021 WL 409971 (E.D. Pa. Feb. 5, 2021)................................4, 5

*Fichter v. AMG Res. Corp.*,
528 F. App'x 225 (3d Cir. 2013) .............................................................................................7

*Fleet v. CSX Intermodal, Inc.*,
2018 WL 3489245 (E.D. Pa. Jul. 19, 2018)...........................................................................27

*Fort Washington Resources, Inc., v. Tannen*,
858 F.Supp. 455 (E.D.Pa.1994) .......................................................................................32, 33

*Frederic v. Reed Smith Shaw & McClay*,
1994 WL 57212 (E.D. Pa. Feb. 18, 1994) .............................................................................23

*Gawley v. Indiana Univ.*,
276 F.3d 301 (7th Cir.2001) ..................................................................................................17

*Geddis v. Univ. of Delaware*,
40 F. App'x 650 (3d Cir. 2002) .............................................................................................20

*Greenberg v. Aetna Ins. Co.*,
235 A.2d 576 (Pa. 1967) ........................................................................................................23

*Harris v. Forklift Sys., Inc.*,
510 U.S. 17 (1993)....................................................................................................................6

*Jones v. Se. Pa. Transp. Auth.*,
796 F.3d 323 (3d Cir. 2015).......................................................................................3, 12, 18

*Joseph v. N.J. Transit Rail Ops., Inc.*,
2013 WL 5676690 (D.N.J. Oct. 17, 2013)...............................................................................2

*Konstanatopoulos v. Westvaco Corp.*,
112 F.3d 710 (3d Cir. 1997)...................................................................................................11

*LaRochelle v. Wilmac Corp.*,
769 Fed.Appx. 57 (3d Cir. 2019) ........................................................7

*Lombard v. Lassip, Inc.*,
2017 WL 6367956, Civ. A. No. 17-964 (E.D. Pa. Dec. 13, 2017) .........................27

*Mandel v. M & Q Packaging Corp.*,
706 F.3d 157 (3d Cir. 2013)..........................................................7

*Meritor Sav. Bank, FSB v. Vinson*,
477 U.S. 57 (1986) ................................................................6

*Minix v. Jeld–Wen, Inc.*,
237 F. App'x 578 (11th Cir. 2007)...................................................17

*Money v. Provident Mutual Life Ins. Co.*,
189 F. App'x 114 (3d Cir. 2006) ....................................................20

*Moody v. Atlantic City Board of Education*,
870 F.3d 206 (3d Cir. 2017)........................................................12

*National Railroad Passenger Corp. v. Morgan*,
*536 U.S. 101 (2002)* ...........................................................5, 7

*Nazir v. United Air Lines*,
2009 WL 2912518 (N.D. Cal. Sept. 9, 2009) ........................................24

*Newsome v. Admin. Office of the Courts of the State of New Jersey*,
51 F. App'x 76 (3d Cir. 2002).......................................................18

*O'Connor v. City of Newark*,
440 F.3d 126 (3d Cir. 2006).........................................................5

*Onorato v. Wissahickon Park, Inc.*,
430 Pa. 416, 244 A.2d 22 (1968) ...................................................29

*Orsatti v. New Jersey State Police*,
71 F.3d 480 (3d Cir. 1995)..........................................................2

*Pennsylvania State Police v. Suders*,
542 U.S. 129 (2004)...............................................................11

*Probst v. Ashcroft*,
25 Fed. Appx. 469 (7th Cir. 2001)..................................................23

*Professional Real Estate Investors, Inc. v. Columbia Picture Industries, Inc.*,
508 U.S. 49 (1993)...............................................................22, 24

*Randier v. Kountry Kraft Kitchens*,
No. 1:11-cv-0474, 2012 WL 6561510 (M.D. Pa. Dec. 17, 2012) ...........................................25

*Reese v. Pook & Pook, LLC.*,
158 F. Supp. 3d 271 (E.D. Pa. 2016) ...................................................................................34

*Rios v. Marv Loves 1*,
No. CV 13-CV-1619, 2015 WL 5161314 (E.D. Pa. Sept. 2, 2015)..........................................24

*Roadman v. Select Specialty Hosp.*,
No. 3:16-CV-246, 2020 WL 571058 (W.D. Pa. Feb. 5, 2020)................................................25

*Rodriguez v. Auto Zone*,
No. 12–CV–3916, 2014 WL 197894 (D.N.J. Jan. 14, 2014)..................................................17

*Rorke v. Toyota*,
399 F. Supp. 3d 258 (M.D. Pa. 2019) ..................................................................................12

*Rorrer v. Cleveland Steel Container*,
712 F. Supp. 2d 422 (E.D. Pa. 2010) ..................................................................................26

*Sabo v. Lifequest, Inc.*,
1996 WL 182812 (E.D.Pa. 1996) ........................................................................................26

*Saldana v. Kmart Corp.*,
260 F.3d 228 (3d Cir. 2001)..................................................................................................2

*Scott v. Sunoco Logistics Partners, LP*,
918 F. Supp. 2d 344 (E.D. Pa. 2013) ..................................................................................27

*Sherman v. Irwin*,
2018 WL 3632360 (E.D. La. July 31, 2018) ...........................................................................6

*SHV Coal, Inc. v. Continental Grain Co.*,
376 Pa.Super. 241, 545 A.2d 917 (1988)..............................................................................28

*Singletary v. Pa. Dep't of Corr.*,
266 F.3d 186 (3d Cir. 2001)..................................................................................................2

*Solid Wood Cabinet Co. v. Partners Home Supply*,
No. CIV.A. 13-3598, 2015 WL 1208182 (E.D. Pa. Mar. 13, 2015)..........................................29

*Swanson v. Nw. Human Servs., Inc.*,
No. 05-cv-3054, 2006 WL 3354145 (E.D. Pa. Nov. 2, 2006), aff'd, 276 F.
App'x 195 (3d Cir. 2008) ..................................................................................................25

*Sylvester v. Beck*,
406 Pa. 607, 178 A.2d 755 (1962) ......................................................................................28

*Taylor v. Solis*,
    571 F.3d 1313 (D.C.Cir. 2009) .......................................................................17

*Ungureanu v. A. Teichart & Son*,
    2012 WL 1108831 (E.D. Cal. April 2, 2012) .......................................24

*Univ. of Texas Sw. Med. Ctr. v. Nassar*,
    133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013) .........................................19

*Vance v. Ball State Univ.*,
    570 U.S. 421 (2013)..........................................................................................11

*Williams v. Pa. Human Relations Comm'n*,
    No. 14-1290, 2016 WL 6384612 (W.D. Pa. Nov. 21, 2016), *aff'd*, 870 F.3d
    294 (3d Cir. 2017) ...........................................................................................8

*Young v. City of Phila. Police Dep't*,
    94 F.Supp.3d 683 (E.D.Pa. 2015) ...........................................................13

*Young v. City of Philadelphia Police Dep't*,
    651 F. App'x 90 (3d Cir. 2016) ................................................18, 19

**Rules**

Federal Rule of Civil Procedure 11 ..........................................................22

Federal Rule of Civil Procedure 56 ............................................................1

**Statutes**

Americans With Disabilities Act of 1990 ...............................................4

Title VII of the Civil Rights Act of 1964.......................................... *passim*

Pennsylvania Human Relations Act........................................................ *passim*

Pennsylvania Workers Compensation Act.....................................24, 26

Philadelphia Fair Practices Ordinance ........................................3, 27, 28

**Other Authorities**

Restatement (Second) of Agency § 394.................................................29

U.S. Const. amend. I ....................................................................................24

# I.   STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to the policies of this Honorable Court, the Middle East Forum ("the Forum") has filed a separate Statement of Undisputed Material Facts, which the Forum hereby incorporates by reference as if fully set forth herein.[1]

# II.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, a party is entitled to summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue is only genuine if it is supported by evidence such that a reasonable jury could return a verdict in favor of the non-movant, and a fact is material if a dispute about the fact might affect the outcome of the claim.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.* at 249.

### A.   Summary Judgment Standards Governing Barbounis' Claims.

"With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." *Conoshenti v. Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The non-moving party then bears the burden of presenting evidence that a genuine issue of material fact compels a trial. *Celotex*, 477 U.S. at 324.  Material facts are those that will affect the outcome of the trial under governing law.  *Anderson*, 477 U.S. at 248.

---

[1] Citations to the Forum's Statement of Undisputed Material Facts are in the form (SUMF at ¶ __).  Citations to the relevant record evidence supporting each statement of undisputed material fact are included therein.

The non-movant's burden is opposing such a motion is rigorous: "a plaintiff cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint, but must point to concrete evidence in the record that supports each and every essential element of his case." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995). "The non-moving party must offer specific facts that establish a genuine issue of material fact; the non-moving party may not simply rely on unsupported assumptions, bare allegations, or speculation." *Joseph v. N.J. Transit Rail Ops., Inc.*, 2013 WL 5676690 (D.N.J. Oct. 17, 2013).

