## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LISA BARBOUNIS | : | CIVIL ACTION |
| | : | NO. 2:19-cv-05030-JDW |
| Plaintiff, | : | NO. 2:20-cv-02946 |
| -vs- | : | |
| | : | |
| THE MIDDLE EAST FORUM, et al. | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |

---

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' COUNTERCLAIMS

---

Dated: April 17, 2021

Jonathan R. Cavalier
Leigh Ann Benson
Cozen O'Connor
1650 Market Street, Suite 2800
Philadelphia, PA  19103
(215) 446-0031

*Attorneys for Defendant*
*The Middle East Forum,*
*Daniel Pipes and Gregg Roman*

Sidney L. Gold
William Riser
Sidney L. Gold & Associates, P.C.
1835 Market Street, Suite 515
Philadelphia, PA 19103
(215) 569-1999

*Attorneys for Defendant*
*Gregg Roman*

## I.     <u>INTRODUCTION</u>

Plaintiff Barbounis' Motion for Summary Judgment is premised entirely on the mistaken argument that if the transcript of a call between Daniel Thomas and Gregg Roman is excluded as hearsay, Defendants counterclaims should fail.    In making this argument, Barbounis misapprehends both the nature of the Forum's counterclaims against her and the voluminous documentary record comprised of Barbounis' own communications, which clearly and independently establish her liability.   On the merits, Barbounis argues that, because she did not meet Thomas *in person* until after the Forum had provided him with funding in support of Robinson's campaign, that somehow absolves her of all liability. In pursuit of this argument, Barbounis again ignores the hundreds of pages of her own deposition testimony and documented communications, cited and described at length in Defendants' statement of undisputed material fact, that create a record clearly establishing her liability and entitling the Forum to summary judgment on its counterclaims against her. Plaintiff's motion for summary judgment should be denied, and Defendants' summary judgment motion on liability should be granted.

## II.    <u>STANDARD OF REVIEW</u>

Under Federal Rule of Civil Procedure 56, a party is entitled to summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  An issue is only genuine if it is supported by evidence such that a reasonable jury could return a verdict in favor of the non-movant, and a fact is material if a dispute about the fact might affect the outcome of the claim.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.* at 249.  In Barbounis' Motion for Summary Judgment, Barbounis failed to meet this standard.

With respect to her motion for summary judgment on the Forum's counterclaims against

her, Barbounis initially "bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."); *see also Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 192 n.2 (3d Cir. 2001).

As demonstrated below, Barbounis has not, and cannot, meet this burden respect to Barbounis' liability on the Forum's counterclaims for breach of her duty of loyalty, civil conspiracy and fraudulent misrepresentation. Indeed, as set forth in its own Motion for Summary Judgment, the *Forum* is entitled to summary judgment on liability against Barbounis. Therefore, Barbounis' summary judgment motion on the Forum's counterclaims must be denied.

## III. THE COURT SHOULD DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANT THE FORUM'S MOTION ON LIABILITY.

Barbounis has moved for summary judgment on the Forum's three counterclaims against her: (1) breach of duty of loyalty; (2) civil conspiracy; and (3) fraudulent misrepresentation. As set forth below, Barbounis is correct that there is no dispute of material fact concerning Barbounis' liability on these claims. However, the undisputed material facts establish that summary judgment is proper *in favor of the Forum*. The facts on which Barbounis attempts to rely in her summary judgment motion are not facts at all, but incorrect legal argument couched as fact – these red herrings are an improper effort to distract this Court from the relevant and material facts which establish the Forum's counterclaims against her. As such, the Court should deny Barbounis' summary judgment on each counterclaim the Forum asserted against Barbounis and enter summary judgment for the Forum.

**A.     The Statement of Daniel Thomas is Admissible, and Even if it is Excluded, the Voluminous Record Evidence Establishes Plaintiff's Liability.**

Plaintiff's entire summary judgment position is premised on the unsupported argument, offered without citation to relevant caselaw, that the transcript of a recorded conversation between Defendant Gregg Roman and Daniel Thomas is inadmissible hearsay.  As explained below, Plaintiff's position is based on an erroneous understanding of the law and a misapprehension of the record evidence against her.

