**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| | : |
| | : |
| LISA BARBOUNIS, | : |
| | : |
| Plaintiff, | :   CIVIL ACTION |
| | :   NO. 2:19-cv-05030-JDW |
| | : |
| v. | : |
| | :   OPPOSITION TO DEFENDANTS' |
| | :   MOTION FOR SUMMAY JUDGMENT |
| THE MIDDLE EAST FORUM, GREG | : |
| ROMAN, AND DANIEL PIPES, | : |
| | : |
| Defendants. | : |
| | : |

---

**PLAINTIFF, LISA BARBOUNIS' OPPOSITION TO DEFENDANTS, THE MIDDLE EAST
FORUM, GREG ROMAN, AND DANIEL PIPES MOTION FOR SUMMARY JUDGMENT**

---

**DEREK SMITH LAW GROUP, PLLC**
**Attorney for Plaintiff**
**Seth D. Carson, Esquire**
**1835 Market Street, Suite 2950**
**Philadelphia, PA 19103**
**Phone: 215.391.4790**
**Facsimile: 215.893.5288**
**Email Seth@DerekSmithLaw.com**

Seth D. Carson, Esquire, an attorney, duly admitted to practice law in the District Court
of the Eastern District of Pennsylvania hereby sets forth the following opposition to Defendant,
The Middle East Forum, Greg Roman, and Daniel Pipes' Motion for Summary Judgment.  As
the attorney of record in this matter, I am familiar with the facts and circumstances of Plaintiff's
case.  The following Motion and Memorandum is submitted in opposition to Defendants' Motion
for Summary Judgment pursuant to Fed. R. Civ. 56.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| LISA BARBOUNIS, | :<br>:<br>: |
|  | : CIVIL ACTION |
| Plaintiff, | : NO. 2:19-cv-05030-JDW |
|  | : |
| v. | : |
|  | : OPPOSITION TO DEFENDANTS' |
|  | : MOTION FOR SUMMAY JUDGMENT |
| THE MIDDLE EAST FORUM, GREG | : |
| ROMAN, AND DANIEL PIPES, | : |
|  | : |
| Defendants. | : |
|  | : |

## MOTION IN OPPOSITION TO DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF,
## LISA BARBOUNIS' CLAIMS AND DEFENDANTS' COUNTERCLAIMS

Plaintiff, Lisa Barbounis ("Ms. Barbounis" or "Plaintiff") hereby moves the Court to deny Defendant's Motion for Summary Judgment and in support thereof, Plaintiff relies on the accompanying memorandum of law and Plaintiff's Response to Defendants' proffered "Statement of Uncontested Material Facts". A proposed Order denying Defendant's Motion to Dismiss Plaintiff's Complaint is attached hereto.

**DEREK SMITH LAW GROUP, PLLC**

BY:      /s/ Seth D. Carson
            Seth D. Carson, Esq.
            Attorney ID. No. 319886
            1845 Walnut Street, Suite 1601
            Philadelphia, PA 19103
            (215) 391-4790
            seth@dereksmithlaw.com
            *Attorney for Plaintiff*

DATED: April 16, 2021

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| LISA BARBOUNIS, | : |
|  | : |
|  | : |
| Plaintiff, | : CIVIL ACTION |
|  | : NO. 2:19-cv-05030-JDW |
| v. | : |
|  | : |
|  | : OPPOSITION TO DEFENDANTS' |
|  | : MOTION FOR SUMMAY JUDGMENT |
| THE MIDDLE EAST FORUM, GREG | : |
| ROMAN, AND DANIEL PIPES, | : |
|  | : |
| Defendants. | : |
|  | : |

**MEMORANDUM IN OPPOSITION TO DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF,**
**LISA BARBOUNIS' CLAIMS AND DEFENDANTS' COUNTERCLAIMS**

Plaintiff, Lisa Barbounis ("Ms. Barbounis" or "Plaintiff") submits the Following Memorandum of Fact and Law in Opposition to Defendants, The Middle East Forum ("MEF") Greg Roman ("Roman"), and Daniel Pipes ("Pipes") (collectively "Defendants") Motion for Summary Judgment.

## I.   PRELIMINARY STATEMENT

Plaintiff, Lisa Barbounis began her employment for Defendants, The Middle East Forum sometime around October 2017, and continued her employment until her involuntary resignation around August 2019.  A true and accurate copy of the Declaration of Lisa Barbounis is attached and marked Plaintiff's Exhibit "A" ¶ 1.  From October 2017 until November 5, 2018, Ms. Barbounis' title was Executive Liaison. Exhibit A ¶ 5.  She was Defendant, Greg Roman's personal assistant. Id ¶ 6.  She managed Roman's schedule and performed research projects.  Id ¶

7.  In November 2018, Roman was required to discontinue visiting the Philadelphia offices, after the female employees including Lisa Barbounis, Marnie Meyer-O'Brien ("Ms. O'Brien"), and Patricia McNulty ("Ms. McNulty) reported Greg Roman's discrimination and harassment in the workplace which included severe and pervasive sexual harassment of all three women.  Id ¶ 8. Defendants have responded to Ms. Barbounis's lawful claims of sexual harassment, retaliation, and hostile work environment by initiating a campaign of retaliation to which Ms. Barbounis has been subjected since November 2018. Id ¶ 11.  The campaign of retaliation includes using the civil legal process to file three lawsuits against Lisa Barbounis. Id ¶ 12.   Ms. Barbounis filed a second Charge of Discrimination pursuant to this retaliatory conduct, received a Right to Sue letter and amended her complaint to include these claims.  None of the lawsuits are based on valid claims or damages.  None of the lawsuits will prevail.  Daniel Pipes has informed Lisa Barbounis that all of these lawsuits can end if Lisa Barbounis simply discontinues her sexual harassment suit in this Court.  Id ¶ 13.

Below, Lisa Barbounis will demonstrate that her claims of disparate treatment, hostile work environment, aiding and abetting, retaliation, and negligent retention are sufficient to advance past the dispositive motion process and to trial. Moreover, Plaintiff will demonstrate that Defendants' counterclaims lack evidentiary support and should be dismissed as a matter of law.   At the least, Defendants have failed to demonstrate that its counterclaims warrant summary judgment in Defendants' favor.

