**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LISA BARBOUNIS, | : |
| | : |
| Plaintiff, | : CIVIL ACTION |
| | : NO. 2:19-cv-05030-JDW |
| v. | : |
| | : |
| | : OPPOSITION TO DEFENDANTS' |
| | : MOTION FOR SUMMAY JUDGMENT |
| THE MIDDLE EAST FORUM, GREG | : |
| ROMAN, AND DANIEL PIPES, | : |
| | : |
| Defendants. | : |
| | : |

**PLAINTIFF, LISA BARBOUNIS'S RESPONSE TO DEFENDANTS'**
**PROFFERED "STATEMENT OF UNDISPUTED MATERIAL FACTS"**

Plaintiff, Lisa Barbounis ("Ms. Barbounis" or "Plaintiff") by and through counsel hereby responds to Defendants' Proffered "Statement of Undisputed Material Facts" by admitting or denying each fact presented by Defendants and citing to the record of evidence unearthed through discovery. As indicated below, the record of evidence demonstrates material facts in dispute which precludes Defendants' Motion for Summary Judgment on Plaintiff's claims. The record of evidence also precludes Defendants' Motion for Summary Judgment on Defendants' counterclaims and supports Plaintiff's Motion for Summary Judgment which argues that all counterclaims should be dismissed with prejudice prior to trial.

Importantly, Defendants so-called "statement of undisputed material facts" is another but. Defendants did not attempt to limit its fact statement to issues germane to the instant litigation. Instead, Defendants present fifty (50) pages of sprawling, nonsensical, inadmissible information that cannot be used to prevail in either summary judgment arguments Defendants attempt

(Plaintiff's claims and Defendants' counterclaims).  In wasting the Court's and parties' time and

resources with a motion that cannot pass mustard and fails the smell test, Defendants motion is

saturated with inadmissible inuendo and misleading information.  At every turn Defendants ask

the Court to reverse the standard under which a dispositive motion is judged by resolving all

facts and inferences in favor of the moving party.  Plaintiff will demonstrate in detail below.,

     1.      The Forum is a think tank founded in 1994 by Daniel Pipes. Exhibit 1,

Certification of Daniel Pipes at ¶ 4-5.

**RESPONSE:**

This is not a material fact to this case.  Plaintiff does not dispute that The Middle East Forum

("MEF") is a think tank founded in 1994 by Defendant, Daniel Pipes.

     2.      Daniel Pipes is the president of the Forum. Id. at ¶ 1.

**RESPONSE:**

Defendant, Daniel Pipes is the President of MEF and is the top level individual responsible for

MEF policies and operations.  Defendant, Daniel Pipes ("Pipes") and Defendant, Greg Roman

("Roman") control all aspects of MEF including policies, procedures, protocols, and

management. Declaration of Lisa Barbounis Exhibit A ¶ 74.  Declaration of Patricia McNulty

Exhibit R ¶ 20 – 23.  Deposition Transcript of Greg Roman ("Roman Tr") attached as Exhibit

"AA" page 20 – 26.  Deposition Transcript of Steve Levy ("Leve Tr") attached as Exhibit "B"

page 8, page 10, page 26.  Deposition Transcript of Daniel Pipes ("Pipes Tr") attached as Exhibit

"Q" pages 26 – 35..  In addition to their management roles, Defendant, Roman and Defendant Pipes are also corporate officers of MEF. Id. Both Pipes and Roman have proxy liability for the claims and allegations brought by Plaintiff, Lisa Barbounis in this case.

3.      Gregg Roman is the director of the Forum. Id. at ¶ 11.

**RESPONSE:**

Defendant, Greg Roman is the Director of MEF, which is the penultimate position responsible for MEF policies and operations.  Defendant, Roman and Defendant, Pipes control all aspects of MEF including policies, procedures, protocols, and management.  In addition to their management roles, Defendant, Roman and Defendant Pipes are also corporate officers.  Both Pipes and Roman have proxy liability for the claims and allegations brought by Plaintiff, Lisa Barbounis in this case.

4.      Matthew Bennett is the former director of development of the Forum. Id. at ¶ 17.

**RESPONSE:**

Matthew Bennett ("Bennett") was an employee of Defendant, MEF during the same time period when Plaintiff was employed.  Bennett held the position of Director of Development until November 2018, when Bennett assumed additional responsibilities including the role of Acting Director of the Philadelphia offices. Exhibit A ¶¶ 75 – 76.

5.      Plaintiff Lisa Barbounis is a former employee of the Forum and the Plaintiff in the instant case. Id. at ¶ 18.

**RESPONSE:**

Uncontested.

6.      Patricia McNulty is a former employee of the Forum and a friend of Plaintiff.  Id. at ¶ 19.

**RESPONSE:**

It is uncontested that Patricia McNulty is a former employee of MEF.  Whether Plaintiff and Ms. McNulty are friends is not a material fact.  Moreover, sworn information by Defendant, Daniel Pipes requires a credibility determination.  Daniel Pipes is not in a position to testify about a friendship between two people with whom Pipes has had no communication for almost two (2) years.  Exhibit A ¶ 77.

7.      Marnie O'Brien ("O'Brien") is a former employee and human resources director of the Forum who often feuded with Plaintiff. Id. at ¶ 20.

**RESPONSE:**

It is uncontested that Marnie Meyer was the Director of Human Resources for MEF during the same time while Plaintiff was an employee of MEF.  Defendant, Daniel Pipes' sworn statement that Ms. Meyer and Lisa Barbounis "often feuded" is not a material fact and has no relevance to Plaintiff, Lisa Barbounis's claims of sexual harassment involving Greg Roman or Defendants' Counterclaims.   Moreover, Defendant, Pipes has no direct or personal knowledge regarding any "feuds" between Ms. Meyer and Ms. Barbounis.  Defendant, Pipes has never witnessed an

argument between Ms. Meyer and Ms. Barbounis.

8.      Delaney Yonchek is a former employee of the Forum and was subordinate to

Plaintiff and O'Brien. Exhibit 2, Barbounis Dep. Part 2 at p.120-21.

**RESPONSE:**

Uncontested.

9.      Caitriona Brady is a former employee of the Forum and was subordinate to

McNulty and Bennett. Exhibit 1, Certification of Daniel Pipes at ¶ 24.

**RESPONSE:**

Uncontested.

10.     Paul Harris, also known as Tommy Robinson ("Robinson"), is a United

Kingdom-based political activist with whom Plaintiff did substantial work beginning in 2018. Id.

at ¶ 21.

**RESPONSE:**

Contested.  It is contested that Plaintiff, Lisa Barbounis did "substantial work" for Tommy

Robinson beginning in 2018.  Ms. Barbounis did not meet Tommy Robinson until October 2018

and only worked with Tommy Robinson on a volunteer basis thereafter. Exhibit A ¶ 78.

Moreover, Daniel Pipes is not in a position to offer credible testimony regarding work that Lisa

Barbounis performed with Tommy Robinson.

11. Daniel Thomas ("Thomas") is an affiliate of Robinson who was in charge of putting together rallies and fundraising for his benefit. Id. at ¶ 22.

**RESPONSE:**

Defendant, Pipes' has little to no direct knowledge with regard to Daniel Thomas' relationship with Tommy Robinson. It is not contested that Defendant, Greg Roman made the decision to provide an MEF grant to Daniel Thomas for the purposes of organizing a "free Tommy Robinson" event. Exhibit A ¶ 79 – 80.

12. Jazmin Bishop ("Bishop") is the domestic partner and mother of Thomas' 3 children. Id. at ¶ 23.

**RESPONSE:**

Contested. Defendant, Daniel Pipes has no knowledge related to the relationship of Jazmin Bishop and Daniel Thomas. Any information that Defendant, Pipes could possibly offer in connection with this paragraph is hearsay and cannot be used for the purposes of dispositive motions or trial. Plaintiff, Lisa Barbounis has no direct knowledge related to Jazmin Bishop's relationship with Daniel Thomas. Exhibit A ¶ 81.

13. Vasili Barbounis ("Vasili" or "Mr. Barbounis") is Plaintiff's husband. Id. at ¶ 24.

**RESPONSE:**

While it is uncontested that Plaintiff, Lisa Barbounis and Vasili Barbounis remain married today, this is not a fact material to this case.

14.     The mission of the Forum is to promote American interests in the Middle East and to protect Western values from Middle East threats. Id. at ¶ 3.

**<u>RESPONSE:</u>**

Plaintiff, Lisa Barbounis contests that MEF's primary mission is in line with the information in Paragraph 14.  While Lisa Barbounis does not contest MEF's statement mission, the Middle East Forum's current mission is seemingly to wage war by unlawful and inappropriate means, using the civil litigation system to retaliate against Plaintiff, Lisa Barbounis, witnesses, and counsel. Evidence that MEF's mission also includes advancing a campaign of unlawful retaliatory actions includes the following: Daniel Pipes sent Lisa Barbounis an email on December 3, 2020 asking to meet him at 30th Street Train Station in Philadelphia, Pennsylvania. <u>Exhibit A</u> ¶¶ 83 – 107. Daniel Pipes said to come alone, without counsel, and to prove all devices were turned off. Daniel Pipes explained to Lisa Barbounis his unlawful retaliatory strategy and response to Lisa Barbounis's sexual harassment suit. <u>Id</u>.  Daniel Pipes subjected Ms. Barbounis to extortion, threatening to file additional claims if Lisa Barbounis did not withdraw her case from the Eastern District of Pennsylvania. <u>Id</u>.  Daniel Pipes threatened a RICO lawsuit if Lisa Barbounis did not dismiss her sexual harassment case with prejudice.  Daniel Pipes said, "we all have the same problem… your attorney."  Daniel Pipes suggested Ms. Barbounis fire her lawyer. <u>Id</u>.  Lisa Barbounis told Pipes she had substantial legal bills. <u>Id</u>.  Pipes responded that MEF would cover the costs of a bankruptcy lawyer and promised to hire a credit counselor to help with outstanding bills. <u>Id</u>.  Pipes then emailed a proposed settlement agreement memorializing the above. <u>Id</u>.  <u>See also  A copy of the proposed settlement sent by Pipes to Lisa Barbounis is attached and marked Plaintiff's Exhibit "BB"</u>.  Lisa Barbounis did not agree to the unconscionable terms and on January 22, 2021, The Middle East Forum filed another retaliatory lawsuit alleging violations of

the RICO statutes. Id. See also Document 1 2:21-cv-0031-JS.   The RICO lawsuit failed to advance new factual averments and the same facts as the counterclaims in this case were repackaged and relabeled as RICO violations. Id.

The Middle East Forum did not stop there.  To substantiate the RICO case, and the counterclaims in this case, Defendant, Roman contacted an individual with whom Lisa Barbounis had been romantically involved previously: Daniel Thomas. Exhibit A ¶¶ 96 – 97. See also Exhibit Z.  According to a voice message recording left by Daniel Thomas, Greg Roman promised to trade something of value to Daniel Thomas in exchange for Daniel Thomas's false testimony and defamatory statements. Exhibit Z.   In describing the conversation Daniel Thomas stated, "I am taking her to fucking town, that cunt.  She fucking ruined my life she did. …  Greg Contacted me.  He gave me a little wink.  He said when this is all over we will thank you."  A copy of the transcript from the voice recording is attached and marked Plaintiff's Exhibit "Z". Soon thereafter, Daniel Thomas recanted and/or informed MEF that he would not be willing to participate or substantiate the information.

> Thomas' … cut off contact with MEF without explanation, stating, "I'm sorry I
> can't tell you why but I can't be involved in this anymore. Please don't contact me
> again!" Document 45-3.

Daniel Thomas specially informed Defendants he would not be involved in this lawsuit. Id.  Greg Roman's purported attempt to bribe Daniel Thomas and Daniel Thomas' refusal to participate in this lawsuit did not stop Defendants from relying on his hearsay, inadmissible statement.  See Def, Mot. Exhibit 91. See also the RICO lawsuit filed in this Court 2:21-cv-0031-JS. And see Exhibit Z.   Daniel Thomas' statement, which can't be used at trial, was the basis for the counterclaims.

The Middle East Forum did not stop there.  During a deposition of Plaintiff, Lisa

Barbounis in the matter of <u>Middle East Forum v. Lisa Barbounis</u>, Defendants created an evidence mashup, the very definition of manufacturing evidence. <u>Exhibit A</u> ¶¶ 98 – 107. Defendant, Greg Roman provided his counsel, Sidney Gold, with a taped recording of several conversations that Lisa Barbounis held with difference people at different times. <u>Id.</u>  Defendant, Greg Roman used cut and past software for audio recordings to blend all of these recordings together into a single recording. <u>Id.</u>  Defendants used this manufactured recording during the deposition of Lisa Barbounis in a clear attempt to embarrass and harass Ms. Barbounis. Plaintiff's counsel objected to the manufactured evidence. <u>Id.</u>

15.     In the Middle East, the Forum focuses on ways to defeat radical Islam, work for Palestinian acceptance of Israel, develop strategies to contain Iran, and deal with advancing anarchy. Id. at ¶ 4.

**<u>ANSWER:</u>**

This is not a material fact.  This statement has no relevance to Plaintiff's claims or Defendants' counterclaims.

16.     In the United States, the Forum emphasizes the danger of lawful Islamism, protects the freedoms of anti-Islamist authors and activists, and works to improve Middle Eastern studies. Id. at ¶ 5.

**<u>ANSWER:</u>**

This is not a material fact.  This statement has no relevance to Plaintiff's claims or Defendants' counterclaims.

17.     The work performed by the Forum at times generates controversy. Id. at ¶ 6.

**ANSWER:**

This is not a material fact.  This statement has no relevance to Plaintiff's claims or Defendants'

counterclaims.  This fact also remains unproven to this day.

18.     As a result, the Forum's employees are occasionally subject to threats by terrorist

organizations, including ISIS and Al Qaeda. Id. at ¶ 7.

**ANSWER:**

This is not a material fact.  This statement has no relevance to Plaintiff's claims or Defendants'

counterclaims.  Not one person at The Middle East Forum was ever threatened by ISIS or anyone

else during Plaintiff's employment.  There is no threat and Defendants attempt to conjure threats

is only relevant to Defendants proffered arguments in defense of the female victims' allegations

of sexual harassment.  Exhibit A ¶ 108.

19.     Confidentiality is of the utmost importance to the Forum. Id. at ¶ 8.

**ANSWER:**

This is not a material fact.  This statement has no relevance to Plaintiff's claims or Defendants'

counterclaims.

20.     Those who work for the Forum have, at times, a demanding and stressful job. Id.

at ¶ 9.

**ANSWER:**

This is not a material fact.  This statement has no relevance to Plaintiff's claims or Defendants'

counterclaims.  Moreover, Plaintiff objects to Defendant, Pipes attempting to present as evidence his opinion about the mental and psychological reactions to employment with MEF.  This statement is not admissible at trial and thus cannot be used support a motion for summary judgment.

      21.      Those who work for the Forum are frequently required to travel. Id. at ¶ 10.

**<u>ANSWER:</u>**

This is not a material fact.  This statement has no relevance to Plaintiff's claims or Defendants' counterclaims.  Moreover, this statement is contested.  Frequent travel is not a requirement for all MEF employees. <u>Exhibit A</u> ¶ 109.

      22.      Gregg Roman is very passionate about the Forum's mission and his work. Id. At ¶12.

**<u>ANSWER:</u>**

This is not a material fact.  This statement has no relevance to Plaintiff's claims or Defendants' counterclaims.

      23.      Roman works long hours to advance the Forum's mission across the globe. Id. At ¶ 13.

**<u>ANSWER:</u>**

This is not a material fact.  This statement has no relevance to Plaintiff's claims or Defendants' counterclaims.

24.     Roman is a demanding supervisor. Id. at ¶ 14.

**ANSWER:**

This is not a material fact.  This statement has no relevance to Plaintiff's claims or Defendants'

counterclaims.  Plaintiff's lawsuit does not allege issues with a "demanding supervisor."

Plaintiff's lawsuit was filed due to severe and pervasive discrimination and harassment in the

workplace and sexual harassment by Director and corporate officer, Greg Roman.


25.     He demands the same commitment from the Forum's employees as he does from

himself. Id. at ¶ 15.

**ANSWER:**

Contested.  Defendant, Roman's demands from employees are far from equal.  Defendant,

Roman treats female employees different than male employees.  Defendant, Roman also treats

female employees different than the way he treats himself.  Greg Roman employed a "do as I

say" management style instead of leading by example with a "do as I do" style.  Defendant,

Roman does not scream, curse, and throw things at himself.  Plaintiff, Lisa Barbounis has never

witnessed Defendant, Roman sexually harass himself.  Defendant, Roman demands a far

different commitment from himself then the female staff and specifically from Lisa Barbounis.

Exhibit A ¶¶ 110 – 111.


26.     At times, this has led to personality clashes with his subordinates. Id. at ¶ 16.

**ANSWER:**

While it is uncontested that Defendant, Roman had "clashes" with subordinates, Plaintiff

suggests Defendants' use of the word "clashes" is a euphemism for the open hostility to which

Defendant, Roman subjected female employees who worked with MEF.  Female employees have

regularly reported Defendant, Greg Roman's discrimination and harassment of the female staff.

Exhibits A, J, K, L, B, and CC.  Defendant, Greg Roman has been accused of screaming at

female employees. Id. Defendant, Roman has been accused of cursing at female employees. Id.

Defendant, Roman has been accused of violently throwing things at female employees. Id.

Defendant, Roman has also been accused of subjecting female employees to sexual misconduct.

Id.  Defendant, Roman has been accused of sexual assault. Id.  Defendant, Roman has been

accused of using his position and authority to compel a young female intern to engage in sexual

intercourse with him. Id.  If this is what Defendants mean by "clashes," this statement is

uncontested.


      27.     Roman was in the Israeli Defense Forces (IDF). Exhibit 3, Roman Dep. at p. 9-10.

**ANSWER:**

This is not a material fact.  This statement has no relevance to Plaintiff's claims or Defendants'

counterclaims.


      28.     Roman was a non-commissioned officer in the IDF from 2008 – 2010. Id.

**ANSWER:**

This is not a material fact.  This statement has no relevance to Plaintiff's claims or Defendants'

counterclaims.


      29.     Roman used to work for the Jewish Federation of Greater Pittsburgh. Id. at p.12.

**ANSWER:**

This is not a material fact.  This statement has no relevance to Plaintiff's claims or Defendants' counterclaims.

30.     Roman started working at the Middle East Forum in August 2015. Id. at p.18.

**<u>ANSWER:</u>**

Uncontested.  While the precise start date of Defendant, Roman's employment with MEF is not material or relevant to Plaintiff's claims or Defendants; counterclaims, it is uncontested that Defendant, Roman was an employee of MEF and held the penultimate management position. Roman was also a corporate officer of MEF.  <u>See</u> <u>Plaintiff's Response and Exhibits to Paragraph 2, above</u>.

31.     Roman lives in Israel from 2006 to 2012. Id. at p.8-10.

**<u>ANSWER:</u>**

This is not a material fact.  This statement has no relevance to Plaintiff's claims or Defendants' counterclaims.

32.     Roman attended the American University and The Interdisciplinary Center, Herzliya, Israel. Id. at p.8.

**<u>ANSWER:</u>**

This is not a material fact.  This statement has no relevance to Plaintiff's claims or Defendants' counterclaims.

33.     Plaintiff began her employment at the Forum in October 2017. Id. at ¶ 26.

**ANSWER:**

Uncontested.

34.     Plaintiff was hired as an executive liaison for the Forum and continued in that role until January of 2019. Id. at ¶ 27.

**ANSWER:**

Plaintiff, Lisa Barbounis' role with The Middle East Forum did change sometime around January 2019 because Greg Roman was no longer permitted to work with Plaintiff, due to the safety risk Greg Roman posed for the female staff at MEF. Exhibit A ¶¶ 72 – 76.  Prior to that, Plaintiff's primary job was as Greg Roman's personal assistant. Exhibit A ¶¶ 1 – 7.   After Defendant, Roman was no longer permitted to work with MEF's female employees, MEF had to find new responsibilities that Lisa Barbounis could perform. Exhibit A ¶¶ 72 – 76.   However, Plaintiff did not receive a promotion. Id. Plaintiff did not receive a raise. Id. See also Def. Mot. Exhibit 59 (and Paragraph 168, below).  Plaintiff did not receive added benefits. Id.  Plaintiff did not receive any change in the terms and conditions of her employment in January 2019. Id.  Plaintiff was simply re-tasked to perform new job duties. Id.


35.     From the inception of her employment until November 5, 2018, Plaintiff reported to Roman. Id. at ¶ 28.

**ANSWER:**

Uncontested.

36.     As the president of the Forum, Pipes had ultimate supervisory authority over

Plaintiff at all times during her employment.  Id. at ¶ 29.

**ANSWER:**

Contested.  Defendant, Pipes had little to no involvement in  Plaintiff, Lisa Barbounis'

employment until November 2018, when several female employees reported Defendant,

Roman's sexual harassment and sex and gender discrimination and Defendant, Roman was

removed from working with MEF's female staff. Exhibit A ¶¶ 112 – 116.  Prior to that

Defendant, Roman held ultimate supervisory authority of all MEF female employees. Id.

Defendant Roman strictly enforced a policy to prevent female employees from communicating

directly with Defendant, Pipes. Id.  See also meeting notes Exhibit O (where Roman's policy was

discussed during November 5, 2018 meeting).  And see Declaration of Marnie Meyer Exhibit N

¶¶ 13 – 16.  Defendant, Roman enforced a policy whereby female employees were not permitted

to communicate directly with Defendant, Pipes. Id.  Defendant, Roman communicated with open

hostility that no female employee could even talk to Defendant, Pipes without Defendant,

Roman's express approval and involvement. Id. Defendant Roman never provided said approval

and requires all issues to flow through his office. Id.


37.     As part of her application for employment at the Forum, Plaintiff interviewed

with Gregg Roman. Exhibit 5, Email Chain Between Gregg Roman and Lisa Barbounis.

**ANSWER:**

Uncontested.  It is uncontested that Plaintiff, Lisa Barbounis interviewed with both Defendant,

Roman and Matthew Bennett prior to beginning her employment with MEF.  It was at the job

interview that Plaintiff was first introduced to Defendant, Roman's inappropriate sexual

harassment. Exhibit A ¶¶ 9, 15, and 35.  See also Exhibit G – Response to Rog 2.  Defendant Roman informed Lisa Barbounis that he wanted a "work wife" during the job interview. Matthew Bennett informed Lisa Barbounis that Roman hired her because of her looks. Id.  After Ms. Barbounis' hire, Matthew Bennett informed Plaintiff, Lisa Barbounis that he was concerned Defendant, Roman would be even more inappropriate during the interview. Id. Matthew Bennett was clearly accustomed to Defendant, Roman's inappropriate sex-based behavior and expressed concern about the same during the interview. Id.  The gist was that Matthew Bennett was concerned that Lisa Barbounis would be scared off due to Roman's conduct and comments. Id.

38.     Gregg Roman made the decision to hire Plaintiff to work at the Forum. Exhibit 6, Reply to Offer by Lisa Barbounis.

**ANSWER:**

Uncontested.  It is uncontested that Defendant, Roman held supervisory authority including but not limited to the authority to hire and terminate.

39.     As part of her onboarding at the Forum, Plaintiff received an employee handbook which contained the Forum's anti-discrimination and harassment policies, which included details about what sexual harassment entails, the Forum's prohibition on sexual harassment of any kind, instructions for reporting sexual harassment, and the Forum's prohibition on retaliation against individuals who reported sexual harassment.  Exhibit 7, MEF Handbook.

**ANSWER:**

While it is uncontested that Defendant, MEF maintained an employee handbook with a written policy governing sexual harassment in the workplace, it is contested that MEF enforced this

policy in any way.  See Exhibits A, J, K, L, N, R, and CC (generally).  To the contrary,

Defendant, MEF and its management level employees including Defendant, Greg Roman,

Defendant, Daniel Pipes, and Matthew Bennett worked to subvert Defendant, MEF's written

policy governing sexual harassment in the workplace. Id. See also Exhibit A ¶¶ 40 – 51, Exhibit

N ¶¶ 10 – 24 (The Director of Human Resources swore even she was scared to lodge reports

involving Greg Roman), Exhibit R ¶¶ 17 – 27,   By way of example, Plaintiff, Lisa Barbounis

was threatened. Exhibit A ¶¶ 40 – 51.  When Lisa Barbounis spoke to Matthew Bennett about

Defendant, Roman's sexual harassment and unwelcome physical contact, Matthew Bennett

warned Plaintiff, Lisa Barbounis not to escalate the report of sexual harassment. Exhibit A ¶¶ 40

– 51.  It is admitted that Matthew Bennett suggested that Daniel Pipes was the person that Lisa

Barbounis should go with the information, however, Matthew Bennett warned Ms. Barbounis by

providing information about other women who had attempted to report Greg Roman.  Exhibit A

¶¶ 40 – 51, Exhibit N ¶¶ 10 – 24 (The Director of Human Resources swore even she was scared

to lodge reports involving Greg Roman), Exhibit R ¶¶ 17 – 27.  Matthew Bennett informed both

Patricia McNulty, who is another female employee who was subjected to unwelcome physical

contact of a sexual nature and Lisa Barbounis, about another female employee who worked with

MEF prior to Ms. McNulty and Ms. Barbounis. Id. See also Deposition Transcript of Patricia

McNulty ("McNulty Tr") attached and marked Exhibit "S" pages 139 – 150.  Mathew Bennett

said to Ms. McNulty and Ms. Barbounis that this other female employee had tried to report

Defendant, Roman's sexual harassment and Defendant, Pipes, Defendant, Roman, and Matthew

Bennett had worked together to discredit the female employee. Id. Matthew Bennett warned Ms.

Barbounis and Ms. McNulty that Defendant, Pipes would never terminate Defendant, Roman. Id.

Matthew Bennett said that Ms. McNulty and Ms. Barbounis would probably end up terminated if

they attempted to report Defendant, Roman's sexual harassment. Id. Exhibit A ¶¶ 40 – 51.

Matthew Bennet was not the only management level employee who worked to subvert MEF

written policy governing sexual harassment. Exhibit A ¶¶ 40 – 51, Exhibit N ¶¶ 10 – 24 (The

Director of Human Resources swore even she was scared to lodge reports involving Greg

Roman), Exhibit R ¶¶ 17 – 27.   Defendant, Roman also enforced strict policies which prevented

female employees from communicating directly with Defendant, Pipes. Id. And see Exhibit O.

Defendant, Roman strictly enforced this policy and threatened female employees not to even

attempt to communicate directly with Defendant, Pipes. Id. Moreover, Defendant, Roman held

the penultimate position at MEF.  See response to Paragraph 2, above.  Defendant, Roman was

responsible for all MEF policy including the day-to-day operations and long-term strategies. Id.

Accordingly, Plaintiff and the female staff held a reasonable fear that reports according to the

employee handbook would be futile or would result in retaliation.


40.     Pipes' told new employees that he maintained an open-door policy and that there

should be "no surprises" – in other words, that employees should report any substantive issue

concerning their work or their employment to him immediately. Exhibit 1, Certification of

Daniel Pipes, at ¶ 30.

**ANSWER:**

Contested.  It is specifically contested that Defendant, Pipes maintained an open-door policy.

Exhibit A ¶¶ 117 – 121.   To the contrary, Defendant, Pipes maintained a closed-door policy. Id.

Defendant, Daniel Pipes maintained the closed-door policy even after the November 2018 staff

meeting, where at least three female employees including the Director of Human Resources,

Marnie Meyer, all reported sexual harassment involving Defendant, Greg Roman. Exhibit O and

P.   After the November 2018 staff meeting, Defendant, Daniel Pipes did not welcome and assist female employees with new reports of harassment involving Defendant, Greg Roman.  Exhibit A ¶¶ 117 – 121.  See also reports to Pipes attached and marked Exhibit "EE".  And see Pipes Tr Exhibit Q Pages 75 – 77, 130 – 136, 213 – 217, 352, 369 – 370.  Defendant, Pipes' claim that Defendant, Roman was on a strict probation was false and misleading to the female staff.  Id. When the female employees reported Defendant, Roman's new harassment and hostile conduct and comment after November 2018, Defendant, Pipes responded by stating, "I don't see reports. I see women moaning." Id.  This is how Defendant, Pipes responds when only one female employee attempts to report Defendant, Roman's inappropriate conduct and comments. Id. Defendant, Pipes failed entirely to take any action in accordance with MEF's employee handbook and the written policy governing sexual harassment in the workplace. Id. Defendant, Pipes did not schedule meetings to discuss the new reports involving Defendant, Roman. Id. Exhibit A ¶¶ 115 – 121.  Defendant, Pipes did not even try helping the female employees who were trying to inform Pipes about Roman.  Pipes Tr. Pages 75 – 77, 130 – 136, 213 – 217, 352, 369 – 370.  Defendant, Pipes' response was that there were no reports.  Just "women moaning." Id.


41.    Pipes also met with all new employees, including Plaintiff, and explained his two fundamental rules. Id.

**ANSWER:**

Contested. See Plaintiff's response to Paragraph 39 and 40, above.  Moreover, it is specially contested that Defendant, Pipes met with Plaintiff, Lisa Barbounis to make her feel welcome and communicate "fundamental rules." Exhibit A ¶¶ 122.

42.    Pipes' first rule was that there should be no surprises, and that he wanted and needed to know of any problems that emerged as soon as possible so that he could deal with them as soon as possible. Id.

**ANSWER:**

Contested. See Plaintiff's response to Paragraph 39 and 40, above.  Moreover, it is specially contested that Defendant, Pipes met with Plaintiff, Lisa Barbounis to make her feel welcome and communicate "fundamental rules."  Defendant, Pipes did not meet with Lisa Barbounis and convey this rule to her upon Ms. Barbounis beginning her employment.

43.    Pipes' second rule was that his door was always open, literally and figuratively, and that employees could approach him with any problems at any time. Id.

**ANSWER:**

Contested. See Plaintiff's response to Paragraph 39 and 40, above.  Moreover, it is specially contested that Defendant, Pipes met with Plaintiff, Lisa Barbounis to make her feel welcome and communicate "fundamental rules."  Defendant, Pipes did not meet with Lisa Barbounis and convey this rule to her upon Ms. Barbounis beginning her employment.  Defendant Pipes actually maintained a closed-door policy, literally and figuratively.  Exhibit A ¶¶ 40 – 51, Exhibit N ¶¶ 10 – 24 (The Director of Human Resources swore even she was scared to lodge reports involving Greg Roman), Exhibit R ¶¶ 17 – 27.

