# EXHIBIT T

Case 2:19-cv-05030-JDW   Document 126-17   Filed 04/20/21   Page 2 of 52

Deposition of Marc Fink                                    Lisa Barbounis v. Middle Eastern Forum, et. al.

IN THE UNITED STATES DISTRICT FOR THE EASTERN

DISTRICT OF PENNSYLVANIA


*   *   *

LISA BARBOUNIS,            : CIVIL ACTION - LAW
        Plaintiff          :
                           :
        vs                 :
                           :
MIDDLE EASTERN FORUM,      :
et al.,                    :
        Defendants         : NO. 2:19-cv-05030


*   *   *


            Videotaped deposition of MARC FINK, via

video conference, taken on Tuesday, November 24, 2020,

beginning at 3:03 p.m. before Pamela Pratt, via video

conference, Court Reporter and Notary Public in and for

the Commonwealth of Pennsylvania.



*   *   *

APPEARANCES:

                SETH D. CARSON, ESQUIRE
                (Via video conference)
                DEREK SMITH LAW GROUP, PLLC
                1835 Market Street, Suite 2950
                Philadelphia, Pennsylvania 19103
                (215)391-4790
                seth@dereksmithlaw.com

                -- Representing the Plaintiff


                JONATHAN R. CAVALIER, ESQUIRE
                DAVID J. WALTON, ESQUIRE
                (Via video conference)
                COZEN O'CONNOR
                One Liberty Place
                1650 Market Street
                Philadelphia, Pennsylvania 19103
                (215)665-2000
                dwalton@cozen.com

                -- Representing the Defendant
                   Middle Eastern Forum


                SIDNEY L. GOLD, ESQUIRE
                WILLIAM RIESER, ESQUIRE
                (Via video conference)
                SIDNEY L. GOLD & ASSOCIATES, P.C.
                Eleven Penn Center, Suite 515
                1835 Market Street
                Philadelphia, Pennsylvania 19103
                (215)569-1999
                sgold@discrimlaw.net

                -- Representing the Defendant Gregg Roman


ALSO PRESENT:

                Mike Gannone - Videographer
                Steven Levy
                Gregg Roman
                Daniel Pipes

Case 2:19-cv-05030-JDW   Document 126-17   Filed 04/20/21   Page 4 of 52

Deposition of Marc Fink                                    Lisa Barbounis v. Middle Eastern Forum, et. al.

# I N D E X

* * *

WITNESS:  Marc Fink

QUESTIONED BY:              PAGE

    Mr. Carson              5

# E X H I B I T S

* * *

| NUMBER | DESCRIPTION | MARKED FOR ID |
|--------|-------------|---------------|
| Fink-1 | E-mail - D13 | 40 |
| Fink-2 | E-mail -  D2 | 40 |
| Fink-3 | E-mail - D1 | 52 |
| Fink-4 | E-mail - D21-23 | 61 |
| Fink-6 | E-mail - D18 | 97 |
| Fink-7 | E-mail - D-29 | 97 |

* Exhibits were reatained by Attorney Carson
* No Exhibit 5 was marked.

Case 2:19-cv-05030-JDW   Document 126-17   Filed 04/20/21   Page 5 of 52

Deposition of Marc Fink                                      Lisa Barbounis v. Middle Eastern Forum, et. al.

Page 4

1   * * *
2   (It is hereby stipulated and agreed by
3   and among counsel for the respective parties that
4   sealing, certification, and filing are waived and that
5   all objections, except as to the form of the question,
6   are reserved until the time of trial.)
7   * * *
8   THE VIDEOGRAPHER:  We are now on the
9   record.  Today's date is Tuesday, November 24th, 2020
10  and the time is 3:03 p.m. Eastern Standard Time.  This
11  is the recorded video deposition of Marc Fink in the
12  matter of Lisa Barbounis versus Middle Eastern Forum, et
13  al, in United States District for Eastern District of
14  Pennsylvania, Case Number 219-cv-05030.
15  My name is Michael Gannone from Everest
16  Court Reporting and I am the video specialist.  The
17  court reporter today is Pam Pratt, also from Everest
18  Court Reporting.  All counsel appearing today will be
19  noted on the stenographic record.  Will the court
20  reporter please swear in the witness.
21  * * *
22  MARC FINK,
23  having been first duly sworn, was
24  examined and testified as follows:
25  * * *

Page 5

1   EXAMINATION
2   * * *
3   BY MR. CARSON:
4   Q.      Good afternoon, Mr. Fink.
5   A.      Good afternoon.
6   Q.      As you know, my name is Seth Carson and we're
7   here today to take your deposition.  And I think you
8   probably watched every one of these depositions.
9   A.      I know the drill.
10  Q.      So I'm just going to run through them super
11  fast; you don't even have to say yes or no.  You
12  understand you're under oath?
13  A.      Yes.
14  Q.      Okay.  Keep all your answers verbal.  Nods,
15  shrugs don't appear on the record, okay?  What else?
16  I'll ask questions, you'll answer questions.  You can
17  say whatever you want, yes, no, I don't know, I can't
18  remember, any other responsive answer you'd like to
19  provide.  But if you answer a question, I'm going to
20  assume that you understood the question, okay?
21  A.      Yep.
22  Q.      All right.
23  MR. CAVALIER:  Seth, just since I'm
24  stepping in here for Dave, just to note, we're going to
25  read and sign, reserve all objections.

Page 6

1   MR. CARSON:  And no problem.  So noted.
2   BY MR. CARSON:
3   Q.      Mr. Fink, can you please state your full name
4   for the record.
5   A.      Marc Fink.
6   Q.      And what is your job today?
7   A.      At the Middle East Forum, I am counselor.
8   Q.      Is that house counsel for the Middle East
9   Forum?
10  A.      Yep.  I have a number of roles within that.
11  Q.      Can you, kind of, just briefly describe the
12  roles you have with Middle East Forum?
13  A.      Yes.  So I am in-house counsel, as you know.
14  I am also chief editor which involves a lot of
15  fundraising materials.  I am also director of the Legal
16  Project, it's an external project that assists people
17  around the world who are victims of lawfare.
18  Q.      Victims of what?
19  A.      Lawfare.
20  Q.      Lawfare.  What's lawfare?
21  A.      The offensive use of legal action to harass
22  or bankrupt people.
23  Q.      That's an interesting project.  How long have
24  you held that position, director of the Legal Project,
25  with regard to the --

Page 7

1   A.      I've -- sorry.
2   Q.      Go ahead.
3   A.      The question is, how long have I held this
4   position?
5   Q.      Specifically the victims of lawfare.
6   A.      Well, make it easier.  I've been at the
7   Middle East Forum since, I believe, 2012 and I think
8   within a year or two, I was director of Legal Projects.
9   The other positions I've held the whole time.
10  Q.      And is that -- director of the Legal Project
11  for lawfare, is that a project that the Middle East
12  Forum sponsors?
13  A.      Yeah, it's -- I say external project.  It is
14  part of the Middle East Forum, yes.  Middle East Forum
15  has different projects, Islamist Watch, Campus Watch,
16  Washington Projects and Legal Projects, and I'm director
17  of the Legal Project, which is separate from my legal
18  counsel responsibilities.
19  Q.      And you said -- when you were hired --
20  sorry -- when were you hired at the Middle East Forum?
21  A.      2012.
22  Q.      And when you were first hired, you were hired
23  as in-house counsel?
24  A.      Yes.  I had another role.  To confuse you
25  more, I was director of Islamist Watch.  And as to my --

Deposition of Marc Fink                                                      Lisa Barbounis v. Middle Eastern Forum, et. al.

Page 8

1   as the work grew, I gave that up.
2   Q.      Okay.  Are you involved in -- strike that.
3           We looked at some documents today, one
4   of them was called the Middle East Forum Bylaws.  Did
5   you see that document before?
6   A.      I saw it when you put it up for Mr. Hollin.
7   I'm not familiar with the document, I did not work on
8   it.
9   Q.      Okay.  That was actually going to be my
10  question.  How long has the Middle East Forum been in
11  existence?
12  A.      Oh, you're quizzing me on things.  I believe
13  1994.  Don't -- I'm not a hundred percent sure.  I
14  believe 1994.
15  Q.      And those bylaws were already in place when
16  you were hired in 2012?
17  A.      Yes.  Yep.
18  Q.      Can you tell me who hired you in 2012?
19  A.      Yes.  That would be Daniel Pipes and a
20  gentleman by the name of Efriam Karsh who was the
21  director at the time.
22  Q.      Can you say his name again, please?
23  A.      Efriam Karsh.
24  Q.      Efriam Karsh.
25          THE COURT REPORTER:  Say it again.  I'm

Page 9

1   sorry.
2           THE WITNESS:  Karsh.
3   BY MR. CARSON:
4   Q.      Karsh?
5   A.      Yep.
6           THE COURT REPORTER:  Wait.  I'm sorry.
7   I still didn't get the name.  Say it again.
8           THE WITNESS:  I'm going to try and spell
9   it, although I'm a poor speller despite the fact that
10  I'm chief editor.  K-A-R -- is it S-H or is there a C in
11  there?  I think it's just K-A-R-S-H.
12          MR. CARSON:  That's how I spelled it.
13          THE COURT REPORTER:  What was the first
14  name?
15          THE WITNESS:  Efriam, it's an Israeli
16  name.
17          THE COURT REPORTER:  Okay.  Thank you.
18          MR. CARSON:  I spelled it F-R-Y-A-M.  I
19  don't know if I got it close.
20          THE WITNESS:  It's E-P-H.
21          MR. CAVALIER:  I think it's
22  E-P-H-R-A-I-M.
23          THE WITNESS:  That would be it.
24  BY MR. CARSON:
25  Q.      Okay.  And Efraim Karsh was the director of

Page 10

1   the Middle East Forum until when?
2   A.      Oh, goodness.
3   Q.      Ballpark.
4   A.      I just don't remember.  Maybe a year, maybe a
5   year-and-a-half, two years.
6   Q.      Were there any directors in between Efraim
7   Karsh and Mr. Roman?
8   A.      See, the titles sometimes don't correspond
9   with the activities.  Amy Shargel, I think, had had the
10  title of director, I'm not sure.  And shortly
11  thereafter, Gregg came.
12  Q.      Do you know why --
13  A.      I don't know --
14  Q.      I'm sorry.  Do you know why Amy Shargel's
15  employment with Middle East Forum ended?
16  A.      I do not.  I may have given legal advice on
17  the matter.
18  Q.      Was there, like, a reason for termination
19  that was provided to her that you're aware of?  Was she
20  terminated, I guess is a better question.
21  A.      I am not involved in any way in management,
22  administration or anything related to that unless there
23  is a legal issue that's elevated to me and then I
24  give -- either give advice or hire out the contract or I
25  secure outside counsel.  So in terms of all these

Page 11

1   management person -- the answer to that is, I may have
2   given legal advice and I actually don't remember.
3   Q.      Okay.  Amy Shargel was the director before --
4   directly before Mr. Roman?
5           MR. CAVALIER:  Object to form.
6           THE WITNESS:  Again, I am not sure if
7   she had the title; I think she did.  Maybe it was
8   managing director.  Again, I'm not -- I'm not an expert
9   in all these different titles and comings and goings.
10  BY MR. CARSON:
11  Q.      Is it fair to say that Mr. Roman began his
12  employment around the same time when Amy Shargel's
13  employment ended?
14  A.      To the best of my knowledge, there was some
15  overlap.
16  Q.      And when Mr. Roman began his employment with
17  Middle East Forum, what was his position?
18  A.      Director.
19  Q.      And were you involved in the hiring process?
20  A.      Nope.  I may have interviewed, but in the
21  same respect that any other, like, senior member of any
22  organization would interview people and then the boss
23  would ask for your advice, you know, what do you think
24  of this guy.  But no, I was not involved in the hiring
25  process except for possibly interviewing.

Deposition of Marc Fink                                          Lisa Barbounis v. Middle Eastern Forum, et. al.

Page 12

Q.     Do you know when his employment -- Mr.
Roman's employment began with Middle East Forum?
A.     I'm not very good with days.
Q.     Ballpark.
A.     I don't remember -- I'm really sorry.  I
don't remember, honestly.  I don't remember.  Maybe it
was, like, two or three years after I started, four
years.
Q.     I think it says on LinkedIn --
A.     It's all a blur; it's a blur to me.
Q.     That's fair.  I believe on LinkedIn, it says
he started around 2015.  Does that sound right?
A.     That sounds right, yep.
Q.     Okay.  The year that he started, are you
aware of any allegations of sexual harassment that were
presented by any employees in 2015?
       MR. CAVALIER:  I'm going to object to
the form and I'm also going to give the witness an
instruction now, as always during this deposition, to
answer only to the extent you can answer without
divulging any attorney-client confidences.
       THE WITNESS:  Everything I've learned
about alleged allegations I've learned through my legal
representation.  I'm really not involved in any other
way.

Page 13

BY MR. CARSON:
Q.     Well, if someone reported sexual harassment
at the Middle East Forum and they followed -- strike
that.
       Is there a policy for reporting sexual
harassment at the Middle East Forum?
A.     I'm not involved with that, but my guess is
that the -- there is a personnel director and it would
go through them.  Sorry.
Q.     Who was the personnel director in 2015?
A.     We're going with dates again.  To the best of
my knowledge -- again, I don't -- I don't even work in
the office, I work remote, so I'm not real familiar with
all the procedures and goings-on.  But to the best of my
knowledge, Marnie Meyer was the personnel director.  I
don't remember when she started.  I do not remember when
she started; I don't.  Somewhere around that time, 2015,
2016.
Q.     Yeah.  Yeah.  So what is your knowledge with
regard to the Middle East Forum's policy to prevent
discrimination and harassment in the workplace?  Do they
have a policy?
       MR. CAVALIER:  Same objection, same
instruction.
       THE WITNESS:  I gave legal advice on

Page 14

that.
BY MR. CARSON:
Q.     I'm not asking you to divulge legal advice.
I'm asking, do you know whether they maintain a
policy --
A.     Wasn't involved with it, wasn't really
involved with it any other way.
Q.     Do you know whether the Middle East Forum has
a policy to prevent discrimination and harassment in the
workplace?  Yes or no; do they have a policy?
A.     I may have -- I may have given legal advice
on that.  I'm not -- again, I'm not in management or
personnel.
Q.     I'm not asking whether you've given legal
advice.  I'm just asking you a simple yes-or-no
question.  I'm not asking you to talk about any
communications, I'm just asking if you know whether or
not there's a policy.
A.     I'll repeat my answer.  I may have given
legal advice on a sexual harassment policy.  That's -- I
may have given legal advice on a sexual harassment
policy.  That's the extent of my knowledge.
Q.     Did you give legal advice on the sexual
harassment policy?
A.     I can't remember a hundred percent.  I may

Page 15

have.  I do a lot of different things.  I may have.
It's probably something else that predated me, but I may
have.
Q.     Before you started working there, did they
have a policy to prevent sexual harassment?
A.     I don't know, I wasn't working there.
Q.     But, like, when you started, were you
notified about a policy?
A.     I don't remember.
Q.     Did you ever receive an employee handbook?
A.     I must have.
Q.     Was there a policy to prevent discrimination
and harassment in the workplace?
A.     I don't remember.  I don't remember.
Q.     Were you asked to acknowledge receipt of the
employee handbook?
A.     Don't remember.
Q.     Do you remember whether you actually did
acknowledge receipt of the employee handbook?
A.     No, I don't remember.
Q.     Do you know whether or not the Middle East
Forum today has a policy to prevent discrimination and
harassment in the workplace?
A.     I do not -- I'm not -- again, not in
personnel, not in management, so -- I only give legal

Page 16

1  advice.
2  Q.      But you're an employee of the Middle East
3  Forum, correct?
4  A.      Yes.
5  Q.      Are you a W-2 employee?
6  A.      Yes.
7  Q.      How many employees does the Middle East Forum
8  have?
9  A.      I'm not sure.
10 Q.      Can you estimate?
11 A.      I really don't know.  Fifteen, 20.  I don't
12 know.  I don't know.  It changes.  I don't know.
13 Q.      How many employees work in the Philadelphia
14 office today?
15 A.      I don't know.  I'm not -- I've never worked
16 in the office.  I may visit the office two or three
17 times a year for maybe an hour or two each time.
18 Q.      Where do you work from?
19 A.      I work from my home office.
20 Q.      Where is that?
21 A.      Cherry Hill, New Jersey.
22 Q.      Do you know whether or not the Middle East
23 Forum holds trainings to train their employees in
24 connection with how to report discrimination and
25 harassment in the workplace?

Page 17

1  A.      No, I --
2          THE COURT REPORTER:  I'm sorry.  Mr. --
3  I missed the end of that question.
4  BY MR. CARSON:
5  Q.      I said, do you know whether the Middle East
6  Forum trains their employees on how to report
7  discrimination and harassment in the workplace?
8  A.      I don't know.  I don't know.
9  Q.      Have you ever been trained on how to report
10 discrimination and harassment in the workplace?
11 A.      I don't recall.
12 Q.      Do you know whether or not employees are
13 provided with opportunities on any kind of interim basis
14 to report discrimination and harassment in the
15 workplace?
16 A.      I'm not in a place to know.
17 Q.      But -- so in your employment, have you ever
18 been provided with an opportunity to report --
19 A.      I may have.  I may have gotten a notice for a
20 meeting.  I may have not seen it.  I may have
21 disregarded it.  I don't remember.  I don't remember.
22 Q.      Do you remember whether Lisa Barbounis ever
23 reported discrimination and harassment in the workplace?
24          MR. CAVALIER:  Objection to form.  Same
25 instruction as earlier.  To the extent you can answer

Page 18

1  without divulging legal confidences or any
2  attorney-client communications, you can answer.
3          THE WITNESS:  I cannot -- I mean, I'll
4  try and make it easier for you.  Every single thing in
5  that regard is, I just gave legal advice.  I wasn't
6  involved.  Wasn't in the office.
7  BY MR. CARSON:
8  Q.      Well, you didn't give legal advice -- you
9  became Ms. Barbounis's manager, correct, after she
10 reported discrimination and harassment in the workplace?
11         MR. CAVALIER:  Object to form.  You can
12 answer.
13         THE WITNESS:  Yeah, absolutely not.  No.
14 BY MR. CARSON:
15 Q.      You didn't send an e-mail to my client and
16 tell her that you were going to be her manager at that
17 point?
18 A.      No.  But I could help you clear up the
19 confusion.
20 Q.      Sure.
21 A.      In the summer of 2019 for a number of weeks,
22 I supervised the weekly tasks of administrative
23 employees.  That was only for a few weeks in the summer
24 of 2019.  I had no authority over them and my -- the
25 extent of that supervision was that they would send me a

Page 19

1  weekly report via e-mail and I would thank them for it.
2  I do not believe I have ever even spoke with any of them
3  or did anything else.
4  Q.      But you did send them an e-mail telling them
5  that you were going to be managing their work from here
6  on out?
7  A.      I have no recollection of that, no.  I do not
8  believe I did, no.  If you want to show me something,
9  I'd be happy to look at it.  But I do not remember
10 sending them an e -- the only e-mails I sent was, thank
11 you for sending me your weekly report.  Or sometimes I
12 may have a question, did you do this or do that or you
13 forgot to send me your weekly report, would you please
14 send me your weekly report.
15 Q.      Did you ever investigate any discrimination
16 or harassment in the workplace during your employment?
17 A.      Absolutely not.  Nope.
18 Q.      You never performed any kind of
19 investigation?
20 A.      None.
21 Q.      You never took any witness statements?
22 A.      Nope.
23 Q.      You never interviewed Gregg Roman?
24 A.      Nope.  I may have given Gregg Roman legal
25 advice.

Case 2:19-cv-05030-JDW   Document 126-17   Filed 04/20/21   Page 9 of 52

Deposition of Marc Fink                                   Lisa Barbounis v. Middle Eastern Forum, et. al.

Page 20

Q.      So just to be sure, during your employment
with the Middle East Forum from the beginning of Gregg
Roman's employment until today, you've never taken any
investigative measures --

A.      No.

Q.      -- actually with a report of discrimination
or harassment in the workplace --

A.      No.

Q.      -- involving Gregg Roman?

A.      Never. Nope.

Q.      So to your knowledge, whose job was it to
investigate reports of discrimination and harassment in
the workplace?

A.      I'm not in a position to know. But to help
you, I would assume that it goes to the personnel
manager.

Q.      Marnie Meyer, at the time?

A.      Yep.

Q.      And if not Marnie Meyer, Daniel Pipes?

A.      Yeah, I would assume.

Q.      Are the reasons you would assume it's Daniel
Pipes is because he's the president of the organization?

A.      Yep.

Q.      And he's the only person in a position to
investigate Gregg Roman, correct?

Page 21

MR. CAVALIER: Object to form.

THE WITNESS: I have to say, I'm sure
that he would be spearheading it, but I don't know what
he would do. You'd have to ask him. But yeah, I would
assume he's the president, so he would be spearheading
it, yes.

BY MR. CARSON:

Q.      Did the Middle East Forum, to your knowledge,
hold a meeting on November 5th, 2018 due to reports of
discrimination and harassment in the workplace involving
Gregg Roman?

A.      Yes, I do remember that meeting.

Q.      Were you present at that meeting?

A.      I was present, yes.

Q.      Was Gregg Roman invited to that meeting?

MR. CAVALIER: Marc, before you answer,
I'm going to lodge the same objection, give you the same
instruction with respect to attorney-client
communications or confidences.

THE WITNESS: I gave legal advice on
that.

MR. CARSON: Yeah, every time you say --
every time you place an objection and Mr. Fink provides
the same answer afterwards. So if you guys --

THE WITNESS: That is the -- we're

Page 22

talking at the same time. I apologize.

MR. CARSON: Yeah. So if you guys have
some sort of message code where you said every time he
puts the objection, you're supposed to say that --

MR. CAVALIER: Seth, that's not going to
work.

MR. CARSON: -- that's not okay.

MR. CAVALIER: We're not going to
tolerate it.

MR. CARSON: That's the second time
where he started to answer a question, you put the
objection in and then he changed his answer.

MR. CAVALIER: The witness is giving you
honest answers and I'm lodging valid objections.

MR. CARSON: No, you're not.

MR. CAVALIER: Don't imply that I'm
somehow violating the rules of this deposition. You did
that earlier with Dave and it backfired in your face.
Don't try it with me. Ask the question.

MR. CARSON: It didn't backfire.

THE WITNESS: I declare it. I have no
idea what you're talking about.

MR. CAVALIER: There wasn't a single
objection that was entered after the call with Mr.
Wolson. It worked perfectly, actually. So you might

Page 23

want to check your definition of backfire.

MR. CAVALIER: Well, regardless, I'm not
going to sit here and have you make veiled threats in
references to motions --

MR. CARSON: It's not a veiled threat.
I'm suggesting that every time that you put the
objection in, the answer changes. So just --

MR. CAVALIER: Oh, your suggestion is --

THE WITNESS: I was going to -- I don't
understand what the -- what the issue is, Seth. I gave
legal advice.

BY MR. CARSON:

Q.      I'm asking you whether or not you know
whether Mr. Roman was invited to attend the November
5th, 2018 meeting.

MR. CAVALIER: Same objection, same
instruction. Subject to that, to the extent you can,
you can answer.

THE WITNESS: I gave legal advice on
that.

BY MR. CARSON:

Q.      I'm not asking you about legal advice, I'm
asking --

A.      There's an issue and I gave legal advice on
that issue.

Page 24

Q.      I'm not asking you what your legal advice
was.  I'm asking if you know whether he was invited to
it or not.
A.      I refer you to my pervious answer.
Q.      Yeah, but -- so what legal advice are you
referring to?  You gave legal advice in connection with
him coming to the meeting?
        MR. CAVALIER:  Objection and I'm going
to instruct you specifically not to answer that
question.
        MR. CARSON:  I'm asking questions
about -- I'm going to find out what this objection and
this refusal to answer the question is based on, so --
        MR. CAVALIER:  It's based on the fact
that his awareness of the subject of the answer is part
of the legal advice he rendered on the issue that he
identified for you.  I'm instructing him not to answer
the question.
BY MR. CARSON:
Q.      How were you aware that Mr. Roman was going
to come to a meeting?
        MR. CAVALIER:  Let me finish.  If you're
going to ask a question, let me finish responding to
you.  To the extent you just asked him what the legal
advice was that he provided, he's certainly not going to

Page 25

answer that.
        MR. CARSON:  That isn't what I asked
him.
        MR. CAVALIER:  That's exactly what you
asked him.  If you want to ask him a different question,
you can go ahead.
        MR. CARSON:  That's not what I asked.
BY MR. CARSON:
Q.      Why -- how did you become aware that Mr.
Roman was invited to the meeting?
        MR. CAVALIER:  Objection.  Same
instructions.  To the extent you can answer subject to
that instruction, you can answer.
BY MR. CARSON:
A.      You didn't become aware due to legal advice,
correct?  You became aware because it was in a memo that
you were on, correct?
        MR. CAVALIER:  Same objection.  Same
instructions.
BY MR. CARSON:
Q.      Right?
A.      I can't answer the question.
Q.      Were you or were you not included in a memo
that went out to the entire office informing them about
the meeting?

Page 26

A.      I don't remember.  You can show me the memo,
I'd be happy to look at it.
Q.      Do you remember receiving a memo?
A.      I don't.
Q.      So how did you find out about the meeting?
        MR. CAVALIER:  Same objection, same
instruction.
        THE WITNESS:  Yeah.
BY MR. CARSON:
Q.      There he goes again.  About to answer and
then he changes his answer.
A.      I was going to -- okay.  I'll make it easy
for you, Seth.  My answer was going to be, I gave legal
advice.
Q.      No, it wasn't.
A.      No.  No.  No.  It was.  I was giving legal
advice hour after hour after hour.  That's all I was
doing.
Q.      How did you become aware that there was going
to be a meeting on that day?
A.      The same answer.  I was giving legal advice.
Q.      You became aware when you were giving advice?
A.      I gave legal advice on that matter.
Q.      And you became aware of the meeting while you
were --

Page 27

A.      If you want to show me a memo, I'd be happy
to look at it.
Q.      I'll show it to you.  You are on this memo,
correct?
A.      Yep, looks like it.
Q.      Well, isn't that how you became aware of the
meeting?
        MR. CAVALIER:  I'm going to object.  To
the extent you want him to answer questions about this
document, Seth, as I've told you before, you've got to
show him the document and let him read it.
        MR. CARSON:  He's looking at it.
        MR. CAVALIER:  He's looking at a header
and a block of e-mail addresses.  He can't --
        MR. CARSON:  He can tell me to scroll
around.
BY MR. CARSON:
Q.      Isn't this how you became aware of the
meeting?
A.      Not necessarily.  And again, it goes to me
giving legal advice.
Q.      Did you receive this memo?
A.      It appears so, yes.
Q.      Gregg Roman was invited to the meeting,
correct?

