# EXHIBIT CC

# Derek Smith Law Group, PLLC

Employment Lawyers Representing Employees Exclusively

December 29, 2016

<u>Via Fax (215) 440-2606 & First Class Mail</u>
Equal Employment Opportunity Commission
801 Market Street, Suite 1300
Philadelphia, PA 19107-3127

|  |  |  |
|---|---|---|
|  |  | **<u>CHARGE</u>** |
| Re: | Our Client : | TIFFANY LEE |
|  | Nature of Complaint : | GENDER AND SEX DISCRIMINATION, SEXUAL HARASSMENT, HOSTILE WORK ENVIRONMENT, RETALIATION. |

                                   -against-

**THE MIDDLE EAST FORUM, DANIEL PIPES and GREGG ROMAN,**
                   **(RESPONDENTS).**

We hereby request that this Charge be simultaneously filed with the Philadelphia Commission of Human Relations, Pennsylvania Human Relations Commission and any other state and local agency with whom you have a work sharing agreement as Claimant is making a claim under all applicable rules, regulations, statutes and ordinances that apply to Claimant's facts.

Dear Sir or Madam:

The following is a charge of discrimination and retaliation that this office is filing on behalf of our Client, Claimant Tiffany Lee against the above Respondents.

Ms. Lee's address and telephone number are:

  2100 Walnut Street, Apt #2C
  Philadelphia, PA 19103
  (917) 708-0349

NYC Office: 30 Broad Street, 35th Floor, New York, NY 10004 | (212) 587-0760
Philadelphia Office: 1845 Walnut Street, Suite 1600, Philadelphia, PA 19103 | (215) 391-4790
NJ Office: 73 Forest Lake Drive, West Milford, NJ 07421 | (973) 388-8625
Website: www.discriminationandsexualharassmentlawyers.com

Supplemental Production 00192

The name and address of the business against whom the charge is made is:

> The Middle East Forum
> 1232 Winterton Street
> Pittsburgh, PA 15206
> Phone: (215) 546-5406
>
> Daniel Pipes
> Via his Place of Employment
> 1650 Market Street, Suite 3600
> Philadelphia, PA 19103
> Phone: (215) 546-5406
>
> Gregg Roman
> Via his Place of Employment
> 1650 Market Street, Suite 3600
> Philadelphia, PA 19103
> Phone: (215) 546-5406

The exact number of employees at the above entity is unknown, but upon information and belief, there are well more than the statutory minimum.

**A Statement of Facts is as follows:** Upon information and belief, Complainant alleges as follows:

1. Claimant Tiffany Lee (hereinafter also referred to as Claimant and "Lee") is an individual female who is a resident of the State of New York.

2. Respondent The Middle East Forum., (hereinafter referred to as Respondent or "MEF") is a domestic non-profit business duly existing under the laws of the Commonwealth of Pennsylvania.

3. Respondent MEF operates out of a field office located 1650 Market Street, Suite 3600, Philadelphia, PA 19103 (hereinafter the "Field Office").

2

Supplemental Production 00193

4. At all times material Respondent Daniel Pipes (hereinafter also referred to as "Pipes is employed by Respondent MEF as a the "President."

5. At all times material, Respondent Pipes held supervisory authority over Claimant.

6. At all times material Respondent Gregg Roman (hereinafter referred to as "Roman") is employed by Respondent MEF as a the "Director."

7. At all times material, Respondent Roman held supervisory authority over Claimant.

8. At all times material, Claimant was employed by Respondents.

## MATERIAL FACTS

9. On or around March 15, 2016, Claimant began working as the Director of Development for Respondent MEF.

10. Almost immediately, Respondent Roman began making inappropriate comments to Claimant.

11. By means of example and not meant to be an exhaustive list, Respondent Roman would comment on Claimant's appearance, discuss personal family details with Claimant, and tell her comments, such as, "You know you made my day today."

12. Claimant was at all times completely uncomfortable with this comments and conduct but Claimant feared retaliation if she reported Respondent Roman's conduct. Furthermore, In or around May 2016, Respondents' Controller/Human Resources representative resigned, leaving the position vacant.

13. In or around May 2016, Respondent Roman increased his advances towards Claimant, asking that she join him at his home in Margate City, New Jersey for the weekend. Respondent Roman made it abundantly clear to Claimant that his wife and children would not be at the house that weekend.

3

14. At all times material, Respondent Roman would send Claimant text messages throughout the evening, well after the work day had ended. Furthermore, Respondent Roman would call Claimant during the weekend despite being well aware that Claimant was not working during those hours.

15. Despite multiple requests, Claimant declined the offer.

16. By means of example, throughout the summer and early fall of 2016, Respondent Roman would text and call Claimant between the hours of 6:00PM and 1:00AM, paying no regard to Claimant's personal life.

