**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| | : |
| | : |
| LISA BARBOUNIS, | : |
| | : |
| | : CIVIL ACTION |
| Plaintiff, | : NO. 2:19-cv-05030-JDW |
| | : |
| v. | : |
| | : IN SUPPORT OF PLAINTIFF'S |
| | : MOTION FOR SUMMAY JUDGMENT |
| THE MIDDLE EAST FORUM, GREG | : |
| ROMAN, AND DANIEL PIPES, | : |
| | : |
| Defendants. | : |
| | : |

---

**PLAINTIFF, LISA BARBOUNIS' REPLY TO DEFENDANTS, THE MIDDLE EAST FORUM, GREG ROMAN, AND DANIEL PIPES' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT.**

---

**DEREK SMITH LAW GROUP, PLLC**
**Attorney for Plaintiff**
**Seth D. Carson, Esquire**
**1835 Market Street, Suite 2950**
**Philadelphia, PA 19103**
**Phone: 215.391.4790**
**Facsimile: 215.893.5288**
**Email Seth@DerekSmithLaw.com**

Seth D. Carson, Esquire, an attorney, duly admitted to practice law in the District Court of the Eastern District of Pennsylvania hereby sets forth the following memorandum in support of her Motion for Summary Judgment. As the attorney of record in this matter, I am familiar with the facts and circumstances of Plaintiff's case. The following Motion and Memorandum is submitted in support of Plaintiff's Motion for Summary Judgment.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LISA BARBOUNIS, | : |
| | : |
| Plaintiff, | : CIVIL ACTION |
| | : NO. 2:19-cv-05030-JDW |
| v. | : |
| | : OPPOSITION TO DEFENDANTS' |
| | : MOTION FOR SUMMAY JUDGMENT |
| THE MIDDLE EAST FORUM, GREG | : |
| ROMAN, AND DANIEL PIPES, | : |
| | : |
| Defendants. | : |
| | : |

**MEMORANDUM IN OPPOSITION TO DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF,**
**LISA BARBOUNIS' CLAIMS AND DEFENDANTS' COUNTERCLAIMS**

Plaintiff, Lisa Barbounis ("Ms. Barbounis" or "Plaintiff") submits the Following Memorandum of Fact and Law in support of her Motion for Summary Judgment.

**I.      PRELIMINARY STATEMENT**

Defendants, The Middle East Forum, Greg Roman, and Daniel Pipes ("Defendants") filed a Motion for Summary Judgment arguing there is evidence demonstrating Plaintiff's liability on the three counterclaims as a matter of law: (1) breach of duty of loyalty, (2) fraudulent misrepresentation, and (3) civil conspiracy.  Plaintiff, Lisa Barbounis ("Ms. Barbounis" or "Plaintiff") also filed a Motion for Summary Judgment, arguing the three counterclaims should be dismissed as a matter of law.  Plaintiff's argument is premised upon the lack of evidence, including admissible evidence.  Defendants' most recent Memorandum double-downs on it argument and once again relies almost entirely on hearsay statements of Daniel Thomas and Jazmin Bishop.

2

Importantly, statements by Jazmin Bishop and Daniel Thomas go beyond mere hearsay, and are in fact double hearsay.  To admit the evidence, Greg Roman would have to authenticate a conversation where Greg Roman said what Daniel Thomas said that Lisa Barbounis said. Defendants first attempt to salvage this deficient, self-serving information, soaked in impropriety, by suggesting that Plaintiff's legal argument is unsupported.  Defendants are incorrect.  It is well settled law that evidence that in inadmissible at trial cannot be used to support or refute a motion for summary judgment.  See Pamintuan v. Nanticoke Memorial Hospital, 192 F.3d 378, 388 (3d Cir.1999). ("Evidence that will be inadmissible at trial cannot be considered when ruling on a motion for summary judgment.")  See also Bouriez v. Carnegie Mellon Univ., ("It is clear that the party offering the evidence must demonstrate that it could satisfy the applicable admissibility requirements at trial before the evidence may be used on summary judgment.")  Bouriez v. Carnegie Mellon Univ., No. CIV.A. 02-2104, 2005 WL 2106582, at *2 (W.D. Pa. Aug. 26, 2005) citing Robinson v. Hartzell Propeller Inc., 326 F.Supp.2d 631 (E.D.Pa.2004), and Henry v. Colonial Baking Co. of Dothan, 952 F.Supp. 744, 750 (M.D.Ala.1996).  The same proposition holds in Pennsylvania Courts.  "A motion for summary judgment cannot be supported or defeated by statements that include inadmissible hearsay evidence." Botkin v. Metro. Life Ins. Co., 2006 PA Super 243, 907 A.2d 641 (2006).

