# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LISA BARBOUNIS | : | CIVIL ACTION |
| | : | NO. 2:19-cv-05030-JDW |
| Plaintiff, | : | NO. 2:20-cv-02946 |
| -vs- | : | |
| | : | |
| THE MIDDLE EAST FORUM, et al. | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |

---

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF ITS
## OMNIBUS MOTION FOR SUMMARY JUDGMENT

---

Dated: May 7, 2021

Jonathan R. Cavalier
Leigh Ann Benson
Cozen O'Connor
1650 Market Street, Suite 2800
Philadelphia, PA  19103
(215) 446-0031

*Attorneys for Defendant*
*The Middle East Forum,*
*Daniel Pipes and Gregg Roman*

Sidney L. Gold
William Rieser
Sidney L. Gold & Associates, P.C.
1835 Market Street, Suite 515
Philadelphia, PA 19103
(215) 569-1999

*Attorneys for Defendant*
*Gregg Roman*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ................................................................................................... 1

II.   SUMMARY JUDGMENT SHOULD BE GRANTED IN DEFENDANTS'
FAVOR ON PLAINTIFF'S CLAIMS.................................................................... 1

     A.    Plaintiff's Claims Of Alleged Sexual Assault That Occurred In March
2018 Are Discreet Acts And Are Time Barred........................................... 1

     B.    Plaintiff Has Abandoned Her Claim Of Constructive Discharge. .......................... 2

     C.    Defendants Are Entitled To Summary Judgment Under The *Faragher-
Ellerth* Doctrine. ....................................................................................... 3

          1.    Plaintiff Admits, By Own Her Words And Actions, That The
Forum Had An Anti-Harassment Policy And That She Utilized It
Effectively. ................................................................................... 4

          2.    Once Plaintiff Did Utilize The Forum's Anti-Harassment Policy,
The Forum's Response Was Prompt, Reasonable And Effective
According to Plaintiff. .................................................................. 7

     D.    Plaintiff Has Abandoned And Waived Any Claim Of Retaliation Based
On Litigation Brought Against Her. ........................................................... 8

     E.    Plaintiff Has Failed To Respond Substantively To Defendants' Argument
Entitling Them To Summary Judgment On Plaintiff's Negligence Claim............. 9

III.  SUMMARY JUDGMENT SHOULD BE GRANTED IN THE FORUM'S
FAVOR ON ITS COUNTERCLAIMS AGAINST PLAINTIFF...................................... 9

IV.  PLAINTIFF'S DECLARATION AND RESPONSE TO DEFENDANTS'
STATEMENT OF UNDISPUTED MATERIAL FACT IS IMPROPER. ...................... 12

V.   CONCLUSION.................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ankele v. Hambrick,*
  286 F.Supp.2d 485 (E.D.Pa.2003) ..................................................................3, 8, 9

*Baer v. Chase,*
  392 F.3d 609 (3d Cir.2004)....................................................................................12

*Bakare v. Pinnacle Health Hospitals, Inc.,*
  469 F. Supp. 2d 272 (M.D. Pa. 2006) .....................................................................3

*Bouton v. BMW of N. Am., Inc.,*
  29 F.3d 103 (3d Cir. 1994)......................................................................................8

*Brown v. Kessler Inst. for Rehab. Inc.,*
  504 Fed. Appx. 83 (3d Cir. 2012) ...........................................................................3

*Bumbarger v. New Enter. Stone & Lime Co., Inc.,*
  170 F. Supp. 3d 801 (2016) .....................................................................................8

*Cacciola v. Work N Gear,*
  23 F.Supp.3d at 518, 531 .........................................................................................7

*Dempsey v. Delaware Dept. of Public Safety,*
  359 Fed. Appx. 347 (3d Cir. 2008) .........................................................................3

*Gawley v. Indiana Univ.,*
  276 F.3d 301 (7th Cir.2001) ....................................................................................7

*Glover v. City of Wilmington,*
  699 F. Supp. 2d 417 (D. Del. 2013).................................................................3, 8, 9

