**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LISA BARBOUNIS | : | CIVIL ACTION |
| | : | NO. 2:19-cv-05030-JDW |
| Plaintiff, | : | NO. 2:20-cv-02946 |
| -vs- | : | |
| | : | |
| THE MIDDLE EAST FORUM, et al. | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS' SUR-REPLY IN FURTHER OPPOSITION TO**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**I.     INTRODUCTION**

Defendants/Counterclaim Plaintiff The Middle East Forum (the "Forum"), along with Defendants Daniel Pipes and Gregg Roman (collectively, "Defendants"), hereby submit this short sur-reply brief to address several of the inaccuracies and misrepresentations in Plaintiff's reply brief. Stripped of its inflammatory rhetoric, Plaintiff's reply is devoid of any substantive response to Defendants' arguments and fails to support Plaintiff's motion for summary judgment on the Forum's counterclaims. Instead, Plaintiff's reply consists of petty quibbles with portions of Defendants' exhaustive factual recitation (which is properly supported with citations to record evidence) and arguments that misapprehend the law or misstate the facts. At bottom, Plaintiff fails to establish an entitlement to summary judgment on any of the Forum's counterclaims.

**II.    ARGUMENT**

    **A.     Daniel Thomas' Statement is Admissible**

Plaintiff's primary argument remains that Daniel Thomas' Statement is somehow inadmissible hearsay, and that this somehow entitles her to summary judgment. (Doc. No. 129 at pp. 3-5). Plaintiff's argument misses the mark for multiple reasons. <u>First</u>, as set forth at length in Defendants' original opposition brief, Thomas' statement falls squarely within multiple

1

exceptions to the hearsay rule. (Doc. No. 124 at pp. 5-7).[1]  <u>Second</u>, even if Thomas' statement was hearsay without an exception, it would still be admissible because "[i]n this circuit, hearsay statements can be considered on a motion for summary judgment if they are capable of admission at trial." *Shelton v. Univ. of Med. & Dentistry of N.J.*, 223 F.3d 220, 223 n.2 (3d Cir. 2000); *Robinson v. Hartzell Propeller Inc.*, 326 F. Supp. 2d 631, 645 (E.D. Pa. 2004) ("[H]earsay evidence produced in an affidavit opposing summary judgment may be considered if the out-of-court declarant could later present that evidence through direct testimony[.]"). Here, Thomas could potentially appear and testify at trial, and as set forth in its responsive briefing, Defendants are actively making efforts to procure his appearance. (Doc. No. 124 at p.6). Therefore, this statement is admissible for purposes of summary judgment.

Moreover, even if Thomas' statement was inadmissible, Defendants have supplied ample evidence to support their claims, including many express **admissions** from the Plaintiff herself. *See* Defendants' SUMF, Doc. No. 109-3 at ¶¶ at ¶¶ 184-354. These admissions include multiple instances wherein Plaintiff herself (1) acknowledged to a third party that she knew that Thomas has misappropriated the Forum's funds; (2) recognized that she had an obligation to inform the Forum of her knowledge concerning the theft; (3) that informing the Forum could harm Tommy Robinson and his ability to procure additional funds from the Forum. *See, e.g.,* SUMF ¶¶ 242, 265-71). In short, even if the Thomas statement were properly excludable (and Defendants respectfully submit that it is not), Plaintiff nevertheless falls far short of carrying her burden to show that she is entitled to summary judgment on the Forum's counterclaims.

---

[1] Plaintiff strangely claims that Defendant Roman made a statement about "what Daniel Thomas said…" (Doc. No. 129 at p. 3). However, Defendant Roman made no such statement and it is unclear from Plaintiff's briefing, which lacks any citation to record evidence for this assertion, what "statement" Plaintiff claims to be referring to.

### B. Plaintiff Deliberately Misstates the Testimony and Evidence of Record

Plaintiff repeatedly misstates the record throughout her reply brief. For instance, Plaintiff focuses almost exclusively on the time period of June 2018 through October of 2018. (Doc. No. 129 at p. 7-12). Plaintiff's argument is a red herring, though an understandable one, as confining her focus to this period enables Plaintiff to avoid confronting the clear record evidence of her breach of duty. The relevant time frame begins in March 2019, when Plaintiff **admitted** that she knew Thomas stole money from MEF.

According to Plaintiff's own words, addressed to Bishop:

> And I didn't know about the money that he [Thomas] took from MEF until you told me. It was always in the back of my mind because it didn't add up and the whole vinney and you thing but he said you were crazy and would do anything to destroy him and I wanted to believe him. **Now that I know I'm obligated to tell my work. What do I do? That's theft.**

SUMF ¶ 266 (emphasis added). She followed up with a clear acknowledgement that Thomas had misappropriated $7,000 from The Forum: "**That's 7 thousand dollars he stole from MEF and Tommy.**" SUMF ¶¶ 267-68 (emphasis added).

