## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| LISA BARBOUNIS, | : | NO. 2:19-cv-05030-JDW |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| THE MIDDLE EAST FORUM, et al. | : | |
| | : | |
| Defendant. | : | |
| | : | |

**PLAINTIFF, LISA BARBOUNIS' MOTION TO HOLD  DEFENDANTS, THE MIDDLE EAST FORUM, GREG ROMAN, AND DANIEL PIPES IN CONTEMPT FOR FAILURE TO COMPLY WITH THE COURT'S DECEMBER 4, 2020 ORDER AND FOR DEFENDANTS' DISREGARD OF THE FEDERAL RULES OF CIVIL PROCEDURE AND THE RESULTING DISCOVERY VIOLATIONS TO PLAINTIFF'S PREDJUCICE**

Plaintiff, Lisa Reynolds-Barbounis ("Ms. Barbounis" or "Plaintiff") by and through her attorney, Seth D. Carson, hereby moves the Court for entry of the proposed Order of Contempt against Defendants, The Middle East Forum, Greg Roman, and Daniel Pipes and requests the Court impose sanctions for Defendants' disregard of the Court's December 4, 2020 Order to maintain Plaintiff's telephone records Attorney's Eyes Only ("AEO") and due to Defendants disregard of the Federal Rules of Civil Procedure and the resulting discovery violations which has led to the severe and irreversible prejudice of Plaintiff, Lisa Barbounis.

Accompanying this Motion is Plaintiff's Memorandum.  For the reasons set forth within, Plaintiff respectfully requests the Court enter an Order:

a.      Finding Defendants, Middle East Forum, Greg Roman and Daniel Pipes

(collectively "Defendants") in civil contempt for failing to comply with a

discovery order of this Court and for blatant disregard for the Federal Rules of Civil Procedure to Plaintiff's severe and irreversible prejudice.

b.    Finding Defendants counsel in civil contempt for failing to comply with a discovery order of this Court.

c.    Disregard of any and all documents that were not produced during discovery so that Defendants may not rely upon those documents in any manner including dispositive motions and trial.

d.    Dismissal with prejudice of all counterclaims as Defendants specifically withheld evidence related to Defendants' counterclaims.

e.    In the alternative issuing a jury instruction that informs the jury of Defendants' efforts to hide materials in discovery and that allows the jury to presume Defendants were successful in preventing the production of evidence that would prove Plaintiff's claims and disprove Defendants' counterclaims.

f.    Ordering all AEO exhibits identified in this Motion and Memorandum to be removed from the Federal Docket.

g.    Finding that Defendants violations of the Court's December 4, 2020 discovery Order has resulted in damages to Plaintiff, Lisa Barbounis.

h.    Ordering Defendants and Defendants' counsel are to pay all costs and fees for the work Plaintiff and her counsel had to perform to uncover the gravity of the discovery violations and Defendants disregard of the Court's Order.

i.    Ordering Defendants and her counsel are to pay Plaintiff's fees and costs incurred as a result of filing this motion including all preparation that had to be performed to determine the extent of Defendants violations.

j.      Setting the matter for a determination of attorneys' fees and costs for a date certain; and

k.      Granting any and all such other relief as this Court deems proper; or

l.      Finding that Defendants' failure to engage in the discovery process has prohibited Plaintiff, Lisa Barbounis from discovery to which Plaintiff is entitled to prove her claims and disprove Defendants' counterclaims.

m.      Finding for Plaintiff, Lisa Barbounis and against Defendants dispositive motions.

**WHEREFORE**, Plaintiff respectfully requests that the Court grant Plaintiff's Motion and relief as set forth above.

BY: _____/s/ Seth D. Carson_____
             Seth D. Carson, Esquire
             Derek Smith Law Group, PLLC
             1835 Market Street, Suite 2950
             Philadelphia, PA 19103
             Phone: 215.391.4790
             Email: Seth@ DerekSmithLaw.com
             Counsel for Plaintiff

DATED: May 18, 2021

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| LISA BARBOUNIS, | : | NO. 2:19-cv-05030-JDW |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| THE MIDDLE EAST FORUM, et al. | : | |
| | : | |
| Defendant. | : | |
| | : | |

**PLAINTIFF, LISA BARBOUNIS' MEMORANDUM TO HOLD  DEFENDANTS, THE MIDDLE EAST FORUM, GREG ROMAN, AND DANIEL PIPES IN CONTEMPT FOR FAILURE TO COMPLY WITH THE COURT'S DECEMBER 4, 2020 ORDER AND FOR DISREGARD OF THE FEDERAL RULES OF CIVIL PROCEDURE AND THE RESULTING DISCOVERY VIOLATIONS TO PLAINTIFF'S PREDJUCICE**

Plaintiff, Lisa Reynolds-Barbounis ("Ms. Barbounis" or "Plaintiff") by and through her attorney, Seth D. Carson, hereby submits the following Memorandum of Law and Fact in support of Plaintiff's Motion to hold Defendants in contempt for violation of the Court's December 4, 2020 Order and for Defendants' disregard of the Federal Rules of Civil Procedure to Plaintiff's severe and irreversible prejudice.

