IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LISA BARBOUNIS,<br><br>*Plaintiff,*<br><br>v.<br><br>THE MIDDLE EAST FORUM, et al.,<br><br>*Defendants.* | Case No. 2:19-cv-05030-JDW |

**ORDER**

**AND NOW**, this 28th day of May, 2021, upon consideration of Defendants' Omnibus Motion for Summary Judgment (ECF No. 109), and only as to Plaintiff Lisa Barbounis' claims against them, the Court notes as follows:

1. Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quotations omitted). In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted). However, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted); *see also* Fed. R. Civ. P. 56(c)(1)(A)-(B).

2. Defendants make several arguments in their summary judgment motion that Ms. Barbounis does not address in her opposition brief. Ms. Barbounis has therefore abandoned those arguments. *See Seals v. City of Lancaster*, 553 F. Supp. 2d 427, 432 (E.D. Pa. 2008) ("[P]laintiff's failure to mention these issues in her summary judgment response constitutes abandonment of those claims."); *see also Fischer v. G4S Secure Sols. USA, Inc.*, 614 F. App'x 87, 91 n.3 (3d Cir. 2015) ("It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered.") (quotation omitted). The Court will therefore grant summary judgment on each of the following issues.

      a. Ms. Barbounis has abandoned her claims of retaliation arising under Title VII of the Civil Rights Act of 1962, the Philadelphia Fair Practices Ordinance, and the Pennsylvania Human Relations Act. The Middle East Forum is entitled to summary judgment on the Second, Fifth, and Eighth causes of action set forth in Ms. Barbounis' Consolidated Civil Action Complaint.

      b. Ms. Barbounis has abandoned her claim for constructive discharge. In fact, the term "constructive discharge" does not appear anywhere in her opposition brief. As a result of that abandonment, Ms. Barbounis' disparate treatment claim fails because her constructive discharge is the only adverse employment action she has alleged. *See In re Trib. Media Co.*, 902 F.3d 384, 402 (3d Cir. 2018) (plaintiff must demonstrate adverse employment action to establish *prima facie* case of discrimination). MEF is entitled to summary judgment on Ms. Barbounis' disparate treatment and/or constructive discharge claims in her First, Fourth, and Seventh causes of action.

      c. Ms. Barbounis has abandoned her negligent hiring/retention/supervision claim because she did not respond to Defendants' arguments that both the PHRA and

Pennsylvania's Workers' Compensation Act preempt those claims. Even if Ms. Barbounis had not waived her opposition to Defendants' preemption arguments, her negligence claim would nevertheless fail because Pennsylvania courts do not recognize a common law cause of action where a statute provides the plaintiff with a legal remedy. *See Murray v. Com. Union Ins. Co. (Com.)*, 782 F.2d 432, 436 (3d Cir. 1986). Thus, "[f]or acts of employment discrimination, the PHRA 'exclude[s] any other action, civil or criminal based on the same grievance of the complainant concerned.'" *Roadman v. Select Specialty Hosp.*, No. 16-cv-246, 2020 WL 571058, at *6 (W.D. Pa. Feb. 5, 2020) (quotation omitted). MEF is therefore entitled to summary judgment on Ms. Barbounis' Third cause of action.

3. To succeed on her hostile work environment theory of sexual harassment, Ms. Barbounis "must establish that 1) [she] suffered intentional discrimination because of []her sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected [her], 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of respondeat superior liability." *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 213 (3d Cir. 2017) (quotation omitted). MEF challenges only the first and second elements of Ms. Barbounis' hostile work environment claim.

4. As an initial matter, the Court finds that Ms. Barbounis' allegations regarding Defendant Gregg Roman's conduct at the American Israel Public Affairs Committee conference on March 4, 2018 (the "AIPAC Incident") and his conduct in Israel on March 14, 2018 (the "Israel Incident") are not time-barred. In arguing that these two incidents are discrete acts that Ms. Barbounis cannot aggregate for purposes of the continuing violations doctrine, Defendants contend that Ms. Barbounis did not allege that any similar actions of assault, physical touching, or sexual propositioning occurred during the 300-day period before she filed her EEOC charge. However, Ms. Barbounis submitted a sworn declaration stating that Mr. Roman puts his hands on her while

in the office, "incessantly spoke about sex and [Ms. Barbounis'] sex life," "asked questions about [her] sexual preferences, and generally tried to convince [her] to engage in a sexual relationship." (ECF No. 125-3 at ¶¶ 61-63, 70.) She alleges that this conduct "continued past August 2018 and into September and October 2018." (*Id.* at ¶ 71.) These allegations are consistent with her deposition testimony that Mr. Roman's conduct during the AIPAC Incident became "an ongoing thing." (ECF No. 126-20 at 194:6.) Thus, neither the AIPAC Incident nor the Israel Incident constitutes a discrete act, and Ms. Barbounis may aggregate them with other allegations of sexual harassment that occurred within the 300-day period before she filed her EEOC charge. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117-18 (2002) ("we do not hold . . . that the plaintiff may not base a suit on individual acts that occurred outside the statute of limitations unless it would have been unreasonable to expect the plaintiff to sue before the statute ran on such conduct").

