# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LISA BARBOUNIS | : | CIVIL ACTION |
| | : | NO. 2:19-cv-05030-JDW |
| Plaintiff, | : | NO. 2:20-cv-02946 |
| -vs- | : | |
| | : | |
| THE MIDDLE EAST FORUM, et al. | : | |
| | : | |
| Defendants. | : | |
| | : | |

---

## DEFENDANTS' RESPONSE TO
## PLAINTIFF'S MOTION FOR CONTEMPT

---

Dated: June 1, 2021

Jonathan R. Cavalier
Cozen O'Connor
1650 Market Street, Suite 2800
Philadelphia, PA  19103
(215) 446-0031

*Attorneys for Defendant*
*The Middle East Forum,*
*Daniel Pipes and Gregg Roman*

Sidney L. Gold
William Rieser
Sidney L. Gold & Associates, P.C.
1835 Market Street, Suite 515
Philadelphia, PA 19103
(215) 569-1999

*Attorneys for Defendant*
*Gregg Roman*

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION .......................................................................................................... 1

II.     ARGUMENT ................................................................................................................. 2

     A.     Plaintiff's Motion Is Premature And In Violation Of The Meet And Confer Requirements Imposed By The Federal Rules And This Court's Policies And Procedures. ................................................................................................. 2

     B.     Plaintiff's Motion Is Tardy And Her Claims Of Prejudice Are Waived. ............... 7

     C.     Plaintiff's Motion Is Largely Inaccurate, Misapprehends The Court's December 4, 2020 Order, Misstates The Docket Evidence, And Incorrectly Describes The State of Defendants' Production. .................................................... 9

          1.     The Standards On A Motion For Contempt............................................. 10

          2.     Plaintiff Disregarded This Court's December 4, 2020 Order That She Engage An Electronic Discovery Vendor To Assist Her With Her Production And Instead Dumped All Of Her Data On Defendants. ......... 11

          3.     Plaintiff's Claim That Defendants' Violated The AEO Provisions of the December 4, 2020 Order Are Incorrect. ............................................. 18

          4.     Plaintiff's Claims That Overly Long Exhibits Are Available On The Public Docket Are False. .......................................................................... 20

          5.     Plaintiff Has Suffered No Prejudice From Defendants' Non-Production Of Documents Relevant To This Matter................................................... 22

III.    CONCLUSION............................................................................................................ 24

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Fox v. Capitol Co.*,
96 F.2d (3d Cir. 1938).................................................................................................10

*Hess Fence & Supply Co. v. U.S. Fid. & Guar. Co.*,
No. CIVA 4:04CV2648, 2006 WL 3325445 (M.D. Pa. Oct. 12, 2006) ..................................10

*Kinney v. Trustees of Princeton Univ.*,
No. CIV A 04-5252 MLC, 2007 WL 700874 (D.N.J. Mar. 1, 2007).................................23, 24

*Naviant Mktg. Sols., Inc. v. Larry Tucker, Inc.*,
339 F.3d 180 (3d Cir. 2003)...........................................................................................5

*Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.*,
60 F.3d 153 (3d Cir. 1995).............................................................................................11

*Quinter v. Volkswagen of America*,
676 F.2d 969 (3d Cir.1982)............................................................................................10

*Roe v. Operation Rescue*,
920 F.2d 213 (3d Cir. 1990)...........................................................................................10

*Rosenblit v. City of Philadelphia*,
No. CV 20-3121-KSM, 2021 WL 288887 (E.D. Pa. Jan. 28, 2021) (Marston,
J.)...................................................................................................................................7

*Tomei v. Off. of 32nd Jud. Dist. Delaware Cty.*,
No. 2:20-CV-02429-JDW, 2020 WL 6822964 (E.D. Pa. Nov. 20, 2020)..............................7

**Rules**

Fed. R. Civ. P. 37(a)(1)....................................................................................................5

Fed. R. Civ. P. 37(c) .......................................................................................................11

Local Rule 26.1(f)............................................................................................................5

## I.      INTRODUCTION

Plaintiff's Motion for Contempt[1] hits for the Triple Crown of impropriety: it's too early,

it's too late, and it fails on the merits.  To wit:

1.  Plaintiff's motion is premature; Plaintiff first raised the production issues cited in her motion just two business days prior to filing her motion, after which Defendants were in constant communication in an effort to meet and confer with Plaintiff to address and remedy these discovery disputes, a process to which Plaintiff's counsel agreed; before the process was complete, and despite representations to the contrary, Plaintiff inexplicably and without notice filed her motion in violation of the good faith meet and confer requirements of the Federal Rules and this Court's Policies and Procedures.

2.  Plaintiff's motion is likewise tardy; her motion was filed ten weeks after Defendants' filed their motion for summary judgment and exhibits; any claimed prejudice to Plaintiff from the inclusion of unproduced documents could have and should have been raised and addressed during the summary judgment briefing period, which was extended by several weeks at Plaintiff's request specifically so that she and her counsel would have time to review the record documents; as such, Plaintiff's motion is late and claims of prejudice are waived.

3.  Plaintiff's motion is almost entirely inaccurate; Plaintiff misreads the scope of the Court's December 4, 2020 order, ignores her counsel's own multitude of failures to abide the Order, misperceives the current docket, and fails to grasp that many of the documents for which she seeks contempt sanctions were, in fact either produced by her, produced by Defendants, and/or already in her possession; had she not failed to engage in and complete the meet and confer process, she would have learned that her motion was without merit and these issues could have been resolved without Court intervention.

As explained in further detail herein, Plaintiff's motion is tardy, premature, inaccurate and rife

with more inflammatory and baseless accusations of bad faith and maliciousness against

Defendants and their counsel, as has become the norm for Plaintiff in this action.  As such, and

for the reasons set forth in more detail below, Defendants respectfully request that Plaintiff's

---

[1] *See* Doc. No. 132.  The full caption of Plaintiff's motion is "Plaintiff, Lisa Barbounis' Motion to Hold Defendants, The Middle East Forum, Greg [sic] Roman, and Daniel Pipes in Contempt for Failure to Comply with the Court's December 4, 2020 Order and for Defendants' Disregard of the Federal Rules of Civil Procedure and the Resulting Discovery Violations to Plaintiff's Prejudice" (hereafter "Plaintiff's Motion for Contempt").

motion be denied, and that Defendants' be awarded their costs and reasonable attorneys' fees incurred in responding to this motion.