As set forth below, applying these standards to the record in this case requires dismissal of each and every count asserted by Barbounis in her Amended Complaint. (Doc. No. 51).

**B.      Summary Judgment Standards Governing the Forum's Counterclaims.**

Likewise, with respect to the Forum's Counterclaims against Barbounis, the Forum initially "bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."); *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 192 n.2 (3d Cir. 2001).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. A "party opposing summary judgment 'may not rest upon the mere . . . denials of the . . . pleading[s].'" *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party and which demonstrate a genuine dispute of material fact. *Anderson*, 477 U.S. at 257.

As demonstrated below, the record here conclusively demonstrates that no material issue of disputed fact exists with respect to Plaintiffs' liability on the Forum's counterclaims for breach of her duty of loyalty, civil conspiracy and fraudulent misrepresentation, and that summary judgment must be entered in the Forum's favor on those claims.

III.   **LEGAL ARGUMENT IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF BARBOUNIS' CLAIMS.**

   A.   **The Forum Is Entitled To Summary Judgment On Counts I, IV and VII Because Plaintiff Has Not Established A *Prima Facie* Case For Sex Discrimination Based On Either Disparate Treatment Or An Alleged Hostile Work Environment.**

In Counts I, IV and VII, Plaintiff alleges that she was subjected to a hostile work environment based upon the severe and pervasive discrimination and harassment in the workplace and that her employment was terminated based on her sex and gender.  (Compl. at ¶¶ 514-517, 540-52, 550-52).  Plaintiff has adduced no admissible evidence to support either aspect of her sex discrimination claim, and accordingly, the Forum is entitled to summary judgment on Counts I, IV and VII.[2]

   1.   **Plaintiff's Allegations Concerning Roman's Inappropriate Conduct In Israel And Washington DC Are Time Barred.**

The primary substantive allegations levied by Barbounis to support her discrimination and hostile work environment claims concern allegedly inappropriate behavior by Gregg Roman at the American Israel Public Affairs Committee ("AIPAC") conference in Washington D.C. on

---

[2] Although Plaintiff asserts discrimination and harassment claims under Title VII, the PHRA and the PFPO, the summary judgment analysis is the same with respect to all claims.  *See Jones v. Se. Pa. Transp. Auth.,* 796 F.3d 323, 327 (3d Cir. 2015)  ("[T]he PHRA is to be interpreted as identical to federal antidiscrimination laws except where there is something specifically different in its language requiring that it be treated differently"); *Childers v. Trustees of the Univ. of Pennsylvania,* No. 14-2439, 2016 WL 1086669, at *6 n.4 (E.D. Pa. Mar. 21, 2016) (claims under the Philadelphia Fair Practices Ordinance are analyzed under the same framework as Title VII and PHRA claims).

March 4, 2018, and in Israel on or about March 14, 2018.  Specifically, Barbounis alleges that at an after-party following the AIPAC event, Roman put his arm around Barbounis and their colleague, Patricia McNulty, in an inappropriate fashion, and that in Israel, Roman slid his feet under Barbounis' "butt" while the two were sitting on a couch, discussed a sexual relationship that he had engaged in with a former intern, and asked Barbounis for "a release."[3]

However, Barbounis did not file her first charge of discrimination until June 20, 2019, in which she first alleged that these independently actionable allegations of discrimination were part of her discrimination and hostile work environment claims. SUMF ¶ 310.  By Barbounis' own admission, these alleged events occurred more than 300 days prior to the filing of her EEOC charge and are thus time barred.

"Before a plaintiff can file a federal suit alleging Title VII discrimination, she must exhaust administrative remedies by filing a charge of discrimination with the EEOC."  *Feit v. Lehigh Univ.*, No. 5:19-CV-02336-JDW, 2021 WL 409971, at *4 (E.D. Pa. Feb. 5, 2021) (citing *Slingland v. Donahoe*, 542 F. App'x 189, 191 (3d Cir. 2013). The PHRC "and the EEOC have entered into a worksharing agreement whereby [each] designate[s] s] the other as its agent for the purpose of receiving and drafting charges and complaints."  *Evans v. Gordon Food Servs*., No. 3:14-CV-01242, 2015 WL 4566817, at *3 (M.D. Pa. July 29, 2015).

Title VII, the ADA, and the PHRA limit a plaintiff's ability to seek relief for allegedly discriminatory or retaliatory actions occurring outside their respective statutes of limitation. For Title VII and ADA claims in Pennsylvania, the statute of limitations is 300 days. 42 U.S.C. § 2000e-5(e)(1) (Title VII); 42 U.S.C. § 12117(a) (adopting Title VII procedures for ADA claims).

---

[3] Roman denies these allegations, and the record evidence does not support that these actions ever took place.

For the PHRA, the statute of limitations is 180 days. 43 Pa. Stat. Ann. § 959(h). A person who claims to be aggrieved under any of these statutes must file a complaint with an appropriate administrative agency within the respective statute of limitations in order to pursue relief in a court of law. 42 U.S.C.A. § 2000e-5(e)(1); 43 Pa. Stat. Ann. § 959(h).

As a result, in Pennsylvania, plaintiffs have 300 days from the date of the alleged unlawful employment practice to file a federal charge of discrimination with the EEOC. See 42 U.S.C. § 2000e–5(e) (1).  "These time limitations are analogous to a statute of limitations." *Feit*, 2021 WL 409971 at *4; *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109-10 (2002).

When assessing timeliness of a discrimination or hostile work environment claim, courts must "differentiate between discrete acts and hostile work environments," because "discrete discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges."  *Id.*  In *National Railroad Passenger Corp. v. Morgan*, the Supreme Court divided employment discrimination claims into two categories: discrete acts and continuing violations. 536 U.S. 101, 110-118 (2002). A discrete act occurs, for purposes of the statute of limitations, on the day that it happened and "discrete discriminatory acts are not actionable if time barred, even when they are related to acts allegedly in timely filed charges." *Id*. at 113.  By contrast, a continuing violation involves "acts which are not individually actionable but may be aggregated to make out a hostile work environment claim." *O'Connor v. City of Newark,* 440 F.3d 126 at 127 (3d Cir. 2006). This type of violation occurs "over a series of days or perhaps years," *Morgan*, 536 U.S. at 115, and "is based on the cumulative effect of a thousand cuts, rather than on any particular action taken by the defendant." *O'Connor*, 440 F.3d at 128. According to the Third Circuit, under *Morgan*, discrete acts which are time barred "cannot be aggregated under a continuing violations theory." *Id*.; *see also id.* at 129 ("…time-barred claims

cannot be resurrected by being aggregated and labeled continuing violations.").

These actions alleged by Barbounis, which she labels "sexual assault," are the definition of "discrete acts" according to the Third Circuit.  *See, e.g., Sherman v. Irwin*, 2018 WL 3632360, *5 (E.D. La. July 31, 2018) (holding that "sexual assault" constitutes a discrete and identifiable act for statute of limitations purposes and that the continuing violations doctrine is not applicable to such acts).  No such similar actions of assault, physical touching or sexual propositioning are alleged by Barbounis to have occurred at any time during the 300-day period prior to her filing of her EEOC charge.  SUMF ¶ 150. ("Gregg made unwanted sexual advances and put me in an uncomfortable situation.  However, I felt at the time I handled the issue and have not had an incident since.").  As such, these discrete, actionable acts, even assuming that the allegations levied by Barbounis are true, are time barred and may not serve as the basis for Barbounis' discrimination and harassment claims.

> **2. Plaintiff Has Not Established A *Prima Facie* Case For Sex Discrimination Based On An Alleged Hostile Work Environment.**

A hostile work environment exists only when a person is subject to sex-based harassment that is "sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986); *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)  To establish a claim under Title VII for a hostile-work environment based on sex, Plaintiff must establish:

(a) she experienced intentional discrimination because of her sex;

(b) the discrimination was severe or pervasive;

(c) the discrimination detrimentally affected her;

(d) the discrimination would detrimentally affect a reasonable person in like circumstances; and

(e) the existence of *respondeat superior* liability.

6

"The first four elements of this claim establish that a hostile-work environment existed.  The fifth element . . . establishes the basis on which to hold the employer liable." *LaRochelle v. Wilmac Corp.*, 769 Fed.Appx. 57 at 61 (3d Cir. 2019) (quoting *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009)).

As detailed below, Plaintiff cannot establish the existence of a hostile work environment because, even taken in the light most favorable to her, Plaintiff's allegations and evidence (or, more accurately, the lack thereof) fail to satisfy the first two required elements: that she experienced intentional discrimination *because of her sex*, or that any such discrimination was *severe and pervasive.*

To determine whether an environment is hostile, the Court must consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 168 (3d Cir. 2013).  Thus, to survive summary judgment, Plaintiff must present evidence that the workplace was permeated with sex-based discriminatory intimidation, ridicule, or insult that was so severe or pervasive that it altered the conditions of her employment and created an abusive working environment.  *Morgan*, 536 U.S. at 116; *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 278-79 (3d Cir. 2001).