(1)     The Daniel Thomas Transcript

As Exhibit A to their counterclaims, *see* Doc. 53-1, and as Exhibit 81 to its Statement of Undisputed Material Facts, Defendants have provided a transcript of a recorded telephone call between Defendant Gregg Roman and Daniel Thomas on July 13, 2020.[1]  During that call, Thomas set forth, in extensive detail, Plaintiff's plan to "leave her husband," "come to the United Kingdom," and continue her relationship with Thomas. *Id.*  To fund this plan, Thomas reported that Barbounis told him, "I'll say, 'Gregg's done this, Gregg's done that. And then I'm going to take it to court and get, and they'll have to pay out. They'll pay me loads. They'll pay me loads, and then I'll have enough money to do whatever the hell we want to do.'"  Thomas further relayed that Plaintiff told him that she "had it in for you, Gregg. She had it in for you. From, from the time we ever spoke about you, she wanted your job. And then when she realized she couldn't get the job or something, then she wanted to go down the route of destroying you, destroying you and making 'loads' of money from it. I had many conversations about that with her, um, over that, so that w- that's definitely something that was, uh, was definitely on her, on

---

[1] Counsel for the Forum and Mr. Roman were present for this call and have submitted a certification that the contents of the transcript at Exhibit 81 to Defendants' statement of facts is a true and accurate record of the call.  *See* Exhibit A to Defendants' Response to Plaintiff's Statement of Facts.  Defendants will provide the original audio recording of the call to the Court upon request.

the plate from very early on from me speaking to her." *Id.* Perhaps most importantly, Thomas admitted misappropriating the Forum's grant monies and that Plaintiff knew about it. *Id.*

### (2) Defendants Have Established That They Are Entitled to Summary Judgment Irrespective of the Admissibility of the Thomas Transcript.

Defendant Roman's call with Thomas confirmed existing information available to the Forum, the cumulative effect of which was to prompt the Forum to file its counterclaims against Plaintiff for breach of duty of loyalty, civil conspiracy and fraudulent misrepresentation. *See* Doc. 53. Those counterclaims were based, in large part, on information available to the Forum that was confirmed during this call. Moreover, having heard these details from Thomas for the first time, Defendants pressed Plaintiff, through motions to compel and motions for contempt, to comply with her discovery obligations and provide documents and information that Defendants believed would support those counterclaims. *See* Doc. Nos. 59, 61, 62, 63, 65, 68, 69). Still, Plaintiff refused to comply, resulting in multiple contempt orders against Plaintiff and her counsel and ordering Plaintiff to provide the requested discovery. *See* Doc. Nos. 74, 85. After incurring a daily sanction imposed by the Court, on January 4, 2021, Plaintiff finally produced documents in native format with metadata, as ordered by this Court.

The documents produced by Plaintiff are numerous, detailed, and make clear, often by Plaintiff's own hand and mouth, that she was aware of Thomas' misappropriation of the Forum's grant monies and, rather than inform Defendants of her knowledge, she covered it up in order to induce the Forum to maintain her employment, enable her to continue to travel to England to foster her relationship with Thomas, and to burnish her support for what amounted to a second job for Tommy Robinson. These documents are cataloged in detail in and attached to

Defendants' Statement of Undisputed Material Fact.  *See* Defendants' SUMF, Doc. No. 109-3 at ¶¶ at ¶¶ 184-354.

Despite this, Plaintiff hangs her summary judgment argument on the admissibility of the Thomas transcript, going so far as to "redraft" Defendants' counterclaims having struck all paragraphs referring to that exhibit.  But in doing so, she ignores all of the relevant, and often damning, evidence that she herself provided through discovery, as set forth in Defendants' Counterclaims and cataloged in detail in Defendants' summary judgment papers.  As such, even if the Transcript containing Thomas' statements is excluded for purposes of the Court's summary judgment analysis, Defendants have now provided voluminous record evidence from Plaintiff herself, sufficient not only to defeat Plaintiff's motion for summary judgment, but to entitle Defendants' to summary judgment on liability against Plaintiff on their counterclaims.

(3)   The Thomas Transcript is Admissible Evidence.

It cannot be reasonably disputed that the statements Thomas' statements concerning his own misappropriation of the Forum's funds and the statements he attributes to Barbounis herself, if made in Court, would be admissible as non-hearsay and as an admission by a party opponent, respectively.  *See* Fed. R. Evid. 801.  Thus, the only issue is whether the transcript of the call is admissible under a hearsay exception.  Defendants' respectfully submit that it is admissible under Rules 804(b)(3) and 804(b)(6), as Thomas is an unavailable witness.