## II.     FACT STATEMENT

See Plaintiff's Response to Defendants' Proffered "Statement of Uncontested Material Facts," where Plaintiff has responded to and identified the material facts in dispute.

### III.    ARGUMENT

#### A.  Standard of Review

"The court shall grant summary judgment if the movant shows there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R.

Civ. P. 56(a). "The mere existence of some alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment; the requirement is that

there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-

48 (1986).  Rule 56(c)(1) requires that "[a] party asserting that a fact cannot be or is genuinely

disputed must support the assertion by: (A) citing to particular parts of materials in the record,

including depositions, documents, electronically stored information, affidavits or declarations,

stipulations (including those made for purposes of the motion only), admissions, interrogatory

answers, or other materials; or (B) showing that the materials cited do not establish the absence

or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

support the fact." Fed. R. Civ. P. 56(c).  To withstand summary judgment, the non-movant must

"go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for

trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The non-movant must then identify

specific facts showing that there is a triable issue. Anderson, 477 U.S. at 252.

#### B.  Greg Roman is a proxy of The Middle East Forum such that Defendants are Strictly Liable for his sexual harassment in the workplace and not entitled to a Faragher-Ellerth Defense.

To prevail in her Title VII hostile work environment suit, Plaintiff, Lisa Barbounis must

establish the prima facie elements promulgated by the Third Circuit: (1) she suffered intentional

discrimination because of her gender; (2) the discrimination was pervasive and regular; (3) the

discrimination detrimentally affected her; (4) the discrimination would detrimentally affect a

reasonable person of the same sex in that position; (5) the existence of respondeat superior liability. See Abramson v. William Patterson College of New Jersey, 260 F.3d 265, 276–77 (3d Cir.2001). (quoting Kunin v. Sears Roebuck & Co., 175 F.3d 289, 293 (3d Cir.1999) (citing Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 (3d Cir.1990)).  In cases in which the harasser is a "supervisor," and the supervisor's harassment culminates in a tangible employment action (i.e., "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits,") the employer is strictly liable. Burlington  Industries,  Inc. v. Ellerth, 524 U.S.  742, 761 (1998).  If no tangible employment action is taken, the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided. Faragher v. Boca Raton, 524 U.S. 775, 807 (1998); Ellerth, supra, at 765. An employer may be vicariously liable under Title VII for an employee's unlawful harassment only when the employer has empowered that employee to take tangible employment actions against the victim, i.e., to effect a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. Vance v. Ball State Univ., 570 U.S. 421 (2013).

An exception to the Faragher-Ellerth affirmative defense is required when the harassing supervisor holds a sufficiently high position in the management hierarchy of the company for his actions to be imputed automatically to the employer. Faragher, supra at 790, citing Torres v. Pisano, 116 F.3d 625 (2nd Cir., 1997).  In cases where the harasser is the company owner,

president, proprietor, partner *or corporate officer*, an employee need not prove respondeat

superior liability, or the propriety of holding an employer liable. Faragher, supra

at 789-90.  This is known as the alter-ego theory of liability, wherein the agent's high rank

within the company makes him or her the employer's alter ego. Ellerth, supra, at 758.

Defendant Roman is and has remained the Director of the Middle East Forum, the Chief

Operating Officer of the Middle East Forum, and the Secretary of the Board of Directors for the

Middle East Forum. See the deposition transcript of Chairman Steve Levy attached and marked

Plaintiff's Exhibit "B".

> So if we have a high-level meeting that is not specifically or formally the executive
> committee, we -- I might huddle with one or two other lay leaders and Daniel and
> Gregg about -- could be compensation because we do that once a year. Or there may
> be a particular matter that comes up ad hoc --… Page 8.

See also Middle East Forum Website – list of corporate officers attached as Exhibit "C".


And see Deposition of Gregg Roman part 1 attached and marked Exhibit "D".

Greg Roman is the Director of MEF, which is the second highest ranking position, and a

corporate officer of the organization.  The only person with more authority than Roman is

Defendant Pipes. Id.  While some of Defendant Roman's responsibilities were stripped following

the reports of sexual harassment levied against him in October and November 2018, his

executive standing nor job title changed. Email regarding new, interim terms for your

employment at the Middle East Forum Exhibit "E"; Deposition of Daniel Pipes Exhibit "F".

Greg Roman is held out publicly both in media appearances and to donors as a face of the

Middle East Forum.  Id. Each one of his positions with MEF independently supports the Alter-

Ego theory of liability; however taken together there is no doubt that Greg Roman should be held

strictly liable for his unlawful sexually harassing conduct and comments.  Defendant Roman's

repeated targeting of MEF's female employees is thus imputed to the organization, including but not limited to his repeated, constant, incessant sexual innuendos and comments suggesting sex and needing a release, placing his hands on Lisa Barbounis during the AIPAC conference and forcing her head toward his penis, sexually assaulting Lisa Barbounis' coworker in front of Ms. Barbounis and whispering sexual suggestions in her ear, compelling Lisa Barbounis to share a residence with him in a foreign country, subjecting Ms. Barbounis to unwelcome physical contact of a sexual nature and violent, inappropriate sexual suggestions, yelling that he needed a blow job, physically harassing Ms. Barbounis' co-workers in front of her, leering, intentionally pitting employees against one another so they would not discuss their shared experiences, punishing employees who communicated with Defendant Pipes directly, threatening ongoing monitoring of devices and security cameras, inviting Plaintiff to his home and stating his wife would not be present, exposing his penis to female a reporter that Ms. Barbounis associated with, compelling an young intern to engage in sexual intercourse with him and then graphically describing the sex acts to Lisa Barbounis, and terminating former employees who complained about his behavior or threatened litigation. Exhibit A ¶¶ 14 – 32.   These are just some of the highlights of Greg Roman's unlawful sex-based conduct toward Lisa Barbounis during her employment. ¶ 33.   Defendants' motion argues that Plaintiff cannot substantiate the first four prongs of her burden by attempting to isolate Defendant Roman's repeated and ongoing harassment into separate and discrete incidents and by ignoring the ongoing, continuous pattern of sexual harassment that began at Lisa Barbounis' job interview and continued throughout her employment, even after Roman was temporarily ejected from the Philadelphia offices. Exhibit A ¶¶ 14 – 32.  See also Plaintiff's Responses to Defendants' First Set of Interrogatories attached and marked Plaintiff's Exhibit "G".  Even after Defendant Roman was removed from the

Philadelphia offices, he spread rumors that Caitriona Brady got her job because her father and Marnie O'Brien had an adulterous sexual affair. Deposition of Marnie O'Brien Exhibit "H"; Deposition of Matthew Bennett, Exhibit I.