44.    Plaintiff also received training on The Forum's anti-harassment policy in a seminar conducted by The Forum's director of human resources, Marnie O'Brien. Exhibit 3, Roman Dep. at p.269. The Forum's anti-harassment policy provides a reporting mechanism for

any complaint of perceived harassment and explains the steps that The Forum will take to

investigate and remedy any instances of harassment in the workplace. Exhibit 8, Excerpts from

MEF Personnel Manual.

**ANSWER:**

Contested.  While it is uncontested that MEF maintained written policies, no antiharassment

policy was ever employed or maintained. Exhibit A ¶¶ 40 – 51, Exhibit N ¶¶ 10 – 24 (The

Director of Human Resources swore even she was scared to lodge reports involving Greg

Roman), Exhibit R ¶¶ 17 – 27.  MEF did not enforce a sexual harassment policy. Id.  To the

contrary, Defendant, Pipes practiced a closed-door policy which Defendant, Roman strictly

enforced. Id.  Female staff including Patricia McNulty and Plaintiff Lisa Barbounis were warned

off by management level employees including but not limited to Matthew Bennett. McNulty Tr

Exhibit S pages 139 – 150, Exhibit A ¶¶ 41 – 47.  Moreover, when Lisa Barbounis and Patricia

McNulty were sexually touched by Defendant, Roman while sitting on a couch at the AIPAC

conference, Marnie Meyer witnessed the incident. Exhibit H page 85 – 87.  Lisa Barbounis and

Patricia McNulty were sexually touched by MEF's penultimate employee. Id.  The incident was

witnessed by the Director of Human Resources, Marnie Meyer. Id.  The same person who

Defendants claim conducted the sexual harassment training in Paragraph 44, above.  Both

Patricia McNulty and Lisa Barbounis notified another management level employee, Matthew

Bennett about the incident. Exhibit A ¶¶ 40 – 51, Exhibit R ¶¶ 17 – 27.

Matthew Bennett warned Patricia McNulty and Lisa Barbounis not to take their reports of sexual

harassment further and used another female employee who Defendant Greg Roman sexual

harassed as an example of what can happen to female employees when they try to report

Defendant, Roman's abusive behavior. Id. See also McNulty Tr. Exhibit R page 139 – 150.

There was no such sexual harassment policy in effect and any claim of a policy is contested.

45.     The Forum's anti-harassment policy states as follows:

If you believe that you are the victim of impermissible harassment or become aware of another employee being subjected to impermissible harassment, you must promptly report the facts of the incident to your supervisor or to the president or director. The MEF will promptly, appropriately, and with a much confidentiality as much as possible investigate any reports of offensive conduct.

After the investigation, appropriate action will be taken. Any employee who is found to have engaged in harassment of another employee will be subject to disciplinary action up to and including discharge. If deemed appropriate, an accused harasser may be suspended without pay pending investigation. In all cases we will advise the complaining employee and the accused of the outcome of the investigation. Id.

**ANSWER:**

The written policy speaks for itself.  Plaintiff, Lisa Barbounis specifically contests that the written policy was maintained or enforced.  Defendants specially subverted the written policy. Plaintiff, Lisa Barbounis felt threatened by the idea of reporting directly to Defendant, Pipes. Exhibit A ¶¶ 41 – 51.  Plaintiff, Lisa Barbounis held a reasonable fear that any report would be futile. Id.  She also held a reasonable fear of retaliation. Id.  The Director of Human Resources witnessed a sexual touching where Defendant, Roman put hands on Plaintiff, Lisa Barbounis without consent. Exhibit H page 85 – 87.  Plaintiff, Lisa Barbounis tried to talk with another management level employee thereafter, Matthew Bennett. Exhibit A ¶¶ 41 – 47. See also McNulty Tr. Exhibit R page 139 – 150.   Plaintiff, Lisa Barbounis was warned by Matthew Bennet who told a story about another female employee to whom Defendant, Roman subjected to sexual harassment. Id. Matthew Bennett stated that the male staff was directed to come together to discredit the female employee and that Defendant, Roman still holds his position but she is no longer here today. Id.

46.    Soon after her employment began, Plaintiff began sharing with Roman personal and intimate details, including information about her health, her emotions, her marriage and her children. Exhibit 9, Plaintiff's Responses to Third Set of Requests for Admissions No. 13, 14; Exhibit 10, Text Message from Plaintiff to Roman.

**ANSWER:**

This is not a material fact and has no relevance to Plaintiff, Lisa Barbounis' claims of sexual harassment and discrimination based on sex and gender.  Even if Defendants hope to present this evidence to a jury at trial, it has no bearing to the instant Motion.  Are Defendants asking the Court to resolve an inference in favor of the moving party by concluding that sharing information about her health, emotions, and marriage diminishes Plaintiff's sexual harassment claims?  Defendants' "statement of undisputed material facts" is double the necessary length and includes facts not material to Defendants' Motion.  To consider Paragraph 46, the Court would have to resolve facts and inferences in favor of Defendants.  Plaintiff's Responses to Defendants' Requests for Admissions, explains that Ms. Barbounis shared medical information with a supervisor when that information bore on her job duties.  Plaintiff shared information about her marriage and children, to communicate to Defendant, Greg Roman that Lisa Barbounis was not interested in his non-stop, continuous, sexual advances.


47.    On January 31, 2018, Plaintiff referred to Eman Patel, an employee of the Forum, as a "loser" and a "walking lawsuit." Exhibit 11, Text Messages Between Plaintiff and Matthew Bennett.

**ANSWER:**

This information has no conceivable relevance to the question before the Court: whether there

are material facts in dispute that require trial by jury.  This paragraph has no inherent meaning and Defendants are again, asking the Court to draw inferences in Defendants' favor.  Plaintiff will not waste the Court's time even further by clarifying context, intent, and meaning behind these text messages.


48.     When asked if Roman said anything to her about Patel, Plaintiff responded, "No." Id.

**ANSWER:**

See Plaintiff's response to Paragraph 47, above.  Moreover, Defendants' Exhibit (Document 111-1, Page 189 of 2189) does not contain the information presented in Paragraph 48. Defendant, Roman and Defendant, Pipes both labeled Aman Patel a "walking lawsuit." Deposition Transcript of Lisa Barbounis (First Deposition November 4, 2020) is attached ("Barbounis 1 Tr") as Exhibit "W" page 112.  Defendant, Roman and Defendant, Pipes attributed this statement to Aman Patel being "gay, Muslim and a woman." Id. Defendant, Pipes informed Plaintiff, Lisa Barbounis that Defendant, Pipes had authorized Defendant, Roman to make her work life so difficult that she quit. Deposition Transcript of Lisa Barbounis (Second Deposition February 9, 2021) is attached ("Barbounis 2 Tr") as Exhibit "FF" page 153 - 154. After reporting Roman's severe and pervasive sexual harassment in the workplace, Ms. Barbounis was concerned Defendants would retaliate using the same strategy employed to avoid liability with regard to Aman Patel; by making her work life so miserable that she quit. Id.  Ms. Barbounis expressed these concerns to Pipes who responded, "well, I knew about that situation with Ahman and that's not what we're doing to you. I signed off on doing that to Ahman." Id.

49.     In early March 2018, Roman and Bennett attended the annual American Israel Public Affairs Committee ("AIPAC") conference in Washington D.C. Exhibit 3, Roman Dep. at p.166-167.

**ANSWER:**

Uncontested.  It was at the AIPAC conference that Roman put his hands on Plaintiff, Lisa Barbounis and Plaintiff's coworker, Patricia McNulty. Exhibit W page 170 - 171, Exhibit R ¶¶ 7 – 10.   Roman's unwelcome sexual touching (which constitutes sexual assault) witnessed by MEF's Director of Human Resources, Marnie Meyer, along with several other individuals. Id. Exhibit H page 85 – 87.  Individuals who witnessed and/or were subjected to Defendant, Roman's unwelcome sexual touching includes Patricia McNulty, Lisa Barbounis, and Marnie Meyer. Id.  Notwithstanding multiple eyewitness accounts, Roman continues to misrepresent the reality of what occurred that evening.  Roman's disconnect from the truth indicates a general lack of credibility with regard to Plaintiff's claims.


50.     Plaintiff and two other employees of the Forum, Patricia McNulty and Marnie O'Brien, were in Washington D.C. at the same time, but did not attend the conference. Id. at p.167.

**ANSWER:**

Contested.  Defendants' characterization in Paragraphs 49 and 50, that Roman and Bennet visited Washington D.C., to attend the AIPAC conference, but that Lisa Barbounis, Patricia McNulty, and Marnie Meyer happened to be in D.C., at the same time is without merit. Exhibit A ¶ 123.  Greg Roman, Matthew Bennet, Lisa Barbounis, Patricia McNulty, and Marnie Meyer coordinated the trip to Washington D.C., solely for the AIPAC conference and events. Id.  The

Middle East Forum and specifically Defendants, Roman and Pipes decided to use the AIPAC conference as an opportunity to hold a fundraising event at the Cuba Libra restaurant. Id. Patricia McNulty's job, as the Assistant to Matthew Bennet, the Director of Development, included organizing events like the fundraising dinner at Cuba Libra. Id. Greg Roman, Matthew Bennet, Lisa Barbounis, Patricia McNulty, and Marnie Meyer worked together to host the event and then attended several other events held during the AIPAC Conference weekend. Id. ¶¶ 123 – 125. Lisa Barbounis did not purchase a ticket for the actual AIPAC conference, but attended events centered around the AIPAC conference weekend. Id. ¶¶ 123 – 128. Accordingly, the information in Paragraph 50 is contested.

51.    Roman, along with Bennett, rented an Airbnb on behalf of the Forum to stay in during the conference and to host networking events. Id.

**ANSWER:**

It is uncontested that Defendant, Roman and Bennet rented an Airbnb during the AIPAC weekend. Roman had attempted to compel the female employees to share the Airbnb that Roman and Bennet had booked. Id. ¶¶ 123 – 129. Defendant, Pipes learned about this and required the female employees to book separate rooms at a hotel, to Greg Roman's disappointment. Id. Greg Roman's modus operandi is to use work, work events, and his position as MEF's Director and Corporate Officer to compel female employees to engage in sexual acts with him. Exhibit A ¶ 130, Exhibit J, Exhibit K, Exhibit L, Exhibit N, Exhibit X, Exhibit GG. Roman required the female employees to return to his Airbnb at the end of the night. At the Airbnb, Roman began using marijuana and offered the female employees more drinks and marijuana. Exhibit A ¶ 131.

52.     Plaintiff, along with McNulty and O'Brien, rented a hotel room to stay in during the conference. Id.

**ANSWER:**

Uncontested.  See Plaintiff's Response to Paragraph 51, above.


53.     After attending and drinking at several social events, Plaintiff, O'Brien, and McNulty attended a networking event at the Forum's Airbnb.  Id. at p.149-150.

**ANSWER:**

Contested.  Defendants' lack of credibility is palpable.  Defendants and specially Roman and Bennet did not hold a "networking event" at their Airbnb between 2:30 and 3:00 A.M. Id.  To the contrary, after attending events all evening, Roman aggressively compelled Lisa Barbounis, Patricia McNulty, and Marnie Meyer to return to his Airbnb. Id.  Lisa Barbounis expressed her desire to remain behind, talk with people, and then return to her private hotel suite. Id. Defendant, Roman would not hear it, and aggressively yelled at Lisa Barbounis, ordering Ms. Barbounis to "get in the car. Id.   After returning to the Airbnb, Roman created a tense and uncomfortable atmosphere when he suddenly ordered the male individuals to leave. Id.  Roman clearly articulated his motives for ordering the males to leave the Airbnb when his violently pulled Patricia McNulty onto his lap and began whispering in her ear, that she also knew why the males should leave and it should just be Roman and McNulty. Id.  Director of Human Resources, Marnie Meyer's sworn testimony sums up Patricia McNulty's reaction to Greg Roman's sexually aggressive, physical contact.  Marnie Meyer testified that she clearly recalls the look of fear on Patricia McNulty's face. Id.  Roman also put hands on Lisa Barbounis that evening, also while sitting on the couch between Lisa Barbounis and Patricia McNulty. Id.  Lisa Barbounis testified

that Defendant Roman put his hands on her and pulled her head toward his penis.  <u>Exhibit W</u>

page 170 – 171.


54.     After the event, Plaintiff, O'Brien, and McNulty elected to stay at the Airbnb for

the night, rather than return to their hotel room. Exhibit 2, Barbounis Dep. Part 1 at p.151.

**<u>ANSWER:</u>**

Contested.  Lisa Barbounis, Patricia McNulty, and Marnie Meyer were aggressively compelled

by Roman to return to the Airbnb that Roman and Bennet shared during the AIPAC Conference.

<u>Exhibit A</u> ¶¶ 130 – 135.  The group returned to the Airbnb around 2:30 to 3:00 A.M., after the

bars and restaurants closed and all AIPAC events had ended. <u>Id.</u>  Lisa Barbounis, Patricia

McNulty, and Marnie Meyer left the Airbnb very early that same morning, around 8:00 A.M. <u>Id.</u>

Accordingly, they remained at the Airbnb for a total of about five (5) hours. <u>Id.</u>  The

characterization that they stayed the night is contested.


55.     Plaintiff claims that, during the afterparty at the Airbnb, in the presence of at least

10 other individuals, Roman sat on a couch between Plaintiff and McNulty, put his arm around

Plaintiff and held her head close to his chest. Id. at p.143-148.

**<u>ANSWER:</u>**

Lisa Barbounis's testimony speaks for itself.  Individuals who clearly recall Roman's

inappropriate sexual contact with either Patricia McNulty or Lisa Barbounis include Lisa

Barbounis, Patricia McNulty, and Marnie Meyer.  <u>Exhibit W</u> page 170 - 171, <u>Exhibit R</u> ¶¶ 7 –

10. <u>Exhibit H</u> page 85 – 87.

56.     None of the ten-plus other individuals identified in the depositions of Bennett and Roman have submitted an affidavit or certification attesting to Plaintiff's assertion. Id.

**ANSWER:**

Contested.  See Plaintiff's Response to Paragraph 55, above.


57.     Plaintiff refers to this incident as sexual abuse. Doc. 53 at ¶ 63-65.

**ANSWER:**

Plaintiff's civil action complaint speaks for itself.  Defendant, Roman subjected Plaintiff, Lisa Barbounis to an unwelcome sexual touching. Id.  Defendant Roman's touching was accompanied by a statement to Patricia McNulty where he voiced his sexual intent. Id.  Roman's behavior constitutes sexually aggressive behavior from a supervisor who holds proxy liability for his unlawful conduct.   This is the definition of abusive and discriminatory conduct.


58.     Roman denies that this incident ever happened. Exhibit 3, Roman Dep. at p.178.

**ANSWER:**

The individuals who witnessed and/or were subjected to Defendant, Roman's unwelcome sexual touching includes Patricia McNulty, Lisa Barbounis, and Marnie Meyer.  Exhibit W page 170 - 171, Exhibit R ¶¶ 7 – 10.  Exhibit H page 85 – 87.  Notwithstanding consistent eyewitness accounts, Roman continues to misrepresent the reality of what occurred that evening.


59.     Plaintiff never told Roman that this alleged incident made her uncomfortable or that she took issue with it in any way. Exhibit 2, Barbounis Dep. Part 1 at p.183-184.

**ANSWER:**

It is contested that Lisa Barbounis never informed Roman that his conduct and comments were inappropriate and unwelcome. Exhibit A ¶ 136.  Barbounis 1 Tr Exhibit W page 122 – 123.  Lisa Barbounis testified that she opposed Roman's inappropriate behavior both physically and with words. Barbounis 1 Tr Exhibit W page 84, and 122 – 123.  It is uncontested that Lisa Barbounis did not notify Roman that his conduct and comments were inappropriate, unwelcome, and made her uncomfortable, during the AIPAC conference.  Ms. Barbounis held a reasonable fear that her reports would be futile or lead to retaliation.  Ms. Barbounis raised the issue of Roman's sex-based conduct soon after the AIPAC Conference to Matthew Bennett. Exhibit W page 186. Exhibit A 41 – 47, Exhibit S page 139 – 150.  Matthew Bennett warned Ms. Barbounis about another female employee who attempted to report and oppose Roman's unwelcome sex-based conduct. Id.  Moreover, Ms. Barbounis did oppose and voice concerns regarding Roman's sexual harassment that same month when Roman subjected Ms. Barbounis to another unwelcome sexual touching. Id. Ms. Barbounis's fear that her opposition to Roman's sexual harassment would be futile and lead to retaliation was quickly realized thereafter.

60.     Plaintiff did not report this alleged incident to Pipes or to the Forum's human resources department at that time. Id. at ¶183-86.

**ANSWER:**

It is contested that Greg Roman's sexual harassment and unwelcome physical contact was not known to the human resources department. Exhibit H page 85 – 87. Exhibit N (generally). Director of Human Resources Marnie Meyer testified that she witnessed the incident on the couch at the AIPAC Conference. Id. Moreover, Lisa Barbounis reported the incident to a management level employee, Matthew Bennet. Id. At the time Ms. Barbounis was Roman's

personal assistant (Executive Liaison). <u>Exhibit A</u> ¶¶ 1 – 7.  Matthew Bennet was the Director of

Development and held the third highest rank after Pipes and Roman. <u>Exhibit A</u> ¶ 75.  Matthew

Bennet cautioned Lisa Barbounis and dissuaded Ms. Barbounis from escalating the report

further. <u>Exhibit A</u> ¶¶ 31 – 47. <u>Exhibit S</u> page 139 – 150.  Mathew Bennet informed Ms.

Barbounis that nothing would happen to Roman, and Ms. Barbounis could end of without a job.

<u>Id</u>.


61.     Plaintiff did not complain to anyone about this alleged incident at that time. Id. At

¶183-89.

**<u>ANSWER:</u>**

Contested.  Defendants citation and conclusion is misleading.  The same pages of Plaintiff's

deposition transcript (183-89) that Defendants use in this Paragraph, confirms Lisa Barbounis

reported the incident to Marnie Meyer and Matthew Bennet.  Ms. Barbounis swore she made

these reports when she returned from Israel. <u>Id.</u>  The Israel trip and AIPAC was within the same

30 days between March and April 2018 (Def. Mot.)  Lisa Barbounis therefore testified that she

presented the reports to Director of Human Resources and Director of Development within one

month of the incidents.  Therefore, Defendants' statement is contested.


62.     Approximately one week later, Plaintiff traveled to Israel with Roman. Exhibit 3,

Roman Dep. at p.237.

**<u>ANSWER:</u>**

Uncontested.

63.    Roman was scheduled to go to Israel to attend business meetings and for other

Forum related business.  Id. at p.240.

**ANSWER:**

Uncontested.


64.    Roman first asked Bennett if he would accompany him on the trip. Id. at p.242

244).

**ANSWER:**

Contested.  It is contested that Roman ever asked Matthew Bennet to accompany him on the

Israel trip. Exhibit A ¶¶ 137 – 141.  Roman first asked Marnie Meyer to join him. Id.  Marnie

Meyer refused when Roman informed Ms. Meyer that she would have to share an Airbnb with

him as a condition precedent. Id.  When Marnie Meyer refused, Roman asked Lisa Barbounis.

Id.  Another condition precedent to the Israel trip was that Ms. Barbounis could not tell anyone,

including Defendant, Pipes and Greg Roman's wife, that she was going. Id.  When Greg

Roman's wife called or Facetimed, I had to hide in my room so that she did not see or hear me.

Id.  Lisa Barbounis had never been to Israel, loves to travel, and decided that she could take care

of herself if trouble presented.  Barbounis Tr Exhibit W page 201 – 207. Lisa Barbounis

informed Roman that she required her own living space within the Airbnb including her own

bathroom. Id.  Roman assured Ms. Barbounis that he agreed to these conditions, however, upon

arrival, Ms. Barbounis discovered that Roman had lied again. Id.   The Airbnb had one bathroom

attached to the main room. Id.  See also the posting for the lodgings attached as Exhibit "HH".  It

was close quarter lodgings. Id.  Barbounis and Bennet spoke often during this time period and

Bennet was never asked to join Roman on the trip to Israel. Exhibit A ¶¶ 137 – 141.

65.     Bennett declined Roman's invitation. Id. at p.242-244.

**ANSWER:**

Contested.  See Plaintiff's Response to Paragraph 64, above.

66.     Roman then asked O'Brien if she was interested in going on the trip. Id. at p.242

244).

**ANSWER:**

It is contested that Roman asked Marnie Meyer to join him on the Israel trip after Bennet.  It is

uncontested that Marnie Meyer was asked to go before Lisa Barbounis.  Greg Roman refused to

allow Marnie Meyer to accompany him because Ms. Meyer required her own private lodgings.

Deposition of Marnie O'Brien Exhibit H page 83.

67.     O'Brien declined Roman's invitation. Id. at p.242-245.

**ANSWER:**

Uncontested.  See Plaintiff's Response to Paragraph 66 and 67, above.

68.     Plaintiff expressed an interest to Roman in going on the trip to Israel. Exhibit 2,

Barbounis Dep. Part 1 at p.191

**ANSWER:**

It is uncontested that Lisa Barbounis informed Roman that she would like to travel to Israel,

however her deposition transcript cited to by Defendants, clearly confirms that Roman asked her

first.

69.     Roman then offered her the opportunity to go on the Israel trip. Id. at ¶ 183-86.

**ANSWER:**

Contested.  The deposition testimony of Lisa Barbounis clearly confirms that Roman asked Lisa

Barbounis to travel to Israel and Lisa Barbounis agreed. Exhibit W page 191.  Defendants are

presenting a revisionist history of events where Lisa Barbounis requested to join Roman and then

Roman agreed to take her.

70.     Plaintiff accepted Roman's offer. Id. at ¶ 191-97.

**ANSWER:**

Uncontested.

71.     Despite what Plaintiff now alleges to have occurred at AIPAC approximately one

week earlier, Plaintiff was enthusiastic and excited about traveling to Israel with Roman on

Forum business.  Exhibit 2, Barbounis Dep. Part 1 at p.190-98.

**ANSWER:**

Contested.  It is contested that Lisa Barbounis' willingness and excitement to travel to Israel for

the first time is evidence that makes her allegations connected to the AIPAC Conference less

credible. Exhibit W page 190 – 191 (where Ms. Barbounis explained she had never traveled

much).  This is another attempt to reverse the summary judgment standard.  Lisa Barbounis did

not testify that she was excited to travel to Israel with Roman.  She agreed to join Roman and

was excited to travel to Israel. Id.   Roman's sexual harassment, physically aggressive and

abusive conduct and comments during the trip would make Lisa Barbounis regret her excitement.

Exhibit W page 178. ("I thought this was like a one-time weird Gregg moment. It wasn't. It

turned out it wasn't. I was being naive.").  Id.


72.    The Israeli government had recommended that visitors involved in security

consultations avoid staying in hotels and instead, where possible, to stay in private

accommodations such as Airbnbs. Exhibit 3, Roman Dep. at p.242-45.

**<u>ANSWER:</u>**

Contested.  Roman's testimony is unsupported by any evidence that Israel recommended visitors

avoid hotels.  This claim is supported exclusively by Roman's self-serving statement and is very

much in dispute due to Roman lacks credibility.  Travel to Israel is safe for visitors staying in

hotels.


73.    Roman selected an Airbnb that he thought was appropriate for this trip. Id. At

p.245-46.

**<u>ANSWER:</u>**

Uncontested.  Plaintiff agrees entirely with this statement.  Roman, in accordance with his modus

operandi, booked the Airbnb lodgings that he thought would facilitate his objectives.  Roman

lied to Ms. Barbounis about the lodgings and lured Ms. Barbounis to Israel under false pretenses

that Ms. Barbounis would have her own living space and bathroom within the shared lodgings.

<u>Exbibit A</u> ¶¶ 137 – 141.  Roman had direct knowledge that Ms. Barbounis would not have her

own space and bathroom. <u>Id</u>. <u>Exhibit HH</u> (room post confirms 1 bathroom).


74.    On previous trips to Israel, Roman stayed at other Airbnbs with other MEF staff

and contractors. Id. at p.240.

**ANSWER:**

This is not a material fact and has no relevance to Plaintiff's claims or Defendants' counterclaims.

75.     Plaintiff was aware of his selection for accommodations prior to the trip and voiced no objection. Id. at p.246.

**ANSWER:**

Contested.  To the contrary, Roman lured Ms. Barbounis to Israel under false pretenses. Exhibit A ¶¶ 137 – 141.  Barbounis Tr Exhibit H 199 – 205.  Roman assured Ms. Barbounis that she would have her own space and bathroom. Id. Ms. Barbounis agreed to travel to Israel based on this condition. Id.  Roman was aware of his selection and lied to Ms. Barbounis about the same. Id. Exhibit HH.

76.     Plaintiff sent photos of the Airbnb to her mother and described it as "awesome" and noted that their French host was "hot." Exhibit 12, Text Messages from Plaintiff to J. Reynolds, at p.420.

**ANSWER:**

This is not a material fact and has no relevance to Plaintiff's claims or Defendants' counterclaims.  Moreover, Defendants again asking the Court to ignore the summary judgment standard and resolve facts and inferences in favor of the moving party.  Lisa Barbounis' texts are only evidence that she did not want her mother to worry about her.  Ms. Barbounis did not send images of the interior lodgings. (Def. Mot Exhibit 12). She sent images of the exterior only; building and street views and assured her mom that the place was awesome. Id. At the time

Lisa's mom was helping with Lisa's five-year-old daughter, Olivia and three-year-old son,

George.  Id.


77.     Despite her review of the Airbnb in statements to her mother, on arrival at the

Airbnb in Israel, Plaintiff alleges that she was surprised to learn that the Airbnb had only one

bathroom. Exhibit 2, Barbounis Dep. Part 1 at p.200-04.

**<u>ANSWER:</u>**

Uncontested.  Despite texts to her mother, Ms. Barbounis was concerned by Roman's decision to

mislead Ms. Barbounis regarding the Airbnb. <u>Exbibit A</u> ¶¶ 137 – 141.  <u>Barbounis Tr Exhibit H</u>

199 – 205.   Roman had assured Ms. Barbounis that the lodgings would be larger and that Ms.

Barbounis would have a private area including her own bathroom.  <u>Id</u>.


78.     Plaintiff testified that thought the single bathroom was "weird" but it did not

cause her significant concern at the time. Id. at 201-02.

**<u>ANSWER:</u>**

Contested.  Plaintiff will not waste the Court's time by addressing the absurd conclusion.  A

review of Plaintiff's testimony confirms that Ms. Barbounis was highly concerned about the

bathroom and Roman's misleading behavior. <u>Exbibit A</u> ¶¶ 137 – 141.  <u>Barbounis Tr Exhibit H</u>

199 – 205.  Ms. Barbounis spent four pages testifying about her concerns regarding the lodgings.

(Def. Mot Exhibit 2).   Again, Defendants are asking the Court to subvert the summary judgment

standard.

79.     While in Israel, Plaintiff engaged in many typical tourist activities, including

walking around neighborhoods, seeing sights, and taking numerous photos of landmarks and

other subjects of interest in Tel Aviv and Jerusalem. Exhibit 13, Photos taken by Plaintiff in Israel.

**ANSWER:**

This is not a material fact, however, Defendant, Roman did not allow Ms. Barbounis to leave the room on her own until after Ms. Barbounis made it clear that she would not engage in sexual acts including fellatio. Exhibit A ¶ 142. Exhibit W page 215 – 223.  After Ms. Barbounis rejected all sexual advances, Roman informed Ms. Barbounis that he no longer needed her. Id. Ms. Barbounis was excited to have the opportunity to remove herself from Roman's company and used the time to enjoy what she could of the trip. Id.


80.    Plaintiff alleges that, while in Israel, Roman sexually assaulted and harassed her on March 14, 2018 by (1) putting his foot underneath her while Plaintiff and Roman were sitting on an outdoor couch, (2) talking about "blowjobs" and asking Plaintiff for "a release," and (3) talking about his alleged relationship with a former intern at The Forum. Exhibit 2, Barbounis Dep. at p.228-30.

**ANSWER:**

It is uncontested that Lisa Barbounis alleged unwelcome physical contact of a sexual nature during the trip to Israel, by Defendant, Greg Roman.  It is uncontested that the sexual harassment included Roman putting his foot under her bottom.  Mr. Roman pressed his foot up her bottom and said, "Oh, I guess we reached a new spot in our relationship. My foot is on your ass". (Exhibit W page 216).  Roman also subjected Ms. Barbounis to sexually aggressive and violent conduct. Exhibit W page 172, 173, 174, 197, 220, 228, 229, 244.  Roman yelled at Ms. Barbounis about needing a blowjob and told Ms. Barbounis that he needed a release. Id. Exhibit

A ¶ 143.   Roman's comments were clearly intended and interpreted by Ms. Barbounis as requests that Ms. Barbounis perform fellatio for Roman. Exhibit W page 172, 173, 174, 197, 220, 228, 229, 244. Exhibit A. ¶ 143.   Roman also described his sexual conquests in graphic detail including what sounded to Ms. Barbounis as a possible rape of a young MEF intern. Exhibit W page 172, 173, 174, 197, 220, 228, 229, 244. Exhibit A. ¶ 143.   Roman informed Ms. Barbounis that he had "fucked Leah Merville." Exhibit A ¶ 144.   Roman described what it was like to have Leah Merville "riding him." Id.   Roman commented about how nice Leah Merville's body was. Id.   Roman also indicated that this intercourse occurred because Leah Merville needed Roman to execute a document so that Ms. Merville could obtain credit for the internship. Id.  The description sounded very creepy to me as Leah Merville was a very young intern and Greg Roman was her bosses, bosses, boss.  Also, Leah Merville was in a foreign country, far away from her family and friends.  During the trip to Israel with Lisa Barbounis, Roman had attempted to proposition Leah Merville to engage in sexual intercourse again.  Exhibit A ¶¶ 142 – 147.  Leah Merville rejected Roman's sexual propositions according to Roman. Id.   Roman was livid when he returned to the shared lodgings where Lisa Barbounis was finishing her day and getting ready to go to sleep. Id.  Roman yelled that he deserved a blow job. Id.   Roman yelled about his wife's failure to sexually gratify him. Id.   Roman yelled, "I need a release. Don't I deserve a release?"  Id.    Lisa Barbounis was scared. Id.    Lisa Barbounis sent text messages that night to Patricia McNulty and described Roman's inappropriate conduct. Id. Barbounis Tr Exhibit W page 221 - 222.  Text communications sent during the Israel trip are attached and marked Plaintiff's Exhibit "II".  Patricia McNulty asked if the conduct was "AIPAC couchish."  This would be an extremely confusing text indeed if both parties did not understand the reference to what had occurred less than a month earlier in Washington D.C.