Page 28

1  MR. CAVALIER: Object to form. Object
2 on the same basis as I did earlier. To the extent you
3 can answer without giving away attorney-client
4 confidences, you can answer.
5  THE WITNESS: Yeah, looking at the memo
6 on the screen, assuming that it's correct, which I have
7 no doubt -- no doubt that it's not correct, yes.
8 BY MR. CARSON:
9 Q.  Do you think that's appropriate, that he was
10 invited?
11  MR. CAVALIER: Same objection, same
12 instruction.
13 BY MR. CARSON:
14 Q.  I'm not asking you to divulge any
15 confidences.
16 A.  That gets into legal advice.
17 Q.  Do you think it's appropriate for the
18 harasser to be invited to the meeting to discuss --
19  MR. CAVALIER: Objection to form.
20  THE WITNESS: Legal advice.
21  MR. CAVALIER: Object to form. Object
22 to lack of foundation. And to the extent you can answer
23 without divulging --
24 BY MR. CARSON:
25 Q.  Mr. Roman was the alleged harasser when

Page 29

1 this --
2  MR. CAVALIER: Seth, let me lodge my
3 objections. You're not going step all over me during
4 this deposition.
5 BY MR. CARSON:
6 Q.  Mr. Roman was the alleged harasser, correct,
7 when this memo came out?
8  MR. CAVALIER: I'm going to object to
9 form. You can answer that to the extent possible.
10  THE WITNESS: Repeat your question.
11 BY MR. CARSON:
12 Q.  Mr. Roman was the alleged harasser when this
13 memo was sent, correct?
14 A.  Again, I'm going to assert privilege myself.
15 This is -- all has to do with legal advice I was giving
16 at the time.
17 Q.  My question doesn't.
18 A.  If you want to ask me about something that
19 happened in the meeting, I probably don't remember, but
20 I'd be happy to answer you.
21 Q.  Was it alleged at the meeting that Mr. Roman
22 sexually harassed three women?
23 A.  I'm sorry. Repeat that.
24 Q.  Were there allegations discussed at the
25 meeting of sexual harassment?

Page 30

1 A.  There were a lot of grievances against Gregg
2 at that meeting. That's what I remember.
3 Q.  Sexual harassment was one of them?
4 A.  I don't remember because there were more
5 grievances that seemed to be -- people felt more strong
6 about, that he was a really -- difficult to work with,
7 et cetera, et cetera, et cetera.
8 Q.  I'm just asking about sexual harassment in
9 the meeting.
10 A.  I vaguely remember.
11 Q.  You vaguely remember whether there was sexual
12 harassment discussed at a meeting held to discuss sexual
13 harassment?
14  MR. CAVALIER: Object to form, object to
15 lack of foundation and object to the mischaracterization
16 of the prior question and testimony.
17  THE WITNESS: I do not remember the
18 details of that meeting. It was not a seminal event in
19 my life.
20 BY MR. CARSON:
21 Q.  It was a seminal event in Mr. Roman's life,
22 correct?
23 A.  Okay. So ask him.
24 A.  Mr. Roman lies about it, too.
25  MR. CAVALIER: I'm going to object to

Page 31

1 that gratuitous and incorrect statement on the record,
2 for whatever that's worth. I guess there's no question
3 pending, though, so there's nothing else to object to.
4 BY MR. CARSON:
5 Q.  Mr. Roman testified that he didn't know about
6 the meeting either, correct?
7  MR. CAVALIER: Object to form, object to
8 lack of foundation. You can answer to the extent you
9 can, again, without divulging any attorney-client
10 confidences.
11 BY MR. CARSON:
12 Q.  Was there a meeting held to discuss how to
13 avoid questions with regard to the deposition today?
14  MR. CAVALIER: I'll just object to the
15 implication there. But you can answer that as long as
16 you don't talk about anything that you and I talked
17 about.
18  THE WITNESS: Absolutely not.
19 BY MR. CARSON:
20 Q.  So you think that the allegations of sexual
21 harassment were the least important allegations
22 discussed at that meeting; is that your testimony?
23  MR. CAVALIER: Object to form. Object
24 to the mischaracterization of prior testimony.
25  THE WITNESS: Ask me a straight

Page 32

1 question, I'll answer you. I don't understand.
2 BY MR. CARSON:
3 Q.      Answer the question I asked you.
4          MR. CAVALIER: Same objection.
5 BY MR. CARSON:
6 Q.      Is it your testimony that the least important
7 allegations raised at that meeting were allegations of
8 sexual harassment?
9 A.      Yeah. Yeah, that's my memory. Yes. Yes.
10 Yeah. Yeah.
11 Q.      So why was that meeting called?
12 A.      That goes to legal advice.
13 Q.      Well, what's your understanding of why it was
14 called?
15          MR. CAVALIER: Same --
16          THE WITNESS: That goes to legal advice.
17 BY MR. CARSON:
18 Q.      I'm not asking about any advice that you
19 gave. I'm not asking about any advice that anyone else
20 gave. When Daniel Pipes sent the memo, what was your
21 understanding about the meeting?
22          MR. CAVALIER: Same objection, same
23 instruction.
24          THE WITNESS: I cannot answer that
25 without divulging advice I gave to the Middle East

Page 33

1 Forum.
2 Q.      Yeah, you can.
3          MR. CAVALIER: No, he can't. He just
4 told you he can't. He's not going to.
5          THE WITNESS: I did my best to describe
6 what went on in the meeting. I really don't remember
7 too much. That's about as much as I could do.
8 BY MR. CARSON:
9 Q.      Did you ever to talk to my clients about
10 sexual harassment?
11 A.      To the best of my knowledge, no. I have
12 barely even spoken with your clients at all.
13 Q.      Did you ever talk to Lisa Barbounis about
14 sexual harassment?
15 A.      Not to my knowledge, no.
16 Q.      Patricia McNulty?
17 A.      Not to my knowledge, no.
18 Q.      Gabrielle Bloom?
19 A.      I don't even know who that is.
20 Q.      Do you know why she was given money?
21 A.      I don't even know who that is. No idea.
22 Seth, I hear the name in depositions. No idea who that
23 is.
24 Q.      Do you know who Leah Merville is?
25 A.      No idea.

Page 34

1 Q.      Do you know whether anyone ever investigated
2 allegations that Mr. Roman maintained a sexual
3 relationship with Ms. Merville?
4 A.      I don't even know who she is, so the answer's
5 no.
6 Q.      Is that something that Middle East Forum
7 should have done?
8          MR. CAVALIER: Object to form. I'm
9 going to give instruction again. To the extent you can
10 answer that without divulging attorney-client
11 confidences, you can try to answer.
12          THE WITNESS: Again, I could -- I'm
13 telling you, I never even heard of her and I have no
14 idea.
15 BY MR. CARSON:
16 Q.      Do you think that the Middle East Forum is
17 obligated to investigate every allegation of sexual
18 harassment presented?
19          MR. CAVALIER: Object to form. Same
20 instruction with respect to the privilege. To the
21 extent you can answer without disclosing any privileged
22 information, you can answer.
23          THE WITNESS: I think that every
24 organization should definitely investigate any
25 allegations of sexual harassment coming from an

Page 35

1 employee, yes.
2 BY MR. CARSON:
3 Q.      Only coming from employees?
4 A.      Yeah.
5 Q.      So if customers allege sexual harassment --
6 A.      Well, that could -- well, that's another
7 legal issue, but definitely employees.
8 Q.      Well, isn't it the same issue?
9 A.      I don't know what you're talking about. Who
10 are we talking about?
11 Q.      I'm talking in general with regard to MEF's
12 policy to prevent discrimination and harassment --
13 A.      We don't have customers, we're not a retail
14 store.
15          MR. CAVALIER: I'm going to object to
16 the lack of foundation and the reference back to the
17 fact that you now say you were talking about MEF's
18 policies when the question was general in nature to
19 begin. Subject to that objection --
20          THE WITNESS: I don't know what MEF's
21 policy -- you said this is a general should an
22 organization. That was what I was -- to be clear of the
23 record, I was answering should any organization.
24 BY MR. CARSON:
25 Q.      Yeah, repeat the same thing your lawyer just

Page 36

1  said. Go ahead. Go ahead.
2  A.      What's that?
3  Q.      Go ahead and repeat what your lawyer just
4  said. Go ahead, I'll let you do it. Go ahead.
5  A.      I don't understand what you just said.
6  Q.      I know you don't.
7           MR. CAVALIER: He's trying to be a
8  smartass.
9           MR. CARSON: No, what you're doing
10 obstructing the deposition is inappropriate.
11          THE WITNESS: Well, for the record, I
12 mean, I'm trying to be as straight as possible and get
13 through this for all of us. I'm not trying to play any
14 games. So I'm taking you at your -- at you being
15 straight.
16 BY MR. CARSON:
17 Q.      Right. And so then it's your testimony today
18 that the November 5th, 2018 meeting was not called in
19 connection to allegations of sexual harassment?
20 A.      I did not answer that question because it
21 went into legal advice.
22 Q.      Well, based on being there, was it called for
23 that?
24          MR. CAVALIER: Same objection.
25          THE WITNESS: I'm happy to repeat the

Page 37

1  answer I gave previously. From what I --
2  BY MR. CARSON:
3  Q.      You were present at the November 5th, 2018
4  meeting, right?
5  A.      Yes.
6  Q.      So based on being there, was that meeting
7  called to discuss allegations of sexual harassment?
8  A.      I cannot get into why it was called. Sitting
9  there -- and I don't remember a lot, but sexual
10 harassment was definitely not the biggest issue in that
11 meeting. It was a rant session about what a hard boss
12 Gregg Roman -- Gregg Roman was.
13 Q.      What was the most serious issue discussed at
14 that meeting?
15 A.      I don't remember.
16 Q.      Wasn't it allegations that he sexually
17 assaulted two employees?
18 A.      I just said it wasn't.
19 Q.      Why are you saying that it wasn't, because
20 they didn't focus on that the entire time?
21 A.      It was --
22          MR. CAVALIER: Object to form.
23          THE WITNESS: I'm repeating the same
24 answer. I mean, if you want to talk about it for two
25 hours, I guess we could talk about it for two hours, but

Page 38

1  I'm repeating my same answer.
2  Q.      We're --
3           THE COURT REPORTER: I'm sorry. What
4  did you say, Mr. Carson.
5  BY MR. CARSON:
6  Q.      We're going to discuss it for as long as it
7  takes. If it takes two hours, it will take two hours.
8  A.      I refer you to my previous answer or you
9  could ask it again.
10 Q.      I'll ask the question. Based on your being
11 present, what was the most serious allegation alleged in
12 connection to Gregg Roman's conduct?
13          MR. CAVALIER: Object to form.
14          THE WITNESS: I'll answer it again.
15 That he was a hard boss.
16 BY MR. CARSON:
17 Q.      So it wasn't alleged -- was it alleged at the
18 meeting that he put hands on Patricia McNulty?
19 A.      I don't remember.
20 Q.      Well, wouldn't that be more serious than him
21 being a hard boss?
22          MR. CAVALIER: Object to the form and
23 the use of the word "serious."
24 BY MR. CARSON:
25 Q.      Significant.

Page 39

1  A.      You're asking my impression -- go ahead.
2  You're asking my impression of a meeting two-and-half
3  years ago -- three or two years ago, whatever. You're
4  asking my impression. That's -- I'm giving you my
5  impression. You could ask it a hundred different ways.
6  Q.      So you think that if someone talks about
7  their supervisor putting hands on them in a sexually
8  inappropriate way and then another somebody talks about
9  someone being a hard boss, it's more significant or
10 concerning that --
11 A.      I do not remember --
12          MR. CAVALIER: Object to form.
13          THE COURT REPORTER: Gentlemen, I can't
14 do this.
15          MR. CAVALIER: Marc -- Marc -- Marc, let
16 him finish the question and let me -- again, give me
17 time to object.
18          THE WITNESS: Okay. I'm sorry.
19          MR. CARSON: Yeah, he has to tell you
20 how to answer.
21          MR. CAVALIER: Seth, I've got to tell
22 you, you do that one more time and we're done with this
23 deposition.
24          MR. CARSON: No, we're not.
25          MR. CAVALIER: Watch it happen.

Deposition of Marc Fink                                    Lisa Barbounis v. Middle Eastern Forum, et. al.

Page 40

1    MR. CARSON:  It's not going to happen.
2    MR. CAVALIER:  Do it again and we'll
3  see.
4    MR. CARSON:  I'll do it -- as many times
5  as you tell how to answer is as many times as I'll do
6  it.
7  BY MR. CARSON:
8  Q.    Do you see this e-mail right here?
9  A.    Scroll up.  Scroll up -- scroll up to the
10  top.
11  Q.    The first e-mail we looked at --
12    MR. CAVALIER:  Seth, are you going to
13  let him see the document or not?
14    MR. CARSON:  The first e-mail that we
15  looked at will be Fink-1 and it's going to be D -- hold
16  on -- it's going to be D13 -- it's going to be D13.
17  So Fink-1 is D13, okay?  Fink 2 is going to be D2, okay?
18    (Exhibits Fink-1 and Find-2 were marked
19          for identification.)
20  BY MR. CARSON:
21  Q.    Now, where do you want me to scroll?
22  A.    I don't know.  What do you want to show me,
23  this e-mail right here?  Okay.  Stop right there.  Is
24  this what you want to show me?
25  Q.    Marked Fink-2 and it's Bates-stamped D2.

Page 41

1  A.    Okay.  So what do you want to ask me about
2  it?
3  Q.    You were on this e-mail, correct?
4  A.    I see that I was copied, I do not remember
5  the e-mail.
6  Q.    You received it, though, correct?
7  A.    If that's correct, I did.  I do not have any
8  memory of it.
9  Q.    Well, I'm showing you a document that was
10  produced.
11  A.    Okay.  I'm not disputing it -- I'm not
12  necessarily disputing it.  I just said, I don't remember
13  it.  I get hundreds of e-mails a day.
14  Q.    This was just another e-mail you got,
15  correct?
16  A.    I got thousands of e-mails with this matter.
17  Q.    Yeah, and this is just another one that you
18  had to deal with, correct?
19    MR. CAVALIER:  Object to form.
20  BY MR. CARSON:
21  Q.    No reason to remember it, right?
22  A.    So what's the question?
23  Q.    Do you have any reason to remember this
24  e-mail?
25    MR. CAVALIER:  Object to form.

Page 42

1    THE WITNESS:  What's the question?
2  Seth, I'm trying to be straight with you.  I'm not
3  trying to play games or grandstand.  What's the
4  question?
5  BY MR. CARSON:
6  Q.    My question is, do you have any specific
7  reasons to remember an e-mail sent by Patrician McNulty
8  on 11-4-2018 which he copied to you?
9  A.    I do not remember that e-mail, no.  But I see
10  I'm on -- I don't dispute that I had it, I don't dispute
11  that I read it.
12  Q.    Well, do you think this -- go ahead.
13  A.    Nothing else.
14  Q.    Do you think Ms. McNulty remembers sending
15  this e-mail?
16    MR. CAVALIER:  Object to form.
17  BY MR. CARSON:
18  Q.    Is that funny?
19  A.    Yeah.  I don't even know her.  How am I
20  supposed to know if she remembers?  Ask her.  Why are
21  you asking me?
22  Q.    Well, it's an e-mail where she alleged that
23  Gregg Roman, her boss, put his hands on her in a
24  sexually inappropriate way.
25  A.    So what's the question?

Page 43

1  Q.    So chances are, she remembers it, right?
2    MR. CAVALIER:  Object to the foam.
3    THE WITNESS:  I have no idea if she
4  remembers it.
5  BY MR. CARSON:
6  Q.    "Dear Daniel:  On November 1st, I confirmed
7  with you that I was aware of certain indiscretions
8  between Lisa Barbounis and Gregg Roman during a trip to
9  Israel in May.  While the two were in Israel, Lisa and I
10  had a conversation via text and call where she expressed
11  Gregg was inappropriate toward her and had also informed
12  her of his previous indiscretions with MEF intern Leah
13  Merville.  She mentioned being very scared and
14  uncomfortable, to the extent that she had a knife under
15  her pillow."  You don't remember receiving this?
16  A.    I gave legal advice.
17  Q.    Do you remember -- I asked you, do you
18  remember receiving the e-mail?
19    MR. CAVALIER:  Object to the form and
20  object to asked and answered.
21    THE WITNESS:  I don't remember this
22  particular e-mail.
23  BY MR. CARSON:
24  Q.    You don't remember it, right?  Right?
25  A.    I refer you to my previous answer.

Page 44

Q.     Exactly. I mean, we're going to get to the bottom of this. But you just said you don't remember receiving it, he puts his objection in and then you just changed to I refer you to my previous answer.

MR. CAVALIER: I'm going to object to that categorization.

BY MR. CARSON:

Q.     Do you remember receiving the e-mail?

A.     I answered that question ten times.

MR. CAVALIER: Object as asked and answered.

THE COURT REPORTER: All right. All right. All right. Gentlemen. Gentlemen, I can't keep doing this. One at a time, please.

BY MR. CARSON:

Q.     I've now read you the first paragraph of the e-mail. Does that ring any bells? Do you remember yet?

MR. CAVALIER: Object to form.

THE WITNESS: I do not remember this particular e-mail. I gave massive amount of legal advice on the topic in the e-mail.

BY MR. CARSON:

Q.     Uh-huh. "She mentioned being very scared and uncomfortable to the extent that she had a knife under her pillow." Did you remember that?

Page 45

MR. CAVALIER: Object to form. Same objections.

BY MR. CARSON:

Q.     Did you remember receiving the e-mail now?

A.     Seth, my answer's not going to change. I've been consistent. I've not changed my answer at all.

Q.     So you know that you're going to say that you don't remember receiving it regardless of what the e-mail says?

A.     You could read it to me 30 times. I remember that you read it to me three minutes ago. I do not remember this particular e-mail and reading it.

Q.     You haven't even read it. How come you're testifying you don't remember receiving something that you haven't even read?

MR. CAVALIER: Object to form.

BY MR. CARSON:

Q.     Have you taken the time to read this e-mail today? No, right?

MR. CAVALIER: Seth, you know what? I'll just -- I'll let you ask the question. I mean, you're asking him two different questions.

BY MR. CARSON:

Q.     You have not taken the time to read this e-mail today and you're testifying that you don't

Page 46

remember receiving it. How do you know you don't remember receiving it when you didn't read it yet?

A.     I've been staring at this e-mail for five minutes.

Q.     I'll continue. It hasn't been up for five minutes. I'll continue, though. "When she mentioned Gregg was being weird and had drank too much and was making her feel uncomfortable, I asked her if he meant he was getting the AIPAC couches. My reference was to the night after our MEF dinner at AIPAC. Following the dinner, we attended another AIPAC event where guests were drinking before going to a bar. After the bar, MEF staff and a few other AIPAC attendees went back to the Airbnb where Gregg was staying. In the living room, Gregg was sitting on the couch in between Lisa and myself. Matt Bennett, Marnie Meyer, Raheem Kassam and three other men who I did not know were all in the room discussing work and possible collaborations. After about 15 minutes, Gregg abruptly asked the three men to leave the room. At that point, as the men were trying to wrap up their conversations with Matt, Gregg put his arm around Lisa and myself and pulled me in to him so that I was almost in his lap and began whispering in my ear that no other men should be in the room." Do you remember that?

Page 47

A.     I gave a lot of legal advice on those issues -- those accusations.

Q.     But this is what was discussed on November 5th, 2018, correct?

A.     So now we're back at the meeting.

Q.     This e-mail was sent the day before November 5th, 2018, correct?

A.     I do not remember what happened at that meeting except for how I previously characterized it.

Q.     This is the e-mail she sent in advance of the meeting, right?

MR. CAVALIER: Object to form.

THE WITNESS: I don't remember the dates.

BY MR. CARSON:

Q.     Well, we're looking at the dates right here. You don't --

A.     Maybe it was after, maybe it was before. I don't know.

Q.     Well, we're looking at it. It was November 4th, 2018.

A.     Okay. Well, when was the meeting? I don't even know.

Q.     You don't know when the November 5th meeting was?

Deposition of Marc Fink                                    Lisa Barbounis v. Middle Eastern Forum, et. al.

Page 48

1  A.       Okay, November 5th.  So what's the question?
2  Q.       The question was, isn't this what was
3  discussed at the November 5th meeting?
4  A.       I already characterized my memory of the
5  meeting.
6  Q.       Nonresponsive.
7  A.       I have responded -- I've been responding for
8  ten minutes.  I can repeat what I said.
9  Q.       Wasn't this discussed at the meeting?
10 A.       I do not recall.
11 Q.       Well, this is more serious --
12 A.       That's your characterization.
13 Q.       -- than Gregg being a bad boss, correct?
14 A.       It wasn't his being a bad boss.
15         MR. CAVALIER:  Object to the form of the
16 last question.  Marc, you can move on.
17 BY MR. CARSON:
18 Q.       It wasn't just being the bad boss, what do
19 you mean by that?
20 A.       No, it meant that -- well, it was being a
21 really hard boss and basically driving them crazy and
22 they couldn't put up with it.  But I don't remember -- I
23 don't remember any other details.  But that was -- they
24 were going around ranting about him for, like, an hour.
25 That's all I remember.

Page 49

1  Q.       They were just ranting about Gregg Roman?
2  A.       Yes.  Yep.
3  Q.       Nothing serious?
4         MR. CAVALIER:  Object to form.
5  BY MR. CARSON:
6  Q.       Wasn't this more serious than being a bad
7  boss?
8         MR. CAVALIER:  Object to form and use of
9  the word "serious."
10 BY MR. CARSON:
11 Q.       Wasn't this more concerning a report than
12 being a bad boss?
13 A.       I've already answered you.
14 Q.       I don't know what you said.
15 A.       What are you asking me?  Are we at the
16 meeting?
17 Q.       Isn't it --
18 A.       My characterization of the meeting is as I've
19 been telling you.  They were much more concerned about
20 him being a bad boss than any allegations of sexual
21 harassment.  I don't even remember them coming up.
22 Q.       How do you know what they were concerned
23 about?
24 A.       I don't remember.
25 Q.       So then why are you saying they were much

Page 50

1  more concerned with him being a bad boss?
2  A.       Because they spent the vast majority of the
3  meeting going on and on about what a hard boss he was.
4  Q.       You remember that?
5  A.       Yeah.
6  Q.       And you don't remember --
7  A.       Because it took up most of the time.
8  Q.       And you don't remember her talking about what
9  she e-mailed the day before the meeting about?
10 A.       I do not.  I don't remember much about the
11 meeting.
12 Q.       You just remember it was about him being a
13 bad boss, though?  That you remember, right?
14 A.       Everybody took their turn and was saying how
15 awful it was to work for him, yes.
16 Q.       Well, who took their turn?
17 A.       Including males; including Matthew Bennett.
18 Q.       Matthew Bennett complained about Mr. Roman's
19 inappropriate behavior at the meeting; didn't he?
20         MR. CAVALIER:  Object to form.
21         THE WITNESS:  Matthew Bennett complained
22 about Gregg Roman being a hardass boss who was very
23 difficult to work with.  That was the gist of the
24 meeting that I remember.
25 BY MR. CARSON:

Page 51

1  Q.       Did anyone ever report sexual harassment at
2  that meeting?
3  A.       Again, I don't remember.
4  Q.       Did Mr. Pipes bring up this e-mail at the
5  meeting?
6  A.       I don't remember.
7  Q.       Well, isn't that something that you think
8  should have been brought up at the meeting?
9  A.       Ask him.  I don't know.
10 Q.       Wasn't part of your job to help understanding
11 these issues?
12 A.       My job was to give legal advice to the Middle
13 East Forum officials and I did that a lot.  And I was
14 not involved any other way except I was at that meeting.
15 Q.       Do you believe this happened?
16         MR. CAVALIER:  Object to the form.
17 BY MR. CARSON:
18 Q.       There's a question pending.
19 A.       Is there a question on the table?
20 Q.       Yeah.
21 Q.       What's the question?
22 Q.       Do you believe this happened?
23 A.       Yeah, I'm not going -- that's an
24 inappropriate line of questioning.  I'm their attorney.
25 I mean, are you going to have John and Dave -- put them

Page 52

1  under oath and ask them?
2  Q.      I'm asking you, because you were there when
3  it was reported, whether or not you believed the
4  allegations.
5  A.      I was only at the meeting.  I don't even
6  remember what was said at the meeting.  So you're asking
7  me to give you an opinion on something I don't remember.
8  Other than that, everything I know about this case was
9  in the context of me giving legal advice.
10 Q.      You were cc'd on his response, too, correct?
11 A.      I was cc'd on a ton of stuff.  So if you're
12 going to ask me each one, I mean, I'm probably not going
13 to remember it.  I probably was cc'd on literally tens
14 of thousands of e-mails.
15 Q.      You know before you look at the documents
16 that you're not going to remember, right?
17         MR. CAVALIER:  Object to the form.
18         THE WITNESS:  Okay.  Show me -- show me
19 what you want me to look at.
20    (Exhibit Fink-3 was marked for identification.)
21 BY MR. CARSON:
22 Q.      Okay.  Well, what about D1, which will be
23 Fink-3?
24 A.      You've got to scroll up.  Okay.  So what
25 about this?  Again, this is -- okay, so I was copied on

Page 53

1  it.  I don't remember reading it, but I certainly
2  remember giving legal advice about this.
3  Q.      It says here that Daniel Pipes -- it says
4  here that he investigated this matter yesterday.  Do you
5  see that?
6  A.      Uh-huh.
7  Q.      Do you help in this investigation at all?
8  A.      Absolutely not.  I already answered that.
9  Q.      I was specifically referring to --
10 A.      I investigated nothing.  But the contents of
11 this e-mail, I gave a massive amount of legal advice.
12 Q.      Were you present when Gregg Roman said that
13 he takes these matters -- were you present when Gregg
14 Roman acknowledged that his conduct, whatever his
15 intentions, were not acceptable?
16 A.      I don't remember.
17 Q.      And put these employees in a difficult
18 position?
19 A.      I don't remember.  I gave legal advice to the
20 president, I gave legal advice to the director and
21 sometimes I gave legal advice to both.
22 Q.      Were you present when he acknowledged himself
23 as a social junkie?
24 A.      I don't remember.
25 Q.      Do you know what that means?