17. Respondent Roman would send Claimant pictures of his children and joke about Claimant marrying donors saying, "You might end up with a big divorce settlement you can turn into a MEF annuity" and "There are men and women who make careers out of this."

18. In or around the summer of 2016, late in the evening, Respondent Roman called Claimant while extremely intoxicated and began to profess his deep admiration for her. Claimant thanks Respondent Roman and quickly ended the conversation.

19. On or around August 22, 2016, during a text message conversation at after 10:00PM, Claimant informed Respondent Roman that she was interested in another guy she had met the previous weekend. Claimant informed Respondent Roman of this in an effort to dissuade him from continuing his advances towards her.

20. When Claimant informed Respondent Roman that the gentlemen she had met was a former professional football player, Respondent Roman responded, stating, "That's cool – so long as he's not an active player. That's a fireable offense. Dating Giants or cowboys players."

4

**Supplemental Production 00195**

21. Respondent Roman continued to pursue Claimant, stating "Oh Tiffany, so lost and confused. You've got your flavors of the week." Respondent Roman stated, "But when you think of it, you're trying out all kinds of personalities and job and stuff, so you'll known what you don't want and then end up knowing what you do want."

22. When Claimant reflected on how she missed her ex-boyfriend, Respondent Roman replied, "Well they're fucking idiots then, I know how to keep your attention."

23. The conversation then turned to Respondent Roman detailing how he was "done wing-manning" for a friend he was with at a bar, stating "I haven't had this much fun texting since AOL."

24. Claimant immediately shifted the conversation back to work related discussion and proceeded to ask details about the agenda for the following day.

25. At all times material, Claimant would inform Respondent Roman that she valued her job and the work Respondent MEF did, stating she appreciated their "work relationship."

26. Respondent Roman informed Claimant that no one could know about their conversations, stating, "My wife or your friend. Especially our Employees. They can't know that we're tight."

27. At all times material, Respondent Roman knew that his continued personal comments and conduct where not appropriate. Respondent Roman even went so far as to question "What are our boundaries."

28. Uncertain of how to respond to her supervisor, Claimant stated, "Idk what boundaries we should have" and again tried to refocus the conversation towards their work relationship.

29. Respondent Roman responded "I don't see a need for predetermined boundaries. If I get out of line with some stupid idea or asinine question, you'll tell me."

5

**Supplemental Production 00196**

30. At all times throughout the course of the conversation, as a result of Respondents comments and tone, Claimant was concerned that should she disagree with Respondent or confront him, she would risk losing her job.

31. In or around September 29, 2016, Respondent Roman asked Claimant if she would meet with him that Friday evening, saying the he did not want to "fuck up [her] Friday night." When Claimant respectfully stated that she already had plan with her friends, Respondent Roman continued to harass Claimant, suggesting they meet on Saturday instead. Again, Claimant politely declined.

32. On or around October 1, 2016, at approximately 12:00AM, Respondent Roman began to text Claimant, asking for suggestions of where to get a casual drink in New York. Uncomfortable by the question and fearing that he was insisting they meet, Claimant provided a list of locations and ended the conversation.

33. In or around the beginning of October 2016, Claimant informed Respondent Roman that she needed to discuss with him his conduct and the personal comments he had made throughout the summer. Claimant informed Respondent Roman that she was uncomfortable with the comments and would like the relationship to remain strictly professional moving forwards.

34. In retaliation for Claimant's reporting of the sexual harassment, Respondent ROMAN proceeded to institute a campaign to terminate Claimant because of her complaints of sexual harassment. Respondent Roman became overly critical with Claimant, finding fault with her work performance every chance he could.

35. On or around October 31, 2016, Respondents wrongfully terminated Claimant.

**Supplemental Production 00197**

36. Respondent wrongfully and unlawfully terminated Claimant in retaliation for her complaints of sexual harassment and her unwillingness to engage in sexual behavior with her supervisor Respondent Roman.

37. As a result of Respondents' actions, Claimant felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

38. As a result of the acts and conduct complained of herein, Claimant has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and Claimant also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Claimant has further experienced severe emotional and physical distress.

39. As Respondents' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Claimant demands Punitive Damages as against all the Respondents, jointly and severally.

40. Respondents have exhibited a pattern and practice of not only discrimination but also retaliation.

41. The above are just some examples, of some of the discrimination to which Respondents subjected Claimant.

Please contact me if you have any questions or require any additional information. Thank you for your courtesy and cooperation in the matter.

Very truly yours,

**DEREK SMITH LAW GROUP, PLLC**

_____
Caroline H. Miller, Esq.

7

**Supplemental Production 00198**