Next, Defendants attempt to use hearsay exceptions to salvage the double hearsay statements of Daniel Thomas and Jazmin Bishop, by arguing that Greg Roman's statement about what Daniel Thomas said about what Lisa Barbounis said constitutes "an admission by a party opponent."  Plaintiffs suggests this argument is transparently futile, particularly when considering the recorded statement of Daniel Thomas where he describes the conversation with Defendant, Greg Roman.  Daniel Thomas left a voice recording and said:

"Well go-on Mr. Yaxley.  Yeah I'm fucking testifying brother under oath.  I am taking her to fucking town for what happened.  That cunt.  She fucking ruined my life man she did. But they just want me to talk about what she thinks about like in Brussels and stuff.  And basically give my evidence on based on what our relationship was.  Because all I am willing to do or say is… She is making out to the Courts in America that she is a married woman who never strayed.  Completely that type of person.  And it could be farther from the truth. So Greg contracted me. He gave me a little – you know – a wink and said when this is all over we'll thank you.  So he said help us do this.  Bring the truth.  So I am going to testify that and say look… She took me here she took me there she bought that she bought that she paid for that she paid for this she paid for that. … I have been speaking with them since last week and based on making sure she is proved a liar in court.  I am their star witness. … Once she fucks MEF off she can contract the donors for other things.  Exhibit Z to Plaintiff's Response to Defendants' Motion for Summary Judgment.

Collateral estoppel applies to Judge Sanchez ruling in MEF v. Lisa Barbounis, when Judge Sanchez denied Middle East Forum's Motion for equitable relief.  Judge Sanchez's Order held there was no evidence that Lisa Barbounis contacted a donor after her employment ended. See (2:19-cv-05697-JS Document 91).  This is just one example of the many falsities in the unauthenticated statement of Daniel Thomas.  The statement by Daniel Thomas significantly implicates the credibility of both Defendant, Greg Roman and Daniel Thomas.  With no supporting evidence, Defendants' Response to Plaintiff's Motion for Summary Judgment advances another argument that Daniel Thomas should be treated like an unavailable witness because Plaintiff caused the unavailability.  It sounds like Defendants are suggesting that the conversation between Defendant, Greg Roman and Daniel Thomas should be read to a jury. This would be a travesty of injustice for several reasons, including that Plaintiff was not afforded the opportunity to participate in the conversation and to question the declarant, Daniel Thomas. Plaintiff never had an opportunity to question Daniel Thomas pursuant to the purported statement, and, Daniel Thomas' own voice recording (127-1 Exhibit Z) indicates the dire need for cross examination.  Daniel Thomas indicated other conversations with Defendant, Greg

Roman that have not been produced, or even referenced.  Daniel Thomas indicated being offered something for his testimony. Daniel Thomas also indicated that he thought it would be in his benefit to act as MEF's "star witness."  This recording belies any argument of a statement against interest.  It also belies any argument that Daniel Thomas was acting in concern or as an agent of Plaintiff, Lisa Barbounis when the statement was made.  Daniel Thomas clearly believed it was in his interest to go along with Defendant, Greg Roman, as confirmed in the recording.   Defendants next argue that Daniel Thomas fears being involved in this case, which is the reason for his unavailability.  Defendants have offered ***nothing*** to support this argument. Plaintiff, Lisa Barbounis has had no contact with Daniel Thomas or Jazmin Bishop in well over a year and there is no evidence to even suggest that Daniel Thomas' unavailability is connected in any way to Lisa Barbounis.  Possibly, Daniel Thomas is a reluctant witness because trading untruthful testimony for a wink and a promise of something in the future is a criminal offense in both the United States and United Kingdom.