*Hackett v. Community Behavioral Health,*
  2005 WL 1084621 (E.D. Pa. May 6, 2005) ................................................... *passim*

*Jiminez v. All American Rathskeller, Inc.,*
  503 F.3d 247 (3d Cir. 2007)...................................................................................12

*Konstanatopoulos v. Westvaco Corp.,*
  112 F.3d 710 (3d Cir. 1997)....................................................................................3

*National R.R. Passenger Corp. v. Morgan,*
  536 U.S. 101 (2002).................................................................................................1

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
  475 U.S. 574, 587 (1986) ......................................................................................11

*O'Connor v. City of Newark,*
  440 F.3d 126 (3d Cir. 2006) .................................................................................1, 2

*Onorato v. Wissahickon Park, Inc.,*
  430 Pa. 416, 244 A.2d 22 (1968) ...........................................................................11

*Seals v. City of Lancaster,*
  553 F. Supp. 2d 427 (E.D. Pa. 2008) .......................................................................3

*Sylvester v. Beck,*
  406 Pa. 607, 178 A.2d 755 (1962) ...........................................................................11

*Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Engr'rs.,*
  982 F.2d 884 (3d Cir.1992) ......................................................................................11

**Statutes**

Title VII of the Civil Rights Act of 1964 .......................................................................8

Pennsylvania Human Relations Act .................................................................................9

Workers' Compensation Act ..............................................................................................9

I.      **INTRODUCTION**

Defendants The Middle East Forum (the "Forum"), Daniel Pipes and Gregg Roman (collectively "Defendants") respectfully submit this short reply brief in support of their Motion for Summary Judgment (Doc. No. 109) to address key issues conceded, legal errors made, and factual inaccuracies asserted by Plaintiff in her Response in Opposition to Defendants' Motion, which relies almost entirely on a 201-paragraph affidavit from Plaintiff herself, which is often contradicted by record evidence and Plaintiff's own prior testimony.  (Doc. No. 124).

II.     **SUMMARY JUDGMENT SHOULD BE GRANTED IN DEFENDANTS' FAVOR ON PLAINTIFF'S CLAIMS**

    A.      **Plaintiff's Claims Of Alleged Sexual Assault That Occurred In March 2018 Are Discreet Acts And Are Time Barred.**

Plaintiff cannot and does not dispute the facts that, as set forth in Defendants' opening brief, the primary substantive allegations made by Plaintiff to support her discrimination and hostile work environment claims occurred in March of 2018, that Plaintiff did not file her first charge of discrimination until June 20, 2019, and that the statute of limitations for such claims is 300 days.  (Doc. 109-2 at pp. 3-4).  As Defendants' also explained, with support from Supreme Court and Third Circuit precedent, courts must "differentiate between discrete acts and hostile work environments," because "discrete discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges."  *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110-18 (2002); *see also O'Connor v. City of Newark*, 440 F.3d 126, 127 (3d Cir. 2006).  In short, a discrete act occurs, for purposes of the statute of limitations, on the day that it happened, while by contrast, a continuing violation involves "acts which are not individually actionable but may be aggregated to make out a hostile work environment claim."  *Id.*  Importantly, discrete acts which are time barred "cannot be aggregated under a continuing violations theory."  *See O'Connor*, 440 F.3d at 128-29 ("time-barred claims cannot be resurrected by being aggregated and labeled continuing violations)."

In her response, Plaintiff ignores the above precedent (and cites none of her own) and instead ties herself in knots in an effort to link nebulous alleged actions (with no evidentiary citation or support) like "talking about sex, hot chicks, sexual conquests, leering, viewing inappropriate photos, [and] calling late at night" (Doc. No. 125 at p.20) to the prior alleged sexual assaults that formed the basis for Plaintiff's initial (and only) internal complaint about Roman's conduct.  However, there are at least two fatal flaws in Plaintiff's effort: (1) her attempt to link discrete allegations of sexual assault to an aggregated line of alleged non-physical harassment is *precisely* the argument considered and rejected by the Third Circuit in *O'Connor*, and (2) her attempt to establish a continuing violation flies in the face of her own contemporaneous words, when she wrote to Pipes in November of 2018 at stated that after "Gregg made unwanted sexual advances and put me in an uncomfortable situation . . . I have not had an incident since," (Doc. No. 109-2 at p.6; SUMF ¶ 150), which illustrates the lack of any continuous course of conduct by Roman.