Later that same day, Plaintiff made a similar admission to Robinson:

> I recently found out some potentially messy things that have to deal with demos MEF and I need to back away until I figure it all out. **And if I tell MEF which I think I'm obligated to it's not good.** Plus I have jaz harassing me. I'm out.
> . . .
> **I knew money didn't add up after the first demo but it looks like he kept 7k for himself. If MEF finds out I knew and didn't tell them I'm fucked. If I tell them it's not good for you and your future money. It's all so messy. And I don't know what to do.**

SUMF ¶¶ 269 and 270, respectively (emphasis added).

That Plaintiff does not confront these messages, written by her own hand, in her reply nor in her response to Defendants' own motion for summary judgment, is telling. And the reason for

3

that failure, and for Plaintiff's misdirected focus on an irrelevant time-period, is both simple and obvious: there is no legitimate answer to these messages through which Plaintiff can avoid liability.

      C.      **Plaintiff Had A Duty To Inform The Forum About Her Knowledge Of Daniel Thomas' Theft Of The Forum's Funds.**

Despite the communications above in which she acknowledges the contrary, Plaintiff insists in her reply that she there exists "no information . . . that triggers a legal duty to report, yet again, to Defendants, Lisa Barbounis' warnings that Daniel Thomas may not have properly accounted for all of the granted money." (Doc. No. 129 at p.10).

As a threshold matter, not even Plaintiff herself believes that she appropriately or adequately reported Thomas' theft to the Forum. If she did, she never would have told Bishop in March of 2019 that, "Now that I know, I'm obligated to tell my work," nor would she have told Robinson that she "knew money didn't add up after the first demo but it looks like he kept 7k for himself," and that "If MEF finds out I knew and didn't tell them, I'm fucked." SUMF ¶¶ 269 and 270. Plaintiff's current excuse for not reporting Thomas' theft contradicts her own words.[2]

Furthermore, Plaintiff had a fiduciary duty, as Director of Communications for the Forum, to report this theft of funds. *See, e.g., Synthes, Inc. v. Emerge Med., Inc.,* 25 F. Supp. 3d 617, 667 (E.D. Pa. 2014) ("when a person authorizes another to act as his or her agent, the relationship between the two may be characterized as a fiduciary relationship"). Instead, she contends that she was never actually promoted to a director position, and that she was in fact a glorified secretary who was "never provided with the role Director of Communications in substance or meaningfulness." (Doc. No. 125-3 at ¶¶ 72-73). Plaintiff's self-serving diminution of her title and responsibilities is belied by her own resume and job application to Congress, wherein she claimed

---

[2] And yet, in her sworn declaration, Plaintiff avers: "To this day, I have no direct knowledge of any money that was taken by Daniel Thomas. I do not know if he stole kept [sic] money for himself in manner [sic] that would violate the agreement between MEF Daniel Thomas."

the title and responsibilities as Director of Communications for the Forum, and ultimately obtained a job as "Director of Communications" for a Congressman. SUMF ¶ 327-29.

In any event, whether Plaintiff in fact held the title and responsibilities of Director is ultimately immaterial, as "Pennsylvania law dictates that an employee, as the agent of his employer, owes his employer a duty of loyalty." *Synthes, Inc.*, 25 F. Supp. 3d at 667; *see also PNC Mortgage v. Superior Mortgage Corp.*, 2012 WL 628000, at *26 (E.D. Pa. Feb. 27, 2012) ("Pennsylvania also recognizes that employees, as agents of their employer, owe fiduciary duties of loyalty."); *Tyler v. O'Neill*, 994 F. Supp. 603, 612 (E.D. Pa. 1998) ("An employee, in turn, as an agent of his employer, is considered a fiduciary with respect to matters within the scope of his agency."). At all times material to the Forum's counterclaims, Plaintiff was an employee of the Forum. As such, as soon as Plaintiff knew, or reasonably suspected, that Thomas stole money from the Forum, she was obligated to report it to her supervisors or management. *See, e.g., Sylvester v. Beck,* 406 Pa. 607, 610, 178 A.2d 755, 757 (1962) (an employee's duty "requires that he give the principal all information of the subject matter that comes to his knowledge"); *see also Onorato v. Wissahickon Park, Inc.*, 430 Pa. 416, 244 A.2d 22 (1968) ("no man can serve two masters"); *Reading Radio, Inc. v. Fink,* 833 A.2d 199, 211 (Pa. Super. 2003) (an employee may not "act[ ] for a person or entity whose interests conflict[ ] with [the employer].").