## I. PRELIMINARY STATEMENT

Defendants have blatantly disregarded the Federal Rules of Civil Procedure and the Court's December 4, 2020 Order resulting in severe prejudice to Plaintiff's case and damages to Plaintiff.  The extent of injury and damages caused by Defendants' conduct cannot be understated.  In a December 4, 2020, Order, the honorable Court compelled Plaintiff, Lisa Barbounis to produce almost every electronic communication she has ever sent or received.  It did not matter when communications were sent, or with whom the communications were with.  It

did not matter what device or account the communications came from.  Plaintiff, Lisa Barbounis was compelled to produce almost every electronic communication in her devices and accounts dating to before the events that gave rise to Plaintiff's claims took place.  In issuing the December 4, 2020 Order, the Court adopted 25 keywords from another case involving the same parties.  Plaintiff, Lisa Barbounis' motion for reconsideration to protect her personal, private communications with family and friends was denied.  Still, the Court did not disregard entirely Plaintiff's arguments that the Court's discovery Order would result in private, personal, sensitive, and irrelevant information being produced to Defendants.  So the Court Ordered safeguards in the form of an "Attorney's Eyes-Only" ("AEO") designation for all electronic communications.  The AEO designation would remain in place unless lifted by a process defined in the December 4, 2020 Order.  Notwithstanding, the exhibits Defendants have relied upon in filing and responding to dispositive motions have included many of these AEO communications *in their entirety*, that are now available to the public on the docket.  In-so-doing,  Defendants disregarded the AEO designation and the December 4, 2020 Order.  In several instances, Defendants made available to the public, communication-threads, dating back to 2017, before Lisa Barbounis began her employment with the Middle East Forum.  In total, Defendants have filed thousands of pages of communication-threads on the public docket with no justification or cause.  Defendants even filed a 969-page, AEO text thread between Lisa Barbounis and her mother on the public docket *twice*.  With complete disregard to Plaintiff's constitutional right to privacy, Defendants have illegally doxed Lisa Barbounis, her family, friends and acquaintances. This violation has resulted in injury to Plaintiff and the friends and family whose personal private information is now available to anyone with an internet connection.  Examples of the personal, private information available to the public includes multiple home addresses, phone

numbers, account usernames, account passwords, naked pictures of private parts, discussions of highly personal, sometimes sexual, subject matter, including private financial and family related information that has no relation to any argument offered by Defendants' accompanying memorandum.[1]

The second violation is equally grave and has resulted in irreversible prejudice to Plaintiff's case. After the close of discovery, Defendants filed 146 exhibits along with Defendants' motions for summary judgment. After reviewing these exhibits, Plaintiff has confirms that some of the most important evidence in this case was withheld from Plaintiff throughout the discovery process. Simply put, Defendants have compiled a secret stash of highly relevant, sometimes exculpatory to Defendants' counterclaims, pile of evidence that Defendants sought to withhold from Plaintiff, Lisa Barbounis. The result: severe and irreversible prejudice to Plaintiff's case. Evidence that Defendants understood the grave discovery violation exists in the very exhibits attached to Defendants' dispositive motions. Defendants' Exhibits 1 through 146 are all without Bates Numbering. Apparently, Defendants did not draw their exhibits from the same pool of documents that were turned over to Plaintiff during discovery. Accordingly, many of the exhibits attached to Defendants' dispositive motions were never produced. It is difficult to determine which are which because Defendants removed all Bates numbering from all exhibits. It took Plaintiff's counsel weeks to sift through all the discovery to determine exactly what evidence was denied to Plaintiff until now.

Throughout discovery, Defendants produced 11,329 documents. A cursory review of these documents confirms Defendants' bad faith. Most of these 11,329 documents are copies of other documents that were produced repeatedly to confuse Plaintiff. One email was produced

---

[1] Plaintiff's counsel will not add gasoline to the fire by citing to specific examples on the docket, however, Plaintiff can offer many examples in a sealed or private letter if the Court allows.

more than sixty (60) times.  Defendants produced hundreds of blank pages and pages with little

to no substance, other than the Bates numbering.  But at no time did Plaintiff have reason to

believe that Defendants were keeping a secret stash of evidence to only use against Plaintiff, Lisa

Barbounis if the need arose.  It seems clear that if Defendants believed a document could help

Plaintiff, or hurt Defendants, the document was removed from the production and placed in

Defendants secret stash.  Accordingly, Plaintiff, Lisa Barbounis never received the Minutes and

Notes from the November 4, 2018 group meeting when the office discussed Defendant, Greg

Roman's sexual harassment and sex and gender discrimination.  Defendant, Daniel Pipes'

management of this group meeting is relevant.  After reviewing the Meeting Notes and Minutes

(Exhibit 52) for the first time attached to Defendants' Motion For Summary Judgment

(Document 111-2, Exhibit 52), the Meeting Notes and Minutes do indeed support Plaintiff's

case.  Exhibit 52 supports several arguments Plaintiff may make: (1) that Defendant, Greg

Roman's sister, Stacy Roman was permitted to attend the meeting, (2) that Stacy Roman spent

the meeting blaming the victims of her brother's sexual harassment for wearing "short skirts,"

and (3) that Defendant, Daniel Pipes began the meeting by admonishing the victims of

Defendant, Greg Roman for surprising Defendant, Pipes with the reports of sexual harassment.