5. Ms. Barbounis' testimony about the AIPAC and Israel Incidents, as well as Mr. Roman's ongoing sexual and suggestive comments, constant leering at her, and physical touching, supports her claim that Mr. Roman's harassment occurred because of Ms. Barbounis' sex. *See Moody*, 870 F.3d at 214. Thus, a reasonable jury could determine that Ms. Barbounis has satisfied the first element of her hostile work environment claims.

6. Ms. Barbounis has also identified facts for a reasonable jury to determine that the alleged harassment was pervasive. In her sworn declaration, Ms. Barbounis states that Mr. Roman "**always** put his hands on [her] in a work environment," "leered at [her] breasts and butt **all the time**," "**incessantly** spoke about sex and [her] sex life," made "**constant**" sexual suggestions, forced her to sit unnecessarily close to him, and invited her to his home "**on many occasions**" when his family would not be present. (ECF No. 125-3 at ¶¶ 20, 23, 28, 61, 69 (emphasis added).) She contends that this conduct started as soon as she began her employment at MEF in October

4

2017 and continued until November 2018, when Daniel Pipes called an all-hands meeting to discuss employees' allegations against Mr. Roman and other issues. These allegations are consistent with Ms. Barbounis' deposition testimony. Ms. Barbounis discussed Mr. Roman's conduct with a former colleague, family members, and MEF employees, including Matthew Bennett and Tricia McNulty. Viewing all of these facts in the light most favorable to Ms. Barbounis, a jury could find that she has demonstrated that Mr. Roman's alleged harassment was severe or pervasive.

7. Likewise, a jury must resolve MEF's *Faragher-Ellerth* defense. Where, as here, the harassed employee has suffered no tangible employment action (such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits), the employer can avoid liability by showing: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Minarsky v. Susquehanna Cty.*, 895 F.3d 303, 310 (3d Cir. 2018) (quotations omitted). Though MEF had an anti-harassment policy in place, there is a genuine dispute as to whether Ms. Barbounis' failure to utilize the policy's procedures and report Mr. Roman's behavior at an earlier date was unreasonable. Even though Ms. Barbounis contends that Mr. Roman's conduct began when she started at MEF in October 2017, she did not report that conduct pursuant the anti-harassment policy until late in October 2018. However, "the passage of time is just one factor in the analysis." *Id.* at 314. Ms. Barbounis has presented evidence that she did not report the alleged harassment because she thought that making such a report would lead to retaliation and/or be futile. If her "subjective belief of potential retaliation from reporting her harassment appears to be well-founded, and a jury

5

could find that this belief is objectively reasonable, the trial court should not find that [MEF] has proven the second *Faragher-Ellerth* element as a matter of law." *Minarsky*, 895 F.3d at 314.

8. Like the plaintiff in *Minarsky*, Ms. Barbounis asserts countervailing forces that prevented her from reporting Mr. Roman's conduct sooner: 1) the fact that Mr. Roman directed employees never to go over his head or reach out to MEF's president, Defendant Daniel Pipes, without letting Mr. Roman know and reacted in anger if anyone did otherwise; and 2) the fact that other female employees resigned, or MEF terminated them, after they complained about sexual harassment by Mr. Roman. Ms. Barbounis presented evidence that MEF terminated at least three women who complained about Mr. Roman's behavior after. Indeed, shortly after the Israel Incident, Ms. Barbounis disclosed what had happened to MEF's then Director of Development, Matthew Bennett (a management-level employee), and Mr. Bennett advised her that employees who report sexual harassment or complain about Mr. Roman do not stay employed at MEF. Ms. Barbounis' fear of retaliation, *i.e.* losing her job, was neither general nor unsupported by the evidence. A jury could conclude that Ms. Barbounis' delay in making a formal report of Mr. Roman's conduct was objectively reasonable, and the Court cannot hold that MEF is entitled to the *Faragher-Eller* defense as a matter of law.

9. Finally, Defendants contend that they cannot be held liable for aiding and abetting discrimination under the Philadelphia Fair Practices Ordinance and the PHRA absent any actionable claims of discrimination. However, because the Court has determined that genuine questions of fact prevent the Court from entering summary judgment on Ms. Barbounis' hostile work environment claims, Ms. Barbounis' aiding and abetting claims may proceed as well.

In light of the foregoing, it is **ORDERED** that Defendants' Omnibus Motion for Summary Judgment (ECF No. 109) is **GRANTED IN PART** and **DENIED IN PART**. Summary judgment is entered in favor of Defendants Daniel Pipes, Greg Roman, and The Middle East Forum and

against Plaintiff Lisa Barbounis on Ms. Barbounis' claims for disparate treatment and/or constructive discharge, retaliation, and negligent hiring/retention/supervision, as set forth in her First, Second, Third, Fourth, Fifth, Seventh, and Eighth causes of action. The Motion is otherwise **DENIED** with respect to Ms. Barbounis' claims against Defendants.

The Court will resolve Defendants' Motion with respect to their counterclaims against Ms. Barbounis in a separate memorandum.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.