## II.   ARGUMENT

### A.   Plaintiff's Motion Is Premature And In Violation Of The Meet And Confer Requirements Imposed By The Federal Rules And This Court's Policies And Procedures.

On Thursday, May 13, 2021 at 5:17p.m., two days after summary judgment briefing closed, counsel for Plaintiff wrote to the undersigned via email and, for the time, raised a question concerning Defendants' production of documents attached as exhibits to their statement of undisputed material facts.  *See* Exhibit A, Certification of Jonathan R. Cavalier, at ¶ 18.  Later that night, upon receipt of Plaintiff's email, the undersigned wrote back to Plaintiff's counsel, representing that he would be "happy to look into this" issue and inviting Plaintiff's counsel to have a call to discuss the matter.  *Id.* at ¶ 21.   Later that evening, the undersigned called Plaintiff's counsel to ascertain additional details and represented to Plaintiff's counsel that Defendants would look into the matter immediately and in good faith, noting that the undersigned had taken over as lead counsel in this matter in January 2021 after discovery was complete, and would report back to Plaintiff's counsel as quickly as possible.  *Id.* at ¶ 22.  Plaintiff's counsel acknowledged and agreed to this process.  Still later that same night, Plaintiff's counsel sent the list of exhibit with which he claimed issue, and at midnight, the undersigned responded and reiterated that the matter would be looked into immediately.  *Id.* at ¶¶ 23-24.

The next day, Friday, May 14, 2021, the undersigned emailed Plaintiff's counsel to confirm that Defendants were looking into the matter, and Plaintiff's counsel responded stating that he would continue to wait for updates from the undersigned.  *Id.* at ¶ 25.  The undersigned responded, stating that he "appreciate(s) the courtesy" and that, [a]t bottom, this is a discovery

issue, and in that vein, you've got my word that my people are working hard to get to the bottom

of this and will continue to do so tonight and through the weekend, and that whatever the

situation, I'll both keep you in the loop and work with you to correct the problem, if possible and

as necessary." *Id.* at ¶ 26. The undersigned represented that he would be in touch with updated

findings by close-of-business Monday, and Plaintiff's counsel responded with acknowledgement.

*Id.* at ¶ 27.

As promised, counsel for Defendants had a team of people work over the weekend to

examine the list of documents provided by Plaintiff's counsel and to determine which documents

had been produced by Defendants, which documents had been produced by Plaintiff and which

documents might not have been produced at all. *Id.* at ¶ 28. On Monday, May 17, Plaintiff's

counsel reached out to the undersigned via text, asking whether the undersigned would get back

to Plaintiff's counsel that day. *Id.* at ¶ 29. The undersigned responded affirmatively and stated,

"I will have new info to report today" and suggested that counsel speak by phone at the end of

the day *Id.* at ¶ 30. The undersigned also stated as follows:

> Let me know if you disagree, but ultimately I see this as a
> discovery dispute, with meet and confer obligations, which we're
> doing now. Assuming you are correct (at least in part) in your
> assertions I think part of that should also include a discussion of
> potential remedies if we did, in fact, drop the ball.
>
> Do you agree? And do you have any [objection] to have that
> discussion with me?

*Id.* at ¶ 31. Plaintiff's counsel voiced no objection, stating, "I'll be free to talk after this

mediation. Late afternoon." *Id.* at ¶ 32. The undersigned responded, "Perfect. Let's get on the

phone around end of day. I am basically free after 4:30 until whenever." *Id.* at ¶ 33.

Beginning at 6:16 p.m., the undersigned and Plaintiff's counsel spoke by phone for 39

minutes. During that call, the undersigned described the efforts that Defendants were engaged in

to evaluate the validity of Plaintiff's alleged discovery issues, reported that some preliminary indications were that many of the documents listed by Plaintiff had in fact been produced by one or both parties, promised Plaintiff that defense counsel was acting and would continue to act in good faith to get to the bottom of Plaintiff's issues, and represented that by close of business the following day, the undersigned would have a full and final report for Plaintiff's counsel answering all of the questions raised. *Id.* at ¶ 34. Furthermore, the undersigned reiterated the view that this was a discovery dispute between the parties with good faith meet and confer obligations, to which Plaintiff's counsel agreed. *Id.* at ¶ 35. Finally, the undersigned asked Plaintiff's counsel to consider potential methods for remedying any outstanding document dispute once the full report was available, and offered depositions of Defendants witnesses (at Defendants' cost) concerning the documents at issue should Plaintiff be correct in her assertions about the production of those documents. *Id.* at ¶¶ 35-36. Plaintiff's counsel agreed to give those potential remedies some thought while awaiting Defendants' final report. *Id.* at ¶ 36. At the end of the call, the undersigned and Plaintiff's counsel agreed to speak again at close of business the following day. *Id.* at ¶ 37.

Despite these representations, an ongoing and productive meet-and-confer between counsel, Defendants' good faith and expedited effort to investigate Plaintiff's claims, and an agreement between counsel to continue the as-yet-incomplete meet-and-confer process the following day, Plaintiff, without further notice, warning or discussion, filed her motion at 11:40 a.m. on Tuesday, May 18. *See* Doc. No. 132. Plaintiff's motion raised the discovery issue that was the subject of the ongoing meet-and-confer process between counsel and several other issues that Plaintiff's counsel had never raised in those discussions. *Id.*

Five minutes later, the undersigned sent an email to Plaintiff's counsel, stating as follows:

> Seth:
>
> Based on our calls and correspondence over the past few days, which I took to be a good faith effort to meet and confer to resolve the discovery dispute you raised, I was under the impression that we had agreed to speak again this afternoon to discuss the issues that you raised and how best to resolve them.  In that vein, I took your representation that you were going to hold your motion until our discussions were complete and I could relay to you what I found.  Having not heard from you since our call late yesterday, I am unclear as to what circumstances changed that led you to file this motion.
>
> Given this, I view your motion as premature and in violation of EDPA and Local Rules requiring a meet and confer process before bringing discovery issues to the attention of the Court.  Please either (a) let me know why I am wrong or (b) withdraw your motion until the meet and confer process is complete.
>
> Thanks,
> Jon Cavalier

*Id.* at ¶ 40.  Plaintiff's counsel never responded to this email, nor explained why he abandoned the ongoing meet-and-confer process midstream, and the undersigned has had no communication from Plaintiff's counsel since.  *Id.* at ¶ 41.