As the Third Circuit has explained, this "totality of the circumstances analysis does not require the District Court to cobble together unsubstantiated theories from otherwise innocuous facts." *Fichter v. AMG Res. Corp.*, 528 F. App'x 225, 232 (3d Cir. 2013) (citation omitted). Importantly, these "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a "general civility code" and that "[p]roperly applied, they will filter out

complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 2283–84, 141 L. Ed. 2d 662 (1998). Accordingly,

> Garden variety disagreement and tribulations in the workplace [is] not addressed by Title VII as discrimination in the terms and conditions of employment based on a prohibited factor . . . the vicissitudes of everyday life in the workplace do not rise to the level of a hostile work environment; something more is required. Rude behavior and disagreement . . . would not meet the requirements to show a hostile work environment.

*Williams v. Pa. Human Relations Comm'n*, No. 14-1290, 2016 WL 6384612, *24 (W.D. Pa. Nov. 21, 2016), *aff'd*, 870 F.3d 294 (3d Cir. 2017).

Here, Plaintiff's hostile work environment claim fails as a matter of law because Plaintiff cannot satisfy the *prima facie* requirements that she suffered discrimination *because* of her sex, or that *severe or pervasive* conditions existed that altered the conditions of her employment.[4] Rather, the conduct of which Plaintiff complains and describes as "harassing" reveals nothing more than a distaste for the demanding management and supervision of her boss in a challenging industry. Indeed, Plaintiff's own failure to report any such conduct to anyone at MEF prior to October 30, 2018, reveals the lack of any severe or pervasive harassment and, when she finally did report grievances concerning Roman, she focused not on any sexual misconduct, but rather on Roman's management style. SUMF ¶ 157 ("Nevertheless, [Roman]'s 'inappropriate behavior' is the least of my concern."). Likewise, Barbounis' request four months later that Roman be brought back into the Forum's offices and become her direct supervisor once again, SUMF ¶ 173, belies her allegation that she suffered discrimination or severe and pervasive sexual harassment.

---

[4] As set forth above, Barbounis' allegations of sexual assault in March 2018 are time barred and thus cannot support her *prima facie* case for sex-based discrimination or sexual harassment.

In short, Plaintiff specifically acknowledges that no sexual harassment or discrimination occurred in the workplace between August 24, 2018 (the 300-day lookback from the date that she filed her charge) and her voluntary resignation from the Forum on August 7, 2019.  SUMF ¶ 150.  Indeed, with the exception of her complaint to the Forum's human resources director on October 30, 2018, and her meeting and subsequent communications with Daniel Pipes in early November 2018 (which contained no sex-based discrimination or harassment allegations save for the time barred incidents in early 2018), the record contains no evidence whatsoever that Barbounis suffered any sex-based discrimination or harassment, much less any severe and pervasive sex-based harassment that would be actionable.  Instead, the record shows:

- Barbounis admitting that she never once complained to Roman that his alleged behavior was unwelcome or harassing, stating instead that she was attempting to "kill him with kindness." SUMF ¶ 100.

- Barbounis admitting that between the inception of her employment and October 29, 2018, she never complained to Daniel Pipes or the Forum's human resources department about Roman's conduct.  SUMF ¶¶ 84, 85, 95-98, 100.

- Barbounis admitting that, despite her allegation that Roman was acting "creepy" since the inception of her employment, and that Roman physically assaulted her on March 4, 2018, she enthusiastically agreed to accompany him on a work trip to Israel less than 10 days later. SUMF ¶ 72.

- Barbounis admitting that despite framing the allegations as "sexual assault" in her Complaint, Roman's alleged actions at AIPAC and in Israel were "the least of my concerns" and that her real concerns were with Roman's management style. SUMF ¶ 150.

- Barbounis admitting that after Roman was removed from the office by Pipes in November of 2018, Barbounis' only complaint about Roman's behavior was that Roman allegedly lied to Pipes about Barbounis' work performance, but that Barbounis never suffered any adverse consequences as a result. SUMF ¶ 184.

9

- Barbounis admitting that she wanted Roman back in the office in March of 2019 "for the good of the organization."  SUMF ¶¶ 172-73.

- A complete lack of any record evidence or actionable allegations between Roman's return to the office and Barbounis' resignation. SUMF ¶ 184.

- Barbounis admitting that she was never demoted, written-up, docked in pay, suspended or involuntarily terminated, or that she ever suffered any tangible employment action as a result of Defendants' alleged conduct.  SUMF ¶ 126.

Instead, Plaintiff's complaint is riddled with vague allegations that she was sexually harassed because Roman stood "uncomfortably close" to her on occasion, looked at and monitored her and the rest of the staff, and was dismissive and rude to her and other employees.  When pressed on these allegations in her deposition, Plaintiff again vaguely referred to such instances of "creepy" behavior but was unable to articulate a single specific, coherent instance of severe and pervasive sexual harassment.

As such, Plaintiff plainly fails as a matter of law to support a *prima facie* case for sex discrimination because the incidents on which Plaintiff relies to support her claims were not sufficiently severe or pervasive to create a hostile-work environment.

### 3.     Plaintiff Has Failed to Establish That She Was Constructively Discharged.

Plaintiff has produced no direct evidence that her voluntary resignation was the result of constructive discharge by the Forum. The record establishes that Plaintiff voluntarily chose to leave her employment at the Forum because she was frustrated with the Forum's restrictions on her activities with Tommy Robinson in the United Kingdom.  SUMF ¶¶ 137, 138, 301, 317.

To state a claim for constructive discharge under Title VII, "a plaintiff must show that the employer knowingly permitted conditions of discrimination in employment so intolerable that a

reasonable person subject to them would resign." *Brown v. Kessler Inst. for Rehab. Inc.*, 504 F. App'x 83, 85 (3d Cir. 2012).

Plaintiff relies on conclusory allegations that she was constructively discharged as evidence that she suffered a tangible employment action. Such reliance is insufficient to defeat summary judgment. *See Pennsylvania State Police v. Suders*, 542 U.S. 129, 140-41 (2004) ("Constructive discharge ranks as a tangible employment action only when a supervisor's official act precipitates the constructive discharge"). In order to establish constructive discharge, the plaintiff must show "conditions of discrimination so intolerable that a reasonable person would have resigned"—this is something more than a mere hostile environment. *Konstanatopoulos v. Westvaco Corp*., 112 F.3d 710, 718-19 (3d Cir. 1997).

Based on the summary judgment record, Plaintiff has not established a hostile environment claim and therefore cannot establish a constructive-discharge hostile environment claim as a matter of law.

4.    **Plaintiff's Claims For Hostile Work Environment Sexual Harassment Are Barred By The Supreme Court's Precedent In *Faragher* and *Ellerth*.**

Under the *Faragher-Ellerth* doctrine, where no tangible employment action is taken against the employee, "the employer may escape liability by establishing, as an affirmative defense [known as the Faragher-Ellerth defense], that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided." *Vance v. Ball State Univ*., 570 U.S. 421, 424 (2013). "This a two part affirmative defense for the employer, centered around an employer's effort to install effective grievance procedures as well as the employee's effort to report harassing behavior." *Rorke v. Toyota*, 399 F. Supp. 3d 258, 279 (M.D. Pa. 2019).

"A tangible employment action is a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Moody v. Atlantic City Board of Education*, 870 F.3d 206, 216 (3d Cir. 2017).   Here, because there is no dispute that no tangible employment action was taken against Plaintiff, as she was never subjected to discipline, demotion, docked pay, reduced responsibilities or termination.   Thus the only relevant questions for summary judgment are whether the Forum acted reasonably in its efforts to prevent or correct any harassing behavior and whether Barbounis unreasonably failed to take advantage of the corrective policies provided by the Forum.   The record conclusively establishes that the answer to both questions is "yes."

a.    **The Forum Exercised Reasonable Care To Prevent And Promptly Correct Any Harassing Behavior.**

The typical method by which employers exercise reasonable care is by implementing an anti-discrimination and harassment policy, informing and training employees on the policy, and investigating and remedying instances of misconduct reported in accordance with that policy. *See, e.g., Jones v. Southeastern Pa. Transp. Auth.,* 796 F.3d 323, 329 (3d Cir. 2015) (holding that adequate training of employees on an anti-discrimination policy and responsive action taken following a report of misconduct will satisfy the first prong).   "An effective grievance procedure—one that is known to the victim and that timely stops the harassment—shields the employer from Title VII liability for a hostile environment." *Bumbarger v. New Enterprise Stone and Lime Co., Inc.*, 170 F. Supp. 3d 801, 838 (citing *Bouton v. BMW of N. Am., Inc*., 29 F.3d 103, 110 (3d Cir. 1994)).