Preliminarily, Thomas is a citizen of the United Kingdom and resides in England, and as such, is not amenable to process or subpoena by this Court.  Defendants have engaged counsel in the United Kingdom and, through that counsel, have been diligently attempting to secure Thomas' sworn testimony at trial deposition, either via his agreement to travel to the United

States for deposition or by deposition in England pursuant to Hague Convention.[2]  Thomas is a reluctant witness, and is refusing to participate in the process because he is concerned that Plaintiff will retaliate against him and his family.  This hesitation is born out of Plaintiff's demonstrated history of verbally abusing Thomas' domestic partner, Jazmin Bishop.  *See, e.g.,* Defendants' SUMF, Doc. 109-3, at ¶¶ 323-324 (Plaintiff threatens to "destroy" Bishop and states that she "love[s] torturing you").  When questioned at her deposition about these statements, Barbounis responded, *"Did you ever hear the saying there is no wrath as strong as a woman scorned?" See* Doc. 110-2, L. Barbounis Dep., February 9, 2021, at p.323.

Under the Federal Rules of Evidence, an unavailable witness includes situations in which the declarant "is absent from the hearing and the proponent of his statement has been unable to procure his attendance … or testimony by process or other reasonable means."  Fed. R. Evid. 804(a)(5).  Defendants have been and will continue to make reasonable efforts to procure Thomas' availability for testimony at trial, but as yet, have been unsuccessful.  There is no allegation, nor can there be, that Defendants procured or otherwise caused Thomas' unavailability.  He is out of the country and cannot be subpoenaed under the authority of this Court for deposition, and is therefore unavailable under Rule 804(a)(5).

Federal Rule of Evidence 804(b)(3)(A) provides an exception to the hearsay rule for statements made by an unavailable witness that "a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the

---

[2] "A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds: (B) that the witness is more than 100 miles from the place of hearing or trial or is outside the United States."  Fed. R. Civ. P. 32(b)(4).

declarant's claim against someone else or to expose the declarant to civil or criminal liability.[3]
In the transcript, Thomas admits to misappropriating the Forum's monies, to participating in and
procuring illegal drugs.  As such, Thomas' statements fall within the exception to hearsay
governing statements against interest, and are admissible.

Additionally, Federal Rule of Evidence 804(b)(5) provides that, if a witness is
unavailable, "the following are not excluded by the rule against hearsay . . . A statement offered
against a party that wrongfully caused – or acquiesced in wrongfully causing – the declarant's
unavailability as a witness, and did so intending that result."  Fed. R. Evid. 804(b)(5).  Here,
Plaintiff's verbal abuse and harassment of Thomas' family, as evidenced by Plaintiff's own
statements and documents, has to date caused Thomas to refuse to participate by deposition in
this matter.  Plaintiff should not benefit from her conduct by virtue of having evidence against
her excluded.  Rule 804(b)(5) is intended to prevent just such a situation, and applied here, it
requires the admission and consideration of Thomas' statements.

At bottom, and as discussed below, whether the Court considered Thomas' statement or
excludes it in its current form for summary judgment purposes, the record remains clear:
Defendants are entitled to summary judgment on their counterclaims against Plaintiff.

**B.**     **The Undisputed Evidence Supports The Forum's Claim That Barbounis
Breached her Duty Of Loyalty.**

"There can be no doubt that an agent owes a duty of loyalty to his principal and in all
matters, affecting the subject of his agency, he must act with the utmost good faith in the
furtherance and advancement of the interests of his principal."  *Sylvester v. Beck*, 406 Pa. 607, 610,

---

[3] Subsection (B) of Federal Rule of Evidence 804(b)(3) applies only in criminal cases.

178 A.2d 755, 757 (1962).  This duty "requires that he give the principal all information of the subject matter that comes to his knowledge. *Id.* (citing *Shannon v. Baltz*, 398 Pa. 431, 158 A.2d 558 (1960); *Kribbs v. Jackson*, 387 Pa. 611, 129 A.2d 490 (1956)).