Plaintiff, Lisa Barbounis has clearly demonstrated that she was subjected to a hostile work environment because (1) there is evidence that Defendant Roman, subjected Lisa Barbounis to intentional sexual harassment that included multiple incidents of unwelcome physical sexual contact; Exbibits A and G. (2) Defendant Roman's sexual harassment began during Lisa Barbounis' job interview and continued until November 2018, after which point Roman used his position to subject Lisa Barbounis to retaliation and started sex-based rumors about female employees who Ms. Barbounis worked with. Id. ¶ 34 – 36. (3) Plaintiff, Lisa Barbounis suffered ongoing stress, trauma, psychological harm and difficulty with her work and work relationships due to the harassment Id. ¶ 34 – 36. and (4) Greg Roman's ongoing sexual harassment and abusive conduct and comments would negatively impact any reasonable person in Plaintiff's position.  Four primary examples, other than Plaintiff, of the impact that Greg Roman's abusive sex-based conduct and comments had are Marnie O'Brien, Patricia McNulty, Delaney Yonchek, and Caitriona Brady.  See civil action complaint filed by O'Brien (2:19-cv-06078-JMG), And see Charge of Discrimination filed by McNulty (Exhibit "J"), Charge of Discrimination filed by Yonchek (Exhibit "K"),  and Charge of Discrimination filed by Brady (Exhibit "L").

 The record of evidence unequivocally establishes the elements of a hostile work environment claim.  Defendant Roman's sexual harassment was continuous, repeated, ongoing and pervasive. Exhibit A ¶¶ 14 – 32.  Even after he was temporarily removed from the Philadelphia office, the harassment continued Id. ¶¶ 37 – 39.   Daniel Pipes communicated his

plan to bring Roman back at the same time when Roman was temporarily removed. <u>A copy of Daniel Pipes' letter is attached and marked Plaintiff's Exhibit "M"</u>. Plaintiff was clearly subjected to a hostile work environment and Defendant Roman is an alter- ego of the Middle East Forum. Accordingly, there is no <u>Farragher-Ellerth</u> defense for Defendants.

**C. <u>Plaintiff is Entitled to a Jury, Even When Farragher-Ellerth is Applied</u>**

If a harassed employee suffers no tangible employment action, an employer may avoid liability by proving the elements of a <u>Faragher-Ellerth</u> affirmative defense. To do this, the Defendants must show "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." <u>Faragher</u>, supra at 807, Ellerth, supra at 765. The cornerstone of this analysis is reasonableness: the reasonableness of the employer's preventative and corrective measures, and the reasonableness of the employee's efforts to report misconduct and avoid further harm, or the reasonableness of the employees decision not to report. Thus, the existence of a functioning anti-harassment policy could possibly prove the employer's exercise of reasonable care so as to satisfy the first element of the affirmative defense. <u>Minarsky v. Susquehanna County</u>, 895 F.3d 303, 311 (3rd Cir., 2018), <u>citing</u> <u>Faragher</u>, supra at 524 U.S. at 807. However, simply having a policy, even a policy which is read and signed by employees, does not satisfy the first prong of <u>Farragher</u>. <u>Minarsky</u> at 312. Rather, the policy in place must be effective so as to sufficiently protect employees. <u>Id</u>. <u>See</u> <u>Minarsky</u> ("defendant supervisor was reprimanded twice and ultimately terminated, and the Third Circuit still found the Defendant did not meet the first prong of the <u>Farragher-Ellerth</u> defense.).

Additionally, an employee's failure to timely report sexually harassment does not per se satisfy the second prong of Farragher-Ellerth; if a plaintiff's genuinely held, subjective belief of potential retaliation from reporting her harassment appears to be well-founded, and a jury could find that this belief is objectively reasonable, the trial court should not find that the defendant has proven the second Faragher-Ellerth element as a matter of law.  Instead, the court should leave the issue for the jury to determine at trial. Minarsky at 314.  The same analysis is true if a plaintiff has a reasonable and legitimate belief that raising a complaint would be futile. Reed v. MNBA Marketing Systems, Inc., 333 F.3d 27, 36 (1st Cir., 2003).  Even if Greg Roman was not a proxy for The Middle East Forum, and Defendants were entitled to a Farragher-Ellerth defense, Defendants cannot establish either prong of the defense.  The first prong of the defense requires that a defendant exercise reasonable care to prevent harassment and that any sexually harassing behaviors be corrected.  Defendants' motion presents a written antiharassment policy in an employee handbook, however, even the Director of Human Resources, Marnie O'Brien is unable to confirm what version of the alleged sexual harassment policy was controlling at the time the harassment took place. See Marnie O'Brien's Declaration attached and marked Exhibit "N", Paragraph 14 (Civil Action No. 2:19-cv-06078-JMG).  Moreover, Defendant Pipes clearly articulated his hands-off management policy and deferred almost complete authority to Defendant Roman to handle such matters. Deposition of Daniel Pipes Exhibit F; Exhibit A ¶ 40. See also Notes from the November 5, 2018 meeting where employees complained about this policy Exhibit "O".  Defendant Roman's policy, in words and actions, regarding reports of discrimination and harassment in the workplace threatened retribution to anyone who attempted to communicate directly with Defendant Pipes. Id. Exhibits A and O.  Roman became incensed and livid if any employee even attempted to bring an issue to Daniel Pipes without first bringing