81.     Roman denies all such activity.  Exhibit 3, Roman Dep. at 247-50.

**ANSWER:**

It is uncontested that Roman continues his refusals.


82.     Plaintiff went to several business meetings with Roman while in Israel, both before, on, and after March 14, 2018 and those with whom she met observed no signs of distress or abnormality. Exhibit 15, Affidavits of Ashley Perry, Gilad Ach, and Matan Peleg.

**ANSWER:**

Defendants fifty (50) page fact statement is replete with information that has no relevance to the instant motion.   The Court cannot consider these declarations and conclude Lisa Barbounis's account less credible.  If anything, these declarations highlight the need for a jury.  Also, Defendants cannot present the opinion testimony of lay witnesses regarding Lisa Barbounis' displayed signs of "abnormality or distress."  Lisa Barbounis does not know or did not see any of the people named in this Paragraph. Exhibit A ¶¶ 148 – 149.   She does not recall meeting Ashley Perry, Gilad Ach, or Matan Peleg during the Israel trip.  Id.   She certainly did not meet any of these individuals in the final days of the trip when Greg Roman's inappropriate sexual harassment occurred. Id.


83.     At the time, Plaintiff never complained to anyone that Roman had sexually harassed her or solicited sex from her, despite being in contact with her husband and other employees of the Forum during the same time frame. Exhibit 2, Barbounis Dep. Part 1 at p.186, 203-32.

**ANSWER:**

Contested.  Plaintiff, Lisa Barbounis opposed Defendant, Greg Roman's sexual harassment during the trip to Israel.  Ms. Barbounis asked Roman to stop being weird. Exhibit A ¶ 150.  Exhibit W page 220 – 222 and 229 – 232.  Ms. Barbounis refused to engage in any sexual relations with Greg Roman. Id.  Ms. Barbounis also sent text messages to Patricia McNulty and indicated that she was scared by Roman's violent and aggressive, sexual harassment. Exhibit W page 220 – 222 and 229 – 232.   Ms. Barbounis said to Patricia McNulty that she planned to sleep with a knife under her pillow. Id.  Ms. Barbounis also testified that she returned home and notified Marnie Meyer and Matthew Bennet about Roman's conduct during the Israel trip.  Exhibit W page 235.  Ms. Barbounis was dissuaded by Matthew Bennett from taking the reports further. Exhibit A 41 – 47.  The same Exhibit to which Defendants' cite contradicts the information presented.  Plaintiff specifically testified that she was scared and did not know what to do and called her husband  for advice. Exhibit W page 221 – 222.

> And so when he touched me like with his foot, like I'm thinking like, "What do I do here? Do I go to the police? Do I freakin' leave? Do I go get my own place? Like what do I do"? And I was like, "I'll just avoid him". I talked to my husband and he was like, "Just avoid him. Just avoid -- just like, you know, but it doesn't have to be work, just go sit in your room".
>
> Def. Mot. Exhibit 2 p 221 – 222.

84.     Plaintiff admits that she never complained to Pipes or the Forum's human resources department about Roman's alleged behavior until October 30, 2018, despite The Forum's human resources director trying to "pull the story" out of her. Id. at p.235-37.

**ANSWER:**

Contested.  It is contested that Lisa Barbounis said nothing to Director of Human Resources, Marnie Meyer after the Israel trip. Exhibit W page 235.  Moreover, Lisa Barbounis held a

reasonable fear that reports to Marnie Meyer would be futile or result in retaliation. <u>Declaration of Marnie Meyer Exhibit N</u>.  Marnie Meyer did witness Roman's sexual harassment of Lisa Barbounis and Patricia McNulty during the AIPAC conference. <u>Exhibit H</u> page 85 – 87.  Marnie Meyer testified that she witnessed the looks on Lisa Barbounis and Patricia McNulty's face. <u>Id</u>. No investigative or corrective measures were taken after the AIPAC conference. <u>Id</u>. <u>Exhibit N</u>. It was therefore reasonable to assume that reports to Marnie Meyer would be futile.  Moreover, the Director of Development clearly communicated to both Ms. Barbounis and Ms. McNulty that other female employees had attempted to report Greg Roman's sexually inappropriate conduct and comments before. Exhibit A ¶¶ 41 – 47.  <u>Exhibit S</u> page 139 – 150.   Bennet said that Pipes, Roman and Bennet had come together to discredit the female victims of Roman's sexual harassment.  Bennet said that Roman is still here and she is gone. <u>Id</u>.


85.     Plaintiff admits that she never considered leaving Israel despite her allegations about Roman's behavior. Id. at p.224.

**<u>ANSWER:</u>**

Again, Defendants ask the Court to subvert the summary judgment standard and infer from this information that Ms. Barbounis's allegations are less credible because she stayed in Israel for one extra day before getting on a plane and traveling home.  Ms. Barbounis left Israel on March 15, 2018 and landed in Newark Airport on Friday, March 16, 2018, at about 4:30 A.M. Text Communications between Ms. Barbounis and her mother (<u>Def Mot Exhibit 12</u> page 431).  Ms. Barbounis had only one day left in Israel after Roman's worst behavior. <u>Id</u>. <u>And</u> <u>see</u> <u>Def. Mot</u> <u>Fact Statement</u> ¶ 82).  She waited the day and flew home. <u>Id</u>.  Moreover, Ms. Barbounis specially testified that she considered leaving the room, getting her own room, going to the police, and

flying home.

> And so when he touched me like with his foot, like I'm thinking like, "What do I
> do here? Do I go to the police? Do I freakin' leave? Do I go get my own place?
> Like what do I do"? And I was like, "I'll just avoid him". I talked to my husband
> and he was like, "Just avoid him. Just avoid -- just like, you know, but it doesn't
> have to be work, just go sit in your room".

> Def. Mot. Exhibit 2 p 221 – 222.

86.    Plaintiff never told anyone that she met during her trip to Israel that Roman had

allegedly acted inappropriately in any way. Id. at p.223.

**ANSWER:**

Are Defendants presenting a negative evidence theory in a summary judgment context by asking

the Court to conclude from a purported lack of evidence that Ms. Barbounis's claims are less

credible?  This is not how summary judgment works.  It is inappropriate and a waste of the

Court's and Plaintiff's time to address information like this, which saturates this fact statement.

87.    On March 20, 2018, Plaintiff texted Matt Bennett: "Gregg [Roman] is a good

person but not a Good boss." Exhibit 16, Text Message from Plaintiff to M. Bennett.

**ANSWER:**

Plaintiff, Lisa Barbounis may have to answer questions about comments like this at trial, but not

on summary judgment.  Defendants request that the Court disregard Plaintiff's allegations

because she characterized Roman as a "good person but not a good boss" to Matthew Bennet is

inappropriate.  Matthew Bennet is the third ranking management level employee at MEF, after

Pipes and Roman. Exhibit A ¶ 75.  Matthew Bennet is also a close friend of Roman. Id.  By

March 20, 2018, Ms. Barbounis had been employed with MEF for only five (5) months. Exhibit

<u>A</u> ¶¶ 1 – 7.

88.     On March 29, 2018, Plaintiff wrote to McNulty, stating, "I need to look for a new job where I'm not an assistant." Exhibit 17, Message from Plaintiff to P. McNulty.

**<u>ANSWER:</u>**

The electronic message speaks for itself.  Defendants are asking the Court to resolve facts and inferences in Defendants' favor.  Lisa Barbounis is a graduate of an Ivy League school – University of Pennsylvania.  Prior to her employment with MEF, she worked for a United States Congressman. It is not material or relevant whether Ms. Barbounis sent a text describing her desire to do more than be a secretary.  Importantly, Ms. Barbounis did not find another job in March 2018.  Ms. Barbounis continued her employment for Defendants for another year-and-a-half, approximately. <u>Id</u>.

89.     McNulty responded, "Don't think about it now, the Marnie [O'Brien] part is making you hate it more." Id.

**<u>ANSWER:</u>**

This is not  material fact and has no relevance to Plaintiff's claims or Defendants' counterclaims.

90.     On April 17, 2018, the Forum conducted sexual harassment training for its entire staff led by Roman and O'Brien, which Plaintiff attended and helped organize. Exhibit 18, MEF Sexual Harassment Seminar.

**<u>ANSWER:</u>**

Contested.  Defendants' motion is filled with Exhibits that have no Bates label.  This is because

Defendants violated the Federal Rules of Civil Procedure and withheld relevant, discoverable information that Plaintiff requested.  Defendants violation has resulted in substantial prejudice to Plaintiff as she was unable to use this information in her investigation during discovery.  Plaintiff moves the Court not to consider information that Defendants are presenting for the first time in a motion for summary judgment.  There are many exhibits to Defendants' Motion without Bates label that were never produced.  It appears Defendants have maintained a secret cash of documents that were denied to Plaintiff.  Notwithstanding, this Paragraph is contested.  Defendants did not provide MEF employees with sexual harassment training.  The proffered Exhibit 18 is a schedule that confirms that "harassment training" was not the day's focus.  According to the schedule, Marnie Meyer did "harassment training" for 45 minutes.  Lisa Barbounis had nothing to do with organizing the harassment training. Exhibit A ¶ 151.  Lisa Barbounis has no memory of Marnie Meyer providing harassment training that morning. Id.  The date of the "harassment training" is relevant as Marnie Meyer scheduled this purported training just one month after the AIPAC Conference and the Israel trip. Def. Mot Exhibit 18.


91.     Shortly after returning from Israel, Plaintiff text messaged Roman: "You should feel comfortable telling me when you are upset," and, "Ok. I'm focused but I want you to know you should feel comfortable telling me when I piss you of. (sic)" Exhibit 19, Message from Plaintiff to Roman.

**ANSWER:**

The electronic communications speak for themselves.  All inferences drawn from these messages must be resolved in Plaintiff's favor.  Moreover, these communications have no relevance to Plaintiff's claims or Defendants' counterclaims.  The messages are evidence of an employee

telling her supervisor that he should be able to discuss work with her.  There is no hidden meaning.  These communications are professional in nature.  Moreover these communications are related to Defendant, Roman's retaliation against Lisa Barbounis after the Israel trip, when Ms. Barbounis rejected Roman's sexual advances.  Exhibit A ¶ 152.  Exhibit N.  Roman reacted by retaliating against Lisa Barbounis, using his position and power within the organization to subject Ms. Barbounis to a more hostile work environment. Exhibit A ¶ 152.  Exhibit N.   After the Israel trip, Roman began reporting issues with Ms. Barbounis to Marnie Meyer. Exhibit A ¶ 152.  Exhibit N.   Ms. Barbounis' communications (Def. Mot. Exhibit 19) were intended to persuade Roman to stop the retaliation and address any problems with Ms. Barbounis directly. Exhibit A ¶¶ 152 – 153.


92.     On May 12, 2018, Plaintiff told McNulty, "I just called Gregg in Israel and told him I'm at a breaking point and I'm about to quit." Exhibit 20, Text Messages between Plaintiff and P. McNulty, at p.268.

**ANSWER:**

The electronic communications speak for themselves.  All inferences drawn from these messages must be resolved in Plaintiff's favor.  Moreover, these communications represent  Lisa Barbounis at a breaking point because of the discrimination and harassment.  Roman became more hostile and aggressive toward Ms. Barbounis after the trip to Israel. Id.


93.     On May 14, 2018, Plaintiff sent Roman her university term paper for his review. Exhibit 21, Email from Plaintiff to Roman.

**ANSWER:**

Contested.  This is not a material fact, however, Plaintiff did not send the paper for Roman's review.  These communications have no relevance to Plaintiff's claims or Defendants' counterclaims.

94.     For the first year of her employment, between October 2017 and November 2018, Barbounis never complained about Roman or his conduct to anyone in her supervisory chain at The Forum, including Roman himself, Daniel Pipes or the Forum's human resources department. Exhibit 1, Certification of Daniel Pipes, at ¶ 31; Exhibit 2, Barbounis Dep. Part 1 at p.234.

**<u>ANSWER:</u>**

Contested.  <u>See</u> <u>Plaintiff's response to Paragraphs 39, 40, 44, 45, 59, 60, 61, and 80, above</u>.  Ms. Barbounis reported Roman's sexual harassment to Marnie Meyer.  <u>Exhibit W</u> page 235.  <u>Exhibit A</u> ¶¶ 41 – 47.  <u>Exhibit S</u> page 139 – 150.  Ms. Barbounis reported and opposed Roman's sexual harassment to Roman himself. <u>See above</u>.  Ms. Barbounis reported Roman's sexual harassment to the third ranking management level employee, Matthew Bennet. <u>Id</u>.  At all times, Ms. Barbounis was dissuaded from escalating reports further. <u>Id.</u>  Defendants are cherry picking Ms. Barbounis's testimony and attempting to mislead the Court.  Ms. Barbounis described in detail her opposition to Roman's sexual harassment and her attempts to report the same. <u>See</u> <u>Plaintiff's response to Paragraphs 39, 40, 44, 45, 59, 60, 61, and 80, above</u>.   Moreover, the Director of Human Resources witnessed the incident on the AIPAC couch. <u>Exhibit H</u> page 85 – 87.  No steps were taken to investigate and correct Roman's behavior.  <u>Exhibit H</u> page 85 – 87. <u>Exhibit N</u>.

95.     Plaintiff never told Roman that he made her uncomfortable. Exhibit 2, Barbounis

Dep. Part 1 at p.122-125.

**ANSWER:**

Contested.  See Plaintiff's response to Paragraphs 39, 40, 44, 45, 59, 60, 61, and 80, above.

Defendants are cherry picking snippets of Ms. Barbounis' deposition testimony and intentionally

misleading the Court.  Ms. Barbounis testified that she opposed Roman's sexual harassment and

that she made it clear through words and actions that she was not interested or comfortable with

his sexual advances. See Barbounis 1 Tr. Page 122 ("Hold on a second. Because when I would

kill him with kindness and be dismissive, I'm like, "Gregg, stop. You're gross. It's inappropriate",

like in a dismissive, funny way. I mean I was still letting him know."). Id.


96.     Plaintiff never told Roman that any of his alleged behavior was unwelcome. Id.

**ANSWER:**

Contested.  See Plaintiff's response to Paragraphs 39, 40, 44, 45, 59, 60, 61, and 80, above.

Defendants are cherry picking snippets of Ms. Barbounis' deposition testimony and intentionally

misleading the Court.  Ms. Barbounis testified that she opposed Roman's sexual harassment and

that she made it clear through words and actions that she was not interested or comfortable with

his sexual advances. See Barbounis 1 Tr. Page 122 ("Hold on a second. Because when I would

kill him with kindness and be dismissive, I'm like, "Gregg, stop. You're gross. It's inappropriate",

like in a dismissive, funny way. I mean I was still letting him know."). Id.


97.     Plaintiff never told Roman that his behavior was unwelcome. Id. At 122-125,

207-208.

**ANSWER:**

Contested.  See Plaintiff's response to Paragraphs 39, 40, 44, 45, 59, 60, 61, and 80, above.

Defendants are cherry picking snippets of Ms. Barbounis' deposition testimony and intentionally

misleading the Court.  Ms. Barbounis testified that she opposed Roman's sexual harassment and

that she made it clear through words and actions that she was not interested or comfortable with

his sexual advances. See Barbounis 1 Tr. Exhibit W Page 122 ("Hold on a second. Because when

I would kill him with kindness and be dismissive, I'm like, "Gregg, stop. You're gross. It's

inappropriate", like in a dismissive, funny way. I mean I was still letting him know."). Id.


98.     Plaintiff frequently invited Roman to participate in after-hours social events with

employees of the Forum. Id. at 119.

**ANSWER:**

Contested.  First, Defendants cite to pages of Plaintiff's deposition transcript that are not

provided and do not contain the information presented in this Paragraph.  Plaintiff did not testify

that she "frequently invited Roman to participate in after-hours- social events."  Plaintiff did

testify, "I was trying to make sure Gregg was super friend-zoned. I talked to him about my

husband, my family, my kids. I invited him to places, well, in group events only. I never invited

Gregg out one-on-one, never.  Would never do that in a million years. I tried to kill this dude

with kindness and make sure he knew he was friend-zoned." Exhibit W page 122 – 124.   The

fact that Ms. Barbounis felt the need to take these precautions is evidence in and of itself.

Roman was Ms. Barbounis's supervisor, the Director of MEF and a corporate officer. (See

Plaintiff's response to Paragraph 2, above).  Ms. Barbounis was also Roman's personal assistant

(Executive Liaison). Exhibit A ¶¶ 1 – 7.   It was due to Mr. Roman's constant, non-stop,

continuous, sexual harassment and conduct and comments aimed toward engaging Ms.

Barbounis in sexual suggestive conversations that Ms. Barbounis felt compelled to "friend zone" her boss. Exhibit W page 122 – 125.

99.    Plaintiff states that via her actions toward Roman, she was attempting to "kill him with kindness," referring to Roman. Id. at 119-23.

**ANSWER:**

Uncontested.  Plaintiff testified, "Hold on a second. Because when I would kill him with kindness and be dismissive, I'm like, "Gregg, stop. You're gross. It's inappropriate", like in a dismissive, funny way. I mean I was still letting him know." Exhibit W page 122 – 125.


100.    There are no contemporary communications or other written correspondence in the record in which Plaintiff states that Roman every sexually harassed or assaulted her.

**ANSWER:**

Contested.  It is contested that there is no written evidence of Defendant, Roman's sexual harassment and abusive, unwelcome physical contact.  There are many examples of both Ms. Barbounis and other employees references to Roman's well known and pervasive sexually inappropriate conduct and comments.  Matthew Bennet sent a text message about Greg Roman whipping his penis out.  The deposition of Matthew Bennett is attached and marked Exhibit "JJ" page 203.  Samantha Mandalas sent a text message calling Greg Roman a "sexual deviant." Samantha Mandeles text message attached as Exhibit "KK".  Caitriona Brady and Delaney Yonchek held a conversation where spoke about Greg Roman saying, "All he has done is brought the company down… And he sexual assaulted people."  Exhibit "LL".  Moreover, Lisa Barbounis sent text messages about being scared of Greg Roman and sleeping with a knife under her pillow while she was in Israel. Text communications between Patricia McNulty and Lisa

Barbounis attached and Exhibit "MM".   In October 2018, Marnie O'Brien handwrote a letter to

Daniel Pipes describing several incidents involving Greg Roman. Exhibit X.  Patricia McNulty

sent text messages referring to the AIPAC couch incident. Exhibit MM.   Defendants are again

presenting a negative evidence argument, that the lack of certain evidence discredits Plaintiff's

allegations.  This argument is not appropriate in a motion for summary judgment context.  Again,

Defendants hope the Court subverts the summary judgment standard.


101.    Plaintiff had difficulty getting along with Marnie O'Brien, The Forum's controller

and director of human resources. Exhibit 22, Message from Plaintiff to P. McNulty.

**ANSWER:**

The electronic communication speaks for itself and any characterization of the message not in

accordance with the same is contested.  Moreover, this is not a material fact.  It is not relevant to

Plaintiff's claims or Defendants' counterclaims.  If anything it adds credibility to Ms. Meyer's

eye-witnessed account of Greg Roman's conduct and comments on the couch at the AIPAC

conference.

102.    On February 2, 2018, Plaintiff wrote to McNulty, "I've had it with Marnie

[O'Brien]. I do not trust her." Exhibit 23, Message from Plaintiff to P. McNulty.

**ANSWER:**

The electronic communication speaks for itself and any characterization of the message not in

accordance with the same is contested.  Moreover, this is not a material fact.  It is not relevant to

Plaintiff's claims or Defendants' counterclaims.  If anything it adds credibility to Ms. Meyer's

eye-witnessed account of Greg Roman's conduct and comments on the couch at the AIPAC

conference.

103.    On April 4, 2018, Plaintiff referred to O'Brien as a "bitch" in a text message. Exhibit 24, Message from Plaintiff to P. McNulty.

**ANSWER:**

The electronic communication speaks for itself and any characterization of the message not in accordance with the same is contested. Moreover, this is not a material fact. It is not relevant to Plaintiff's claims or Defendants' counterclaims. If anything it adds credibility to Ms. Meyer's eye-witnessed account of Greg Roman's conduct and comments on the couch at the AIPAC conference.

104.    On April 9, 2018, in a text message with Tricia McNulty, Plaintiff stated that she was considering faking an illness to avoid work, telling McNulty that her deadline was at 6 and that she was "thinking of ramping up my heart and taking a trip to the er [Emergency Room] to postpone." Exhibit 25, Message between Plaintiff and P. McNulty.

**ANSWER:**

Contested. The electronic communication speaks for itself and any characterization of the message not in accordance with the same is contested. Defendants opinion of a text communication between Ms. Barbounis and Ms. McNulty is not relevant. It has no connection to Plaintiff's claims or Defendants' counterclaims. It is presented solely for its prejudicial value. It also never happened. Ms. Barbounis did not go to the emergency room that night. Accordingly, it is an attempt to recharacterize a joke that two coworkers and friends discussed to disparage Ms. Barbounis.

105.    McNulty responded, stating, "You know if a trip to the Er [Emergency Room] would get you a get out of jail free card you could just go and SAY your heart was acting up." Id.

**ANSWER:**

Contested.  The electronic communication speaks for itself and any characterization of the message not in accordance with the same is contested.  Defendants opinion of a text communication between Ms. Barbounis and Ms. McNulty is not relevant.  It has no connection to Plaintiff's claims or Defendants' counterclaims.  It is presented solely for its prejudicial value. It also never happened.  Ms. Barbounis did not go to the emergency room that night. Accordingly, it is an attempt to recharacterize a joke that two coworkers and friends discussed to disparage Ms. Barbounis.

106.    Plaintiff responded, "I know I'm insane." Id.

**ANSWER:**

Contested.  The electronic communication speaks for itself and any characterization of the message not in accordance with the same is contested.  Defendants opinion of a text communication between Ms. Barbounis and Ms. McNulty is not relevant.  It has no connection to Plaintiff's claims or Defendants' counterclaims.  It is presented solely for its prejudicial value. It also never happened.  Ms. Barbounis did not go to the emergency room that night. Accordingly, it is an attempt to recharacterize a joke that two coworkers and friends discussed to disparage Ms. Barbounis.

107.    Plaintiff told McNulty, "If Gregg calls or emails today I may get fired or quit." Id.

**ANSWER:**

Contested.  The electronic communication speaks for itself and any characterization of the message not in accordance with the same is contested.  Defendants opinion of a text communication between Ms. Barbounis and Ms. McNulty is not relevant.  It has no connection to Plaintiff's claims or Defendants' counterclaims.  It is presented solely for its prejudicial value. It also never happened.  Ms. Barbounis did not go to the emergency room that night. Accordingly, it is an attempt to recharacterize a joke that two coworkers and friends discussed to disparage Ms. Barbounis.

108.    Plaintiff then followed up by stating, "Not really but you get it." Id.

**ANSWER:**

Contested.  The electronic communication speaks for itself and any characterization of the message not in accordance with the same is contested.  Defendants opinion of a text communication between Ms. Barbounis and Ms. McNulty is not relevant.  It has no connection to Plaintiff's claims or Defendants' counterclaims.  It is presented solely for its prejudicial value. It also never happened.  Ms. Barbounis did not go to the emergency room that night.  Moreover this part of the text thread confirms that Ms. Barbounis and Ms. McNulty were not being serious. Defendants just wasted Paragraphs 104, 105, 106, 107, and 108 in an attempt to rely on inadmissible information that has no relevance to the instant motion.

109.    Plaintiff was not fired nor was she subjected to any other employment punishments. Exhibit 1, Certification of Daniel Pipes, at ¶ 63.

**ANSWER:**

Uncontested.  This is due to Ms. Barbounis completing her work assignments and being good at her job.  Defendants did not have any reason, cause, or complaint to substantiate a lawful termination from employment.  There are no disciplinary issues related to Ms. Barbounis' employment.  See Defendants' Statement of Material Facts which confirms that Lisa Barbounis received a bonus for a "job well done" from March through July 2019 (Def. Mot Paragraph 169, below).

110.    On May 10, 2018, Roman chastised Plaintiff for failing to schedule a meeting with Matan Peleg, a grantee of the Middle East Forum's Education Fund. Exhibit 26, Emails between Plaintiff and Roman.

**ANSWER:**

Contested.  The email thread demonstrates Lisa Barbounis taking issue with Greg Roman' failure to respond to attempts to schedule the following work week.  Defendants are bad faith actors, s so many exhibits attached demonstrates the opposite of the information presented in the fact statement.  The electronic communication speaks for itself and any characterization of the message not in accordance with the same is contested.   This is not a material fact and has no relevance to the instant motion and standard of review.  Plaintiff will not waste the Court's time demonstrating the falsity of Paragraph 110.  A review of the thread speaks for itself.  Also important, Defendants are presenting exhibits that are not part of the record and were specifically withheld from Plaintiff during discovery.  Exhibit 26 does not have a Bates label because it was never produced in response to Plaintiff's discovery requests.  This Exhibit appears to be part of Defendants' secret cash of documents that were not furnished during discovery.

111.    In the summer of 2018, Roman and the Forum were planning to start a social

welfare entity separate and apart from the Forum. Exhibit 27, Affidavits of Brett Goldman and

Jarad Geldner; Exhibit 28, Draft Articles of Incorporation.

**ANSWER:**

This is not a material fact and has no relevance to the instant motion and applicable standard of

review.  Exhibit 28 does not have a Bates label because it was never produced in response to

Plaintiff's discovery requests.


112.    Roman shared those plans with Plaintiff, who volunteered to assist him with the

founding of a 501(c)(4) organization. Exhibit 29, Meeting Notes.

**ANSWER:**

This is not a material fact and has no relevance to the instant motion and applicable standard of

review.  Moreover Exhibit 29 does not confirm the information presented, that Lisa Barbounis

volunteered to assist Defendant, Roman with the founding of a 501(c)(4) organization.  Exhibit

29 does not have a Bates label because it was never produced in response to Plaintiff's discovery

requests.


113.    On July 12, 2018, Plaintiff sent Roman a list of items that he would need for

creating the new organization. Exhibit 30, Email from Plaintiff to Roman.

**ANSWER:**

This is not a material fact and has no relevance to the instant motion and applicable standard of

review.  This is an example of Plaintiff completing her job responsibilities.  Exhibit 30 does not

have a Bates label because it was never produced in response to Plaintiff's discovery requests.

114.     On July 26, 2018, Plaintiff communicated with Ari Morgenstern, Director of Communications and Policy for the Christians United for Israel and informed him of Roman's plans to start a new social welfare organization. Exhibit 31, Email from Plaintiff to A. Morgenstern.

**ANSWER:**

This is not a material fact and has no relevance to the instant motion and applicable standard of review.  This is an example of Plaintiff completing her job responsibilities.  Exhibit 31 does not have a Bates label.  It appears this exhibit was never produced in response to Plaintiff's discovery requests.  Exhibits 28, 29, 30, and 31 (which is by no means an exhaustive list exhibits that appear not to have been produced) indicates that Defendants may be in possession of a private cash of evidence withheld from Plaintiff during discovery.

115.     At the same time, Plaintiff was competing with Marnie O'Brien, director the human resources for the Forum, for status and power within the organization. Exhibit 9, Plaintiff's Response to Third Set of Requests for Admission No. 15; Exhibit 32, Barbounis Dep. In O'Brien v. MEF at p.20.

**ANSWER:**

Contested.  Again, Defendants' Exhibits do not support the information presented.  Exhibit 9, Request for Admission 15, is a question about Defendant, Roman dangling a promotion of Deputy Chief of Staff over Ms. Barbounis' head.  Request 15, does not relate in any way to Marnie Meyer.  Possibly Defendants intended to refer to Request 16, which does relate to Marnie

Meyer.

**16. REQUEST FOR ADMISSION NO. 16**: Admit that you filed a formal written complaint about Marnie O'Brien to Gregg Roman, a week before you complained about Gregg Roman to Daniel Pipes.

**RESPONSE**:

It is admitted that Defendant, Greg Roman instructed Plaintiff, Lisa Barbounis to provide a written report complaining about Marnie Meyer sometime around this time period. Defendant, Greg Roman pitted Marnie Meyer and Lisa Barbounis against one-another as part of Defendant, Greg Roman's attempt to avoid employees opposition to and reports of discrimination and harassment in the workplace.

Def Mot. Exhibit 9, Request 16.

The deposition transcript to which Defendants cite also does not support the information presented in Paragraph 115.  Page 20 of Ms. Barbounis's deposition transcript states, "It was always -- it was always a love-hate relationship with Marnie. There -- there were parts of Marnie that, like, I really liked. I admired. She was cool and pretty and smart. And, you know, she -- she was – there were parts that I liked. And I wanted to, like, be cool with Marnie. And, then, there were other times where I couldn't stand her. I'm not going to lie. Do you know what I mean? Like, that was true. But that wasn't really her fault, like, in -- in hindsight. It was Gregg pitting us against each other like he always did.

Def Mot. Exhibit 32.

116.    When Plaintiff discovered that O'Brien might get an assistant before her, Plaintiff

wrote to Roman:

Is it the assistant thing? She said you promised her Delaney and she will be pissed if someone gets an assistant before her. Her and I have been getting along pretty well, or so I thought, so I'm rather shocked to hear she was shooting down having my role modified.

you are my boss and she is HR. How is it that she gets to make performance judgments? I know we are a small place but we need structure. I want to make my time here successful for both me and MEF. I want to live up to my potential. I know you can help me achieve that. How 'can we fix this?

Exhibit 33, Message from Plaintiff to Roman.

**ANSWER:**

This is not a material fact and has no relevance to the instant motion and applicable standard of review.

117.    On August 9, 2018, Roman submitted a policy plan to the State Department that included Plaintiff's name on it. Exhibit 34, Message from Plaintiff to J. Reynolds.

**ANSWER:**

This is not a material fact and has no relevance to the instant motion and applicable standard of review.

118.    Plaintiff remained confident and secure in her position with the Forum at this time, writing: "...everyone in here loves me, Tricia, Delaney, Matt, Thelma. Cliff, Sam, and EJ all love me. No one else [other than Marnie O'Brien] has a problem with me..." Exhibit 35, Message from Plaintiff to P. McNulty.

**ANSWER:**

This is not a material fact and has no relevance to the instant motion and applicable standard of review.  The electronic communication speaks for itself and any characterization of the message not in accordance with the same is contested.

119.    In September 2018, Plaintiff's hostilities with O'Brien escalated when she failed to include O'Brien on the Forum's weekly schedule. Exhibit 36, Message from M. O'Brien to Roman.