Page 54

1  A.      I do not.
2  Q.      So when Daniel Pipes talks about performing
3  this investigation yesterday, that had nothing to do
4  with you?
5  A.      I'll repeat my previous answer if you want.
6  Had nothing to do with any investigation.  I only gave
7  legal advice.
8  Q.      Do you know whether Daniel Pipes interviewed
9  Mr. Roman?
10         MR. CAVALIER:  Objection.  Same
11 instruction as before.  To the extent you can answer
12 without divulging attorney-client information, you can
13 answer.
14         THE WITNESS:  I assume that he
15 interviewed everybody.  I do not know what he did or how
16 he did it or who he involved.  But I will tell you that
17 I assume that he interviewed everybody.
18 BY MR. CARSON:
19 Q.      Well, Mr. Roman testified that you're the one
20 who interviewed him.
21         MR. CAVALIER:  Objection to the --
22 BY MR. CARSON:
23 Q.      So what's your response to that?
24         MR. CAVALIER:  Objection to form and
25 objection to the foundation.  To the extent you can

Page 55

1  answer, you can answer.
2          THE WITNESS:  I don't know what he's
3  thinking, but he's either misinformed, made a wrong
4  assumption or didn't understand.
5  BY MR. CARSON:
6  Q.      Okay.  Did you -- you obviously know what
7  retaliation is, correct?
8          MR. CAVALIER:  I'm going to object to
9  the form.
10 BY MR. CAVALIER:
11 Q.      I'm assuming you know because you're a
12 lawyer.
13         MR. CAVALIER:  Same objection.
14 BY MR. CARSON:
15 Q.      Retaliation under the Title 7?
16 A.      Obviously I know that, yes.
17 Q.      Were you involved in any measures at the
18 Middle East Forum to make sure that there was no
19 retaliation after these reports were made?
20         MR. CAVALIER:  Objection.  Same
21 instruction with respect to the privilege.  Subject to
22 that, to the extent you can answer, you can answer.
23         THE WITNESS:  Number one, I gave legal
24 advice.  Number two, I was not involved in personnel or
25 management.

Case 2:19-cv-05030-JDW   Document 126-17   Filed 04/20/21   Page 18 of 52

Deposition of Marc Fink                                    Lisa Barbounis v. Middle Eastern Forum, et. al.

Page 56

BY MR. CARSON:

Q.      Do you know whether the employees, Ms. McNulty, Ms. Meyer, Ms. Barbounis, Ms. Brady, continued to report issues related to discrimination and harassment in the workplace after November 5th, 2018?

        MR. CAVALIER:  Same objection, same instruction.

        THE WITNESS:  I gave legal advice on that.

BY MR. CARSON:

Q.      I'm just asking if you know if they reported anything.  Did they tell you anything?

A.      To me personally?

Q.      Yeah.

A.      No.  No.

Q.      Did they include you in e-mails where they reported issues?

A.      Not to my knowledge.

Q.      I'm going to show you another document first.

        MR. CAVALIER:  Seth, do you want to go off the record and take five while you're looking for your docs?

        MR. CARSON:  No.

BY MR. CARSON:

Q.      Did you send this e-mail?

Page 57

A.      Excuse me?

Q.      Did you ever -- strike that.

        Did you ever read this e-mail?

A.      I do not remember that e-mail, no.  We discussed this at the beginning.

Q.      Okay.  It says here that you're acting -- you're the new acting deputy director, right?

A.      I'm not familiar -- I never saw that e-mail.  Maybe I got it.  I'm not familiar with that title.  Doesn't really mean anything.  But I did explain to you what I did in the summer of 2019.

Q.      Well, this e-mail says that until further notice, Catriona Brady, Patricia McNulty, Marie Meyer, Delaney Yonchek have to report to you, correct?

        MR. CAVALIER:  Objection to form.

BY MR. CARSON:

Q.      That's what it says.

        THE WITNESS:  Someone just said something.

        MR. CAVALIER:  I just said objection to form.  You can answer.

        THE WITNESS:  Yeah.  No, I explained that to you.  I mean, I'm happy to discuss it more.  They sent me weekly reports, they'd e-mail them to me, and I thanked them for them.  I had no other authority

Page 58

over them.

BY MR. CARSON:

Q.      It says, "Until further notice, please report to him, not to me."

A.      Yep, they did.

Q.      "This means fundraising activities, financial statements, weekly reports and so forth should be addressed to Marc and he will supervise your work," correct?

A.      Yep, I did.  That's what I referred to, again, before.

Q.      We can see here that you were -- see right here?

A.      Uh-huh.

Q.      You received this e-mail, correct?

A.      I don't dispute it.  I just don't remember it.

Q.      So why did you only -- why were you put in charge of these women specifically?

        MR. CAVALIER:  Object to form.

        THE WITNESS:  I don't know.

BY MR. CARSON:

Q.      Were you asked to supervise the work of any of the male employees?

A.      No, I was asked to supervise the work of

Page 59

administrative employees and those are the employees who are -- those are the employees who are cc'd.

Q.      It just happens to be that the same employees you were asked to supervise are the ones --

A.      Those are all of them; there aren't any more.

Q.      Right.  Agreed.  One, two, three, four, five women, right?

A.      There were no -- there were no men.  That was the administrative staff.

Q.      It includes the names of five women, correct?  Lisa Barbounis, Catriona Brady, Patricia McNulty, Marnie Meyer and Delaney Yonchek, right?

A.      That's what it says in the e-mail.

Q.      And they're the five women who all brought claims involving Mr. Roman's discrimination and harassment based on sex and gender, right?

        MR. CAVALIER:  Object to form.  You can answer.

BY MR. CARSON:

Q.      They are five women?

A.      I learned this from my legal representation.  But it has nothing to do with the fact that those are the only administrative staffers.

Q.      Well --

A.      At that time.

Deposition of Marc Fink                                                    Lisa Barbounis v. Middle Eastern Forum, et. al.

Page 60

1  Q.      Isn't it true that that was done directly
2  after charges of discrimination were filed with the
3  EEOC?
4              MR. CAVALIER:  Object to form.
5              THE WITNESS:  Actually, no, it was done
6  in the summer of 2019.  This whole thing started long
7  before then.
8  BY MR. CARSON:
9  Q.      Didn't you receive an e-mail on June 29th,
10  2019 that Lisa Barbounis and Patricia McNulty had filed
11  charges with the EEOC just a week before that?
12  A.      I don't remember.  You could show me and I
13  could confirm it.
14  Q.      Who's Gary?
15              MR. CAVALIER:  Object to form.
16              THE WITNESS:  Gary is a -- again, this
17  goes to me not knowing -- not being involved in
18  management and knowing what everybody does, but Gary --
19  I believe he's a website manager.
20  BY MR. CARSON:
21  Q.      He's a full-time employee who --
22  A.      He's not an administrative staffer.
23  Q.      He's a male employee who works in the office
24  full-time, correct?
25  A.      I do not believe he works in the office

Page 61

1  full-time -- I don't -- strike that.  I do not believe
2  he works in the office and I'm not sure if he works full
3  or part-time.  I'm not sure if he's a contractor or an
4  employee.  He's not part of the administrative staff.
5  He's, kind of, like a project director.
6  Q.      In July of 2019, he worked in the office
7  full-time, right?
8  A.      Again, to repeat my answer, I do not know.
9  Q.      Was it done in response to the charges, you
10  being put in charge of the women?
11  A.      I have no idea.  Daniel Pipes asked me to do
12  it and I did it.
13  Q.      Is it possible it was done in response to the
14  charges?
15  A.      I have no idea.  You'd have to ask -- I
16  cannot speculate on that.
17  Q.      Do you have reason to believe it wasn't?
18              MR. CAVALIER:  Objection.
19              THE WITNESS:  Repeat my previous answer.
20      (Exhibit Fink-4 was marked for identification.)
21  BY MR. CARSON:
22  Q.      All right.  So the next document that we'll
23  look at is 21, so Fink Number 4.  Fink-4 is D21 to 23.
24  Do you remember receiving these e-mails?  This is the
25  response, so this is the e-mail to which 447 -- 4-23 at

Page 62

1  7:28.
2  A.      If you're asking me to identify something,
3  just scroll down to the -- to what he's responding to.
4  Q.      So this is the e-mail that I believe is being
5  responded to.
6  A.      Scroll to the top.  Okay.  I see I was
7  copied.  I don't remember looking at this particular
8  e-mail.  But I do remember the contents of the e-mail
9  because I gave legal advice on them.
10  Q.      You remember the contents of this e-mail?
11  A.      I remember giving legal advice on the
12  contents of the e-mail.
13  Q.      So what is the contents of it -- what part of
14  the e-mail did you give legal advice on?
15              MR. CAVALIER:  Object to form and
16  instruct you not to answer based on the attorney-client
17  privilege.
18              MR. CARSON:  I'm just asking him to
19  point out the e-mail.
20  BY MR. CARSON:
21  Q.      What part of this e-mail do you remember?
22              MR. CAVALIER:  He already answered the
23  question.
24              THE WITNESS:  I don't dispute that the
25  e-mail is legitimate.

Page 63

1  BY MR. CARSON:
2  Q.      I'm asking, what part of this e-mail do you
3  recall, or all of it?
4  A.      I gave legal advice on the contents of that
5  e-mail.
6  Q.      Well, which part?
7              MR. CAVALIER:  Well, object to form and
8  object to -- he's not going to answer that question.
9  I'm instructing him not to answer.
10              THE WITNESS:  I'm not going to answer.
11  BY MR. CARSON:
12  Q.      Well, what part of the e-mail do you
13  remember?
14              MR. CAVALIER:  That's asked and
15  answered.
16              THE WITNESS:  I already answered.
17  BY MR. CARSON:
18  Q.      Do you remember the whole e-mail?
19  A.      I already answered.
20  Q.      I'm asking, do you recall this entire e-mail?
21  A.      I refer you to my previous answer.
22  Q.      I'm asking you a different question.  Do you
23  recall receiving this entire e-mail?
24  A.      I answered that.
25  Q.      You know exactly what this e-mail says?

Page 64

1  A.      I answered that.  I just looked at it, I
2  answered it.
3  Q.      Okay.  So can you please describe what this
4  e-mail says?
5          MR. CAVALIER:  You want him to describe
6  the e-mail?
7  BY MR. CARSON:
8  Q.      Yeah, what you remember about the e-mail.
9          MR. CAVALIER:  That's a different
10 question.  Same objection, same instruction.
11 BY MR. CARSON:
12 Q.      I mean, I'm going to wait for an answer.
13 A.      I've already answered.  I'm not going to
14 answer any more.
15 Q.      You received an e-mail that was sent from my
16 client, right?  Right?
17 A.      Again, I already said, I see I'm cc'd.  I
18 don't dispute that.
19 Q.      And the e-mail was sent from Ms. McNulty to
20 you, correct?
21 A.      No, it was not.
22 Q.      It was sent to you and Mr. Pipes?
23 A.      Nope.  It was sent to Daniel Pipes; I was
24 copied in.
25 Q.      What's the distinction you're making there?

Page 65

1  You received the e-mail.
2  A.      When you send -- as someone who sends
3  thousands of e-mails every week, when you send it to
4  someone is a lot different than when you're copied on
5  someone.
6  Q.      What's the difference?
7  A.      You are intending the person you send it to
8  to respond.  The person that you're copied, you just --
9  you want to either make them aware or keep them in the
10 loop.  It doesn't require a response.
11 Q.      So but you did receive it, right?
12 A.      Again, I don't dispute that I received the
13 e-mail.
14 Q.      "I received a phone call from Matt Bennett
15 last night.  He started the conversation with
16 pleasantries, but then began to discuss current MEF
17 internal operations.  He apparently was speaking with
18 Gregg every two days.  Knew that Gary was back."  Is
19 that the same Gary that you just testified about?
20 A.      I assume.
21 Q.      "And also, that Marnie had made another
22 allegation against Gregg," right?
23 A.      What's your question?
24 Q.      My question to you is, isn't this a report of
25 retaliation?

Page 66

1          MR. CAVALIER:  Objection.  Same
2  instruction.
3  BY MR. CARSON:
4  Q.      Why is it funny?
5  A.      It's funny because you're asking the same
6  inappropriate questions 20 different times.  I gave
7  legal advice on this.  I have nothing else to say about
8  it.
9          MR. CAVALIER:  You're asking for a legal
10 conclusion as well, Seth.  He's not going to --
11         MR. CARSON:  He's a lawyer.
12         THE WITNESS:  Because it's comedic,
13 that's why I'm laughing.
14 BY MR. CARSON:
15 Q.      I know that you think that my client's
16 allegations are comedic.
17 A.      No, what you're doing right now is comedic,
18 so I laughed.
19 Q.      What's funny about it?
20 A.      Again, you're asking an inappropriate
21 question 20 different ways.  I'm not going to answer it.
22 Q.      Isn't my client, Patricia McNulty, trying to
23 report retaliation?
24 A.      MR. CAVALIER:  Same objection, same
25 instruction.

Page 67

1  BY MR. CARSON:
2  Q.      Isn't that what she's doing?  I'm going to
3  wait for an answer.
4          MR. CAVALIER:  He's already given you
5  the answer.
6          MR. CARSON:  No, he hasn't.  He hasn't
7  answered that question.  If he has, repeat it.
8          MR. CAVALIER:  He's telling you he
9  already has.
10         MR. CARSON:  Well, if he has, just
11 repeat the answer, then, because I don't remember what
12 he said.
13 BY MR. CARSON:
14 Q.      Isn't Ms. McNulty tying to report
15 retaliation?
16         MR. CAVALIER:  You're not going to
17 violate the privilege no matter how many different ways
18 you ask it.
19         MR. CARSON:  I'm not asking that.  I'm
20 asking what my client was doing.
21         MR. CAVALIER:  How does he know what
22 your client was doing?
23         MR. CARSON:  Because he was cc'd on the
24 e-mail; he just said it.
25         MR. CAVALIER:  I think he's answered.

Page 68

1  MR. CARSON:  There's no implication to
2  privilege here; none.
3  BY MR. CARSON:
4  Q.  My client is reporting wrongful conduct --
5  inappropriate conduct involving Gregg Roman, correct?  I
6  mean, we're just going to wait, so let me know when
7  you're ready to answer the question.  There's no
8  privilege objection you can assert here.
9  MR. CAVALIER:  Seth, do me a favor.  If
10  you're going to eat while we're on the record, at least
11  close your mouth while you're doing it.
12  MR. CARSON:  I'm just waiting for an
13  answer.
14  THE WITNESS:  Maybe you could use your
15  time more wisely and ask me things that I could actually
16  answer instead of just reading me e-mails.  Read it to
17  the jury.
18  BY MR. CARSON:
19  Q.  My client tried to report additional conduct
20  involving Gregg Roman on April 23rd, 2019, correct?
21  MR. CAVALIER:  Object to form.  Same
22  instruction.
23  MR. CARSON:  You can't tell him not to
24  answer based on a form objection.  You're objecting to
25  form and telling him not to answer based --

Page 69

1  MR. CAVALIER:  I'm objecting to form --
2  THE WITNESS:  I gave legal advice on
3  this.
4  MR. CAVALIER:  I'm objecting to the form
5  in addition to instructing him not to answer to the
6  extent he needs to violate the attorney-client
7  privilege.
8  MR. CARSON:  I'm not asking about any
9  communications with anyone.  I'm asking him about the
10  e-mail that we're looking at.
11  MR. CAVALIER:  The e-mail he already
12  told you --
13  BY MR. CARSON:
14  Q.  The e-mail indicates inappropriate conduct by
15  Gregg Roman; isn't that correct?
16  MR. CAVALIER:  The e-mail that he has
17  already told you multiple times he does not remember
18  receiving outside the context of his legal advice to the
19  Forum.
20  MR. CARSON:  It's sent by my client.
21  It's the same thing as if he was at the meeting.
22  MR. CAVALIER:  He said he doesn't
23  remember getting the e-mail.  He's told you that
24  repeatedly.
25  MR. CARSON:  He said he remembered it

Page 70

1  specifically.
2  MR. CAVALIER:  No, he said he has
3  recollections of topics in the e-mail because he gave
4  legal advice on them.
5  MR. CARSON:  I'm not asking him about
6  that, I'm asking about my clients and what my client was
7  communicating to him and to Daniel Pipes.
8  MR. CAVALIER:  Marc, to the extent you
9  can answer the question without violating the
10  attorney-client privilege, you can answer it.
11  THE WITNESS:  I can't characterize what
12  she said.  I mean, you're reading it in plain English,
13  okay?  I'm not your expert witness on your own client.
14  I'm not going to answer that.  You're asking me to do
15  your job.
16  BY MR. CARSON:
17  Q.  No, I'm actually asking you --
18  A.  You're asking me to do your job.  You can
19  characterize it.
20  Q.  "I came into work this morning completely
21  discouraged.  Why am I working so hard for someone who
22  thinks so poorly of me and feel so confident exclaiming
23  to just anyone except, of course, to me.  I have heard
24  nothing but good things and positivity about my work
25  from Gregg.  So to find out that he is saying very

Page 71

1  different things to others behind my back is reminiscent
2  of the past and extremely deflating," right?  That's
3  what she said?
4  MR. CAVALIER:  I'm going to object to
5  the form --
6  THE WITNESS:  You're reading a letter
7  into the record.  I mean --
8  MR. CAVALIER:  Marc --
9  BY MR. CARSON:
10  Q.  That's the e-mail that you received on April
11  23rd, 2019, right?
12  A.  You've got 12 people here.  You know, we've
13  got a lot of things to do.  I mean...
14  Q.  I mean, just answer the question, then we'll
15  get through it faster.
16  A.  You're not asking me a question, you're
17  reading your client's letter.  Read it to the jury.
18  MR. CAVALIER:  Object to the form of the
19  reading in that you got a couple words in there wrong.
20  But to the extent you're asking him generally did you
21  read that correctly, that's the question?
22  THE WITNESS:  You read it correctly.
23  Well, maybe -- I don't know.  Maybe I should pay more
24  attention.  Maybe you aren't reading it correctly.
25  BY MR. CARSON:

Deposition of Marc Fink                                    Lisa Barbounis v. Middle Eastern Forum, et. al.

Page 72

1  Q.      Well, I think you should pay attention.
2  A.      Okay.  Well, you're reading a letter.
3  Q.      Obviously you're not paying attention.
4  A.      You're reading a letter.  If you want to read
5  it again, I will use our time to see if you're reading
6  it correctly.
7  Q.      I'd be happy to read it again.
8  A.      Okay.  So read it and I will tell you if
9  you're reading it correctly.
10         THE COURT REPORTER:  Please.  Please.
11 Please, guys.  Please.
12 BY MR. CARSON:
13 Q.      "I came into work this morning completely
14 discouraged.  Why am I working so hard for someone who
15 thinks so poorly of me and feel so confident exclaiming
16 that to just anyone except, of course, for me.  I've
17 heard nothing but good things and positivity about my
18 work from Gregg.  So to find out that he is saying very
19 different things to others behind my back is reminiscent
20 of the past and extremely deflating."
21 A.      I testify here today that you read that
22 correctly.
23 Q.      I read that correctly, right?
24 A.      Yes.
25 Q.      And you received that correct e-mail that I

Page 73

1  read on April 23rd, 2019, correct?
2          MR. CAVALIER:  Objection.
3          THE WITNESS:  I don't remember receiving
4  it, but I don't dispute it.
5  BY MR. CARSON:
6  Q.      You don't remember receiving it?
7  A.      I receive thousands of e-mails.
8  Q.      I know that everyone is concerned that Gregg
9  is back to his old ways."
10 A.      Am I supposed to be proofreading -- proofing
11 you now?  Okay.  Go ahead.
12 Q.      "I know that everyone is concerned that Gregg
13 is back to his old ways, but I truly wanted to believe
14 that he had learned a lesson.  The things that I was
15 told last night make me believe otherwise."
16 A.      I testify that Seth Carson has read that
17 correctly.
18 Q.      And that you received it on April 23rd, 2019?
19         MR. CAVALIER:  Objection.  Asked and
20 answered.
21 BY MR. CARSON:
22 Q.      Right?
23         MR. CAVALIER:  You can answer it again,
24 if you want, Marc, for the twelfth time.
25         THE WITNESS:  Okay.  I'll answer it

Page 74

1  again; no problem.  I mean, it was everybody's.  I do
2  not remember receiving that particular e-mail.  I see
3  that I'm copied, I do not dispute that I received the
4  e-mail.
5  BY MR. CARSON:
6  Q.      Doesn't the e-mail implicate retaliation?
7          MR. CAVALIER:  Objection.  Same
8  instruction with respect to the privilege.  To the
9  extent you can answer, you can answer.
10         THE WITNESS:  I cannot answer that
11 question.
12 BY MR. CARSON:
13 Q.      It's a yes-or-no question.  What's your
14 opinion?
15 A.      It's your job to characterize your
16 client's -- your client's case.
17 Q.      Well, what's your opinion?  Does it implicate
18 retaliation?
19 A.      Again, everything I know about this case I
20 learned through my legal representation.  I was not a
21 witness, I was not hanging out with them, I was not in
22 the office.  So I'm not going to answer that question.
23 Q.      Well, you just read the e-mail -- I just read
24 it to you.  You said I read it correctly.
25 A.      I mean, you could just as well -- you could

Page 75

1  ask John Cavalier, you could ask Dave Walton.  Is that
2  appropriate to ask an attorney that question?
3  Q.      Yes.
4          MR. CAVALIER:  I disagree.
5  BY MR. CARSON:
6  Q.      Well, you're an attorney and sending e-mails
7  saying I'm the new deputy director and I'm your boss
8  now.
9  A.      I was not their boss.  I'm happy to talk
10 about that again.  I'm not even familiar with the title.
11 All I did is collect weekly reports and thank them for
12 them.
13 Q.      You acted as their supervisor at this time.
14 I mean -- right?
15 A.      Actually, no.  Come to think of it, no.  That
16 was sent in April.
17 Q.      A couple months before.
18 A.      Yeah, so that was before.  No.
19 Q.      Okay.  But you do know that retaliation is
20 when someone subjects someone to adverse employment
21 action due to reports of discrimination and harassment
22 in the workplace, right?
23 A.      I am generally familiar with what constitutes
24 retaliation under Title 7 in the 1964 Civil Rights Act.
25         MR. CARSON:  I'm going to take a break;

Deposition of Marc Fink                                    Lisa Barbounis v. Middle Eastern Forum, et. al.

Page 76

1  I'll be back in five minutes.
2          MR. CAVALIER:  Marc, you can go off
3  screen and mute your mic.
4          THE VIDEOGRAPHER:  We are off the
5  record, 4:21.
6     (A recess was taken from 4:21 p.m. until 4:32 p.m.)
7          THE VIDEOGRAPHER:  All right.  Back on
8  the record.  It is 4:32 p.m.
9  BY MR. CARSON:
10 Q.     Do you know anything about the counterclaims
11 that MEF filed against Ms. Barbounis?
12         MR. CAVALIER:  Object to form.  Same
13 instructions with respect to the privilege.  As a matter
14 of fact, I'm going to instruct you not to answer that
15 question because it's so broad, I can't imagine how you
16 could possibly answer it without divulging
17 attorney-client privilege.
18 BY MR. CARSON:
19 Q.     It's a yes-or-no question.  Do you know
20 anything about the counterclaim?
21         MR. CAVALIER:  You can answer that yes
22 or no.
23         THE WITNESS:  I'm going to assert
24 privilege.
25 BY MR. CARSON:

Page 77

1  Q.     It's a yes-or-no question.  I'm not asking
2  you to divulge anything.  Do you know about the
3  counterclaim?
4  A.     I'm not going to answer that.
5  Q.     There's no privilege implication.  It's yes
6  or no.  Do you know about the counterclaim?
7  A.     I'm not going to answer the question.
8  Q.     You have to.  You can't assert privilege when
9  there's no privilege.  I'm not asking you to tell me
10 anything that anyone told you --
11 A.     Everything I may or may not know about that
12 is in the context of the legal advice I gave to the
13 Middle East Forum.
14 Q.     Really?  Have you ever read the Complaint?
15 That's not legal advice, right?  That's a public record
16 on the docket, right?
17         MR. CAVALIER:  The question is, is the
18 Complaint a public record on the document?  You can
19 answer that.
20 BY MR. CARSON:
21 Q.     The question is, do you know about the
22 counterclaim?
23         MR. CAVALIER:  Objection.  Asked and
24 answered.
25         MR. CARSON:  No, it hasn't been

Page 78

1  answered.  Your witness is refusing to answer the
2  question by inappropriately asserting a privilege that
3  has no implication in the question.
4  BY MR. CARSON:
5  Q.     So the question stands.  Yes or no; do you
6  know about the counterclaim?
7  A.     I'm not going to answer that question.
8  Q.     You have to.  You can't assert a privilege
9  when there's no privilege implication.  All right.  So
10 why are you asserting privilege?  Let's test your
11 privilege theory.  What's the basis of the privilege?
12 What you know about the counterclaim is because of
13 information people told you, you don't know --
14 A.     I advised the Middle East Forum about those
15 issues.
16 Q.     That doesn't make it -- that's not -- maybe
17 you misunderstand what privilege is.  Privilege means
18 communications from your client to you or you to your
19 client.  It doesn't mean that --
20 A.     Yes.
21 Q.     Right.  So it doesn't mean that you --
22 A.     If you would like to show me something and
23 you want me to look at something --
24 Q.     Well, have you ever checked the docket where
25 the counterclaim was filed with Middle East Forum, Lisa

Page 79

1  Barbounis --
2  A.     We have outside counsel for that.
3  Q.     So you've never looked at the docket?
4  A.     We have outside counsel.
5  Q.     I wasn't asking you whether you have outside
6  counsel.  I'm asking you whether you looked at the
7  docket.  You refuse to answer that?
8  A.     I do not look at any docket.  We have outside
9  counsel for that.
10 Q.     Have you ever read the Complaint, the
11 counterclaim?
12 A.     I may have advised on it.
13 Q.     I'm not asking whether you advised, I'm
14 asking whether you read it.  I'm not sure why you
15 guys --
16 A.     I did not -- I have nothing to do with it --
17 Q.     Nothing --
18 A.     -- except for giving legal advice.  If you
19 want to read it into the record, go right ahead.
20 Q.     Well, my question stands.  Have you reviewed
21 the counterclaim?
22         MR. CAVALIER:  That's a different
23 question.
24         THE WITNESS:  I have outside counsel.
25 BY MR. CARSON:

Deposition of Marc Fink                                    Lisa Barbounis v. Middle Eastern Forum, et. al.