Without the statements of Daniel Thomas and Jazmin Bishop, Defendants' entire case is predicated upon electronic communications where Lisa Barbounis purportedly held a conversation with Jazmin Bishop in March 2019.  The March 2019 communication with Jazmin Bishop raised the issue of money granted to Daniel Thomas from about one year earlier in June 2018.  Defendants suggest that this text conversation is sufficient to find Lisa Barbounis liable for (1) breach of duty of loyalty, (2) fraudulent misrepresentation, and (3) civil conspiracy. Defendants cannot even prove that money was taken.  Defendants cannot prove that Lisa Barbounis had a plan to move to the United Kingdom; a transparently and demonstratively false allegation as Lisa Barbounis' entire family, including a husband and two young children ages four (4) and seven (7) reside in Philadelphia, Pennsylvania.  Defendants' have no adhesion to

truth.  Finding in Defendants' favor would require huge leaps that no reasonable jury could make.  The lack of evidence indicating any of the arguments Defendants require to prevail at the summary judgment stage leads to a finding that Defendants cannot bring their counterclaims to trial.

II.   **ARGUMENT**

   A.  **A timeline of the events included in Defendants' Fact Statement confirms the lack of evidence including damages that could substantiate any of Defendants counterclaims.**

   Defendants' Counterclaims are all smoke and mirrors.  Defendants conflate, confuse, and confound the truth; that Middle East Forum suffered no harm that can be laid at the feet of Lisa Barbounis.  By simply organizing Defendants' Fact Statement into a timeline, it becomes clear that MEF suffered no harm that can be attributed to Lisa Barbounis.  The event that gave rise to Defendants' counterclaims occurred in May to June 2018, when MEF granted $32,000 to Daniel Thomas to be used for a Free Tommy Robinson Rally.  See Defendants Fact Statement Paragraph 188 through 196.  Almost none of the exhibits provided by Defendants to support its counterclaims actually indicate what is written by Defendants in the Fact Statement.  See Plaintiff's Response to Defendants Fact Statement.  Importantly, Paragraph 73 of Defendants' Fact Statement confirms that Lisa Barbounis returned from the trip to United Kingdom and immediately drafted an email to report the very impropriety upon which rests Defendants' entire case. (Emphasis added).  Lisa Barbounis sent an email to Greg Roman on June 22, 2018.  The bullet points from Lisa Barbounis' email are that:

   - I have a bad taste in my mouth from the last event. Danny applied for the grant but hasn't supplied, to my standards, a proper account of the money disbursements and I now have 2 "vendors" asking for money (reality report and the camera people who were directly hired by Kevin, only referred to by us/Raheem because he asked for a name).

- If the donor is interested in funding another event then I think Raheem should apply for the grant, receive the money and dispense it properly with receipts.
- I don't seem to trust anyone else and I certainly don't trust their people and there is no organization between groups talking about helping Tommy.
- If the donor doesn't want to participate, or if he does and we let others handle it, we really need to consider the Congressman's involvement.
- That is our reputation on the line and he needs a schedule of meetings and a decent event.
- This needs to be done properly. Names of vendors, addresses, written estimates, etc.

Document 109-3 Exhibit 73.

Importantly, the camera people referenced by Lisa Barbounis who reported that Daniel Thomas was not properly accounting for the granted money is Vinnie Sullivan. Id. This means that Lisa Barbounis immediately reported to Defendant, Greg Roman the impropriety and reports made, including the report of Vinnie Sullivan following the event. Id. Greg Roman, Daniel Pipes, and Middle East Forum did nothing in response to Lisa Barbounis' email. So it is troubling when Defendant, Middle East Forum informs the Court:

> In short, had Barbounis done her duty and informed the Forum that she, at a minimum, harbored significant suspicions dating back to December 2018 that Thomas had misappropriated the Forum's funds – suspicions that she discussed with multiple people on multiple occasions over a period of more than seven months -- the Forum could have, and indeed would, have launched an investigation, uncovered the misappropriation, and clawed back not only the monies that were misappropriated but all of the monies delivered to Thomas under the contract… (Def Mot Document 124 Page 14).