Plaintiff cites no case law and no record evidence that would justify linking two discrete acts of alleged sexual assault to generalized allegations of non-physical sexual harassment which, by Plaintiff's own words, began no earlier than seven months later.  As such, Plaintiffs claims based on the events of March 2018 are time-barred.[1]

**B.    Plaintiff Has Abandoned Her Claim Of Constructive Discharge.**

In their opening brief, Defendants presented record evidence establishing that Plaintiff voluntarily chose to leave her employment at the Forum, and that her complaint relied on conclusory allegations that she was constructively discharged as evidence that she suffered a tangible employment action.  (Doc. 109-2 at pp. 10-11).  Further, Defendants pointed out that Plaintiff had failed to develop any record evidence whatsoever to show, as required to meet her threshold burden, that the Forum "knowingly permitted conditions of discrimination in

---

[1] As set forth in Defendants' opening brief, the remainder of Plaintiff's sex-based claims in turn fail as she has failed to establish that any such harassment was severe and pervasive.  (Doc. No. 109-2 at pp. 6-10).

employment so intolerable that a reasonable person subject to them would resign." *Brown v. Kessler Inst. for Rehab. Inc.*, 504 Fed. Appx. 83, 85 (3d Cir. 2012); *Konstanatopoulos v. Westvaco Corp.*, 112 F.3d 710, 718-19 (3d Cir. 1997).

Perhaps unsurprisingly, in her reply brief, Plaintiff chooses not to respond to or otherwise rebut in any way Defendants' record evidence or argument that she has failed to present a viable claim for constructive discharge.  As such, Plaintiff's claim for constructive discharge is waived, and summary judgment should be granted on this claim.  *See, e.g., Dempsey v. Delaware Dept. of Public Safety*, 359 Fed. Appx. 347, 348-49 (3d Cir. 2008) (affirming summary judgment for defendant where plaintiff "did not even address pretext in her responsive brief"); *Seals v. City of Lancaster,* 553 F. Supp. 2d 427, 432 (E.D. Pa. 2008) ("plaintiff's failure to mention these issues in her summary judgment response constitutes abandonment of those claims"); *Hackett v. Community Behavioral Health*, 2005 WL 1084621, *6 (E.D. Pa. May 6, 2005) (finding plaintiff abandoned claims not addressed in summary judgment response); *Ankele v. Hambrick*, 286 F.Supp.2d 485, 496 (E.D.Pa.2003) (granting summary judgment based upon the premise that plaintiff's failure to respond to one of the defendant's arguments in his summary judgment motion results in her waiver of the opportunity to contest summary judgment on that ground); *see also Glover v. City of Wilmington*, 699 F. Supp. 2d 417, 428 (D. Del. 2013) (dismissing claim where plaintiff failed to address argument in response brief); *Bakare v. Pinnacle Health Hospitals, Inc.,* 469 F. Supp. 2d 272, 291 n.36 (M.D. Pa. 2006) (granting summary judgment on claims which Plaintiff failed to oppose in response).

### C.    Defendants Are Entitled To Summary Judgment Under The *Faragher-Ellerth* Doctrine.

As a threshold matter, and as explained above, Plaintiff has abandoned her claim for constructive discharge by failing to rebut or address the arguments and record evidence set forth in Defendants' opening brief.  Because her constructive discharge claim was the only "tangible

employment action" raised by Plaintiff in her Complaint,[2] it is now law of the case that Plaintiff suffered no tangible employment action during her employment with the Forum, and thus the *Faragher-Ellerth* defense is available to Defendants.  Accordingly, Defendants are entitled to summary judgment under *Faragher-Ellerth* if it acted reasonably in its efforts to prevent or correct any potentially harassing behavior and if Plaintiff unreasonably failed to take advantage of the corrective policies provided by the Forum.  As established in Defendants' opening brief, and as Plaintiff admits in her response, the answer to both questions is plainly "yes."