Thus, whatever her job title, as an employee of the Forum, she was an "agent" of the Forum and owed them a duty of loyalty regardless of her job title. *See generally Synthes, Inc.,* 25 F. Supp. 3d at 667; *Bert Co. v. Turk*, 2021 WL 1783486, *36 (Pa. Super. May 5, 2021) (breach of fiduciary duty claims premised on tort law duties that arise out of employment); *AmQuip Crane Rental, LLC v. Crane & Rig Servs., LLC*, 199 A.3d 904, 913 (Pa. Super. 2018) (same). Plaintiff herself recognized this duty in her communications with Bishop and Robinson, and she breached that duty

when she failed to report that her paramour had taken her employer's money. *Scaife Co. v. Rockwell-Standard Corp.*, 446 Pa. 280, 285–86, 285 A.2d 451, 454 (1971) ("fraudulent misrepresentation can take many forms: fraud consists in anything calculated to deceive, whether by single act or combination, or by suppression of truth, or a suggestion of what is false, whether it be direct falsehood or by innuendo, by speech or silence, word or mouth, of look or gesture"). In that failure, she caused damage to the Forum, and is liable for the breach.

> **D.   The "Secret Cash [sic]" Of Documents To Which Plaintiff Refers Is Not Secret, But Was Actually Produced By Plaintiff Herself.**

Once again, throughout her reply brief, Plaintiff casually and without basis, evidence or citation to the record, accuses Defendants and their counsel of contemptible conduct, ethical violations and criminal behavior. Defendants have addressed some of these baseless and unsupported claims previously[3] and have become somewhat calloused to such claims by Plaintiff. However, Defendants are compelled to address Plaintiff's latest baseless claim in which Plaintiff cavalierly asserts that "Defendants have kept a secret cash [sic] of documents which they did not produce and have used solely for their benefit in connection with the instant motions…" (Doc. No. 129 at pp.10-11).

Accusing Defendants and their counsel of this kind of unethical conduct without evidence or support would be reprehensible even in a vacuum. *See, e.g., Cannon v. Cherry Hill Toyota, Inc.*, 190 F.R.D. 147, 161 (D.N.J. 1999) (attorney "has violated a myriad of professional rules of conduct and rules of procedure by his conduct in this matter. . . and generally has behaved in an unprofessional manner by making unsubstantiated personal attacks [relating to the withholding

---

[3] For example, Plaintiff has repeatedly accused Roman of attempting to "buy" the testimony of Daniel Thomas based solely on a transcript which, according to Plaintiff herself, would be inadmissible and unreliable hearsay from an untrustworthy witness. (*See, e.g.,* Doc. No. 130 at p.10 n.8).

6

of information] on [opposing party] and her attorneys"); *Thomason v. Norman E. Lehrer, P.C.,* 182 F.R.D. 121, 123 (D.N.J. 1998) ("Lawyers are not free, like loose cannons, to fire at will upon any target of opportunity which appears on the legal landscape."). Here, however, the sad irony in Plaintiff accusing Defendants of intentionally thwarting the discovery process, when she herself, along with her counsel, have been repeatedly sanctioned and found to be in contempt by this Court for discovery violations, is made doubly so by the fact that the "secret cash" to which Plaintiff refers is actually documents that she herself produced in response to this Court's orders.

As this Court will recall, Plaintiff was ordered, after a long string of motion practice made necessary by her repeated failures to produce documents, to "engage an electronic discovery vendor to complete Plaintiff's production of documents in this matter." (Doc. No. 85 at p.2). Despite this order, Plaintiff refused to hire such a vendor, and instead completed her production by simply dumping the entire contents of her digital devices on Defendants and leaving it to Defendants to sort through – *this* is the evidence on which Defendants rely for its motion for summary judgment and to which Defendants cite in the majority of its Statement of Undisputed Material Facts in support of its counterclaims.

The fact that Plaintiff, through her own neglect and inability to follow court orders, does not have an understanding of the documents that she herself produced in this matter does not render them secret, nor does that lack of understanding justify accusations of unethical behavior by Defendants or their counsel.

### III. CONCLUSION

For the reasons set forth herein above and in their original opposition, Defendants respectfully request that the Court deny Plaintiff's Motion for Summary Judgment in its entirety and grant summary judgment in favor of the Forum on its counterclaims.

Respectfully submitted,

By: */s/ Jonathan R. Cavalier*
Jonathan R. Cavalier
Leigh Ann Benson
COZEN O'CONNOR
One Liberty Place
1650 Market Street
Philadelphia, PA 19103
Phone: (215) 665-2000

*Attorneys for Defendant*
*The Middle East Forum,*
*Daniel Pipes and Gregg Roman*

By: */s/ Sidney L. Gold*
Sidney L. Gold
William Rieser
SIDNEY L. GOLD & ASSOCIATES P.C.
1835 Market Street, Suite 515
Philadelphia, PA 19103
(215) 569-1999

*Attorneys for Defendant*
*Gregg Roman*

DATED: May 11, 2021