Defendants never produced this evidence, despite Plaintiff's First and Second Requests for

Production of Documents. Attached as Exhibits A and B respectively.  Accordingly, this

evidence was not available during the depositions of Defendant, Daniel Pipes or Defendant, Greg

Roman.  This evidence was not available during the depositions of witnesses who attended the

meeting like Mark Fink.  Plaintiff is severely prejudiced by Defendants' discovery violation in

withholding the Meeting Notes and Minutes and there is no way to un-ring this bell.  This is but

one example of Defendants grave discovery violations.

Another example of evidence that Defendants withheld from Plaintiff, Lisa Barbounis is the June 22, 2018, email from Lisa Barbounis to Defendant, Greg Roman (Exhibit 73). Defendants counterclaims are based almost entirely on an argument that Lisa Barbounis failed to inform Defendants about misappropriated money granted to Daniel Thomas. The June 22, 2018 email from Lisa Barbounis confirms that Lisa Barbounis did in fact notify Defendants that Daniel Thomas misappropriated money. This one email may disprove every counterclaim brought by Defendants. And Defendants chose not to produce it. Defendants produced several other emails from Lisa Barbounis' MEF email account from June 2018, including emails within days before and days after the June 22, 2018 email.

What else are Defendants hiding? Lisa Barbounis believes there are other communications where she discussed with Greg Roman and Daniel Pipes her suspicious about Daniel Thomas. The only reason we now know about the June 22, 2018 email, is because Defendants conduct is so brazen they attached it to Defendants' dispositive motion (Document 111-3, Exhibit 73) and filed it. Astonishingly, Defendants' Statement of Facts (Document 109-3 Paragraph 202) misrepresents the email claiming it proves Lisa Barbounis' guilty knowledge. Again, there is no way to remedy the prejudice caused by Defendants' refusal to produce discoverable evidence. Due to the severe prejudice caused by Defendants' discovery violations and disregard for the Court's December 4, 2020 Order, Plaintiff requests the Court grant Plaintiff's Motion and assess the requested relief.

## II. **STANDARD OF REVIEW**

Rule 37 of the Federal Rules of Civil Procedure provides a mechanism by which a party can seek sanctions for another's failure to cooperate in discovery. Ms. Barbounis and her counsel have now routinely set examples as to how to utterly fail to cooperate in discovery. Under this

rule, "if a party…fails to obey an order to provide or permit discovery…the court where the action is pending may issue further just orders" that include orders:

    i.    directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

    ii.    prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

    iii.    striking pleadings in whole or in part;

    iv.    staying further proceedings until the order is obeyed;

    v.    dismissing the action or proceeding in whole or in part;

    vi.    rendering a default judgment against the disobedient party; or

    vii.    treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

The power to punish contempt "is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them by law.  Without it they are mere boards of arbitration, whose judgments and decrees would be only advisory." Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 450 (1911).  The Court has broad discretion to fashion contempt sanctions. See Northeast Women's Center, Inc. v. McMonagle, 939 F.2d 57, 70 (3d Cir. 1991); Delaware Valley Citizens' Council for Clean Air v. Commonwealth of Pennsylvania, 678 F.2d 470, 478 (3d Cir.), cert. denied, 459 U.S. 963 (1982); MacDermid, Inc. v. Selle, 577 F. Supp. 2d 599, 601 (D. Conn. 2008).  For example, the Court can impose fines, see MacDermid, 577 F. Supp. 2d at 602; Howe Laboratories, Inc. v. Stevick, 1997 WL 340916 at *1 (E.D.N.Y. June 18, 1997), or order the incarceration of the party who has violated the Court's order. See Northeast Women's Center, 939 F.2d at 70; Delaware Valley Citizens' Council, 678 F.2d at 478; Clearone Communications, Inc. v. Chiang, 670 F. Supp. 2d 1248, 1251 (D. Utah 2009). Finally, the Court can award attorneys' fees as well as the other

expenses (including the expenses of a party's time) involved in demonstrating a violation of the Court's order. See Robin Woods, 28 F.3d at 401.

Plaintiff, Lisa Barbounis and her counsel do not lightly seek contempt. Plaintiff does not wish to burden the Court with motions that could be avoided; however, Plaintiff cannot conceive of a remedy for the prejudice caused by Defendants' discovery violations described herein.   The prejudice caused by Defendants' refusal to produce critical evidence during the discovery process significant.   The parties have passed the discovery phase where the evidence could have been useful.  Plaintiff suggests the only reason Defendants can use this evidence in dispositive motions is because it was withheld during discovery.  Defendants' can misrepresent the evidence because there were no questions about it during depositions.  Defendants are not locked into a truthful account.  Defendants can make up any story they wish about what the evidence indicates.  And that is exactly what Defendants have done.  But possibly the most concerning implication is that Defendants have repeatedly presented a negative evidence theory of this case. In Defendants proffered "Statement of Undisputed Facts," Defendants have suggested that the lack of evidence presented by Lisa Barbounis should be viewed as evidence in and of itself. Defendants certainly intend to present a similar theory to the jury.  Now that Defendants' strategy is laid bare, to withhold evidence that could be helpful to Plaintiff's case, Defendants cannot be permitted to present this type of argument to the jury.  Moreover, the jury has a right to know that Defendants withheld crucial evidence during discovery. The jury should be permitted to conclude that Defendants have been successful to some regard in this endeavor.  The jury should be permitted to conclude that the lack of evidence may be related to Defendants' decision to withhold information during the discovery phase.  Even this will not wholly cure the prejudice caused by Defendants' conduct.