Federal Rule of Civil Procedure 37(a)(1) requires that a motion asserting discovery violations "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."  Even more broadly, Local Rule 26.1(f) provides, "No motion or other application pursuant to the Federal Rules of Civil Procedure governing discovery or pursuant to this rule shall be made unless it contains a certification of counsel that the parties, after reasonable effort, are unable to resolve the dispute."  *See also Naviant Mktg. Sols., Inc. v. Larry*

*Tucker, Inc.,* 339 F.3d 180, 187 (3d Cir. 2003) (reversing district court's sanctions order on

discovery violations due to movant's failure to meet and confer in good faith).

This Court's Policies and Procedures, reflective of the Federal and Local rules mandate

for meet-and-confer processes, provide, in relevant part:

> The Court urges parties to settle discovery disputes among themselves. However, if the parties remain unable to resolve a dispute despite making a good faith effort, counsel for the aggrieved party shall file with the Court a motion in conformity with Local Civil Rule 26.1(b), with a form of order and short brief, not to exceed five (5) pages (not including exhibits), describing the dispute. All discovery motions must attach the discovery requests at issue, as well as the written response. The Court will schedule a telephone conference with counsel to discuss the motion before the filing of any responsive brief.
>
> In filing a discovery motion, **the certificate of counsel must provide specific details of the parties' efforts to resolve the dispute informally.** These efforts must include verbal communications, whether by phone or in person. Exchanges of letters or e-mails are not sufficient. It is not sufficient to report that opposing counsel was not available or that the parties made "reasonable efforts." **The Court will deny a discovery motion that does not meet these requirements.**

*See* Policies and Procedures, Honorable Joshua D. Wolson, at Section II(C) (emphasis added).

Plaintiff's motion for contempt provided no such certificate of counsel, nor could it, as Plaintiff

unilaterally terminated discussions with the undersigned before any dispute could be addressed

or resolved.

Moreover, Plaintiff is aware of this Court's strict application of the meet-and-confer

requirement, as several filings by both parties have been stricken or denied for failure to meet-

and-confer, and this Court has likewise ordered the parties to meet and confer on a number of

prior occasions. *See, e.g.,* Doc. No. 47, 55, 67, 69, 84, 92. As this Court has explained, the

purpose of the meet and confer requirement is "to identify issues like this before the parties have

to take up their time and the Court's time with unnecessary motions practice." *Tomei v. Off. of 32nd Jud. Dist. Delaware Cty.*, No. 2:20-CV-02429-JDW, 2020 WL 6822964, at *2 (E.D. Pa. Nov. 20, 2020).

Here, counsel for Defendants was actively and vigorously engaged in a meet-and-confer process with Plaintiff's counsel, attempting in good faith to review, analyze and address issues that Plaintiff had raised only two business days before, when Plaintiff, despite agreement to the contrary, abruptly and without notice or explanation abandoned the collaborative process and filed her motion before Defendants could address the issues she has raised.  In doing so, she thwarted the purpose and intent of the meet-and-confer process and filed a motion that, in all likelihood, would have been resolved without motion practice or imposition on judicial resources.  *See, e.g, Rosenblit v. City of Philadelphia,* No. CV 20-3121-KSM, 2021 WL 288887, at *4 n.5 (E.D. Pa. Jan. 28, 2021) (Marston, J.) (denying motion for violating identical policies and procedures).

On this basis alone, and in accordance with this Court's Policies and Procedures, Plaintiff's motion should be denied.

**B.      Plaintiff's Motion Is Tardy And Her Claims Of Prejudice Are Waived.**

On March 1, 2021, Pursuant to the Court's scheduling order, the parties filed their motions for summary judgment and statements of undisputed material fact.  *See* Doc. Nos. 108, 109).  Due to issues with the ECF system and, for Defendants the number and size of the exhibits, the parties both filed their accompanying exhibits several hours later.  *See* Doc. 110, 111.  That same day, in accordance with the Court's policies and procedures, Defendants couriered to the Court and to Plaintiff's counsel a flash drive containing all record exhibits referenced in Defendants' statement of undisputed material fact.  These exhibits were received by Plaintiff's counsel that afternoon.

With Defendants' exhibits in hand as of March 2, 2021 and responses due on March 15, 2021, Plaintiff asked Defendants to consent to 25-day extension of the responsive briefing deadline, to which Defendants' agreed.  In her submission to the Court, Plaintiff based her need for an extension so that she would have time to sufficiently respond to Defendants motion which "includes 146 exhibits."  The Court granted Plaintiff's request.  *See* Doc. No. 115.  On April 8, 2021, Plaintiff asked Defendants for a one-week extension of the previously-extended responsive briefing deadline, to which Defendants again agreed.  *See* Doc. No. 118.  The Court granted Plaintiff's request for a second extension.  *See* Doc. No. 119.  On April 16, 2021, Plaintiff filed a motion for a third extension of time to file her response, which Defendants did not oppose, *see* Doc. No. 118, and which the Court granted.  *See* Doc. No. 122.

On April 17, 2021, the parties filed their respective responses to motions for summary judgment, but Plaintiff failed to include her response to Defendants' statement of undisputed material facts and her new exhibits with her response.  *See* Doc. No. 123.  Despite repeated requests from Defendants' counsel, Plaintiff's response to Defendants' statement of facts and exhibits were not docketed or delivered to Defendants until April 20, 2021.  *See* Doc. Nos. 124, 125, 126, 127.  After an agreement between the parties, this Court ordered that Plaintiff's reply brief would be due on May 4, 2021 and Defendants' reply brief would be due on May 7, 2021. As ordered, the parties filed their respective reply briefs on those dates.  *See* Doc. Nos. 129, 130. On May 11, 2021, Defendants' filed a sur-reply brief, *see* Doc. No. 131, while Plaintiff elected not to do so.