"Prompt remedial action" is conduct "reasonably calculated to prevent further harassment." *Bumbarger*, 170 F. Supp. 3d at 838.   An investigation by the employer into

allegations of harassment, by definition, is adequate remedial action. *Young v. City of Phila. Police Dep't,* 94 F.Supp.3d 683, 700 (E.D.Pa.2015).  When an employer goes beyond merely investigating and implements a response that remedies the conduct of which an employee complained, such remedial action is sufficient to insulate the employer from liability under Title VII as a matter of law. *Bumbarger*, 170 F. Supp. 3d at 838 (citing *Weston*, 251 F.3d at 427).

Here, the record evidence establishes, and Plaintiff admits, that the Forum had an adequate policy and grievance procedure implemented and reasonably calculated to prevent and correct unlawful harassment. The policy provides:

> If you believe that you are the victim of impermissible harassment or become aware of another employee being subjected to impermissible harassment, you must promptly report the facts if the incident to your supervisor or to the president or director. The MEF will promptly, appropriately, and with a much confidentiality as possible investigate any reports of offensive conduct.

> After the investigation, appropriate action will be taken. Any Employee who is found to have engaged in harassment of another employee will be subject to disciplinary action up to and including discharge. If deemed appropriate, an accused harasser may be suspended without pay pending investigation. In all cases we will advise the complaining employee and the accused of the outcome of the investigation.

SUMF ¶ 40, 46.  Furthermore, Pipes had an open-door policy concerning any and all issues that employees might face and encouraged them in writing to tell him about any such issues.  SUMF ¶ 43.  Barbounis admits that she was aware of the Forum's policy, that she was trained on that policy by the Forum's director of human resources, and that she understood it.  SUMF ¶ 44.

Although Plaintiff vaguely alleges that she was subject to harassment by Roman from the inception of her employment in October of 2017, which culminated in alleged incidents of sexual assault and harassment in March of 2018, Plaintiff admits that she did not avail herself of the Forum's anti-harassment policy and never told anyone at the Forum about her allegations of

sexual harassment until October 30, 2018, when she had a conversation with the Forum's human resources director.  SUMF ¶ 85.  During that conversation, Barbounis reported her allegations concerning Roman's inappropriate behavior in Washington, D.C. and Israel eight months earlier. SUMF ¶ 139.  Though Barbounis levied numerous complaints about Roman's management style, the Washington and Israel incidents were the only aspects of her complaint that concerned sexual harassment or misconduct.  On November 1, 2018, the Forum's human resources director reported those allegations and others concerning various issues with Roman's management style, to Pipes.  SUMF ¶139.

Pipes immediately launched an investigation.  He interviewed Roman, who steadfastly denied any such sex-based misconduct, but admitted that his management style could be perceived by some as demanding or overbearing.  SUMF ¶¶ 142-145.  Pipes also interviewed Barbounis, who related her complaints about Roman's management style and the one instance of alleged sexual misconduct in Israel, as well as all other office employees.  SUMF ¶ 147-149. Pipes also held an all-hands meeting with all Forum office employees except Roman, during which he solicited the employees, including Barbounis, to state any grievance they might have with Roman, whatever the basis.  SUMF ¶ 151.  Barbounis added no new allegations.  SUMF ¶153.  Confronted with conflicting stories about the sex-based misconduct, but with Roman's acknowledgement that he had made mistakes in his general style of management, Pipes implemented substantial remedial measures that included the following:

- Roman would no longer supervise Barbounis and would only become her supervisor in the future in the event that she consented to it.  SUMF ¶¶156-159.

- Roman would not contact Barbounis outside of normal business hours except via the Forum's email. SUMF¶¶ 156-159.

- Roman was prohibited from calling or texting Barbounis outside of normal business hours, from engaging with Barbounis on social media, and from participating in social activities or business trips with Barbounis and other employees.  SUMF ¶¶ 156-159.

Pipes explained to Barbounis that he was imposing these restrictions on Roman despite the fact that Roman denied any sexually inappropriate conduct toward Barbounis.  SUMF ¶¶ 156-159.

Pipes also asked Barbounis whether the remedial measures that he had imposed were sufficient to address her concerns.  SUMF ¶¶147-149.  On November 4, 2019, Pipes wrote to Barbounis: "Finally, I ask you to respond to three questions: 1.  Do you agree to my proposed three changes? If not, please specify. 2. Are you satisfied with how the Forum has handled this matter? If not, what additional steps do you request? 3. Do you consider this matter satisfactorily resolved?"  SUMF ¶¶ 147-149.

Barbounis responded to Pipes' inquiries: "Gregg made unwanted sexual advances and put me in an uncomfortable situation.  <u>However, I felt at the time I handled the issue and have not had an incident since.  Nevertheless, his "inappropriate behavior" is the least of my concern.</u> More troubling is the deceit and abusive behavior I witness and experience on a weekly basis which increased after the Israel incident."  SUMF ¶ 150 (emphasis added).  Concerning her issues with Roman's management style, Barbounis further stated:  "If the absurd requests, mismanagement, outrageous expectations and demands weren't enough, the abusive tone, language, never-ending lies and manipulation have the entire office in a constant state of disarray. . . .It is because of these concerns listed above that I do not believe Gregg's presence in the office is beneficial to MEF as a whole.  I would be happy to elaborate on any of the aforementioned instances."  SUMF ¶ 150.

Barbounis also agree with the restrictions placed on Roman, including his removal as her supervisor, stating that she was pleased with the speed of the inquiry and noted that, as Pipes requested, she would submit a "separate detailed description of the events that occurred on March 14 in addition to all corroborating evidence."  SUMF ¶ 150.

Barbounis provided Pipes with text messages from March 14 to her friend and fellow employee of the Forum, Patricia McNulty, in which she made remarks like, "Gregg weirds me out," "I'm so uncomfortable," "I can't wait to come home," and "I'm going to put a knife in my room . . . He's creepy . . . Talking about stuff he shouldn't be and too drunk . .  but I have [my husband] FaceTiming me to save me lol . . . I really will stab him."  SUMF ¶ 150.  Barbounis never mentioned, in these and other messages, Roman sexually assaulting her or sexually propositioning her..  SUMF ¶ 150.

Pipes then sent a letter to Roman outlining the new terms of his employment with the Forum, which included the following changes:

> No involvement in the Forum's accounting, finances, office affairs, personnel issues, and property management; No authority over the Forum's administrative staff; No authority to approve expenses of projects or initiatives; No authority to hire or fire Forum employees, including project directors; No authority to offer or approve contracts on behalf of the Forum; No authority over Middle East Forum Education Fund monies; No access to the Forum's Philadelphia office; No contact with the Forum's female employees outside of business hours other than using Forum e-mail – that means no after-hours telephone calls, texts, other e-mails, social media, drinks, meals, outings, trips, shared lodgings, and so forth – and during business hours, interactions will be business-related, within reason.

SUMF ¶ 159.  Pipes also informed Roman that the plan for Roman to succeed Pipes as principle of the Forum had been suspended.  SUMF ¶ 159.

Between the conclusion of Pipes' investigation and remedial efforts and the end of her employment in August 2020, Barbounis never complained about misconduct by Roman again.

16

To the contrary, on March 8, 2019, Barbounis approached Pipes and requested that Pipes bring Roman back to the office in a leadership role – a reversion that Roman agreed to largely because of the fact that it was Barbounis' idea to bring him back.  SUMF ¶¶ 184, 172-77.

The Forum's handling of Barbounis' lone sex-based complaint in November 2018 is a paradigmatic example of an employer taking prompt remedial action and enforcing its anti-harassment policies as soon as a complaint is made and it is precisely the kind of action that the Faragher-Ellerth doctrine is intended to encourage and incentivize.