Thus, "an employee, as an agent of his employer, is considered a fiduciary with respect to matters within the scope of his agency and is subject to a duty not to act or to agree to act during the period of his agency for persons whose interests conflict with those of principal in matters in which the agent is employed." *Prudential Ins. Co. of America v. Stella*, 994 F. Supp. 318, 322 (E.D. Pa. 1998); *see also SHV Coal, Inc. v. Continental Grain Co.*, 376 Pa.Super. 241, 545 A.2d 917 (1988) ("An agent is a fiduciary with respect to matters within the scope of the agency, and is required to act solely for the benefit of her principal in all matters concerned with the agency."); *Shapiro v. Stahl*, 195 F. Supp. 822, 825 (M.D. Pa. 1961) ("The agent stands in the capacity of a fiduciary to his principal, and in all of the dealings he must serve his employer with the utmost good faith and loyalty. It is his duty to make known all matters affecting transactions which may be of importance to the one for whom he acts.").  "An agent owes a duty of loyalty to his principal, it is his duty in all dealings affecting the subject matter of his agency, to act with the utmost good faith and loyalty for the furtherance and advancement of the interests of his principal.  *Kribbs v. Jackson*, 387 Pa. 611, 619, 129 A.2d 490, 494 (1957).

In Pennsylvania, in the absence of the employer's consent, "no man can serve two masters," at least where the interests of those masters conflict.  *Onorato v. Wissahickon Park, Inc*., 430 Pa. 416, 244 A.2d 22 (1968).  As such, an employee's duty requires him not to act during the period of his employment for persons whose interests conflict with those of the employer in matters for which the employee is employed.  Restatement (Second) of Agency § 394.

Accordingly, prevail on a claim for breach of duty of loyalty against Barbounis, The Forum

8

must establish that "(1) that [Barbounis] negligently or intentionally failed to act in good faith and solely for the benefit of [The Forum] in all matters for which she was employed; (2) that [The Forum] suffered injury; and (3) that [Barbounis'] failure to act solely for [The Forum's] benefit … was a real factor in bring[ing] about [The Forum's] injuries." *Solid Wood Cabinet Co. v. Partners Home Supply*, No. CIV.A. 13-3598, 2015 WL 1208182, at \*6 (E.D. Pa. Mar. 13, 2015). As detailed below and in the Forum's opening brief, the undisputed facts conclusively demonstrate that the Forum has met and satisfied all three elements.

> **(a) Barbounis Negligently or Intentionally Failed to Act in Good Faith and Solely for the Benefit of the Forum in All Matters for Which She was Employed.**

In her Motion for Summary Judgment, Barbounis incorrectly puts evidentiary weight on the Forum's pleading, ignores the hundreds of pages of documents and testimony from Barbounis herself, and misapprehends the core of Defendants' counterclaims.

As a threshold matter, Barbounis seems to believe that Defendants counterclaims are premised on the allegation that she knew Daniel Thomas and actively assisted him in misappropriating the Forum's grant monies in real time. *See* Pl.'s Brief at p.7 ("Barbounis did not even know Daniel Thomas when the money was granted and allegedly misappropriated."). This is entirely irrelevant. Defendants' counterclaims are not premised on the allegation that Barbounis assisted Thomas at the time he misappropriated the funds, but rather on the established fact that once she learned that Thomas has misappropriated the funds, she had a duty to inform the Forum of her knowledge, regardless of whether Barbounis gained that knowledge before or after meeting Thomas. She had a choice between loyalty to her employer and loyalty to Thomas, and she chose Thomas (as her paramour) and later Robinson (for fear of hurting the movement)– facts clearly established by her own words and documents.

As set forth in great detail in Defendants' Statement of Undisputed Material Facts, the

record establishes that Barbounis became aware that Thomas may have misappropriated some of

The Forum's funds as early as Summer of 2018, when she heard from Vinny Sullivan, an associate

of Tommy Robinson, that Thomas has taken some of the grant money.  SUMF ¶ 242.  By March

of 2019, Barbounis harbored, at a minimum, a reasonable suspicion that Thomas had

misappropriated a substantial portion of the monies that the Forum provided to him for the

Robinson rally, after she heard from Jazmin Bishop, Thomas' domestic partner, that Thomas had

stolen the funds.  SUMF ¶ 265-71.  All else aside, and whatever Barbounis' views of Thomas'

own words might be, Barbounis had a duty to inform the Forum of her knowledge that the funds

provided to Thomas may have been misappropriated.   According to Barbounis' own words,

addressed to Bishop:

> And I didn't know about the money that he [Thomas] took from
> MEF until you told me.  It was always in the back of my mind
> because it didn't add up and the whole vinney and you thing but he
> said you were crazy and would do anything to destroy him and I
> wanted to believe him.  **Now that I know I'm obligated to tell my
> work.  What do I do?  That's theft.**

SUMF ¶ 266 (emphasis added).  She followed up with a clear acknowledgement that Thomas had

misappropriated $7,000 from The Forum:  "**That's 7 thousand dollars he stole from MEF and

Tommy.**"  SUMF ¶¶ 267-68 (emphasis added).