it to Roman. <u>Id</u>.  At every level, Defendants rejected the written policy presented in the employee handbook and employed a closed-door policy intended to reduce the number of reports and silence any female victims of Greg Roman's sexual harassment in the workplace. <u>Id</u>.  <u>See also</u> <u>Exhibit A</u> ¶¶ 41 – 44. <u>And</u> <u>see</u> <u>Exhibit R</u>.  Moreover, Matthew Bennett, Greg Roman's good friend and enforcer, threatened both Lisa Barbounis and Patricia McNulty when Ms. Barbounis and Ms. McNulty sought his help in reporting Greg Roman's sexual misconduct. <u>Id</u>. <u>See also</u> <u>deposition transcript of Patricia McNulty attached and marked Exhibit "S"</u>  Page 141. Matthew Bennett notified Ms. Barbounis and Ms. McNulty of other female employees previous who had attempted to report sexual harassment including Tiffany Lee, Laura Frank, and Lara Scott. <u>Id</u>. Bennett told Ms. Barbounis and Ms. McNulty that Defendants had circled the wagons to discredit previous victims' reports of harassment.  <u>Id</u>.  Bennett also pointed out that none of the victims worked for MEF presently, but Roman is still the Director and corporate officer. <u>Id</u>. Matthew Bennet was also scared to report issues related to Greg Roman.  While he mentioned that I could bring the reports to Daniel Pipes, he certain did not seem to want to himself and never did. <u>Id</u>.

Additionally, the first prong requires that a defendant take swift action to correct and prevent the sexual harassment.  In the present circumstances Defendant Pipes conceded that he did not believe the complainants and that Defendant Roman was punished due to financial malfeasance, not because of any sexual harassment. <u>Deposition of Daniel Pipes, Exhibit F</u>. Defendant Pipes entire "investigation" of this matter (or lack thereof) took only one (1) day, and included brief interviews of some, but not all, of the female victims of Greg Roman's behavior. <u>A copy of Daniel Pipes' letter to Lisa Barbounis that stated, "I investigated this matter yesterday…" is attached and marked Plaintiff's Exhibit "P"</u>.  <u>See also</u> <u>Deposition Transcript of</u>

<u>Daniel Pipes attached and marked Plaintiff's Exhibit "Q"</u> Page 179 (Pipes confirming he investigated in one day).  Defendant, Pipes' next step in responding to the multiple reports of severe and pervasive sexual harassment in the workplace was to hold a group meeting, where Greg Roman and Greg Roman's sister, Stacy Roman were invited.  <u>Exhibit A</u> ¶ 46.  <u>See</u> <u>also</u> <u>the letter notifying Philadelphia office about the group meeting where Greg Roman is CCed attached and marked Exhibit "R"</u>.   The meeting included all employees of the Philadelphia office and it was Pipes' brainstorm to deal with the allegations of sexual harassment publicly. <u>Id</u>. Pipes' strategy worked to silence the victims of Greg Roman's sexual harassment in the workplace.

<u>Exhibit A</u> ¶ 47.  During the group, airing of grievances meeting, the victims of Greg Roman were admonished by both Daniel Pipes and Stacy Roman. <u>See</u> <u>meeting notes Exhibit O</u>.  Defendants' own meeting notes confirms that Daniel Pipes began the meeting by admonishing the Greg Roman's victims for the "surprise" reports of sexual harassment. <u>Id</u>. The same meeting notes confirms that Stacy Roman blamed the women for wearing short skirts, for Greg Roman's sex-based conduct. <u>Id</u>.   But possibly most important, is Defendants claims that the group meeting had little to nothing to do with the women's reports of sexual harassment and more to do with Roman's management style. <u>Deposition Transcript of Mark Fink attached and marked Plaintiff's Exhibit "T"</u> Page 32

> Q. Is it your testimony that the least important allegations raised at that meeting were allegations of sexual harassment?
> A. Yeah. Yeah, that's my memory. Yes. Yes. Yeah. Yeah.
>
> <u>Id</u>.

. Given the sensitive nature of the complaints raised and Defendant Pipes outright and total dismissal of any and all information raised after the staff meeting, no reasonable person could conclude that Defendants swiftly addressed and corrected the issue.

Further, Defendant Roman was not punished.  He maintained his job title and corporate stature, received the same salary, was permitted to work from home, and had less job responsibilities for the same pay and benefits.  <u>A copy of the letter to Greg Roman is attached and marked Plaintiff's Exhibit "U".</u>  And the small changes employed in November 2018 lasted only months, after which Roman was brought back to full duties as Director of the Middle East Forum.  <u>Id</u>.  <u>And see</u> <u>Exhibit A</u> ¶ 48.

Only a short time after Roman was permitted back, the female employees noted retaliation. <u>Exhibit R</u> ¶¶ 34 - 39.  <u>Exhibit A</u> ¶¶ 36 – 39.  Roman used his position as MEF's penultimate management level employee and corporate officer to subject the women who reported his harassment to further harassment. <u>Id</u>.  The female employees reported this to Daniel Pipes who refused to take any action or even consider the information as reports. <u>See</u> <u>deposition of Daniel Pipes Exhibit Q</u> Pages 77, 133, 186, 216, 352, 369.   At deposition, in response to three written reports of discrimination and harassment in the workplace involving Greg Roman, Daniel Pipes said, "I don't see reports.  I see women moaning." <u>Id</u>.  Daniel Pipes actually said, "I have seen priests who molest kids do worse and keep their jobs." Exhibit A ¶ 49.  Daniel Pipes also employed a stated policy that he would take no action against Roman for anything that occurred before November 2018, even if it was new information. Exhibit A ¶ 50.  Daniel Pipes used this policy to silence women and avoid the promise he made to the female victims of Greg Roman's sexual harassment in the workplace; that if there was one more credible report, Greg Roman's employment would be terminated. <u>See</u> <u>letter from Daniel Pipes attached and marked Plaintiff's Exhibit P</u>.