**ANSWER:**

This is not a material fact and has no relevance to the instant motion and applicable standard of review.  The electronic communication speaks for itself and any characterization of the message

not in accordance with the same is contested.   This is also another exhibit that was not produced during discovery.  There is no Bates label.

120.    O'Brien wrote to Roman to complain about Plaintiff, stating that Plaintiff "was completely hostile the entire time she was in my office. I know it will blow over and we will be fine but I'd like to discuss that whe [sic] situation further with you and without emotion." Id.

**ANSWER:**

The electronic communication speaks for itself and any characterization of the message not in accordance with the same is contested.   This is also another exhibit that was not produced during discovery.  There is no Bates label.

121.    On September 27, 2018, Plaintiff wrote to McNulty: "I'm sending emails to DP and Gregg high as shit." Exhibit 37, Message from Plaintiff to P. McNulty.

**ANSWER:**

The electronic communication speaks for itself and any characterization of the message not in accordance with the same is contested.   Not every email is relevant and certainly the Court need not consider emails that have no relation to Plaintiff's claims of sexual harassment or Defendants' counterclaims that Lisa Barbounis breached her duty of loyalty.  It is apparent that Defendants lost site of the summary judgment standard.  Defendants offer this information for its prejudicial value.  Lisa Barbounis was referring to prescribed pain medication for a serious medical condition, which is also referenced in the communication.  Defendants bad faith in presenting this information is evident as this information has no conceivable connection to the summary judgment standard of review.

122.    On October 4, 2018, Plaintiff expressed her anger over McNulty taking credit for her work with Robinson, writing, "I planned the whole entire Tommy thing in London. I invited tricia [McNulty] because I wanted company. Now the president thinks both of us planned it. But its mine." Exhibit 38, Message from Plaintiff to V. Barbounis.

**ANSWER:**

The electronic communication speaks for itself and any characterization of the message not in accordance with the same is contested.   Not every email is relevant and certainly the Court need not consider emails that have no relation to Plaintiff's claims of sexual harassment or Defendants' counterclaims that Lisa Barbounis breached her duty of loyalty.  Plaintiff could point out that Ms. Barbounis felt territorial over her work because this was one of the first times she was permitted to assume additional responsibility to achieve Roman's objectives.

123.    On October 16, 2018, Roman wrote to O'Brien about Plaintiff failing to respond to donors who reached out to obtain a meeting with Roman. Exhibit 39, Message from Plaintiff to O'Brien.

**ANSWER:**

The electronic communication speaks for itself and any characterization of the message not in accordance with the same is contested.  This text thread has no relevance to Defendants' argument for summary judgment.  The text thread is between Marnie Meyer and Greg Roman. Defendants did not produce this text thread during discovery, despite Plaintiff's requests.  This text thread supports Plaintiff, Lisa Barbounis' and Marnie Meyer's argument that Greg Roman pitted the two against one-another in October 2018. Exhibit N.  Greg Roman is not being honest with Marnie Meyer. Exhibit A ¶ 154.  Defendants have produced no information to support what

Greg Roman is telling Ms. Meyer:

> that he got messages yesterday from donors that she didn't respond to phone calls
> they made asking for meetings with me."

> Def. Mot, Exhibit 39.

Marnie Meyer instructed Greg Roman to "save the messages." Defendants have produced no

communications where Greg Roman raised this issue with Lisa Barbounis. Lisa Barbounis was

not notified about this issue because it did not happen. Exhibit A ¶ 154. This is an example of

the way that Greg Roman drove a wedge between Lisa Barbounis and Marnie Meyer. Exhibit A

¶ 154. Marnie Meyer and Lisa Barbounis realized Roman's behavior after they sat down and

compared notes. Exhibit N. Exhibit A ¶ 155.


124.     Responsiveness to donors is a critical element of the Forum's work, as it depends

on donations to carry out its mission. Exhibit 1, Certification of Daniel Pipes, at ¶ 8.

**ANSWER:**

It is uncontested that MEF survives from donations.


125.     Nevertheless, Plaintiff was never disciplined, demoted, terminated, docked in pay

or suspended for this infraction or any others. Exhibit 1, Declaration of Daniel Pipes at ¶ 63.

**ANSWER:**

Contested. Lisa Barbounis was not disciplined, demoted, or terminated because she was great at

her job and satisfied the responsibilities of her employment. See Def. Mot Statement of Fact

Paragraph 169, below (Confirming Lisa Barbounis was provided a bonus for a job well done

from March through July 2019.). There was no infraction. Greg Roman was strategically

manipulating Lisa Barbounis and Marnie Meyer and adding to the hostile work environment.

Exhibit N.  Exhibit A ¶ 154 – 155.  The exhibits Defendants withheld (including Exhibit 39) confirms both Lisa Barbounis and Marnie Meyer's sworn statements and testimony in this regard.  Moreover, Defendants' argument in Paragraph 125 would require the Court to make gigantic leaps resolving all facts and inferences in favor of Defendants instead of the nonmoving party.

126.    On October 30, 2018, Plaintiff had a confrontation with Marnie O'Brien at the Forum's offices.  Exhibit 40, Message from Plaintiff to Roman.

**ANSWER:**

The electronic communication speaks for itself and any characterization of the message not in accordance with the same is contested.   Not every email is relevant to this case and certainly the Court need not consider emails that have no relation to Plaintiff's claims of sexual harassment or Defendants' counterclaims that Lisa Barbounis breached her duty of loyalty.  It is apparent that Defendants lost site of the motion for summary judgment standard.  The acrimony between Marnie Meyer and Lisa Barbounis in October 2018 was stoked by Greg Roman's manipulation of his executive liaison and the Director of Human Resources. Id.  This acrimony has no bearing on Defendants' argument for summary judgment.

127.    Plaintiff wrote to Roman complaining about this confrontation. Id.

**ANSWER:**

The electronic communication speaks for itself and any characterization of the message not in accordance with the same is contested.   Not every email is relevant to this case and certainly the Court need not consider emails that have no relation to Plaintiff's claims of sexual harassment or

Defendants' counterclaims that Lisa Barbounis breached her duty of loyalty.   The acrimony between Marnie Meyer and Lisa Barbounis in October 2018 was stoked by Greg Roman's manipulation of his executive liaison and the Director of Human Resources. Id.  This acrimony has no bearing on Defendants' argument for summary judgment.

128.    Roman noted in his response that if Plaintiff's complaint had to do with the Forum's human resources director, Plaintiff could bypass human resources with her complaint and approach Roman, Pipes, and MEF's in-house counsel directly. Exhibit 41, Message from Roman to Plaintiff.

**ANSWER:**

Contested.  Defendants mislead the Court by failing to accurately describe the Exhibit presented. Defendant, Roman certainly **did not** inform Lisa Barbounis that she "could bypass human resources with her complaint and approach Roman, Pipes, and MEF's in-house counsel directly." This would be out of character for Roman who enforced a closed-door policy with regard to Daniel Pipes. Exhibit A ¶¶ 114 - 118, Exhibit N, Exhibit R.  Roman informed Ms. Barbounis, "You did the right thing coming to me."  He did not suggest Ms. Barbounis bring issues to Daniel Pipes.  Roman proscribed direct communication with Daniel Pipes. Exhibit A ¶¶ 114 - 118, Exhibit N, Exhibit R.  This incident was also part of the manipulation employed to keep Marnie Meyer and Lisa Barbounis pitted against one-another.   Roman advised Lisa Barbounis and Marnie Meyer to write the other one up, and then feinted surprise when discussing Ms. Barbounis's writeup with Ms. Meyer and vice versa. Exhibit A ¶¶ 153 – 156.  Considering Greg Roman's direct involvement, the email Exhibit 41 evidences the manipulation directed at female staff.  This contributed to the hostile work environment to which Ms. Barbounis was subjected

by Roman.

129.    Roman also invited Plaintiff to speak with Roman and Marc Fink, the Forum's in-house counsel, concerning her grievances about O'Brien. Id.

**ANSWER:**

The electronic communication speaks for itself and any characterization of the message not in accordance with the same is contested.

130.    In her response to Roman, Plaintiff wrote, "I am not intentionally loud. I have a voice that carries. I don't think I should be penalized for that." Exhibit 42, Message from Plaintiff to Roman.

**ANSWER:**

The electronic communication speaks for itself and any characterization of the message not in accordance with the same is contested.

131.    In another response to Roman, Plaintiff declined to out the employee about whom she was complaining, noting that she did "not need to discuss it today" but was "just making you aware of the situation." Id.

**ANSWER:**

The electronic communication speaks for itself and any characterization of the message not in accordance with the same is contested.

132.    That same day, O'Brien texted Roman to inform him that she was going to invite

Plaintiff to "meet for a cup of coffee before coming into the office so that we can smooth things over otherwise its going to be a long day." Exhibit 43, Message from O'Brien to Roman.

**ANSWER:**

The electronic communication speaks for itself and any characterization of the message not in accordance with the same is contested.   Exhibit 43 is another responsive document that Plaintiff is seeing for the first time in this motion.  The actual meeting held with Ms. Meyer and Ms. Barbounis led to both employees concluding that the discord between them was being fanned by Roman's manipulative behavior.  Id.

133.    O'Brien noted that she and Plaintiff were "very alike" and "just need to figure out how to respect each other." Id.

**ANSWER:**

The electronic communication speaks for itself and any characterization of the message not in accordance with the same is contested.

134.    On the evening of October 30, 2018, Plaintiff wrote Roman a long email in which she provided her side of the story about her confrontation with O'Brien. In that email, Plaintiff explained her reasons for being late to the office and complained that she was being targeted by O'Brien:

> I feel that Marnie [O'Brien] targets me and has made it her mission to 'reel me in' because she has said as much. Additionally, when others are being loud, no one, including Marnie, ever says a word to them. As a prime example, yesterday, as I was writing a letter for Lord Pearson multiple people were outside my office being incredibly loud. I said nothing, and Marnie said nothing.
>
> However, today when I was irritated about a work situation and finished my sentence as Tricia walked away, of course Marnie didn't wait two seconds before

coming into my office and reprimand me. I repeated these same concerns as I am
stating now – that she only targets me. . . .

I know that I am being targeted. We have one employee who comes in late and
leaves early every single day, and no one says a word. When others are loud no
one says a word. There is a clear and obvious double standard and I am becoming
very uncomfortable. I am held to one standard and everyone else is held to
another.

We all know that this is not the first instance of her singling me out. I am fearful
that with Marnie as the HR person my job is in jeopardy.    I can't work with my
HR manager acting as my boss and monitoring every little thing I do.

Id.

## ANSWER:

The electronic communication speaks for itself and any characterization of the message not in

accordance with the same is contested.   The issues between Ms. Meyer and Ms. Barbounis are

not the subject of Plaintiff's claims or Defendants' counterclaims.  The only relevance to the

issues between Marnie Meyer and Lisa Barbounis is the extent to which Greg Roman fanned the

flames to keep Lisa Barbounis pitted against the Director of Human Resources. Exhibit A ¶¶ 151

- 156, Exhibit N, Exhibit R.   Defendant, Roman's manipulation of Ms. Meyer and Ms.

Barbounis contributed to the hostile work environment. Id. The timing of the email (Def Mot

Exhibit 43) should be noted as October 30, 2018, is five days before the staff meeting where

Roman's sexual harassment in the workplace was addressed in group format by Defendant,

Daniel Pipes.  When Marnie Meyer and Lisa Barbounis sat down and spoke openly about their

issues, they realized that Greg Roman had manipulated to maintain the discord.  Id.  When Lisa

Barbounis and Marnie Meyer spoke openly, they began to address Greg Roman's non-stop,

continuous, inappropriate, abusive, sexually suggestive, conduct and comments. Id.  Exhibit X.

Pursuant to a conversation between Marnie Meyer and Greg Roman, Ms. Meyer penned a letter

to Daniel Pipes. Exhibit X.  Ms. Meyer literally penned the letter because she was petrified that

Greg Roman had access to her electronic communications. Exhibit A ¶ 157.  Greg Roman used suggestive and threatening language to the female employees by insinuating they could hide nothing from him. Exhibit N and R.  Greg Roman constantly commented about his ability to access all information, even private information on personal computers and smart phones. Id. Accordingly, employees held an understandable fear of discussing Roman's sexual harassment by electronic communication.

135.    At the same time, Plaintiff was angry at Roman about a press release that went out announcing the Forum's legal support for Tommy Robinson, a United Kingdom-based activist, because she felt she had not been given proper credit for her work, and that Roman was instead taking credit for the project. Exhibit 44, Message from Plaintiff to J. Reynolds.

**ANSWER:**

Contested.  Defendants, again, mislead the Court by failing to accurately describe the exhibit presented.  Defendants repeatedly provide misleading information that is contradicted by the very Exhibit Defendants cite.  Def. Mot. Exhibit 44 is an electronic communication sent by Ms. Barbounis to her mother, which states, "Dr. Pipes just told me he put my name in the Tommy press release and Gregg said to take it out so I don't keep focusing on the Tommy stuff."  Lisa Barbounis does not express anger in any way.  The communication also does not address who gets credit for what.  Ms. Barbounis simply informed her mother about something that happened at work.  This message has no relevance to this lawsuit.

136.    Plaintiff's work with Robinson was very important to her, prompting her to state, "If I didn't have this Tommy thing I'd quit today." Exhibit 45, Message from Plaintiff to D.

Thomas.

**ANSWER:**

The electronic communication speaks for itself and any characterization of the message not in accordance with the same is contested.  Lisa Barbounis's text message has no connection to the Defendants' Motion for Summary Judgment.  Lisa Barbounis was happy that she had an assignment on which to focus.

137.    Plaintiff told Thomas, "After his [Tommy Robinson] trip here I'm quitting my job and looking for another one. Maybe in London Hahahahahaha." Exhibit 55 at p.51.

**ANSWER:**

The electronic communication speaks for itself and any characterization of the message not in accordance with the same is contested.  Plaintiff, Lisa Barbounis has never considered moving to London. Exhibit A ¶¶ 158 – 159.   Lisa Barbounis has two children and a family who all reside in the Philadelphia and surrounding areas. Exhibit A ¶¶ 158 – 159.   Ms. Barbounis laughed at the absurdity of the idea that she would move to Europe.  This message was sent October 30, 2018, also around the time described in Response to Paragraph 136, above.  Lisa Barbounis did not quit her job until about one (1) year later, in August 2019.  Exhibit A ¶¶ 1 – 15.

138.    On November 1, 2018, Marnie O'Brien, one of Plaintiff's coworkers, lodged complaints about the alleged behavior of Gregg Roman to Daniel Pipes. Exhibit 47, Meyer Dep. at p.106.

**ANSWER:**

Uncontested.  A true and accurate copy of Marnie Meyer's report of discrimination and

harassment in the workplace is attached and marked Plaintiff's Exhibit X.

139.    The complaints included allegations relating to Lisa Barbounis, Marnie O'Brien and Patricia McNulty. Exhibit 1, Certification of Daniel Pipes, at ¶ 33.

**ANSWER:**

Uncontested.  Accurately stated, Marnie Meyer's written report of discrimination and harassment in the workplace included but was not limited to, statements relating to Lisa Barbounis, Marnie O'Brien and Patricia McNulty. Exhibit X.

140.    That same day, Plaintiff told her husband that she might "have a great plan." Exhibit 48, Message from Plaintiff to V. Barbounis.

**ANSWER:**

Plaintiff objects to the use of privileged communications between husband and wife made in confidence.  The electronic communication speaks for itself and any characterization of the message not in accordance with the same is contested.  Defendants' request that the Court interpret privileged communications in favor of Defendants' fantasy defense is inappropriate. Lisa Barbounis and her husband held a privileged discussion about Ms. Barbounis's future. Defendants are asking the Court to infer nefarious, conspiracy laden implications in connection with Lisa Barbounis' statement that she might have a "great plan."  Ms. Barbounis was not referring to any litigation as this statement was presented in November 2018.  Ms. Barbounis did not even consider retaining counsel until six months later.

141.    Pipes took the complaints seriously, and immediately began investigating. Exhibit

1, Certification of Daniel Pipes, at ¶ 34-38; Exhibit 49, Email from D. Pipes.

**ANSWER:**

Contested.  Defendant Pipes certainly did not take the complaints seriously.  Defendant Pipes did little to no investigation. Exhibit A ¶¶ 160 – 161.   According to Defendant Pipes' own testimony, any investigation performed was completed in less than one day. Deposition Transcript of Daniel Pipes attached and marked Plaintiff's Exhibit "Q" Page 179.   Defendant, Pipes worked to silence the female victims of Greg Roman's sexually inappropriate conduct and comments. Exhibit A ¶¶ 160 – 165.  Defendant, Pipes never considered doing anything further and labeled all reports after November 2018 of discrimination and harassment in the workplace involving Greg Roman as "women moaning."  Pipes Tr Exhibit Q Pages 75 – 77, 130 – 136, 213 – 217, 352, 369 – 370.

142.    As part of his investigation, Pipes interviewed Gregg Roman and discussed the allegations made against him. Exhibit 1, Certification of Daniel Pipes, at ¶ 35-36; Exhibit 49, Email from D. Pipes.

**ANSWER:**

Contested.  It is contested that Defendant, Pipes performed an adequate investigation.  It seems clear that Pipes and Roman worked together to contend with the female victims of Greg Roman's sexual harassment in the workplace. Exhibit A ¶¶ 160 – 165.  Pipes Tr Exhibit Q Pages 75 – 77, 130 – 136, 213 – 217, 352, 369 – 370.   Despite extremely troubling allegations involving at least three women, including the Director of Human Resources, Daniel Pipes took no adverse steps against Greg Roman. Exhibit E.  Daniel Pipes made certain that Greg Roman maintained his pay, benefits, responsibilities, and continued employment. Exhibit E.  Daniel

Pipes explained the reason that Greg Roman was not reprimanded or terminated further in a text exchange between Matthew Bennet and Daniel Pipes, Matthew Bennet asked, "if I did what Greg Roman did, would I still be employed?'

> Daniel Pipes responded, There are two main reasons that he is still employed.  1. The outside world does not appreciate drama. 2. He has skills that we need now. Were he suddenly gone, we would be in trouble."

> A true and accurate copy of Daniel Pipes' communication to Matthew Bennet is attached and marked Plaintiff's Exhibit "MM".

Importantly, Daniel Pipes did not list "innocence" as a reason for Greg Roman's continued employment. Exhibit MM.   Evidently, the safety risk that Greg Roman posed to MEF's female staff took a backseat to optics and fundraising.  Accordingly female employees over the years have fallen victim to Greg Roman's predatory nature. Exhibit N.  In 2016, Aman Patel explained to Daniel Pipes that Greg Roman's conduct and comments toward her were inappropriate.  Aman Patel explained that Greg Roman screamed at the female staff, cursed, was aggrieve and sometimes violent.  On one occasion Greg Roman threw a stapler at Aman Patel.  Tiffany Lee reported sexual harassment and discrimination and harassment in the workplace in 2016. Exhibit CC.  Tiffany Lee filed a Charge of Discrimination at the Equal Employment Opportunity Commission presenting allegations that are familiar to the instant allegations Plaintiff presents. Id.  Laura Frank and Lara Scott notified Daniel Pipes that Greg Roman was sexually inappropriate also in 2016.  Marnie Meyer wrote a letter and informed Daniel Pipes that Greg Roman had maintained a sexual relationship with a young intern. Exhibit X.  At deposition, Daniel Pipes admitted that he did nothing to investigate this allegation, which is purportedly a quid pro quo sexual proposition by MEF's Director to trade sex for a signature. Pipes Tr Exhibit Q Pages 75 – 77, 130 – 136, 213 – 217, 352, 369 – 370.   A Washington Examiner reporter was recorded talking about Greg Roman. Exhibit GG.  Daniel Pipes is in possession of the recording

and admitted at his deposition that he has done nothing to investigate the reporter's allegations.

Pipes Tr Exhibit Q Pages 75 – 77, 130 – 136, 213 – 217, 352, 369 – 370.   The reporter alleged that Greg Roman took his penis out in front of her, threatened her, and attempted to trade sex for juicy stories. Exhibit GG.  Daniel Pipes' has consistently avoided performing any investigation of Greg Roman and it is therefore contested that Daniel Pipes investigated the claims of Patricia McNulty, Marnie Meyer, and Lisa Barbounis in November 2018.

143.     Roman denied all allegations of sexual harassment and misconduct. Exhibit 1, Certification of Daniel Pipes, at ¶ 35-36; Exhibit 49, Email from D. Pipes.

**ANSWER:**

Contested.  It is contested that Greg Roman denied all allegations of misconduct.  Today, Greg Roman denies the allegations due to the instant litigation, but at the time, Greg Roman conceded that his behavior, was inappropriate and "put these women in a difficult position." Exhibit P. Daniel Pipes wrote a letter which described Greg Roman's position with regard to the allegations of Patricia McNulty, Marnie Meyer, and Lisa Barbounis in November 2018.  The letter includes the following language,

> …But you acknowledge that your conduct, whatever your intentions were, was not acceptable and put these employees in a difficult position. You put this in the context of calling yourself a "social junkie" who seeks constant social interaction. You acknowledge  this drive led to melding together your business and personal relationships…
>
> A true and accurate copy of the letter written by Daniel Pipes is attached and marked Plaintiff's Exhibit "P".

144.     Pipes found Roman's denials to be credible. Exhibit 1, Certification of Daniel Pipes, at ¶ 39.

**ANSWER:**

Contested.  Plaintiff contests any statement offered by Defendants, Daniel Pipes and Greg

Roman, and particularly statements concluding that Greg Roman's denials of sexual harassment

allegations are credible.


145.     Nevertheless, out of an abundance of caution and respect for the Forum's

subordinate employees, Pipes decided to implement a new supervisory structure which would

remove O'Brien, McNulty, and Barbounis from Roman's supervision and implement restrictions

on contact with Roman to business hours, with no in-person contact without approval. Exhibit

50, Memo from D. Pipes to Roman.

**ANSWER:**

Contested.  Defendant Pipes did not only remove O'Brien, McNulty, and Barbounis from

Roman's supervision.  Greg Roman was no longer permitted to communicate directly with any

of MEF's female employees. Exhibit P.


146.     On November 4, 2018, Pipes emailed Plaintiff, O'Brien, and McNulty concerning

his findings and relayed the new supervisory structure to them. Exhibit 51, Email from D. Pipes.

**ANSWER:**

The email from Daniel Pipes to Lisa Barbounis, Patricia McNulty and Marnie Meyer speaks for

itself.


147.     In that email, Pipes notified Plaintiff, O'Brien, and McNulty that if Roman were

to become their supervisor again in the future "it would only be with your consent." Id.

**ANSWER:**

The email from Daniel Pipes to Lisa Barbounis, Patricia McNulty and Marnie Meyer speaks for itself.   Importantly, Pipes was already planning on bringing Roman back. Exhibit M.   Pipes' conduct and comments indicates no concern for the safety of the female staff or Greg Roman's sexual harassment in the workplace.  Exhibit MM.  Pipes Tr Exhibit Q Pages 75 – 77, 130 – 136, 213 – 217, 352, 369 – 370.     It did not matter whether Daniel Pipes believed Roman or the victims of his sexual harassment.  Id.  Belief in the allegations was not relevant.  Daniel Pipes just did not care about the female staff. Id.  Pipes' stated objectives were MEF's optics and donations. Exhibit MM.  Pipes Tr Exhibit Q Pages 75 – 77, 130 – 136, 213 – 217, 352, 369 – 370.    At deposition Pipes explained why he did not investigate any of the allegations involving Greg Roman and the quid pro quo sexual propositions involving Leah Merville and Alana Goodman. Id.  Pipes testified that he was not concerned with Greg Roman's sex life. Id.  Pipes did not care that Greg Roman was using his position and power, as Director and corporate officer of a multi-million dollar think tank to intimidate and harass female employees. Id.  Pipes repeatedly swore under oath that he is not a "den mother" and is too busy to think about issues related to Greg Roman's sexual harassment. Pipes Tr Exhibit Q Pages 75 – 77, 130 – 136, 213 – 217, 352, 369 – 370.   Pipes considered Roman pressuring a young intern into engaging in sexual relations, or Roman threatening a Washington Examiner Reporter to give stories to competitors or have sex, the same way that Pipes thought about Lisa Barbounis having a one-night stand with a man she met at a bar. Id.

148.    In that email, Pipes asked Plaintiff, O'Brien and McNulty whether they (1) agreed with his proposed changes, (2) were satisfied with how the Forum handled the matter, and (3) if

unsatisfied, what additional steps they requested." Id.

**ANSWER:**

The email from Daniel Pipes to Lisa Barbounis, Patricia McNulty and Marnie Meyer speaks for itself.

149.    Plaintiff responded to Pipes' email, stating, among other things, that "Gregg made unwanted sexual advances and put me in an uncomfortable situation. However, I felt at the time I handled the issue and have not had an incident since," so Pipes set a meeting for the following day with the entire office staff except Roman. Id.

**ANSWER:**

The email from Daniel Pipes to Lisa Barbounis, Patricia McNulty and Marnie Meyer speaks for itself.   It is uncontested that Greg Roman did not attend group meeting where the female staff reported Greg Roman's sexual harassment and sexual misconduct to Daniel Pipes, however, Greg Roman was scheduled to attend the meeting.   A copy of the email meeting invite to Greg Roman is attached as Exhibit "NN".   Daniel Pipes' invitation to have the harasser present while the victims discussed the harassment indicates Pipes' disconnect and lack of a reasonable and adequate investigation and corrective measures.   The female employees were petrified to attend the meeting with Roman. Exhibit A ¶¶ 163 – 166.   The day of the meeting Pipes contacted Roman and instructed him not to attend. Id.   Some of the female employees including Delaney Yonchek brought mace to the meeting out of fear of Greg Roman's attendance. See Meeting Notes Exhibit O.

150.    On November 5, 2018, Plaintiff participated in a meeting with Daniel Pipes

concerning grievances that Plaintiff, Patricia McNulty and Marnie O'Brien had lodged against

Roman. Exhibit 52, Meeting Notes.

**ANSWER:**

It is uncontested that Lisa Barbounis attended a meeting on November 5, 2018 to report Greg

Roman's sexual harassment and sex and gender discrimination in the workplace.  Plaintiff

objects to the presentation of the meeting notes (Def. Mot Exhibit 52).  Defendants specially

withheld the production of this obviously discoverable information.  The notes do not bear a

Bates Stamp and appear not to have been produced in response to Plaintiff's document requests.


      151.    Pipes listened wholeheartedly to the complaints from Plaintiff's coworkers

concerning Roman and his demanding management style. Exhibit 1, Certification of Daniel

Pipes, at ¶ 35-36; Exhibit 52, Meeting Notes.

**ANSWER:**

Contested.  It is contested that Defendant, Pipes listed "wholeheartedly" to the allegations of

sexual harassment in the workplace.  To the contrary, Pipes worked to silence and avoid the

allegations of sexual harassment. Exhibit A ¶¶ 160 – 166.  Exhibit O.  Paragraph 151 above

indicates Defendants' disconnect and describes reports of sexual harassment as "Roman's

demanding management style."  Specially, Pipes refused to even consider reports that Greg

Roman engaged in quid pro quo sexual harassment of a young intern. Pipes Tr Exhibit Q Pages

75 – 77, 130 – 136, 213 – 217, 352, 369 – 370.  Pipes admitted during his deposition that he did

nothing to investigate this claim. Id.  Pipes also invited Greg Roman's sister, Stacy Roman, to

the group meeting. Exhibit A ¶¶ 160 – 166. Exhibit O.  Stacy Roman worked diligently during

the meeting to disparage and argue with the victims of Greg Roman's sexual harassment in the

workplace, suggesting that it was the victims fault for wearing short skirts. Exhibit A ¶¶ 160 –

166. Exhibit O.   Stacy Roman disparaged the victims and stood up for her brother during the

meeting, which is an understandable position for a sibling to take. Id.  That is why she should

never have been invited.  Lisa Barbounis was not afforded a safe environment to openly discuss

the sexual harassment. Exhibit A ¶¶ 160 – 166.  Moreover, Daniel Pipes started the meeting by

blaming the victims, stating that he was "disappointed" and calling the reports of sexual

harassment a "surprise." Exhibit O.   Importantly, there was no reason for Pipes to be surprised.

Patricia McNulty, Marnie Meyer, and Lisa Barbounis' reports of sexual harassment in the

workplace were at the least, the fourth, fifth, and sixth reports lodged against Greg Roman in half

the number of years. Exhibit N.   That is an average of two victims per year.


152.    According to the meeting notes, Plaintiff raised no complaints about any sexual

harassment by Roman.  Id.

**ANSWER:**

Contested.  Plaintiff objects to the meeting notes being withheld from discovery and produced

only to support Defendants' Motion for Summary Judgment.  Notwithstanding, the meeting

notes indeed indicate Defendant, Roman's inappropriate behavior in Washington D.C., which is

a reference the AIPAC conference couch incident. Exhibit O.  Daniel Pipes either refused to

explore this information further during the meeting, or Mark Fink refused to record everything

that was discussed at the meeting. Id.  Allegations of Roman's sexual harassment involving at

least four female victims and MEF employees was the precursor to the meeting. Exhibit A ¶ 167.

Lisa Barbounis discussed Roman's sexual harassment during the Israel trip. Id.  Exhibit O.  The

meeting notes that were withheld from Plaintiff reference the inappropriate manner in which

Roman instructed Barbounis to hide from his wife. Id.  Allegations of sexual harassment in the

workplace can be difficult for victims to discuss. Exhibit A ¶ 167.   A group meeting with the

harasser's sister in attendance, blaming the victims for wearing short skirts, is not safe

atmosphere for discussing intimate details of sexual harassment. Id.  Defendants are, again,

asking the Court to make credibility inferences based on a negative evidence theory.

153.    At the meeting, Plaintiff requested that Pipes remove Roman from his role as the

Forum's director. Id.

**ANSWER:**

Uncontested.  Lisa Barbounis believed that Roman should be terminated and that the safety of

the female employees should trump Daniel Pipes' priorities:  (1) The outside world does not

appreciate drama. And (2) He has skills that we need now.  Were he suddenly gone, we would be

in trouble."  Daniel Pipes communications to Matthew Bennett attached as Exhibit MM.

154.    Out of an abundance of caution, Pipes complied with Plaintiff's request, largely

because he valued the employees of the Forum and appreciated their concerns. Id.

**ANSWER:**

Contested.  Greg Roman's role with MEF did not change, despite Defendants' claims. Exhibit E.