Page 80

1  Q.      That's not my -- I didn't ask you whether you
2  had counsel.
3  A.      I'm not running the counterclaim.  I'm not --
4  Q.      Have you reviewed it?
5  A.      I'm not leading the counterclaim.
6  Q.      Have you reviewed it?
7  A.      Again, hired outside counsel.  I'm not
8  familiar with it.  I may have given legal advice.
9  Q.      So you're saying you never reviewed it?
10 A.      I'm not familiar with it.  I may have given
11 legal advice.
12 Q.      So you know --
13 A.      And I may have hired outside counsel.
14 Q.      Who did you hire?  Are you referring to Cozen
15 O'Connor?
16 A.      I'm not getting into legal advice or legal
17 substantive --
18 Q.      These aren't privileged questions, Mr. Fink.
19 A.      It is.
20 Q.      No, it's not.
21 A.      I disagree with you.  I mean, where are you
22 even going with this?
23 Q.      Well, why don't you answer the questions and
24 we'll see.
25 A.      I'm not familiar with it.

Page 81

1  Q.      You're not familiar at all with the
2  counterclaim?
3  A.      Not familiar with it except for legal advice
4  I may have given.
5  Q.      You know nothing about the counterclaim?
6  A.      Not familiar with it.
7  Q.      You've never read it?
8  A.      Not familiar with it.
9  Q.      You've never read it?
10 A.      I may have given legal advice on it.
11 Q.      I'm not sure why you want to do this all over
12 again.  I mean, if you're not there to --
13 A.      I'm not sure -- I'm not sure.  Okay.  Forget
14 it.
15 Q.      What?  Go ahead, answer it.
16 A.      I answered it.  I was going to say something
17 else, but I decided not to.  I answered the question.
18 Q.      No, you actually are not answering the
19 question.  You're refusing to answer the question.
20 A.      I'm not familiar with it.
21 Q.      Do you know how much money my client stole
22 from Middle East Forum?
23 A.      I'm not familiar with the counterclaim.
24 Q.      Are you familiar with the case MEF versus
25 Lisa Barbounis?

Page 82

1  A.      I hire outside counsel for that.
2  Q.      So it was your decision to engage outside --
3  A.      Not necessarily my decision, but I'm legal
4  in-house counsel, so I'm involved in that.  So again,
5  you're in that territory where I'm giving legal advice.
6  Q.      Were you involved in the decision to
7  blackmail my client in the case?
8          MR. CAVALIER:  Object to form.  Object
9  to the characterization.
10 BY MR. CARSON:
11 Q.      Huh?  Were you?  Were you involved in that?
12         MR. CAVALIER:  You know what, Marc?  You
13 don't even have to answer that.
14         THE WITNESS:  I'm not going to answer
15 it.
16 BY MR. CARSON:
17 Q.      No, you do have to answer it, actually.
18 A.      I'm not going to answer it.
19         MR. CAVALIER:  Objection.
20 BY MR. CARSON:
21 Q.      Are you aware that your client met with my
22 client --
23         MR. CAVALIER:  That's a different
24 question.
25 BY MR. CARSON:

Page 83

1  Q.      -- in the 30th Street Station and blackmailed
2  her?
3          MR. CAVALIER:  Objection to form.  Don't
4  answer that, Marc.  Ask a legitimate question and we'll
5  move forward.
6          MR. CARSON:  It's a legitimate question.
7          MR. CAVALIER:  No, it's not.  It's
8  inflammatory --
9          MR. CARSON:  Yeah, it is.
10         MR. CAVALIER:  -- duress.
11         THE COURT REPORTER:  Gentlemen, I can't
12 do this.
13 BY MR. CARSON:
14 Q.      Did you help draft the illegal document that
15 blackmails my client?  Were you involved in that?
16         MR. CAVALIER:  Same instruction.  Don't
17 answer the question.
18 BY MR. CARSON:
19 Q.      Do you know whether Daniel Pipes attempted to
20 threaten my client with a RICO case?
21         MR. CAVALIER:  Instruct the witness not
22 to answer.
23         MR. CARSON:  You can't instruct him not
24 to answer.
25         MR. CAVALIER:  I just did.

Page 84

MR. CARSON: Based on what?

MR. CAVALIER: Based on privilege and based on the absurd nature of the inflammatory question.

MR. CARSON: I mean, I have a document that Mr. Pipes gave my client that says that he's threatening her with a RICO case that never was filed. But all she has to do is stop all litigation and the RICO case won't be filed.

MR. CAVALIER: Now that you've read that into the record --

MR. CARSON: They'd cancel the RICO case.

MR. CAVALIER: -- perhaps you would want to ask --

MR. CARSON: Would you consider that blackmail?

MR. CAVALIER: -- Mr. Pipes about that. But this witness is not going to answer questions that you inject your categorization of the documents into and he's not going to involve --

BY MR. CARSON:

Q.     Do you have any knowledge about that?

MR. CAVALIER: -- violate any privilege. Don't answer the question.

MR. CARSON: I mean, we can sit here all

Page 85

night, I guess.

MR. CAVALIER: We won't sit here all night, Seth. If you want to ask your question, ask the question and wrap your deposition up.

BY MR. CARSON:

Q.     All right. Did you know that my client met with Mr. Pipes at the 30th Street Station?

A.     I may have given Mr. Pipes legal advice.

Q.     Well, did you or didn't you?

A.     I may have given Mr. Pipes legal advice.

Q.     Well, if you did, there's privilege. If you didn't, there's no privilege, right? Either you did or you didn't. Were you cc'd on any other e-mails where my clients reported retaliation?

MR. CAVALIER: Object to form.

BY MR. CARSON:

Q.     Well, how many e-mails did you receive where you were cc'd and my clients reported retaliation during the spring and summer of 2019?

MR. CAVALIER: Objection. From anyone?

MR. CARSON: Yeah.

MR. CAVALIER: Then don't answer the question because it's obviously out of bounds with respect to the privilege.

MR. CARSON: It's not out of bounds.

Page 86

I'm talking about -- I'm not talking about communications between you and your client, I'm talking about communications with my clients.

MR. CAVALIER: That's why I asked a clarifying question. That's a different question.

MR. CARSON: Right.

THE WITNESS: Can you repeat the question?

BY MR. CARSON:

Q.     Yeah, sure. How many times did my clients report retaliation during the spring and the summer of 2019?

MR. CAVALIER: Object to form and object to the fact that it calls for a legal conclusion. To the extent you can answer subject to that, Marc, feel free.

THE WITNESS: I want you to clarify your question. Are you asking if your clients went to me and reported things to me? Is that what you're asking?

BY MR. CARSON:

Q.     How many times are you aware of their reports of retaliation?

MR. CAVALIER: Same objection.

THE WITNESS: To me?

BY MR. CARSON:

Page 87

Q.     Yeah.

A.     Directly to me?

Q.     Where you were either the recipient of the e-mail or a cc of the e-mail.

A.     No. Directly to me, zero.

Q.     Okay. How about where you were cc'd on the e-mail?

A.     I don't remember. I seem to be cc'd on a lot of e-mails.

Q.     Was it at least once?

A.     You could show me an e-mail.

MR. CAVALIER: Object to form and object to the basis for the question calling for a legal conclusion.

BY MR. CARSON:

Q.     I mean, was it at least once? That's my question.

MR. CAVALIER: And I'm objecting based on the fact that you've injected the word "retaliation" into the question which requires him to give --

MR. CARSON: That's not an objection.

MR. CAVALIER: -- expert opinion in his answer.

MR. CARSON: You're not allowed to tell him how to answer in your objection.

Deposition of Marc Fink                              Lisa Barbounis v. Middle Eastern Forum, et. al.

Page 88

BY MR. CARSON:
Q.      And now that your lawyer has told you how to
answer, do you want to answer the question?
A.      What's your question?
Q.      Was it at least once?
A.      Will you repeat the full question?
Q.      Yeah.  Was it at least one time that you were
either cc'd or a recipient of an e-mail where Lisa
Barbounis, Patricia McNulty, Delaney Yonchek or Catriona
Brady reported retaliation --
        MR. CAVALIER:  Same objection.
BY MR. CARSON:
Q.      -- in the spring and summer of 2019?
        MR. CAVALIER:  Same objection with
respect to the fact that it calls for a legal
conclusion.
        MR. CARSON:  It's a funny objection when
the person who's -- the witness is a lawyer.
        MR. CAVALIER:  If he's here as a lawyer,
then the entire deposition is irrelevant.  If he's here
as a fact witness, he'll testify as to facts within his
personal knowledge.
        MR. CARSON:  Right.  Well, his personal
knowledge would probably include what retaliation is.
BY MR. CARSON:

Page 89

Q.      But go ahead.  We're going off the subject.
What's the answer?  Was it at least once?
        MR. CAVALIER:  Objection.
        THE WITNESS:  Repeat the question.
BY MR. CARSON:
Q.      I repeated it several times.
A.      Okay.  You're going to have to repeat it very
carefully.
Q.      Was it at least once when you were a
recipient of an e-mail by way of either directly
receiving the e-mail or cc'd on an e-mail where one of
my clients reported retaliation in the spring or the
summer of 2019?
        MR. CAVALIER:  Same objection with
respect the fact that it calls for a legal conclusion.
BY MR. CARSON:
Q.      Was it at least once?
        MR. CAVALIER:  And to form.
BY MR. CARSON:
Q.      Now is when you answer.  What are we doing?
A.      There's an objection.  I disagree with your
characterization also.
Q.      Was it at least one?
A.      At least one what?
Q.      Time that you were a recipient on one of

Page 90

those e-mails.
        MR. CAVALIER:  Seth, he's not going to
give you an answer where he acknowledges that your
clients were complaining of legal retaliation.  That's
not what he's here for.  He's not here --
        MR. CARSON:  Tell your client how to
answer, get it out.  Go ahead.
        MR. CAVALIER:  You heard the objection.
        MR. CARSON:  You want to tell him --
        THE WITNESS:  I'm not going answer the
question; I already did.
BY MR. CARSON:
Q.      No, you haven't answered the question yet.
A.      I did.
Q.      I've asked it like five ways now.  It's
getting to be ridiculous.
        MR. CAVALIER:  He's here as a fact
witness, not a legal expert.
BY MR. CARSON:
Q.      Have you received at least one e-mail by way
of either cc or direct recipient during the spring and
the summer of 2019 where my clients reported issues that
were related to retaliation?
        MR. CAVALIER:  Why don't you define
retaliation to see if he can give you a fact-based

Page 91

answer?
BY MR. CARSON:
Q.      Sure.  Where they complained about Gregg
Roman's conduct?
        MR. CAVALIER:  That's a different
question.  Marc, if you can answer that one.
        THE WITNESS:  I'm sure I was cc'd on
e-mails complaining about Gregg Roman's conduct.  I
don't remember any one in particular.
BY MR. CARSON:
Q.      And we're talking about during the spring and
summer of 2019 right now, correct?  That's the time
period that the question relates to.
A.      I answered, I assume I was cc'd on e-mails.
I don't remember any one in particular.
Q.      How many e-mails were you -- estimate for me.
A.      No idea.
Q.      How many e-mails; was it more than one, was
it more than two?
A.      I don't know.  Show it to me.
Q.      Well, I'm asking you to testify.
A.      Don't know.  Don't remember.
Q.      Well, when you receive an e-mail where
someone reports issues related --
A.      I gave legal advice on all sorts of issues.

Deposition of Marc Fink                                    Lisa Barbounis v. Middle Eastern Forum, et. al.

Page 92

Q.      Yeah, I'm not talking about --
A.      I never received an e-mail directly, to the best of my knowledge.
Q.      Well, you were cc'd on these e-mails, correct?
A.      You'd have to show me an e-mail.
Q.      No, you received e-mails where you were cc'd, right?
A.      You'd have to show me an e-mail.
Q.      I'm asking generally whether you were cc'd on e-mails where my clients reported concerns relating Gregg Roman in the spring and summer of 2019 --
A.      I assume I was cc'd on e-mails, yes.
Q.      So it's simple.  I don't know why you're making this difficult.  How many e-mails do you remember --
A.      I answered that; I have no idea.
Q.      Can you estimate?
A.      No.
Q.      Was it at least ten?
A.      I have no idea.  But you're welcome to show me the e-mails; we could read through them.
Q.      Sure.  I was trying to help everyone get out of here fast, but that's fine.  Did you ever read this e-mail?

Page 93

        MR. CAVALIER:  Objection.  Same instruction with respect to the privilege.  He's not copied on this e-mail.
BY MR. CARSON:
Q.      Yeah, now, that your lawyer told you how to answer, have you ever seen this e-mail?
        MR. CAVALIER:  Seth, I'm only going to let you do that so many more times before I get fed up. I'm just letting you know.
        THE WITNESS:  I'm not copied on that e-mail.
        MR. CARSON:  Well, I should be fed up. You're the one who's inappropriately instructing your witness how to answer with totally inappropriate speaking objections that have no relation to this case or the questions that I'm asking.
        MR. CAVALIER:  Yeah, and you have the nerve --
        MR. CARSON:  So I'm the one who should be fed up.
        MR. CAVALIER:  -- (indecipherable) and you won't do so here.  So stop cluttering up the record with your ridiculous gratuitous remarks and ask the questions.
BY MR. CARSON:

Page 94

Q.      Did you ever see this e-mail before, is the question.
        MR. CAVALIER:  Same objection, same instruction.
        THE WITNESS:  I never saw that e-mail.
BY MR. CARSON:
Q.      Well, my client says that Gregg Roman continues to spew slander regarding work and reputation.
A.      I'm not copied on that e-mail.
Q.      Never saw it in any other context?
A.      I may have given legal advice.
        MR. CAVALIER:  Same objection and same instruction.
BY MR. CARSON:
Q.      Well, did you or didn't you?  You can't just say you may have.  If you did, then it's privileged.  If you didn't, then it's not privileged.
        MR. CAVALIER:  If he didn't give legal advice and he's never seen it, then it's a completely irrelevant e-mail.
        MR. CARSON:  That's not true.  I could explain plenty of ways how it's relevant.  Would you like me to?
        MR. CAVALIER:  I didn't argue with you the e-mail's not relevant.  But if he's not given legal

Page 95

advice on it and he's never seen it, what question could you possibly have for him?
        MR. CARSON:  Plenty.  But first I'd like to establish -- if you gave legal advice on it, I'll move on.
BY MR. CARSON:
Q.      Did you or didn't you?
A.      You want me to -- okay.  I'll be happy to.  I gave legal advice on this.
Q.      When, when it was sent?
        MR. CAVALIER:  You don't have to answer that.
BY MR. CARSON:
Q.      Well, when; when are we talking about?  In connection with depositions, back when it was sent?
        MR. CAVALIER:  He's not going to tell you when he gave legal advice.
        MR. CARSON:  Why?
        MR. CAVALIER:  Because it's privileged.
        MR. CARSON:  It's privileged when someone had a conversation?
        MR. CAVALIER:  Yes.
        MR. CARSON:  Okay.  I would suggest that it's not privileged.  I'll give you another opportunity to answer.

Page 96

MR. CAVALIER:  We'll decline that opportunity.

MR. CARSON:  Okay.  I mean, I'm just building up a record of refusing to answer questions based on inappropriate objections.

BY MR. CARSON:

Q.      How about this one?  Did you give legal advice on this e-mail?

A.      Yeah, I gave a lot of legal advice on these issues.

Q.      Did you ever perform any investigations with regard to these e-mails?

A.      Seth, I mean, I told you emphatically, I was not involved in any investigation.

Q.      For any woman in the history of the Middle East Forum alleging sexual harassment?

A.      Nope.  Nope.

Q.      Absolutely positively not?

A.      Yeah -- positively no.

Q.      My client was given permission to work with Tommy Robinson, correct?

A.      I have no idea.  I'm not involved in administration or personnel.

Q.      Well, didn't you send her e-mails about it?

A.      Excuse me?

Page 97

Q.      Didn't you send her e-mails about her work with Tommy Robinson?

A.      I don't believe so.

MR. CARSON:  Okay.  So Fink Number 6 -- I think 6 -- will be D-18.

(Exhibit Fink-6 was marked for identification.)

BY MR. CARSON:

Q.      How about this e-mail?

A.      I can't see what you're doing.

Q.      This one.

MR. CAVALIER:  What's your question?

MR. FINK:  Hold on.  That was the wrong one.

BY MR. CARSON:

Q.      But you did send this e-mail, right?

A.      Looks like it.

MR. CARSON:  But that wasn't the right one.

(Exhibit Fink-7 was marked for identification.)

BY MR. CARSON:

Q.      So D18, Fink-7 was -- so here.  Isn't this administrative stuff that you did in connection with Lisa and Tommy Robinson?  So Fink-7 is D29.

A.      Yeah, I didn't remember sending this, but I recognize it now.  This is when I was supervising their

Page 98

weekly activities.  And she apparently went somewhere without notifying me that it was political -- or notifying anybody.

Q.      Well, then it turned out she did notify somebody, right?

A.      What's that?

Q.      Her response, it turned out she had permission, right?

A.      Yeah, looks like it.

MR. CARSON:  I don't have any other questions.  I'm done.

THE WITNESS:  Okay.

MR. CARSON:  Thank you, everybody.  I'm logging of.  Does anyone have any questions of me in regard, like, exhibits or anything?

MR. CAVALIER:  No, there's nothing from me to Marc, but you've got to let Sid or Bill decide whether they want to ask any questions of this witness.

MR. GOLD:  No questions.  Thank you.

(The deposition was concluded at 5:19 p.m.)

* * *

```
  1                    INSTRUCTIONS TO WITNESS

  2                         Read your deposition over carefully.

  3      It is your right to read your deposition and make

  4      changes in form or substance.  You should assign a

  5      reason in the appropriate column on the errata sheet for

  6      any change made.

  7

  8                         After making any change in form or

  9      substance which has been noted on the following errata

 10      sheet, along with the reason for any change, sign your

 11      name on the errata sheet and date it.

 12

 13                         Then sign your deposition at the end

 14      of your testimony in the space provided.  You are

 15      signing it subject to the changes you have made in the

 16      errata sheet, which will be attached to the deposition

 17      before filing.  You must sign in the space provided.

 18      The witness need not be a notary public.  Any competent

 19      adult may witness your signature.

 20

 21                         Return the original errata sheet to

 22      the court reporter promptly!  Court rules require filing

 23      within 30 days after you receive the deposition.

 24

 25
```

Deposition of Marc Fink                                    Lisa Barbounis v. Middle Eastern Forum, et. al.

```
 1                          ERRATA SHEET

 2      PAGE     LINE   CHANGE                        REASON

 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    SIGNATURE PAGE

 2                          OF

 3                     MARC FINK

 4

 5              I hereby acknowledge that I have

 6   read the foregoing deposition, dated TUESDAY, NOVEMBER

 7   24, 2020, and that the same is a true and correct

 8   transcription of the answers given by me to the

 9   questions propounded, except for the changes, if any,

10   noted on the attached errata sheet.

11

12

13              SIGNATURE:

14

15              DATE:

16

17

18

19              WITNESSED BY:

20

21              DATE:

22

23

24

25
```

```
 1              C E R T I F I C A T E

 2

 3

 4                    I, Pamela Pratt, Court Reporter and

 5   Notary Public in and for the Commonwealth of

 6   Pennsylvania, certify that the foregoing is a true and

 7   accurate transcript of the deposition of said witness

 8   taken by me on the date and place hereinbefore set

 9   forth.

10

11                    I further certify that I am neither

12   attorney nor counsel for, nor related to or employed by,

13   any of the parties to the action in which this

14   deposition was taken, and further, that I am not a

15   relative or employee of any attorney or counsel employed

16   in this action, nor am I financially interested in this

17   case.

18

19

20

21

22

23                         Pamela Pratt, Court Reporter
                           Notary Public
24

25
```

Case 2:19-cv-05030-JDW   Document 126-17   Filed 04/20/21   Page 33 of 52

Deposition of Marc Fink                                    Lisa Barbounis v. Middle Eastern Forum, et. al.

## WORD INDEX

**< 1 >**
**11-4-2018** 42:*8*
**12** 71:*12*
**15** 46:*19*
**1650** 2:*1*
**1835** 2:*1*
**19103** 2:*1*
**1964** 75:*24*
**1994** 8:*13, 14*
**1st** 43:*6*

**< 2 >**
**2** 40:*17*
**2:19-cv-05030** 1:*1*
**20** 16:*11* 66:*6, 21*
**2012** 7:*7, 21* 8:*16, 18*
**2015** 12:*12, 16* 13:*10, 17*
**2016** 13:*18*
**2018** 21:*9* 23:*15* 36:*18* 37:*3* 47:*4, 7, 21* 56:*5*
**2019** 18:*21, 24* 57:*11* 60:*6, 10* 61:*6* 68:*20* 71:*11* 73:*1, 18* 85:*19* 86:*12* 88:*13* 89:*13* 90:*22* 91:*12* 92:*12*
**2020** 1:*1* 4:*9* 101:*7*
**21** 61:*23*
**215)391-4790** 2:*1*
**215)569-1999** 2:*1*
**215)665-2000** 2:*1*
**219-cv-05030** 4:*14*
**23** 61:*23*
**23rd** 68:*20* 71:*11* 73:*1, 18*
**24** 1:*1* 101:*7*
**24th** 4:*9*
**2950** 2:*1*
**29th** 60:*9*

**< 3 >**
**3:03** 1:*1* 4:*10*
**30** 45:*10* 99:*23*
**30th** 83:*1* 85:*7*

**< 4 >**

**4** 61:*23*
**4:21** 76:*5, 6*
**4:32** 76:*6, 8*
**40** 3:*1*
**4-23** 61:*25*
**447** 61:*25*
**4th** 47:*21*

**< 5 >**
**5** 3:*1*
**5:19** 98:*20*
**515** 2:*1*
**52** 3:*1*
**5th** 21:*9* 23:*15* 36:*18* 37:*3* 47:*4, 7, 24* 48:*1, 3* 56:*5*

**< 6 >**
**6** 97:*4, 5*
**61** 3:*1*

**< 7 >**
**7** 55:*15* 75:*24*
**7:28** 62:*1*

**< 9 >**
**97** 3:*1*

**< A >**
**abruptly** 46:*19*
**absolutely** 18:*13* 19:*17* 31:*18* 53:*8* 96:*18*
**absurd** 84:*3*
**acceptable** 53:*15*
**accurate** 102:*7*
**accusations** 47:*2*
**acknowledge** 15:*15, 19* 101:*5*
**acknowledged** 53:*14, 22*
**acknowledges** 90:*3*
**Act** 75:*24*
**acted** 75:*13*
**acting** 57:*6, 7*
**ACTION** 1:*1* 6:*21* 75:*21* 102:*13, 16*
**activities** 10:*9* 58:*6* 98:*1*

**addition** 69:*5*
**additional** 68:*19*
**addressed** 58:*8*
**addresses** 27:*14*
**administration** 10:22 96:*23*
**administrative** 18:22 59:*1, 9, 23* 60:*22* 61:*4* 97:*22*
**adult** 99:*19*
**advance** 47:*10*
**adverse** 75:*20*
**advice** 10:*16, 24* 11:*2, 23* 13:*25* 14:*3, 11, 15, 20, 21, 23* 16:*1* 18:*5, 8* 19:*25* 21:*20* 23:*11, 19, 22, 24* 24:*1, 5, 6, 16, 25* 25:*15* 26:*14, 17, 21, 22, 23* 27:*21* 28:*16, 20* 29:*15* 32:*12, 16, 18, 19, 25* 36:*21* 43:*16* 44:*21* 47:*1* 51:*12* 52:*9* 53:*2, 11, 19, 20, 21* 54:*7* 55:*24* 56:*8* 62:*9, 11, 14* 63:*4* 66:*7* 69:*2, 18* 70:*4* 77:*12, 15* 79:*18* 80:*8, 11, 16* 81:*3, 10* 82:*5* 85:*8, 10* 91:*25* 94:*11, 19* 95:*1, 4, 9, 17* 96:*8, 9*
**advised** 78:*14* 79:*12, 13*
**afternoon** 5:*4, 5*
**ago** 39:*3* 45:*11*
**agreed** 4:*2* 59:*6*
**ahead** 7:*2* 25:*6* 36:*1, 3, 4* 39:*1* 42:*12* 73:*11* 79:*19* 81:*15* 89:*1* 90:*7*
**AIPAC** 46:*9, 10, 11, 13*
**Airbnb** 46:*14*
**al** 1:*1* 4:*13*
**allegation** 34:*17* 38:*11* 65:*22*
**allegations** 12:*15, 23* 29:*24* 31:*20, 21* 32:*7*

**addition** 34:*2, 25* 36:*19* 37:*7, 16* 49:*20* 52:*4* 66:*16*
**allege** 35:*5*
**alleged** 12:*23* 28:*25* 29:*6, 12, 21* 38:*11, 17* 42:*22*
**alleging** 96:*16*
**allowed** 87:*24*
**amount** 44:*20* 53:*11*
**Amy** 10:*9, 14* 11:*3, 12*
**answer** 5:*16, 18, 19* 11:*1* 12:*20* 14:*19* 17:*25* 18:*2, 12* 21:*16, 24* 22:*11, 12* 23:*7, 18* 24:*4, 9, 13, 15, 17* 25:*1, 12, 13, 22* 26:*10, 11, 13, 21* 27:*9* 28:*3, 4, 22* 29:*9, 20* 31:*8, 15* 32:*1, 3, 24* 34:*10, 11, 21, 22* 36:*20* 37:*1, 24* 38:*1, 8, 14* 39:*20* 40:*5* 43:*25* 44:*4* 45:*6* 54:*5, 11, 13* 55:*1, 22* 57:*21* 59:*18* 61:*8, 19* 62:*16* 63:*8, 9, 10, 21* 64:*12, 14* 66:*21* 67:*3, 5, 11* 68:*7, 13, 16, 24, 25* 69:*5* 70:*9, 10, 14* 71:*14* 73:*23, 25* 74:*9, 10, 22* 76:*14, 16, 21* 77:*4, 7, 19* 78:*1, 7* 79:*7* 80:*23* 81:*15, 19* 82:*13, 14, 17, 18* 83:*4, 17, 22, 24* 84:*18, 24* 85:*22* 86:*15* 87:*23, 25* 88:*3* 89:*2, 20* 90:*3, 7, 10* 91:*1, 6* 93:*6, 14* 95:*11, 25* 96:*4*
**answered** 43:*20* 44:*9, 11* 49:*13* 53:*8* 62:*22* 63:*15, 16, 19, 24* 64:*1, 2, 13* 67:*7, 25* 73:*20* 77:*24* 78:*1* 81:*16, 17* 90:*13* 91:*14* 92:*17*
**answering** 35:*23* 81:*18*