Next, Defendants claim that in August 2018, Lisa Barbounis "advocated for an increase in the Forum's financial support for Robinson." Defendants Fact Statement Paragraph 207. A reading of the actual exhibit confirms that Lisa Barbounis did not advocate, but Paragraph 208 of Defendants' Fact Statement and specifically the supporting document, Exhibit 77 is more concerning. Here Defendants provide entirely false information to the Court. Defendants' label Exhibit 77 as an email from Pipes to Plaintiff. It is not. It is an email from Pipes to Roman.

This is important because it confirms that Lisa Barbounis has no say in money decisions and at the top management level, all money decisions flow through Daniel Pipes and Greg Roman.

Next is the October 2018 rally. This is the only instance when Lisa Barbounis is sent to the United Kingdom by Middle East Forum solely for work. Lisa Barbounis was not involved in any manner with Daniel Thomas at this time. There is no evidence by this point that Lisa Barbounis knew about any issues related to Daniel Thomas, other than the issues she had already reported in the June 22, 2018 email to Greg Roman. Lisa Barbounis traveled to the United Kingdom for work and returned home without incident. Accordingly, none of the information presented by Defendants to support its counterclaims are even relevant at this point as Lisa Barbounis cannot even be accused of wrongdoing by October 2018. Defendants cannot even claim, and have produced no evidence that by October 2018, Lisa Barbounis had contributed to any harm to any of the Defendants. Here is where Defendants attempt to use the false, double hearsay, statement of Greg Roman, authenticating a conversation with Daniel Thomas, to fill-in-the-blanks with misleading information presenting solely for its prejudicial value. Plaintiff refers to Paragraphs 213 through 222 of Defendants Fact Statement.

Next Defendants Fact Statement presents Paragraph 223, which states, "[d]uring this time, due to her many and protracted trips to the United Kingdom and her relationship with Thomas, Barbounis' work performance at MEF began to suffer and her mistakes and errors increased. (Def Mot 109-3). Defendants' own Fact Statement cannot even reconcile itself. By October 2018, Lisa Barbounis had only been to the United Kingdom twice: in June 2018 and October 2018. Also, Paragraph 168 of Defendants' Fact Statement confirms that just after this time-period, and for the next six months, Lisa Barbounis received a bonus for a "job well done."

Next Defendants Fact Statement provides context for the time period around November 2018.  Paragraph 226 of Defendants' Fact Statement presents an Exhibit, which is a text thread between Lisa Barbounis and Daniel Thomas.  By November 21, 2018, Defendant Greg Roman had been ejected from the Philadelphia offices, and Lisa Barbounis was finally permitted to communicate directly with Defendant, Daniel Pipes.  The ensuing conversation confirms that Defendant Pipes was entirely aware of Lisa Barbounis' involvement with Tommy Robinson and that Defendant Pipes used Lisa Barbounis to deliver messages to Tommy Robinson on his behalf. (Def Mot Exhibit 84).

Defendants Fact Statement then presents information in Paragraph 228, that Daniel Thomas's father requested Lisa Barbounis' help.  Crucially, Defendants still have not accused Lisa Barbounis of any wrongdoing by November 2018.  This is why Defendants' counterclaims are betrayed by a careful, methodical timeline of the events in Defendants' Fact Statement.  When viewed in this context, that by November 2018, not even Defendants have accused Lisa Barbounis of impropriety, Paragraph 228 of the Fact Statement and Plaintiff's response in Paragraph 229 (Document 109-3) becomes static background noise with no reason for appearing in a legal document.

The same can be said for Paragraphs 230 through 240 of Defendants Fact Statement.  These events occurred in December 2018.  By this point Defendants have not even accused Lisa Barbounis of wrongdoing.  Defendants have pointed to no evidence that would indicate that Lisa Barbounis had any knowledge of wrongdoing by Daniel Thomas, beyond the information that Lisa Barbounis had already reported to Defendant, Greg Roman on June 22, 2018 (Def Mot Document 109-3 Exhibit 73).  Defendants may point to a December 7, 2018 text communication with Vinnie Sullivan.  Lisa Barbounis had already reported Vinnie Sullivan's concerns to