> **1.      Plaintiff Admits, By Own Her Words And Actions, That The Forum Had An Anti-Harassment Policy And That She Utilized It Effectively.**

Defendants set forth the details concerning the provisions and implementation of the Forum's Anti-Harassment Policy in its opening brief, including Pipes' open door policy and expectations concerning reports of harassment and the Forum's training on its policy.  (Doc. No. 109-2 at p.13; SUMF ¶¶ 40, 43, 44, 46).  In her response, Plaintiff does not dispute the existence of the Forum's policies or that she was aware of both the policies and the reporting mechanisms and trained on them.  (Doc. No. 125 at p.10).  Instead, Plaintiff concedes that "the existence of a functioning anti-harassment policy could possibly prove the employer's exercise of reasonable care so as to satisfy the first element of the [*Faragher-Ellerth*] affirmative defense," but argues that the policy in place must be effective so as to sufficiently protect employees."  *Id.*

As established in Defendants' opening brief, Plaintiff concedes that she waited at least seven months to report instances of alleged harassment by Roman to Pipes (or even to tell Roman that his alleged behavior was unwelcome), which according to Plaintiff, occurred in March of 2018. (Doc. No. 109-2 at p.13-14, SUMF ¶ 85).  In her Response, Plaintiff attempts to paint her failure to report this alleged misconduct because she was "terrified of reprisal from Defendant Roman."  (Doc. 125 at p. 15).  In support of this claim, Plaintiff points not to any

---

[2] As noted in Defendants' opening brief, "there is no dispute that no tangible employment action was taken against Plaintiff, as she was never subjected to discipline, demotion, docked pay, reduced responsibilities or termination." (Doc. No. 109-2 at p.12).  Plaintiff does not contend otherwise in her Response.  (Doc. No. 125).

record evidence uncovered during discovery, but solely to the self-serving and contradictory 201-paragraph declaration that she submitted with her response.  (Doc. 125-3).[3]  Plaintiff's new assertions via declaration that she failed to report Roman's alleged behavior because she was "terrified" is belied by her own deposition testimony.

For example, when asked why she never told Roman that his alleged actions were making her uncomfortable, Plaintiff stated:

> I'm trying to kill him with kindness.  I'm trying to reverse the course of his terrible behavior with kindness, with empathy, with – I tried to make Gregg feel – like sometimes I felt like Gregg was, like, Gregg knows he's this big, unattractive monster that not a lot of people like. I mean like he admits to it, you know.

> And so I feel like a lot of times that people are like that, at least from my experience in life, is that they just need somebody to be nice to them.  And so I figured maybe if I'm nice to this dude, he'll treat me like a human being rather than treat me like his shitty eye-candy secretary.

*See* Doc. No. 126-20, Barbounis 11/4/20 Dep. at pp. 120-21.

When asked about the alleged incited in Israel by the Forum's human resources director Marnie O'Brien, who, according to Plaintiff, tried to "pull the story" out of her, Plaintiff testified that she told O'Brien, "I'm not getting into this."  *Id.* at 234.  When asked why not, Plaintiff testified: "I don't want to get involved.  Like I don't want to lose my job.  I'm like not interested in this.  It would be bad for my reputation as a conservative pers-, like Me Too person."  *Id.*

Plaintiff also testified that she told Matt Bennett, then the Forum's Director of Development, about the alleged Israel incident, and that Bennett told her that she should speak with Pipes about it.  Plaintiff declined that offer, according to her, because "I was really hesitant

---

[3] The only other "evidence" cited to by Plaintiff in support of her claimed reasons for failing to report alleged sexual harassment comes from statements of other women (all of whom, notably, are represented by the law firm representing Plaintiff and have claims against the Forum) which are entirely irrelevant to *Plaintiff's* state of mind and reasons for failing to report alleged harassment.  *See, e.g.,* Doc. 125 at p.125 (citing Declaration of Marnie O'Brien, Deposition of Patricia McNulty and Deposition of Marnie O'Brien).