III. <u>ARGUMENT</u>

**A. Defendants have made available to the public, several electronic communications with an AEO designation, by filing them on the docket with no redactions or limits.**

To fully understand the damage caused by Defendants conduct requires an accounting of the information/exhibits filed on the public docket.  The following Exhibits were attached to Defendants' Motion for Summary Judgment on Plaintiff's claims and Defendants' counterclaims.

**1) Exhibit 12 (Document 111-1): Exhibit 12 is *976 Pages* of text communications from May 2017 to January 2020 between Lisa Barbounis and her mother Jane Reynolds.**

Defendants' proffered Statement of Undisputed Facts (Document 109-3) cites to Exhibit 12 only one time, in Paragraph 76.  Even then, Defendants only cited to photos and not text. Defendants had no reason to make available to the public, three years of personal private communications between a mother and her daughter.  This is particularly troubling when Exhibit 13 are photos Plaintiff took while in Israel. It is even more troubling when Exhibit 14 is the same **976-page text thread** between Lisa Barbounis and her mother, ***made available to the public again***.  It does not appear that Defendants even cited to Exhibit 14, so there is no justification for filing this personal, private, AEO thread a second time.  Even if the thread is removed from the docket, there is no way to determine how many times it was downloaded and by whom. Defendants, Greg Roman and Daniel Pipes may have downloaded it, along with anyone else in the world.  This is specifically the type of communication that led to the Court's AEO designation.  The type of private information that a mother and daughter may discuss over the years should remain with the mother and daughter and certainly should not be made public by an

adverse party.  Today, Lisa Barbounis and Jane Reynolds entire conversation spanning three

years is available to the public, ***twice, without any justification***.  Exhibits 34, 44, and 53

highlight Defendants' bad faith in uploading the entire 976 pages to the public docket (Exhibit

12 and 14).  Exhibits 34, 44, and 53 are one-to-two-page excerpts from precisely the same text

thread between Lisa Barbounis and Jane Reynolds.  In communications with Matthew Bennett

and Greg Roman, Defendants only used excerpts, and protected the privacy of their clients.  With

sensitive threads like those with Lisa Barbounis' mother, Defendants used excerpts when they

wanted to highlight the cited text.  Defendants also uploaded the entire thread twice, for no

reason.

2)  **Exhibits 38, 48, and 75 (Document 111-2 and 111-3): While these text communications are excerpts, they bears mentioning because of their legally protected status in addition to the AEO designation.**

These communications are between husband and wife and subject to marital privilege.

Defendants should never have received years of private communications, legally protected,

between husband and wife.  Plaintiff did not waive her right to claim marital privilege.

Defendants should not be permitted to rely upon these communications in any manner, much less

upload them to the public docket for the world to view.  The marital privilege extends to

communications solely between husband and wife, made during the marriage.  See Wolfle v.

United States, 291 U.S. 7, 54 S. Ct. 279, 78 L. Ed. 617 (1934) ("**Communications between

spouses privately made are generally assumed to have been intended to be confidential, and

hence privileged…**"). And because the AEO designation was never lifted from these

communications, Defendants violated the Court's Order in making them available to the public.

3) **Exhibit 55 (Document 111-2):  Exhibit 55 is a 1,217-page AEO protected communication between Lisa Barbounis and Daniel Thomas.**

The communication contains highly sensitive information including unredacted, naked photos of body parts.  It also includes highly sensitive, personal, private communications that are unrelated to the case.  There was no reason to upload this entire 1,217-page document other than to subject Lisa Barbounis to embarrassment, ridicule, and retaliation.  Defendants only specifically cited to three pages out of 1,217.

4) **Exhibit 56 (Document 111-2): Exhibit 56 is a two-page AEO protected communication that was posted on the public docket.**

5) **Exhibit 104 (Document 111-3): is another AEO protected communication that was filed on the public docket.**

6) **Exhibit 116 (Document 111-4): Exhibit 116 is another AEO protected communication, this one between Lisa Barbounis and Tommy Robinson.**

Here, Defendants uploaded the entire 699-page document to the public docket without cause.  Defendants cited only one page of this 699-page document only one time, in Paragraph 288 of Defendants' proffered Statement of Undisputed Facts.  This document contains highly sensitive information including personal information, thoughts, views of Lisa Barbounis that were never intended for public consumption.  The Court did not lift the AEO designation.

7) **Exhibit 122 (Document 111-4) is another AEO protected communication that was uploaded to the public docket.**

8) **Exhibit 124 (Document 111-4): This is another highly sensitive, personal, private communication that relates in no way to Defendants' arguments in this case.**

Defendants uploaded the entire 736-page document to the public docket which is now available for public consumption.  By intentionally making this information publicly available, Defendants violated more than the Court's December 4, 2020 Order for AEO protection. Defendants have doxed both Plaintiff, Lisa Barbounis and S. Watson as the information contained in this communication includes home addresses and other sensitive data that was meant to be protected from the public.