The summary judgment briefing period in this case thus lasted for 71 days – from March 1 through May 11.  During that period of time, Plaintiff never briefed or otherwise raised any of the issues claimed in her current motion for contempt.  Instead, having had Defendants'

summary judgment exhibits in her possession for 73 days, Plaintiff raised, for the first time, her

belief that Defendants had improperly failed to produce some of the exhibits to its summary

judgment motion, by email after business hours on May 14, 2021.[2]  *See* Exhibit A at ¶ 18.

In her 24-page motion for contempt, Plaintiff offers no explanation or excuse for why she

waited more than two-and-a-half months, until after the closure of the summary judgment

briefing – which was extended at her request on three occasions specifically so she could review

Defendants' exhibits – to raise, for the first time, an issue with Defendants' production and

exhibits.  Had she not done so, and instead raised her perceived issues with Defendants'

documents during the briefing period, the parties could have easily cured any issues through a

variety of means, or the Court could have addressed the issues, if necessary, either of which

would have avoided all of the claimed prejudice[3] of which Plaintiff now complains.  Indeed, any

prejudice claimed by Plaintiff was exacerbated by her failure to act, which prevented Defendants

from having an opportunity to cure any legitimate prejudice Plaintiff might have suffered.

By waiting for more than 70-days and until after the summary judgment briefing period

closed before raising these issues, Plaintiff has waived her right to object to Defendants summary

judgment exhibits, and her motion for contempt should be denied.

### C.    Plaintiff's Motion Is Largely Inaccurate, Misapprehends The Court's December 4, 2020 Order, Misstates The Docket Evidence, And Incorrectly Describes The State of Defendants' Production.

In what has become a routine course of action in this matter, Plaintiff accuses Defendants

and their counsel of a slew of salacious improprieties and raises, without specifics or evidence,

allegations that Defendants are acting in bad faith.  Specifically, Plaintiff claims that Defendants

---

[2] As discussed above, Plaintiff did not raise the other issues set forth in her present motion at any point prior to filing.

[3] Defendants submit that Plaintiff has suffered no actual prejudice, as discussed below.

have "illegally doxed" Plaintiff, violated this Court's December 4, 2020 Order and intentionally

withheld information to Plaintiff's prejudice. Plaintiff is wrong, and although, as noted above,

Plaintiff offers no excuse for her failure to meet and confer with Defendants prior to filing her

motion and no explanation for waiting for more than 70 days to raise these issues, Defendants

will address the merits of Plaintiff's contentions below.

         1.      The Standards On A Motion For Contempt.

"A finding of civil contempt must be supported by clear and convincing evidence."

*Quinter v. Volkswagen of America*, 676 F.2d 969, 974 (3d Cir.1982). Accordingly, a "plaintiff

has a heavy burden to show a defendant guilty of civil contempt. . . .[w]here there is ground to

doubt the wrongfulness of the conduct of the defendant, he should not be adjudged in contempt.

*Fox v. Capitol Co*., 96 F.2d at 686 (3d Cir. 1938). Prior to the imposition of civil contempt on a

plaintiff's motion, the Court must provide the opposing party with due process and a hearing

such that they might be appropriately heard on the issues raised by Plaintiff. *Roe v. Operation

Rescue*, 920 F.2d 213, 216 (3d Cir. 1990). When a finding of civil contempt is imposed, the

"relief granted is compensatory or coercive and usually takes the form of a fine in the amount of

the damages sustained by petitioner and an award of costs and attorney's fees." *Quinter*. 676

F.2d at 975.

       Having provided no legal standard for the imposition of contempt, Plaintiff also fails, as

set forth below, to establish Defendants' contempt by clear and convincing evidence, or to

establish an entitlement to the extreme relief, including judgment in her favor on Defendants'

counterclaims and evidentiary preclusion and adverse inference sanctions, that she now seeks.

*See, e.g., Hess Fence & Supply Co. v. U.S. Fid. & Guar. Co.,* No. CIVA 4:04CV2648, 2006 WL

3325445, at *5 (M.D. Pa. Oct. 12, 2006) (denying preclusive sanctions where party had been in

possession of allegedly non-produced documents for at least seven months prior to trial); *see*

*also, generally*, Fed. R. Civ. P. 37(c) (rule expressly provides that sanctions should not be imposed if substantial justification exists for the failure to disclose, or if the failure to disclose was harmless); *Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.*, 60 F.3d 153, 156 (3d Cir. 1995) (lack of bad faith and lack of prejudice are critical factors in preclusion of evidence).

Plaintiff's motion is not only procedurally defective, as explained above, but defective on the merits, as set forth below.

2.    Plaintiff Disregarded This Court's December 4, 2020 Order That She Engage An Electronic Discovery Vendor To Assist Her With Her Production And Instead Dumped All Of Her Data On Defendants.

As this Court is by now well aware, Plaintiff has a history in this case of ignoring discovery requests and Orders of this Court compelling her to produce discovery.[4] In brief, after failing to produce any documents in response to Defendants discovery requests for more than nine months, Defendants filed a motion to compel and then a motion for contempt against Plaintiff Barbounis and her counsel, see Barbounis ECF Nos. 59, 62, 65, both of which were granted by this Court. *See* Doc. Nos. 59, 62, 65 and Doc. No. 61, respectively. Thereafter, Plaintiff made a partial production of documents that was rife with deficiencies and formatting problems, to which this Court responded by holding multiple conferences with the parties to attempt to instruct Plaintiff on her discovery obligations and the proper methods by which electronic documents can be produced under the Federal Rules. On October 26, 2020, this Court memorialized these instructions in an Order granting Defendants' renewed motion for contempt and compelling plaintiff to "produce all outstanding documents to MEF" and "file a certification

---

[4] Defendants will not rehash the entirety of that dispute here, but given the nature of Plaintiff's allegations as set forth in her motion for contempt, Defendants respectfully submit that the context of the December 4, 2021 Order is important, and will attempt to confine their discussion to the relevant facts and background.

of compliance on the docket in this matter" before "the close of business on November 2, 2020.".
*See* Doc. No. 69.  Plaintiff failed to abide this Order.