> **b.**  ***Faragher-Ellerth* doctrine is intended to encourage and incentivize.  Plaintiff Unreasonably Failed To Take Advantage Of the Forum's Preventative Or Corrective Opportunities.**

Plaintiff claims that Roman sexually harassed, assaulted and propositioned her in early March 2018, but admits that she did not report that conduct until October 30, 2018 – nearly eight months later.  "Such a delay, without sufficient explanation, is unreasonable." *Cacciola v. Work N Gear*, 23 F.Supp.3d at 518, 531 (E.D. Pa. 2014) (finding that the plaintiff's failure to file a report for nine months was unreasonable); *see also Minix v. Jeld–Wen, Inc.,* 237 F. App'x 578, 586 (11th Cir.2007) (finding that four months, six months, and a year was unreasonable); *Gawley v. Indiana Univ.,* 276 F.3d 301, 312 (7th Cir.2001) (affirming summary judgment for employer because failure to report harassment for seven months "constitute [d] an unreasonable failure to take advantage of the [employer's] corrective procedures."); *Rodriguez v. Auto Zone*, No. 12–CV–3916, 2014 WL 197894, at *9–10 (D.N.J. Jan. 14, 2014) (concluding that the plaintiff's failure to take advantage of the defendant's preventative measures for four months without explanation was unreasonable); *Bumbarger*, 170 F. Supp. 3d at 845 (Plaintiff waited nine months before reporting sexual harassment and the "Court therefore finds that Plaintiff unreasonably failed to take advantage of Defendant's preventative measures"); *Taylor v. Solis,* 571 F.3d 1313, 1320 (D.C.Cir.2009) (finding a five or six month delay unreasonable)..  Delays

become particularly unreasonable where, as here, the complaining employee has specific knowledge and experience with the reporting process. *See Jones v. SEPTA*, 796 F.3d 323, 329 (3d Cir. 2015) (a delay in reporting misconduct was unreasonable where the plaintiff knew of the reporting procedures).

Thus, to defeat the Forum's summary judgment motion, Barbounis would have to show that there is evidence from which a reasonable jury could conclude that she reasonably availed herself of the Forum's reporting procedures and that, despite her doing so, the Forum did not "exercise reasonable care to prevent and correct promptly any sexually harassing behavior." *Newsome v. Admin. Office of the Courts of the State of New Jersey*, 51 F. App'x 76, 80 (3d Cir. 2002) (quoting *Ellerth*, 524 U.S. at 765).  As a matter of law, and based on the undisputed record, she cannot do so, and her claims must therefore fail.

**B.      The Forum Is Entitled To Summary Judgment On Counts II, V And VII Because Plaintiff Has Not Established A *Prima Facie* Case For Retaliation.**

**1.      The Record is Devoid of Evidence of Any Employment-Based Retaliation Against Barbounis.**

Title VII prohibits retaliation by making it unlawful for employers to discriminate against "any individual . . . because he has opposed any . . . unlawful employment practice" or because that individual has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing."  42 U.S.C. § 2000e-3(a).  Title VII retaliation claims are analyzed pursuant to the *McDonnell Douglas* burden-shifting framework, which requires to first establish a *prima facie* case of retaliation by demonstrating that: (1) she engaged in conduct protected under Title VII; (2) the employer took a materially adverse employment action against her; and (3) there was a causal connection between the protected conduct and the materially adverse employment action.  *Young v. City of Philadelphia Police Dep't*, 651 F. App'x 90, 95 (3d Cir. 2016).  If a plaintiff is successful in establishing a prima facie case of retaliation, then

the burden shifts to the employer articulate a legitimate, non-retaliatory reason for the materially adverse employment action. *Id.* Once a legitimate, non-discriminatory reason is articulated, then the burden shifts back to the plaintiff to "convince the factfinder both that the employer's proffered reason was [pretext], and that retaliation was the real reason for the adverse employment action." *Id.* (citation omitted). In short, "to prove causation at the pretext stage, the plaintiff must show that she would not have suffered an adverse employment action **'but for'** her protected activity." *Id.* at 96 (emphasis added); *Univ. of Texas Sw. Med. Ctr. v. Nassar,* 133 S. Ct. 2517, 2533, 186 L. Ed. 2d 503 (2013).

Here, Plaintiff's claim for retaliation fails because she cannot establish that the Forum took a materially adverse employment action against her, or that any such action taken against her would not have been taken "but for" her protected activity. Plaintiff alleges that the Forum retaliated against her by "refusing to investigate Plaintiff's reports of discrimination and harassment in the workplace" and "refusing to initiate prompt corrective actions."[5] (Compl. at ¶¶ 521-524). Plaintiff's allegations fail as both a matter of fact and a matter of law.

The Supreme Court of the United States explained the standard for showing a materially adverse employment action as follows: "[t]he anti[-]retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67, 126 S. Ct. 2405, 2414, 165 L. Ed. 2d 345 (2006). Courts have recognized tangible injuries or harm to include changes in employment status such as the cancelling of health insurance, a thirty-day suspension without pay, failure to promote,

---

[5] Plaintiff also alleges that she was retaliated against because she was subjected to a campaign of severe and pervasive retaliation which also created a "hostile work environment." (Compl. at ¶ 526). Plaintiff's failure to establish a factual basis or adduce any evidence in support of any "severe and pervasive" sexual harassment sufficient to create a hostile work environment is addressed above.

reassignment with significantly different job responsibilities, transfer to more arduous, dirtier, or less desirable duties, or a decision causing a significant change in employment benefits. *See, e.g., Burlington N.*, 548 U.S. at 55. Notably, an employee's subjective view of an employer's conduct cannot be used to show an adverse employment action in the context of retaliation. *Burlington N.*, 548 U.S. at 68-69.

The Third Circuit has likewise made clear that challenging an employer's investigation in support of a retaliation claim is a summary judgment-dead end. In *Money v. Provident Mutual Life Ins. Co.*, 189 F. App'x 114, 116-17 (3d Cir. 2006), the plaintiff argued that the employer's "investigation of the incident was deliberately insufficient." The Third Circuit affirmed summary judgment to the employer, finding that this represented "nothing more than a naked credibility attack, unsupported – and often directly contradicted – by the record" and that "this argument does not assist [the plaintiff] in meeting [her] *McDonnell Douglas* burden." Likewise, in *Geddis v. Univ. of Delaware*, 40 F. App'x 650 (3d Cir. 2002), the plaintiff claimed that the employer had summarily discharged him without conducting any investigation. The Third Circuit affirmed summary judgment to the employer, finding that "the lack of investigation alone does not establish that the [the employer] fired [the plaintiff] based on discriminatory reasons." *Id*. at 653; see also *Bloch v. Mack Trucks, Inc.*, 240 F. Supp. 3d 365, 375 (E.D. Pa. 2017) ("courts in this circuit have found challenges to the adequacy of an investigation insufficient to establish pretext . . . Clearly . . . even if [the employer] conducted a flawed or incomplete investigation, there is no indication whatsoever that it was pretext for [] discrimination.").

The record evidence demonstrates conclusively that, despite the vague and tardy nature of her complaints, the Forum took Plaintiff's issues with Roman's seriously and resolved the issue to her satisfaction. SUMF ¶¶ 139-160. Indeed, in March 2019, Barbounis requested that

Roman be brought back into the office, acknowledged that she was "impressed" with the change in Roman's behavior, and she would resume full communications with Roman via email, phone and Telegram during normal business hours.  SUMF ¶¶ 172-180.  Notably, Barbounis admits that during the period of time spanning from October 30, 2018 through her resignation in August 2019, she never utilized the Forum's anti-harassment policy to report any additional allegations of misconduct or retaliation by Roman or anyone else at the Forum.  SUMF ¶ 184.

As instances of retaliatory conduct, Barbounis points to a single instance during which Roman allegedly lied to Pipes about Barbounis' performance on a given project.  But Barbounis admits that she suffered no materially adverse employment action as a result of that alleged report – in fact, Barbounis admits that Pipes did "nothing" about it.  SUMF ¶ 184.  Beyond that, the only adverse action that Barbounis alleges were the reprimands that she received from Pipes concerning her work with Tommy Robinson and her willful refusal to follow his instructions.  SUMF ¶¶ 232, 246, 257. 309.  But even then, Barbounis does not and cannot allege, much less establish, that Pipes' reprimand led to some tangible employment action.

During the period of time that she alleges retaliation by the Forum, Roman and Pipes, Barbounis was promoted, received a bonus, and requested that Roman be brought back into the Forum's offices as her supervisor.  SUMF ¶¶ 164, 165, 168-69, 172-173.  She was never fired, demoted, or had her pay or responsibilities reduced.  Because Plaintiff cannot point to a materially adverse employment action caused by retaliation by the Forum, Plaintiff's retaliation claims must be dismissed.

      **2.**      **To the Extent Barbounis' Relies On Litigation Brought Against Her by the Forum to Support Her Claims of Retaliation, Those Claims Must Also Fail.**

In her Amended Complaint, Plaintiff alleges that "Defendants have accused Plaintiff, Lisa Barbounis of misappropriating MEF money without any valid evidence to support the

frivolous claims," and that "Defendants have threatened subsequent legal action based on unfounded allegations without evidence to support same."  (Compl. at ¶¶ 489 and 493).  Though it is unclear from the Complaint whether such litigation activity is part of Plaintiff's retaliation claims, Defendants address those meritless allegations briefly here.

The Supreme Court set the standard for addressing when litigation is "a mere sham [under antitrust law] to cover … an attempt to interfere directly with the business relationships of a competitor."  *Professional Real Estate Investors, Inc. v. Columbia Picture Industries, Inc*., 508 U.S. 49, 50 (1993) ("*PRE*").  The *PRE* Court held that "an objectively reasonable effort to litigate cannot be a sham regardless of subjective intent" and presented a two-part definition of "sham litigation":

> First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits…. Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation.