Later that same day, Barbounis acknowledged and discussed Thomas' misappropriation

with Robinson:

> I sent the message to Daniel about the legal fund.  I will stay on that
> and the visa stuff.  But after all of that I'm going to walk away from
> all of this.  I recently found out some potentially messy things that
> have to deal with demos MEF and I need to back away until I figure
> it all out.  **And if I tell MEF which I think I'm obligated to it's
> not good.**  Plus I have jaz harassing me.  I'm out.

SUMF ¶ 269 (emphasis added).   She continued her conversation with Robinson by directly

acknowledging her awareness of the stolen funds and the dilemma she faced: abide her duty to her employer and inform MEF, or protect her relationship with Robinson and the future MEF grant monies that he was expecting to receive:

> **I knew money didn't add up after the first demo but it looks like he kept 7k for himself.  If MEF finds out I knew and didn't tell them I'm fucked.  If I tell them it's not good for you and your future money.**  It's all so messy.  And I don't know what to do.

SUMF ¶ 270 (emphasis added).  If Barbounis' had not breached her duty of loyalty to the Forum at the time of her communications above, she certainly did once she had a reasonable belief that Thomas had misused Forum's funds and yet continued to pursue opportunities with Thomas while employed with the Forum.  *See Amquip Crane Rental, LLC v. Crane & Rig Svcs., LLC*, 199 A.3d 904 (Pa. 208) (explaining that a breach of fiduciary duty occurs when an employee takes actions that conflict with the employer's interests).

Ultimately, Barbounis chose Robinson over The Forum, electing not to inform anyone at the Forum about the misappropriated money so as to ensure that the Forum would be willing to continue considering Robinson as a beneficiary of future grants, and ensuring that Barbounis' plan to move to London to work with Robinson would remain viable, and hoping that no one at the Forum would find out.  As if this betrayal of her duty was not enough, she compounded her breach by working actively with Thomas in an effort to manufacture bank records in an effort to falsely "prove" his innocence.  SUMF ¶¶ 273-76.  However, as Titus Livius Patavinus said, "A fraudulent intent, however carefully concealed at the outset, will generally, in the end, betray itself."  Such happened here.

Now, in hindsight, Barbounis attempts to explain away her failure to report the stolen money, by claiming that she did not know "for sure" whether the money was actually misappropriated by Thomas.  Troublingly, Barbounis has submitted an affidavit containing

demonstrably false claims contradicted by her own electronic communications.  Under penalty of perjury, Barbounis swore: "As I have stated at more than one deposition, I have no knowledge to substantiate the allegation that Daniel Thomas stole any money from The Middle East Forum."  *See* Exhibit E to Plaintiff's Motion, Affidavit of Lisa Barbounis.  Even more disturbingly, Barbounis has also sworn, under penalty of perjury, that "The only person who made any allegations about Daniel Thomas was Jazmin Bishop." *Id.*  These sworn statements are proven false by documents and communications from Barbounis' own devices, authenticated by metadata finally turned over by Plaintiff as compelled by this Court's orders, on January 4, 2021, which shows that Barbounis had written communications with at least six different people on at least ten different occasions during which those people either made allegations that Thomas misappropriated the Forum's grant funds or Barbounis voiced those same allegations to others.  *See* Exhibit C, Demonstrative Summarizing Record Evidence.  In short, Barbounis' sworn affidavit is a sham is directly contradicted by her own documents produced in discovery.[4]

This record makes clear that Barbounis knew or should have known that Thomas misappropriated the Forum's grant funds.  But even if Barbounis' explanation of uncertainty as to the misappropriation is somehow credited, it cannot reasonably be disputed that her suspicions triggered an obligation to report the matter to the Forum for investigation. *See, e.g., SHV Coal, Inc. v. Continental Grain Co.* , 376 Pa.Super. 241, 545 A.2d 917 (1988) ("An agent is a fiduciary with respect to matters within the scope of the agency, and is required to act solely for the benefit of her principal in all matters concerned with the agency.").