Defendants failed to employ preventative measures to preclude sexual harassment and failed to implement decisive action to stop it.  Today, MEF has brought Defendant Roman fully

back into leadership and has dispelled with the human resources department entirely. <u>Declaration</u> <u>of Marnie Meyer Exhibit N</u>.  Defendants handling of the many victims of Greg Roman's sexual harassment demonstrates the dire need for punitive damages, and the complete dismissal of all retaliatory counterclaims.  There is a storied history of at least nine (12) women lodging allegations of sexual harassment and or sex and gender discrimination claims involving Greg Roman and MEF's lack of regard and refusal to put a plan in place to protect their employees., <u>Exhibit A</u> ¶ 51. <u>And</u> <u>see</u> <u>Deposition of Daniel Pipes Exhibit F</u>.

The second prong of the affirmative defense requires a showing that Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.  Defendants argue they have satisfied their second prong burden because there was a delay in Lisa Barbounis reporting the harassment.  This argument ignores the relevant facts and law including the holding in <u>Minarsky</u>.  Lisa Barbounis, Patricia McNulty, Marnie O'Brien, Caitriona Brady, Delaney Yonchek, Tiffany Lee, and Leah Merville were terrified of reprisal from Defendant Roman. <u>Exhibit A</u> ¶ 52.  Defendant, Roman made it clear that he was always watching and could access private information on personal phones and other devices. <u>Exhibit A</u> ¶ 53.   Patricia McNulty actually sent screen shots to her sister to safeguard, of text communications where Lisa Barbounis and Patricia McNulty discussed Greg Roman's sexual harassment. <u>Id</u>. Lisa Barbounis and Patricia McNulty were afraid to even have private text messages discussing Greg Roman's sexual harassment on their phones. <u>Id</u>.  They thought that Greg Roman could hack into their devices, access the conversations, and retaliate. <u>Id</u>. Ms. McNulty and Ms. Barbounis were not paranoid.  This fear was born for actual threats Roman made to the  female staff. <u>Id</u>.   Roman performed threatening demonstrations to prove he could hack a personal device and access private information. <u>Id</u>.

Roman also used and referred surveillance he placed around the office and bragged about his access to their email accounts, instant messaging accounts and devices.  Id.  Marnie O'Brien, Patricia McNulty and Lisa Barbounis were told about or witnessed several women who faced termination as a result of raising complaints against Defendant Roman.  These women included (1) Tiffany Lee, (2) Laura Frank, (3) Lara Szott, and (4) Iman Patel.  Exhibit A ¶ 54.

Due to Roman's threatening conduct and comments, and Matthew Bennett informing Lisa Barbounis and Patricia McNulty what would happen if they reported sexual harassment, Plaintiff held a reasonable fear of both futility and retaliation.

Exhibit A ¶¶ 41 – 46.  See also deposition transcript of Patricia McNulty attached and marked Exhibit "S"  Page 141. Moreover, even the Director of Human Resources was petrified to bring issues involving Roman's sexual harassment to Daniel Pipes.  Declaration of Marnie O'Brien Exhibit N.  Marnie O'Brien testified that she witnessed Greg Roman's physical, sexual, conduct at the AIPAC conference in Washington D.C. Deposition.  The deposition transcript of Marnie O'Brien is attached as Exhibit "V" Pages 85 – 87.   Lisa Barbounis testified that she spoke with Marie O'Brien soon after the AIPAC conference and Israel trips. Deposition transcript of Lisa Barbounis attached as Exhibit "W" Page 235.   Marnie O'Brien testified that she was scared to advance these reports to Daniel Pipes.  Exhibit N.  In her capacity as Director of Human Resources, Marnie O'Brien physically hand wrote the complaint and insisted on delivering it to a personal email account. The handwritten complaint is attached as Exhibit X.  This too was out of fear due to Roman's threats hacking personal devices and accounts.  Exhibit N.  Finally, after deciding to file the complaint in November 2018, Marnie O'Brien was scared of Roman finding out before her complaint reached Defendant Pipes.  Id.  Marnie O'Brien refused to speak with

Lisa Barbounis in the office the rest of the day and instructed her to act normally so that they would not get fired. Exhibit I, Deposition of Marnie O'Brien, Exhibit H.

Any delay in reporting issues related to Greg Roman was born from genuine, reasonable fear of retaliation and/or fear that the reports would be futile. Accordingly, Defendants cannot meet the second prong of Farragher-Ellerth.

### D. Plaintiff Reported Continuous and Ongoing Harassment, Her Complaints are Not Time Barred.

Under the continuing violation doctrine, discriminatory acts that are not individually actionable may be aggregated to make out a hostile work environment claim; such acts "can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period." O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006), citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002) (explaining court may consider "entire scope of a hostile work environment claim ... so long as any act contributing to that hostile environment takes place within the statutory time period"). A hostile work environment claim "is composed of a series of separate acts that collectively constitute one 'unlawful employment practice'" and "cannot be said to occur on any particular day." Morgan, 536 U.S. at 115–17. To allege a continuing violation, the plaintiff must show that all acts which constitute the claim are part of the same unlawful employment practice and that at least one act falls within the applicable limitations period. See Morgan, 536 U.S. at 122; see also West v. Phila. Elec. Co., 45 F.3d 744, 754–55 (3d Cir.1995) (explaining plaintiff must show that at least one act occurred within the filing period and that the harassment is "more than the occurrence of isolated or sporadic acts of intentional discrimination"). Permanency is not required to establish a continuing violation. Mandel v. M & Q Packaging Corp., 706 F.3d 157, 166 (3d Cir., 2013). Further, the "statute does not separate individual acts that are part of the hostile environment

claim from the whole for the purposes of timely filing and liability.  And the statute does not contain a requirement that the employee file a charge prior to 180 or 300 days 'after' the single unlawful practice 'occurred.'  Given, therefore, that the incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim.  In order for the charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment." Mandel at 166-67, citing Morgan, supra, 536 U.S. at 117-18.