Roman continued working with MEF, securing donations and running the company behind the

scenes. Id. Exhibit A ¶ 168.  At no time did Pipes appreciate the concerns of the female staff.

Pipes Tr Exhibit Q Pages 75 – 77, 130 – 136, 213 – 217, 352, 369 – 370.   It took Patricia

McNulty, Lisa Barbounis, and Marnie Meyer to present reports of sexual harassment involving

Greg Roman at the same time for Pipes to even consider the reports. Exhibit X.  See also

identical letters to Ms. Barbounis, Ms. Meyer, and Ms. McNulty from Daniel Pipes attached as Exhibit "OO".  Every other instance when a female employee reported harassment or inappropriate conduct involving Greg Roman, Pipes refused to respond.  Pipes Tr Exhibit Q Pages 75 – 77, 130 – 136, 213 – 217, 352, 369 – 370.    Pipes refused to even label female staff allegations involving Greg Roman as "reports."  Id.   Pipes looked at several reports presented by Patricia McNulty, while Greg Roman was purportedly "on probationary status" and responded, "I don't see reports.  I see women moaning." Id.  Pipes' reason for refusing to investigate was, "I am not a den mother." Id.

155.    Pipes imposed several conditions on Roman's employment, including removing his direct oversight of Plaintiff and her co-workers and instructing Roman to work outside of the Forum's offices. Id.

**ANSWER:**

Uncontested.  From November 5, 2018 until March 5, 2019, Roman was removed from direct oversight of Plaintiff and instructed to work outside MEF's offices.

156.    On November 5, 2018, in response to her mother's questions about whether Roman had been terminated, Plaintiff stated, "For the most part." Exhibit 53, Messages between Plaintiff and J. Reynolds.

**ANSWER:**

The electronic communication speaks for itself and any characterization of the message not in accordance with the same is contested.

157.    In that same conversation, in response to a question about whether she was happy with her "new job and title," Plaintiff responded, "I don't know. And I don't know if that is my actual title. And I don't know if its permanent.  I'm very stressed out." Id.

**ANSWER:**

The electronic communication speaks for itself and any characterization of the message not in accordance with the same is contested.

158.    On November 6, 2018, Pipes provided Roman with a formal offer letter detailing the new terms of his employment, which included Roman having no involvement in the Forum's personnel issues, no authority to hire and fire the Forum's employees, no access to the Forum's Philadelphia office, and no contact with the Forum's female employees outside of business hours. Id.

**ANSWER:**

The electronic communication speaks for itself and any characterization of the message not in accordance with the same is contested.

159.    Roman accepted Pipes' instructions and the new terms and conditions of his employment. Exhibit 54, Executed Offer Letter.

**ANSWER:**

Uncontested.  Roman did accept the conditions which had no adverse effect on Roman whatsoever.  Roman continued with the same compensation and benefits, but held less responsibility.

160.    On November 6, 2018, Plaintiff wrote to Thomas: "It's been a rough few days. I basically got rid of my own position. Gregg is gone from the office and may be gone entirely. Only time will tell. I'm not working with him so there isn't much for me to do. They let me keep the Tommy project and fired the online editor and gave me that job for now until they see if Gregg is going to manage the other projects. If not I may get that time will tell. But he's out of the office and stripped of his authority. He may retain the title so the organization saves face." Exhibit 55, Messages between Plaintiff and D. Thomas.

**ANSWER:**

The electronic communication speaks for itself and any characterization of the message not in accordance with the same is contested.

161.    From November 6, 2018 through March 9, 2019, Roman ran projects for the Forum and met with donors, but was not involved in the day-to-day in-office operations at the Forum and had little to no contact with the Forum's in-office employees, including Plaintiff, nor visited the MEF premises, except one time, supervised by Pipes, in order to clean out his office. Exhibit 3, Roman Dep. at p.100-01; Exhibit 1, Certification of Daniel Pipes, at ¶ 43.

**ANSWER:**

Contested.  It is contested that Roman had little to no contact with Plaintiff, Lisa Barbounis between November 6, 2018 through March 9, 2019. Exhibit A ¶ 169.  Lisa Barbounis spoke with Greg Roman almost every day between November 6, 2018 through March 9, 2019. Exhibit A ¶ 168 – 169.  Roman was cold and dismissive during this time period, however he discontinued the nonstop, continuous, sex-based comments to which Lisa Barbounis had been subjected from the beginning of her employment until November 2018. Exhibit A ¶¶ 167 – 170.

162.    On November 15, Plaintiff remarked to her friend that "I have a guy in the UK that is so hot and loves me. He keeps asking me to leave Vasili." Exhibit 56, Messages between Plaintiff and K. Ercole.

**ANSWER:**

Contested.  The electronic communication speaks for itself and any characterization of the message not in accordance with the same is contested.   Moreover, this communication has no relevance to Plaintiff's claims or Defendants' counterclaims.  Plaintiff's gossip about a romantic involvement with Daniel Thomas is presented solely for its prejudicial effect.

163.    In December 2018, Plaintiff received a promotion to Director of Communications for the Forum. Exhibit 9, Plaintiff's Responses to Third Set of Requests for Admissions No. 2.

**ANSWER:**

Contested.  Plaintiff did not admit that she became Director of Communication.  Plaintiff's Response to Defendants' Request stated,

> Denied as stated. … First, Defendant, The Middle East Forum and specifically Daniel Pipes never provided Plaintiff with an actual promotion to Director of The Middle East Forum. To the contrary, Plaintiff, Lisa Barbounis was never received a meaningful promotion. Plaintiff requested a promotion to Director of Communications because Plaintiff's job responsibilities had increased significantly and Plaintiff was doing more work with public relations for The Middle East Forum. Plaintiff explained that people she had to do business with on behalf of The Forum would take Plaintiff more seriously if Plaintiff had the title, Director of Communications. Accordingly, Plaintiff requested the promotion. Daniel Pipes responded that Plaintiff could hold herself out to the public as Director of Communications, however, Daniel Pipes was very clear that Plaintiff's title and promotion was in name only. Plaintiff did not receive a pay raise to go with the promotion. Plaintiff did not receive a bonus…."
>
> Def. Mot, Exhibit 9.

Defendant, Pipes was very clear with Lisa Barbounis that she was not the Director of Communications. Exhibit A ¶ 72 – 73.   Lisa Barbounis had assumed new responsibilities working with public relations after Greg Roman was ejected from the Philadelphia offices. Id. Lisa Barbounis notified Pipes that she would not be taken seriously with the title, Executive Liaison. Id.   Pipes consented to allow Lisa Barbounis to use the title "Director of Communications." Id.   Pipes clearly mandated that Lisa Barbounis would not receive a pay increase and that the title "was in name only." Id.

164.    On February 1, 2019, the Forum paid discretionary performance bonuses to several in-office employees, including Plaintiff, who received $1,000. Exhibit 57, Bonus to Plaintiff.

**ANSWER:**

It is uncontested that Lisa Barbounis, and the entire female staff at The Middle East Forum received bonuses due to the added responsibilities assumed after Roman was no longer permitted to visit the Philadelphia Offices.  Plaintiff objects to Defendants' use of documents that were not produced during discovery.  Plaintiff specially requested this information and Defendants objected and refused to produce the same.

165.    On February 6, 2018, Plaintiff wrote to McNulty that she was engaged in text messaging with Roman solely in the Forum's work chat group and noting, "F him." Exhibit 20, Text Messages between Plaintiff and P. McNulty at p.52.

**ANSWER:**

The electronic communication speaks for itself and any characterization of the message not in

accordance with the same is contested.   This communication has no relevance to Defendants

Motion for Summary Judgment or the standard applied to adjudicate a dispositive motion.  In

considering this text message, the Court cannot draw inferences in favor of the moving party and

against Lisa Barbounis.


166.    On February 8, 2019, Plaintiff reached out to her contact from the New York

Times on behalf of Robinson using her MEF business email address, stating: "I know that we

spoke briefly about a meeting when I next visit London however I may have a very big exclusive

story for you involving Tommy Robinson, Hope Not Hate and the BBC. Might you have a

moment to speak?" Exhibit 58, Email from Plaintiff.

**ANSWER:**

The electronic communication speaks for itself and any characterization of the message not in

accordance with the same is contested.   This communication has no relevance to Defendants'

Motion for Summary Judgment or the standard applied to adjudicate a dispositive motion.  In

considering this text message, the Court cannot draw inferences in favor of the moving party and

against Lisa Barbounis.   After Roman's temporary departure, Ms. Barbounis's role with MEF

became disjointed.  Accordingly, Pipes asked Ms. Barbounis to take on responsibilities including

working with press.  Id.  This is why Pipes agreed that Ms. Barbounis could hold herself out to

the public as MEF Director of Communications, even if Ms. Barbounis did not actually hold that

position.  MEF assigned Ms. Barbounis to work with Tommy Robinson in connection with a

First Amendment free speech campaign.  Id.   It is therefore unremarkable that Ms. Barbounis

sent an email about Tommy Robinson to a reporter.

167.    In March 2019, the Forum paid a second round of discretionary performance bonuses to several in-office employees, including Plaintiff, who received $6,000. Exhibit 59, Second Bonus to Plaintiff.

**ANSWER:**

It is uncontested that Lisa Barbounis, and the entire female staff at The Middle East Forum received bonuses due to the added responsibilities assumed after Roman was no longer permitted to visit the Philadelphia Offices.  Plaintiff objects to Defendants' use of documents that were not turned over during discovery.  Plaintiff specially requested this information.  In reviewing the Exhibit, Lisa Barbounis, along with the entire female staff who worked at the Philadelphia offices received $500 extra in each paycheck for ten paychecks.

168.    These bonuses were for "a job well done" and increased work responsibilities, and had nothing to do with any allegations against Roman. Exhibit 1, Certification of Daniel Pipes, at ¶ 63.

**ANSWER:**

Plaintiff does not object to Defendants concession that from March 2019 through July 2019, she received a bonus every month for a "job well done."

169.    On March 7, 2019, Plaintiff won an in-office vote to become the "office point person" over O'Brien. Exhibit 60, Transcript of Recording by Plaintiff.

**ANSWER:**

Any recording or transcript speaks for itself and any inference or characterization that does not comport with the express meaning is contested.

170.    On March 8, 2019, Plaintiff illegally recorded a phone conversation O'Brien – without O'Brien's permission – and was accused of "taking money" out of O'Brien's pocket. Id. at p.4.

**ANSWER:**

Any recording or transcript speaks for itself and any inference or characterization that does not comport with the express meaning is contested.  Marnie Meyer did not literally mean that someone stole money from her pocket.  Ms. Meyer was referring to a lost opportunity.

171.    Following this vote, on March 8, 2019, Plaintiff asked Pipes to reinstate Gregg Roman to his prior supervisory role and duties, including his return to the office work environment. Exhibit 61, Plaintiff's Responses to Third Set of Requests for Admissions No. 12.

**ANSWER:**

It is contested that Request for Admissions, No. 12 confirms the information presented in Paragraph 171.  Defendants certainly have no issue mischaracterizing exhibits and the record in their favor.  In answering Request for Admissions, No, 12, Lisa Barbounis responded,

> Plaintiff, Lisa Barbounis does not understand the Request for Admission presented. Specifically, Plaintiff, Lisa Barbounis does not understand what is meant by the phrase: "directly as Director of The Forum." Accordingly this Request is denied as stated. It is admitted that Plaintiff, Lisa Barbounis spoke to Daniel Pipes about Defendant Greg Roman's return to work at Director of The Middle East Forum. Plaintiff, Lisa Barbounis expressed reservations about Defendant, Greg Roman's return and Daniel Pipes agreed to allow Defendant, Greg Roman to return with strict safeguards for the safety of the female staff. Unfortunately, Daniel Pipes did not adhere to the agreed to safeguards and Defendant, Greg Roman continued his campaign of retaliation post return.
>
> Def. Mot, Exhibit 61.

172.     Plaintiff told Pipes that with Bennett leaving, the Forum needed Roman to return

to give it direction and leadership. Exhibit 1, Certification of Daniel Pipes, at ¶ 46.

**ANSWER:**

Contested,  Lisa Barbounis did not use this language.  She did not say that Roman was needed

for direction and leadership.  Ms. Barbounis' placed the interests of The Middle East Forum over

her own self-preservation and the safety of the female victims that Greg Roman sexually

harassed. Exhibit A ¶¶ 169 – 175.   Ms. Barbounis was first approached by Matthew Bennet,

who remained in regular contact with Greg Roman, even after November 5, 2018.  Id. Matthew

Bennet suggested that Greg Roman had "learned his lesson." Id.  At the time, around March

2019, the Middle East Forum was floundering. Id.  Daniel Pipes was visibly stressed and falling

behind on work and assignments. Id.  When Matthew Bennet brought the idea of Roman's return

to Director to Lisa Barbounis, he said that it should be Ms. Barbounis who brought the idea to

Daniel Pipes. Id.  Roman and Bennet had decided that the idea of Roman's return would have

greater impact if introduced by Lisa Barbounis.  Lisa Barbounis was assured there would be no

further sexual harassment or retaliation because Roman had learned his lesson. Id.  Accordingly,

Ms. Barbounis agreed to bring the idea to Daniel Pipes. Id.  Marnie Meyer rejected the idea

outright.  Patricia McNulty was extremely wary but agreed not to challenge the suggestion.  Id.


173.     On March 8, 2019, Matthew Bennett voluntarily left the Forum to pursue other

opportunities. Id.

**ANSWER:**

It is uncontested that Matthew Bennett voluntarily resigned his position with MEF sometime

around March 8, 2019.

174.    Patricia McNulty was promoted to Acting Director of Development to temporarily fill the role vacated by Bennett. Exhibit 62, Message Confirming Promotion of P. McNulty.

**ANSWER:**

Plaintiff, Lisa Barbounis does not contest that Patricia McNulty assumed the role of Acting Director of Development after Matthew Bennett's resignation.

175.    On March 9, 2019, Pipes held a staff meeting to discuss Roman's return, inviting Roman to attend, with the advice and consent of Plaintiff and McNulty's suggestion that he be there. Plaintiff's Responses to Third Set of Requests for Admissions Nos. 43-48.

**ANSWER:**

It is uncontested that there was a staff meeting held March 9, 2019, to discuss Roman's return as Director.  Plaintiff's Request for Admissions confirms that Ms. Barbounis attended this meeting and agreed to allow Mr. Roman to return under a strict "probationary status."  Unfortunately, the probationary status was a sham perpetrated by Roman and Pipes. Exhibit A ¶ 176.  See also three emails from Patricia McNulty about Greg Roman attached as Exhibit "PP".  Exhibit Q page 350.

> Q. Okay. So we've now looked at a complaint on April 23rd, 2019, one on June 10th, 2019, one on June 11th, 2019, and one on May 10th, 2019. They're all from Patricia McNulty. Do you remember that today?
> …
> A. I said no, I do not remember. I do not see complaints. ***I see moaning about Gregg. I do not see any complaints, anything for me to act on***.
>
> Id.

 Once Roman was back, Pipes refused to consider any report of harassment involving Roman. Pipes labeled such reports as "moaning."  The request for admission response Plaintiff provided does not confirm the information presented by Defendants.

43.  Denied as stated. Plaintiff agreed to allow Defendant, Greg Roman to return as Director of The Middle East Forum based on assurances by Daniel Pipes that Greg Roman that strict safeguards would be put in place to protect the female staff. Plaintiff, Lisa Barbounis's decision was made for the benefit of Daniel Pipes and The Middle East Forum.

44.  Denied as stated. Plaintiff agreed to allow Defendant, Greg Roman to return as Director of The Middle East Forum based on assurances by Daniel Pipes that Greg Roman that strict safeguards would be put in place to protect the female staff. Plaintiff, Lisa Barbounis' decision was made for the benefit of Daniel Pipes and The Middle East Forum. Plaintiff approached Daniel Pipes to discuss the way in which Defendant Greg Roman could help The Middle East Forum without putting the female staff at risk.

45.  It is admitted that Plaintiff, Lisa Barbounis conceded that The Middle East Forum was floundering in the months after Defendant, Greg Roman was ejected from the offices because of the safety risk he posed to the female staff. It is admitted that Plaintiff, Lisa Barbounis admitted that having Defendant, Greg Roman return would help The Middle East Forum get back on track. It is admitted that Plaintiff prioritized The Middle East Forum as an organization over personal fears and issues related to working with Defendant, Greg Roman Moreover Plaintiff, Lisa Barbounis put her trust in Daniel Pipes and Mark Fink to enforce the safeguards put in place for the protection of the female staff.

Def. Mot. Exhibit 9.

176.    In follow-up to the meeting, Marc Fink, the Forum's in-house counsel, sent emails to Plaintiff, McNulty and O'Brien summarizing the discussion concerning Roman's return, outlining the conditions of Roman's return, and soliciting feedback on those discussions and decisions.  Exhibit 63, Email to Plaintiff from M. Fink.

**ANSWER:**

Any electronic communication  speaks for itself and any inference or characterization that does not comport with the express meaning is contested.

177.    During this period of time, Roman had been committed to opening his 501(c)(4) organization and to leaving The Forum, including obtaining the necessary legal paperwork to

commence this new legal entity in Washington DC, raising funds for it, and paying attorneys to help with its formulation. Exhibit 64, C. Accardi Dep. At p.23; Exhibit 27, Affidavits of B. Goldman and J. Geldner.

**ANSWER:**

Plaintiff contests information presented by Defendant Greg Roman due to Roman's lack of credibility. Moreover, Roman did not plan to open the 501(c)(4) as an alternative to his work with MEF. The 501(c)(4) was intended to supplement and work in conjunction with MEF. This is clear because Roman began the process of starting the 501(c)(4) months before he was ejected from the Philadelphia offices. See Paragraphs 112, 113, 114, 115, above. Defendants own exhibits confirms that Roman planned to begin this organization prior to even contemplating his departure.


178.    Ultimately, Roman decided not to proceed with the 501(c)(4) because Plaintiff had requested that he return in full capacity to the Forum. Exhibit 3, Roman Dep. at p.165.

**ANSWER:**

Contested. Defendant, Roman's decision regarding the 501(c)(4) had no connection with Ms. Barbounis or Roman's return to the role as MEF Director. See Paragraphs 112, 113, 114, 115, above. Defendants own exhibits confirms that Roman planned to begin this organization prior to even contemplating his departure.


179.    On March 13, 2019, Pipes sent a letter to Roman summarizing the new terms of his employment and return to the office, which included a closer collaboration with office staff, but with several restrictions in place, including no authority to hire and fire the Forum's

employees, no authority to monitor or restrict communications of staff with Pipes, and no communication with employees outside of normal business hours except at sponsored events or through the use of the company's email or Telegram systems. Exhibit 65, Letter from D. Pipes.

**ANSWER:**

The letter  speaks for itself and any inference or characterization that does not comport with the express meaning is contested.


180.    On March 18, 2019, Pipes messaged Plaintiff voicing concern about her affiliation with Jack Posobiec, a reporter for One America News, stating: "Tell me if I am wrong, but I am under the impression that Jack Posobiec is not someone MEF wants to associate with." Exhibit 66, Message from D. Pipes to Plaintiff.

**ANSWER:**

Any electronic communication  speaks for itself and any inference or characterization that does not comport with the express meaning is contested.  Moreover this is not a material fact and has no relevance to Plaintiff's claims or Defendants' counterclaims.  Defendant, Pipes sending an email to Ms. Barbounis during this time period is an unremarkable occurrence that does not implicate any of the allegations in this case.


181.    Plaintiff responds, I'm friendly with him. He's pro trump. I don't find his tweets too extreme." Id.

**ANSWER:**

Any electronic communication  speaks for itself and any inference or characterization that does not comport with the express meaning is contested.  Moreover this is not a material fact and has

no relevance to Plaintiff's claims or Defendants' counterclaims.  Defendant, Pipes sending an email to Ms. Barbounis during this time period is an unremarkable occurrence that does not implicate any of the allegations in this case.

182.    On March 27, 2019, Fink emailed Plaintiff, McNulty and O'Brien to follow up with them on Roman's return and restrictions.  Exhibit 67, Email from M. Fink.

**ANSWER:**

Any electronic communication  speaks for itself and any inference or characterization that does not comport with the express meaning is contested.

183.    From November 5, 2018 through her resignation from the Forum, Plaintiff complains of only a single specific act of "retaliation" wherein she alleges that Roman lied to Pipes about her performance, but admits that she suffered no discipline as a result. Exhibit 2, Barbounis Dep. Part 2, at p.128-140.

**ANSWER:**

Contested.  In June 2019, months before Ms. Barbounis' employment with MEF ended, she (and three coworkers) filed a detailed Charge of Discrimination with the Equal Employment Opportunity Commission in Philadelphia, Pennsylvania. Exhibit J, K, L, QQ.  Ms. Barbounis' Charge of Discrimination and specifically sexual harassment contained a plethora of new information involving Greg Roman that had never been investigated. Id.  Defendant, Daniel Pipes did nothing.  Pipes ignored the Charge of Discrimination, refused to investigate, and refused to take corrective action.  Deposition Transcript of Daniel Pipes attached and marked Plaintiff's Exhibit "Q" Page 179.   Moreover, Plaintiff, Lisa Barbounis was beginning to

understand that she was no longer welcome at MEF. Exhibit A ¶¶ 177 – 179.   Lisa Barbounis

and Patricia McNulty spoke with Daniel Pipes about serious issues related to Greg Roman's

return and probationary status. Exhibit PP.   Lisa Barbounis was well aware of Patricia

McNulty's repeated attempts to report Greg Roman's retaliation after his return while on

"probationary status."  Id.  Lisa Barbounis was well aware of new allegations of sexually

inappropriate conduct where Greg Roman said that Marnie Meyer had a sexual affair with

Caitriona Brady's father. Exhibit A ¶ 180.  When Greg Roman heard there was a new allegation

involving Caitriona Brady and Marnie Meyer (from Matthew Bennett) had been reported to

Daniel Pipes, Roman and Bennett tried to guess what the new allegation was about… or who the

new allegation was about.  Bennett and Roman guessed that the new allegation involved Gabriel

Bloom, another intern who Greg Roman believed accused him of sexual harassment. Exhibit A ¶

181.  Greg Roman returned as Director of the Forum and immediately set about making

Plaintiff's work life so miserable that she quit. Exhibit A ¶ 176 - 181.   Roman referred to the

victims who reported his sexual harassment as "usurpers." Id.  Roman interfered with Lisa

Barbounis' job assignments.  Id.


184.    In May of 2017, The Forum began working with Stephen Christopher Yaxley-

Lennon (legal name, Paul Harris), a United Kingdom based activist better known as Tommy

Robinson ("Robinson"), to support his free speech rights on Islam and Islamism. Exhibit 1,

Certification of Daniel Pipes, at ¶ 21, 50.

**ANSWER:**

It is uncontested that MEF worked with and supported Tommy Robinson.

185.     In Spring of 2018, Barbounis began working on The Forum's behalf to support the free speech rights of Robinson. Id. at ¶ 51.

**ANSWER:**

It is uncontested that Lisa Barbounis was assigned by Greg Roman to work on the Tommy Robinson rally.

186.     Plaintiff's first and primary point of contact for Robinson was a man named Daniel Thomas. Id. at ¶ 52.

**ANSWER:**

Contested.  Plaintiff, Lisa Barbounis did work with Daniel Thomas during a free Tommy Robinson rally because Tommy Robinson was incarcerated.  Daniel Thomas was only the point of contact for that one rally.  After that first event, Lisa Barbounis recommended that MEF use another individual as the point of contact and never go through Daniel Thomas again.  Lisa Barbounis sent an email on June 22, 2019.  The email informed MEF and Greg Roman that Ms. Barbounis was concerned that Daniel Thomas was not being honest and forthright in his dealings with MEF.  Lisa Barbounis wrote that MEF should never work through Daniel Thomas again, and suggested MEF use a different point of contact for work with Tommy Robinson.  Ms. Barbounis wrote:

> Here is my opinion. I have a bad taste in my mouth from the last event. Danny applied for the grant but hasn't supplied, to my standards, a proper account of the money disbursements and I now have 2 "vendors" asking for money (reality report and the camera people who were directly hired by Kevin, only referred to by us/Raheem because he asked for a name). If the donor is interested in funding another event then I think Raheem should apply for the grant, receive the money and dispense it properly with receipts. I don't seem to trust anyone else and I certainly don't trust their people and there is no organization between groups talking about helping Tommy. If the donor doesn't want to participate, or if he does and we let others handle it, we really need to consider the Congressman's

involvement. That is our reputation on the line and he needs a schedule of
meetings and a decent event. This needs to be done properly. Names of vendors,
addresses, written estimates, etc.

Def. Mot. Exhibit 73.

187.    Thomas was organizing a rally to support Robinson, who had recently been jailed
for contempt of court. Id. at ¶ 53.

**ANSWER:**

It is uncontested that Daniel Thomas helped organize a free Tommy Robinson rally.

188.    At Barbounis' urging, the Forum provided Thomas with a $32,000 grant to fund a
rally to show support for Robinson. Id.; Exhibit 68, Message from Plaintiff to Roman.

**ANSWER:**

Contested.  Defendants are certainly not restrained by honesty.  Exhibit 68, the electronic
communication between Lisa Barbounis and Greg Roman, cannot objectively be described a
"urging."  The email from Ms. Barbounis to Roman states:

> There is another march for Tommy on June 9th at 3:00pm. Its hosted by Danny
> Tommo and there are 2.9k going and 13k interested. Should we try and make
> contact with the organizer, bus people in, and promote the event with FB ads? We
> could also contact Vickie (see below) and offer to organize busses or just send
> them money to do it. This was on the FB event: "As discussed yesterday, people
> need to know who is going from different cities and big towns. And how they can
> get to London for the march on the 9th of June. Vickie Selway will try and
> help as many as possible, let her know where you are coming from she will do her
> best to help with times, meet points, bus & train routes to London on the day. add
> yourself to the group and lets get everyone there and home for the 9th of June..."
>
> Def. Mot. Exhibit 68.

The communication from Lisa Barbounis to Roman confirms that Ms. Barbounis is simply
providing Roman with information for Roman to make a decision.  Ms. Barbounis did not know

Daniel Thomas at this time.  Her email refers to Daniel Thomas as "the organizer."  (Def. Mot.

Exhibit 68).  At no time did Lisa Barbounis influence MEF grant decisions.  This was above her

paygrade.  At the time, Ms. Barbounis' position was personal assistant to Greg Roman.  The

email from Ms. Barbounis confirms that she was tasked with locating information so that Greg

Roman could make his decision.


189.    Barbounis was tasked with managing the Forum's relationship with Robinson.

Exhibit 1, Certification of Daniel Pipes, at ¶ 54.

**ANSWER:**

Contested.  Lisa Barbounis was not tasked with "managing the Forum's relationship with

Robinson."  Lisa Barbounis was asked to look up information and then to act as a go-between for

Greg Roman and Daniel Thomas.  Exhibit A ¶ 182.


190.    The Forum's grant to support the Robinson event was memorialized in a

contractual agreement. Exhibit 69, Contract with D. Thomas.

**ANSWER:**

It is uncontested that there was a contractual agreement between MEF and Daniel Thomas in

connection with the grant Daniel Thomas received.  Plaintiff objects to Defendants refusal to

produce relevant, discoverable information, and then rely on the same in a motion for summary

judgment.  Defendants violation of the Federal Rules of Civil Procedure has caused Plaintiff to

suffer significant prejudice.  Defendants intentionally withheld these documents from Plaintiff to

stifle Plaintiff's investigation into Defendants' counterclaims.  The agreement (Exhibit 69)

confirms, however, that Ms. Barbounis was not involved in the grant from MEF to Daniel

Thomas.  MEF's exhibits confirm that Lisa Barbounis did not email it.  MEF cannot produce a single exhibit where Lisa Barbounis even had access to the grant contract.

191.     The contract specified the methods and means by which the Forum's grant monies would be used. Id.

**ANSWER:**

The contract is a writing that speaks for itself and any characterization or inference drawn therefrom that does not comport with its plain meaning is contested.

192.     The contract also specified that if any of the grant monies were misused, the Forum would be entitled to a return of all of the monies provided. Id.

**ANSWER:**

The contract is a writing that speaks for itself and any characterization or inference drawn therefrom that does not comport with its plain meaning is contested.

193.     The contract also specified that if any of the grant monies were spent on things not contemplated by the contract, the Forum would be entitled to a return of all the monies provided. Id.

**ANSWER:**

The contract is a writing that speaks for itself and any characterization or inference drawn therefrom that does not comport with its plain meaning is contested.

194.     Plaintiff was familiar with this contract. Exhibit 2, Barbounis Dep. Part 1 at

p.268-69.

**ANSWER:**

Contested.  Defendants' Exhibit begins on Page 268, where Ms. Barbounis is mid-response stating that she *is not* familiar with the contract.  Ms. Barbounis testified, "… think I might have e-mailed it to Danny or something like that, but I never even read it."  Defendants' Exhibits attached hereto confirms that Lisa Barbounis *did not in fact email the contract to Daniel Thomas*. Marnie Meyer, who was the Director of Human Resources and MEF's Chief Financial Officer sent the contract to Daniel Thomas. Def. Mot. Exhibit 72 and 73.  Lisa Barbounis has never read the contract.  Lisa Barbounis is not familiar with MEF contracts or grants.  This was never part of  her job duties. Exhibit A ¶¶ 182 – 183.


195.    Plaintiff delivered the contract to Thomas and received his countersigned copy on behalf of The Forum.  Exhibit 69, Contract with D. Thomas at p.5.

**ANSWER:**

Defendants are again attempting to mislead the Court by suggesting that Ms. Barbounis was involved delivering the contract to Daniel Thomas.  Nothing could be further from true.  Exhibit 69 is a copy of the contract and Exhibit 74 is Marnie Meyer emailing it to Daniel Thomas. Defendants' own exhibits confirms that Marnie Meyer emailed the contract to Daniel Thomas. Ms. Barbounis testified,

> "… think I might have e-mailed it to Danny or something like that, but I never even read it."

> Q. Okay. Do you know if it detailed what the monies were to be used for by Thomas?

> A. I don't know if the grant agreement said that. However, when we were in communication with Danny, I had asked him via e-mail like, you know, "Give me

a breakdown of what everything will cost and get me, you know, like the information", and he gave me all of that, it had a number on it, it went to Gregg, Gregg approved it, end of story.

Def. Mot, Exhibit 2.