Case 2:19-cv-05030-JDW   Document 126-17   Filed 04/20/21   Page 34 of 52

Deposition of Marc Fink                                      Lisa Barbounis v. Middle Eastern Forum, et. al.

answers  5:*14*  22:*14*
101:*8*
answer's  34:*4*  45:*5*
anybody  98:*3*
apologize  22:*1*
apparently  65:*17*
98:*1*
appear  5:*15*
APPEARANCES  2:*1*
appearing  4:*18*
appears  27:*23*
appropriate  28:*9, 17*
75:*2*  99:*5*
April  68:*20*  71:*10*
73:*1, 18*  75:*16*
argue  94:*24*
arm  46:*22*
asked  15:*15*  24:*24*
25:*2, 5, 7*  32:*3*  43:*17,
20*  44:*10*  46:*8, 19*
58:*23, 25*  59:*4*  61:*11*
63:*14*  73:*19*  77:*23*
86:*4*  90:*15*
asking  14:*3, 4, 14, 15,
16, 17*  23:*13, 22, 23*
24:*1, 2, 11*  28:*14*
30:*8*  32:*18, 19*  39:*1,
2, 4*  42:*21*  45:*22*
49:*15*  52:*2, 6*  56:*11*
62:*2, 18*  63:*2, 20, 22*
66:*5, 9, 20*  67:*19, 20*
69:*8, 9*  70:*5, 6, 14, 17,
18*  71:*16, 20*  77:*1, 9*
79:*5, 6, 13, 14*  86:*18,
19*  91:*21*  92:*10*
93:*16*
assaulted  37:*17*
assert  29:*14*  68:*8*
76:*23*  77:*8*  78:*8*
asserting  78:*2, 10*
assign  99:*4*
assists  6:*16*
ASSOCIATES  2:*1*
assume  5:*20*  20:*15,
20, 21*  21:*5*  54:*14, 17*
65:*20*  91:*14*  92:*13*
assuming  28:*6*  55:*11*
assumption  55:*4*
attached  99:*16*

101:*10*
attempted  83:*19*
attend  23:*14*
attended  46:*11*
attendees  46:*13*
attention  71:*24*  72:*1,
3*
Attorney  3:*1*  51:*24*
75:*2, 6*  102:*12, 15*
attorney-client  12:*21*
18:*2*  21:*18*  28:*3*
31:*9*  34:*10*  54:*12*
62:*16*  69:*6*  70:*10*
76:*17*
authority  18:*24*
57:*25*
avoid  31:*13*
aware  10:*19*  12:*15*
24:*20*  25:*9, 15, 16*
26:*19, 22, 24*  27:*6, 18*
43:*7*  65:*9*  82:*21*
86:*21*
awareness  24:*15*
awful  50:*15*

< B >
back  35:*16*  46:*13*
47:*5*  65:*18*  71:*1*
72:*19*  73:*9, 13*  76:*1,
7*  95:*15*
backfire  22:*20*  23:*1*
backfired  22:*18*
bad  48:*13, 14, 18*
49:*6, 12, 20*  50:*1, 13*
Ballpark  10:*3*  12:*4*
bankrupt  6:*22*
bar  46:*12*
BARBOUNIS  1:*1*
4:*12*  17:*22*  33:*13*
43:*8*  56:*3*  59:*11*
60:*10*  76:*11*  79:*1*
81:*25*  88:*9*
Barbounis's  18:*9*
barely  33:*12*
based  24:*13, 14*
36:*22*  37:*6*  38:*10*
59:*16*  62:*16*  68:*24,
25*  84:*1, 2, 3*  87:*18*
96:*5*
basically  48:*21*

basis  17:*13*  28:*2*
78:*11*  87:*13*
Bates-stamped  40:*25*
began  11:*11, 16*  12:*2*
46:*23*  65:*16*
beginning  1:*1*  20:*2*
57:*5*
behavior  50:*19*
believe  7:*7*  8:*12, 14*
12:*11*  19:*2, 8*  51:*15,
22*  60:*19, 25*  61:*1, 17*
62:*4*  73:*13, 15*  97:*3*
believed  52:*3*
bells  44:*17*
Bennett  46:*16*  50:*17,
18, 21*  65:*14*
best  11:*14*  13:*11, 14*
33:*5, 11*  92:*3*
better  10:*20*
biggest  37:*10*
Bill  98:*17*
blackmail  82:*7*  84:*16*
blackmailed  83:*1*
blackmails  83:*15*
block  27:*14*
Bloom  33:*18*
blur  12:*10*
boss  11:*22*  37:*11*
38:*15, 21*  39:*9*  42:*23*
48:*13, 14, 18, 21*  49:*7,
12, 20*  50:*1, 3, 13, 22*
75:*7, 9*
bottom  44:*2*
bounds  85:*23, 25*
Brady  56:*3*  57:*13*
59:*11*  88:*10*
break  75:*25*
briefly  6:*11*
bring  51:*4*
broad  76:*15*
brought  51:*8*  59:*14*
building  96:*4*
Bylaws  8:*4, 15*

< C >
call  22:*24*  43:*10*
65:*14*
called  8:*4*  32:*11, 14*
36:*18, 22*  37:*7, 8*
calling  87:*13*

calls  86:*14*  88:*15*
89:*15*
Campus  7:*15*
cancel  84:*11*
carefully  89:*8*  99:*2*
CARSON  2:*1*  3:*1*
5:*3, 6*  6:*1, 2*  9:*3, 12,
18, 24*  11:*10*  13:*1*
14:*2*  17:*4*  18:*7, 14*
21:*7, 22*  22:*2, 7, 10,
15, 20, 23*  23:*5, 12, 21*
24:*11, 19*  25:*2, 7, 8,
14, 20*  26:*9*  27:*12, 15,
17*  28:*8, 13, 24*  29:*5,
11*  30:*20*  31:*4, 11, 19*
32:*2, 5, 17*  33:*8*
34:*15*  35:*2, 24*  36:*9,
16*  37:*2*  38:*4, 5, 16,
24*  39:*19, 24*  40:*1, 4,
7, 14, 20*  41:*20*  42:*5,
17*  43:*5, 23*  44:*7, 15,
22*  45:*3, 17, 23*  47:*15*
48:*17*  49:*5, 10*  50:*25*
51:*17*  52:*21*  54:*18,
22*  55:*5, 14*  56:*1, 10,
23, 24*  57:*16*  58:*2, 22*
59:*19*  60:*8, 20*  61:*21*
62:*18, 20*  63:*1, 11, 17*
64:*7, 11*  66:*3, 11, 14*
67:*1, 6, 10, 13, 19, 23*
68:*1, 3, 12, 18, 23*
69:*8, 13, 20, 25*  70:*5,
16*  71:*9, 25*  72:*12*
73:*5, 16, 21*  74:*5, 12*
75:*5, 25*  76:*9, 18, 25*
77:*20, 25*  78:*4*  79:*25*
82:*10, 16, 20, 25*  83:*6,
9, 13, 18, 23*  84:*1, 4,
11, 15, 21, 25*  85:*5, 16,
21, 25*  86:*6, 9, 20, 25*
87:*15, 21, 24*  88:*1, 12,
17, 23, 25*  89:*5, 16, 19*
90:*6, 9, 12, 19*  91:*2,
10*  93:*4, 12, 19, 25*
94:*6, 14, 21*  95:*3, 6,
13, 18, 20, 23*  96:*3, 6*
97:*4, 7, 14, 17, 20*
98:*10, 13*
Case  4:*14*  52:*8*
74:*16, 19*  81:*24*  82:*7*

Case 2:19-cv-05030-JDW   Document 126-17   Filed 04/20/21   Page 35 of 52

Deposition of Marc Fink                                      Lisa Barbounis v. Middle Eastern Forum, et. al.

83:20  84:6, 8, *12*
93:15  102:17
**categorization**  44:6
84:19
**Catriona**  57:13
59:11  88:9
**CAVALIER**  2:1
5:23  9:21  11:5
12:17  13:23  17:24
18:11  21:1, 16  22:5,
8, 13, 16  23:2, 8, 16
24:8, 14, 22  25:4, 11,
18  26:6  27:8, 13
28:1, 11, 19, 21  29:2,
8  30:14, 25  31:7, 14,
23  32:4, 15, 22  33:3
34:8, 19  35:15  36:7,
24  37:22  38:13, 22
39:12, 15, 21, 25  40:2,
12  41:19, 25  42:16
43:2, 19  44:5, 10, 18
45:1, 16, 20  47:12
48:15  49:4, 8  50:20
51:16  52:17  54:10,
21, 24  55:8, 10, 13, 20
56:6, 20  57:15, 20
58:20  59:17  60:4, 15
61:18  62:15, 22  63:7,
14  64:5, 9  66:1, 9, 24
67:4, 8, 16, 21, 25
68:9, 21  69:1, 4, 11,
16, 22  70:2, 8  71:4, 8,
18  73:2, 19, 23  74:7
75:1, 4  76:2, 12, 21
77:17, 23  79:22  82:8,
12, 19, 23  83:3, 7, 10,
16, 21, 25  84:2, 9, 13,
17, 23  85:2, 15, 20, 22
86:4, 13, 23  87:12, 18,
22  88:11, 14, 19  89:3,
14, 18  90:2, 8, 17, 24
91:5  93:1, 7, 17, 21
94:3, 12, 18, 24  95:11,
16, 19, 22  96:1  97:11
98:16
**cc**  87:4  90:21
**cc'd**  52:10, 11, 13
59:2  64:17  67:23
85:13, 18  87:6, 8

88:8  89:11  91:7, 14
92:4, 7, 10, 13
**Center**  2:1
**certain**  43:7
**certainly**  24:25  53:1
**certification**  4:4
**certify**  102:6, 11
**cetera**  30:7
**chances**  43:1
**change**  45:5  99:6, 8,
10  100:2
**changed**  22:12  44:4
45:6
**changes**  16:12  23:7
26:11  99:4, 15  101:9
**characterization**
48:12  49:18  82:9
89:22
**characterize**  70:11,
19  74:15
**characterized**  47:9
48:4
**charge**  58:19  61:10
**charges**  60:2, 11
61:9, 14
**check**  23:1
**checked**  78:24
**Cherry**  16:21
**chief**  6:14  9:10
**CIVIL**  1:1  75:24
**claims**  59:15
**clarify**  86:17
**clarifying**  86:5
**clear**  18:18  35:22
**client**  18:15  64:16
66:22  67:20, 22  68:4,
19  69:20  70:6, 13
78:18, 19  81:21  82:7,
21, 22  83:15, 20  84:5
85:6  86:2  90:6  94:7
96:20
**clients**  33:9, 12  70:6
85:14, 18  86:3, 10, 18
89:12  90:4, 22  92:11
**client's**  66:15  71:17
74:16
**close**  9:19  68:11
**cluttering**  93:22
**code**  22:3

**collaborations**  46:18
**collect**  75:11
**column**  99:5
**come**  24:21  45:13
75:15
**comedic**  66:12, 16, 17
**coming**  24:7  34:25
35:3  49:21
**comings**  11:9
**Commonwealth**  1:1
102:5
**communicating**  70:7
**communications**
14:17  18:2  21:19
69:9  78:18  86:2, 3
**competent**  99:18
**complained**  50:18, 21
91:3
**complaining**  90:4
91:8
**Complaint**  77:14, 18
79:10
**completely**  70:20
72:13  94:19
**concerned**  49:19, 22
50:1  73:8, 12
**concerning**  39:10
49:11
**concerns**  92:11
**concluded**  98:20
**conclusion**  66:10
86:14  87:14  88:16
89:15
**conduct**  38:12  53:14
68:4, 5, 19  69:14
91:4, 8
**conference**  1:1  2:1
**confidences**  12:21
18:1  21:19  28:4, 15
31:10  34:11
**confident**  70:22
72:15
**confirm**  60:13
**confirmed**  43:6
**confuse**  7:24
**confusion**  18:19
**connection**  16:24
24:6  36:19  38:12
95:15  97:22

**consider**  84:15
**consistent**  45:6
**constitutes**  75:23
**contents**  53:10  62:8,
10, 12, 13  63:4
**context**  52:9  69:18
77:12  94:10
**continue**  46:5, 6
**continued**  56:3
**continues**  94:8
**contract**  10:24
**contractor**  61:3
**conversation**  43:10
65:15  95:21
**conversations**  46:21
**copied**  41:4  42:8
52:25  62:7  64:24
65:4, 8  74:3  93:3, 10
94:9
**correct**  16:3  18:9
20:25  25:16, 17  27:4,
25  28:6, 7  29:6, 13
30:22  31:6  41:3, 6, 7,
15, 18  47:4, 7  48:13
52:10  55:7  57:14
58:9, 15  59:10  60:24
64:20  68:5, 20  69:15
72:25  73:1  91:12
92:5  96:21  101:7
**correctly**  71:21, 22,
24  72:6, 9, 22, 23
73:17  74:24
**correspond**  10:8
**couch**  46:15
**couches**  46:9
**counsel**  4:3, 18  6:8,
13  7:18, 23  10:25
79:2, 4, 6, 9, 24  80:2,
7, 13  82:1, 4  102:12,
15
**counselor**  6:7
**counterclaim**  76:20
77:3, 6, 22  78:6, 12,
25  79:11, 21  80:3, 5
81:2, 5, 23
**counterclaims**  76:10
**couple**  71:19  75:17
**course**  70:23  72:16
**Court**  1:1  4:16, 17,
18, 19  8:25  9:6, 13,

Case 2:19-cv-05030-JDW   Document 126-17   Filed 04/20/21   Page 36 of 52

Deposition of Marc Fink                                    Lisa Barbounis v. Middle Eastern Forum, et. al.

17   17:2   38:3   39:13
44:12   72:10   83:11
99:22   102:4, 23
**COZEN**   2:1   80:14
**crazy**   48:21
**current**   65:16
**customers**   35:5, 13

**< D >**
**D1**   3:1   52:22
**D13**   3:1   40:16, 17
**D18**   3:1   97:21
**D-18**   97:5
**D2**   3:1   40:17, 25
**D21**   61:23
**D21-23**   3:1
**D29**   97:23
**D-29**   3:1
**Daniel**   2:1   8:19
20:19, 21   32:20   43:6
53:3   54:2, 8   61:11
64:23   70:7   83:19
**date**   4:9   99:11
101:15, 21   102:8
**dated**   101:6
**dates**   13:11   47:14, 16
**Dave**   5:24   22:18
51:25   75:1
**DAVID**   2:1
**day**   26:20   41:13
47:6   50:9
**days**   12:3   65:18
99:23
**deal**   41:18
**Dear**   43:6
**decide**   98:17
**decided**   81:17
**decision**   82:2, 3, 6
**declare**   22:21
**decline**   96:1
**Defendant**   2:1
**Defendants**   1:1
**define**   90:24
**definitely**   34:24   35:7
37:10
**definition**   23:1
**deflating**   71:2   72:20
**Delaney**   57:14   59:12
88:9

**deposition**   1:1   4:11
5:7   12:19   22:17
29:4   31:13   36:10
39:23   85:4   88:20
98:20   99:2, 3, 13, 16,
23   101:6   102:7, 14
**depositions**   5:8
33:22   95:15
**deputy**   57:7   75:7
**DEREK**   2:1
**describe**   6:11   33:5
64:3, 5
**DESCRIPTION**   3:1
**despite**   9:9
**details**   30:18   48:23
**difference**   65:6
**different**   7:15   11:9
15:1   25:5   39:5
45:22   63:22   64:9
65:4   66:6, 21   67:17
71:1   72:19   79:22
82:23   86:5   91:5
**difficult**   30:6   50:23
53:17   92:15
**dinner**   46:10, 11
**direct**   90:21
**directly**   11:4   60:1
87:2, 5   89:10   92:2
**director**   6:15, 24   7:8,
10, 16, 25   8:21   9:25
10:10   11:3, 8, 18
13:8, 10, 15   53:20
57:7   61:5   75:7
**directors**   10:6
**disagree**   75:4   80:21
89:21
**disclosing**   34:21
**discouraged**   70:21
72:14
**discrimination**   13:21
14:9   15:12, 22   16:24
17:7, 10, 14, 23   18:10
19:15   20:6, 12   21:10
35:12   56:4   59:15
60:2   75:21
**discuss**   28:18   30:12
31:12   37:7   38:6
57:23   65:16

**discussed**   29:24
30:12   31:22   37:13
47:3   48:3, 9   57:5
**discussing**   46:18
**dispute**   42:10   58:16
62:24   64:18   65:12
73:4   74:3
**disputing**   41:11, 12
**disregarded**   17:21
**distinction**   64:25
**DISTRICT**   1:1   4:13
**divulge**   14:3   28:14
77:2
**divuling**   12:21   18:1
28:23   31:9   32:25
34:10   54:12   76:16
**docket**   77:16   78:24
79:3, 7, 8
**docs**   56:22
**document**   8:5, 7
27:10, 11   40:13   41:9
56:19   61:22   77:18
83:14   84:4
**documents**   8:3
52:15   84:19
**doing**   26:18   36:9
44:14   66:17   67:2, 20,
22   68:11   89:20   97:9
**doubt**   28:7
**draft**   83:14
**drank**   46:7
**drill**   5:9
**drinking**   46:12
**driving**   48:21
**due**   21:9   25:15
75:21
**duly**   4:23
**duress**   83:10
**dwalton@cozen.com**
2:1

**< E >**
**ear**   46:24
**earlier**   17:25   22:18
28:2
**easier**   7:6   18:4
**East**   6:7, 8, 12   7:7,
11, 14, 20   8:4, 10
10:1, 15   11:17   12:2
13:3, 6, 20   14:8

15:21   16:2, 7, 22
17:5   20:2   21:8
32:25   34:6, 16   51:13
55:18   77:13   78:14,
25   81:22   96:16
**EASTERN**   1:1   2:1
4:10, 12, 13
**easy**   26:12
**eat**   68:10
**editor**   6:14   9:10
**EEOC**   60:3, 11
**Efraim**   9:25   10:6
**Efriam**   8:20, 23, 24
9:15
**either**   10:24   31:6
55:3   65:9   85:12
87:3   88:8   89:10
90:21
**elevated**   10:23
**Eleven**   2:1
**E-mail**   3:1   18:15
19:1, 4   27:14   40:8,
11, 14, 23   41:3, 5, 14,
24   42:7, 9, 15, 22
43:18, 22   44:8, 17, 20,
21   45:4, 9, 12, 18, 25
46:3   47:6, 10   51:4
53:11   56:25   57:3, 4,
8, 12, 24   58:15   59:13
60:9   61:25   62:4, 8,
10, 12, 14, 19, 21, 25
63:2, 5, 12, 18, 20, 23,
25   64:4, 6, 8, 15, 19
65:1, 13   67:24   69:10,
11, 14, 16, 23   70:3
71:10   72:25   74:2, 4,
6, 23   87:4, 7, 11   88:8
89:10, 11   90:20
91:23   92:2, 6, 9, 25
93:3, 6, 11   94:1, 5, 9,
20   96:8   97:8, 15
**e-mailed**   50:9
**e-mails**   19:10   41:13,
16   52:14   56:16
61:24   65:3   68:16
73:7   75:6   85:13, 17
87:9   90:1   91:8, 14,
16, 18   92:4, 7, 11, 13,
15, 22   96:12, 24   97:1

Case 2:19-cv-05030-JDW   Document 126-17   Filed 04/20/21   Page 37 of 52

Deposition of Marc Fink                                                    Lisa Barbounis v. Middle Eastern Forum, et. al.

**e-mail's** 94:*25*
**emphatically** 96:*13*
**employed** 102:*12, 15*
**employee** 15:*10, 16,*
*19* 16:*2, 5* 35:*1*
60:*21, 23* 61:*4*
102:*15*
**employees** 12:*16*
16:*7, 13, 23* 17:*6, 12*
18:*23* 35:*3, 7* 37:*17*
53:*17* 56:*2* 58:*24*
59:*1, 2, 3*
**employment** 10:*15*
11:*12, 13, 16* 12:*1, 2*
17:*17* 19:*16* 20:*1, 3*
75:*20*
**ended** 10:*15* 11:*13*
**engage** 82:*2*
**English** 70:*12*
**entered** 22:*24*
**entire** 25:*24* 37:*20*
63:*20, 23* 88:*20*
**E-P-H** 9:*20*
**E-P-H-R-A-I-M** 9:*22*
**errata** 99:*5, 9, 11, 16,*
*21* 100:*1* 101:*10*
**ESQUIRE** 2:*1*
**establish** 95:*4*
**estimate** 16:*10* 91:*16*
92:*18*
**et** 1:*1* 4:*12* 30:*7*
**event** 30:*18, 21* 46:*11*
**Everest** 4:*15, 17*
**Everybody** 50:*14*
54:*15, 17* 60:*18*
98:*13*
**everybody's** 74:*1*
**exactly** 25:*4* 44:*1*
63:*25*
**EXAMINATION** 5:*1*
**examined** 4:*24*
**exclaiming** 70:*22*
72:*15*
**Excuse** 57:*1* 96:*25*
**Exhibit** 3:*1* 52:*20*
61:*20* 97:*6, 19*
**Exhibits** 3:*1* 40:*18*
98:*15*
**existence** 8:*11*

**expert** 11:*8* 70:*13*
87:*22* 90:*18*
**explain** 57:*10* 94:*22*
**explained** 57:*22*
**expressed** 43:*10*
**extent** 12:*20* 14:*22*
17:*25* 18:*25* 23:*17*
24:*24* 25:*12* 27:*9*
28:*2, 22* 29:*9* 31:*8*
34:*9, 21* 43:*14* 44:*24*
54:*11, 25* 55:*22* 69:*6*
70:*8* 71:*20* 74:*9*
86:*15*
**external** 6:*16* 7:*13*
**extremely** 71:*2* 72:*20*

< F >
**face** 22:*18*
**fact** 9:*9* 24:*14*
35:*17* 59:*22* 76:*14*
86:*14* 87:*19* 88:*15,*
*21* 89:*15* 90:*17*
**fact-based** 90:*25*
**facts** 88:*21*
**fair** 11:*11* 12:*11*
**familiar** 8:*7* 13:*13*
57:*8, 9* 75:*10, 23*
80:*8, 10, 25* 81:*1, 3, 6,*
*8, 20, 23, 24*
**fast** 5:*11* 92:*24*
**faster** 71:*15*
**favor** 68:*9*
**fed** 93:*8, 12, 20*
**feel** 46:*8* 70:*22*
72:*15* 86:*15*
**felt** 30:*5*
**Fifteen** 16:*11*
**filed** 60:*2, 10* 76:*11*
78:*25* 84:*6, 8*
**filing** 4:*4* 99:*17, 22*
**financial** 58:*6*
**financially** 102:*16*
**find** 24:*12* 26:*5*
70:*25* 72:*18*
**Find-2** 40:*18*
**fine** 92:*24*
**finish** 24:*22, 23*
39:*16*
**FINK** 1:*1* 3:*1* 4:*11,*
*22* 5:*4* 6:*3, 5* 21:*23*

40:*17* 61:*23* 80:*18*
97:*4, 12* 101:*3*
**Fink-1** 3:*1* 40:*15, 17,*
*18*
**Fink-2** 3:*1* 40:*25*
**Fink-3** 3:*1* 52:*20, 23*
**Fink-4** 3:*1* 61:*20, 23*
**Fink-6** 3:*1* 97:*6*
**Fink-7** 3:*1* 97:*19, 21,*
*23*
**first** 4:*23* 7:*22* 9:*13*
40:*11, 14* 44:*16*
56:*19* 95:*3*
**five** 46:*3, 5* 56:*21*
59:*6, 10, 14, 20* 76:*1*
90:*15*
**foam** 43:*2*
**focus** 37:*20*
**followed** 13:*3*
**Following** 46:*10* 99:*9*
**follows** 4:*24*
**foregoing** 101:*6*
102:*6*
**Forget** 81:*13*
**forgot** 19:*13*
**form** 4:*5* 11:*5*
12:*18* 17:*24* 18:*11*
21:*1* 28:*1, 19, 21*
29:*9* 30:*14* 31:*7, 23*
34:*8, 19* 37:*22* 38:*13,*
*22* 39:*12* 41:*19, 25*
42:*16* 43:*19* 44:*18*
45:*1, 16* 47:*12* 48:*15*
49:*4, 8* 50:*20* 51:*16*
52:*17* 54:*24* 55:*9*
57:*15, 21* 58:*20*
59:*17* 60:*4, 15* 62:*15*
63:*7* 68:*21, 24, 25*
69:*1, 4* 71:*5, 18*
76:*12* 82:*8* 83:*3*
85:*15* 86:*13* 87:*12*
89:*18* 99:*4, 8*
**forth** 58:*7* 102:*9*
**FORUM** 1:*1* 2:*1*
4:*12* 6:*7, 9, 12* 7:*7,*
*12, 14, 20* 8:*4, 10*
10:*1, 15* 11:*17* 12:*2*
13:*3, 6* 14:*8* 15:*22*
16:*3, 7, 23* 17:*6* 20:*2*
21:*8* 33:*1* 34:*6, 16*

51:*13* 55:*18* 69:*19*
77:*13* 78:*14, 25*
81:*22* 96:*16*
**Forum's** 13:*20*
**forward** 83:*5*
**foundation** 28:*22*
30:*15* 31:*8* 35:*16*
54:*25*
**four** 12:*7* 59:*6*
**free** 86:*16*
**F-R-Y-A-M** 9:*18*
**full** 6:*3* 61:*2* 88:*6*
**full-time** 60:*21, 24*
61:*1, 7*
**fundraising** 6:*15*
58:*6*
**funny** 42:*18* 66:*4, 5,*
*19* 88:*17*
**further** 57:*12* 58:*3*
102:*11, 14*

< G >
**Gabrielle** 33:*18*
**games** 36:*14* 42:*3*
**Gannone** 2:*1* 4:*15*
**Gary** 60:*14, 16, 18*
65:*18, 19*
**gender** 59:*16*
**general** 35:*11, 18, 21*
**generally** 71:*20*
75:*23* 92:*10*
**gentleman** 8:*20*
**Gentlemen** 39:*13*
44:*13* 83:*11*
**getting** 46:*9* 69:*23*
80:*16* 90:*16*
**gist** 50:*23*
**give** 10:*24* 12:*18*
14:*23* 15:*25* 18:*8*
21:*17* 34:*9* 39:*16*
51:*12* 52:*7* 62:*14*
87:*20* 90:*3, 25* 94:*18*
95:*24* 96:*7*
**given** 10:*16* 11:*2*
14:*11, 14, 19, 21*
19:*24* 33:*20* 67:*4*
80:*8, 10* 81:*4, 10*
85:*8, 10* 94:*11, 25*
96:*20* 101:*8*

Case 2:19-cv-05030-JDW   Document 126-17   Filed 04/20/21   Page 38 of 52

Deposition of Marc Fink                                    Lisa Barbounis v. Middle Eastern Forum, et. al.