9

Defendants and Defendant, Greg Roman on June 22, 2018. Vinnie Sullivan was the "camera people" referenced in Lisa Barbounis June 22, 2018 email. Moreover, Vinnie Sullivan's rantings were difficult to comprehend. Lisa Barbounis stands behind her Declaration (which by no means is a sham, although it is an unsurprising development that Defendants would label it such) which asserts that the only person who accused Daniel Thomas of stealing money was Jazmin Bishop. A review of the same text thread (Exhibit 95 – mislabeled by Defendants as Exhibit 85) confirms that Lisa Barbounis had no idea what Vinnie Sullivan's December 2018 electronic communication meant or referred to. Accordingly, by December 2018, Defendants still cannot accuse Plaintiff, Lisa Barbounis of any wrongdoing. There was no information, and Plaintiff argues there never will be, that triggers a legal duty to report, ***yet again***, to Defendants, Lisa Barbounis' warnings that Daniel Thomas may not have properly accounted for all of the granted money. How many times does Lisa Barbounis have to report to Defendants that Daniel Thomas may have misappropriated money and/or failed to provide an accurate accounting. Lisa Barbounis' June 22, 2018 email went unanswered. Defendant, Greg Roman didn't care to respond. Defendants certainly did not begin an investigation then to recover the so-called stolen money then, just like Defendants today have taken no steps to recover any of the money.

Defendants' Fact Statement Paragraphs 243 through 248 occurred in December 2018. Still Defendants cannot accuse Lisa Barbounis of wrongdoing. Lisa Barbounis had already reported the concerns of Vinnie Sullivan to Defendant, Greg Roman. She had reported these concerns in the June 22, 2018 email and orally, several times. Plaintiff believes there were other emails or electronic communications with Greg Roman about her concerns connected to Daniel Thomas, however, since Defendants have kept a secret cash of documents which they did not produce and have used solely for their benefit in connection with the instant motions, it's

impossible to know for certain.  Notwithstanding, there was nothing for Lisa Barbounis to hide during this time period at the end of 2018.  Lisa Barbounis has still not been accused by Defendants of any wrongdoing.  Defendants were satisfied with her work as Lisa Barbounis received a bonus for a "job well done" during this time period in December 2018. (Document 109-3 Paragraph 168).

Paragraph 253 of Defendants' Fact Statement described the time period around January to February 2019.  Plaintiff traveled to Brussels during this time period on her own dime.  Her trip to Brussels had no connection whatsoever with Middle East Forum.  Plaintiff, paid for her own travel, food, and lodgings and took the trip on her own time.  Its inclusion in Defendants' Fact Statement is more misdirection and willful deception.  Def. Mot 109-3 Exhibit 55 is an electronic communication sent by Daniel Thomas on February 16, 2019.  The message would not even make sense if Daniel Thomas was referring to money granted by MEF.  As confirmed by Exhibit RR of Plaintiff's Response to Defendants' Motion for Summary Judgment, Daniel Thomas was asking Lisa Barbounis about a personal loan where Ms. Barbounis had to borrow from her own Christmas money to help her then friend but a plane ticket.

Paragraph 261 of Defendants' Fact Statement describes events in March 2019, when Defendant, Daniel Pipes discontinued all money allocations to Tommy Robinson.  The reason that Defendants have offered zero evidence of any money, donations, grants, allocations in connection with Tommy Robinson after February 2019 is because there are none.  The Middle East Forum officially discontinued its association with Tommy Robinson in March 2019.  This is why Defendants cannot claim any injury much less that Lisa Barbounis was a real factor in bringing about an injury.  By March 2019, Defendants evidence indicates that Lisa Barbounis may have heard a rumor from Jazmin Bishop that Daniel Thomas did not spend all the granted

money as intended.  Defendants' own exhibits confirms Lisa Barbounis had already notified Defendants of these same concerns the year before.  Defendants' own exhibits confirms that Lisa Barbounis attempted to secure information, beyond the word of an angry ex-girlfriend, to confirm whether there was any veracity to Jazmin Bishop's allegations.  Defendants ridiculously attempt to couch Lisa Barbounis' attempt to verify whether information existed that she needed to bring to Middle East Forum, as an "effort to manufacture bank records in an effort to falsely "prove" his innocence." (Document 124 Page 11).  Defendants' own Fact Statement Paragraphs 273 through 276 does not even make this claim.  In the end, there was no credible information that triggered a legal duty to notify Defendants, beyond what Lisa Barbounis had already done.