because I kept thinking about my job and my money and my kids and, you know, all of that. Like I didn't want to lose a job, and I didn't want to ruin my reputation." *Id.* at 236.[4]

Nowhere in her deposition, when asked about her failure to report allegations against Roman prior to October 30, 2018, did Plaintiff mention any "terror" of reprisals by Roman. A close look at her brief and her declaration reveals why. In Plaintiff's brief, she argues that "Lisa Barbounis, Patricia McNulty, Marnie O'Brien, Catriona Brady, Delaney Yonchek, Tiffany Lee,[5] and Leah Merville were terrified of reprisals from Defendant Roman." (Doc. 125 at p.15). Her sole source of evidence for that assertion is paragraph 52 of her own declaration, which states: "All the female employees have either informed me or I have heard that they were terrified of Greg Roman and MEF's willingness to retaliate against victims of Greg Roman." (Doc. 125-3 at ¶ 52). Notably, Plaintiff does not aver that she herself was "terrified of reprisals," nor does she state under oath in her declaration that she herself failed to report Roman's alleged conduct because of such fears. *See generally* 125-3. In fact, Plaintiff never states in her declaration, nor points to any other evidence of any kind to establish, that she failed to report Roman due to fear of reprisal by Roman or the Forum.

Likely, this failure by Plaintiff is due to the fact that she ultimately **availed herself of the Forum's anti-harassment policy.** In short, Plaintiff's own claims of "terror" about reporting are belied by the very fact that ultimately, she did report Roman's alleged March 2018 conduct in November 2018. She offers no reason and no explanation for this delay, no explanation for

---

[4] Incredibly, Plaintiff's response brief and declaration directly contravenes her own deposition testimony. In her response, she claims, "Matthew Bennett, Gregg Roman's good friend and enforcer, threatened both Lisa Barbounis and Patricia McNulty when Ms. Barbounis and Ms. McNulty sought his help in reporting Gregg Roman's sexual misconduct. (Doc. 125 at p.12, citing Barbounis Dec. at ¶ 41-44). This lie is emblematic of many in Plaintiff's self-serving declaration, as discussed in more detail below.

[5] Again, McNulty, O'Brien, Brady, Yonchek and Lee are or have been represented by the same law firm as Plaintiff in asserting claims against the Forum. Yonchek voluntarily withdrew her claim, and Brady dismissed her claim with prejudice. McNulty and O'Brien have cases pending against the Forum in which they are represented by the same atttorneys' representing Barbounis.

the abatement of her claimed "terror," nor any detail of a change in circumstances that would explain her newfound ability to report the alleged misconduct from seven months prior.  Her unexplained and unjustified delay in making her report, despite her admission that both the Forum's human resources director and the Forum's director of development urged her to avail herself of the Forum's anti-harassment policy, establishes that she unreasonably failed to take advantage of the Forum's policy.  *See, e.g., Gawley v. Indiana Univ.*, 276 F.3d 301, 312 (7th Cir. 2001) (affirming summary judgment for employer because failure to report harassment for seven months "constituted an unreasonable failure to take advantage of the [employer's] corrective procedures."); *Cacciola v. Work N Gear*, 23 F. Supp. 3d 518, 531 (E.D. Pa. 2014) (finding that the plaintiff's failure to file a report for nine months was unreasonable).

### 2. Once Plaintiff Did Utilize The Forum's Anti-Harassment Policy, The Forum's Response Was Prompt, Reasonable And Effective According to Plaintiff.

Plaintiff concedes that within days of making her first and only report of sexual harassment, Pipes conducted a meeting with the employees of the Forum including Plaintiff during which he solicited the employees to state any grievance they might have, interviewed all pertinent employees including Plaintiff and Roman (who steadfastly denied all allegations), and determined that, given the nature of the dispute, immediately implemented restrictions on Roman's employment with the Forum which, among other things, removed Roman's supervisory authority over Plaintiff and his access to the Forum's Philadelphia office.  (Doc. 109-2 at pp. 14-16; SUMF ¶¶ 151-159).  Pipes then asked Plaintiff whether she was satisfied with the Forum's resolution of her complaint, and Plaintiff indicated in writing that she agreed with the restrictions placed on Roman and was pleased with the speed of Pipes' inquiry and response.  *Id.* at 15-16; SUMF ¶ 150.