9) **Exhibit 127 (Document 111-4) is another AEO communication that was uploaded to the public docket.**

10) **Exhibit 146 (Document 111-5) is another AEO protected communication that contains highly sensitive, personal, private information that was never intended for public consumption.  Here Defendants uploaded the 331-page document but cited to only two pages of the document.**

Defendants cited to other electronic communications in additional to those listed above, however, Defendants clearly targeted specific, embarrassing information to post on the federal docket.  When Defendants identified particularly sensitive, private information, like that between mother and daughter, Defendants abandoned their practice of uploading only the cited pages. Defendants abandoned this principle to make about 5000-pages of highly sensitive, personal, private communications with an AEO designation available to the public, even though the information was not used in Defendants' motions.  Even if this information is removed from the public docket, there is no way to determine the extent of the damage already done.  The issues presented by the grave violations of Plaintiff's constitutional rights are explained by the Sixth Circuit.  In John B. v. Goetz, the Sixth Circuit Court of Appeals explained that the mere act of imaging a personal electronic device raises significant privacy and confidentiality concerns. See John B. v. Goetz ("Plaintiffs are correct that the discovery orders merely call for the imaging of

the relevant media and that the district court has yet to determine how to proceed with respect to the information contained on that media. Nevertheless, the mere imaging of the media, in and of itself, raises privacy and confidentiality concerns. Duplication, by its very nature, increases the risk of improper exposure, whether purposeful or inadvertent. Id. The Court attempted to protect the non-relevant, sometime privileged, personal, private information of Lisa Barbounis but the moment the information was copied by a third-party vender, and produced to an adverse party, that information was compromised. Plaintiff has reason to believe that Defendants have ignored the AEO designation from the very beginning. Defendants produced exhibits during depositions that were subject to the AEO designation in front of the court reporter and all the parties in attendance. Defendants' took no steps to protect the AEO designated information during depositions. Because of Defendants' refusal to consider the Court's December 4, 2020 Order, Plaintiff, Lisa Barbounis' most sensitive, private information is available on the public docket for the world to view.

**B. Defendants maintained a secret stash of documents that were intentionally withheld from Plaintiff, Lisa Barbounis to her severe prejudice.**

In the Preliminary Statement, above, Plaintiff, Lisa Barbounis provided two examples of documents that Defendants refused to produce during discovery. Plaintiff's discovery requests clearly included requests for the Meeting Notes and for Email communications related to Plaintiff's claims and Defendants' counterclaims. A copy of Plaintiff's First and Second Request for Production of Documents is attached as Exhibit A and B, respectively. Defendants' refusal to produce relevant, discoverable, and admissible evidence that supports Plaintiff's claims and contradicts Defendants' counterclaims extends far beyond the two examples provided above. The extent of Defendants' conduct is unknown, because of the very nature of an attempt to bury, hide, and obfuscate responsibility. There are two categories of information in Defendants'

possession: (1) evidence that we know Defendants withheld because it was attached to Defendants' dispositive motions, and (2) evidence we do not know about because it was not attached to Defendants' dispositive motions.  The result is Plaintiff's inability to properly prosecute her sexual harassment case and defend the counterclaims.  Moreover, the process in identifying evidence that Defendants failed to produce during discovery is extremely time consuming, due to Defendants' attempt to hide the violation by removing all Bates numbering from the exhibits.  To date, Plaintiff has identified the following exhibits that were withheld from Plaintiff during discovery.  This list has been provided by Plaintiff to Defendants prior to filing this motion.

1. Exhibit 5 (Document 111-1).
2. Exhibit 6 (Document 111-1).

3. Exhibit 10 (Document 111-1).  Greg Roman did not produce a single text message during discovery.  Defendants informed Plaintiff this was because Greg Roman has so many phones and devices and no longer had access to text threads.  Then, Roman attached several text messages to Defendants' dispositive motions, making is clear that there is discoverable evidence on his devices.

4. Exhibit 19 (Document 111-1).  These are more text messages on Roman's device that were not produced.

5. Exhibit 21 (Document 111-2).  Defendants seem to have sifted through emails sent or received on the MEF email exchange.  Some were produced.  Many were not.  This is an example of an email that Defendants withheld.

6. Exhibit 28 (Document 111-2).  These draft Articles of Incorporation were not produced.  Defendants present Exhibit 28 as evidence Roman intended to start a social welfare corporation during the Summer 2018.

7. Exhibit 29 (Document 111-2).  This is an example of Defendants' bad faith in repurposing evidence to suit Defendants' arguments.  Defendants did produce a snippet from these notes. See Defendants' Production of Documents D0011329.  Defendants did not produce the entire notes.  The part that Defendants did produce

confirms that Defendants are mischaracterizing the evidence.  Roman did not share the entire notes with Lisa Barbounis.  Roman shared 6 lines, out of 3 pages of notes. The 6 lines only notified Lisa Barbounis, who was Roman's secretary at the time, not to use MEF letterhead when referencing the other organization.