As a result, Defendants renewed their motion for contempt on November 10, 2020.  *See*
Doc. No. 72.  On November 13, 2020, this Court held a hearing on Defendants' motion and
granted it, ordering Plaintiff to work with an electronic discovery vendor to produce text
messages, emails and attachments "along with metadata to permit Defendants to identify the
parent-child relationship between a document and its attachment(s)" by November 18, 2020.  *See*
Doc. No. 74.  The Court also ordered that:

> [S]tarting today, and every day thereafter, Plaintiff's Counsel shall
> submit a daily status report to the Court via email to
> Chambers_of_Judge_Wolson@paed.uscourts.gov that sets forth
> the following information: 1) how many documents he reviewed
> that day; 2) how many documents were produced that day; and 3)
> how much time he spent reviewing and/or producing documents
> that day," and awarded Defendants their attorneys' fees incurred in
> preparing their motion and participating in the hearing.

*Id.*

Plaintiff and her counsel failed to submit the daily status reports as ordered, and on
November 17, 2020, this Court, acting *sua sponte*, ordered Plaintiff's counsel to "set forth in a
memorandum . . . why the Court should not sanction him for his failure to comply with the
Court's Order requiring him to provide the Court with daily updates via email as to the status of
his efforts to review and produce discovery to Defendants in this matter."  *See* Doc. No. 77.
Judge Wolson also the parties as follows:

> On or before 12:00 p.m. on November 20, 2020, each Party shall
> file a memorandum, not to exceed ten (10) pages, addressing
> whether the Court should (a) conclude, in light of the Status Report
> (ECF No. 76) that the Parties filed last night, that Plaintiff has not
> fulfilled her obligation to gather and produce responsive
> documents in this case and/or (b) take the following actions: (i) bar
> Plaintiff from making affirmative use of any document that she

12

does not produce on or before November 25, 2020; (ii) in the event
that Plaintiff's Counsel has not reviewed and produced all
responsive documents before November 25, 2020, and certified
under oath that he has done so, draw an adverse inference that
Plaintiff has concealed damaging documents from Defendants; and
(iii) in the event that Defendants can show good cause to re-open a
deposition pursuant to Fed. R. Civ. P. 30(a) based on newly-
produced information, require Plaintiff to pay Defendants' costs
for taking any such depositions.

*Id.* Defendants filed their memorandum as ordered, *see* Doc. No. 80, but Plaintiff failed to

respond to the Court's Order. As a result, this Court issued another Order, noting, in pertinent

part, as follows:

1.  Plaintiff's Counsel has failed to comply with the Court's Order
dated November 13, 2020, that required him to work with
Cornerstone Discovery and Defendants' Counsel to submit a joint
status report regarding various outstanding discovery issues by
November 16, 2020. (ECF No. 74.) Rather than provide the
required information to the Court by the deadline, Plaintiff's
Counsel represented that he "was in an all-day deposition and is in
the process of determining this" and would provide "a
supplemental report." (ECF No. 76 at ¶ 3.) To date, Plaintiff's
Counsel has not filed a supplemental report or otherwise provided
the Court with the requested information;

2. The Court's Order also required Plaintiff to produce text
messages and document attachments by November 18, 2020. (ECF
No. 74 at 1-2.) Defendants represented that as of November 20,
2020, Plaintiff had not produced the text messages or attachments.
(ECF No. 80 at 5.) Plaintiff has not rebutted this allegation;

*See* Doc. No. 82.[5]

On December 4, 2020, the Court convened a hearing with both parties to discuss

plaintiff's continuing contempt and discovery deficiencies. In response to plaintiff's arguments

---

[5] Plaintiff filed a motion for reconsideration of this Order arguing that compliance with discovery
obligations under the Federal Rules would be overly costly and burdensome. *See* Doc. No. 83.
This motion was denied. *See* Doc. No. 85.

that complying with outstanding discovery orders would be overly burdensome and prejudicial,

Judge Wolson explained:

> And I hear your prejudice argument, Mr. Carson. But I've got to tell you that there's a concern that from my end is bigger than the question of prejudice to the defendants and frankly is bigger than the prosecution of this case. Right? It strikes fundamentally at the justice system and at the system of law.
>
> When judges issue orders, they have to be complied with and the parties are not just free to disregard them. You can come back to me, and if there's a problem with compliance, you can tell me and we can talk about that. But you cannot come back to me and just say later, well, it didn't hurt anybody so I didn't really have to comply. That's not how our system has to work. Our system has to work in a way that there is compliance.

*See* Doc. No. 92 at p.10.  The Court also engaged in extensive discussion with plaintiff's counsel

concerning the requirements for producing electronic documents, including the preservation of

metadata and the parent-child relationships between files and attachments:

> **THE COURT**: Here's the thing. Ultimately, it's not my problem. Okay? It's your problem how you get the defendants the data to which they're entitled. But they are entitled, not just because of my order but because of the Federal Rules of Civil Procedure, to metadata that will allow them to the parent-child relationships of ESI that you have produced. And I don't care –
>
> Mr. Carson, I can see you, so I can see you smirking at me and rolling your eyes.
>
> **MR. CARSON**: Your Honor, I'm by no means smirking at you and rolling my eyes. What I am doing is expressing frustration, because I don't even know what that means, what the parent-child relationship is, and –
>
> **THE COURT**: That's part of the problem. It is your responsibility to know that.
>
> **MR. CARSON**: But, Your Honor –

14

**THE COURT**: First of all, we raised this at an earlier hearing. We talked about it. So if you didn't know what it meant, you either had to ask or go educate yourself.