*Id*. at 57, 60 (emphasis added).  Applying this standard to the case before it, the *PRE* Court held that because Columbia's underlying lawsuit satisfied F. R. Civ. P. 11 standards, it was not "objectively baseless;" therefore, Columbia's allegedly unlawful economic motivations for suing *PRE* "were rendered irrelevant by the objective legal reasonableness of the litigation."  *Id*. at 65-66.  Significantly, in evaluating whether a lawsuit is "objectively baseless," the Court stated that "[a] winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham."  *Id*. at 60 n.5.

The Counterclaims and the Trade Secret Action brought by the Forum against Barbounis are not objectively baseless as a matter of law.  This Court approved the Forum's Counterclaims against Barbounis, and whether the Forum is entitled or not to summary judgment (as set forth below), it is clear they are far from baseless.  Likewise, Judge Sanchez found in the Trade

Secrets Action that the Forum had established a reasonable likelihood of success on the merits on

its claims that Barbounis had misappropriated its trade secrets and confidential information.

Moreover, the Forum's judicial activity is protected by judicial privilege and cannot serve

as the basis for a retaliation claim.  It is well-established that:

> [a]ll charges, all allegations and averments contained in regular
> pleadings addressed to a filed in a court of competent jurisdiction,
> which are pertinent and material to the relief sought, whether
> legally sufficient to obtain it or not, are **absolutely privileged**. . . .
> This privilege rests on public policy, which allows all suitors to
> secure access to the tribunals of justice with whatever complaint,
> true or false, real or fictitious, they choose to present, provided
> only that it be such as the court whose jurisdiction is involved has
> power to entertain and adjudicate.

*Greenberg v. Aetna Ins. Co.*, 235 A.2d 576, 578 (Pa. 1967). (quoting *Kemper v. Fort*, 67 A. 991

(Pa. 1907)) (emphasis added).

In *Probst v. Ashcroft*, the Seventh Circuit held that actions taken in a prior lawsuit

between the parties could not support a Title VII retaliation claim, "because they are all excluded

from consideration by the litigation privilege – a doctrine that simply precludes actions taken in

the adversarial setting of litigation and otherwise redressable through court process from

supporting further litigation." 25 Fed. Appx. 469, 471 (7th Cir. 2001).  Similarly, *in Frederic v.*

*Reed Smith Shaw & McClay,* the Court considered the plaintiff's claim that statements the

defendant made during proceedings before the Pennsylvania Human Relations Commission

constituted retaliation in violation of Title VII and the PHRA.  1994 WL 57212, at *1 (E.D. Pa.

Feb. 18, 1994).  In granting the defendant's motion to dismiss, the Court noted that "[s]tatements

made in judicial and quasi-judicial proceedings are absolutely privileged, and the privilege

cannot be destroyed by abuse."

The Forum's resort to the judicial system, necessitated by Barbounis' own conduct, is

therefore absolutely protected by both the First Amendment and Pennsylvania's judicial

privilege, and cannot serve as the basis for a retaliation claim by Barbounis.[6]

    **C.**    **The Forum Is Entitled To Summary Judgment On Count III Because Plaintiff Has Not Established A *Prima Facie* Case For Negligent Hiring, Retention or Supervision, And Because Her Claim Is Barred By The Pennsylvania Workers Compensation Act.**

Plaintiff's claim for negligent hiring, retention and supervision is so significantly flawed that it bears little need for discussion.  In Pennsylvania, a plaintiff seeking to recover on a negligent hiring theory must show: (1) employer defendant knew or should have known of the violent propensity of the employee and (2) such employment creates a situation in which a third party may be harmed. *Rios v. Marv Loves 1*, No. CV 13-CV-1619, 2015 WL 5161314, at *13 (E.D. Pa. Sept. 2, 2015).

Plaintiff alleges that the negligent hiring, retention and supervision of Gregg Roman "directly caused the sexual assault of Plaintiff, Lisa Barbounis" and that "as a result of "Greg Roman's conduct, Plaintiff, Lisa  suffered a physical injury."  (Compl. at ¶¶ 535-537).  Even assuming these allegations are assumed to be true (which Defendants vigorously dispute), Barbounis has adduced no evidence whatsoever that would tend to prove that the Forum or Pipes had reason to know or even suspect that Roman had a "violent propensity."  No such evidence exists.

Other than the allegation of sexual assault, the only other basis asserted by Plaintiff for her negligence claim is that Plaintiff was subjected to "severe and pervasive sexual

---

[6] Were it otherwise, every counterclaiming Defendant in a Title VII action would face a retaliation claim, and employees facing suits by their current or former employers could insulate themselves from suit simply by engaging in protected activity.  Obviously, this is not the law. *See, e.g., See, e.g*., *Nazir v. United Air Lines*, 2009 WL 2912518 (N.D. Cal. Sept. 9, 2009) (applying *PRE* objectively baseless standard to dismiss Title VII retaliation challenge to a losing motion for contempt and sanctions facing an execution of judgment on the plaintiff's home that was stricken by the court); *Ungureanu v. A. Teichart & Son*, 2012 WL 1108831 (E.D. Cal. April 2, 2012) (*Noerr-Pennington* doctrine bars Title VII retaliation challenge to litigation conduct in a workers' compensation proceeding when there is no record evidence of a sham).

harassment…by Gregg Roman."  (Compl. at ¶ 537).  Such garden variety claims for sexual

harassment cannot be recast in negligence because they are preempted by the Pennsylvania

Human Relations Act, 43 Pa. Stat. Ann. § 962(b).  *Roadman v. Select Specialty Hosp.*, No. 3:16-

CV-246, 2020 WL 571058, at *6 (W.D. Pa. Feb. 5, 2020) ("For acts of employment

discrimination, the PHRA exclude[s] any other action, civil or criminal based on the same

grievance of the complainant concerned."); *see also Swanson v. Nw. Human Servs., Inc.*, No. 05-

cv-3054, 2006 WL 3354145, at *6 (E.D. Pa. Nov. 2, 2006), aff'd, 276 F. App'x 195 (3d Cir.

2008) ("The PHRA preempts negligence claims that allege a failure to train, supervise and

investigate").  Consequently, negligent supervision claims arising out of employment

discrimination cases in Pennsylvania must be brought under the PHRA."  *Randier v. Kountry*

*Kraft Kitchens*, No. 1:11-cv-0474, 2012 WL 6561510, at *14 (M.D. Pa. Dec. 17, 2012)).

        "A failure to bring a claim under the PHRA does not enable the claim to be brought as a

common law tort cause of action. This is because if a common law action for the same claims

were recognized, it would give the claimant an opportunity to circumvent the carefully drafted

legislative procedures."  *Roadman*, 2020 WL 571058, at *6 (dismissing a plaintiff's negligent

supervision claim because "the claim, in essence, is a hostile work environment claim") (internal

quotations omitted) (citing *Wolk v. Saks Fifth Ave. Inc.*, 728 F.2d 221, 224 (3d Cir. 1984)

(denying common law tort claims premised on sexual harassment as preempted by PHRA); *see*

*also Carey v. KOS Pharm., Inc.*, No. CIV.A. 305CV0688, 2006 WL 1071774, at *3 (M.D. Pa.

Apr. 21, 2006) ("there are no allegations apart from the sexual harassment claim in plaintiff's

complaint, and as a result, the negligence claim is preempted").*Fantazzi v. Temple Univ.*, No.

CIV. A. 00-CV-4175, 2001 WL 872455, at *2 (E.D. Pa. June 11, 2001) ("Since [plaintiff's]

common law tort claim for negligent supervision is based upon the same facts as his claim for

discrimination pursuant to the PHRA, it is excluded by the PHRA");

In sum, the only independent fact alleged by Plaintiff to support her negligence claim was that Roman sexually assaulted her. The remainder of Plaintiff's negligence allegations are identical to those alleged to support her Title VII claims, and as a result, her negligence claims are preempted by the PHRA and must be dismissed.[7]

Even if Barbounis could establish a case for negligence, such "torts against an employee arising out of an employment based injury are preempted by the Worker's Compensation Act." *Rorrer v. Cleveland Steel Container*, 712 F. Supp. 2d 422, 437 (E.D. Pa. 2010) (finding that negligent hiring claims predicated on sexual harassment by supervisor to be preempted by Worker's Compensation Act). The lone exception to this requirement permits employee to sue his employer in negligence if the employer's negligence enabled a co-worker to intentionally injure the employee for purely personal reasons." *Sabo v. Lifequest, Inc.*, 1996 WL 182812, *2 (E.D.Pa.1996). Plaintiff here does not allege that Roman assaulted or harassed her for "purely personal reasons;" in fact, she alleges just the opposite – that she was harassed along with others due to her sex. *See, e.g., Rorrer*, 712 F. Supp. 2d at 437 (finding negligence claims preempted where plaintiffs alleged that defendant harassed multiple co-workers, and as a result, harassment was preempted by the PWCA). Barbounis' claim for negligent hiring, retention and supervision fails for this secondary reason as well.