She refused to do so, choosing Robinson over the Forum and her self-serving plan to move

---

[4]The other sworn statements in Barbounis' affidavit, while largely immaterial to the issues at summary judgment, are likewise contradicted by the record evidence and Barbounis' own documents.

to England over her responsibilities as an employee and agent of the Forum to spearhead and carry out the Forum's interests in England, and in so doing, she failed to act in good faith and for the Forum's benefit in all matters relating to her employment. *See, e.g., See Pollack v. Skinsmart Dermatology and Aesthetic Center, P.C.,* 2004 WL 2426331, *4 (C.C.P. Phila. October 5, 2004) (the duty of loyalty "is a component of the agent-principal relationship" and thus the agent owes the principal a duty of loyalty "in all matters affecting the subject of his agency, [and] he must act with the utmost good faith in the furtherance and advancement of the interests of his principal."); *Chalupiak v. Stahlman*, 368 Pa. 83, 81 A.2d 577 (1951) (an agent of an employer "may not use information acquired by him during course of his agency to the injury of his principal, though such information does not relate to the transaction in which he is then employed.").

Barbounis continuously relies on Paragraph 31 of the Forum's complaint, even supplying an altered version of Defendants' counterclaims with the paragraphs citing to a transcript of a call with Thomas stricken. She does so in reliance on her broad assertion that, "Defendant's breach of duty of loyalty claim is predicated upon events to which Lisa Barbounis had no involvement." As the record establishes, this is clearly not true. While Barbounis can establish that she "had no involvement" in Thomas's initial misappropriation of the Forum's funds, it is Barbounis' clear subsequent *knowledge* of the misuse of the funds that triggered her duty to the Forum, and her failure to do so that renders her liable. *Sylvester,* 406 Pa. 607 at 610, 178 A.2d at 757.

"An employee owes his employer loyalty, diligence, fidelity, obedience, and, above all, honesty." *Palmer v. Unemployment Compensation Board of Review*, 50 Pa. Commonwealth Ct. 300, 302, 412 A.2d 917, 919 (1980). Plaintiff has clearly failed those obligations here. *See* Exhibit C to Defendants' Response to Plaintiff's Statement of Facts.

### (b)   The Forum Suffered Injury.

As established in the Forum's opening brief on its motion for summary judgment, there

can be no reasonable dispute that The Forum suffered injury as a result of Barbounis' breach of her duty of loyalty. Pursuant to the terms of its contract with Thomas, the Forum provided Thomas with $32,000 USD to be used to fund a rally to show support for the free speech rights of Robinson. SUMF ¶ 191.  Under the terms of the contract, in the event that *any* of the money provided by the Forum was misused or misappropriated, the Forum would be entitled to claw back *all* of the monies provided.  SUMF ¶ 193.  Moreover, under the belief that the grant funds were legitimately spent, the Forum subsequently provided additional monies to Robinson's attorneys to support Robinson's free speech rights.   SUMF ¶ 293.   Had the Forum been aware at the time that Thomas had misappropriated a substantial portion of its prior funding, the Forum would not have provided any additional funding to Robinson or Thomas or their agents.  SUMF ¶ 354.

> **(c)    Barbounis' Failure to Act Solely for The Forum's Benefit was a Real Factor in Bringing About its Injuries.**

Likewise, there can be no reasonable dispute that Barbounis' failure to inform the Forum that Thomas had misappropriated the Forum's money was a "real factor" in bringing about the harm suffered by the Forum.  In short, had Barbounis done her duty and informed the Forum that she, at a minimum, harbored significant suspicions dating back to December 2018 that Thomas had misappropriated the Forum's funds – suspicions that she discussed with multiple people on multiple occasions over a period of more than seven months -- the Forum could have, and indeed would, have launched an investigation, uncovered the misappropriation, and clawed back not *only* the monies that were misappropriated but *all* of the monies delivered to Thomas under the contract, and would not have subsequently provided additional monies to support Robinson's free speech rights.

**C.     The Undisputed Evidence Supports The Forum's Counterclaim For Fraudulent Misrepresentation.**

Here again, Barbounis' motion completely misses the mark, ignoring all relevant,

undisputed material evidence and misapprehending the nature of the Forum's claims against her.