Defendants argue that Plaintiff's claims under Title VII, the Pennsylvania Human Relations Act ("PHRA") and the Philadelphia Fair Practices Ordinance ("PFPO") should be dismissed as untimely.  To support this argument, Defendants segregate Plaintiff's complaints of ongoing and continuous harassment into separate and discrete acts which fall outside the statutory window for filing a Charge of Discrimination.  As summarized above (and more fully below), Plaintiff was subjected to an ongoing, continuous pattern of sexual harassment and sex and gender discrimination which began at Lisa Barbounis' job interview and continued until November 2018, when Roman was temporarily removed from the Philadelphia offices.  During the temporary period while Roman was out of the office, Ms. Barbounis was not subjected to sexual harassment however, when Roman returned to full duties in March 2019, the retaliation, discrimination and harassment in the workplace resumed and got worse until Lisa Barbounis had to resign her position in August 2019.  Importantly, the pervasiveness of Defendant, Greg Roman's sexual harassment, to which Lisa Barbounis was subjected, reached its peak between August and November 2018.  The severe and pervasive sexual harassment during this time period led to the reports to Daniel Pipes in November 2018.  And because Roman's sexual harassment began in October 2017, and continued past the statutory period into October 2018,

with conduct and comments that were pervasive and ongoing, the continuing violations renders

Plaintiff's hostile work environment claim timely.

Plaintiff also notes the holding in Mandel, that behavior need not be permanent to be

considered a continuing violation. Lisa Barbounis has presented evidence that Greg Roman's

sexual harassment occurred in a myriad of ways, including, directly harassing Lisa Barbounis

with sex-based comments and sex-based physical contact, forcing her to watch when colleagues

were harassed, incessantly talking about sex and Ms. Barbounis's sex life, sexual propositions,

putting hands on Ms. Barbounis while in the office, leering at Ms. Barbounis' chest and

backside, forcing her to watch inappropriate videos and images and talking about sex, asking Ms.

Barbounis to visit his home "when my wife won't be here," constantly referring to Ms.

Barbounis as his "work wife," commenting on women's "big tits," describing sex and sexual

conquests, telling Ms. Barbounis she was hired because she is "hot," talking about women he had

"fucked," saying "I wish I could still fuck all those girls," complaining that he was not sexually

gratified, complaining that his wife could not sexual gratify him, saying that his wife was not

"hot enough," saying that he should be permitted to continue "fucking hot chicks," talking about

sex while forcing Ms. Barbounis to sit inappropriately close to him, creating scenarios to get Lisa

Barbounis alone and then refusing to discuss work related issues, talking about another employee

who gave a great blowjob, ordering Lisa Barbounis to give him a release, inviting Ms. Barbounis

to his home late at night, calling Ms. Barbounis late at night, asking questions about Ms.

Barbounis' sexual preferences, and generally trying to convince Lisa Barbounis to engage in a

sexual relationship. Exhibit A ¶¶ 55 – 71. Greg Roman's conduct and comments continued into

the statutory period. Defendants attempt to characterize the two events in Washington D.C., and

Israel as "discrete act," ignores that these two incidents were just part of an ongoing pattern of

pervasive, inappropriate, sexual harassment to which Ms. Barbounis was subjected from the

beginning of her employment until Mr. Roman was temporarily forced to discontinue visiting the

Philadelphia offices.  Exhibit A ¶¶ 55 – 71.

      Defendants continuous attempts to mislead the Court with statements that Defendants

take out of context or with exhibits that simply do not state what Defendants claim cannot be

used to prevail at the summary judgment level.  For example, Lisa Barbounis wrote a letter to

Daniel Pipes where she explains her reasoning and thought process in March 2018.  The letter

stated, inter alia, "Gregg made unwanted sexual advances and put me in an uncomfortable

situation. However, ***I felt at the time*** I handled the issue and have not had an incident since." See

(Document 109-3 Page 18 of 50 ¶ 49). See also (Plaintiff's response filed with the instant

motion).  Plaintiff, Lisa Barbounis was describing a thought process six months earlier.  As she

confirmed at her deposition, Ms. Barbounis was also specifically referring to physical contact

like in Washington D.C. and Israel.

      That Greg Roman was temporarily removed from the Philadelphia office does not shield

Defendants from liability.  Under the continuing violations doctrine, the behavior need not be

permanent and many offensive acts occurred within 300 days of Plaintiff filing her Charge in

June 2019.  Specifically, the way that Roman behaved, incessantly talking about sex, hot chicks,

sexual conquests, leering, viewing inappropriate photos, calling late at night, inviting Ms.

Barbounis to his home, continued unabated until Roman was removed from the office.  Working

with Greg Roman meant contending with this type of incorporate, abusive, sex-based behavior.

**E.  Daniel Pipes knew or should have known that Greg Roman posed significant risk for the safety of his female staff.**

Plaintiff, Lisa Barbounis' negligent hiring and negligent retention claim is based, in part on the admission of Defendant, Daniel Pipes.  Pipes warned Roman that if there was even one more report of sexual harassment, Roman would be terminated.  We know today that Pipes did not mean this statement as there have been multiple reports of inappropriate sex-based allegations involving Greg Roman that Pipes ignored.  These reports and allegations predate Plaintiff's employment.  The record of evidence demonstrates that Pipes already had direct knowledge that Roman posed a significant risk for the safety of MEF's female employees.  Tiffany Lee filed a Charge of Discrimination at the EEOC, the allegations of which are eerily familiar to those of Patricia McNutly, Marnie O'Brien, and Lisa Barbounis.  Laura Frank and Lara Scott also alleged sexual harassment involving Greg Roman.  Some MEF employees sometimes refer (facetiously) to November 5, 2018 as "D-Day."  It turns out  there was an earlier D-Day when Pipes spoke to MEF's female employees about Greg Roman's violent behavior toward female staff.  Pipes spoke with Aman Patel, Thelma Prosser and several other female employees about Greg Roman screaming, cursing, and even violently throwing things at work.  Due to the number of allegations of sexual harassment, violent conduct, and sex and gender discrimination involving Greg Roman that predate the reports of Plaintiff, Lisa Barbounis, a reasonable jury could conclude that Pipes negligently permitted Greg Roman continue as Director of The Middle East Forum and in a position to sexual touch and sexual harass the female employees who worked for him.