Defendants' Exhibits confirms that Lisa Barbounis did not in fact email the contract to Daniel Thomas. Def. Mot Exhibit 74. Marnie Meyer, who was the Director of Human Resources and MEF's Chief Financial Officer sent the contract to Daniel Thomas. See Def. Mot. Exhibit 74 – Email between Daniel Thomas and Marnie Meyer ("I am in receipt of your signed contract. I am attempting to process the wire but the platform is asking for a "US Domestic Sort Code" do you have that number available? I'm afraid to miss any information that might delay the wire"). Lisa Barbounis was not even CCed on the email thread.

196.     The Forum conveyed $32,000 to Thomas to support the Robinson rally. Exhibit 1, Certification of Daniel Pipes, at ¶ 53.

**ANSWER:**

Uncontested.

197.     Plaintiff sought and received permission from the Forum to attend the rally and to supervise the rally and the use of the Forum's funds. Exhibit 1, Certification of Daniel Pipes, at ¶ 55.

**ANSWER:**

Contested. It is contested that Plaintiff, Lisa Barbounis sought permission to "attend the rally to supervise the use of Forum funds." This statement is absurd. Lisa Barbounis had absolutely no supervisor role in connection with either the rally or the use of Forum funds. Exhibit A ¶¶ 184 –

185.   She certainly was not sent to report on the use of MEF funds. Id.  Defendants can produce

nothing to support this claim other than the self-serving declaration of Daniel Pipes. Id.  There is

not a single email or text message where Lisa Barbounis and any other individual spoke about

Ms. Barbounis overseeing the rally or use of Forum funds. Lisa Barbounis used her own time

and funds to finance the trip. Id.   MEF contributed only $300.00 for Ms. Barbounis' flight

because Ms. Barbounis said she would attend the rally while there. Id.  Ms. Barbounis paid for

everything else and used her personal time. Id.


198.    The invoice for the company hired to put on the rally totaled £15,198.00. Exhibit

70, Invoices.

**<u>ANSWER:</u>**

Plaintiff objects to Defendants refusal to produce relevant, discoverable information, and then

rely on the same in a motion for summary judgment.  Defendants violation of the Federal Rules

of Civil Procedure has caused Plaintiff to suffer significant prejudice.  Defendants intentionally

withheld these documents from Plaintiff to stifle Plaintiff's investigation into Defendants'

counterclaims.  Defendants refused to produce the invoices in Exhibit 70 which would have

provided Plaintiff with the opportunity to investigate the information during depositions and in

discovery.  Defendants cannot be permitted to profit from the clear violation of the Federal

Rules. Moreover, Defendants only have been in possession of this invoice since the rally.

Defendants know how to read an invoice.  Defendants made the informed decision not to

investigate further the use of MEF funds in connection with the rally.  Moreover this invoice was

sent directly from Daniel Thomas to Greg Roman. <u>Def. Mot. Exhibit 74</u>.  Between my email

reporting Daniel Thomas's dishonesty (Def. Mot Exhibit 73) and the invoice sent to Greg Roman

by Daniel Thomas (Def. Mot Exhibit 74) Defendants had everything they needed to determine

whether they wanted to investigation Daniel Thomas.   They did not.

199.    On or about June 8, 2018, Plaintiff traveled to the United Kingdom and attended

the Robinson rally on behalf of The Forum. Exhibit 1, Certification of Daniel Pipes, at ¶ 55.

**ANSWER:**

Contested.  Plaintiff revealed to England on her personal time and expense.  Plaintiff was not

paid for the trip to England. Exhibit A ¶¶ 184 – 185.  Plaintiff promised to attend a rally and

MEF agreed to cover $300.00 of Plaintiff's airfare. Id.  No other costs were covered.  MEF did

not pay for Plaintiff's lodgings. Id.   MEF did not pay for Plaintiff's food or transportation.

Accordingly, Defendants are again refusing to adhere to reality in its fact statement. Id.

200.    McNulty accompanied Plaintiff on this trip. Exhibit 71, Messages from Plaintiff

re: London; Exhibit 72, Exhibit 72, Photo of Plaintiff and P. McNulty in London.

**ANSWER:**

Uncontested.

201.    During her trip to the United Kingdom, Plaintiff met Thomas in person for the

first time. Exhibit 2, Barbounis Dep. Part 1 at p.269.

**ANSWER:**

Uncontested.  They met briefly and said "hello."  Plaintiff spent no time with Daniel Thomas

during the trip to England. Exhibit A ¶ 186.

202.     While at the rally, Plaintiff recognized that many of the items that were outlined in the Forum's contract with Robinson and which The Forum's grant was to purchase were not in fact purchased or used at the rally. Exhibit 73, Email from Plaintiff to Roman.

**ANSWER:**

It is uncontested that Plaintiff, Lisa Barbounis suspected that Daniel Thomas did not account for all MEF money granted in connection with the rally. <u>Def. Mot Exhibit 73</u>.   Lisa Barbounis immediately communicated these concerns to Greg Roman and The Middle East Forum.  <u>Id</u>. Lisa Barbounis immediately sent an email to Greg Roman and The Middle East Forum stating:

> Here is my opinion. I have a bad taste in my mouth from the last event. Danny applied for the grant but hasn't supplied, to my standards, a proper account of the money disbursements and I now have 2 "vendors" asking for money (reality report and the camera people who were directly hired by Kevin, only referred to by us/Raheem because he asked for a name).  If the donor is interested in funding another event then I think Raheem should apply for the grant, receive the money and dispense it properly with receipts. I don't seem to trust anyone else and I certainly don't trust their people and there is no organization between groups talking about helping Tommy. If the donor doesn't want to participate, or if he does and we let others handle it, we really need to consider the Congressman's involvement. That is our reputation on the line and he needs a schedule of meetings and a decent event. This needs to be done properly. Names of vendors, addresses, written estimates, etc.
>
> <u>Def. Mot Exhibit 73</u>.

Plaintiff's email speaks for itself and confirms that Lisa Barbounis's priority was the reputation of The Middle East Forum.  Lisa Barbounis lobbied for money to be granted through a different individual in the future, Raheem Kassam. <u>Id</u>.  Defendants' allegations that Plaintiff, Lisa Barbounis is somehow liable for any of the money granted to Daniel Thomas fails as a matter of law, based on Defendants' own admissions.  Moreover, this is yet another documents without a Bates Stamp because Defendants refused its production during discovery.  Importantly the document is exculpatory in nature.  It begs the question, "what other evidence exists that would

advance Plaintiff's claims?"  The number of documents that Defendants intentionally withheld, responsive to Plaintiff's discovery requests is growing with every paragraph.  Defendants cannot be permitted to violate the Federal Rules and blitz Plaintiff with documents that were withheld to prejudice and deny adequate discovery.

203.     On June 11, 2018, Thomas emailed The Forum and claimed that the rally was more expensive that it actually was, allowing him to pocket the difference. Exhibit 74, Invoice from D. Thomas.

**ANSWER:**

The electronic communication sent by Daniel Thomas speaks for itself.  Defendants write that Daniel "Thomas emailed The Forum…"  Defendants refuse to present accurate facts.  Daniel Thomas emailed Greg Roman directly regarding the expenses and the rally.  Def. Mot Exhibit 74.  Accordingly, Greg Roman has been directly involved in the grant to Daniel Thomas and was in possession of information indicating Daniel Thomas failure to account for MEF funds. Exhibits 73 and 74.   This information came from Lisa Barbounis.  Defendant, Greg Roman was in a position to audit Daniel Thomas' numbers and chose not to.  Lisa Barbounis was certainly transparent in her opinion of Daniel Thomas, by lobbying for MEF to never grant money to Tommy Robinson through Daniel Thomas again.  Exhibits 73 and 74.

204.     Plaintiff received a copy of Thomas' claimed expenses. Id.

**ANSWER:**

Plaintiff, Lisa Barbounis received a copy of the expenses because Greg Roman forwarded the email from Daniel Thomas to Lisa Barbounis.  The expenses were first sent by Daniel Thomas

directly to Greg Roman.  Lisa Barbounis was not CCed on the email.   Defendant, Roman

offered no information along with the forwarded expenses.  He did not instruct Ms. Barbounis in

any way.  Greg Roman forwarded the email to Lisa Barbounis on June 20, 2019.  Two days later,

Lisa Barbounis responded by informing Greg Roman that she believed Daniel Thomas failed to

properly account for all MEF funds.


205.    On June 19, 2018, Plaintiff expressed frustration with Roman and her efforts with

Robinson in London, writing: "Gregg gave London to the guy he is firing as a parting gift I'm so

mad." Exhibit 75, Message from Plaintiff to V. Barbounis.

**ANSWER:**

Plaintiff objects to this privileged communication between husband and wife.  The

communication, however, speaks for itself and any inference or mischaracterization that does not

comport with its plain meaning is contested.  Plaintiff's email to her husband, in confident is

privileged.  Without waiving privilege, Plaintiff was simply stating a fact.  Defendants were

planning to terminate the employment of Cliff Smith.  Accordingly, Defendants stated that they

were sending Cliff Smith to England as a "parting gift."


206.    On August 3, 2018, Plaintiff wrote to McNulty complaining about the lack of

credit she was being given for the Forum's work with Robinson, stating:

> I'm super pissed about the Tommy shit. DP is acting like there was a whole team of
> MEF people working on it. Gregg says let's fundraise off it and tells me to put
> a proposal together. Everyone I talked to loves it including Marc. Gregg says we
> are getting bad press but has always said bad press is good. We have more press
> than ever and he down plays it and now him and DP are going to DC to talk to
> Bannon about Tommy and the movement and I'm not allowed to go.
>
> Raheem knows I did everything and said he was impressed on his own without

prompting but I'm watching him and getting jealous. I know I'm a child.

I get that I shouldn't look for credit but I want it. I know it's not cool but I do and it's pissing me off.  I kinda said it to Gregg and he said "if you are doing it for credit you are in the wrong business" as if he doesn't want all the attention all the time

Exhibit 20 at p.415.

**ANSWER:**

The electronic communication speaks for itself and any characterization of the message not in accordance with the same is contested.   This is not a material fact and has no relevance to the instant motion and applicable standard of review.  Moreover, Lisa Barbounis is permitted to vent about work with a coworker.  The information presented has no inherent meaning or relationship to the instant motion.

207.    That same day, Plaintiff sent a memorandum to Roman advocating for an increase in the Forum's financial support for Robinson. Exhibit 76, Memo from Plaintiff to Roman.

**ANSWER:**

Contested.  The memo is not focused on increasing the Forum's financial support for Robinson. There is not a single sentence in the memo where Lisa Barbounis recommended giving money to anyone.  The document presents ideas for MEF to successfully capitalize from its work on Tommy Robinson related issues.  The document does not advocate in any way for additional financial support to Robinson.  The document discusses ways that MEF can increase its own financial support and increase donations.  This is also not a material fact.  It is also yet another document without Bates label because it was withheld from Plaintiff during discovery.  Plaintiff objects to its use in any way.

208.     After Roman shared Plaintiff's memorandum with Pipes, Pipes urged caution, stating that he was "leery of associating too much with Tommy Robinson; he is trouble with a capital T.  MEF is better off treating him as a Legal Project beneficiary, i.e., keeping a distance." Exhibit 77, Message from D. Pipes to Plaintiff.

**ANSWER:**

The communication from Pipes to Ms. Barbounis is a writing that speaks for itself.  Any characterization that does not comport with its plain meaning is contested.  Moreover, this is not a material fact and has no relevance to Plaintiff's claims of sexual harassment or Defendants counterclaims.

209.     On August 8, 2018, Plaintiff expressed displeasure with her co-workers on Facebook, stating that her and McNulty were "judging them." Exhbit 78, Facebook Post by Plaintiff.

**ANSWER:**

Contested.  Plaintiff did not write this MIM.  The MIM also does not mention in anyway Patricia McNulty.  Ms. Barbounis posted what she evidently through was a funny MIM on her Facebook page.  Defendants' attempt to make Ms. Barbounis the author of the MIM is yet another attempt to mislead the Court.  This is not evidence.

210.     On October 9, 2018, Plaintiff sent Roman a breakdown of the costs for an October 23, 2018 event in London to support Robinson, but expressed no hesitation in dealing with Thomas despite knowing about the prior issues in funding for the previous rally. Exhibit 79,

Message from Plaintiff to Roman.

**ANSWER:**

Contested.  The Middle East Forum and Greg Roman required Lisa Barbounis to attend a Tommy Robinson event in October 2018. Exhibit A ¶ 187.  Tommy Robinson held a rally during the event.  Lisa Barbounis has no knowledge whether The Middle East Forum contributed even a penny to the October 2018 event. Id.   Greg Roman and MEF required Ms. Barbounis to attend the event and paid for Ms. Barbounis' trip to England in October 2018. Id.  Def. Mot. Exhibit 79 has no relevance to this case.  It appears to be an email of costs that a vender first sent to Daniel Thomas, that Daniel Thomas forwarded to Tommy Robinson, that Tommy Robinson forwarded to Lisa Barbounis, and Lisa Barbounis forwarded to her supervisor, Defendant, Greg Roman.  Again, Lisa is not aware of any MEF support with regard to this email. Exhibit A 186 – 190.  Exhibit 79 is yet another document without Bates label because it was withheld from Plaintiff during discovery.  Plaintiff objects to its use in any way.


211.    On October 16, 2018, O'Brien wrote to Plaintiff, stating: "Tell Tommy we are MEF not ATM...I'm not paying anything that isn't clearly defined. I know you need to keep a good working relationship with him, but that's BS." Exhibit 80, Message from O'Brien to Plaintiff.

**ANSWER:**

Marnie O'Brien's email is a writing that speaks for itself.  Any inference or characterization that does not comport with the plain meaning of the documents is contested.  Marnie Meyer's frustrated emails regarding costs of a Tommy Robinson event have no relevance to the instant matter.  Lisa Barbounis is not responsible or liable for the behavior or emails of Tommy

Robinson.  Lisa Barbounis was never involved money leaving The Middle East Forum.  Marnie Meyer and Greg Roman oversaw issues related to MEF support of individuals and causes.  There is no evidence to suggest that Lisa Barbounis was involved in finances in any way.

212.    In late October of 2018, Plaintiff traveled to the United Kingdom to attend a dinner and demonstration to support Robinson, bringing her mother with her, without informing the Forum of her presence. Exhibit 2, Barbounis Dep. Part 1 at p.286-87.

**ANSWER:**

This is not a material fact.  Lisa Barbounis traveled to England in October 2018 on business.  Ms. Barbounis's mother does not need permission from MEF to travel to Europe with her daughter.  Defendants' continue to present arguments where they attempt to transform the innocuous to the improper.  It is also contested that Lisa Barbounis tried in any way to hide her mother's presence.

213.    While there, Plaintiff began an adulterous sexual affair with Thomas. Id. at p.287-94.

**ANSWER:**

Contested.  Defendants crossed the line a long way back, however, Defendants failure to focus on relevant issues should be noted.  Maybe Defendants are hoping the Court does not refer to the actual Exhibit - the deposition transcript.  Maybe Defendants are simply trying to disparage Lisa Barbounis.  Defendants' motives include unlawful retaliation.  Lisa Barbounis did not testify that she began an adulterous sexual affair with Daniel Thomas during the October 2018 trip to Europe.  Ms. Barbounis testified that she met with Tommy Robinson and his entourage and saw

Daniel Thomas during the trip.  Lisa Barbounis testified that Daniel Thomas kissed her during the trip.  There was no sex.  There was no adulterous sexual affair.  Plaintiff's relationship with Daniel Thomas is not a material fact.


214.    Thomas states that he and Barbounis would use cocaine "every time I saw her," and "every time we were out, she would ask me to get it and we would do cocaine all night." Exhibit 81, Transcript of Call with D. Thomas.

**ANSWER:**

Contested.  Defendants cannot use an unauthenticated, unverified, transcript from a supposed telephone call between Defendant, Greg Roman and Daniel Thomas as evidence.  This is hearsay without exception.  Moreover, the unsworn statements of Daniel Thomas, through Greg Roman is a document that has no inherent credibility.  Daniel Thomas stated that Greg Roman offered to pay something of value for this information.  Daniel Thomas also voiced his true motives for providing the purported statement.  Daniel Thomas stated, "I am taking her to fucking town, that cunt.  She fucking ruined my life she did. …  Greg Contacted me.  He gave me a little wink.  He said when this is all over we will thank you."  Daniel Thomas immediately recanted the false statement and informed MEF that he would not participate in the case.  Still, Defendants have the audacity to present as evidence in a motion for summary judgment the unverified, unauthenticated, unsworn statement of Daniel Thomas.  Plaintiff objects.


215.    Thomas estimates that he and Barbounis would use "five, six hundred dollars of cocaine every evening." Id.

**ANSWER:**

Contested. Defendants cannot use an unauthenticated, unverified, transcript from a supposed telephone call between Defendant, Greg Roman and Daniel Thomas as evidence. This is hearsay without exception. Moreover, the unsworn statements of Daniel Thomas, through Greg Roman is a document that has no inherent credibility. Daniel Thomas stated that Greg Roman offered to pay something of value for this information. Daniel Thomas also voiced his true motives for providing the purported statement. Daniel Thomas stated, "I am taking her to fucking town, that cunt. She fucking ruined my life she did. … Greg Contacted me. He gave me a little wink. He said when this is all over we will thank you." Daniel Thomas immediately recanted the false statement and informed MEF that he would not participate in the case. Still, Defendants have the audacity to present as evidence in a motion for summary judgment the unverified, unauthenticated, unsworn statement of Daniel Thomas. Plaintiff objects.

216.    Barbounis also sent Thomas money and other resources at various times, including approximately $1,000 in cash and a credit card that Thomas used to buy Christmas presents for his children. Id.

**ANSWER:**

Contested. Defendants cannot use an unauthenticated, unverified, transcript from a supposed telephone call between Defendant, Greg Roman and Daniel Thomas as evidence. This is hearsay without exception. Moreover, the unsworn statements of Daniel Thomas, through Greg Roman is a document that has no inherent credibility. Daniel Thomas stated that Greg Roman offered to pay something of value for this information. Daniel Thomas also voiced his true motives for providing the purported statement. Daniel Thomas stated, "I am taking her to fucking town, that cunt. She fucking ruined my life she did. … Greg Contacted me. He gave me a little wink. He

said when this is all over we will thank you."  Daniel Thomas immediately recanted the false

statement and informed MEF that he would not participate in the case.  Still, Defendants have the

audacity to present as evidence in a motion for summary judgment the unverified,

unauthenticated, unsworn statement of Daniel Thomas.  Plaintiff objects.

217.    Plaintiff has a six-figure tax lien on her home. Exhibit 2, Part 1 at p.438-39.

**ANSWER:**

Contested.  This is not a material fact.  Plaintiff lives in Washington D.C., and there is no tax lien

on her home.  In fact, Plaintiff has never owned a home.  Plaintiff has never had problems with

the IRS in her life.  Plaintiff's husband has a tax lien, which effected Plaintiff because of her

married status.  Defendants have repeatedly used this information in an attempt to embarrass and

harassment Plaintiff, Lisa Barbounis.  It is not relevant to this case.  Today, Lisa Barbounis files

her taxes, "married but separate" so that she can no longer be held responsible for her husband's

IRS debt.

218.    Thomas states that, during this time, Plaintiff told him that she was unhappy with

her family life, her husband, and her job, and that she wanted to leave the United States and

move to join him in the United Kingdom. Exhibit 81, Transcript of Call with D. Thomas.

**ANSWER:**

Contested.  Defendants cannot use an unauthenticated, unverified, transcript from a supposed

telephone call between Defendant, Greg Roman and Daniel Thomas as evidence.  This is hearsay

without exception.  Moreover, the unsworn statements of Daniel Thomas, through Greg Roman

is a document that has no inherent credibility.   Daniel Thomas stated that Greg Roman offered

to pay something of value for this information.  Daniel Thomas also voiced his true motives for providing the purported statement.  Daniel Thomas stated, "I am taking her to fucking town, that cunt.  She fucking ruined my life she did. …  Greg Contacted me.  He gave me a little wink.  He said when this is all over we will thank you."  Daniel Thomas immediately recanted the false statement and informed MEF that he would not participate in the case.  Still, Defendants have the audacity to present as evidence in a motion for summary judgment the unverified, unauthenticated, unsworn statement of Daniel Thomas.  Plaintiff objects.


219.    Thomas also states that Plaintiff confided in him that to fund her anticipated move to the United Kingdom, she had concocted a plan to enrich herself illegally at the expense of the Middle East Forum by asserting that Roman had inappropriately pressured her to engage in sexual activity with him, and that she would make "loads" from this scheme. Exhibit 81, Transcript of Call with D. Thomas.

**ANSWER:**

Contested.  Defendants cannot use an unauthenticated, unverified, transcript from a supposed telephone call between Defendant, Greg Roman and Daniel Thomas as evidence.  This is hearsay without exception.  Moreover, the unsworn statements of Daniel Thomas, through Greg Roman is a document that has no inherent credibility.  Daniel Thomas stated that Greg Roman offered to pay something of value for this information.  Daniel Thomas also voiced his true motives for providing the purported statement.  Daniel Thomas stated, "I am taking her to fucking town, that cunt.  She fucking ruined my life she did. …  Greg Contacted me.  He gave me a little wink.  He said when this is all over we will thank you."  Daniel Thomas immediately recanted the false statement and informed MEF that he would not participate in the case.  Still, Defendants have the

audacity to present as evidence in a motion for summary judgment the unverified,

unauthenticated, unsworn statement of Daniel Thomas.  Plaintiff objects.


220.    Thomas states that "wanted to leave her husband" and "come to the United

Kingdom" to buy a home and continue her relationship with Thomas. Exhibit 81, Transcript of

Call with D. Thomas.

**<u>ANSWER:</u>**

Contested.  Defendants cannot use an unauthenticated, unverified, transcript from a supposed

telephone call between Defendant, Greg Roman and Daniel Thomas as evidence.  This is hearsay

without exception.  Moreover, the unsworn statements of Daniel Thomas, through Greg Roman

is a document that has no inherent credibility.  Daniel Thomas stated that Greg Roman offered to

pay something of value for this information.  Daniel Thomas also voiced his true motives for

providing the purported statement.  Daniel Thomas stated, "I am taking her to fucking town, that

cunt.  She fucking ruined my life she did. …  Greg Contacted me.  He gave me a little wink.  He

said when this is all over we will thank you."  Daniel Thomas immediately recanted the false

statement and informed MEF that he would not participate in the case.  Still, Defendants have the

audacity to present as evidence in a motion for summary judgment the unverified,

unauthenticated, unsworn statement of Daniel Thomas.  Plaintiff objects.


221.    Thomas reports that Plaintiff told him, "I'll say, 'Gregg's done this, Gregg's done

that. And then I'm going to take it to court and get, and they'll have to pay out. They'll pay me

loads. They'll pay me loads, and then I'll have enough money to do whatever the hell we want to

do.'" Exhibit 81, Transcript of Call with D. Thomas.

**ANSWER:**

Contested.  Defendants cannot use an unauthenticated, unverified, transcript from a supposed telephone call between Defendant, Greg Roman and Daniel Thomas as evidence.  This is hearsay without exception.  Moreover, the unsworn statements of Daniel Thomas, through Greg Roman is a document that has no inherent credibility.  Daniel Thomas stated that Greg Roman offered to pay something of value for this information.  Daniel Thomas also voiced his true motives for providing the purported statement.  Daniel Thomas stated, "I am taking her to fucking town, that cunt.  She fucking ruined my life she did. … Greg Contacted me.  He gave me a little wink.  He said when this is all over we will thank you."  Daniel Thomas immediately recanted the false statement and informed MEF that he would not participate in the case.  Still, Defendants have the audacity to present as evidence in a motion for summary judgment the unverified, unauthenticated, unsworn statement of Daniel Thomas.  Plaintiff objects.


222.     Thomas told Roman that Barbounis "had it in for you, Gregg. She had it in for you. From, from the time we ever spoke about you, she wanted your job. And then when she realized she couldn't get the job or something, then she wanted to go down the route of destroying you, destroying you and making 'loads' of money from it. I had many conversations about that with her, um, over that, so that w- that's definitely something that was, uh, was definitely on her, on the plate from very early on from me speaking to her." Exhibit 81, Transcript of Call with D. Thomas.

**ANSWER:**

Contested.  Defendants cannot use an unauthenticated, unverified, transcript from a supposed telephone call between Defendant, Greg Roman and Daniel Thomas as evidence.  This is hearsay

without exception.  Moreover, the unsworn statements of Daniel Thomas, through Greg Roman

is a document that has no inherent credibility.  Daniel Thomas stated that Greg Roman offered to

pay something of value for this information.  Daniel Thomas also voiced his true motives for

providing the purported statement.  Daniel Thomas stated, "I am taking her to fucking town, that

cunt.  She fucking ruined my life she did. …  Greg Contacted me.  He gave me a little wink.  He

said when this is all over we will thank you."  Daniel Thomas immediately recanted the false

statement and informed MEF that he would not participate in the case.  Still, Defendants have the

audacity to present as evidence in a motion for summary judgment the unverified,

unauthenticated, unsworn statement of Daniel Thomas.  Plaintiff objects.


223.    During this time, due to her many and protracted trips to the United Kingdom and

her relationship with Thomas, Barbounis' work performance at MEF began to suffer and her

mistakes and errors increased. Exhibit 1 at 62.

**ANSWER:**

Contested.  Plaintiff did not take "many protracted trips to the United Kingdom.  Between March

2018 and December 2019, Ms. Barbounis visited United Kingdom a total of six (6) times.

Plaintiff, Lisa Barbounis' work did not suffer during this time period.  In fact, during the same

time period, from March 2019 through July 2019, Ms. Barbounis received a bonus every month

for a "job well done."   See Paragraph 168, above, where Defendants conceded the job well done

bonus.


224.    Marnie O'Brien, the Forum's controller and director of human resources, was

documenting these performance issues. Exhibit 82, M. Meyer Dep. at p.93.

**ANSWER:**

Contested.  The testimony of Marnie Meyer does not comport with the information presented in Paragraphs 223 and 224.   Upon ending her employment with MEF, Marnie Meyer confirmed that Lisa Barbounis had nothing derogatory about her employment in Ms. Barbounis' employment file.

225.    This led to Plaintiff's confrontation with O'Brien on October 30, 2018, wherein Plaintiff complained that O'Brien was "targeting" her. Exhibit 83, Message from Plaintiff.

**ANSWER:**

Contested.  By October 2018, Lisa Barbounis had been to London only twice.  Both trips were related in some manner to Plaintiff's work with MEF.  One of the trips was paid for by MEF and was a requirement of Lisa Barbounis' employment. Exhibit A ¶¶ 185 – 190.  The discord between Ms. Barbounis and Marnie Meyer are attributed in no way to Lisa Barbounis traveling to the United Kingdom twice. Exhibit N.   Both Marnie Meyer and Lisa Barbounis attribute the discord  to Defendant, Greg Roman. Id.   Greg Roman required Marnie Meyer to monitor Lisa Barbounis. Moreover, the unsworn statements of Daniel Thomas, through Greg Roman is a document that has no inherent credibility.  Id.  Greg Roman was recommending that Marnie Meyer write up Lisa Barbounis and vice versa. Id.  Greg Roman was sabotaging work. Id.  Greg Roman was lying to Marnie Meyer about Lisa Barbounis. Id.   When Marnie Meyer and Lisa Barbounis spoke openly in October 2018, they realized the hostility that Greg Roman was causing.  Within a day, Marnie Meyer handwrote the letter to Daniel Pipes that led to Greg Roman being temporarily ejected from the Philadelphia offices. Exhibit X.

226.   On November 21, 2018, Pipes wrote to Plaintiff: "I am not happy about Tommy's Proud Boys connection." Exhibit 84, Message from D. Pipes.

**ANSWER:**

Daniel Pipes' electronic communications are writings that speak for themselves.  Moreover, this is not a material fact..  Lisa Barbounis has had no contact with the Proud Boys in her lifetime. Tommy Robinson's connection with the Proud Boys is information that could not have less relevance to this case.

227.   Plaintiff responded: "I just looked into them myself the other day. To be honest I think they [the Proud Boys] are getting a bit of a bad wrap [sic]. Some of it deserves some of it not there [sic] certainly not affiliated with white nationalists." Id.

**ANSWER:**

Daniel Pipes' electronic communications and Ms. Barbounis's response are writings that speak for themselves.  Moreover, this is not a material fact.  Lisa Barbounis has had no contact with the Proud Boys, or any member of.  Daniel Pipes' displeasure with Tommy Robinson's connection to the Proud Boys has nothing to do with Plaintiff's claims or Defendants' counterclaims.

228.   On November 23, 2018, Russel Thomas, father of Daniel Thomas, wrote to Plaintiff, stating: "Daniel has a wife and three children. He is dedicating himself to the developing [Tommy Robinson] movement but at the financial detriment of his personal life. I know you have recently financially help[ed] him which is much appreciated, however, Daniel needs, or more importantly his family needs some kind of financial stability. Would it be possible for you to arrange some form of 'regular' financial assistance directly to Daniel or

perhaps his wife?" Exhibit 85, Email from R. Thomas to Plaintiff.

**ANSWER:**

Daniel Thomas's father's electronic communications are writings that speak for themselves.
Moreover, this is not a material fact.  Plaintiff, Lisa Barbounis did not help with any "regular
financial support of Daniel Thomas.  Lisa Barbounis informed Daniel Thomas's father that she
could not help. Exhibit A ¶ 191.  Lisa Barbounis also notified MEF and recommended, again,
that no money be sent to or through Daniel Thomas.  Also, The Middle East Forum is clearly in
possession of Lisa Barbounis' response to Russel Thomas' email,  which is exculpatory in
nature.  See Def. Mot. Exhibit 86.

229.     Plaintiff responded, noting that the Forum's support of Robinson's free speech
campaign was necessarily limited and could not be expanded, but referenced a documentary
project that she was helping Thomas and Robinson plan, and with which she would assist and
submit to the Forum. Exhibit 86, Email from Plaintiff to R. Thomas.

**ANSWER:**

Lisa Barbounis' electronic communications are writings that speak for themselves.  Moreover,
this is not a material fact.  Plaintiff, Lisa Barbounis did not help with any "regular financial
support of Daniel Thomas.  Lisa Barbounis informed Daniel Thomas's father that she could not
help.  Lisa Barbounis had already notified MEF that she was concerned about Daniel Thomas's
failure to accurately account for the last grant MEF provided to Thomas.  Moreover, Daniel
Thomas never submitted another application for a grant to MEF.  Lisa Barbounis never helped
Daniel Thomas received another dime of MEF money.

230.     On December 7, 2018, Plaintiff appeared in an article in The Guardian newspaper with Robinson and Thomas planning a political event in the United Kingdom. Exhibit 87, Guardian Article.