**giving** 22:*13* 26:*16*, *21, 22* 27:*21* 28:*3* 29:*15* 39:*4* 52:*9* 53:*2* 62:*11* 79:*18* 82:*5*

**Go** 7:*2* 13:*9* 25:*6* 36:*1, 3, 4* 39:*1* 42:*12* 56:*20* 73:*11* 76:*2* 79:*19* 81:*15* 89:*1* 90:*7*

**goes** 20:*15* 26:*10* 27:*20* 32:*12, 16* 60:*17*

**going** 5:*10, 19, 24* 8:*9* 9:*8* 12:*17, 18* 13:*11* 18:*16* 19:*5* 21:*17* 22:*5, 8* 23:*3, 9* 24:*8, 12, 20, 23, 25* 26:*12, 13, 19* 27:*8* 29:*3, 8, 14* 30:*25* 33:*4* 34:*9* 35:*15* 38:*6* 40:*1, 12, 15, 16, 17* 44:*1, 5* 45:*5, 7* 46:*12* 48:*24* 50:*3* 51:*23, 25* 52:*12, 16* 55:*8* 56:*19* 63:*8, 10* 64:*12, 13* 66:*10, 21* 67:*2, 16* 68:*6, 10* 70:*14* 71:*4* 74:*22* 75:*25* 76:*14, 23* 77:*4, 7* 78:*7* 80:*22* 81:*16* 82:*14, 18* 84:*18, 20* 89:*1, 7* 90:*2, 10* 93:*7* 95:*16*

**goings** 11:*9*

**goings-on** 13:*14*

**GOLD** 2:*1* 98:*19*

**Good** 5:*4, 5* 12:*3* 70:*24* 72:*17*

**goodness** 10:*2*

**gotten** 17:*19*

**grandstand** 42:*3*

**gratuitous** 31:*1* 93:*23*

**Gregg** 2:*1* 10:*11* 19:*23, 24* 20:*2, 9, 25* 21:*11, 15* 27:*24* 30:*1* 37:*12* 38:*12* 42:*23* 43:*8, 11* 46:*7, 14, 15, 19, 21* 48:*13* 49:*1*

**giving** 50:*22* 53:*12, 13* 65:*18, 22* 68:*5, 20* 69:*15* 70:*25* 72:*18* 73:*8, 12* 91:*3, 8* 92:*12* 94:*7*

**grew** 8:*1*

**grievances** 30:*1, 5*

**GROUP** 2:*1*

**guess** 10:*20* 13:*7* 31:*2* 37:*25* 85:*1*

**guests** 46:*11*

**guy** 11:*24*

**guys** 21:*24* 22:*2* 72:*11* 79:*15*

**< H >**

**handbook** 15:*10, 16, 19*

**hands** 38:*18* 39:*7* 42:*23*

**hanging** 74:*21*

**happen** 39:*25* 40:*1*

**happened** 29:*19* 47:*8* 51:*15, 22*

**happens** 59:*3*

**happy** 19:*9* 26:*2* 27:*1* 29:*20* 36:*25* 57:*23* 72:*7* 75:*9* 95:*8*

**harass** 6:*21*

**harassed** 29:*22*

**harasser** 28:*18, 25* 29:*6, 12*

**harassment** 12:*15* 13:*2, 6, 21* 14:*9, 20, 21, 24* 15:*5, 13, 23* 16:*25* 17:*7, 10, 14, 23* 18:*10* 19:*16* 20:*7, 12* 21:*10* 29:*25* 30:*3, 8, 12, 13* 31:*21* 32:*8* 33:*10, 14* 34:*18, 25* 35:*5, 12* 36:*19* 37:*7, 10* 49:*21* 51:*1* 56:*5* 59:*16* 75:*21* 96:*16*

**hard** 37:*11* 38:*15, 21* 39:*9* 48:*21* 50:*3* 70:*21* 72:*14*

**hardass** 50:*22*

**header** 27:*13*

**hear** 33:*22*

**heard** 34:*13* 70:*23* 72:*17* 90:*8*

**held** 6:*24* 7:*3, 9* 30:*12* 31:*12*

**he'll** 88:*21*

**help** 18:*18* 20:*14* 51:*10* 53:*7* 83:*14* 92:*23*

**hereinbefore** 102:*8*

**Hill** 16:*21*

**hire** 10:*24* 80:*14* 82:*1*

**hired** 7:*19, 20, 22* 8:*16, 18* 80:*7, 13*

**hiring** 11:*19, 24*

**history** 96:*15*

**hold** 21:*9* 40:*15* 97:*12*

**holds** 16:*23*

**Hollin** 8:*6*

**home** 16:*19*

**honest** 22:*14*

**honestly** 12:*6*

**hour** 16:*17* 26:*17* 48:*24*

**hours** 37:*25* 38:*7*

**house** 6:*8*

**Huh** 82:*11*

**hundred** 8:*13* 14:*25* 39:*5*

**hundreds** 41:*13*

**< I >**

**ID** 3:*1*

**idea** 22:*22* 33:*21, 22, 25* 34:*14* 43:*3* 61:*11, 15* 91:*17* 92:*17, 21* 96:*22*

**identification** 40:*19* 52:*20* 61:*20* 97:*6, 19*

**identified** 24:*17*

**identify** 62:*2*

**illegal** 83:*14*

**imagine** 76:*15*

**implicate** 74:*6, 17*

**implication** 31:*15* 68:*1* 77:*5* 78:*3, 9*

**imply** 22:*16*

**important** 31:*21* 32:*6*

**impression** 39:*1, 2, 4, 5*

**inappropriate** 36:*10* 39:*8* 42:*24* 43:*11* 50:*19* 51:*24* 66:*6, 20* 68:*5* 69:*14* 93:*14* 96:*5*

**inappropriately** 78:*2* 93:*13*

**include** 56:*16* 88:*24*

**included** 25:*23*

**includes** 59:*10*

**Including** 50:*17*

**incorrect** 31:*1*

**indecipherable** 93:*21*

**indicates** 69:*14*

**indiscretions** 43:*7, 12*

**inflammatory** 83:*8* 84:*3*

**information** 34:*22* 54:*12* 78:*13*

**informed** 43:*11*

**informing** 25:*24*

**in-house** 6:*13* 7:*23* 82:*4*

**inject** 84:*19*

**injected** 87:*19*

**instruct** 24:*9* 62:*16* 76:*14* 83:*21, 23*

**instructing** 24:*17* 63:*9* 69:*5* 93:*13*

**instruction** 12:*19* 13:*24* 17:*25* 21:*18* 23:*17* 25:*13* 26:*7* 28:*12* 32:*23* 34:*9, 20* 54:*11* 55:*21* 56:*7* 64:*10* 66:*2, 25* 68:*22* 74:*8* 83:*16* 93:*2* 94:*4, 13*

**instructions** 25:*12, 19* 76:*13* 99:*1*

**intending** 65:*7*

**intentions** 53:*15*

**interested** 102:*16*

**interesting** 6:*23*

**interim** 17:*13*

**intern** 43:*12*

**internal** 65:*17*

**interview** 11:*22*

Deposition of Marc Fink                                                      Lisa Barbounis v. Middle Eastern Forum, et. al.

**interviewed** 11:*20*
19:*23* 54:*8, 15, 17, 20*
**interviewing** 11:*25*
**investigate** 19:*15*
20:*12, 25* 34:*17, 24*
**investigated** 34:*1*
53:*4, 10*
**investigation** 19:*19*
53:*7* 54:*3, 6* 96:*14*
**investigations** 96:*11*
**investigative** 20:*4*
**invited** 21:*15* 23:*14*
24:*2* 25:*10* 27:*24*
28:*10, 18*
**involve** 84:*20*
**involved** 8:*2* 10:*21*
11:*19, 24* 12:*24* 13:*7*
14:*6, 7* 18:*6* 51:*14*
54:*16* 55:*17, 24*
60:*17* 82:*4, 6, 11*
83:*15* 96:*14, 22*
**involves** 6:*14*
**involving** 20:*9* 21:*10*
59:*15* 68:*5, 20*
**irrelevant** 88:*20*
94:*20*
**Islamist** 7:*15, 25*
**Israel** 43:*9*
**Israeli** 9:*15*
**issue** 10:*23* 23:*10, 24,*
*25* 24:*16* 35:*7, 8*
37:*10, 13*
**issues** 47:*2* 51:*11*
56:*4, 17* 78:*15* 90:*22*
91:*24, 25* 96:*10*

**< J >**
**Jersey** 16:*21*
**job** 6:*6* 20:*11* 51:*10,*
*12* 70:*15, 18* 74:*15*
**John** 51:*25* 75:*1*
**JONATHAN** 2:*1*
**July** 61:*6*
**June** 60:*9*
**junkie** 53:*23*
**jury** 68:*17* 71:*17*

**< K >**
**K-A-R** 9:*10*

**Karsh** 8:*20, 23, 24*
9:*2, 4, 25* 10:*7*
**K-A-R-S-H** 9:*11*
**Kassam** 46:*16*
**Keep** 5:*14* 44:*13*
65:*9*
**kind** 6:*11* 17:*13*
19:*18* 61:*5*
**Knew** 65:*18*
**knife** 43:*14* 44:*24*
**know** 5:*6, 9, 17* 6:*13*
9:*19* 10:*12, 13, 14*
11:*23* 12:*1* 14:*4, 8,*
*17* 15:*6, 21* 16:*11, 12,*
*15, 22* 17:*5, 8, 12, 16*
20:*14* 21:*3* 23:*13*
24:*2* 31:*5* 33:*19, 20,*
*21, 24* 34:*1, 4* 35:*9,*
*20* 36:*6* 40:*22* 42:*19,*
*20* 45:*7, 20* 46:*1, 17*
47:*19, 23, 24* 49:*14,*
*22* 51:*9* 52:*8, 15*
53:*25* 54:*8, 15* 55:*2,*
*6, 11, 16* 56:*2, 11*
58:*21* 61:*8* 63:*25*
66:*15* 67:*21* 68:*6*
71:*12, 23* 73:*8, 12*
74:*19* 75:*19* 76:*10,*
*19* 77:*2, 6, 11, 21*
78:*6, 12, 13* 80:*12*
81:*5, 21* 82:*12* 83:*19*
85:*6* 91:*20, 22* 92:*14*
93:*9*
**knowing** 60:*17, 18*
**knowledge** 11:*14*
13:*12, 15, 19* 14:*22*
20:*11* 21:*8* 33:*11, 15,*
*17* 56:*18* 84:*22*
88:*22, 24* 92:*3*

**< L >**
**lack** 28:*22* 30:*15*
31:*8* 35:*16*
**lap** 46:*23*
**laughed** 66:*18*
**laughing** 66:*13*
**LAW** 1:*1* 2:*1*
**lawfare** 6:*17, 19, 20*
7:*5, 11*

**lawyer** 35:*25* 36:*3*
55:*12* 66:*11* 88:*2, 18,*
*19* 93:*5*
**leading** 80:*5*
**Leah** 33:*24* 43:*12*
**learned** 12:*22, 23*
59:*21* 73:*14* 74:*20*
**leave** 46:*20*
**Legal** 6:*15, 21, 24*
7:*8, 10, 16, 17* 10:*16,*
*23* 11:*2* 12:*23* 13:*25*
14:*3, 11, 14, 20, 21, 23*
15:*25* 18:*1, 5, 8*
19:*24* 21:*20* 23:*11,*
*19, 22, 24* 24:*1, 5, 6,*
*16, 24* 25:*15* 26:*13,*
*16, 21, 23* 27:*21*
28:*16, 20* 29:*15*
32:*12, 16* 35:*7* 36:*21*
43:*16* 44:*20* 47:*1*
51:*12* 52:*9* 53:*2, 11,*
*19, 20, 21* 54:*7* 55:*23*
56:*8* 59:*21* 62:*9, 11,*
*14* 63:*4* 66:*7, 9* 69:*2,*
*18* 70:*4* 74:*20* 77:*12,*
*15* 79:*18* 80:*8, 11, 16*
81:*3, 10* 82:*3, 5* 85:*8,*
*10* 86:*14* 87:*13*
88:*15* 89:*15* 90:*4, 18*
91:*25* 94:*11, 18, 25*
95:*4, 9, 17* 96:*7, 9*
**legitimate** 62:*25*
83:*4, 6*
**lesson** 73:*14*
**letter** 71:*6, 17* 72:*2, 4*
**letting** 93:*9*
**Levy** 2:*1*
**Liberty** 2:*1*
**lies** 30:*24*
**life** 30:*19, 21*
**line** 51:*24* 100:*2*
**LinkedIn** 12:*9, 11*
**LISA** 1:*1* 4:*12*
17:*22* 33:*13* 43:*8, 9*
46:*15, 22* 59:*11*
60:*10* 78:*25* 81:*25*
88:*8* 97:*23*
**literally** 52:*13*
**litigation** 84:*7*

**living** 46:*14*
**lodge** 21:*17* 29:*2*
**lodging** 22:*14*
**logging** 98:*12*
**long** 6:*23* 7:*3* 8:*10*
31:*15* 38:*6* 60:*6*
**look** 19:*9* 26:*2* 27:*2*
52:*15, 19* 61:*23*
78:*23* 79:*8*
**looked** 8:*3* 40:*11, 15*
64:*1* 79:*3, 6*
**looking** 27:*12, 13*
28:*5* 47:*16, 20* 56:*21*
62:*7* 69:*10*
**looks** 27:*5* 97:*16*
98:*9*
**loop** 65:*10*
**lot** 6:*14* 15:*1* 30:*1*
37:*9* 47:*1* 51:*13*
65:*4* 71:*13* 87:*8*
96:*9*

**< M >**
**maintain** 14:*4*
**maintained** 34:*2*
**majority** 50:*2*
**making** 46:*8* 64:*25*
92:*15* 99:*8*
**male** 58:*24* 60:*23*
**males** 50:*17*
**management** 10:*21*
11:*1* 14:*12* 15:*25*
55:*25* 60:*18*
**manager** 18:*9, 16*
20:*16* 60:*19*
**managing** 11:*8* 19:*5*
**MARC** 1:*1* 3:*1*
4:*11, 22* 6:*5* 21:*16*
39:*15* 48:*16* 58:*8*
70:*8* 71:*8* 73:*24*
76:*2* 82:*12* 83:*4*
86:*15* 91:*6* 98:*17*
101:*3*
**Marie** 57:*13*
**MARKED** 3:*1* 40:*18,*
*25* 52:*20* 61:*20* 97:*6,*
*19*
**Market** 2:*1*

Case 2:19-cv-05030-JDW   Document 126-17   Filed 04/20/21   Page 40 of 52

Deposition of Marc Fink                                    Lisa Barbounis v. Middle Eastern Forum, et. al.

**Marnie** 13:*15* 20:*17, 19* 46:*16* 59:*11* 65:*21*

**massive** 44:*20* 53:*11*

**materials** 6:*15*

**Matt** 46:*16, 21* 65:*14*

**matter** 4:*12* 10:*17* 26:*23* 41:*16* 53:*4* 67:*17* 76:*13*

**matters** 53:*13*

**Matthew** 50:*17, 18, 21*

**McNulty** 33:*16* 38:*18* 42:*7, 14* 56:*3* 57:*13* 59:*11* 60:*10* 64:*19* 66:*22* 67:*14* 88:*9*

**mean** 18:*3* 36:*12* 37:*24* 44:*1* 45:*21* 48:*19* 51:*25* 52:*12* 57:*10, 23* 64:*12* 68:*6* 70:*12* 71:*7, 13, 14* 74:*1, 25* 75:*14* 78:*19, 21* 80:*21* 81:*12* 84:*4, 25* 87:*16* 96:*3, 13*

**means** 53:*25* 58:*6* 78:*17*

**meant** 46:*8* 48:*20*

**measures** 20:*4* 55:*17*

**meeting** 17:*20* 21:*9, 12, 13, 15* 23:*15* 24:*7, 21* 25:*10, 25* 26:*5, 20, 24* 27:*7, 19, 24* 28:*18* 29:*19, 21, 25* 30:*2, 9, 12, 18* 31:*6, 12, 22* 32:*7, 11, 21* 33:*6* 36:*18* 37:*4, 6, 11, 14* 38:*18* 39:*2* 47:*5, 9, 11, 22, 24* 48:*3, 5, 9* 49:*16, 18* 50:*3, 9, 11, 19, 24* 51:*2, 5, 8, 14* 52:*5, 6* 69:*21*

**MEF** 43:*12* 46:*10, 12* 65:*16* 76:*11* 81:*24*

**MEF's** 35:*11, 17, 20*

**member** 11:*21*

**memo** 25:*16, 23* 26:*1, 3* 27:*1, 3, 22* 28:*5* 29:*7, 13* 32:*20*

**memory** 32:*9* 41:*8* 48:*4*

**men** 46:*17, 19, 20, 24* 59:*8*

**mentioned** 43:*13* 44:*23* 46:*6*

**Merville** 33:*24* 34:*3* 43:*13*

**message** 22:*3*

**met** 82:*21* 85:*6*

**Meyer** 13:*15* 20:*17, 19* 46:*16* 56:*3* 57:*13* 59:*12*

**mic** 76:*3*

**Michael** 4:*15*

**MIDDLE** 1:*1* 2:*1* 4:*12* 6:*7, 8, 12* 7:*7, 11, 14, 20* 8:*4, 10* 10:*1, 15* 11:*17* 12:*2* 13:*3, 6, 20* 14:*8* 15:*21* 16:*2, 7, 22* 17:*5* 20:*2* 21:*8* 32:*25* 34:*6, 16* 51:*12* 55:*18* 77:*13* 78:*14, 25* 81:*22* 96:*15*

**Mike** 2:*1*

**minutes** 45:*11* 46:*4, 6, 19* 48:*8* 76:*1*

**mischaracterization** 30:*15* 31:*24*

**misinformed** 55:*3*

**missed** 17:*3*

**misunderstand** 78:*17*

**money** 33:*20* 81:*21*

**months** 75:*17*

**morning** 70:*20* 72:*13*

**motions** 23:*4*

**mouth** 68:*11*

**move** 48:*16* 83:*5* 95:*5*

**multiple** 69:*17*

**mute** 76:*3*

**< N >**

**name** 4:*15* 5:*6* 6:*3* 8:*20, 22* 9:*7, 14, 16* 33:*22* 99:*11*

**names** 59:*10*

**nature** 35:*18* 84:*3*

**necessarily** 27:*20* 41:*12* 82:*3*

**need** 99:*18*

**needs** 69:*6*

**neither** 102:*11*

**nerve** 93:*18*

**never** 16:*15* 19:*18, 21, 23* 20:*3, 10* 34:*13* 57:*8* 79:*3* 80:*9* 81:*7, 9* 84:*6* 92:*2* 94:*5, 10, 19* 95:*1*

**New** 16:*21* 57:*7* 75:*7*

**night** 46:*10* 65:*15* 73:*15* 85:*1, 3*

**Nods** 5:*14*

**Nonresponsive** 48:*6*

**Nope** 11:*20* 19:*17, 22, 24* 20:*10* 64:*23* 96:*17*

**Notary** 1:*1* 99:*18* 102:*5, 23*

**note** 5:*24*

**noted** 4:*19* 6:*1* 99:*9* 101:*10*

**notice** 17:*19* 57:*13* 58:*3*

**notified** 15:*8*

**notify** 98:*4*

**notifying** 98:*2, 3*

**November** 1:*1* 4:*9* 21:*9* 23:*14* 36:*18* 37:*3* 43:*6* 47:*3, 6, 20, 24* 48:*1, 3* 56:*5* 101:*6*

**NUMBER** 3:*1* 4:*14* 6:*10* 18:*21* 55:*23, 24* 61:*23* 97:*4*

**< O >**

**oath** 5:*12* 52:*1*

**Object** 11:*5* 12:*17* 18:*11* 21:*1* 27:*8* 28:*1, 21* 29:*8* 30:*14, 15, 25* 31:*3, 7, 14, 23* 34:*8, 19* 35:*15* 37:*22* 38:*13, 22* 39:*12, 17* 41:*19, 25* 42:*16* 43:*2, 19, 20* 44:*5, 10, 18* 45:*1, 16* 47:*12* 48:*15*

**necessarily** — continued right column

**objecting** 68:*24* 69:*1, 4* 87:*18*

**objection** 13:*23* 17:*24* 21:*17, 23* 22:*4, 12, 24* 23:*7, 16* 24:*8, 12* 25:*11, 18* 26:*6* 28:*11, 19* 32:*4, 22* 35:*19* 36:*24* 44:*3* 54:*10, 21, 24, 25* 55:*13, 20* 56:*6* 57:*15, 20* 61:*18* 64:*10* 66:*1, 24* 68:*8, 24* 73:*2, 19* 74:*7* 77:*23* 82:*19* 83:*3* 85:*20* 86:*23* 87:*21, 25* 88:*11, 14, 17* 89:*3, 14, 21* 90:*8* 93:*1* 94:*3, 12*

**objections** 4:*5* 5:*25* 22:*14* 29:*3* 45:*2* 93:*15* 96:*5*

**obligated** 34:*17*

**obstructing** 36:*10*

**obviously** 55:*6, 16* 72:*3* 85:*23*

**O'CONNOR** 2:*1* 80:*15*

**offensive** 6:*21*

**office** 13:*13* 16:*14, 16, 19* 18:*6* 25:*24* 60:*23, 25* 61:*2, 6* 74:*22*

**officials** 51:*13*

**Oh** 8:*12* 10:*2* 23:*8*

**Okay** 5:*14, 15, 20* 8:*2, 9* 9:*17, 25* 11:*3* 12:*14* 22:*7* 26:*12* 30:*23* 39:*18* 40:*17, 23* 41:*1, 11* 47:*22* 48:*1* 52:*18, 22, 24, 25* 55:*6* 57:*6* 62:*6* 64:*3* 70:*13* 72:*2, 8* 73:*11, 25* 75:*19* 81:*13* 87:*6* 89:*7* 95:*8, 23* 96:*3*

**necessarily** 49:*4, 8* 50:*20* 51:*16* 52:*17* 55:*8* 58:*20* 59:*17* 60:*4, 15* 62:*15* 63:*7, 8* 68:*21* 71:*4, 18* 76:*12* 82:*8* 85:*15* 86:*13* 87:*12*

Deposition of Marc Fink                                      Lisa Barbounis v. Middle Eastern Forum, et. al.

97:4  98:12
**old**  73:9, 13
**once**  87:10, 16  88:5
89:2, 9, 17
**ones**  59:4
**operations**  65:17
**opinion**  52:7  74:14,
17  87:22
**opportunities**  17:13
**opportunity**  17:18
95:24  96:2
**organization**  11:22
20:22  34:24  35:22,
23
**original**  99:21
**outside**  10:25  69:18
79:2, 4, 5, 8, 24  80:7,
13  82:1, 2
**overlap**  11:15

**< P >**
**P.C**  2:1
**p.m**  1:1  4:10  76:6,
8  98:20
**PAGE**  3:1  100:2
101:1
**Pam**  4:17
**Pamela**  1:1  102:4, 23
**paragraph**  44:16
**part**  7:14  24:15
51:10  61:4  62:13, 21
63:2, 6, 12
**particular**  43:22
44:20  45:12  62:7
74:2  91:9, 15
**parties**  4:3  102:13
**part-time**  61:3
**Patricia**  33:16  38:18
57:13  59:11  60:10
66:22  88:9
**Patrician**  42:7
**pay**  71:23  72:1
**paying**  72:3
**pending**  31:3  51:18
**Penn**  2:1
**PENNSYLVANIA**
1:1  2:1  4:14  102:6
**people**  6:16, 22
11:22  30:5  71:12

78:13
**percent**  8:13  14:25
**perfectly**  22:25
**perform**  96:11
**performed**  19:18
**performing**  54:2
**period**  91:13
**permission**  96:20
98:8
**person**  11:1  20:24
65:7, 8  88:18
**personal**  88:22, 23
**personally**  56:13
**personnel**  13:8, 10,
15  14:13  15:25
20:15  55:24  96:23
**pervious**  24:4
**Philadelphia**  2:1
16:13
**phone**  65:14
**pillow**  43:15  44:25
**Pipes**  2:1  8:19
20:19, 22  32:20  51:4
53:3  54:2, 8  61:11
64:22, 23  70:7  83:19
84:5, 17  85:7, 8, 10
**Place**  2:1  8:15
17:16  21:23  102:8
**plain**  70:12
**Plaintiff**  1:1  2:1
**play**  36:13  42:3
**pleasantries**  65:16
**please**  4:20  6:3
8:22  19:13  44:14
58:3  64:3  72:10, 11
**plenty**  94:22  95:3
**PLLC**  2:1
**point**  18:17  46:20
62:19
**policies**  35:18
**policy**  13:5, 20, 22
14:5, 9, 10, 18, 20, 22,
24  15:5, 8, 12, 22
35:12, 21
**political**  98:2
**poor**  9:9
**poorly**  70:22  72:15
**position**  6:24  7:4
11:17  20:14, 24

53:18
**positions**  7:9
**positively**  96:18, 19
**positivity**  70:24
72:17
**possible**  29:9  36:12
46:18  61:13
**possibly**  11:25  76:16
95:2
**Pratt**  1:1  4:17
102:4, 23
**predated**  15:2
**PRESENT**  2:1
21:13, 14  37:3  38:11
53:12, 13, 22
**presented**  12:16
34:18
**president**  20:22  21:5
53:20
**prevent**  13:20  14:9
15:5, 12, 22  35:12
**previous**  38:8  43:12,
25  44:4  54:5  61:19
63:21
**previously**  37:1  47:9
**prior**  30:16  31:24
**privilege**  29:14
34:20  55:21  62:17
67:17  68:2, 8  69:7
70:10  74:8  76:13, 17,
24  77:5, 8, 9  78:2, 8,
9, 10, 11, 17  84:2, 23
85:11, 12, 24  93:2
**privileged**  34:21
80:18  94:16, 17
95:19, 20, 24
**probably**  5:8  15:2
29:19  52:12, 13
88:24
**problem**  6:1  74:1
**procedures**  13:14
**process**  11:19, 25
**produced**  41:10
**Project**  6:16, 23, 24
7:10, 11, 13, 17  61:5
**Projects**  7:8, 15, 16
**promptly**  99:22
**proofing**  73:10
**proofreading**  73:10

**propounded**  101:9
**provide**  5:19
**provided**  10:19
17:13, 18  24:25
99:14, 17
**provides**  21:23
**Public**  1:1  77:15, 18
99:18  102:5, 23
**pulled**  46:22
**put**  8:6  22:11  23:6
38:18  42:23  46:21
48:22  51:25  53:17
58:18  61:10
**puts**  22:4  44:3
**putting**  39:7

**< Q >**
**question**  4:5  5:19,
20  7:3  8:10  10:20
14:16  17:3  19:12
22:11, 19  24:10, 13,
18, 23  25:5, 22  29:10,
17  30:16  31:2  32:1,
3  35:18  36:20  38:10
39:16  41:22  42:1, 4,
6, 25  44:9  45:21
48:1, 2, 16  51:18, 19,
21  62:23  63:8, 22
64:10  65:23, 24
66:21  67:7  68:7
70:9  71:14, 16, 21
74:11, 13, 22  75:2
76:15, 19  77:1, 7, 17,
21  78:2, 3, 5, 7  79:20,
23  81:17, 19  82:24
83:4, 6, 17  84:3, 24
85:3, 4, 23  86:5, 8, 18
87:13, 17, 20  88:3, 4,
6  89:4  90:11, 13
91:6, 13  94:2  95:1
97:11
**QUESTIONED**  3:1
**questioning**  51:24
**questions**  5:16  24:11
27:9  31:13  45:22
66:6  80:18, 23  84:18
93:16, 24  96:4  98:11,
14, 18, 19  101:9
**quizzing**  8:12

Deposition of Marc Fink                                    Lisa Barbounis v. Middle Eastern Forum, et. al.