Lisa Barbounis traveled to Europe in March and May 2019.  These were the last two times she traveled to Europe and both trips were taken on her own time, with her own money.  Defendants have presented no evidence that MEF contributed in any way to her travels in March and May 2019, or that the travels were related in any way with MEF.  A duty of loyalty does not reduce an employee to a slave.  What Lisa Barbounis did on her own time was not MEF business.  Also, Defendants are well aware that Daniel Thomas punched Lisa Barbounis in the face in January 2019, giving her a severe black eye and sending her to the emergency room.  Lisa Barbounis's relationship essentially ended after that.  Neither the March nor May trips had anything to do with Daniel Thomas.  Defendants try to use stray unrelated facts covering various subject matters to cover the time period after March 2019; however, Defendants have presented no evidence of injury to substantiate any of the claims.   Also, Defendants own Fact Statement betrays itself again in Paragraph 285, where Daniel Pipes' communications to Lisa Barbounis confirms his knowledge and acquiescence to Ms. Barbounis' travels and work with Tommy Robinson.  Defendants' latest Memorandum (Document 124) suggests that Lisa Barbounis

intended to personally "enrich herself" through unauthorized work. Defendants cannot point to any evidence that Lisa Barbounis was personally enriched because from October 2017 through August 2019, when Lisa Barbounis was employed with MEF, the only paychecks she cashed were from MEF. Lisa Barbounis has never received a penny from any other source during this time period and Defendants have offered no evidence to contradict this assertion.

## III.   <u>CONCLUSION</u>

Defendants cannot rely on any hearsay information to support its argument for summary judgment. This proposition does not simply limit Defendants to the statement of Daniel Thomas. It limits Defendants to everything gleaned from the hearsay information. Defendants cannot present evidence that Lisa Barbounis intended to move to the United Kingdom. Defendants cannot present evidence that someone stole money. Defendants cannot present evidence that Lisa Barbounis was personally enriched in any manner. The evidence which may be used to support Defendants' counterclaims is extremely limited, and in-and-of-itself, does not satisfy the legal elements required to bring this case to trial. No reasonable juror could conclude that Lisa Barbounis was engaged in a civil conspiracy. No reasonable juror could conclude that Lisa Barbounis did not do everything within her power as a matter of law to warn Defendants that Daniel Thomas may have misappropriated money. And certainly no reasonable juror could conclude that Lisa Barbounis committed fraud misrepresentation. Accordingly, Defendants' counterclaims must be dismissed as a matter of law.

**DEREK SMITH LAW GROUP, PLLC**

BY:_____/s/ Seth D. Carson_____
          Seth D. Carson, Esq.
          Attorney ID. No. 319886
          1845 Walnut Street, Suite 1601
          Philadelphia, PA 19103

13

(215) 391-4790
seth@dereksmithlaw.com
*Attorney for Plaintiff*

DATED: May 4, 2021

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date that I caused a true and correct copy of Plaintiff's

Memorandum to be served via ECF.

> Jon Cavalier
> Leigh Ann Benson
> Cozen O'Connor
> 1650 Market Street, Suite 2800
> Philadelphia, PA 19103
> P: 215-665-2000
> F: 215-665-2013
> dwalton@cozen.com
> lbenson@cozen.com
> Sidney L. Gold sgold@discrimlaw.
> Sidney L. Gold & Associates P.C.
> 1835 Market Street, Suite 515
> Philadelphia, PA 19103
> Tel: (215) 569-1999
> Fax: (215) 569-3870
> Counsel for The Middle East Forum

> **DEREK SMITH LAW GROUP, PLLC**

> BY:_____/s/ Seth D. Carson_____
> Seth D. Carson, Esq.
> Attorney ID. No. 319886
> 1845 Walnut Street, Suite 1601
> Philadelphia, PA 19103
> (215) 391-4790
> seth@dereksmithlaw.com
> *Attorney for Plaintiff*

DATED: May 4, 2021