Now, in an effort to walk back her own words indicating her satisfaction with the Forum's response, Plaintiff takes issue with the very speed of Pipes response that so pleased her at the time. (Doc. 125 at p.13).  Plaintiff further claims, without case law support and in direct contravention of both the record evidence and her own prior words, that due to "Pipes' outright and total dismissal

of any and all information raised after the staff meeting, no reasonable person could conclude that Defendants swiftly addressed and corrected the issue." *Id.*

"Prompt remedial action" is conduct "reasonably calculated to prevent further harassment." *Id.* When the employer's response stops the harassment, there can be no employer liability under Title VII as a matter of law. *Bumbarger v. New Enter. Stone & Lime Co., Inc.*, 170 F. Supp. 3d 801, 838 (2016); *Bouton v. BMW of N. Am., Inc.*, 29 F.3d 103, 110 (3d Cir. 1994) ("By definition, there is no negligence if the [sexual harassment grievance] procedure is effective."). There can be no reasonable dispute here that the response by the Forum to Plaintiff's complaint was effective because Plaintiff never again raised a complaint about sexual harassment by Roman and admits that during the period "while Roman was out of the office, [Plaintiff] was not subjected to sexual harassment." (Doc. 125 at 18).

Accordingly, Plaintiff cannot overcome Defendants' *Faragher-Ellerth* defense, and Defendants are entitled to summary judgment on Plaintiff's claims.

### D. Plaintiff Has Abandoned And Waived Any Claim Of Retaliation Based On Litigation Brought Against Her.

In its opening brief, Defendants explained that it was unclear from Plaintiff's Amended Complaint whether her retaliation claims were premised on her allegation that Defendants' subsequent legal action against her was "unfounded and without evidence" and that Defendants' counterclaims were "frivolous." (Doc. No. 109-2 at pp. 21-22). Defendants' brief explained that any such retaliation claims would be barred by Supreme Court precedent and judicial privilege. *Id.* at pp. 21-24. In her response, Plaintiff neither addresses nor opposes Defendants' position. As such, Defendant is entitled to summary judgment on any of Plaintiff's retaliation claims that are based on Defendants' litigation activity against her. *See, e.g., Hackett,* 2005 WL 1084621 at *6; *Ankele,* 286 F.Supp.2d at 496; *Glover,* 699 F. Supp. 2d at 428.

**E.    Plaintiff Has Failed To Respond Substantively To Defendants' Argument Entitling Them To Summary Judgment On Plaintiff's Negligence Claim.**

In its opening brief, Defendants explained that Plaintiff's negligent hiring/retention/ supervision claims must be dismissed because (a) Plaintiff points to no record evidence that Pipes or the Forum had any reason to believe that Roman had "violent tendencies" because he had never been accused of sexual assault previously, (b) that "garden variety" claims for sexual harassment are preempted by the Pennsylvania Human Relations Act ("PHRA"), and (3) Plaintiff's claims for negligence are preempted by the Workers' Compensation Act.

Plaintiff does not respond to the argument or cases cited by Defendants establishing that her negligence claims are preempted, and therefore her opposition to those arguments is waived. *See, e.g., Hackett,* 2005 WL 1084621 at *6; *Ankele,* 286 F.Supp.2d at 496; *Glover,* 699 F. Supp. 2d at 428.  Likewise, Plaintiff fails to point to or cite any record evidence that hiring or retaining Roman put employees at risk for potential sexual assault.  (Doc. 125 at p.21).  Either of these failures is independently fatal to Plaintiff's negligence claims; together they clearly establish Defendants' entitlement to summary judgment.