8.  Exhibit 31 (Document 111-2).

9.  Exhibit 33 (Document 111-2).  More text messages from Defendant, Greg Roman's device that were not produced.

10. Exhibit 39 (Document 111-2).  More text messages from Defendant, Greg Roman's device that were not produced.

11. Exhibit 43 (Document 111-2).  More text messages from Defendant, Greg Roman's device that were not produced.

12. Exhibit 52 (Document 111-2).  November 4, 2018 Meeting Notes and Minutes. These Meeting Notes and Exhibits are from the day of MEF's group meeting where all the women were ordered to attend and report together in group format Greg Roman's sexual harassment in the workplace.  Defendants' decision to withhold this information from Plaintiff during discovery is highly concerning resulting in clear prejudice to Plaintiff's case.

13. Exhibit 57 (Document 111-2).  Defendants have repeatedly mischaracterized issues related to money .  These documents confirm that Lisa Barbounis did not receive any increase in pay when Defendants claim to have promoted Ms. Barbounis to Director of Communications.  Lisa Barbounis has consistently testified the promotion was in name only and Ms. Barbounis was never a Director.  These income verification records confirm Plaintiff's account.

14. Exhibit 58 (Document 111-2).  Defendants have mischaracterized this evidence in an effort to mislead the Court and ultimately a jury.  These documents confirm that Lisa Barbounis was acting on behalf of Middle East Forum when this email was sent.  Of course, Plaintiff was denied the opportunity to question Defendants about this evidence because it was not produced.  The email reads, "I was hoping you might be available to grab a quick coffee *to discuss the Middle East Forum's work*, potential commentary columns…" (Document 111-2, Exhibit 58).

15. Exhibit 59 (Document 111-2).  Exhibit 59 also relates to Lisa Barbounis' static pay and the promotion to Director of Communications being a promotion in name only.

16. Exhibit 68 (Document 111-3).  Defendants refused to produce several critical pieces
of evidence related to Defendants' counterclaims.  Plaintiff's Second Request for
Production of Documents targeted precisely this type of information.  Frankly,
Defendants unwillingness to produce documents in connection with Defendants'
counterclaims is staggering.  Plaintiff propounded a Second Set of Document
Requests to Defendants (Exhibit B) specifically to determine what evidence
Defendants relied upon in filing the counterclaims.  See Exhibit B.  Defendants
simply refused to produce evidence related to Defendants' counterclaims as
demonstrated herein.   This email confirms that Lisa Barbounis reported to Greg
Roman information upon which Greg Roman made a decision to work with Daniel
Thomas.   This email confirms Lisa Barbounis had little to do with the decision other
than providing her supervisor with information.

17. Exhibit 69 (Document 111-3).  This is another piece of evidence related to
Defendants' counterclaims that was withheld.  Defendants even withheld the contract
upon which all of Defendants' counterclaims rests.  Then Defendants mislead the
Court about Exhibit 69.  Paragraph 195 of Defendants' Statement of Fact (Document
109-3) states that Lisa Barbounis delivered the contract to Defendants.  Defendants
tell the Court this information exists on Page 5 of the exhibit. ***This information is
not on Page 5 or any other page***.  Exhibit 69 confirms that Greg Roman dealt
directly with Daniel Thomas in matters of money.  Notwithstanding, Defendants can
weave any tale they like in connection with these documents because they were
withheld during discovery and Plaintiff is seeing them for the first time attached to
Defendants' motions.

18. Exhibit 70 (Document 111-3).  This is another piece of evidence related to
Defendants counterclaims that was withheld.  The evidence confirms that Greg
Roman dealt directly with Daniel Thomas in matters of money, including access to
information and invoices.  This evidence goes hand-in-hand with other withheld
evidence including Exhibit 73, where Lisa Barbounis notified Greg Roman that
Daniel Thomas' conduct left "a bad taste in her mouth (Document 111-3, Exhibit 73).
These invoices were sent directly by Daniel Thomas to Greg Roman.  There is no
evidence that Plaintiff, Lisa Barbounis was involved directly with the invoices as they
were sent by Daniel Thomas directly to Greg Roman.  Weeks later, Lisa Barbounis
warned Greg Roman to never grant money to Daniel Thomas again.

19. Exhibit 73 (Document 111-3).  Defendants did not produce this evidence related to
Defendants' counterclaims.  This email flies in the face of every counterclaim
brought by Defendants.  This email confirms that Lisa Barbounis' only objective was
to protect the interests of The Middle East Forum.  It is no wonder that Defendants
acted to withhold this evidence from Plaintiff.  It is astonishing however, that
Defendants would then attach it to a motion for summary judgment and represent to
the Court that the evidence indicates guilty knowledge.  See (Document 109-3
Paragraph 202).

20. Exhibit 74 (Document 111-3).  Defendants did not produce this evidence related to Defendants' counterclaims.  This evidence confirms yet again that Daniel Thomas was in direct contact with Greg Roman in matters related to the granted money.  Defendants represent to the Court this evidence means that "Plaintiff received a copy of Thomas' claimed expenses." (Document 109-3 Paragraph 204).  The evidence confirms that Greg Roman forwarded a single screen shot only to Plaintiff.  Defendants did not produce the screen shot so we do not know whether Plaintiff received a copy of the claimed expenses.  This evidence also confirms that two days after Greg Roman forwarded the screen shot to Lisa Barbounis, Lisa Barbounis warned Greg Roman to never grant money to Daniel Thomas again because Daniel Thomas did not properly account for the granted money.  That's not all.  This evidence also confirms that ***Marnie Meyer, not Lisa Barbounis*** delivered the contract to Daniel Thomas, making Defendants' other representations to the Court false.  Exhibit 74 basically confirms that Lisa Barbounis had nothing to do with the grant to Daniel Thomas other than acting as Greg Roman's secretary.