*Id.* at p.24.  On the subject of the necessity of an electronic discovery vendor, the Court

specifically instructed Plaintiff as follows:

**Plaintiff needs to engage an e-discovery vendor in this case.** It's clear to me that, I mean, Cornerstone is just not able to fulfill that obligation. Again, if you all want to stipulate and talk to Cornerstone and then stipulate that Cornerstone is going to fulfill that role, I'm willing to have that happen, but there needs to be an e-discovery vendor who is specifically engaged in this case. And it's plaintiff's obligation to do that because it's her discovery burden. **So I want a report by next Tuesday, December the 8th, that plaintiff has engaged an e-discovery vendor. I want to know who it is. And want to know the process that's been put in place with that e-discovery vendor to obtain the universe of potentially responsive documents.**

*Id.* at p.72-73 (emphasis added).

The Court then issued its December 4, 2020 Order finding Plaintiff's counsel in contempt

and ordering Plaintiff to "engage an electronic discovery vendor to complete Plaintiff's

production of documents in this matter" and that all responsive documents be produced by

December 15, 2020  *See* Doc. No. 85.  Judge Wolson also ordered Plaintiff's counsel $50 per

day for each day that he failed to comply with any of the deadlines in his Order and further

ordered Plaintiff's counsel "to compete six continuing legal education credits on the topic of e-

discovery by March 31, 2021." *Id.* at p.4.[6]

---

[6] On December 11, 2020, Plaintiff filed a motion for extension of time to produce the documents by the Court ordered deadline, which was denied.  *See Barbounis* ECF Nos. 90 and 97, respectively.  On December 16, 2020, Plaintiff filed another motion for reconsideration of Judge Wolson's December 4 Order, which was likewise denied.  *See Barbounis* ECF Nos. 98 and 99, respectively.  On December 18, 2020, Plaintiff filed *another* motion for reconsideration, which was summarily denied by Judge Wolson.  *See* ECF Nos. 101 and 102, respectively.

In response to Plaintiff's counsel's concerns about privacy, the Court instructed that with respect to the "text message threads that Defendants' counsel identified in response to the Court's prior Order (ECF No. 74) . . . Plaintiff may designate all of the text messages 'Attorneys' Eyes Only or 'AEO' in the first instance" and that such designated text messages "may only be disseminated to outside counsel working on this case and their support staff, **and may only be used for purposes of prosecuting or defending this action.**"  *See* Doc. No. 85 (emphasis added).  The Court also provided the following procedure for addressing inappropriately designated AEO documents:

> For any text message that Defendants think an AEO designation is not appropriate, Defendants shall identify the text message for Plaintiff and provide the basis for Defendants' contention that an AEO designation is not appropriate. Upon receiving such a challenge, Plaintiff's counsel shall respond in three (3) business days with Plaintiff's position about the confidentiality of the text messages identified. If Plaintiff's counsel does not respond, then Plaintiff will be deemed to have withdrawn the AEO designation. The parties shall then have five (5) business days to meet and confer about the designations.

*Id.*  No other documents are designated as AEO under the terms of the December 4, 2020 Order.

Yet again, Plaintiff failed to comply with the Court's order and requested reconsideration and additional time, which the Court denied.  *See* Doc. Nos. 96 and 97, respectively.  The next day, Plaintiff filed another motion for reconsideration which the Court again denied, noting, "After many months of failing to comply with her discovery obligations (including her failure to hire a vendor to assist with the gathering and production of electronic discovery), and despite numerous Court orders and admonishments to do so, the Court set a final deadline of December 15, 2020, for Ms. Barbounis to turn these documents over to Defendants."  *See* Doc. No. 99. Three days later, Plaintiff moved yet again for reconsideration, *see* Doc. No. 101, which was denied by this Court.  *See* Doc. 102.

16

Although Plaintiff turned over the text message threads referenced in the Court's December 4 Order, despite clear instruction from the Court and multiple unambiguous denials of her repeated efforts to persuade the Court to reconsider, Plaintiff never hired an ediscovery vendor to assist her with the production of her responsive documents with necessary metadata and preservation of the parent-child relationships.  *See* Exhibit A at ¶¶ 6-7.  Instead, after multiple failed efforts to produce on her own the information in accordance with the Court's order, Plaintiff, still without the assistance of an ediscovery vendor, dumped on Defendant two zip files containing nearly 30 gigabytes of raw, unprocessed, unfiltered and unbates-stamped information from Plaintiff's devices.  *Id.* at ¶ 8.  This data, which was not covered by the AEO provisions of the Court's December 4 Order but which was nevertheless treated as such by the undersigned, contained a slew of irrelevant, highly personal and often pornographic imagery, audio and video that outside counsel for Defendants were required to manually sift through, review and filter – an extraordinarily time-consuming process which took hundreds of attorney-hours and months to complete, and which ultimately revealed several pieces of highly relevant, material information that Plaintiff had previously failed to produce, *id.* at ¶¶ 9-10, and which formed the basis for much of Defendants' statement of undisputed material facts.  *See* Doc. No. 109-3.

Plaintiff's obstinate refusal to abide this Court's repeated instructions to hire an ediscovery vendor to facilitate this production resulted in this unorganized, unfiltered data dump on Defendants' counsel.  Had Plaintiff followed this Court's instructions, Defendants would have received a processed, filtered load file with bates-stamped documents ready to load into its review tool.  Instead, Defendants were required to do Plaintiff's work for her, manually reviewing, filtering and segregating the relevant information from the irrelevant, personal and

salacious.  *Id.* at ¶ 10.  For Plaintiff to have long abused the discovery process, to have ignored repeated Orders from this Court to hire an ediscovery vendor, to dump all of her raw data on Defendants' counsel for them to sort and filter, and then to inaccurately complain that Defendants somehow abused this process smacks of bad faith.

Nevertheless, despite Plaintiff's refusals, Defendants' nevertheless treated Plaintiff's sensitive, personal data with care, manually reviewing and filtering out sensitive and irrelevant personal information and sexual content and segregating it from outside view.  And although such information, including sexual content, is at least arguably relevant to the claims and damages that Plaintiff has brought against Defendants in this matter, Defendants and their counsel chose not to include or attach such information to their motion for summary judgment. Had they wished to embarrass, harass or "dox" Plaintiff as she now claims, they certainly could have done so.  Instead, Defendants exercised restraint and acted in good faith to exclude such documents from their filing, and used only relevant, material information solely in defense of Plaintiff's claims or in the prosecution of its counterclaims.  *Id.* at ¶ 11.