**D.      The Forum Is Entitled To Summary Judgment On Counts IV and IX Because Plaintiff Cannot Establish A Claim For "Aiding And Abetting" Discrimination or Retaliation**

In Counts VI and IX, Plaintiff alleges Defendants Pipes and Roman "engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-

---

[7] Critically, Plaintiff has never asserted a common law claim for assault and battery against Roman.

1103(1)(h) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct. (Compl. at ¶ 548; *see also* Compl. at ¶ 558 for similar allegation under the Philadelphia Fair Practices Ordinance).

Plaintiff's aiding and abetting claims are derivative of her discrimination claims asserted under the PHRA and the PFPO; they must be dismissed for the reasons set forth above, namely, that Plaintiff has failed to establish a *prima facie* claim for discrimination or retaliation under either statute against Defendants.  *See Scott v. Sunoco Logistics Partners, LP,* 918 F. Supp. 2d 344, 357 n.5 (E.D. Pa. 2013) ("If the employer is not liable for any discriminatory practice then an individual employee cannot be held liable for aiding and abetting a discriminatory practice"); *Lombard v. Lassip, Inc.*, 2017 WL 6367956, *5, Civ. A. No. 17-964 (E.D. Pa. Dec. 13, 2017) ("For liability to be imposed on an aiding and abetting theory, however, there must be a cognizable predicate offense, i.e. a violation by the employer of the PHRA's primary anti-discrimination provision"); *Dickinson v. Millersville Univ. of Pa*., No. 13-5022, 2014 WL 1327610, at *5 (E.D. Pa. 2014) (same); *see also Elmarakaby v. Wyeth Pharm., Inc*., No. CIV.A. 09-1784, 2015 WL 1456686, at *9 (E.D. Pa. Mar. 30, 2015) ("Individual defendants cannot, however, be liable for violations of Section 955(e) if there is no primary violation of the PHRA."); *see also Fleet v. CSX Intermodal, Inc.*, 2018 WL 3489245, *19 (E.D. Pa. Jul. 19, 2018) ("Because we find [plaintiff] does not meet his burden of showing any discriminatory practice by [employer], neither [individual defendant] can be liable for aiding and abetting a discriminatory practice").

Because Plaintiff cannot survive summary judgment on her discrimination and retaliation claims under the PHRA and PFPO, her claims for aiding and abetting must also fail.

IV.   **LEGAL ARGUMENT IN SUPPORT OF THE FORUM'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY ON ITS COUNTERCLAIMS AGAINST BARBOUNIS.**

The Forum has asserted three counterclaims against Plaintiff Lisa Barbounis: (1) breach of duty of loyalty, (2) civil conspiracy; and (3) fraudulent misrepresentation.[8]  As set forth below, the record evidence demonstrates that there is no dispute of material fact concerning Barbounis' liability on these claims, and as such, the Forum is entitled to partial summary judgment on each counterclaim asserted against Barbounis.

A.   **The Forum Is Entitled To Summary Judgment On Its Counterclaim For Breach Of Duty Of Loyalty.**

"There can be no doubt that an agent owes a duty of loyalty to his principal and in all matters, affecting the subject of his agency, he must act with the utmost good faith in the furtherance and advancement of the interests of his principal."  *Sylvester v. Beck*, 406 Pa. 607, 610, 178 A.2d 755, 757 (1962).  This duty "requires that he give the principal all information of the subject matter that comes to his knowledge.  *Id.* (citing *Shannon v. Baltz*, 398 Pa. 431, 158 A.2d 558 (1960); *Kribbs v. Jackson*, 387 Pa. 611, 129 A.2d 490 (1956)); *see also SHV Coal, Inc. v. Continental Grain Co.*, 376 Pa.Super. 241, 545 A.2d 917 (1988) ("An agent is a fiduciary with respect to matters within the scope of the agency, and is required to act solely for the benefit of her principal in all matters concerned with the agency.").

Thus, in Pennsylvania, it is black letter law that, in the absence of the employer's consent, "no man can serve two masters," at least where the interests of those masters conflict.

---

[8] In accordance with this Court's prior order, the Forum has limited the basis for its counterclaims to Barbounis' "concealment of Mr. Thomas' misappropriation of funds and her travels to Europe under false pretenses."  Doc. 52.  The Forum's claims are NOT based on Barbounis' unauthorized support for Robinson's political activities, including Robinson's election campaign in May 2019; Robinson's involvement with BREXIT and the United Kingdom Independence Party, or Robinson's political activities after Plaintiff's departure from the Forum, which are the subject of a separate lawsuit.

*Onorato v. Wissahickon Park, Inc.* , 430 Pa. 416, 244 A.2d 22 (1968).  As such, an employee's

duty requires him not to act during the period of his employment for persons whose interests

conflict with those of the employer in matters for which the employee is employed.  Restatement

(Second) of Agency § 394.

      To prevail on a claim for breach of duty of loyalty against Barbounis, the Forum must

establish that "(1) that [Barbounis] negligently or intentionally failed to act in good faith and

solely for the benefit of [the Forum] in all matters for which she was employed; (2) that [The

Forum] suffered injury; and (3) that [Barbounis'] failure to act solely for [the Forum's] benefit ...

was a real factor in bring[ing] about [the Forum's] injuries."  *Solid Wood Cabinet Co. v.*

*Partners Home Supply*, No. CIV.A. 13-3598, 2015 WL 1208182, at *6 (E.D. Pa. Mar. 13, 2015).

The record here conclusively demonstrates that all three elements are satisfied.

      **1.**     **Barbounis Negligently or Intentionally Failed to Act in Good Faith**
            **and Solely for the Benefit of the Forum in All Matters for Which She**
            **was Employed.**

      While the record indicates that Barbounis became may have become aware that Thomas

may have misappropriated some of the Forum's funds as early as December of 2018 when Vinny

Sullivan, an associate of Tommy Robinson, discussed the misappropriated funds with her.

SUMF ¶ 242.  However, it is undisputed that, as early as March of 2019, Barbounis harbored, at

a minimum, a reasonable suspicion that Thomas had misappropriated a substantial portion of the

monies that the Forum provided for the Robinson rally, after she heard from Jazmin Bishop,

Thomas' domestic partner, that Thomas had stolen the funds.  SUMF ¶¶ 265-71.  Barbounis later

revealed her knowledge of these stolen funds in subsequent conversations with Bishop:

         And I didn't know about the money that he [Thomas] took from
         MEF until you told me.  It was always in the back of my mind
         because it didn't add up and the whole vinney and you thing but he
         said you were crazy and would do anything to destroy him and I

wanted to believe him. **Now that I know I'm obligated to tell my work. What do I do? That's theft.**

SUMF ¶ 266 (emphasis added). She followed up with a clear acknowledgement that Thomas had misappropriated $7,000 from the Forum: "**That's 7 thousand dollars he stole from MEF and Tommy.**" SUMF ¶¶ 267-68.

Later that same day, Barbounis discussed Thomas' misappropriation with Robinson:

> I sent the message to Daniel [Pipes] about the legal fund. I will stay on that and the visa stuff. But after all of that I'm going to walk away from all of this. I recently found out some potentially messy things that have to deal with demos MEF and I need to back away until I figure it all out. **And if I tell MEF which I think I'm obligated to it's not good.** Plus I have jaz harassing me. I'm out.

SUMF ¶ 269 (emphasis added). She continued her conversation with Robinson by directly acknowledging her awareness of the stolen funds and the dilemma she faced: abide her duty to her employer and inform MEF, or protect her relationship with Robinson and the future MEF grant monies that he was expecting to receive:

> **I knew money didn't add up after the first demo but it looks like he kept 7k for himself. If MEF finds out I knew and didn't tell them I'm fucked. If I tell them it's not good for you and your future money.** It's all so messy. And I don't know what to do.

SUMF ¶ 270 (emphasis added).

Ultimately, Barbounis chose Robinson over the Forum, electing not to inform anyone at the Forum about the misappropriated money so as to ensure that the Forum would be willing to continue considering Robinson as a beneficiary of future grants, and ensuring that Barbounis' plan to move to London to work with Robinson would remain viable. As if this betrayal of her duty was not enough, she compounded her breach by working actively with Thomas in an effort to falsely "prove" his innocence. SUMF ¶ 273-76.