The elements of a common-law claim for fraudulent misrepresentation in Pennsylvania are as follows: (1) a misrepresentation; (2) the fraudulent utterance thereof; (3) an intention by the maker that the recipient will be induced to act; (4) justifiable reliance by the recipient on the misrepresentation; and (5) damage to the recipient as a proximate result of the reliance. *Fort Washington Resources, Inc., v. Tannen*, 858 F.Supp. 455, 459 (E.D.Pa.1994) (citing *Browne v. Maxfield*, 663 F.Supp. 1193, 1202 (E.D.Pa.1987)).  The party alleging fraud has the burden of proving it by clear, precise and convincing evidence, and a summary judgment determination must be made in light of the evidentiary standard to be applied at trial.  *Coleman v. Sears, Roebuck & Co.*, 319 F. Supp. 2d 544, 550 (W.D. Pa. 2003).

Importantly, any alleged false information may be communicated directly, or indirectly, by the non-disclosure of material facts. *Delahanty v. First Pennsylvania Bank, N.A.*, 318 Pa.Super. 90, 464 A.2d 1243, 1252 (1983). Additionally, the affirmation of a falsity and an innocent misrepresentation is actionable if it pertains to a matter material to the transaction involved. *Fort Washington Resources, Inc.*, 858 F.Supp. at 459.  In short, fraud is proved when it is shown that a false representation was "made knowingly, or in conscious ignorance of the truth, or recklessly without caring whether it be true or false." *Delahanty*, 318 Pa.Super. 90, 464 A.2d at 1253 (cited in *Fort Washington Resources, Inc*. 858 F.Supp. at 460).

As established in Defendants' opening brief, the record here shows that all five elements are established by clear and convincing evidence in the Forum's favor.  *See* Doc. No. 109-2 at pp.32-34.  As to the first and second elements, Barbounis made multiple misrepresentations to the Forum concerning her work for the Robinson campaign, including: (1) the misrepresentation that her seven trips to the United Kingdom between June of 2018 and July of 2019 were for legitimate

MEF purposes when, in reality, she had traveled alone to continue her sexual affairs with Thomas and others, and to personally enrich herself through her unauthorized work, SUMF ¶¶ 279-84; (2) the misrepresentation that she was working with Robinson solely on his free speech issues rather than attempting to raise money from and for other organizations for non-MEF purposes and for personal gain, SUMF ¶¶ 299-306; and (3) the misrepresentation that the Forum's monies to support Robinson were actually used for that purpose (and not misappropriated by Thomas for his personal use), SUMF ¶¶ 264-74, 290-92, 312.

The record likewise establishes by clear and convincing evidence that Barbounis intended the Forum to act on her misrepresentations, , namely by (1) continuing to maintain her employment and compensation despite her violation of her duty of loyalty to report misappropriated funds and her unauthorized fundraising and other activities outside of MEF, SUMF ¶¶ 265, 269; and (2) by providing Robinson and his UK allies with additional grant monies despite the above.  SUMF ¶¶ 292, 300.  The Forum justifiably relied on these misrepresentations by a trusted employee, maintaining Barbounis' employment and continuing to send money to Robinson's network, his attorneys, and his supporters.  SUMF ¶ 293, 352.

The Forum did, in fact, maintain Barbounis' employment and compensation, continue to allow her to travel to Europe under false pretense, and continue to send monies to Robinson's network, all of which caused the Forum to lose precious funds, undermined its ability to maintain the public's trust, invited unwarranted and unwanted media scrutiny, and made it more difficult to raise money.  SUMF ¶¶ 353-54.  Furthermore, the Forum was deprived of the benefit of the salary it was paying to Barbounis under the reasonable assumption, based on Barbounis' representations, that she was in Europe expanding the Forum's contracts, acting to further the Forum's interests, and otherwise working to benefit the Forum.  Instead, Barbounis was working toward furthering

her own ends to the active detriment of the Forum. *See* Exhibit B to Defendants' Response to Plaintiff's Statement of Facts.   Had the Forum known she was acting not in its best interests but for her own and others, the Forum could have and would have either terminated her and saved her salary and expenses, or re-tasked her to work on domestic matters that would have provided the Forum with a benefit commensurate with her salary.  SUMF ¶ 352.

Therefore, the Court should deny Barbounis' motion for summary judgment on the Forum's claim for fraudulent misrepresentation.