**F.** **The record of evidence unearthed during discovery is sufficient to support Aiding and Abetting claims for Daniel Pipes and Greg Roman.**

Defendants' only argument against Plaintiff's aiding and abetting claims is that they are derivative of Plaintiff's primary harassment and discrimination claims. Defendants are that because her discrimination claims fail, the aiding and abetting claims must follow. Because Plaintiff has advanced sufficient evidence for her case to advance on her hostile work environment claims, her aiding and abetting claims must also advance.

**G.** **Defendants counterclaims must be dismissed as a matter of law.**

A simple review of Defendants' proffered Statement of "undisputed" Facts confirms that Defendants have failed, entirely, to unearth any evidence to support the unlawful, retaliatory counterclaims in this case. Defendants own evidence confirms that Lisa Barbounis did everything reasonable an employee can be expected to do, and that at all times her loyalty was to MEF. See Def. Mot Exhibit 72 - the June 22, 2018 email from Lisa Barbounis to Greg Roman and MEF. Looking at Defendants' three counts, (1) civil conspiracy, fraudulent misrepresentation, and (3) breach of duty of loyalty, each one is more absurd then the other. First there is no agency, principle relationship between a secretary (personal assistant) and her employer. Plaintiff, Lisa Barbounis never assumed a fiduciary duty. Even if she had assumed the role of Director of Communications, sometime around February 2019, which she did not (the title was in name only) Exhibit A ¶ 72, it was never a management or supervisory position. Lisa Barbounis was still scheduling meetings for Greg Roman and Daniel Pipes. Id. ¶ 73. There was some additional focus on the MEF's online resources, however, Lisa Barbounis did not manage a single employee. Id. As a matter of law she was not a fiduciary and owed no such duty. Moreover, MEF's own fact statement confirms that there was no act by Lisa Barbounis to bring about harm to MEF. Lisa Barbounis had little to nothing to do with the grant to Daniel Thomas.

Defendants have demonstrated this through the many exhibits that contradict Defendants' Fact Statement.  The small contribution Ms. Barbounis made in assisting Greg Roman, led to Ms. Barbounis warning Greg Roman and MEF to never do business with Daniel Thomas again. Def. Mot. Exhibit 72.  In communicating this warning, Lisa Barbounis specifically cited, as the reason, that Daniel Thomas did not accurately account for all the money granted by MEF. Def. Mot. Exhibit 72.   MEF's own fact statement, Paragraphs 203 and 204 (Def. Mot Exhibit 74) confirms that Greg Roman was the person with whom Daniel Thomas communicated in connection with financial issues. Id.  None of the information flowed through Lisa Barbounis. Greg Roman and MEF chose not to act upon Lisa Barbounis' warning that Daniel Thomas did not account adequately for the granted money.  Even after Daniel Thomas supposedly admitted to Greg Roman during a phone call, that he stole MEF money, MEF still took no action to recoup the money. Deposition transcript of Daniel Pipes Page 279.  Lisa Barbounis informed both MEF and Greg Roman, about Vinny Sullivan in the June 22, 2018 email. Def. Mot. Exhibit 72.  The June 22, 2018 email specially references two venders. Id. Vinny Sullivan is one of the two venders. Id.

When Jasmin Bishop made claims about Daniel Thomas months later in March 2019, Lisa Barbounis tried to substantiate whether the allegation were credible.  Jazmin Bishop then recanted and informed Lisa Barbounis that the money that she was talking about came from Daniel Thomas' mom, and that Daniel Thomas never had that much money. Jazmin Bishop recanting the allegations are attached and marked Plaintiff's Exhibit "Y".  There was no new information to report to MEF.  Lisa Barbounis had already provided MEF with all the information she had on June 22, 2018, that Daniel Thomas did not account for all granted

money, that Vinney Sullivan was angry about not being paid, and that MEF should not do any future business through Daniel Thomas. <u>Def. Mot Exhibit 72</u>.

Today, Lisa Barbounis still has no direct knowledge that Daniel Thomas stole any money from The Middle East Forum. The only knowledge that she does have was immediately and already conveyed to The Middle East Forum in the June 22, 2018 email.

But most importantly, The Middle East Forum has no evidence that money was stolen. The Middle East Forum has not presented a single shred of admissible evidence in connection with its counterclaims. MEF cannot use hearsay statements of Jazmin Bishop, Daniel Thomas, or Vinney Sullivan in its motion. MEF have not presented any sworn statement. Moreover, Daniel Thomas had admitted that Defendant, Greg Roman contacted him and offered to trade something of value for the statement that MEF has presented. <u>A copy of the recording transcript is attached and marked Plaintiff's Exhibit "Z"</u>. Even though Daniel Thomas recanted the statement and said he will not get involved in the lawsuit, MEF still presented it to this Court as evidence. <u>Def. Mot. Exhibit 81</u>. The evidence presented by Defendants confirms that Lisa Barbounis tried to find out if Daniel Thomas indeed took any money. Every action Ms. Barbounis took was in MEF's interest. She did not choose Robinson over MEF. MEF has no evidence that any money was stolen. Moreover, MEF has submitted no evidence that any money was ever sent to Daniel Thomas after the initial grant, of which Lisa Barbounis was not involved. Defendants exhibits confirms that Marnie Meyer sent the contract and Greg Roman signed it (even though Defendants' Fact Statement lies and claims Lisa was involved). <u>Def. Mot Exhibit 74</u>. Defendants exhibits also confirms that Daniel Thomas emailed the invoices directly to Greg Roman. <u>Id</u>. MEF's motion claims that it could have clawed back the money had it known, however, MEF has taken no steps to do this, even today. MEF is not interested in whether

money was stolen.  MEF found text communications where an angry, disgruntled, ex-girlfriend

made false claims about Daniel Thomas stealing money (before she recanted) and has

manufactured the counterclaims to retaliate against Lisa Barbounis.  Greg Roman had to promise

to trade something of value in order to get Daniel Thomas to provide the information contained

in Exhibit 81. See Exhibit Z. Moreover Daniel Pipes confirmed to Lisa Barbounis that all of

these claims, including the Trade Secrets Action in the Courtroom of Judge Sanchez, the

Counterclaims in this case, and the newly filed RICO lawsuit, would all go away if Lisa

Barbounis simply withdrew her sexual harassment claims against Greg Roman. Exhibit A ¶ 13.