**ANSWER:**

Uncontested.  This is not a material fact.  During this time period, Lisa Barbounis had volunteered on her private time to assist Tommy Robinson with his campaign for parliament. Defendant, Daniel Pipes was aware of Lisa Barbounis' interest in the Tommy Robinson campaign and informed Lisa Barbounis that he was reluctant to get involved in her personal life, but would appreciate that she avoid appearing in any future articles.  Plaintiff complied.


231.     Pipes wrote to Plaintiff, stating: "In this business, there really is no personal capacity. If you raise orchids, sure. But not topics related to MEF's." Exhibit 88, Messages between Plaintiff and D. Pipes.

**ANSWER:**

Daniel Pipes' electronic communications and Ms. Barbounis's response are writings that speak for themselves.  Moreover, this is not a material fact.


232.     Plaintiff responded to Pipes, ""I'm out to dinner In London. I should be done shortly."  Id.

**ANSWER:**

Lisa Barbounis' electronic communications are writings that speak for themselves.  Moreover, this is not a material fact..

233.     Pipes replied, "London. Wow...You should put your travels in the calendar." Id.

**ANSWER:**

Daniel Pipes' electronic communications and Ms. Barbounis's response are writings that speak

for themselves.  Moreover, this is not a material fact.  Also, Plaintiff, Lisa Barbounis did place

her trip on the MEF calendar.

234.     On December 3, 2018, Plaintiff wrote to Robinson asking him to review the

proposal she wrote on his behalf and to send it to Pipes. Exhibit 89, Message from Plaintiff to T.

Robinson.

**ANSWER:**

Ms. Barbounis's electronic communications are writings that speak for themselves and any

inference or characterization that does not comport with its plain meaning is contested.

Moreover, this is not a material fact.  It is also a false statement.  Lisa Barbounis did not author

the proposal.  Tommy Robinson asked Ms. Barbounis to look at it before he sent it to Daniel

Pipes.  Daniel Pipes decided not to fund the proposal.  Exhibit A ¶ 192.

235.     On December 4 2018, Plaintiff tried to convince Pipes to fund the Robinson

proposal that Plaintiff herself wrote. Exhibit 90, Message from Plaintiff to Pipes.

**ANSWER:**

Ms. Barbounis's electronic communications are writings that speak for themselves and any

inference or characterization that does not comport with its plain meaning is contested.

Moreover, this is not a material fact.  This statement is contested as Plaintiff's email to Pipes was

part of her job.  There is nothing improper about Lisa Barbounis' communications with Daniel

Pipes on December 4, 2018.  Lisa Barbounis wrote:

> To be fair, I know a lot about Tommy's plans for this project and am slightly biased. He has been really excited about it. Being here and traveling all over England interviewing these families with Tommy has been eye opening. The public isn't aware of the true extent of the problem and are completely unaware of how embedded it is with Islam. While these children are being abused they are told they are being tortured for the mere fact that they are non-Muslims. Even worse the local communities are actively covering up the crimes because they are either afraid of being labeled an lslamophobe or that they themselves will become a target. So many want to tell their story to the world. I think it would be an eye opening not only for the UK but for the Western world.  Tommy is passionate and very smart. I believe the final product will be great. I also think it is something our audience would be interested in seeing. There is also fundraising potential.

> Def. Mot. Exhibit 90.

Paragraph 235 misleads the Court and mischaracterizes Plaintiff's email.  Moreover, Daniel

Pipes rejected the proposal and MEF did not get involved in any of the projects.

236.    Plaintiff did not tell Pipes she was the author of the proposal. Id.

**ANSWER:**

Contested.  Plaintiff was not the author.  <u>Id</u>.

237.    Based in part on Roman's concerns, Pipes rejected the proposal and informed

Robinson directly. Exhibit 91, Message from D. Pipes to Plaintiff.

**ANSWER:**

The emails speak for themselves.

238.    Upon seeing Pipes' rejection of her proposal, Plaintiff wrote to Robinson: "Before

you reply to Daniel's email. Let's come up with some answers to the questions. All the criticism

came from Gregg… Not good." Exhibit 92, Message from Plaintiff to T. Robinson.

**ANSWER:**

There is nothing improper with Lisa Barbounis helping with a project she believed in.  It was

Lisa Barbounis's job to bring ideas to Roman and Pipes.  Roman and Pipes used their experience

to make decisions.  None of this is material to this case.  It also did not go anywhere.  Pipes

rejected the proposal as stated by Defendants, above.

239.     On December 7, 2018, a reporter for The Guardian confronted Roman and Pipes

with the fact that Plaintiff was in London planning a rally with UK political figures: "Separately,

I wanted to ask more about the Middle East Forum's involvement in Sunday's Brexit rally in

London. Lisa Barbounis, your executive liaison, is pictured below with the organising team at a

planning meeting on 30 November along with Tommy Robinson and others. Lisa is in London

today with Avi Yemini and Robinson's cousin, Kevin Carroll. Is the Middle East Forum

providing funding for this event? If not, could you please clarify the Middle East Forum's role in

the event, given that Lisa Barbounis was at the planning meeting and is with key organisers

today." Exhibit 93, Email to Pipes and Roman.

**ANSWER:**

This is the same information presented above in Paragraph 230.  It is not material to this case.

240.     When asked by Pipes what she is doing in London, Barbounis responds,

""Nothing I'm doing here is related to MEF." Exhibit 94, Message from Plaintiff to D. Pipes.

**ANSWER:**

Ms. Barbounis's electronic communications are writings that speak for themselves.  Moreover,

this is not a material fact.  According to Daniel Pipes' own emails, MEF was not involved in the way that Lisa Barbounis spent her personal time.

241.    Also on December 7, 2018, Plaintiff chatted on Instagram with Vinney Sullivan, an associate of Tommy Robinson, that Thomas had taken some of the grant money for his own use.  Exhibit 95, Instagram Message Logs.

**ANSWER:**

Contested.  Defendants present a 36-page text thread but refuse to point Plaintiff and the Court to the information purported in Paragraph 241.  The angry and vague threats of a disgruntled vender, who sold merch at the Tommy Robinson rally, is not evidence.  This is hearsay without exception.  After the Tommy Robinson rally in June 2018, Vinnie  Sullivan became irate and unhinged.   A review of Exhibit 95 confirms Vinnie Sullivan's failure to reasonably discuss anything related to the event.  Moreover, Lisa Barbounis had already communicated in detail her concerns about Vinnie Sullivan in relation to the Daniel Thomas grant, in the June 22, 2018 email, and more times in person.  Plaintiff recommended that MEF never grant money through Daniel Thomas again.  This is confirmed by Defendants in Def. Mot Exhibit 73.

242.    Sullivan also referenced prior conversations that he had with Plaintiff concerning the misappropriated funds. Id.

**ANSWER:**

Contested.  Defendants present a 36-page text thread but refuse to point Plaintiff and the Court to the information purported in Paragraph 241.  The angry and vague threats of a disgruntled vender, who sold merch at the Tommy Robinson rally, is not evidence.  This is hearsay without

exception.  After the Tommy Robinson rally in June 2018, Vinnie  Sullivan became irate and

unhinged.   A review of Exhibit 95 confirms Vinnie Sullivan's failure to reasonably discuss

anything related to the event.  Moreover, Lisa Barbounis had already communicated in detail her

concerns about Vinnie Sullivan in relation to the Daniel Thomas grant, in the June 22, 2018

email, and more times in person.  Plaintiff recommended that MEF never grant money through

Daniel Thomas again.  This is confirmed by Defendants in <u>Def. Mot Exhibit 73</u>.


243.    On December 9, 2018, Pipes wrote to Plaintiff that he was "awaiting your reply to

my several notes" about his concerns over her work with Robinson. Exhibit 96, Message from D.

Pipes to Plaintiff.

**<u>ANSWER:</u>**

Daniel Pipes' electronic communications are writings that speak for themselves.  Moreover, this

is not a material fact.  Daniel Pipes and Lisa Barbounis discussed issues related to Ms.

Barbounis' employment.  This was an unremarkable occurrence.


244.    Plaintiff responded, "I honestly have been so busy with the march that I haven't

had the opportunity to respond from my computer and wanted to give it the attention it deserves.

I just got to the airport and will respond as soon as I get sorted. Sorry for the delay. Id.

**<u>ANSWER:</u>**

The electronic communications are writings that speak for themselves.  Moreover, this is not a

material fact.  Daniel Pipes and Lisa Barbounis discussed issues related to Ms. Barbounis'

employment.  This was an unremarkable occurrence.

245.     Pipes replied, "I have the sense that your position at MEF is distinctly less important than your activities with Tommy Robinson. This is not good." Id.

**ANSWER:**

The electronic communications are writings that speak for themselves.  Moreover, this is not a material fact.  Daniel Pipes and Lisa Barbounis discussed issues related to Ms. Barbounis' employment.  This was an unremarkable occurrence.

246.     Plaintiff responded, "Honestly that isn't the case. It's the opposite. I was just in an awkward situation over the weekend with limited access to my computer and wanted to reply thoughtfully. Please don't think that. Im back to work and focused on MEF. It's been a stressful few weeks with the Gregg transition and learning new job functions not to mention finals and my family. MEF and it's [sic] mission mean the world to me. I deeply apologize if it doesn't appear that way at the moment. Id.

**ANSWER:**

The electronic communications are writings that speak for themselves.  Moreover, this is not a material fact.  Daniel Pipes and Lisa Barbounis discussed issues related to Ms. Barbounis' employment.  This was an unremarkable occurrence.

247.     Pipes replied, "I am glad to hear that but you can see why, what with the transition and the new job functions, your taking off for such a long period to do unrelated work gives me the impression that MEF is a low priority. Especially as you did not indicate that this will be happening, nor give me a decision. You just did it." Id.

**ANSWER:**

The electronic communications are writings that speak for themselves.  Moreover, this is not a

material fact.  Daniel Pipes and Lisa Barbounis discussed issues related to Ms. Barbounis'

employment.  This was an unremarkable occurrence.


248.    Plaintiff responded, "I can see why you would feel that way. And all I can do is

apologize and do better. The Tommy stuff was something I was good at. I finally felt like I was

contributing. I can see why it looks the way it does. I guess I got carried away. I thought I was

doing the right thing. Certainly wasn't trying to neglect MEF or hide things from you." Id.

**ANSWER:**

The electronic communications are writings that speak for themselves.  Moreover, this is not a

material fact.  Daniel Pipes and Lisa Barbounis discussed issues related to Ms. Barbounis'

employment.  This was an unremarkable occurrence.


249.    Despite her chat with Sullivan only two days before, Plaintiff did not report her

suspicions about this missing money to Pipes at this time. Exhibit 1, Certification of Daniel

Pipes, at ¶ 69.

**ANSWER:**

Contested.  Defendants present a 36-page text thread but refuse to point Plaintiff and the Court to

the information purported in Paragraph 241.  The angry and vague threats of a disgruntled

vender, who sold merch at the Tommy Robinson rally, is not evidence.  This is hearsay without

exception.  After the Tommy Robinson rally in June 2018, Vinnie  Sullivan became irate and

unhinged.   A review of Exhibit 95 confirms Vinnie Sullivan's failure to reasonably discuss

anything related to the event.  Moreover, Lisa Barbounis had already communicated in detail her

concerns about Vinnie Sullivan in relation to the Daniel Thomas grant, in the June 22, 2018

email, and more times in person.  Plaintiff recommended that MEF never grant money through

Daniel Thomas again.  See Def. Mot, Exhibit 73.

250.    On December 12, 2018, Plaintiff drafted a fundraising communication for

Thomas using her barbounis@meforum.org email address. Exhibit 97, Fundraising Request.

**ANSWER:**

The December 12, 2018 email was sent by Lisa Barbounis to Lisa Barbounis.  Defendants are

accusing Lisa Barbounis of using her own email account.

251.    On January 7, 2019, Plaintiff sent a fundraising proposal to Pipes from Janice

Atkinson, whom she met on her previous trip to the United Kingdom, for $100,000, endorsing

the proposal and urging Pipes to fund it. Exhibit 98, Proposal from J. Atkinson.

**ANSWER:**

Uncontested.  This is not a material fact.  Lisa Barbounis shared information with her boss.  This

was Ms. Barbounis' job.   No money was ever granted to Janice Atkinson.

252.    Plaintiff never revealed that she had helped write and edit the proposal. Id.

**ANSWER:**

Contested.  It is contested that Lisa Barbounis wrote and edited the proposal.  It is also contested

that it would matter if she did.  Lisa Barbounis is permitted to answer questions and use her skills

to help people with whom she affiliates.  Greg Roman trained Lisa Barbounis and assisted

grantees with their proposals on a regular basis.  This was part of the job. Exhibit A ¶ 190 – 192.

253.     From January 28 to February 5, 2019, Plaintiff traveled to Brussels, Belgium to meet with Thomas and continue her affair. Exhibit 2, Barbounis Dep. Part 1 at p.347-61.

**ANSWER:**

Contested.  It is contested that Lisa Barbounis had an affair.  It is contested that she traveled to Brussels, Belgium to continue an affair.  Plaintiff was asked by Janice Atkinson to speak at the European Parliament.   Ms. Barbounis discussed in detail her involvement and speech topics. Ms. Barbounis noticed MEF about her travel plans and went on her personal time and expense. Exhibit A ¶ 193.


254.     On February 12, Plaintiff assisted Katie Hopkins, another United- Kingdom based political figure, with a funding idea, which she offered to put together for Hopkins. Exhibit 99, Correspondence between Plaintiff and K. Hopkins.

**ANSWER:**

This fact statement is literally 80% longer than it needs to be under any reasonable interpretation of the law and fact in this case.  This is not a material fact.


255.     A proposal was submitted from Hopkins to the Forum, with Plaintiff never revealing that she had been involved in the proposal itself. Exhibit 100, Proposal from K. Hopkins.

**ANSWER:**

Plaintiff was not involved in the proposal outside of normal job responsibilities.  Plaintiff discussed the Hopkins proposal with Daniel Pipes many times.  MEF did not fund the proposal.

Defendants are repeatedly presenting as evidence Lisa Barbounis performing her day-to-day job responsibilities, in an over bloated fact statement that has little to no connection with the claims in this case. Exhibit A ¶ 194.

256.    On February 15, 2019, Pipes wrote to Plaintiff: "I think you are dragging us into the Brexit issue and generally becoming too close to Tommy Robinson" and that The Forum needed to "stay out of unrelated topics and keep our distance." Exhibit 101, Message from D. Pipes to Plaintiff.

**ANSWER:**

This is not a material fact.

257.    On February 16, 2019, Thomas wrote to Plaintiff: "You're making things very intense for me right now Lisa, I don't like the direction all of this is taking. I've asked my father please help me to receive the income I need to do this, I need you to tell me how much money I've taken so I can start making payments to you. I do absolutely appreciate everything you have done for me Lisa, been my rock at many of times. But I am very stressed at the moment with everything, I'm shouting at people I shouldn't that's just not you. I'm reacting in a way I don't feel is right. But I need some space between us for a while. And get things right for the direction MEF want to take. My whole life is slowly falling apart, it's time I did something about it." Exhibit 55 at p.1056.

**ANSWER:**

This is not a material fact.  Daniel Thomas was referring to money that Lisa Barbounis lent him to buy a jacket.  Daniel Thomas was not referring to money that MEF granted him. Exhibit A ¶¶

195 – 196.   Lisa Barbounis was embarrassed to take Daniel Thomas to an event because he was underdressed.  Id.  Lisa Barbounis loaned Daniel Thomas money to buy clothes and a jacket and Daniel Thomas agreed to pay the loan back.  Id.   Also, Daniel Thomas asked Lisa Barbounis to buy an airline ticket and promised to pay Ms. Barbounis back.  Id.  This is the money that Daniel Thomas referred to in the above Paragraph.   A true and accurate copy of communications from Daniel Thomas to Lisa Barbounis are attached and marked Plaintiff's Exbibit "RR".

258.     Thomas states that Plaintiff did not accept his decision, and threatened to tell Thomas's wife, Jazmin Bishop, about their affair. Exhibit 81, Transcript of Call with D. Thomas.

**ANSWER:**

Contested.  Defendants cannot use an unauthenticated, unverified, transcript from a supposed telephone call between Defendant, Greg Roman and Daniel Thomas as evidence.  This is hearsay without exception.  Moreover, the unsworn statements of Daniel Thomas, through Greg Roman holds no inherent credibility.  Daniel Thomas stated that Greg Roman offered to pay something of value for this information.  Daniel Thomas also voiced his true motives for providing the purported statement.  Daniel Thomas stated, "I am taking her to fucking town, that cunt.  She fucking ruined my life she did. … Greg Contacted me.  He gave me a little wink.  He said when this is all over we will thank you."  Daniel Thomas immediately recanted the false statement and informed MEF that he would not participate in the case.  Still, Defendants have the audacity to present as evidence in a motion for summary judgment the unverified, unauthenticated, unsworn statement of Daniel Thomas.  Plaintiff objects.

259.     Thomas reports that when he told Barbounis about his intention to end their
sexual relationship, Barbounis replied that "she was somehow going to make it come out and
fuck my life up and get me, uh, you know, using that as a, as a way of trying to keep me in
contact with her." Id.

**ANSWER:**

Contested.  Defendants cannot use an unauthenticated, unverified, transcript from a supposed
telephone call between Defendant, Greg Roman and Daniel Thomas as evidence.  This is hearsay
without exception.  Moreover, the unsworn statements of Daniel Thomas, through Greg Roman
holds no credibility.  Daniel Thomas stated that Greg Roman offered to pay something of value
for this information.  Daniel Thomas also voiced his true motives for providing the purported
statement.  Daniel Thomas stated, "I am taking her to fucking town, that cunt.  She fucking
ruined my life she did. … Greg Contacted me.  He gave me a little wink.  He said when this is
all over we will thank you."  Daniel Thomas immediately recanted the false statement and
informed MEF that he would not participate in the case.  Still, Defendants have the audacity to
present as evidence in a motion for summary judgment the unverified, unauthenticated, unsworn
statement of Daniel Thomas.  Plaintiff objects.


260.     On February 27, 2019, Plaintiff wrote to Facebook identifying herself as
"Director of Communications" for Robinson in an effort to recover Robinson's locked account.
Exhibit 102, Message from Plaintiff.

**ANSWER:**

This is not a material fact.

261.     On March 4, 2019, Pipes informed Plaintiff that the Forum would no longer fund Robinson or his events, stating: "Funding street demonstrations was an exception in 2018 due to Tommy Robinson's urgent circumstances. I don't see this as something we'll do agan [sic] in the future." Exhibit 103, Message from D. Pipes to Plaintiff.

**ANSWER:**

This is not a material fact.

262.     That same day, Plaintiff wrote to Thomas stating that she "had a plan" to deal with Pipes rejection but that she needed to speak with Robinson first. Exhibit 104, Message from Plaintiff to D. Thomas.

**ANSWER:**

This is not a material fact.

263.     On March 7, 2019, Plaintiff had a conversation with Jazmin Bishop, Thomas' domestic partner and mother of his children, who told Plaintiff that Thomas had stolen approximately $7,000 from The Forum's $32,000 grant to benefit Robinson. Exhibit 105, Messages between Plaintiff and J. Bishop.

**ANSWER:**

Contested.  Defendants cannot use the hearsay statements of Jazmin Bishop, who recanted the false information soon after it was presented. Exhibit Y.  Jazmin Bishop was an angry, out of control, and volatile.  Lisa Barbounis had no reason to believe Jasmin Bishop would be honest about Daniel Thomas.  Exhibit A ¶¶ 197 – 199.  Moreover, Lisa Barbounis had already notified MEF about concerns related to Daniel Thomas and his failure to accurately account for all of the

granted money. <u>Def. Mot Exhibit 73</u>.  Lisa Barbounis informed Jazmin Bishop that if the

information were true, and Daniel Thomas stole $7,000, Ms. Barbounis would notify her

employer.  Jazmin Bishop quickly recanted and walked the accusation back. <u>Exhibit Y</u>.  In the

end, Ms. Barbounis had already notified MEF about Daniel Thomas.  <u>Def. Mot Exhibit 73</u>.

Moreover, MEF was already in possession of information that indicated that Daniel Thomas did

not spent the entire grant on the rally. <u>Def. Mot Exhibit 70, 73 and 74</u>. Greg Roman and MEF

chose not to pursue the money.  Even to this day, Daniel Pipes conceded that MEF has taken no

steps to recover any money from Daniel Thomas. <u>Pipes Tr Exhibit Q</u> page 279. Either way it is

clear that Lisa Barbounis had nothing to do with any money being misappropriated.  Lisa

Barbounis asked Jazmin Bishop to provide proof of her allegations.  Jazmin Bishop provided no

supporting information and recanted the accusation.


264.    In the same communication with Bishop, Plaintiff acknowledged that she had

long harbored a suspicion that Thomas had used some of the money inappropriately based on her

conversation with Sullivan. Id. at 1.

**<u>ANSWER:</u>**

Contested.  Defendants cannot use the hearsay statements of Jazmin Bishop, who recanted the

false information soon after it was presented. <u>Exhibit Y</u>.  Also, this is not a material fact in

dispute.  The parties agree that Lisa Barbounis was suspicious with the way in which Daniel

Thomas accounted for the MEF grant money. <u>Def. Mot. Exhibit 73</u>.  On June 22, 2018, Lisa

Barbounis sent an email to Greg Roman confirming her suspicions and suggesting that MEF

never work through Daniel Thomas again. <u>Def. Mot. Exhibit 73</u>.   it is not a material fact in

dispute that Lisa Barbounis sent this email.  <u>See</u> <u>Def. Mot. Exhibit 73</u>.

265.     In that conversation with Bishop, Plaintiff referenced Vinney Sullivan, an associate and sometimes rival of Thomas' who was involved in the June 2018 rally, and who had earlier informed Plaintiff that the Forum's funds were improperly used, stating:

> And I didn't know about the money that he [Thomas] took from MEF until you told me. It was always in the back of my mind because it didn't add up and the whole vinney and you thing but he said you were crazy and would do anything to destroy him and I wanted to believe him.  Now that I know I'm obligated to tell my work. What do I do? That's theft.  Id. (emphasis added).

**ANSWER:**

Plaintiff, Lisa Barbounis was attempting to impress upon Jazmin Bishop the gravity of her allegations.  Ms. Barbounis informed Jazmin Bishop that if he really stole money, Ms. Barbounis would have to notify MEF.  Jazmin Bishop quickly recanted the accusations.  Lisa Barbounis tried to corroborate the information and was unable to do so.  Lisa Barbounis had previously informed Greg Roman about Vinney Sullivan and her suspicious that Daniel Thomas did not accurately account for the MEF granted money.  Vinney Sullivan was one of the two venders referenced in the June 22, 2018 email.  See Def. Mot. Exhibit 73.

266.     In that conversation with Bishop, Plaintiff expressly acknowledged that Thomas had stolen $7,000 from the Forum. Id. at 4.

**ANSWER:**

The electronic communications are writings that speak for themselves and any inference or characterization that does not comport with its plain meaning is contested.  Jazmin Bishop notified Lisa Barbounis thereafter that Daniel Thomas never had $7,000 of money and that the small amount of money that Daniel Thomas did have was given to him by his mother.  A true and accurate copy of the text communications are attached and marked Plaintiff's Exhibit "Y".

Because Jazmin Bishop had refused to offer any new information, Plaintiff felt comfortable that she had already reported to MEF everything that she knew. Def. Mot. Exhibit 70, 73, 74. The Middle East Forum and Daniel Pipes also feels the same way, as Daniel Pipes conceded during his deposition that MEF has taken no steps to recover any unspent money from Daniel Thomas. Pipes Tr Exhibit Q page 279.

267.    In that conversation, Plaintiff wrote: "That's 7 thousand dollars he stole from MEF and Tommy." Id.

**ANSWER:**

The electronic communications are writings that speak for themselves and any inference or characterization that does not comport with its plain meaning is contested. Also, see Plaintiff's Response to Paragraphs 263, 264, 265, and 266, above.

268.    Later that day, Plaintiff wrote to Robinson, explaining, "I recently found out some potentially messy things that have to deal with demos MEF and I need to back away until I figure it all out. And if I tell MEF which I think I'm obligated to it's not good. Plus I have jaz harassing me. I'm out." Exhibit 106, Messages between Plaintiff and T. Robinson.

**ANSWER:**

The electronic communications are writings that speak for themselves and any inference or characterization that does not comport with its plain meaning is contested. Also, see Plaintiff's Response to Paragraphs 263, 264, 265, and 266, above.

269.    Plaintiff continued, "I'm sure you know about the jaz and danny shit. I knew

money didn't add up after the first demo but it looks like he kept 7k for himself. If MEF finds

out I knew and didn't tell them I'm fucked. If I tell them its not good for you and future money.

It's all so messy. And I don't know what to do." Id. (emphasis added).

**<u>ANSWER:</u>**

The electronic communications are writings that speak for themselves and any inference or

characterization that does not comport with its plain meaning is contested.  Also, see Plaintiff's

Response to Paragraphs 263, 264, 265, and 266, above.


270.     Plaintiff continued, "So MEF gave him 30,000 for the demo. The last one didn't

cost that much and look at the difference. He is going to have to get receipts and bank

statements." Id.

**<u>ANSWER:</u>**

The electronic communications are writings that speak for themselves and any inference or

characterization that does not comport with its plain meaning is contested.  Also, see Plaintiff's

Response to Paragraphs 263, 264, 265, and 266, above.


271.     The next day, March 8, 2019, Plaintiff went to Pipes and successfully advocated

for Roman's return to the office. Exhibit 1, Certification of Daniel Pipes at 45.

**<u>ANSWER:</u>**

See Plaintiff's response to this information above.


272.     On March 10, 2019, Plaintiff demanded Thomas' financial information from

Bishop in order to ascertain the extent of Thomas' misappropriation, stating, "I need Danny's

bank account and I need the invoices." Exhibit 105, Messages between Plaintiff and J. Bishop at p.8.

**ANSWER:**

The electronic communications are writings that speak for themselves and any inference or characterization that does not comport with its plain meaning is contested.  Also, see Plaintiff's Response to Paragraphs 263, 264, 265, and 266, above.


273.    When Bishop resisted, Plaintiff continued, "I have to. That's exactly my point I need a plan if my work gets wind of that Tommy screwed and dandy screwed so we need a plan." Exhibit 146 - Lisa Barbounis WhatsApp with Jazmin Bishop p.116.

**ANSWER:**

The electronic communications are writings that speak for themselves and any inference or characterization that does not comport with its plain meaning is contested.  Also, see Plaintiff's Response to Paragraphs 263, 264, 265, and 266, above.


274.    Plaintiff also voiced her concerns to Bishop that if the Forum discovered the misappropriation by Thomas, it would cease further funding of Robinson, stating: "I'm afraid my work is going to pull the money and that screws Tommy [Robinson]." Id., pg. 123

**ANSWER:**

The electronic communications are writings that speak for themselves and any inference or characterization that does not comport with its plain meaning is contested.  Also, see Plaintiff's Response to Paragraphs 263, 264, 265, and 266, above.

275.    Plaintiff continued: "I do more for tommy then danny ever did. As a matter fact if it wasn't for my company getting involved with Danny's demo they would've never been the way they were and he would've never been involved as he is today." Id. pg. 125.

**ANSWER:**

The electronic communications are writings that speak for themselves and any inference or characterization that does not comport with its plain meaning is contested.  Also, see Plaintiff's Response to Paragraphs 263, 264, 265, and 266, above.


276.    In late March and May of 2019, Plaintiff traveled twice to the United Kingdom to visit Thomas and a second paramour, and to continue her work with Robinson on his campaign for European Parliament. Exhibit 1 at 68-80.

**ANSWER:**

Contested.  Plaintiff, Lisa Barbounis did not travel to United Kingdom to visit Thomas and a second paramour. This information has no relevance to Plaintiff's claims or Defendants' counterclaims.  This information is offered solely to embarrass, harass and for its prejudicial value. Plaintiff, Lisa Barbounis discontinued all romantic involvement with Daniel Thomas after January 2019.  Accordingly, Defendants are again presenting false information to the Court.


277.    Plaintiff lied to Pipes about the purposes of these trips, claiming she was working for MEF's media strategy for the first, and that the second was a vacation and that she had brought her children with her. Exhibit 107, Message from Plaintiff to D. Pipes.

**ANSWER:**

Contested.  Plaintiff never lied to Daniel Pipes about any of the trips she took.  Plaintiff notified

Daniel Pipes about her children as a cover.  Lisa Barbounis said that Daniel Pipes could represent to any reporters that she was not in Europe for MEF related issues.

278.    Plaintiff used the March trip to work on a proposal to solicit a million dollars for another organization from Terry Giles, attempting to earn herself a $100,000 commission. Exhibit 108, Message from Plaintiff to T. Giles.

**ANSWER:**

None of this ever occurred.  Moreover, Plaintiff is permitted to work more than one job at a time. She is permitted to perform volunteer work on her own time.  Daniel Pipes' own statement was that Pipes was hesitant to get involved in Ms. Barbounis's personal time.  During her employment with MEF, Lisa Barbounis never received a single dollar from any other source other than MEF.  Defendants continue this overblown fact statement with false, misleading irrelevant information.

279.    In her report to The Forum, Plaintiff does not mention her political efforts on behalf of Robinson nor her efforts to earn the $100,000 commission from another organization. Exhibit 109, Memo from Plaintiff.

**ANSWER:**

Contested.  During her employment with MEF, Ms. Barbounis never earned a single dime that was not paid on a w2 by MEF.  From the time she began working with MEF until her employment ended, the only money Ms. Barbounis was paid came through MEF paychecks.

280.    On March 26, 2019, in response to Plaintiff's report, Pipes told Plaintiff that the

report was "all good with the very substantial exception of helping Tommy Robinson come to the United States, which I am very, very much against. He has a potential leadership role in the UK - he's already advisor to the head of UKIP [United Kingdom Independence Party] and I've heard talk of his running for MEP in case Brexit does not happen - which cannot be replicated in the United States. Without riling up Mr Giles, please do not be party to this effort and please do convey to TR my strong view that he should not quit the UK." Exhibit 110, Message from D. Pipes (emphasis added).

**ANSWER:**

This is not a material fact.  This is a communication between Lisa Barbounis and her boss. Daniel Pipes is providing his advise and requesting that Lisa Barbounis pass the advice along to Tommy Robinson.