< R >
**Raheem** 46:*16*
**raised** 32:7
**rant** 37:*11*
**ranting** 48:*24* 49:*1*
**read** 5:*25* 27:*11*
*42:11* 44:*16* 45:*10,*
*11, 13, 15, 18, 24* 46:2
*57:3* 68:*16* 71:*17, 21,*
*22* 72:*4, 7, 8, 21, 23*
*73:1, 16* 74:*23, 24*
*77:14* 79:*10, 14, 19*
81:*7, 9* 84:*9* 92:*22,*
*24* 99:*2, 3* 101:*6*
**reading** 45:*12* 53:*1*
*68:16* 70:*12* 71:*6, 17,*
*19, 24* 72:*2, 4, 5, 9*
**ready** 68:7
**real** 13:*13*
**really** 12:*5, 24* 14:*6*
16:*11* 30:*6* 33:*6*
48:*21* 57:*10* 77:*14*
**reason** 10:*18* 41:*21,*
*23* 61:*17* 99:*5, 10*
100:*2*
**reasons** 20:*21* 42:7
**reatained** 3:*1*
**recall** 17:*11* 48:*10*
*63:3, 20, 23*
**receipt** 15:*15, 19*
**receive** 15:*10* 27:*22*
60:*9* 65:*11* 73:*7*
85:*17* 91:*23* 99:*23*
**received** 41:6 58:*15*
*64:15* 65:*1, 12, 14*
71:*10* 72:*25* 73:*18*
74:*3* 90:*20* 92:*2, 7*
**receiving** 26:*3* 43:*15,*
*18* 44:*3, 8* 45:*4, 8, 14*
46:*1, 2* 61:*24* 63:*23*
69:*18* 73:*3, 6* 74:*2*
89:*11*
**recess** 76:*6*
**recipient** 87:*3* 88:*8*
89:*10, 25* 90:*21*
**recognize** 97:*25*
**recollection** 19:*7*
**recollections** 70:*3*

**record** 4:*9, 19* 5:*15*
6:*4* 31:*1* 35:*23*
36:*11* 56:*21* 68:*10*
71:*7* 76:*5, 8* 77:*15,*
*18* 79:*19* 84:*10*
93:*22* 96:*4*
**recorded** 4:*11*
**refer** 24:*4* 38:*8*
43:*25* 44:*4* 63:*21*
**reference** 35:*16* 46:*9*
**references** 23:*4*
**referred** 58:*10*
**referring** 24:*6* 53:*9*
80:*14*
**refusal** 24:*13*
**refuse** 79:*7*
**refusing** 78:*1* 81:*19*
96:*4*
**regard** 6:*25* 13:*20*
18:*5* 31:*13* 35:*11*
96:*12* 98:*15*
**regarding** 94:*8*
**regardless** 23:*2* 45:*8*
**related** 10:*22* 56:*4*
90:*23* 91:*24* 102:*12*
**relates** 91:*13*
**relating** 92:*11*
**relation** 93:*15*
**relationship** 34:*3*
**relative** 102:*15*
**relevant** 94:*22, 25*
**remarks** 93:*23*
**remember** 5:*18* 10:*4*
11:*2* 12:*5, 6* 13:*16*
14:*25* 15:*9, 14, 17, 18,*
*20* 17:*21, 22* 19:*9*
21:*12* 26:*1, 3* 29:*19*
30:*2, 4, 10, 11, 17*
33:*6* 37:*9, 15* 38:*19*
39:*11* 41:*4, 12, 21, 23*
42:*7, 9* 43:*15, 17, 18,*
*21, 24* 44:*2, 8, 17, 19,*
*25* 45:*4, 8, 10, 12, 14*
46:*1, 2, 25* 47:*8, 13*
48:*22, 23, 25* 49:*21,*
*24* 50:*4, 6, 8, 10, 12,*
*13, 24* 51:*3, 6* 52:*6, 7,*
*13, 16* 53:*1, 2, 16, 19,*
*24* 57:*4* 58:*16* 60:*12*
61:*24* 62:*7, 8, 10, 11,*

*21* 63:*13, 18* 64:*8*
67:*11* 69:*17, 23* 73:*3,*
*6* 74:*2* 87:*8* 91:*9, 15,*
*22* 92:*16* 97:*24*
**remembered** 69:*25*
**remembers** 42:*14, 20*
43:*1, 4*
**reminiscent** 71:*1*
72:*19*
**remote** 13:*13*
**rendered** 24:*16*
**repeat** 14:*19* 29:*10,*
*23* 35:*25* 36:*3, 25*
48:*8* 54:*5* 61:*8, 19*
67:*7, 11* 86:*7* 88:*6*
89:*4, 7*
**repeated** 89:*6*
**repeatedly** 69:*24*
**repeating** 37:*23* 38:*1*
**report** 16:*24* 17:*6, 9,*
*14, 18* 19:*1, 11, 13, 14*
20:*6* 49:*11* 51:*1*
56:*4* 57:*14* 58:*3*
65:*24* 66:*23* 67:*14*
68:*19* 86:*11*
**reported** 13:*2* 17:*23*
18:*10* 52:*3* 56:*11, 17*
85:*14, 18* 86:*19*
88:*10* 89:*12* 90:*22*
92:*11*
**Reporter** 1:*1* 4:*17,*
*20* 8:*25* 9:*6, 13, 17*
17:*2* 38:*3* 39:*13*
44:*12* 72:*10* 83:*11*
99:*22* 102:*4, 23*
**Reporting** 4:*16, 18*
13:*5* 68:*4*
**reports** 20:*12* 21:*9*
55:*19* 57:*24* 58:*7*
75:*11, 21* 86:*21*
91:*24*
**representation** 12:*24*
59:*21* 74:*20*
**Representing** 2:*1*
**reputation** 94:*8*
**require** 65:*10* 99:*22*
**requires** 87:*20*
**reserve** 5:*25*
**reserved** 4:*6*

**respect** 11:*21* 21:*18*
34:*20* 55:*21* 74:*8*
76:*13* 85:*24* 88:*15*
89:*15* 93:*2*
**respective** 4:*3*
**respond** 65:*8*
**responded** 48:*7* 62:*5*
**responding** 24:*23*
48:*7* 62:*3*
**response** 52:*10*
54:*23* 61:*9, 13, 25*
65:*10* 98:*7*
**responsibilities** 7:*18*
**responsive** 5:*18*
**retail** 35:*13*
**retaliation** 55:*7, 15,*
*19* 65:*25* 66:*23*
67:*15* 74:*6, 18* 75:*19,*
*24* 85:*14, 18* 86:*11,*
*22* 87:*19* 88:*10, 24*
89:*12* 90:*4, 23, 25*
**Return** 99:*21*
**reviewed** 79:*20* 80:*4,*
*6, 9*
**RICO** 83:*20* 84:*6, 8,*
*11*
**ridiculous** 90:*16*
93:*23*
**RIESER** 2:*1*
**right** 5:*22* 12:*12, 13*
25:*21* 36:*17* 37:*4*
40:*8, 23* 41:*21* 43:*1,*
*24* 44:*12, 13* 45:*19*
47:*11, 16* 50:*13*
52:*16* 57:*7* 58:*12*
59:*6, 7, 12, 16* 61:*7,*
*22* 64:*16* 65:*11, 22*
66:*17* 71:*2, 11* 72:*23*
73:*22* 75:*14, 22* 76:*7*
77:*15, 16* 78:*9, 21*
79:*19* 85:*6, 12* 86:*6*
88:*23* 91:*12* 92:*8*
97:*15, 17* 98:*5, 8*
99:*3*
**Rights** 75:*24*
**ring** 44:*17*
**Robinson** 96:*21* 97:*2,*
*23*
**role** 7:*24*
**roles** 6:*10, 12*

Deposition of Marc Fink                                                                                            Lisa Barbounis v. Middle Eastern Forum, et. al.

**Roman** 2:*1* 10:7
11:*4, 11, 16* 19:*23, 24*
20:*9, 25* 21:*11, 15*
23:*14* 24:20 25:*10*
27:*24* 28:25 29:*6, 12,*
*21* 30:*24* 31:5 34:*2*
37:*12* 42:*23* 43:*8*
49:*1* 50:22 53:*12, 14*
54:*9, 19* 68:*5, 20*
69:*15* 92:12 94:7
**Roman's** 12:2 20:*3*
30:*21* 38:*12* 50:*18*
59:*15* 91:*4, 8*
**room** 46:*14, 17, 20, 24*
**rules** 22:17 99:22
**run** 5:*10*
**running** 80:*3*

**< S >**
**saw** 8:*6* 57:*8* 94:*5,*
*10*
**saying** 37:*19* 49:25
50:*14* 70:25 72:*18*
75:7 80:*9*
**says** 12:*9, 11* 45:9
53:*3* 57:*6, 12, 17*
58:*3* 59:*13* 63:25
64:*4* 84:*5* 94:7
**scared** 43:*13* 44:*23*
**screen** 28:*6* 76:*3*
**scroll** 27:*15* 40:*9, 21*
52:*24* 62:*3, 6*
**sealing** 4:*4*
**second** 22:*10*
**secure** 10:25
**see** 8:*5* 10:*8* 40:*3, 8,*
*13* 41:*4* 42:9 53:*5*
58:*12* 62:6 64:*17*
72:5 74:2 80:*24*
90:*25* 94:*1* 97:*9*
**seen** 17:20 93:*6*
94:*19* 95:*1*
**seminal** 30:*18, 21*
**send** 18:*15, 25* 19:*4,*
*13, 14* 56:25 65:*2, 3,*
*7* 96:*24* 97:*1, 15*
**sending** 19:*10, 11*
42:*14* 75:6 97:*24*
**sends** 65:*2*
**senior** 11:*21*

**sent** 19:*10* 29:*13*
32:*20* 42:7 47:*6, 10*
57:*24* 64:*15, 19, 22,*
*23* 69:*20* 75:*16*
95:*10, 15*
**separate** 7:*17*
**serious** 37:*13* 38:*11,*
*20, 23* 48:*11* 49:*3, 6,*
*9*
**session** 37:*11*
**set** 102:*8*
**SETH** 2:*1* 5:*6, 23*
22:*5* 23:*10* 26:*13*
27:*10* 29:*2* 33:22
39:*21* 40:*12* 42:2
45:*5, 20* 56:*20* 66:*10*
68:*9* 73:*16* 85:*3*
90:*2* 93:*7* 96:*13*
**seth@dereksmithlaw.c**
**om** 2:*1*
**sex** 59:*16*
**sexual** 12:*15* 13:*2, 5*
14:*20, 21, 23* 15:*5*
29:*25* 30:*3, 8, 11, 12*
31:*20* 32:*8* 33:*10, 14*
34:*2, 17, 25* 35:*5*
36:*19* 37:*7, 9* 49:*20*
51:*1* 96:*16*
**sexually** 29:22 37:*16*
39:*7* 42:*24*
**sgold@discrimlaw.net**
2:*1*
**S-H** 9:*10*
**Shargel** 10:*9* 11:*3*
**Shargel's** 10:*14*
11:*12*
**sheet** 99:*5, 10, 11, 16,*
*21* 100:*1* 101:*10*
**shortly** 10:*10*
**show** 19:*8* 26:*1*
27:*1, 3, 11* 40:22, *24*
52:*18* 56:*19* 60:*12*
78:22 87:*11* 91:*20*
92:*6, 9, 21*
**showing** 41:*9*
**shrugs** 5:*15*
**Sid** 98:*17*
**SIDNEY** 2:*1*
**sign** 5:*25* 99:*10, 13,*
*21*

**signature** 99:*19*
101:*1, 13*
**Significant** 38:*25*
39:*9*
**signing** 99:*15*
**simple** 14:*15* 92:*14*
**single** 18:*4* 22:*23*
**sit** 23:*3* 84:25 85:*2*
**Sitting** 37:*8* 46:*15*
**slander** 94:*8*
**smartass** 36:*8*
**SMITH** 2:*1*
**social** 53:*23*
**somebody** 39:*8* 98:*5*
**sorry** 7:*1, 20* 9:*1, 6*
10:*14* 12:*5* 13:*9*
17:*2* 29:*23* 38:*3*
39:*18*
**sort** 22:*3*
**sorts** 91:*25*
**sound** 12:*12*
**sounds** 12:*13*
**space** 99:*14, 17*
**speaking** 65:*17* 93:*15*
**spearheading** 21:*3, 5*
**specialist** 4:*16*
**specific** 42:*6*
**Specifically** 7:*5* 24:*9*
53:*9* 58:*19* 70:*1*
**speculate** 61:*16*
**spell** 9:*8*
**spelled** 9:*12, 18*
**speller** 9:*9*
**spent** 50:*2*
**spew** 94:*8*
**spoke** 19:*2*
**spoken** 33:*12*
**sponsors** 7:*12*
**spring** 85:*19* 86:*11*
88:*13* 89:*12* 90:*21*
91:*11* 92:*12*
**staff** 46:*13* 59:*9*
61:*4*
**staffer** 60:*22*
**staffers** 59:*23*
**Standard** 4:*10*
**stands** 78:*5* 79:*20*
**staring** 46:*3*

**started** 12:*7, 12, 14*
13:*16, 17* 15:*4, 7*
22:*11* 60:6 65:*15*
**state** 6:*3*
**statement** 31:*1*
**statements** 19:*21*
58:*7*
**STATES** 1:*1* 4:*13*
**Station** 83:*1* 85:*7*
**staying** 46:*14*
**stenographic** 4:*19*
**step** 29:*3*
**stepping** 5:*24*
**Steven** 2:*1*
**stipulated** 4:*2*
**stole** 81:*21*
**Stop** 40:*23* 84:*7*
93:*22*
**store** 35:*14*
**straight** 31:*25* 36:*12,*
*15* 42:2
**Street** 2:*1* 83:*1* 85:*7*
**strike** 8:*2* 13:*3* 57:*2*
61:*1*
**strong** 30:*5*
**stuff** 52:*11* 97:*22*
**Subject** 23:*17* 24:*15*
25:*12* 35:*19* 55:*21*
86:*15* 89:*1* 99:*15*
**subjects** 75:*20*
**substance** 99:*4, 9*
**substantive** 80:*17*
**suggest** 95:*23*
**suggesting** 23:*6*
**suggestion** 23:*8*
**Suite** 2:*1*
**summer** 18:*21, 23*
57:*11* 60:6 85:*19*
86:*11* 88:*13* 89:*13*
90:22 91:*12* 92:*12*
**super** 5:*10*
**supervise** 58:*8, 23, 25*
59:*4*
**supervised** 18:*22*
**supervising** 97:*25*
**supervision** 18:*25*
**supervisor** 39:*7*
75:*13*
**supposed** 22:*4* 42:*20*
73:*10*

Case 2:19-cv-05030-JDW   Document 126-17   Filed 04/20/21   Page 44 of 52

Deposition of Marc Fink                                             Lisa Barbounis v. Middle Eastern Forum, et. al.

sure   8:*13*   10:*10*
11:*6*   16:*9*   18:*20*
20:*1*   21:2   55:*18*
61:2, *3*   79:*14*   81:*11*,
*13*   86:*10*   91:*3, 7*
92:*23*
swear   4:*20*
sworn   4:*23*

< T >
table   51:*19*
take   5:7   38:*7*   56:*21*
75:*25*
taken   1:*1*   20:*3*
45:*18, 24*   76:6   102:*8*,
*14*
takes   38:*7*   53:*13*
talk   14:*16*   31:*16*
33:*9, 13*   37:*24, 25*
75:*9*
talked   31:*16*
talking   22:*1, 22*   35:*9,
10, 11, 17*   50:*8*   86:*1,
2*   91:*11*   92:*1*   95:*14*
talks   39:6, *8*   54:2
tasks   18:*22*
tell   8:*18*   18:*16*
27:*15*   39:*19, 21*   40:*5*
54:*16*   56:*12*   68:*23*
72:8   77:*9*   87:*24*
90:6, *9*   95:*16*
telling   19:*4*   34:*13*
49:*19*   67:*8*   68:*25*
ten   44:*9*   48:8   92:*20*
tens   52:*13*
terminated   10:*20*
termination   10:*18*
terms   10:*25*
territory   82:*5*
test   78:*10*
testified   4:*24*   31:*5*
54:*19*   65:*19*
testify   72:*21*   73:*16*
88:*21*   91:*21*
testifying   45:*14, 25*
testimony   30:*16*
31:22, *24*   32:6   36:*17*
99:*14*
text   43:*10*

Thank   9:*17*   19:*1, 10*
75:*11*   98:*13, 19*
thanked   57:*25*
theory   78:*11*
thing   18:*4*   35:*25*
60:6   69:*21*
things   8:*12*   15:*1*
68:*15*   70:*24*   71:*1, 13*
72:*17, 19*   73:*14*
86:*19*
think   5:7   7:7   9:*11,
21*   10:*9*   11:*7, 23*
12:*9*   28:9, *17*   31:*20*
34:*16, 23*   39:6   42:*12,
14*   51:*7*   66:*15*   67:*25*
72:*1*   75:*15*   97:*5*
thinking   55:*3*
thinks   70:*22*   72:*15*
thousands   41:*16*
52:*14*   65:*3*   73:*7*
threat   23:*5*
threaten   83:*20*
threatening   84:*6*
threats   23:*3*
three   12:*7*   16:*16*
29:*22*   39:*3*   45:*11*
46:*17, 19*   59:*6*
time   4:6, *10*   7:*9*
8:*21*   11:*12*   13:*17*
16:*17*   20:*17*   21:22,
*23*   22:*1, 3, 10*   23:*6*
29:*16*   37:*20*   39:*17,
22*   44:*14*   45:*18, 24*
50:*7*   59:*25*   68:*15*
72:*5*   73:*24*   75:*13*
88:*7*   89:*25*   91:*12*
times   16:*17*   40:*4, 5*
44:*9*   45:*10*   66:*6*
69:*17*   86:*10, 21*   89:*6*
93:*8*
title   10:*10*   11:*7*
55:*15*   57:*9*   75:*10, 24*
titles   10:*8*   11:*9*
today   4:*17, 18*   5:*7*
6:6   8:*3*   15:22   16:*14*
20:*3*   31:*13*   36:*17*
45:*19, 25*   72:*21*
Today's   4:*9*
told   27:*10*   33:*4*
69:*12, 17, 23*   73:*15*

77:*10*   78:*13*   88:2
93:*5*   96:*13*
tolerate   22:*9*
Tommy   96:*21*   97:*2,
23*
ton   52:*11*
top   40:*10*   62:*6*
topic   44:*21*
topics   70:*3*
totally   93:*14*
train   16:*23*
trained   17:*9*
trainings   16:*23*
trains   17:*6*
transcript   102:*7*
transcription   101:*8*
trial   4:*6*
tried   68:*19*
trip   43:*8*
true   60:*1*   94:*21*
101:*7*   102:*6*
truly   73:*13*
try   9:*8*   18:*4*   22:*19*
34:*11*
trying   36:*7, 12, 13*
42:2, *3*   46:*20*   66:*22*
92:*23*
Tuesday   1:*1*   4:*9*
101:*6*
turn   50:*14, 16*
turned   98:*4, 7*
twelfth   73:*24*
two   7:8   10:*5*   12:*7*
16:*16, 17*   37:*17, 24,
25*   38:*7*   39:*3*   43:*9*
45:22   55:*24*   59:6
65:*18*   91:*19*
two-and-half   39:*2*
tying   67:*14*

< U >
Uh-huh   44:*23*   53:*6*
58:*14*
uncomfortable   43:*14*
44:24   46:*8*
understand   5:*12*
23:*10*   32:*1*   36:*5*
55:*4*
understanding   32:*13*,

21   51:*10*
understood   5:*20*
UNITED   1:*1*   4:*13*
use   6:*21*   38:*23*   49:*8*
68:*14*   72:*5*

< V >
vaguely   30:*10, 11*
valid   22:*14*
vast   50:2
veiled   23:*3, 5*
verbal   5:*14*
versus   4:*12*   81:*24*
victims   6:*17, 18*   7:*5*
video   1:*1*   2:*1*   4:*11,
16*
Videographer   2:*1*
4:*8*   76:*4, 7*
Videotaped   1:*1*
violate   67:*17*   69:*6*
84:*23*
violating   22:*17*   70:*9*
visit   16:*16*
vs   1:*1*

< W >
W-2   16:*5*
Wait   9:*6*   64:*12*
67:*3*   68:*6*
waiting   68:*12*
waived   4:*4*
WALTON   2:*1*   75:*1*
want   5:*17*   19:*8*
23:*1*   25:*5*   27:*1, 9*
29:*18*   37:*24*   40:*21,
22, 24*   41:*1*   52:*19*
54:*5*   56:*20*   64:*5*
65:*9*   72:*4*   73:*24*
78:*23*   79:*19*   81:*11*
84:*13*   85:*3*   86:*17*
88:*3*   90:*9*   95:*8*
98:*18*
wanted   73:*13*
Washington   7:*16*
Watch   7:*15, 25*   39:*25*
watched   5:*8*
way   10:*21*   12:*25*
14:7   39:*8*   42:*24*
51:*14*   89:*10*   90:*20*

Deposition of Marc Fink                                    Lisa Barbounis v. Middle Eastern Forum, et. al.

**ways**  39:5  66:21
67:17  73:9, 13  90:15
94:22
**website**  60:19
**week**  60:11  65:3
**weekly**  18:22  19:1,
11, 13, 14  57:24  58:7
75:11  98:1
**weeks**  18:21, 23
**weird**  46:7
**welcome**  92:21
**Well**  7:6  13:2  18:8
23:2  27:6  32:13
35:6, 8  36:11, 22
38:20  41:9  42:12, 22
47:16, 20, 22  48:11,
20  50:16  51:7  52:22
54:19  57:12  59:24
63:6, 7, 12  66:10
67:10  71:23  72:1, 2
74:17, 23, 25  75:6
78:24  79:20  80:23
85:9, 11, 17  88:23
91:21, 23  92:4  93:12
94:7, 15  95:14  96:24
98:4
**went**  25:24  33:6
36:21  46:13  86:18
98:1
**we're**  5:6, 24  13:11
21:25  22:8  35:13
38:2, 6  39:22, 24
44:1  47:5, 16, 20
68:6, 10  69:10  89:1
91:11
**we've**  71:12
**whispering**  46:23
**WILLIAM**  2:1
**wisely**  68:15
**WITNESS**  3:1  4:20
9:2, 8, 15, 20, 23  11:6
12:18, 22  13:25  18:3,
13  19:21  21:2, 20, 25
22:13, 21  23:9, 19
26:8  28:5, 20  29:10
30:17  31:18, 25
32:16, 24  33:5  34:12,
23  35:20  36:11, 25
37:23  38:14  39:18
42:1  43:3, 21  44:19

47:13  50:21  52:18
54:14  55:2, 23  56:8
57:18, 22  58:21  60:5,
16  61:19  62:24
63:10, 16  66:12
68:14  69:2  70:11, 13
71:6, 22  73:3, 25
74:10, 21  76:23  78:1
79:24  82:14  83:21
84:18  86:7, 17, 24
88:18, 21  89:4  90:10,
18  91:7  93:10, 14
94:5  98:12, 18  99:1,
18, 19  102:7
**WITNESSED**  101:19
**Wolson**  22:25
**woman**  96:15
**women**  29:22  58:19
59:7, 10, 14, 20  61:10
**word**  38:23  49:9
87:19
**words**  71:19
**work**  8:1, 7  13:12,
13  16:13, 18, 19  19:5
22:6  30:6  46:18
50:15, 23  58:8, 23, 25
70:20, 24  72:13, 18
94:8  96:20  97:1
**worked**  16:15  22:25
61:6
**working**  15:4, 6
70:21  72:14
**workplace**  13:21
14:10  15:13, 23
16:25  17:7, 10, 15, 23
18:10  19:16  20:7, 13
21:10  56:5  75:22
**works**  60:23, 25  61:2
**world**  6:17
**worth**  31:2
**wrap**  46:21  85:4
**wrong**  55:3  71:19
97:12
**wrongful**  68:4

**< Y >**
**Yeah**  7:13  13:19
18:13  20:20  21:4, 22
22:2  24:5  26:8  28:5
32:9, 10  33:2  35:4,

25  39:19  41:17
42:19  50:5  51:20, 23
56:14  57:22  64:8
75:18  83:9  85:21
86:10  87:1  88:7
92:1  93:5, 17  96:9,
19  97:24  98:9
**year**  7:8  10:4  12:14
16:17
**year-and-a-half**  10:5
**years**  10:5  12:7, 8
39:3
**Yep**  5:21  6:10  8:17
9:5  12:13  20:18, 23
27:5  49:2  58:5, 10
**yes-or-no**  14:15
74:13  76:19  77:1
**yesterday**  53:4  54:3
**Yonchek**  57:14
59:12  88:9

**< Z >**
**zero**  87:5

Deposition of Marc Fink                                    Lisa Barbounis v. Middle Eastern Forum, et. al.