**III.    SUMMARY JUDGMENT SHOULD BE GRANTED IN THE FORUM'S FAVOR ON ITS COUNTERCLAIMS AGAINST PLAINTIFF.**

In its opening brief and accompanying Statement of Undisputed Material Facts, Defendants painstakingly catalogued an enormous volume of evidence recovered from Plaintiff's own electronic devices[6] which establishes, beyond a shadow of a doubt, that as of March 2019,[7] Plaintiff knew that her paramour, Daniel Thomas, had misappropriated grant monies disbursed by the Forum, and that she failed to inform the Forum about this theft.  The evidence cited by Defendants to establish this claim includes numerous text messages and communications to and from Plaintiff herself in which both Thomas' theft of the grant monies and Plaintiff's reluctance

---

[6] Defendants were required to seek Court intervention on many occasions, resulting in several contempt findings against Plaintiff and her counsel, in an effort to procure this evidence.

[7] The evidence set forth by Defendants indicates that Plaintiff may have been aware of this misappropriation as early as December 2018, but clearly establishes that she knew with certainty by March 2019.

to report the theft to the Forum due to her allegiance to Tommy Robinson, were clearly discussed.  (Doc. 109-2 at pp. 29-31; SUMF ¶¶ 242, 265-71, 273-76).  This evidence, most notably, includes the following message to Tommy Robinson in Plaintiff's own words:

> **I knew money didn't add up after the first demo but it looks like he kept 7k for himself. If MEF finds out I knew and didn't tell them I'm fucked. If I tell them it's not good for you and your future money. It's all so messy. And I don't know what to do.**

SUMF ¶ 270.  This statement is neither explained nor addressed in Plaintiff's Response.

Inexplicably, and illustrative of her credibility on this issue, despite the above, Plaintiff states in her response: "Defendants have failed, entirely, to unearth any evidence to support the unlawful, retaliatory counterclaims in this case.  Defendants [sic] own evidence confirms Lisa Barbounis did everything a reasonable employee can be expected to do, and that at all times, her loyalty was to MEF."  (Doc. No. 125 at p.22).  The breathtaking mendacity of this statement by Plaintiff reveals that she has no legitimate explanation for her actions and no reasonable basis to oppose summary judgment in favor of Defendants.

Her response gets no better from there.  First, Plaintiff claims, without addressing Defendants' citations to numerous cases or supplying any of her own, that Plaintiff had no duty to the Forum because she never held a management or supervisory position.  *Id.*  Despite this, she then claims that she "warned" the Forum that Thomas had failed to account for the grant money.  *Id.* at 22.  She then claims that she "still has no direct knowledge that Daniel Thomas stole any money from the Middle East Forum," and that the Forum "has no evidence that money was stolen."  *Id.* at 24.  These statements are as lacking in cohesiveness as they are in credibility.

Perhaps most damningly, despite attacking the words of Daniel Thomas and Jazmine Bishop as unreliable hearsay,[8] Plaintiff's response **fails to address, explain or even mention**

---

[8] Plaintiff continues to erroneously insist that Defendants' counterclaims are premised entirely on the transcript of a call between Daniel Thomas and Gregg Roman, which Plaintiff describes as hearsay.  Defendants have addressed the admissibility of the Thomas transcript in their response to Plaintiff's motion for summary judgment (Doc. No. 124 at pp. 6) except to note that despite

**her own message to Tommy Robinson quoted above in which she admits that she knew Thomas' stole money and that she failed to tell the Forum.**  And yet, despite this, Plaintiff has the unmitigated gall to claim that "Defendants' entire case is built on a house of lies and deceit to the Court." *Id.* at 26.  This Court should grant the Forum summary judgment on its breach of duty of loyalty and civil conspiracy claims based on Plaintiff's failure to report Thomas' theft. *See, e.g., Sylvester v. Beck,* 406 Pa. 607, 610, 178 A.2d 755, 757 (1962) (an employee's duty "requires that he give the principal all information of the subject matter that comes to his knowledge"); *see also Onorato v. Wissahickon Park, Inc.*, 430 Pa. 416, 244 A.2d 22 (1968) ("no man can serve two masters").