21. Exhibit 76 (Document 111-3).  This is yet another document related to Defendants' counterclaims that was withheld.  Document 76 is highly concerning as the Exhibit Defendants' attached to the motion for summary judgment (Document 111-3, Exhibit 76) is not what was produced to Plaintiff in discovery.  Attached hereto is Defendants' Production of Documents D0009481, D0009482, and D0009483 (Exhibit C).  A comparison of the Exhibit versus the produced document (Exhibit C attached to this Motion) confirms that Defendants altered the document to support Defendants' argument in the Statement of Facts.  Defendants Fact Statement, Paragraph 207 states, "Plaintiff sent a memorandum to Roman advocating for an increase in the Forum's financial support for Robinson."  Nowhere in the memorandum does Lisa Barbounis advocate.  ***But the produced document confirms Lisa Barbounis provided Defendants with a  list of reasons not to increase financial support to Tommy Robinson***.  Lisa Barbounis' reasons not to support Tommy Robinson include: (1) Negative press, (2) Not completely aligned with MEF mission, and (3) MEF could be branded as supporting extremists.  ***Exhibit 76 was altered, and, the actual document contradicts the information offered to the Court by Defendants in Exhibit 76.***  How many times do Defendants' "mistakes" have to favor Defendants before it becomes apparent the conduct is intentional?

22. Exhibit 77 (Document 111-3).  Exhibit 77 is another document related to Defendants' counterclaims that was withheld.  This email exchange between Greg Roman and Daniel Thomas indicates to Plaintiff that Defendants were refusing to produce information related to Defendants' counterclaims.

23. Exhibit 79 (Document 111-3) Exhibit 79 is another document related to Defendants counterclaims that was withheld.  Defendants try to use this document to support an argument that Lisa Barbounis was involved in money decisions.  This exhibit confirms yet again that Lisa Barbounis' sole involvement was to forward issues related to money to her supervisor, Defendant, Greg Roman.

24. Exhibit 80 (Document 111-3).  Exhibit 80 is another document related to Defendants counterclaims that was withheld.

25. Exhibit 86 (Document 111-3).  Exhibit 86 is another document related to Defendants counterclaims that was withheld.

26. Exhibit 89 (Document 111-3).  Exhibit 89 is another document related to Defendants counterclaims that was withheld.

27. Exhibit 90 (Document 111-3).  Exhibit 90 is another document related to Defendants counterclaims that was withheld.

28. Exhibit 91 (Document 111-3).  Exhibit 91 is another document related to Defendants counterclaims that was withheld.

29. Exhibit 97 (Document 111-3).
30. Exhibit 98 (Document 111-3).
31. Exhibit 99 (Document 111-3).
32. Exhibit 100 (Document 111-3).
33. Exhibit 106 (Document 111-3).
34. Exhibit 107 (Document 111-3).
35. Exhibit 109 (Document 111-3).
36. Exhibit 115 (Document 111-4).
37. Exhibit 126 (Document 111-5).

Documents 97, 98, 99, 100, 106, 107, 109, 115, and 126 are documents related to Defendants' counterclaims that were not produced during discovery.  Prior to filing this Motion, counsel for Plaintiff provided Defendants with the above list totaling 37 exhibits that Plaintiff represented were filed with Defendants' Motion for Summary Judgment but not produced during discovery.  These exhibits represent critical evidence that Plaintiff did not know existed.  Some of the evidence like Exhibits 68, 69, 70, 73, 74, 76, and 77 disproves the premise behind Defendants' counterclaims, that Lisa Barbounis knew about misappropriated money and hid that information from Defendants.  We now know that informing her supervisor, Defendant, Greg Roman about concerns that Daniel Thomas misappropriated money is exactly what Lisa

Barbounis did.  But because this evidence was withheld, Defendants received no questions about Lisa Barbounis' loyalty in telling Greg Roman about Daniel Thomas during depositions.  Exhibit 52 is equally critical, as Defendants are attempting to avoid supervisor liability under a Farragher-Ellerth defense.  Plaintiff suggests that because Greg Roman is a proxy, there is no Farragher-Ellerth defense, however, if the Court disagrees, then the meeting notes and minutes (Exhibit 52) may constitute lynchpin evidence regarding Plaintiff's fears of futility or fears of retaliation were reasonable, thus negating the Farragher-Ellerth defense.  Exhibits 52 and 73 are not exceptions, but representative of the type of critical evidence that Defendants sought to withhold from Plaintiff during discovery.  Plaintiff has suffered actual, cognizable, and immeasurable prejudice because of Defendants' conduct.