3.   Plaintiff's Claim That Defendants' Violated The AEO Provisions of the December 4, 2020 Order Are Incorrect.

Throughout her motion for contempt, Plaintiff claims that Defendants violated the "attorneys-eyes only" provisions of the Court's December 4, 2020 Order by filing as summary judgment exhibits documents belatedly produced by Plaintiff.  Once again, Plaintiff is incorrect.

First, as set forth above, the December 4, 2020 Order set forth a specific procedure for production of certain enumerated text messages through an electronic discovery vendor, which would then receive AEO protection.  As detailed above, Plaintiff herself failed to follow the Court's order and retain an ediscovery vendor, which complicated, muddied and delayed Plaintiff's own production.  Beyond that, Plaintiff erroneously complains that the Court's order

applied to generalized documents as well, which it clearly does not.  *See* Doc. No. 85 at p.3 (extending confidentiality protection to "text messages that Plaintiff produces pursuant to this Order").

Second, and more importantly, the Court's AEO Order specifically allows Defendants to use any documents produced by Plaintiff, including specifically those designated by Plaintiff as AEO, "for purposes of prosecuting and defending this action."  *See* Doc. No. 85 at p.3.  This is expressly what Defendants have done here in using excerpts from documents produced by Plaintiff as exhibits to their summary judgment motion, and have not used any of Plaintiff's documents, whether text messages designated AEO or not, for any purpose beyond that.  Per the terms of the Order, Defendants do not need Plaintiff's authorization to use relevant, material documentation in support of their summary judgment motion or in opposition to Plaintiff's motion.[7]

Lastly, both the undersigned and his predecessor counsel, David Walton and Leigh Ann Benson, discussed the AEO designation and de-designation of certain documents both in writing and by phone, including as to text messages that were in Plaintiff's counsel's possession for more than a year prior to the December 4, 2020 Order, and those that were produced prior to that order's issuance by the Court.  Defendants noted their position that an AEO designation was inappropriate as to these documents and that, due to counsel's failure to respond timely or substantiate the need for such a designation, any AEO protection was waived pursuant to Paragraph 5(c) and (d) of the December 4, 2020 Order.

---

[7] Plaintiff also complains, without any specificity or transcript citations whatsoever, that "Defendants produced exhibits during depositions that were subject to the AEO designation in front of the court reporter and all the parties in attendance."  *See* Doc. No. 132 at p.15. Defendants have been unable to locate a single instance wherein Plaintiff's counsel objected to the use of such a document on an AEO basis, and Plaintiff cites none.

Furthermore, after Plaintiff continued to insist upon producing documents without the

assistance of an ediscovery vendor, the undersigned and Plaintiff's counsel engaged in several

telephonic communications concerning the raw data produced by Plaintiff and the graphic sexual

content produced by Plaintiff to Defendants' counsel.  The undersigned agreed to treat any

graphically sexual video and audio content as confidential and treated as attorneys' eyes only,

promised Plaintiff's counsel that such material was extremely unlikely to be relevant to this

matter and thus would not be used without a prior discussion with Plaintiff's counsel.

Defendants have held to those representations.

As set forth above, Plaintiff herself failed to follow the Court's December 4, 2020 Order

to engage an ediscovery vendor to assist her with her production, greatly increasing the amount

of irrelevant information turned over to Defendants' counsel, and exponentially multiplying the

amount of time, effort and technical resources Defendants were forced to expend to process and

review this information.  Plaintiff should not now be heard to erroneously seek the protections of

an order that she herself failed repeatedly to follow.

    4.    <u>Plaintiff's Claims That Overly Long Exhibits Are Available On The<br>Public Docket Are False.</u>

Plaintiff asserts that Exhibit 12 and Exhibit 14 are "976 Pages of text communications

from May 2017 to January 2020 between Lisa Barbounis and her mother Jane Reynolds," and

that "Today, Lisa Barbounis and Jane Reynolds [sic] entire conversation spanning three years is

available to the public, ***twice, without any jusitification.***" *See* Doc. No. 132 at pp. 11-12.

Likewise, Plaintiff claims that a 1,217-page conversation between Plaintiff and Daniel Thomas

(as Exhibit 55), a 699-page conversation between Plaintiff and Tommy Robinson (as Exhibit

116), a 736-page communication between Plaintiff and S. Watson (as Exhibit 124), a 331-page

communication between Plaintiff and Jasmin Bishop (as Exhibit 146) are presently on the

docket.  As a simple check of the docket, or a simple communication with Defense counsel

would have revealed, Plaintiff's assertions is false.

The exhibits referenced by Plaintiff are currently on the docket as follows:

- Exhibit 12 is not a 976-page document as Plaintiff claims, but a one-page excerpt of relevant communications between Plaintiff and Reynolds.  *See* Doc. No. 111-1 at pp. 190-191.

- Exhibit 14 is not a duplicate of Exhibit 12 as Plaintiff claims, but a single page that was "Intentionally Left Blank."  Doc. No. 111-1 at p. 204.

- Exhibit 55 is not a 1,217 page document as Plaintiff claims, but a one page text message excerpt in which Plaintiff discusses quitting and looking for a job.  *See* Doc. No. 111-2 at pp. 139-140.

- Exhibit 116 is a is not a 699-page document as Plaintiff claims, but a three-page message excerpt of relevant materials between Plaintiff and Tommy Robinson.  *See* Doc. No. 111-4 at pp. 6-7.

- Exhibit 124 is not a 736-page document on the "docket available for public consumption, as Plaintiff claims, but a one-page message excerpt of relevant communications between Plaintiff and a potential witness in this case.  *See* Doc. No. 111-4 at pp. 36-37.

- Exhibit 146 is not a 331-page document "available to the public" as Plaintiff claims, but a nine-page excerpt of selected text messages between Plaintiff and Jazmin Bishop. *See* Doc. No. 111-10 at pp. 4-12.