At her deposition, although Barbounis denied that she had a fiduciary duty to the Forum (even though she was an agent for the Forum in its relations with contractors in the United Kingdom), she acknowledged that she had an obligation to be truthful at all times.  She attempts to explain away her failure to report the stolen money by claiming that she did not know "for sure" whether the money was actually misappropriated by Thomas.  This convenient excuse is directly contradicted by the record in this matter, but even if Barbounis' explanation of uncertainty is credited, it cannot reasonably be disputed that her suspicions triggered an obligation to report the matter to the Forum for investigation.  She did not do so, instead choosing Robinson over the Forum, and her self-serving plan to move to England over her responsibilities as an employee of the Forum, and in so doing, she failed to act in good faith and for the Forum's benefit in all matters relating to her employment.

### 2.    The Forum Suffered Injury.

There can be no reasonable dispute that the Forum suffered injury from Barbounis' failure to honor her duty and agency to MEF.  Pursuant to the terms of its contract with Thomas, the Forum provided Thomas with $32,000 USD to be used to fund a rally to show support for the free speech rights of Robinson.  SUMF ¶ 191.  The Forum's contract with Thomas detailed the methods and means by which the Forum's money would be spent and the specific costs of the rally that the Forum was to fund.  SUMF ¶ 192.   Under the terms of the contract, in the event that *any* of the money provided by the Forum was misused or misappropriated, the Forum would be entitled to claw back *all* of the monies provided.  SUMF ¶ 193.  Lacking knowledge of Thomas' misappropriation, the Forum was unable to recover not only the monies that Thomas misappropriated directly, but the remaining monies provided under the contract as well.

Furthermore, the Forum subsequently provided additional monies to support Robinson's free speech rights.  SUMF ¶ 293.  Had the Forum been aware at the time that Thomas had

misappropriated a substantial portion of its prior funding, the Forum would not have provided any additional funding to Robinson or Thomas.  The Forum also incurred substantial costs and fees necessitated by Plaintiff's failure to disclose Thomas' misappropriation.  SUMF ¶ 354.

### 3. Barbounis' Failure to Act Solely for The Forum's Benefit was a Real Factor in Bringing About its Injuries.

Likewise, there can be no reasonable dispute that Barbounis' failure to inform the Forum that Thomas had misappropriated the Forum's money was a "real factor" in bringing about the harm suffered by the Forum.  In short, had Barbounis done her duty and informed the Forum that she, at a minimum, harbored suspicions that Thomas had misappropriated the Forum's funds, The Forum could have, and indeed would, have launched an investigation, uncovered the misappropriation, and clawed back not *only* the monies that were misappropriated but *all* of the monies delivered to Thomas under the contract.  SUMF ¶ 193.  And the Forum would certainly have avoided providing Thomas with additional monies in the future. The Forum's investigation, independently checking invoices from vendors working with Thomas, proved Thomas doctored invoices and his own admission of theft makes this point undisputable. SUMF ¶¶ 199, 204.

### B. The Forum Is Entitled To Summary Judgment On Its Counterclaim For Fraudulent Misrepresentation.

The elements of a common-law claim for fraudulent misrepresentation in Pennsylvania are as follows: (1) a misrepresentation; (2) the fraudulent utterance thereof; (3) an intention by the maker that the recipient will be induced to act; (4) justifiable reliance by the recipient on the misrepresentation; and (5) damage to the recipient as a proximate result of the reliance. *Fort Washington Resources, Inc., v. Tannen*, 858 F.Supp. 455, 459 (E.D.Pa.1994). The party alleging fraud has the burden of proving it by clear, precise and convincing evidence, and a summary judgment determination must be made in light of the evidentiary standard to be applied at trial. *Coleman v. Sears, Roebuck & Co.*, 319 F. Supp. 2d 544, 550 (W.D. Pa. 2003).

Importantly, any alleged false information may be communicated directly, or indirectly, by the non-disclosure of material facts. *Delahanty v. First Pennsylvania Bank, N.A.*, 318 Pa.Super. 90, 464 A.2d 1243, 1252 (1983). Additionally, the affirmation of a falsity and an innocent misrepresentation is actionable if it pertains to a matter material to the transaction involved. *Fort Washington Resources, Inc.*, 858 F.Supp. at 459.  In short, fraud is proved when it is shown that a false representation was "made knowingly, or in conscious ignorance of the truth, or recklessly without caring whether it be true or false." *Delahanty*, 464 A.2d at 1253.

The record here shows that all five elements are established by clear and convincing evidence.  First, as to the first and second elements, Barbounis made multiple misrepresentations to the Forum concerning her unauthorized work for various organizations and individuals in the United Kingdom, including: (1) the misrepresentation that her seven trips to the United Kingdom between June of 2018 and July of 2019 were for legitimate MEF purposes when, in reality, she had traveled alone to continue her sexual affairs with Thomas and others, and to personally enrich herself through her unauthorized work, (2) the misrepresentation that she was working with Robinson solely on his free speech issues rather than attempting to raise money from and for other organizations for non-MEF purposes and for personal gain, and (3) the misrepresentation that the Forum's monies to support Robinson were actually used for that purpose (and not misappropriated by Thomas for his personal use).

The record likewise establishes by clear and convincing evidence that Barbounis intended the Forum to act on her misrepresentations, namely by (1) continuing to maintain her employment and compensation despite her violation of her duty of loyalty to report misappropriated funds and her unauthorized fundraising and other activities outside of MEF, and (2) by providing Robinson and his UK allies with additional grant monies despite the above.

The Forum justifiably relied on these misrepresentations by a trusted employee, maintaining Barbounis' employment and continuing to send money to Robinson's network, his attorneys, and his supporters.  SUMF ¶ 293.

Finally, the Forum suffered damage as a proximate result of Barbounis' conduct in that it did, in fact, maintain Barbounis' employment and compensation, continue to allow her to travel to Europe under false pretense, and continue to send monies to Robinson's network, all of which caused the Forum to lose precious funds, undermined its ability to maintain the public's trust, invited unwarranted and unwanted media scrutiny, and made it more difficult to raise money. SUMF ¶¶ 353-54.  As a result, Barbounis is liable for fraudulent misrepresentation, and the Forum is entitled to summary judgment on this claim.

### C.      The Forum Is Entitled To Summary Judgment On Its Counterclaim For Civil Conspiracy.

"A claim of civil conspiracy in Pennsylvania contains the following elements: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage."  *Reese v. Pook & Pook, LLC*., 158 F. Supp. 3d 271, 292 (E.D. Pa. 2016).  As established above, the record demonstrates that Barbounis is individually liable for breach of duty of loyalty and fraudulent misrepresentation.  She is also liable for conspiring with Thomas, Robinson, and their acolytes to conceal their misappropriation of the Forum's monies, and with Robinson to fraudulently induce the Forum to continue providing money to support his legal endeavors.

As a threshold matter, based on the record, it cannot be disputed that Barbounis acted in concert with Robinson's network and with a common purpose to conceal Thomas' misappropriation of the Forum's grant payment, SUMF ¶¶ 264-74, 290-92, 312. or that

34

Barbounis, Robinson and Robinson's supporters likewise acted in concert and with a common purpose to conceal the truth about Barbounis' activities in the United Kingdom for their unjustified personal gain.  SUMF ¶¶ 279-84, 299-306.  As established above, it cannot be disputed that these actions were unlawful.  And as established above, the record clearly indicates that Barbounis took several overt acts, in concert with Thomas, Robinson and others, to pursue their respective common purposes – namely, the continuation of Barbounis' employment with the Forum and the continuation of payments by the Forum to Robinson's network in order to unjustly enrich all under the guise of support Robinson's free speech.  And finally, as established above, the Forum has suffered actual legal damage as a result of Barbounis' conspiracy with both Thomas, Robinson and others.  SUMF ¶¶ 193, 353-54.  As such, the Forum is entitled to summary judgment on its conspiracy claim.

## V.      CONCLUSION

For the foregoing reasons, Defendant the Middle East Forum respectfully requests that (1) summary judgment be granted in its favor and that Plaintiff Lisa Barbounis' claims against the Forum, Daniel Pipes and Gregg Roman be dismissed with prejudice, and (2) partial summary judgment be granted in its favor on liability for its counterclaims against Lisa Barbounis and that the issue of damages be determined at trial.

By: */s/ Jonathan R. Cavalier*                 By: */s/ Sidney L. Gold*            
Jonathan R. Cavalier                        Sidney L. Gold
Leigh Ann Benson                           William Rieser
COZEN O'CONNOR                SIDNEY L. GOLD & ASSOCIATES P.C.
One Liberty Place                       1835 Market Street, Suite 515
1650 Market Street                   Philadelphia, PA 19103
Philadelphia, PA 19103            (215) 569-1999
Phone: (215) 665-2000

*Attorneys for Defendant*                 *Attorneys for Defendant*
*The Middle East Forum,*                 *Gregg Roman*
*Daniel Pipes and Gregg Roman*

Dated: March 1, 2021