### D. The Undisputed Evidence Supports The Forum's Claim For Civil Conspiracy.

Again, Barbounis continues to rely on Paragraph 31 of the Forum's counterclaim to support her motion for summary judgment, ignoring all other evidence in the record. When and where Barbounis met Thomas *in person* for the first time is immaterial to the Forum's civil conspiracy claim against Barbounis.  Barbounis continues to cite to the timing of her first in person meeting with Thomas as if it would be impossible for the two to communicate without being in person. Indeed, Barbounis was in contact with Thomas at least as early as Spring 2018, and was responsible for managing the Forum's grant payment and contract with Thomas at that time.  SUMF ¶¶ 185-195.  Barbounis also ignores the undisputed evidence that after meeting Thomas in person, she worked with Thomas and Robinson to procure additional funds from the Forum for improper use.

Rather, the undisputed, relevant, evidence, supports each element of a claim for civil conspiracy. "A claim of civil conspiracy in Pennsylvania contains the following elements: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *Reese v. Pook & Pook, LLC.*, 158 F. Supp. 3d 271, 292 (E.D. Pa. 2016) (citing *Goldstein v. Phillip Morris, Inc.*, 854 A.2d 585, 590 (Pa.Super.Ct.2004)).

As established above, the record demonstrates that Barbounis is individually liable for

breach of her duty of loyalty and fraudulent misrepresentation. She is also liable for conspiring with Thomas to conceal his misappropriation of the Forum's monies, and with Robinson in fraudulently misrepresenting her intentions and the true nature of her work in order to induce the Forum to continue providing money to support his free speech activity.

As set forth in Defendants Statement of Facts and accompanying brief, based on the voluminous record, Barbounis acted in concert with Robinson's network and with a common purpose to conceal Thomas' misappropriation of the Forum's grant payment, SUMF ¶¶ 264-74, 290-92, 312. and that Barbounis, Robinson and Robinson's supporters likewise acted in concert and with a common purpose to conceal the truth about Barbounis' activities in the United Kingdom for their unjustified personal gain and enrichment. SUMF ¶¶ 279-84, 299-306.  As established above, and as set forth in detail in Defendants' opening brief, it cannot be disputed that these actions were unlawful. And as established above, the record clearly indicates that Barbounis took several overt and covert acts, in concert with Thomas, Robinson and others, to pursue their respective common purposes – namely, the continuation of Barbounis' employment with the Forum, the continuation of payments by the Forum to Robinson's network in order to unjustly enrich all under the guise of support Robinson's free speech, and the maintenance of a platform provided by the Forum to Barbounis that, unbeknownst to the Forum at the time, she was using not for the Forum's benefit, but her own. And finally, as established above, the Forum has suffered actual legal damage, including the loss of political and diplomatic credibility, all of which are critical to the Forum's ability to raise funds, as a direct result of Barbounis' conspiracy with both Thomas, Robinson and others. SUMF ¶¶ 193, 353-54. As such, the Forum, not Plaintiff, is entitled to summary judgment on its conspiracy claim.

**IV.   <u>CONCLUSION</u>**

For the foregoing reasons, Defendant The Middle East Forum respectfully requests that (1)

Lisa Barbounis' Motion for Summary judgment be denied, and (2) summary judgment be granted in its favor on its counterclaims against Lisa Barbounis and that the issue of damages be determined at trial.

Respectfully submitted,

By: */s/ Jonathan R. Cavalier*
Jonathan R. Cavalier
Leigh Ann Benson
COZEN O'CONNOR
One Liberty Place
1650 Market Street
Philadelphia, PA 19103
Phone: (215) 665-2000

*Attorneys for Defendant*
*The Middle East Forum,*
*Daniel Pipes and Gregg Roman*

By: */s/ Sidney L. Gold*
Sidney L. Gold
William Riser
SIDNEY L. GOLD & ASSOCIATES P.C.
1835 Market Street, Suite 515
Philadelphia, PA 19103
(215) 569-1999

*Attorneys for Defendant*
*Gregg Roman*

Dated: April 17, 2021

**<u>CERTIFICATE OF SERVICE</u>**

I, Jonathan R. Cavalier, hereby certify that on April 17, 2021, I served upon all counsel of record true and correct copies of Defendants' Response in Opposition to Plaintiff's Motion For Summary Judgment on Defendants' Counterclaims, Response to Statement of Undisputed Material Facts and Exhibits via ECF filing.

*/s/ Jonathan R. Cavalier*
Jonathan R. Cavalier