MEF fraudulent misrepresentation claims would require a time machine and a very good

imagination to substantiate.  Plaintiff, Lisa Barbounis has never received a single penny from any

individual other than MEF during her employment with MEF.  There is no evidence otherwise.

All money received was in the form of a w-2 paycheck.  She did not work for Tommy Robinson.

She did not work for Daniel Thomas.  She did not misrepresent anything for the purposes of

trying to gain something.  MEF has presented no evidence that anything of value was provided to

any individual other than the grant to Daniel Thomas.  It is very clear that Lisa Barbounis had

very little to do with that grant and did not make any representations to further the granted

money. ***The timeline is very important here***.  The grant to Daniel Thomas occurred in June

2018. Def. Mot Exhibit 72.   At the time, Lisa Barbounis was Greg Roman's personal assistant.

The allegation that Jazmin Bishop made occurred almost one year later in March 2019. Def. Mot

Exhibit 105.  From June 2018 through March 2019, Defendants have not even claimed that Lisa

Barbounis did anything illegal.  According to MEF's own exhibits, MEF discontinued its

relationship with Tommy Robinson well before March 2019, when Jazmin Bishop made the

allegation.  See Def Statement of Fact ¶ 261.  This confirms that Defendants' entire case is built

on a house of lies and deceit to the Court.   This is because by MEF's own admission nothing of

value was given to Tommy Robinson or Daniel Thomas *after March 2019*.  MEF's entire

counterclaim is smoke and mirrors.  Lisa Barbounis worked with MEF from March 2019 until

August 2019.  There is no evidence in this case that Lisa Barbounis took any overt acts between

this time period to further a conspiracy.  There is no evidence that MEF provided anything of

value to Tommy Robinson during this time period.  To the contrary, MEF Fact Statement ¶ 269

confirms that Tommy Robinson was cut off by March 4, 2019.  Lisa Barbounis' continued

employment with MEF is not an over act.  She worked for MEF.  MEF believed she performed

such a good job that they paid her a bonus for a job well done. <u>Def Fact Statement</u> ¶ 168.

Frankly, the counterclaims in this case are about one thing, the angry, resentful, discreditable

allegations of Jazmin Bishop to Lisa Barbounis and MEF's attempt to use them, to retaliate.

Lisa Barbounis did not engage in a civil conspiracy, fraudulent misrepresentation, or breach a

duty of loyalty.  Lisa Barbounis had already informed MEF that Daniel Thomas may have stolen

money.  MEF did nothing.  MEF still has done nothing.  There is no evidence that Daniel

Thomas stole money.  Accordingly, Defendants' counterclaims must be dismissed as a matter of

law.

## IV.   <u>CONCLUSION</u>

For the forgoing reasons, Defendants Motion for Summary Judgment should be denied.

Defendants counterclaims should be dismissed.   Plaintiff, Lisa Barbounis should be permitted to

advance to trial on all claims pled.


                                       **DEREK SMITH LAW GROUP, PLLC**

                          BY:_____/s/ Seth D. Carson_____
                                      Seth D. Carson, Esq.
                                        Attorney ID. No. 319886
                                        1845 Walnut Street, Suite 1601
                                        Philadelphia, PA 19103
                                        (215) 391-4790
                                        seth@dereksmithlaw.com
                                        *Attorney for Plaintiff*


DATED: April 16, 2021

## CERTIFICATE OF SERVICE

I hereby certify that on this date that I caused a true and correct copy of Plaintiff's Motion Defendants to be served via ECF.

> Jon Cavalier
> Leigh Ann Benson
> Cozen O'Connor
> 1650 Market Street, Suite 2800
> Philadelphia, PA 19103
> P: 215-665-2000
> F: 215-665-2013
> dwalton@cozen.com
> lbenson@cozen.com
> Sidney L. Gold sgold@discrimlaw.
> Sidney L. Gold & Associates P.C.
> 1835 Market Street, Suite 515
> Philadelphia, PA 19103
> Tel: (215) 569-1999
> Fax: (215) 569-3870
> Counsel for The Middle East Forum

**DEREK SMITH LAW GROUP, PLLC**

BY:_____/s/ Seth D. Carson_____
       Seth D. Carson, Esq.
       Attorney ID. No. 319886
       1845 Walnut Street, Suite 1601
       Philadelphia, PA 19103
       (215) 391-4790
       seth@dereksmithlaw.com
       *Attorney for Plaintiff*

DATED: April 16, 2021

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| LISA BARBOUNIS, | : <br> : <br> : |
|  Plaintiff, | : CIVIL ACTION <br> : NO. 2:19-cv-05030-JDW <br> : |
| v. | : <br> : |
|  | : OPPOSITION TO DEFENDANTS' <br> : MOTION FOR SUMMAY JUDGMENT |
| THE MIDDLE EAST FORUM, GREG <br> ROMAN, AND DANIEL PIPES, | : <br> : <br> : |
|  Defendants. | : <br> : |

## <u>CERTIFICATION</u>

This is a Certification that Plaintiff will courier a copy of this finished motion and memorandum with all Exhibits to the Court and to Defendants on Monday, April 20, 2021. The files are long and numerous and do not lend to e-filing.

**DEREK SMITH LAW GROUP, PLLC**

BY:_____/s/ Seth D. Carson_____
          Seth D. Carson, Esq.
          Attorney ID. No. 319886
          1845 Walnut Street, Suite 1601
          Philadelphia, PA 19103
          (215) 391-4790
          seth@dereksmithlaw.com
          *Attorney for Plaintiff*

DATED: April 16, 2021