281.    Plaintiff responded untruthfully to Pipes, stating: "I also advised against him coming permanently to the US. Once he realized that he couldn't go back to the UK if he declared asylum he was much less interested. I'm meant doing a speaking tour here is what I'm interested in. Not moving here permanently. I should have been more clear." Exhibit 111, Message from Plaintiff to D. Pipes.

**ANSWER:**

Contested.  This is not relevant to this case.  Also, Defendant fail to present evidence that Plaintiff's email is "untruthful."   This is an example of Lisa Barbounis and her boss discussing an MEF contact.  Daniel Pipes is instructing Lisa Barbounis to communicate on behalf of the MEF with Tommy Robinson.

282.    On April 10, 2019, Plaintiff coordinated with Amy Mekelburg from the RAIR

Foundation on fundraising proposals that would be submitted to the Forum on behalf of RAIR.

Exhibit 112, Plaintiff's Correspondence with A. Mekelburg.

**ANSWER:**

The RAIR Foundation is not a real organization.  According to Amy Mekelburg, who testified at

deposition in the matter of <u>MEF v. Lisa Barbounis</u>, the RIAR Foundation has raised about

$10,000 in its 5-year lifespan.  The Middle East Forum in contrast raises about $4 million dollars

annually.  The RAIR foundation is a website started by Amy Mekelburg.  There is no RAIR

foundation offices or employees.  Amy Mekelburg operates the website herself.  She has never

given or received a grant.  The donations she receives are relegated to five-and-ten-dollar

donations by people who find her website online.  Defendants have attempted to mislead the

Court by referring to the RAIR foundation as a "competitor."  Nothing could be further from

true.

283.    Plaintiff also sent Mekelburg a list of foundations that donate money to the

Forum. Id.

**ANSWER:**

Defendants are now trampling on information that is unrelated to this case but related entirely to

the matter of <u>MEF v. Lisa Barbounis</u>.  The court's ruling in allowing Defendants' counterclaims

was that there be no overlap with claims already brought in Judge Sanchez's courtroom.  This is

the primary focus on the trade secrets case.  Notwithstanding, Amy Mecklenburg confirmed

during her deposition that she has never contacted a single organization who donates money to

MEF.  Amy Mecklenburg also confirmed that she did not receive the information to which

Defendants refer above.

284.    On April 12, 2019, MEF received press coverage in the United Kingdom as a
result of Barbounis' continuing unauthorized political work with Robinson. Exhibit 113, Tweet
from Plaintiff.

**ANSWER:**

This is not a material fact.

285.    Pipes confronted Plaintiff about her political associations and frequent travel, his
concern that she did not clear her continued work for Robinson with him, and his belief that she
was too caught up in and focused on her activities with Robinson at the expense of her work for
MEF. Exhibit 114, Message from D. Pipes to Plaintiff.

**ANSWER:**

This is not a material fact.

286.    Pipes asked that Plaintiff not surprise him with her travels and made clear that he
was not convinced that she was focused on the tasks agreed upon in November 2018. Id.

**ANSWER:**

This is not a material fact.

287.    Nevertheless, Plaintiff continued to perform work for Robinson. Exhibit 115,
Correspondence between Plaintiff and T. Robinson.

**ANSWER:**

This is not a material fact.  At no time did Pipes instruct Ms. Barbounis to strop work with

Tommy Robinson.

288.    On April 18, 2019, Plaintiff wrote to Robinson with an affirmative response to his

plan for her to be the director of communications for his campaign for European Parliament,

"For now because of Gregg I'm keeping it quite [sic] from MEF." Exhibit 116, WhatsApp

Communications between Plaintiff and T. Robinson at p.562.

**ANSWER:**

This is not a material fact.  At no time did Pipes instruct Ms. Barbounis to strop work with

Tommy Robinson.

289.    Also on April 18, 2019, Plaintiff had a conversation with Twin Walton, another of

her paramours in the United Kingdom, in which Walton referenced the money taken by Thomas:

"Well I think it's wrong that tommy accepts Danny has taken the money without him paying him

bk or without tommy having a sey on it it's fucking ludicrous and I feel like your being used for

there needs as and when they need ya." Exhibit 117, Correspondence between Plaintff and Twin

Walton (all errors in original).

**ANSWER:**

This is not a material fact.  At no time did Pipes instruct Ms. Barbounis to strop work with

Tommy Robinson.  This was not a reference to any money granted by MEF.

290.    Plaintiff responded to Twin Walton: "I just want to move on from the danny stuff.

It's old news. I'm willing to forget the money so he will leave me alone. And tommy is going to

pay me. And I get to be where I want to be. So win win, no?" (Id.) (emphasis added).

**ANSWER:**

This is not a material fact.  This was not a reference to money granted by MEF.  Lisa Barbounis

was commenting that she did not care if Daniel Thomas paid her back money that she lent him to

buy clothes.  Exhibit A ¶¶ 195 – 196.  See also text communications Exhibit RR.


291.    Twin Walton responded, if Robinson "had any respect for u he wud [sic] make

Danny pay that money back." (Id.).

**ANSWER:**

This is not a material fact.  This was not a reference to money granted by MEF.  Lisa Barbounis

was commenting that she did not care if Daniel Thomas paid her back money that she lent him to

buy clothes.


292.    On April 28, 2019, Plaintiff lobbied the Forum to fund Robinson's legal fight

despite her knowledge of the prior misappropriation; Pipes acquiesced, stating, "I am reluctant.

But if you both are convinced this is necessary, I am willing to fund the £10,000." Exhibit 118,

Message from D. Pipes to Plaintiff.

**ANSWER:**

This is not a material fact.  Plaintiff to this day has no direct knowledge of a misappropriation.

There certainly was never a misappropriation involving Tommy Robinson.  Lisa Barbounis did

her job by bringing ideas to Pipes and/or Roman.  Pipes and/or Roman made decisions.  Lisa

Barbounis did not keep secrets that she was obligated to divulge from either of them.  If Lisa

Barbounis discovered that Daniel Thomas stole money from MEF, she would have notified the

appropriate people.  Lisa Barbounis had already communicated her suspicions to Greg Roman in

the June 20, 2018 email.

293.    On April 30, 2019, Pipes criticized Plaintiff for having her work email

autorespond to incoming messages with a notice that she would be out of the office for six

weeks. Exhibit 119, Message from Pipes to Plaintiff.

**ANSWER:**

This is not a material fact.

294.    On May 16, 2019, The Guardian contacted Pipes and Roman about Plaintiff's

activities in the United Kingdom and sought clarification on the role of the Forum and Plaintiff

in Robinson's European Parliament election campaign. Exhibit 120, Query from The Guardian.

**ANSWER:**

This is not a material fact.

295.    On May 16, 2019, in light of the inquiry by The Guardian, Plaintiff lied to Pipes

and Roman about the purpose of and her work during her travels to England, stating: "Sending

this to just you and Gregg. I was on l, and requested in writing, a vacation with my family to

England and Ireland. I stopped in England to see Tommy and introduce my family to him. I went

to 3 of his rallies so they could see what it was like. I am home. As you know I do occasionally

volunteer my time to help him with little things such as answering emails on TR.news and the

Press box for votetommyrobinson.com. I use my maiden name specifically to keep things

separate. Neither MEF nor Tommy paid me any money for my official family vacation. That

includes travel and accommodation. Anything I have done for Tommy is strictly on a personal

volunteer basis." Exhibit 121, Message from Plaintiff to D. Pipes.

**ANSWER:**

This is not a material fact.  Moreover, Plaintiff was providing  Pipes with information that he could use to deal with the Guardian reporters.


296.    That same day, Plaintiff told George Igler, a campaign worker for Robinson, what she told the Forum about her activities in England. Exhibit 122, Message from G. Igler to Plaintiff.

**ANSWER:**

This is not a material fact.


297.    Igler responded: "Very wise to have a piece of paper from the MEF confirming you were on vacation. It's the classic Marxist 'false consciousness' fantasy that they will not let go of." Id. at p.2.

**ANSWER:**

This is not a material fact.


298.    Plaintiff responded to Igler, stating: ""I'm worried pipes will be mad...But who cares. The cause [For Tommy Robinson] is far more important to me." Id. at p.5.

**ANSWER:**

This is not a material fact.


299.    An article in the Guardian newspaper on May 17, 2019 spoke of Barbounis in the

Robinson campaign, the author noting, "There has been a more surprising presence at Robinson's rallies, however: Lisa Barbounis, a senior executive of the conservative US thinktank the Middle East Forum, has been a central figure on Robinson's campaign team and present at many of his rallies, the Guardian has learned. Her exact role is unclear but Barbounis, who says she has worked on several Republican campaigns including John McCain's run for president in 2008, has been on the trail with Robinson for about a fortnight." Exhibit 123, Guardian Article.

**ANSWER:**

This is not a material fact.

300.     On May 18, 2019, Barbounis wrote to her future roommate, Sydney Watson: "Do you know how many times him and everyone else told me to stay away from Tommy robinson but I love it. I do what I want." Exhibit 124, Message from Plaintiff to S. Watson p.179 (emphasis added).

**ANSWER:**

This is not a material fact.

301.     As a 501(c)(3) organization, MEF is subject to strict legal controls concerning its use of funds for its mission and involvement in political activities. Exhibit 1 at 59.

**ANSWER:**

This is not a material fact.  Moreover, The Middle East Forum suffered no adverse effect in connection with its 501(c)(3) status.

302.     As a result, Pipes emailed Barbounis on May 28, 2019, concerning her poor work

performance and political association: "In my April 16 note to you, I wrote 'Please don't surprise me with your travels.' But then it turns out the Guardian had a mole who spotted you at three separate Tommy Robinson rallies; that definitely counts as a surprise. From now on, you need express permission from me before engaging in MEF travel and you must also clear with me any personal travel that includes a political agenda." Exhibit 125, Message from D. Pipes to Plaintiff.

**ANSWER:**

This is not a material fact.


303.    Pipes also reprimanded Barbounis for her continued poor work performance, including her failure to get articles out on time to MEF subscribers; her failure to improve her public stature; her failure to improve the composition of MEF's staff; her failure to increase publications; her failure to hold monthly conference calls for subscribers; her failure to increase YouTube videos; and her failure to make weekly reports. Id.

**ANSWER:**

This is not a material fact.


304.    On May 29, 2019, Plaintiff again coordinated with Mekelburg on fundraising documents for RAIR that would ultimately be submitted to the Forum. Exhibit 126, Grant Request from A. Mekelburg.

**ANSWER:**

This is not a material fact.


305.    On that same date, Plaintiff communicated with Grayson Levy about taking a job

with Mekelburg and RAIR, and the possibility of having a donation by the Forum to RAIR covering her salary. Exhibit 127, Messages between Plaintiff and G. Levy.

**ANSWER:**

This is not a material fact.  This did not occur.  Plaintiff's brainstorms with fellow employees of MEF are not relevant to this case.

306.    On May 31, 2019, Plaintiff wrote to Bishop that she thought "about sleeping with him [Thomas] just to fuck you over because you won't leave me alone." Exhibit 128, Message from Plaintiff to J. Bishop.

**ANSWER:**

This is not a material fact.

307.    On June 2, 2019, in a conversation with Plaintiff about her issues with Pipes, McNulty told Plaintiff, "Yeah, you're a good liar and I don't think even you could come up with something for that." Exhibit 20, Text Messages between Plaintiff and P. McNulty, at p.1177.

**ANSWER:**

This is not a material fact.

308.    On June 5, 2019, Pipes again wrote to Barbounis: "The Guardian article from May 17 has a long, insinuating paragraph about you along with a picture of you. The clear implication is that MEF supports Tommy Robinson's campaign. This rates as both a surprise and an unwelcome complication. The article could entirely disappear but it could also pop up in the future and make trouble for us. I do not want potential trouble hanging over us, so am displeased.

You and I have already discussed the matter of your affiliating MEF too closely with Tommy Robinson and we reached an informal agreement that you would stay away from his efforts. Given this development, I am now imposing a formal limitation on you: No campaign work, even during your private time, without clearance from me." Exhibit 129, Message from D. Pipes to Plaintiff (emphasis added).

**ANSWER:**

This is not a material fact.

309.    Plaintiff responded falsely to Pipes, stating: "Noted. Although, the trip was for fun and not intended to be political. My children went with me. I don't intend on going back any time soon." Exhibit 130, Message from Plaintiff to D. Pipes.

**ANSWER:**

This is not a material fact.  It is also not a false statement.  Lisa Barbounis was informing Daniel Pipes that he should inform the Guardian that she was traveling with her children on personal time.

310.    Two days later, despite having not complained about any sexual misconduct or retaliation to Pipes or O'Brien, Plaintiff filed her first EEOC charge. Doc. 14 at 14.

**ANSWER:**

Contested.  Plaintiff's Charge of Discrimination speaks for itself.  Ms. Barbounis' Charge of Discrimination and specifically sexual harassment contained a plethora of new information involving Greg Roman that had never been investigated.  Defendant, Daniel Pipes ignored the Charges of Discrimination, refused to investigate, and refused to take corrective action.  Exhibit

J, K, L, and QQ.  Moreover, Plaintiff, Lisa Barbounis was beginning to understand that she was no longer welcome at MEF.  Lisa Barbounis and Patricia McNulty spoke with Daniel Pipes about serious issues related to Greg Roman's return.  Lisa Barbounis was well aware of Patricia McNulty's repeated attempts to report Greg Roman's retaliation after his return while he was purportedly on "probationary status."   Lisa Barbounis was well aware of new allegations of sexually inappropriate conduct where Greg Roman informed people that Marnie Meyer had an affair with Caitriona Brady's father. After Greg Roman heard the new allegation involving Caitriona Brady and Marnie Meyer had been reported to Daniel Pipes, Roman and Bennet tried to guess what the new allegation was about… or who the new allegation was about.  Bennet and Roman guessed that the new allegation involved Gabriel Bloom, another intern who Greg Roman believed accused him of sexual harassment.


311.    On June 10, 2019, Plaintiff complained to Benjamin Baird, another employee of the Forum with whom Barbounis engaged in a sexual affair, about Thomas, stating: ""Yep the minute I met him I couldn't stand him I told Tommy to stay away from him I knew he stole the 20,000 from Tommy. Tommy is just so freaking nice. When I met him out a drug Tommy and the crew away to a different bar turns out they were following us with hope not hate. ["Hope Not Hate" is a British organization] He called me the American bitch to Raheem. And then proceeded to kiss my ass in Brussels and like follow me around like a puppy dog." Exhibit 131, Messages between Plaintiff and B. Baird.

**ANSWER:**

This is not a material fact.

312.     On June 17, 2019, Pipes wrote to Plaintiff: "I am reluctant to tell you where to go and what to do in your private time. But I am adamantly opposed to the press getting wind of your working with Tommy; we have a limited role in his work and your repeated presence there goes much beyond our preferred limits. So, go if you wish but know I will be very upset with major consequences if your presence becomes known outside Tommy Robinson's own circles. Put differently, I much prefer you not go but I leave the decision to you." Exhibit 132, Message from D. Pipes to Plaintiff.

**ANSWER:**

The communication speaks for itself.

313.     On June 19, 2019, Pipes wrote to Plaintiff expressing his displeasure with her "casual unconcern" about a job announcement that Plaintiff failed to send out. Exhibit 133, Message from D. Pipes to Plaintiff.

**ANSWER:**

This is not a material fact.

314.     Plaintiff had intentionally failed to send it out so that McNulty's EEOC charge would arrive prior to the announcement. Id.

**ANSWER:**

Contested.

315.     On June 28, 2019, Twin Walton wrote to Plaintiff ending their affair over, among other things, Plaintiff's failure to report the money misappropriated by Thomas, stating: ""It

wasn't you I didn't want tho , i didn't like what the rest was doing so I thought fuck yas , that's why I didn't bother with the movement, look at how embarrassing it was in Liverpool and Oldham and Manchester they was getting chased round like little girls made me realise just what mugs they have around them as never once on the demo me Archie & Seamus did did anyone ever get the chance to attempt to do sumthing like that to tommy let alone get near him, tommy speaks the truth the rest our just out for fame on his back,I become delusional with it all after everyone thought it was okay for tomo [Daniel Thomas] to do that with the money if he can virtually rob you and your company & beg off others and no1 fucks him off for it then that's wrong that's not my shit that ain't how I get down I got fuck all for them demo everyone else getting clothes or money I done it because it was sumthing I believed in and still believe in , I'm famous in my own town I don't need anyone. I cared about you but you wouldn't havd it as you was so wrapped up in it it's all fun and games till people get hurt ..." Exhibit 117, Correspondence between Plaintff and Twin Walton (emphasis added) (all errors in original).

**ANSWER:**

Contested.  Defendants conclusion is misleading and does not comport with the information presented.

316.    Plaintiff responded to Twin Walton, stating: ""I just knew what my work situation was and I can't rock the boat too much. I have kids to feed. Additionally I believe in Tommy." Id. (emphasis added).

**ANSWER:**

The communication speaks for itself.


317.    On July 1, 2019, Barbounis appeared in a press release as an employee of

Robinson's media organization, TR.News, where TR stands for Tommy Robinson. The press release included full contact information for Barbounis. Exhibit 134, Press Release.

**ANSWER:**

This is not a material fact.

318.    Plaintiff had promised Pipes that she was travelling to London not to work with Robinson, but to observe his civil contempt trial.  Exhibit 132.

**ANSWER:**

This is not a material fact.

319.    On July 16, 2019, Plaintiff used MEF resources to send out media communications in her role as "Director of Communications" for TR.News. Exhibit 135, Press Communication.

**ANSWER:**

Contested.  The Exhibit does not confirm the information presented.  Defendants are misleading the Court with inferences in favor of the moving party.

320.    On July 19, 2019, Plaintiff was banned from Facebook for linking to an article on Robinson.  Exhibit 136, Plaintiff Banned from Facebook.

**ANSWER:**

This is not a material fact.

321.    That same day, Plaintiff threatened Jazmin Bishop to Thomas, stating: "I have a

boyfriend, I've moved on, I have been nice to her. And I have only ever tried to be civil with you. If I have to come over there and kick her little fucking ass I will" and "Fine. Just know that she is a LOSER and if she comes at me again I will ruin her fucking day." Exhibit 55 at p.1157).

**ANSWER:**

This is not a material fact.

322.    Finally, Plaintiff stated to Thomas: "For some weird reason I still have some loyalty to you and I will always be good to you as much as I can." Id. at p.1205.

**ANSWER:**

This is not a material fact.

323.    Plaintiff also told Thomas that she would "destroy" Bishop. Exhibit 137, Message from Plaintiff to J. Bishop.

**ANSWER:**

This is not a material fact.

324.    Plaintiff also told Bishop that she "love[s] torturing you." Exhibit 138, Message from Plaintiff to J. Bishop.

**ANSWER:**

This is not a material fact.

325.    Plaintiff received a litigation hold from The Forum in connection with this case before she resigned from The Forum, deleted all the files on her MEF computer with a factory reset, and before she deleted the Telegram app from her phone. Exhibit 2, Barbounis Dep, Part 1

at p.537-541

**ANSWER:**

Contested.  There were no files on the computer.  It was also not an MEF computer.  Exhibit A ¶

200.  According to the Bring Your Own Device Agreement, the employees had the option to pay

the balance and keep the computer as a personal device, or give it back. Id.  MEF waived the

balance for male employees like Matthew Bennett but required female employees like Lisa

Barbounis to pay the balance.  Id.  Lisa Barbounis could not afford the balance.  In order to

remove her personal usernames and passcodes from the device, she reset it to factor settings. Id.

This move did not destroy a single shred of relevant or discoverable information in this case. The

device was used to access cloud accounts.  There was no information stored locally. Id.

326.    On August 7, 2019, Plaintiff voluntarily resigned from her position at The Forum.

Exhibit 1, Certification of D. Pipes at 67.

**ANSWER:**

Contested.  Plaintiff's resignation was void of free will.  Defendants made Plaintiff's work life so

miserable that any reasonable person in her position would have also resigned.  See Plaintiff's

resignation letter attached and marked Plaintiff's Exhibit "SS".

327.    Prior to submitting her resignation to The Forum, Plaintiff had applied for and

obtained a position as Director of Communications for Congressman Randy Weber (R-TX).

Exhibit 139, Plaintiff's Resume.

**ANSWER:**

Plaintiff, Lisa Barbounis went directly from her position with MEF to her position with

Congressman Randy Weber.

328.     In her application for this position, Plaintiff misstated her role at MEF and embellished her media credentials: "Since entering my role as Director of Communication for the Middle East Forum I have increased our social media engagement by 32%. From June 2018 through June 2019, I helped place 1,128 articles by 56 experts in 97 outlets, from D.C.'s influential The Hill to the Wall Street Journal, from The Washington Times to Foreign Policy. Additionally, I arranged for 27 of our experts to be interviewed 92 times by 81 media outlets on both radio and television ranging from outlets like I24 News and Al Jazeera to Fox News." Id.

**ANSWER:**

Contested.  This information has nothing to do with Plaintiff's claims or Defendants' counterclaims.  This information is presented to embarrass and harassment and defame Plaintiff, Lisa Barbounis.


329.     Plaintiff continues to date to do work in this role. Exhibit 2, Barbounis Dep. Part 2 at p.381.

**ANSWER:**

Uncontested that Lisa Barbounis still works for United States Congressman, Randy Weber today.


330.     Plaintiff loves her job with Congressman Weber. Id. at p.411.

**ANSWER:**

Uncontested.


331.     Plaintiff makes more money working for Congressman Weber than she did while working at The Forum.  Id. at p.403.

**ANSWER:**

Uncontested.


332.    On September 24, 2019, Matthew Ebert, boyfriend of Marnie O'Brien, called

Roman via an unlisted, private number as an "anonymous source" with the stated intention of

"blowing the lid off an employment litigation action by former employees" of MEF. Exhibit 140,

Transcript of Call from M. Ebert.

**ANSWER:**

Plaintiff Lisa Barbounis has no knowledge related to Matthew Ebert's purported phone call.

Lisa Barbounis does not know Matthew Ebert.  Ms. Barbounis met Matthew Ebert once in

passing at a bar/restaurant.


333.    Ebert told Roman that the women involved in the lawsuit are all "banking on a

large settlement," and that the other women involved had questioned Barbounis' motivations for

suing. (Id.).

**ANSWER:**

Matthew Ebert testified under oath that there is no truth to the information is provided to Roman.


334.    On October 27, 2019, Plaintiff filed this lawsuit. Doc. 1.

**ANSWER:**

Uncontested.


335.    In October of 2019, after Bishop threatened to tell the Forum about Plaintiff's

knowledge of Thomas' misappropriation of funds, Plaintiff harassed Bishop in an effort to silence her, stating: "You're the biggest fucking loser I've ever met in my entire life. I actually can't think of anybody in the world more pathetic than you right now. Think about what you're doing on your Saturday night." Exhibit 141, Transcript of Plaintiff's Messages to J. Bishop at p.1.

**ANSWER:**

Contested.  The Exhibits and citation to the record presented by Defendants does not comport with the misleading Paragraph 335.

336.     Plaintiff also told Bishop, referring to Thomas: "He dogged you to me in texts you read. He slept with me and came home to you. He posted pics of your kids with our songs. And lied to you the WHOLE time. I'm the one who told your everything and you still think I'm the liar. You are totally insane" and "I am going to galas with the Vice President today. You think I care about two welfare losers [sic]." Exhibit 142, Consolidated Transcrips of Plaintiff's Messages to J. Bishop.

**ANSWER:**

This is not a material fact.

337.     Plaintiff also told Bishop, referring to Thomas: "I'll protect him but don't want him. I have no relationship with you. The only reason I ever showed you anything in the first place was because I was sick of all the lies. But since you refuse to go anywhere there's not benefit in that for me. It's all a cost benefit analysis. And there is no return on my investment from showing you anything." Exhibit 143, Messages between Plaintiff and J. Bishop.

**ANSWER:**

This is not a material fact.

338.   Plaintiff also told Bishop: "That's why it's so funny for me you get all angry and call me all these names but deep down it's all because you know how awesome I am and it scares you. You see me as a threat to your life. And if you didn't think that I had any power over you or Danny you wouldn't be messaging me." Id.

**ANSWER:**

This is not a material fact.

339.   Plaintiff also harassed Bishop by voice message, telling her: "Oh, but I do. I really do, because you were so pathetic and sad, you told me all of it. You poor thing. Have another abortion, you whore [laughter]." Exhibit 142.

**ANSWER:**

This is not a material fact.

340.   Plaintiff also told Bishop: "I went to an Ivy League school twice and I work for Congress, she's plenty proud. You mom's a junkie that puts fucking drugs up her snatch. What a loser." Id.

**ANSWER:**

This is not a material fact.

341.   Plaintiff also told Bishop: "Ha! Absolutely, positively not. Absolutely not. And I

have proof. If he wants to call me, tell him. Because I'm free to ruin both your lives. It's not a

problem for me at all." Id.

**<u>ANSWER:</u>**

This is not a material fact.

342.    Plaintiff also told Bishop: ""It's pathetic. Really is. You can't stop yourself. No

self esteem or self control. No sense of pride or self worth because there is no reason for it. You

are trash." Id.

**<u>ANSWER:</u>**

This is not a material fact.

343.    In 2019, Plaintiff engaged in a sexual relationship with an employee of the

Forum. Exhibit 2, Barbounis Dep. Part 1 at p.48.

**<u>ANSWER:</u>**

This is not a material fact in this case.  This information is presented solely to embarrass and

harass.

344.    In October 2019, Plaintiff stated publicly that she "has always made more than

her male counterparts." Exhibit 145, Plaintiff's Tweet.

**<u>ANSWER:</u>**

This is not a material fact in this case.  This information is presented solely to embarrass and

harass.

345.     Plaintiff blames this and numerous other sexual affairs that she carried out during and after her employment with the Forum on Roman, testifying that "the only reason that I had sex with anybody was because the Middle East Forum damaged my freakin emotional state." Exhibit 2, Barbounis Dep. Part 1 at p.62- 63.

**ANSWER:**

It is uncontested that Plaintiff, Lisa Barbounis' claim for emotional distress is linked to the severe and pervasive discrimination and harassment in the workplace to which Greg Roman subjected Ms. Barbounis during her employment with MEF.

346.     However, Plaintiff admitted that the issues between her and her husband were "like this long before danny [Thomas]," stating: "Danny was the catalyst for me to admit something was wrong. At one point I went to the OB/GYN and asked her if something was wrong with my hormones because I was never interested in sleeping with my husband and I used to love it. She said it was normal and that was what happens when we have kids and we are exhausted." Exhibit 146, Plaintiff's WhatsApp Messages with J. Bishop at p.245.

**ANSWER:**

This is not a material fact in this case.  This information is presented solely to embarrass and harass.

347.     Plaintiff sent intimate photos of her paramour, an MEF employee, to Delaney Yonchek, Plaintiff's subordinate. Exhibit 4, Yonchek Dep. at p.60-63.

**ANSWER:**

This is not a material fact in this case.  This information is presented solely to embarrass and

harass.

348.    Yonchek admitted that she felt uncomfortable as a result of Plaintiff's actions. Id.

**ANSWER:**

This is not a material fact in this case.  This information is presented solely to embarrass and

harass.

349.    On July 13, 2020, Thomas directly admitted to misappropriating the Forum's

grant funds. Exhibit 81, Transcript of Call with D. Thomas.

**ANSWER:**

Contested.  Defendants cannot use an unauthenticated, unverified, transcript from a supposed

telephone call between Defendant, Greg Roman and Daniel Thomas as evidence.  This is hearsay

without exception.  Moreover, the unsworn statements of Daniel Thomas, coming through Greg

holds no credibility.  Daniel Thomas stated that Greg Roman offered to pay something of value

for this information.  Daniel Thomas also voiced his true motives for providing the purported

statement.  Daniel Thomas stated, "I am taking her to fucking town, that cunt.  She fucking

ruined my life she did. … Greg Contacted me.  He gave me a little wink.  He said when this is

all over we will thank you."  Daniel Thomas immediate recanted the false statement he provided.

And Defendants have the audacity to present as evidence in a motion for summary judgment the

unverified, unauthenticated, unsworn statement of Daniel Thomas.  Plaintiff objects.

350.    On July 13, 2020, Thomas informed the Forum that Plaintiff concocted her

allegations of sexual harassment against Roman and the Forum in order to obtain a settlement

that would fund her move to London. Id.

**ANSWER:**

Contested.  Defendants cannot use an unauthenticated, unverified, transcript from a supposed telephone call between Defendant, Greg Roman and Daniel Thomas as evidence.  This is hearsay without exception.  Moreover, the unsworn statements of Daniel Thomas, coming through Greg Roman holds no credibility.  Daniel Thomas stated that Greg Roman offered to pay something of value for this information.  Daniel Thomas also voiced his true motives for providing the purported statement.  Daniel Thomas stated, "I am taking her to fucking town, that cunt.  She fucking ruined my life she did. …  Greg Contacted me.  He gave me a little wink.  He said when this is all over we will thank you."  Daniel Thomas immediate recanted the false statement he provided.  And Defendants have the audacity to present as evidence in a motion for summary judgment the unverified, unauthenticated, unsworn statement of Daniel Thomas.  Plaintiff objects.

351.   During her work with Robinson and her associations with others in his orbit and in various designated domestic terrorist organizations in the United States, Plaintiff was and has been for some time at the nexus of white nationalism in the U.S. and England. Exhibit 1, Declaration of Daniel Pipes, at ¶ 68-81.

**ANSWER:**

This is not a material fact.

352.   Had Pipes known about (1) Plaintiff's knowledge of and failure to report Thomas'

misappropriation of the Forum's grant funds for personal use; (2) her continual disregard of his instructions to limit her work for and association with Robinson; (3) her many misrepresentations to Pipes about the purpose of her trips so the United Kingdom; and (4) her treatment of Bishop in voice mails and text messages; Pipes would have terminated Barbounis with cause. Id. at ¶ 68-84.

**ANSWER:**

Contested.  This is not relevant to a motion for summary judgment. If anything it is an after acquired evidence argument that has no place in this case.


353.    The Forum's discovery, during the course of this lawsuit, of Plaintiff's misrepresentations and omissions concerning the money misappropriated by Thomas and her misrepresentations concerning her work and travel with Robinson motivated the Forum's decision to file its Counterclaims against Plaintiff and to seek recovery of damages caused by Plaintiff's disloyal behavior and fraudulent misrepresentation.  Id. at ¶ 82-85.

**ANSWER:**

Contested.  Defendants' counterclaims are the product of unlawful retaliation.  There is no basis in law or fact to support Defendants' counterclaims.


354.    On September 16, 2020, the Forum filed its Counterclaims against Plaintiff. Doc. 53.

**ANSWER:**

Uncontested.