### WORD LIST

**< 1 >**
**11-4-2018**  *(1)*
**12**  *(1)*
**15**  *(1)*
**1650**  *(1)*
**1835**  *(2)*
**19103**  *(3)*
**1964**  *(1)*
**1994**  *(2)*
**1st**  *(1)*

**< 2 >**
**2**  *(1)*
**2:19-cv-05030**  *(1)*
**20**  *(3)*
**2012**  *(4)*
**2015**  *(4)*
**2016**  *(1)*
**2018**  *(8)*
**2019**  *(17)*
**2020**  *(3)*
**21**  *(1)*
**215)391-4790**  *(1)*
**215)569-1999**  *(1)*
**215)665-2000**  *(1)*
**219-cv-05030**  *(1)*
**23**  *(1)*
**23rd**  *(4)*
**24**  *(2)*
**24th**  *(1)*
**2950**  *(1)*
**29th**  *(1)*

**< 3 >**
**3:03**  *(2)*
**30**  *(2)*
**30th**  *(2)*

**< 4 >**
**4**  *(1)*
**4:21**  *(2)*
**4:32**  *(2)*
**40**  *(2)*
**4-23**  *(1)*
**447**  *(1)*
**4th**  *(1)*

**< 5 >**
**5**  *(2)*
**5:19**  *(1)*
**515**  *(1)*
**52**  *(1)*
**5th**  *(10)*

**< 6 >**
**6**  *(2)*
**61**  *(1)*

**< 7 >**
**7**  *(2)*
**7:28**  *(1)*

**< 9 >**
**97**  *(2)*

**< A >**
**abruptly**  *(1)*
**absolutely**  *(5)*
**absurd**  *(1)*
**acceptable**  *(1)*
**accurate**  *(1)*
**accusations**  *(1)*
**acknowledge**  *(3)*
**acknowledged**  *(2)*
**acknowledges**  *(1)*
**Act**  *(1)*
**acted**  *(1)*
**acting**  *(2)*
**ACTION**  *(5)*
**activities**  *(3)*
**addition**  *(1)*
**additional**  *(1)*
**addressed**  *(1)*
**addresses**  *(1)*
**administration**  *(2)*
**administrative**  *(7)*
**adult**  *(1)*
**advance**  *(1)*
**adverse**  *(1)*
**advice**  *(82)*
**advised**  *(3)*
**afternoon**  *(2)*
**ago**  *(3)*
**agreed**  *(2)*
**ahead**  *(14)*
**AIPAC**  *(4)*

**Airbnb**  *(1)*
**al**  *(2)*
**allegation**  *(3)*
**allegations**  *(15)*
**allege**  *(1)*
**alleged**  *(9)*
**alleging**  *(1)*
**allowed**  *(1)*
**amount**  *(2)*
**Amy**  *(4)*
**answer**  *(133)*
**answered**  *(23)*
**answering**  *(2)*
**answers**  *(3)*
**answer's**  *(2)*
**anybody**  *(1)*
**apologize**  *(1)*
**apparently**  *(2)*
**appear**  *(1)*
**APPEARANCES**  *(1)*
**appearing**  *(1)*
**appears**  *(1)*
**appropriate**  *(4)*
**April**  *(5)*
**argue**  *(1)*
**arm**  *(1)*
**asked**  *(20)*
**asking**  *(55)*
**assaulted**  *(1)*
**assert**  *(5)*
**asserting**  *(2)*
**assign**  *(1)*
**assists**  *(1)*
**ASSOCIATES**  *(1)*
**assume**  *(10)*
**assuming**  *(2)*
**assumption**  *(1)*
**attached**  *(2)*
**attempted**  *(1)*
**attend**  *(1)*
**attended**  *(1)*
**attendees**  *(1)*
**attention**  *(3)*
**Attorney**  *(6)*
**attorney-client**  *(11)*
**authority**  *(2)*
**avoid**  *(1)*
**aware**  *(15)*
**awareness**  *(1)*

**awful**  *(1)*

**< B >**
**back**  *(11)*
**backfire**  *(2)*
**backfired**  *(1)*
**bad**  *(8)*
**Ballpark**  *(2)*
**bankrupt**  *(1)*
**bar**  *(2)*
**BARBOUNIS**  *(12)*
**Barbounis's**  *(1)*
**barely**  *(1)*
**based**  *(14)*
**basically**  *(1)*
**basis**  *(4)*
**Bates-stamped**  *(1)*
**began**  *(5)*
**beginning**  *(3)*
**behavior**  *(1)*
**believe**  *(16)*
**believed**  *(1)*
**bells**  *(1)*
**Bennett**  *(5)*
**best**  *(6)*
**better**  *(1)*
**biggest**  *(1)*
**Bill**  *(1)*
**blackmail**  *(2)*
**blackmailed**  *(1)*
**blackmails**  *(1)*
**block**  *(1)*
**Bloom**  *(1)*
**blur**  *(2)*
**boss**  *(19)*
**bottom**  *(2)*
**bounds**  *(1)*
**Brady**  *(4)*
**break**  *(1)*
**briefly**  *(1)*
**bring**  *(1)*
**broad**  *(1)*
**brought**  *(2)*
**building**  *(1)*
**Bylaws**  *(2)*

**< C >**
**call**  *(3)*
**called**  *(7)*

Case 2:19-cv-05030-JDW   Document 126-17   Filed 04/20/21   Page 47 of 52

Deposition of Marc Fink                                    Lisa Barbounis v. Middle Eastern Forum, et. al.

calling *(1)*
calls *(3)*
Campus *(1)*
cancel *(1)*
carefully *(2)*
CARSON *(208)*
Case *(12)*
categorization *(2)*
Catriona *(3)*
CAVALIER *(178)*
cc *(2)*
cc'd *(18)*
Center *(1)*
certain *(1)*
certainly *(2)*
certification *(1)*
certify *(2)*
cetera *(3)*
chances *(1)*
change *(5)*
changed *(3)*
changes *(6)*
characterization *(4)*
characterize *(3)*
characterized *(2)*
charge *(2)*
charges *(4)*
check *(1)*
checked *(1)*
Cherry *(1)*
chief *(2)*
CIVIL *(2)*
claims *(1)*
clarify *(1)*
clarifying *(1)*
clear *(2)*
client *(24)*
clients *(12)*
client's *(4)*
close *(2)*
cluttering *(1)*
code *(1)*
collaborations *(1)*
collect *(1)*
column *(1)*
come *(3)*
comedic *(3)*
coming *(4)*
comings *(1)*

Commonwealth *(2)*
communicating *(1)*
communications *(7)*
competent *(1)*
complained *(3)*
complaining *(2)*
Complaint *(3)*
completely *(3)*
concerned *(5)*
concerning *(2)*
concerns *(1)*
concluded *(1)*
conclusion *(5)*
conduct *(8)*
conference *(5)*
confidences *(7)*
confident *(2)*
confirm *(1)*
confirmed *(1)*
confuse *(1)*
confusion *(1)*
connection *(6)*
consider *(1)*
consistent *(1)*
constitutes *(1)*
contents *(6)*
context *(1)*
continue *(2)*
continued *(1)*
continues *(1)*
contract *(1)*
contractor *(1)*
conversation *(3)*
conversations *(1)*
copied *(11)*
correct *(38)*
correctly *(9)*
correspond *(1)*
couch *(1)*
couches *(1)*
counsel *(19)*
counselor *(1)*
counterclaim *(14)*
counterclaims *(1)*
couple *(2)*
course *(2)*
Court *(19)*
COZEN *(2)*
crazy *(1)*

current *(1)*
customers *(2)*

< D >
D1 *(2)*
D13 *(4)*
D18 *(2)*
D-18 *(1)*
D2 *(3)*
D21 *(1)*
D21-23 *(1)*
D29 *(1)*
D-29 *(1)*
Daniel *(13)*
date *(5)*
dated *(1)*
dates *(3)*
Dave *(4)*
DAVID *(1)*
day *(4)*
days *(3)*
deal *(1)*
Dear *(1)*
decide *(1)*
decided *(1)*
decision *(3)*
declare *(1)*
decline *(1)*
Defendant *(2)*
Defendants *(1)*
define *(1)*
definitely *(3)*
definition *(1)*
deflating *(2)*
Delaney *(3)*
deposition *(20)*
depositions *(3)*
deputy *(2)*
DEREK *(1)*
describe *(4)*
DESCRIPTION *(1)*
despite *(1)*
details *(2)*
difference *(1)*
different *(18)*
difficult *(4)*
dinner *(2)*
direct *(1)*
directly *(6)*

director *(19)*
directors *(1)*
disagree *(3)*
disclosing *(1)*
discouraged *(2)*
discrimination *(19)*
discuss *(7)*
discussed *(8)*
discussing *(1)*
dispute *(8)*
disputing *(2)*
disregarded *(1)*
distinction *(1)*
DISTRICT *(4)*
divulge *(3)*
divulging *(8)*
docket *(5)*
docs *(1)*
document *(11)*
documents *(3)*
doing *(10)*
doubt *(2)*
draft *(1)*
drank *(1)*
drill *(1)*
drinking *(1)*
driving *(1)*
due *(3)*
duly *(1)*
duress *(1)*
dwalton@cozen.com *(1)*

< E >
ear *(1)*
earlier *(3)*
easier *(2)*
East *(35)*
EASTERN *(6)*
easy *(1)*
eat *(1)*
editor *(2)*
EEOC *(2)*
Efraim *(3)*
Efriam *(4)*
either *(9)*
elevated *(1)*
Eleven *(1)*
E-mail *(108)*

e-mailed *(1)*
e-mails *(27)*
e-mail's *(1)*
emphatically *(1)*
employed *(2)*
employee *(10)*
employees *(17)*
employment *(11)*
ended *(2)*
engage *(1)*
English *(1)*
entered *(1)*
entire *(5)*
E-P-H *(1)*
E-P-H-R-A-I-M *(1)*
errata *(7)*
ESQUIRE *(5)*
establish *(1)*
estimate *(3)*
et *(5)*
event *(3)*
Everest *(2)*
Everybody *(5)*
everybody's *(1)*
exactly *(3)*
EXAMINATION *(1)*
examined *(1)*
exclaiming *(2)*
Excuse *(2)*
Exhibit *(5)*
Exhibits *(3)*
existence *(1)*
expert *(4)*
explain *(2)*
explained *(1)*
expressed *(1)*
extent *(24)*
external *(2)*
extremely *(2)*

< F >
face *(1)*
fact *(11)*
fact-based *(1)*
facts *(1)*
fair *(2)*
familiar *(16)*
fast *(2)*
faster *(1)*

favor *(1)*
fed *(3)*
feel *(4)*
felt *(1)*
Fifteen *(1)*
filed *(6)*
filing *(3)*
financial *(1)*
financially *(1)*
find *(4)*
Find-2 *(1)*
fine *(1)*
finish *(3)*
FINK *(14)*
Fink-1 *(4)*
Fink-2 *(2)*
Fink-3 *(3)*
Fink-4 *(3)*
Fink-6 *(2)*
Fink-7 *(4)*
first *(8)*
five *(9)*
foam *(1)*
focus *(1)*
followed *(1)*
Following *(2)*
follows *(1)*
foregoing *(2)*
Forget *(1)*
forgot *(1)*
form *(59)*
forth *(2)*
FORUM *(38)*
Forum's *(1)*
forward *(1)*
foundation *(5)*
four *(2)*
free *(1)*
F-R-Y-A-M *(1)*
full *(3)*
full-time *(4)*
fundraising *(2)*
funny *(5)*
further *(4)*

< G >
Gabrielle *(1)*
games *(2)*
Gannone *(2)*

Gary *(5)*
gender *(1)*
general *(3)*
generally *(3)*
gentleman *(1)*
Gentlemen *(4)*
getting *(4)*
gist *(1)*
give *(18)*
given *(19)*
giving *(13)*
Go *(17)*
goes *(6)*
going *(83)*
goings *(1)*
goings-on *(1)*
GOLD *(3)*
Good *(7)*
goodness *(1)*
gotten *(1)*
grandstand *(1)*
gratuitous *(2)*
Gregg *(41)*
grew *(1)*
grievances *(2)*
GROUP *(1)*
guess *(5)*
guests *(1)*
guy *(1)*
guys *(4)*

< H >
handbook *(3)*
hands *(3)*
hanging *(1)*
happen *(3)*
happened *(4)*
happens *(1)*
happy *(9)*
harass *(1)*
harassed *(1)*
harasser *(4)*
harassment *(43)*
hard *(8)*
hardass *(1)*
header *(1)*
hear *(1)*
heard *(4)*
held *(5)*

he'll *(1)*
help *(6)*
hereinbefore *(1)*
Hill *(1)*
hire *(3)*
hired *(8)*
hiring *(2)*
history *(1)*
hold *(3)*
holds *(1)*
Hollin *(1)*
home *(1)*
honest *(1)*
honestly *(1)*
hour *(5)*
hours *(4)*
house *(1)*
Huh *(1)*
hundred *(3)*
hundreds *(1)*

< I >
ID *(1)*
idea *(12)*
identification *(5)*
identified *(1)*
identify *(1)*
illegal *(1)*
imagine *(1)*
implicate *(2)*
implication *(5)*
imply *(1)*
important *(2)*
impression *(4)*
inappropriate *(12)*
inappropriately *(2)*
include *(2)*
included *(1)*
includes *(1)*
Including *(2)*
incorrect *(1)*
indecipherable *(1)*
indicates *(1)*
indiscretions *(2)*
inflammatory *(2)*
information *(3)*
informed *(1)*
informing *(1)*
in-house *(3)*

inject  *(1)*
injected  *(1)*
instruct  *(5)*
instructing  *(4)*
instruction  *(23)*
instructions  *(4)*
intending  *(1)*
intentions  *(1)*
interested  *(1)*
interesting  *(1)*
interim  *(1)*
intern  *(1)*
internal  *(1)*
interview  *(1)*
interviewed  *(6)*
interviewing  *(1)*
investigate  *(5)*
investigated  *(3)*
investigation  *(5)*
investigations  *(1)*
investigative  *(1)*
invited  *(7)*
involve  *(1)*
involved  *(20)*
involves  *(1)*
involving  *(5)*
irrelevant  *(2)*
Islamist  *(2)*
Israel  *(2)*
Israeli  *(1)*
issue  *(9)*
issues  *(9)*

**< J >**
Jersey  *(1)*
job  *(7)*
John  *(2)*
JONATHAN  *(1)*
July  *(1)*
June  *(1)*
junkie  *(1)*
jury  *(2)*

**< K >**
K-A-R  *(1)*
Karsh  *(7)*
K-A-R-S-H  *(1)*
Kassam  *(1)*
Keep  *(3)*

kind  *(4)*
Knew  *(1)*
knife  *(2)*
know  *(95)*
knowing  *(2)*
knowledge  *(15)*

**< L >**
lack  *(4)*
lap  *(1)*
laughed  *(1)*
laughing  *(1)*
LAW  *(2)*
lawfare  *(6)*
lawyer  *(8)*
leading  *(1)*
Leah  *(2)*
learned  *(5)*
leave  *(1)*
Legal  *(99)*
legitimate  *(3)*
lesson  *(1)*
letter  *(4)*
letting  *(1)*
Levy  *(1)*
Liberty  *(1)*
lies  *(1)*
life  *(1)*
line  *(2)*
LinkedIn  *(2)*
LISA  *(14)*
literally  *(1)*
litigation  *(1)*
living  *(1)*
lodge  *(2)*
lodging  *(1)*
logging  *(1)*
long  *(6)*
look  *(8)*
looked  *(6)*
looking  *(8)*
looks  *(3)*
loop  *(1)*
lot  *(10)*

**< M >**
maintain  *(1)*
maintained  *(1)*
majority  *(1)*

making  *(4)*
male  *(2)*
males  *(1)*
management  *(6)*
manager  *(4)*
managing  *(2)*
MARC  *(21)*
Marie  *(1)*
MARKED  *(8)*
Market  *(3)*
Marnie  *(6)*
massive  *(2)*
materials  *(1)*
Matt  *(3)*
matter  *(7)*
matters  *(1)*
Matthew  *(3)*
McNulty  *(12)*
mean  *(28)*
means  *(3)*
meant  *(2)*
measures  *(2)*
meeting  *(60)*
MEF  *(6)*
MEF's  *(3)*
member  *(1)*
memo  *(11)*
memory  *(3)*
men  *(5)*
mentioned  *(3)*
Merville  *(3)*
message  *(1)*
met  *(2)*
Meyer  *(7)*
mic  *(1)*
Michael  *(1)*
MIDDLE  *(38)*
Mike  *(1)*
minutes  *(6)*
mischaracterization  *(2)*
misinformed  *(1)*
missed  *(1)*
misunderstand  *(1)*
money  *(2)*
months  *(1)*
morning  *(2)*
motions  *(1)*
mouth  *(1)*

move  *(3)*
multiple  *(1)*
mute  *(1)*

**< N >**
name  *(10)*
names  *(1)*
nature  *(2)*
necessarily  *(3)*
need  *(1)*
needs  *(1)*
neither  *(1)*
nerve  *(1)*
never  *(18)*
New  *(3)*
night  *(5)*
Nods  *(1)*
Nonresponsive  *(1)*
Nope  *(8)*
Notary  *(4)*
note  *(1)*
noted  *(4)*
notice  *(3)*
notified  *(1)*
notify  *(1)*
notifying  *(2)*
November  *(15)*
NUMBER  *(8)*

**< O >**
oath  *(2)*
Object  *(65)*
objecting  *(4)*
objection  *(56)*
objections  *(7)*
obligated  *(1)*
obstructing  *(1)*
obviously  *(4)*
O'CONNOR  *(2)*
offensive  *(1)*
office  *(12)*
officials  *(1)*
Oh  *(3)*
Okay  *(42)*
old  *(2)*
once  *(6)*
ones  *(1)*
operations  *(1)*
opinion  *(4)*

Deposition of Marc Fink                                    Lisa Barbounis v. Middle Eastern Forum, et. al.

opportunities *(1)*
opportunity *(3)*
organization *(5)*
original *(1)*
outside *(11)*
overlap *(1)*

**< P >**
P.C *(1)*
p.m *(6)*
PAGE *(3)*
Pam *(1)*
Pamela *(3)*
paragraph *(1)*
part *(9)*
particular *(7)*
parties *(2)*
part-time *(1)*
Patricia *(7)*
Patrician *(1)*
pay *(2)*
paying *(1)*
pending *(2)*
Penn *(1)*
PENNSYLVANIA *(7)*
people *(6)*
percent *(2)*
perfectly *(1)*
perform *(1)*
performed *(1)*
performing *(1)*
period *(1)*
permission *(2)*
person *(5)*
personal *(2)*
personally *(1)*
personnel *(8)*
pervious *(1)*
Philadelphia *(4)*
phone *(1)*
pillow *(2)*
Pipes *(19)*
Place *(5)*
plain *(1)*
Plaintiff *(2)*
play *(2)*
pleasantries *(1)*
please *(11)*
plenty *(2)*

PLLC *(1)*
point *(3)*
policies *(1)*
policy *(16)*
political *(1)*
poor *(1)*
poorly *(2)*
position *(6)*
positions *(1)*
positively *(2)*
positivity *(2)*
possible *(4)*
possibly *(3)*
Pratt *(4)*
predated *(1)*
PRESENT *(8)*
presented *(2)*
president *(3)*
prevent *(6)*
previous *(7)*
previously *(2)*
prior *(1)*
privilege *(30)*
privileged *(7)*
probably *(6)*
problem *(2)*
procedures *(1)*
process *(2)*
produced *(1)*
Project *(9)*
Projects *(4)*
promptly *(1)*
proofing *(1)*
proofreading *(1)*
propounded *(1)*
provide *(1)*
provided *(6)*
provides *(1)*
Public *(6)*
pulled *(1)*
put *(11)*
puts *(2)*
putting *(1)*

**< Q >**
question *(99)*
QUESTIONED *(1)*
questioning *(1)*
questions *(18)*

quizzing *(1)*

**< R >**
Raheem *(1)*
raised *(1)*
rant *(1)*
ranting *(2)*
read *(38)*
reading *(12)*
ready *(1)*
real *(1)*
really *(9)*
reason *(7)*
reasons *(2)*
reatained *(1)*
recall *(5)*
receipt *(2)*
receive *(8)*
received *(13)*
receiving *(17)*
recess *(1)*
recipient *(5)*
recognize *(1)*
recollection *(1)*
recollections *(1)*
record *(18)*
recorded *(1)*
refer *(5)*
reference *(2)*
references *(1)*
referred *(1)*
referring *(3)*
refusal *(1)*
refuse *(1)*
refusing *(3)*
regard *(7)*
regarding *(1)*
regardless *(2)*
related *(5)*
relates *(1)*
relating *(1)*
relation *(1)*
relationship *(1)*
relative *(1)*
relevant *(2)*
remarks *(1)*
remember *(106)*
remembered *(1)*
remembers *(4)*

reminiscent *(2)*
remote *(1)*
rendered *(1)*
repeat *(16)*
repeated *(1)*
repeatedly *(1)*
repeating *(2)*
report *(20)*
reported *(13)*
Reporter *(16)*
Reporting *(4)*
reports *(9)*
representation *(3)*
Representing *(3)*
reputation *(1)*
require *(2)*
requires *(1)*
reserve *(1)*
reserved *(1)*
respect *(10)*
respective *(1)*
respond *(1)*
responded *(2)*
responding *(3)*
response *(7)*
responsibilities *(1)*
responsive *(1)*
retail *(1)*
retaliation *(21)*
Return *(1)*
reviewed *(4)*
RICO *(4)*
ridiculous *(2)*
RIESER *(1)*
right *(57)*
Rights *(1)*
ring *(1)*
Robinson *(3)*
role *(1)*
roles *(2)*
Roman *(38)*
Roman's *(8)*
room *(4)*
rules *(2)*
run *(1)*
running *(1)*

**< S >**
saw *(4)*

Case 2:19-cv-05030-JDW   Document 126-17   Filed 04/20/21   Page 51 of 52

Deposition of Marc Fink                                Lisa Barbounis v. Middle Eastern Forum, et. al.

saying (7)
says (14)
scared (2)
screen (2)
scroll (8)
sealing (1)
second (1)
secure (1)
see (18)
seen (4)
seminal (2)
send (12)
sending (5)
sends (1)
senior (1)
sent (15)
separate (1)
serious (8)
session (1)
set (1)
SETH (22)
seth@dereksmithlaw.c
om (1)
sex (1)
sexual (26)
sexually (4)
sgold@discrimlaw.net
(1)
S-H (1)
Shargel (2)
Shargel's (2)
sheet (7)
shortly (1)
show (17)
showing (1)
shrugs (1)
Sid (1)
SIDNEY (2)
sign (4)
signature (3)
Significant (2)
signing (1)
simple (2)
single (2)
sit (3)
Sitting (2)
slander (1)
smartass (1)
SMITH (1)

social (1)
somebody (2)
sorry (11)
sort (1)
sorts (1)
sound (1)
sounds (1)
space (2)
speaking (2)
spearheading (2)
specialist (1)
specific (1)
Specifically (5)
speculate (1)
spell (1)
spelled (2)
speller (1)
spent (1)
spew (1)
spoke (1)
spoken (1)
sponsors (1)
spring (7)
staff (3)
staffer (1)
staffers (1)
Standard (1)
stands (2)
staring (1)
started (10)
state (1)
statement (1)
statements (2)
STATES (2)
Station (2)
staying (1)
stenographic (1)
step (1)
stepping (1)
Steven (1)
stipulated (1)
stole (1)
Stop (3)
store (1)
straight (4)
Street (5)
strike (4)
strong (1)
stuff (2)

Subject (8)
subjects (1)
substance (2)
substantive (1)
suggest (1)
suggesting (1)
suggestion (1)
Suite (2)
summer (11)
super (1)
supervise (4)
supervised (1)
supervising (1)
supervision (1)
supervisor (2)
supposed (3)
sure (18)
swear (1)
sworn (1)

< T >
table (1)
take (4)
taken (7)
takes (3)
talk (7)
talked (1)
talking (13)
talks (3)
tasks (1)
tell (15)
telling (5)
ten (3)
tens (1)
terminated (1)
termination (1)
terms (1)
territory (1)
test (1)
testified (4)
testify (4)
testifying (2)
testimony (6)
text (1)
Thank (6)
thanked (1)
theory (1)
thing (4)
things (10)

think (22)
thinking (1)
thinks (2)
thousands (4)
threat (1)
threaten (1)
threatening (1)
threats (1)
three (8)
time (31)
times (11)
title (6)
titles (2)
today (13)
Today's (1)
told (11)
tolerate (1)
Tommy (3)
ton (1)
top (2)
topic (1)
topics (1)
totally (2)
train (1)
trained (1)
trainings (1)
trains (1)
transcript (2)
transcription (1)
trial (1)
tried (1)
trip (1)
true (4)
truly (1)
try (4)
trying (8)
Tuesday (3)
turn (2)
turned (2)
twelfth (1)
two (17)
two-and-half (1)
tying (1)

< U >
Uh-huh (3)
uncomfortable (3)
understand (5)
understanding (3)

understood  *(1)*
UNITED  *(2)*
use  *(5)*

**< V >**
vaguely  *(2)*
valid  *(1)*
vast  *(1)*
veiled  *(2)*
verbal  *(1)*
versus  *(2)*
victims  *(3)*
video  *(7)*
Videographer  *(4)*
Videotaped  *(1)*
violate  *(3)*
violating  *(2)*
visit  *(1)*
vs  *(1)*

**< W >**
W-2  *(1)*
Wait  *(4)*
waiting  *(1)*
waived  *(1)*
WALTON  *(2)*
want  *(29)*
wanted  *(1)*
Washington  *(1)*
Watch  *(4)*
watched  *(1)*
way  *(8)*
ways  *(7)*
website  *(1)*
week  *(2)*
weekly  *(9)*
weeks  *(2)*
weird  *(1)*
welcome  *(1)*
Well  *(54)*
went  *(6)*
we're  *(19)*
we've  *(1)*
whispering  *(1)*
WILLIAM  *(1)*
wisely  *(1)*
WITNESS  *(94)*
WITNESSED  *(1)*
Wolson  *(1)*

woman  *(1)*
women  *(7)*
word  *(3)*
words  *(1)*
work  *(23)*
worked  *(3)*
working  *(4)*
workplace  *(16)*
works  *(4)*
world  *(1)*
worth  *(1)*
wrap  *(2)*
wrong  *(3)*
wrongful  *(1)*

**< Y >**
Yeah  *(40)*
year  *(4)*
year-and-a-half  *(1)*
years  *(5)*
Yep  *(11)*
yes-or-no  *(4)*
yesterday  *(2)*
Yonchek  *(3)*

**< Z >**
zero  *(1)*