Plaintiff's response to Defendants' arguments in favor of summary judgment on its fraudulent misrepresentation claim fare no better.  In their opening brief and Statement of Undisputed Facts, Defendants set forth record evidence, with citations to documents and sworn testimony, that Plaintiff made several material misrepresentations to the Forum, that the Forum reasonably relied on those misrepresentations, and that the Forum suffered damage as a result. (Doc. No. 109-2 at pp. 32-34).  Plaintiff's response cites no record evidence and no case law, and instead simply reiterates what amounts to a blanket denial of Defendants' claims and a general denial of the facts presented in support of Defendants' motion.  This is plainly insufficient to resist a properly supported motion for summary judgment or create a genuine issue of material fact.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) ("purpose of summary judgment is to 'pierce the pleadings' and to assess the proof in order to see whether there is a genuine need for trial"); *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Engr'rs.*, 982 F.2d 884, 890 (3d Cir.1992) (a non-movant cannot merely rely on vague denials and general allegations to create an issue of material fact in a motion for summary judgment).

---

objecting to Defendants' use of this transcript, Plaintiff herself has no qualms about basing her allegations of felonious conduct on the exact same kind of transcript from the same witness.

## IV.    PLAINTIFF'S DECLARATION AND RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACT IS IMPROPER.

As noted above, Plaintiff's self-serving 201-paragraph declaration,[9] as well as her response to Defendants' statement of undisputed material facts (Doc. No. 125-1), are replete with contradictions, legal argument and other improprieties.  Problems with the declaration include statements which are outside of Plaintiff's personal knowledge and contradict her previous sworn testimony. *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 251 (3d Cir. 2007) ("[A] party may not create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict."); *Baer v. Chase*, 392 F.3d 609, 623–25 (3d Cir.2004) ("a court will disregard an affidavit inconsistent with an affiant's prior deposition testimony when a party moves for summary judgment on the basis of the deposition unless the party relying on the affidavit in opposition to the motion can present a legitimate reason for the discrepancies between the deposition and the affidavit.").  With respect to the response to Defendants' statement of undisputed material facts, Plaintiff fails to respond substantively to dozens of the facts set forth by Defendants, each with appropriate citations to the record, and instead unilaterally deems those facts as "not material."  The issues with these documents are far greater, and far more extensive, than could ever be addressed by Defendants in this short, page-limited reply brief, but Defendants are compelled to note, for the record, a few of their many objections to these improper submissions here.[10]

---

[9] Defendants also note that, pursuant to this Court's Order of November 23, 2020, in which the Court sanctioned Plaintiff and her counsel for continuing discovery violations, Plaintiff is "barred from making affirmative use of any document that she does not produce on or before the close of discovery on November 25, 2020."  (Doc. No. 82).  Plaintiff never produced her declaration prior to filing it on April 20, 2021.

[10] Pending the close of the summary judgment briefing process, and/or in the event of other inconsistent or contradictory testimony provided by Plaintiff in connection with her submissions, Defendants' reserve the right to move to strike Plaintiff's affidavit(s) under the sham affidavit doctrine.

Respectfully submitted,

_/s/ Jonathan R. Cavalier_                                    _/s/ Sidney L. Gold_

| | |
|---|---|
| Jonathan R. Cavalier | Sidney L. Gold |
| Leigh Ann Benson | William Rieser |
| Cozen O'Connor | Sidney L. Gold & Associates, P.C. |
| 1650 Market Street, Suite 2800 | 1835 Market Street, Suite 515 |
| Philadelphia, PA  19103 | Philadelphia, PA 19103 |
| (215) 446-0031 | (215) 569-1999 |
| | |
| *Attorneys for Defendant* | *Attorneys for Defendant* |
| *The Middle East Forum,* | *Gregg Roman* |
| *Daniel Pipes and Gregg Roman* | |

Dated: May 7, 2021

### <u>CERTIFICATE OF SERVICE</u>

I, Jonathan R. Cavalier, hereby certify that on May 7, 2021, I served upon all counsel of record a true and correct copy of Defendants' Reply Brief in Support of Its Omnibus Motion For Summary Judgment via the Court's ECF filing system.

*/s/ Jonathan R. Cavalier*
Jonathan R. Cavalier