The second category of information withheld is also highly concerning, which is the information that Defendants did not attach as exhibits to dispositive motions.  Document 53-1, filed 09/16/20, Page 7 of 71, talks about an email from Daniel Thomas to Greg Roman that was not produced.  Defendants did not produce text threads from Greg Roman and we now know Defendants do have these threads.  They have not turned any of that over.  Document 53-1, Page 9 of 71 talks about a release to Daniel Thomas for making claims against Lisa Barbounis.  Document 53-1, Page 13 of 71 and 17 of 71 Daniel Thomas talks about WhatsApp messages between Daniel Thomas and Greg Roman that were not produced.  Lisa Barbounis also recalls several other communications between Lisa Barbounis with Defendants where she discussed Daniel Thomas's failure to properly account for the granted money.  Of course by this point, re-opening discovery would also prejudice Plaintiff, Lisa Barbounis.  Defendants had more than a year from the Rule 16 Conference to dispositive motions to produce discoverable information in Defendants' possession.  As discovery has closed and dispositive motions briefed and filed,

Plaintiff suggests there is no easy solution to the significant prejudice caused by Defendants'
conduct.  Certainly, Defendants cannot be permitted to rely upon the tainted evidence. Without
it, the counterclaims are based upon a couple text messages between Lisa Barbounis and Jazmin
Bishop.  These text messages are insufficient to support the elements required to sustain the
counterclaims and bring them to trial.  Accordingly, Plaintiff suggests it would be appropriate to
dismiss the counterclaims with prejudice.  That leaves the prejudice to Plaintiff's primary claims
of sexual harassment.  Here, an adverse inference jury instruction seems to be the only available
solution.  For a spoliation inference to apply in the Third Circuit, allowing a jury to conclude that
destroyed evidence would have been unfavorable to the position of the offending party, (1) the
evidence in question must be within the party's control, (2) it must appear that there has been
actual suppression or withholding of the evidence, (3) the evidence destroyed or withheld must
be relevant to claims or defenses, and (4) it must have been reasonably foreseeable that the
evidence would later be discoverable. Mosaid Techs. Inc. v. Samsung Elecs. Co., 348 F. Supp.
2d 332 (D.N.J. 2004).  These four elements are satisfied.  The evidence withheld was within
Defendant, Middle East Forum's, Greg Roman, and Daniel Pipes' control, there was actual
suppression of evidence, the evidence is relevant to Plaintiff's claims and Defendants'
counterclaims, it was reasonably foreseeable that the evidence was discoverable.

## VI.    CONCLUSION

For the reasons set forth above, Plaintiff requests the Court find in favor of Plaintiff that
Defendants violated the Court's December 4, 2020 Order and the Federal Rules of Civil
Procedure to Plaintiff's detriment, and award the requested relief.

WEREFORE, Plaintiff respectfully requests that the Court entered the attached Proposed Order.

**CERTIFICATION PURSUANT TO LOCAL RULE OF CIVIL PROCEDURE 26.1(F)**

Counsel for Plaintiff, Lisa Barbounis hereby certifies pursuant to Local Rule of Civil

Procedure 26.1(f) that the parties after reasonable efforts are unable to resolve the dispute.

Counsel for the parties have discussed in meet and confer and through electronic

communications the issues presented by Plaintiff's allegations that Defendants' withheld

discoverable evidence.  Defendants have taken steps to identify and explain the reasons that

information was attached to Defendants' motions that was not produced during discovery,

however, Plaintiff represents that the parties are unable to agree upon a solution, as Defendants

cannot agree to the only relief that Plaintiff suggests is appropriate – the suppression of the

tainted evidence, dismissal of the counterclaims, and an adverse inference jury instruction.

Moreover, it seems clear to Plaintiff that the primary reason for Defendants' conduct is

due to the fact that Defendants are not working from the same pool of evidence and documents

that were produced during discovery.  Defendants did not produce a single exhibit in dispositive

motions in the format in which the documents were produced.  None of the exhibits included

Bates numbering.  The fact that Defendants are working from a different pool of evidence

indicates significant departure from the Federal Rules of Civil Procedure which has resulted in

the issues outlined herein.

**DEREK SMITH LAW GROUP, PLLC**

By: _____/s/ Seth D. Carson_____
     Seth D. Carson, Esquire
     1835 Market Street, Suite 2950
     Philadelphia, Pennsylvania 19103
     Phone: 215.391.4790
     Email: seth@dereksmithlaw.com

DATED:  May 18, 2021

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date that I caused a true and correct copy of Plaintiff's

Motion to be served via ECF.

Jon Cavalier
Leigh Ann Benson
Cozen O'Connor
1650 Market Street, Suite 2800
Philadelphia, PA 19103
P: 215-665-2000
F: 215-665-2013
dwalton@cozen.com
lbenson@cozen.com

Sidney L. Gold sgold@discrimlaw.
Sidney L. Gold & Associates P.C.
1835 Market Street, Suite 515
Philadelphia, PA 19103
Tel: (215) 569-1999
Fax: (215) 569-3870
Counsel for The Middle East Forum

**DEREK SMITH LAW GROUP, PLLC**

BY:   /s/  Seth D. Carson
        SETH D. CARSON
        Derek Smith Law Group, PLLC
        1835 Market Street
        Suite 2950
        Philadelphia, PA 19103
        Phone: 215.391.4790
        Facsimile: 215.893.5288
        Email: Seth@DerekSmithLaw.com

DATED: May 18, 2021