In her confusion, Plaintiff may be working from an old set of exhibits that were sent to

her counsel on a flash drive and briefly uploaded to the docket in error as full documents rather

than excerpts.  Defendants noticed that complete documents, rather than excerpts, had been

uploaded to the docket in error the day after filing their summary judgment exhibits, and

immediately reached out to the Court and to the clerk's office to remove the documents filed in

error.  As the docket specifically reflects, this process was completed on March 4, 2021 with the

Court's approval.  *See* Exhibit A at ¶¶ 13-16.

Had Plaintiff's counsel simply checked the docket or completed the meet-and-confer

process with Defendants, he would have been informed of his error.  But beyond that, Plaintiff's

counsel was already aware of the replacement of Defendants' exhibits because he consented to

the process in writing.  *Id.* at ¶ 15.  In short, Plaintiff's assertion that Defendants have doxed her

or intentionally filed exhibits containing personal, irrelevant or salacious information is simply

wrong.

     5.     <u>Plaintiff Has Suffered No Prejudice From Defendants' Non-Production Of Documents Relevant To This Matter.</u>

As an initial matter, several of the documents that Plaintiff alleges were not produced by

Defendants were, in fact, produced by Plaintiff herself.  *See, e.g.*, Exhibits 6, 10, 19, 21, 33, 80,

106.  Others were produced by Defendants, contrary to Plaintiff's claims.  *See, e.g.,* 29 (produced

in part), 31.  However, as the undersigned had previously informed Plaintiff's counsel,

Defendants undoubtedly and mistakenly included as exhibits to their summary judgment motion

documents that were not previously produced.

Plaintiff cannot, however, establish that she has suffered any prejudice as a result of the

non-production of Defendants' summary judgment exhibits.  These documents were not sprung

on Plaintiff at trial, nor were they "hidden" by Defendants to gain some kind of nefarious, unfair

advantage.  *See, e.g., Kinney v. Trustees of Princeton Univ.*, No. CIV A 04-5252 MLC, 2007 WL

700874, at *6 (D.N.J. Mar. 1, 2007) (denying discovery sanctions because "no trial date has been

set in this matter [and therefore] a failure to produce the documents is likely to create minimal, if

any, disruption of trial.").

Rather, the exhibits were produced at summary judgment, and Plaintiff had more than ten weeks with these documents in her possession to address them as she saw fit, or to raise issues with their production with Defendants' counsel.  With two very limited exceptions, Plaintiff seems to acknowledge that most of the documents that she claimed Defendants did not produce are, while relevant, tangentially so, and are useful for providing background and context to facts not otherwise disputed.[8]

First, Plaintiff claims that she was prejudiced by the non-production of Exhibit 52 – meeting notes of the November 2, 2018 meeting, as relevant to Defendants' *Faragher-Ellerth* defense.  *See* Doc. 132 at p.21.  As this Court has now denied Defendants' motion for summary judgment based on the *Faragher-Ellerth* defense, no prejudice exists here.

Second, Plaintiff claims that the non-production of Exhibit 73, which is an email from Plaintiff to Gregg Roman concerning the June 2018 rally for Tommy Robinson.  Plaintiff complains that she did not have the opportunity to question Roman about this email at his deposition, and that as a result, Plaintiff's counterclaims should be dismissed.  Plaintiff's argument ignores the critical point that the email to which she refers is a single document in a very large cache of information that Defendants' provided to support their counterclaims, and Plaintiff fails to explain how any line of inquiry during a deposition of Roman would "prove" that Defendants' counterclaims have no merit, as she now argues.

---

[8] Plaintiff spends much of her motion arguing the interpretation of the evidence proffered by Defendants, using her motion for contempt as a sort of sur-reply brief that she chose not to file. See, e.g., Doc. No. 132 at p. 19-23.  Plaintiff had ample time and four prior briefing opportunities to address these issues with the Court.  Plaintiff also raises alleged discovery issues that she never raised during the discovery period, never addressed with Defendants' counsel prior to this motion, and on which she never previously moved to compel.

As part of the meet-and-confer process, the undersigned told Plaintiff's counsel that to the extent any prejudice existed as a result of non-production by Defendants, Defendants would work with Plaintiff in good faith to cure that prejudice, including but not limited to offering up witnesses to be deposed by Plaintiff on the subject of the relevant documents, at Defendants' cost. *Kinney,* 2007 WL 700874, at *6 (months from trial, any prejudice that plaintiff established could be cured by allowing depositions). Plaintiff chose not to avail herself of that offer, and instead pursued this motion.

## III.  CONCLUSION

The issues raised in Plaintiff's motion for contempt could have and should have been resolved through the meet-and-confer process, which was ongoing at the time of Plaintiff's filing, and which Plaintiff terminated without warning or explanation. Failing that, Plaintiff could have addressed these issues in her extensive summary judgment briefing. Further still, Plaintiff is incorrect in many of her assertions in her motion, which could have easily been resolved and corrected via discussions between counsel. Lastly, Plaintiff has failed to establish any prejudice or malfeasance on the part of Defendants' warranting the extreme sanction of contempt. For the reasons set forth above, Defendants respectfully request that the Court deny Plaintiff's Motion for Contempt, and award Defendants their reasonable attorneys' fees incurred in responding to an unnecessary motion.

Respectfully submitted,

By: */s/ Jonathan R. Cavalier*
    Jonathan R. Cavalier
    COZEN O'CONNOR
    One Liberty Place
    1650 Market Street
    Philadelphia, PA 19103
    Phone: (215) 665-2000

    *Attorneys for Defendant*
    *The Middle East Forum,*
    *Daniel Pipes and Gregg Roman*

By: */s/ Sidney L. Gold*
    Sidney L. Gold
    William Rieser
    SIDNEY L. GOLD & ASSOCIATES P.C.
    1835 Market Street, Suite 515
    Philadelphia, PA 19103
    (215) 569-1999

    *Attorneys for Defendant*
    *Gregg Roman*

DATED:  June 1, 2021