# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LISA BARBOUNIS | : | CIVIL ACTION |
| | : | NO. 2:19-cv-05030-JDW |
| Plaintiff, | : | NO. 2:20-cv-02946 |
| -vs- | : | |
| | : | |
| THE MIDDLE EAST FORUM, et al. | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |

---

## DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF ALLEGED PRIOR BAD ACTS CONCERNING OTHER LITIGANTS AND NON-PARTIES

---

Dated: October 1, 2021

COZEN O'CONNOR
Jonathan R. Cavalier
1650 Market Street, Suite 2800
Philadelphia, PA 19103
(215) 446-0031

SIDNEY L. GOLD & ASSOCIATES, P.C.
Sidney L. Gold
William Rieser
1835 Market Street, Suite 515
Philadelphia, PA 19103
(215) 569-1999

*Attorneys for Defendant*
*The Middle East Forum,*
*Daniel Pipes and Gregg Roman*

CLARK HILL PLC
Kevin Levine, Esq. (PA Bar No. 326492)
Clark Hill PLC
Two Commerce Square
2001 Market Street, Ste. 2620
Philadelphia, PA 19103
(215) 640-8500

Margaret M. DiBianca, Esq. (DE No. 4539)
CLARK HILL PLC
824 N. Market Street, Ste. 710
*Admitted Pro Hac Vice*
Wilmington, DE 19801
P: (302) 250-4748

1

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 3

II.     ARGUMENT ...................................................................................................... 4

      A.      The Standards For Determining The Relevance Of So-Called "Me Too" Evidence.................................................................................................... 4

      B.      The Standards For Balancing Relevance And Prejudice Under Federal Rules of Evidence 401 And 403............................................................................ 6

      C.      The "Me Too" And Prior Bad Acts Evidence Plaintiff Attempts To Offer At Trial Must Be Excluded As Because It Is Irrelevant, More Prejudicial Than Probative, Confusing To The Jury, Needlessly Cumulative And Would Lead To A Series Of Mini-Trials On Each Claim. ................................................................. 7

            1.      **The Testimony Of Plaintiff Lisa Barbounis Concerning Alleged Harassment of Others.**.............................................................. 9

            2.      **The Testimony Of Patricia McNulty Concerning AIPAC And Her Own Claims Against Defendants.**........................................ 10

            3.      **The Testimony Of Caitriona Brady Concerning Her Claims Against The Forum And Gregg Roman.**............................................ 11

            4.      **Indirect "Me Too" Testimony Offered By Plaintiff, The Other Litigants And The Non-Party Witnesses.**............................... 12

            5.      **Other Litigants and Non-Party Witnesses Without First Hand Knowledge Of Plaintiff's Claims Should Be Barred From Testifying, And All Witnesses Should Be Precluded From Testifying About Prior Alleged Bad Acts.**................................................................... 14

            6.      **In The Alternative, This Court Should Strictly Limit "Me Too" Testimony From Plaintiff And The Other Litigants.**.................... 15

III.    CONCLUSION ................................................................................................ 16

## I.      INTRODUCTION

Plaintiff's pretrial memo is rife with witnesses and exhibits that have no relevance to the ultimate issues in this matter and which, if introduced by Plaintiff and permitted by this Court at trial, would unduly prejudice Defendants and confuse the jury.  In short, Plaintiff has listed as witnesses for trial (1) four other plaintiffs (collectively the "Other Litigants") with active or past claims against Defendants, all of whom were or are represented by the same law firm representing Plaintiff in this case, and from whom Defendants anticipate that Plaintiff will attempt to elicit testimony of their own separate hostile work environment claims, and (2) at least seven other witnesses (collectively "Non-Party Witnesses") who have no first-hand knowledge or information to offer concerning Plaintiff's own hostile work environment claims at the center of this case, and from whom Defendants anticipate Plaintiff will attempt to elicit testimony referring to unproven and untested allegations against Defendants which have no bearing on Plaintiff's own claims.  In so doing, Plaintiff is engaging in a clear attempt to persuade the jury to ignore the weaknesses in her own case and to introduce irrelevant evidence that serves no purpose other than to prejudice the jury against Defendants.  Plaintiff should be precluded from doing so.

This kind of evidence must be excluded at trial for at least three reasons: (1) the proffered testimony and evidence that Plaintiff is expected to try to introduce is so far attenuated from and unrelated to Plaintiff's own remaining claims as to render it irrelevant; (2) the prejudicial effect of the cumulative nature of this evidence far outweighs any minimal probative value that it might have in tending to prove whether *this* particular Plaintiff's claims in *this* particular case are valid; and (3) such evidence would inevitably and irrevocably confuse the jury, which would be forced to sort through a wide assortment of unrelated claims from Other Litigants and non-parties, and

Defendants would be forced to conduct a series of mini-trials, essentially litigating each of the Other Litigants' and Non-Party Witnesses' claims and credibility.

The upcoming trial in this matter is about whether Plaintiff Lisa Barbounis can carry her burden to establish that she was subjected to severe and pervasive sexual harassment and suffered damages as a result, and if so, whether Defendant Daniel Pipes aided and abetted that harassment.  She should not be permitted to bootstrap her own claims to those of the Other Litigants and Non-Party Witnesses in an effort to paint Defendants as generalized "bad actors" and to distract the jury from the weaknesses in her own claims.  As such, this evidence must be excluded, and the case must be tried on the evidence which tends to prove or disprove Plaintiff's own claims of hostile work environment sex discrimination.[1]

## II.     ARGUMENT

### A.     The Standards For Determining The Relevance Of So-Called "Me Too" Evidence.

"A district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules. Assessing the probative value of [the proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403...."  *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S.

---

[1] Notably, Plaintiff Marnie Meyer-O'Brien, represented by the same law firm as Plaintiff Barbounis, attempted precisely this strategy at trial recently in *O'Brien v. The Middle East Forum, et al.*, Civ. A. No. 19-cv-06078 (E.D. Pa.).  However, Judge Gallagher properly limited testimony from other witnesses to alleged acts of discrimination (1) against the Plaintiff, which they observed first-hand and (2) against others, which the Plaintiff observed or which were reported to Plaintiff, and thus might have impacted her perception of a hostile work environment, and instructed the jury not to consider evidence of harassment reported to Plaintiff for its truth, but only for the effect on the listener.  Here, unlike Marnie Meyer-O'Brien, Plaintiff Barbounis did not take reports of harassment from other employees, and as such, there is no relevant purpose for which similar evidence might be admitted in this case.

379, 384, 128 S. Ct. 1140, 1145, 170 L. Ed. 2d 1 (2008) quoting *United States v. Abel*, 469 U.S.

45, 54, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984).

In the Third Circuit, "so-called 'me too' evidence in an employment discrimination case

is neither per se admissible nor per se inadmissible. *Mandel v. M & Q Packaging Corp*., 706

F.3d 157, 167 (3d Cir. 2013). Rather, the relevancy, and thus the potential admissibility, of

evidence pertaining to alleged discrimination against other employees "is fact based and depends

on several factors, including how closely related the evidence is to the plaintiff's circumstances

and theory of the case." *Id.* citing *Mendelsohn*, 552 U.S. at 388. "Among the factors relevant to

the determination as to whether or not to allow the introduction of 'me too' evidence in

employment discrimination cases are whether the alleged discriminatory behavior by the

employer is close in time to the events at issue in this case; whether the same decision-makers

were involved; whether the witness and the plaintiff were treated in a similar manner; and

whether the witness and the plaintiff were otherwise similarly situated." *Barnett v. PA*

*Consulting Grp., Inc*., 35 F. Supp. 3d 11, 22 (D.D.C. 2014).

In short, so called "me too" evidence "must have a proper purpose and be admissible"

under the Federal Rules of Evidence; and, [t]he proponent of such evidence must be able to

articulate a way in which the tendered evidence logically tends to establish or refute a material

fact in issue, **and that chain of logic must include no link involving an inference that a bad**

**person is disposed to do bad acts.**" *Graham v. Monmouth Cty. Buildings & Grounds*, No.

316CV01578PGSLHG, 2020 WL 3923921, at *3 (D.N.J. July 10, 2020) (emphasis added).

In *Martinelli v. Penn Millers Ins. Co*., 269 F. App'x 226, 229 (3d Cir. 2008), the plaintiff

objected to the district court's exclusion of "me too" evidence on the grounds that it was not

sufficiently relevant, and appealed the district court's instruction to the jury that "this case is to

5

be decided, solely, on the employer's treatment of [Plaintiff], it has nothing to do with any other employees."  The Third Circuit rejected the plaintiff's appeal, holding that "This was nothing more than an accurate statement of the law."  *Id.*

As explained in detail below, the same holds true here.

**B.      The Standards For Balancing Relevance And Prejudice Under Federal Rules of Evidence 401 And 403.**

Federeal Rule of Evidence 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Accordingly, "Rule 403 is an 'umbrella rule' spanning the whole of the Federal Rules of Evidence.  *Coleman v. Home Depot, Inc*., 306 F.3d 1333, 1343 (3d Cir. 2002) quoting FEDERAL RULES OF EVIDENCE MANUAL 251 (Stephen A. Saltzburg et al. eds., 7th ed. 1998) ("[T]he Trial Judge must apply [Rule 403] in tandem with other Federal Rules under which evidence would be admissible.").

Importantly, "Rule 403 recognizes that a cost/benefit analysis must be employed to determine whether or not to admit evidence; relevance alone does not ensure its admissibility. **That is, evidence may be excluded if its probative value is not worth the problems that its admission may cause, e.g. unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence.**" *Id.* (emphasis added).  "In balancing, 'the proper equation places on one side the maximum reasonable probative force for the offered evidence,' while 'the other side of the equation should include the likely prejudicial impact of the evidence.'" *Id.* quoting FEDERAL RULES OF EVIDENCE MANUAL

242 (Stephen A. Saltzburg et al. eds., 7th ed. 1998).  "The balancing test in Rule 403 ensures that

juries are not presented with evidence that is far less probative than it is prejudicial."  *Id.*

As explained in detail below, even if deemed relevant (which it is not), the "me too"

evidence Plaintiff presumably intends to offer is unfairly prejudicial, likely to confuse the issues

and mislead the jury, delay this trial far beyond time allotted and result in a cumulative

presentation of evidence intended to distract the jury from the merits of the Plaintiff's claims.

*See, e.g., Troy v. State Corr. Inst.-Pittsburgh*, No. 2:11CV1509, 2013 WL 5511265, at *7 (W.D.

Pa. Oct. 4, 2013) ("Plaintiffs offer this evidence to prove that [Defendants] acted in conformity

with a character tendency to harass women, a purpose not permitted under Federal Rule of

Evidence section 404(3)(b) and therefore, evidence of [a third-party's] allegations are

inadmissible to prove Plaintiffs' allegations.").

### C.     The "Me Too" And Prior Bad Acts Evidence Plaintiff Attempts To Offer At Trial Must Be Excluded As Because It Is Irrelevant, More Prejudicial Than Probative, Confusing To The Jury, Needlessly Cumulative And Would Lead To A Series Of Mini-Trials On Each Claim.

The Plaintiff here, along with Other Litigants Marnie O'Brien,[2] Patricia McNulty,[3]

Caitriona Brady[4] and Delaney Yonchek,[5] are all represented by the same law firm – the Derek

---

[2] In August 2021, a jury found for Defendants on all of O'Brien's claims against Defendants. *See* Doc. No. 143 in Case. No. 19-cv-06078.

[3] McNulty's claims remain pending before Judge Brody in a pre-summary judgment posture. *See* Civ. A. No. 19-cv-05029.

[4] Brady's discrimination and hostile work claims were unilaterally and voluntarily dismissed with prejudice by Brady and her counsel on July 6, 2020, on the morning of a scheduled hearing on Plaintiff's contempt .  *See* Doc. Nos. 61 and 62 in Civ. A. No. 19-cv-05082.  Brady has commenced a new action against Defendants asserting state law discrimination claims and breach of contract. *See* Civ. A. No. 21-cv-02252.  Defendants are moving to dismiss those discrimination claims as barred by *res judicata.*

[5] Yonchek voluntarily withdrew her claims against Defendants in December of 2019.  *See* Doc. Nos. 7 and 8 in Civ. A. No. 19-cv-05083.

Smith Law Group.  As such, had they wished to try their claims together, the Plaintiff and the Other Litigants could have easily brought this matter as a consolidated action.  They chose not to, likely so they would have four separate bites at the proverbial apple (and four bites at an award of attorneys' fees) should they prevail in one or more of these cases.  Instead, they apparently intend to present each of their cases, along with unsubstantiated allegations relating to or coming from Non-Party Witnesses, in each action in the hopes that the cumulative effect of these unproven allegations will bolster each plaintiff's own case in turn.  They should not be rewarded for their choice not to move to consolidate the matters while forcing Defendants to defend against five separate lawsuits but trying each case as if they had been consolidated.  This case is about the surviving claims brought by Plaintiff Lisa Barbounis – or, as the Third Circuit analogously affirmed as an "accurate statement of the law" in *Martinelli v. Penn Millers Ins. Co*., 269 F. App'x 226, 229 (3d Cir. 2008), "this case is to be decided, solely, on the employer's treatment of [Lisa Barbounis], it has nothing to do with any other employees."

As detailed below, permitting the testimony of the Other Litigants, as well as the testimony about alleged harassment of non-parties who never brought claims, would turn this straightforward trial into a series of mini-trials on the merits and credibility of each of these witnesses (exponentially multiplying the length of time needed for trial), require admission of hearsay from witnesses not present at trial, confuse the jury and prejudice the defense.  *See, e.g., Chavis v. Clayton Cty. Sch. Dist*., 147 F. App'x 865, 867–68 (11th Cir. 2005) (excluding evidence due to "a risk of substantially unfair prejudice to Defendants [that would have] allowed this trial to become a set of mini-trials on Defendants' personnel decisions, [and] these mini-trials could have confused the jurors into thinking that the mini-trials were the main case.").  In short, Plaintiff's effort to call these Other Litigants and Non-Party Witnesses, and to elicit testimony

from each concerning the allegations of each, amounts to a trial theory that Defendant Gregg Roman is "a bad person … disposed to do bad acts." *Graham*, 2020 WL 3923921, at *3. This is plainly improper and should not be permitted.

**1.      The Testimony Of Plaintiff Lisa Barbounis Concerning Alleged Harassment of Others.**

As this Court is aware, summary judgment was granted in part on Barbounis' claims, eliminating her claims for retaliation, constructive discharge, and negligent hiring and supervision – the sole remaining stand-alone claim in her case is for garden variety hostile work environment sexual harassment under federal and state law, and she maintains derivative claims against Defendant Pipes for aiding and abetting that hostile work environment. The gist of Plaintiff's claims, according to her pretrial memo, are that Defendant Roman "sexually assaulted" her in March 2018 at the AIPAC Conference in Washington, D.C. and that a week later, on a trip to Israel, Defendant Roman "sexually assaulted" her again and subjected her to "sexual suggestions." Certainly, Plaintiff is entitled to testify concerning the substance of these allegations, and to present witnesses who have first-hand knowledge of these alleged events, in an effort to make out her case.

Nevertheless, Plaintiff almost certainly intends to testify about the allegations others made against the Forum, Roman and Pipes, and to provide detail concerning those unproven allegations against them. For example, Plaintiff herself, during her testimony as a witness at the O'Brien trial, violated the *in limine* rulings of the Court when she claimed that Delaney Yonchek brought pepper spray to a meeting because she was afraid of Defendant Roman. This remark, along with others, led to several rebukes from Judge Gallagher, multiple instructions to the jury to disregard her testimony, and ultimately, the striking of parts of Plaintiff's testimony. *See, e.g.,* Doc. 162 in Case No. 19-cv-06078 at p.11 n.2 ("The Court was, however, forced to strike

9

testimony by Ms. Barbounis during trial.  Despite the Court's repeated admonitions concerning counsel's obligation to ensure that witness testimony did not run afoul of the Court's evidentiary rulings, Ms. Barbounis testified that an employee brought pepper spray into the office out of fear of Defendant Roman.").

Plaintiff Barbounis should be precluded from testifying about allegations made by Other Litigants and other Forum employees as such testimony has no relevance to the claims at issue and would have an irreparable prejudicial impact on the jury.

> **2.**     **The Testimony Of Patricia McNulty Concerning AIPAC And Her Own Claims Against Defendants.**

Like Lisa Barbounis, Patricia McNulty has an active case alleging sexual harassment against The Middle East Forum, Daniel Pipes and Gregg Roman.  *See* Docket No. 2:19-cv-05029-AB.  The docket in McNulty's case currently contains 76 entries and is presently in the midst of discovery.  Her amended complaint is 540 paragraphs long, was drafted by the same counsel as Barbounis has, and mirrors many of Barbounis' allegations (including the entire story of Barbounis in Israel, for which McNulty was not present and of which she has no first-hand knowledge).

Like Barbounis, McNulty was at AIPAC and alleges that Roman "sexually assaulted" her on a couch at an afterparty with more than 10 people present in the room.  Specifically, she alleges that Roman picked her up by her "upper thigh and rear end area" in order to lift her on to his lap, and then began whispering inappropriate sexual advances in her ear."  As with the allegations of Barbounis, Defendants deny these allegations, and there are no corroborating first-hand non-party witnesses offered by Plaintiff Barbounis or McNulty to support them.

To the extent that McNulty observed what occurred between Roman and Plaintiff Barbounis on the couch at AIPAC, she should be permitted to testify as to her observations –

such evidence is plainly relevant and probative to the case at hand.  But McNulty's testimony should be limited to what she observed happen to Plaintiff, and she should be precluded from injecting her own claims into the midst of this trial.  Those claims are irrelevant to those of the Plaintiff here, and any minimal probative value gained by forcing Defendants to try McNulty's claims and credibility, in the midst of this trial on Plaintiff Barbounis' claims, would be far outweighed by the substantial prejudice and confusion it would create in the jury.

  **3.**  <u>**The Testimony Of Caitriona Brady Concerning Her Claims Against**</u>
<u>**The Forum And Gregg Roman.**</u>

  Like Plaintiff Barbounis and Patricia McNulty, Caitriona Brady also has an active case alleging sexual harassment against The Middle East Forum, Daniel Pipes and Gregg Roman. *See* 2:21-cv-02252-MAK.  Brady initially brought suit against Defendants in 2019, but her claims were dismissed with prejudice on July 6, 2020.  *See* Docket No. 2:19-cv-05082-MAK. She has refiled claims based on the same nexus of operative facts.  Her amended complaint in her initial action contained 368 paragraphs, while the initial complaint in her present action contains 346 paragraphs.

  In her initial complaint, Brady accused Roman of sexual assault.  At her deposition, she admitted that her sexual assault allegation was false, and that her attorney had included it (repeatedly) in the complaint as a typo.  Likewise, although Brady had alleged that in her complaint that Roman had sexually harassed her, both she and her attorney expressly disclaimed any allegation that Roman sexually harassed Brady in any way.  Brady was also not supervised by Defendant Roman – she was hired as a development assistant by Matthew Bennett and supervised by him.

  At her deposition, Brady testified that she believed Roman has sexually assaulted two of her co-workers, but admitted she had no first had knowledge of any such assaults, nor did she

personally witness any sexually inappropriate remarks or touching toward anyone by Roman, including herself. In fact, Brady testified that she never heard Roman make a sexual remark of any kind to anyone in her presence. Her information concerning the allegations made by Barbounis are entirely second-hand.

Defendants anticipate that Plaintiff will offer Brady to corroborate Plaintiff's allegations that she was subjected to a hostile work environment. But Brady has no relevant, admissible first-hand evidence to offer on this subject. As with the Other Litigants and Non-Party Witnesses listed by Plaintiff, Brady has nothing to offer that tends to prove or disprove the merits of Plaintiff Barbounis' claims, and will ultimately have a chance to litigate her own claims in her own case. Should she be permitted to testify about her claims, or to parrot what she heard from Barbounis about Barbounis' own claims, Defendants will likely need to spend several hours of trial time cross-examining her on the merits of her claims and her credibility, further expanding the time needed to complete this trial and presenting the jury with yet more confusing issues through which to sort. She should not be permitted to testify about matters concerning which she has no relevant first-hand knowledge, and thus she should be precluded from testifying at all.

4.     **Indirect "Me Too" Testimony Offered By Plaintiff, The Other Litigants And The Non-Party Witnesses.**

Based on her complaint and her pretrial memorandum, in which she states that there "are several other female employees who worked with Gregg Roman who have also leveled accusations against Greg [sic] Roman for sexual harassment and inappropriate sexual touching," Defendants reasonably anticipate that Plaintiff, through her own testimony and that of the Other Litigants and Non-Party Witnesses, will attempt to offer evidence of unsubstantiated harassment allegations concerning past employees of the Forum, including but not limited to Tiffany Lee, Laura Frank, Lara Szott and Aman Patel, and other non-employee witnesses, including but not

limited to Samantha Mandalas, Alana Goodman and "Rosie (last name unknown)".  Defendants anticipate that Plaintiff intends to introduce this testimony to prejudice the jury against Roman and the Forum under the guise of explaining her failure to report her own alleged harassment for many months after the alleged conduct occurred.

Setting aside for a moment her familiarity with the Forum's anti-retaliation and reporting policy, Plaintiff's effort to introduce testimony concerning her subjective and unsupported belief about the circumstances involving these other women is classic Rule 403-barred evidence. Using her own failure to report harassment as a way to introduce hearsay evidence of what she believes to be inappropriate conduct involving other women – of which she has no first-hand knowledge – would perversely incentivize those in similar positions to simply fail to timely report harassment and, when challenged on it, to claim fear due to other past alleged instances of mistreatment that may or may not be true, that may or may not involve similar conduct, and that may or may not be mitigated or explained by legitimate personnel decisions.

On the other hand, if Plaintiff, the Other Litigants and the Non-Party Witnesses are permitted to testify about alleged prior bad acts involving other employees that are unrelated to the present case, Defendants will once again be forced to engage in a series of mini-trials, via which Defendants will introduce evidence to show that none of the other women named by Plaintiff were actually subject to harassment or terminated for reasons relating to their reporting of any such conduct.  To do so, Defendants will be forced to call a slew of additional witnesses with first-hand knowledge of those employees, their employment and the circumstances of their separation from employment with the Forum.  Being forced to do so would be incredibly time-consuming, monumentally prejudicial to Defendants and bewilderingly confusing to the jury, which would be forced to pick through an enormous amount of irrelevant chaff to determine the

core issue in this trial – whether Plaintiff Barbounis has carried her burden to prove her own claims of hostile work environment-based sex harassment.  As such, Plaintiff and her other witnesses should be barred from testifying about the specifics of any purported complaints brought by past employees of the Forum or other non-parties.

> **5.    Other Litigants and Non-Party Witnesses Without First Hand Knowledge Of Plaintiff's Claims Should Be Barred From Testifying, And All Witnesses Should Be Precluded From Testifying About Prior Alleged Bad Acts.**

Simply put, Plaintiff is attempting to bootstrap her straightforward sexual harassment case into a *de facto* class action, of which she is the sole beneficiary.  In doing so, she intends to have the Other Litigants, each of whom have active cases of their own, testify about their own cases, and the Non-Party Witnesses testify about their own allegations, intentionally and irrevocably prejudicing the jury against Defendants with an improper "strength in numbers" strategy.  Plaintiff hopes that, if successful, the jury will hear enough unproven allegations from enough women that they will ignore the weaknesses in Plaintiff's own case, assume liability and grant Plaintiff relief not on the merits, but on the inflamed passions that such a volume of "bad character" testimony would create.

Should she be allowed to make the effort, the only method available to Defendants to even potentially blunt the impact of the resulting prejudice and jury confusion is to try each and every one of the Other Litigants' claims and those of the Non-Party Witnesses in an effort to show the jury that such claims are meritless and that the witnesses themselves lack credibility. But at best, this will only partially mitigate the prejudice and jury confusion that Plaintiff's strategy would generate – it would not, and indeed cannot, cure it entirely.  Further, requiring the series of mini-trials that such a defense would require is impossible to manage during a three day jury trial (Plaintiff's estimate).  To the contrary, Defendants' conservative estimate, given the

number of additional witnesses that would need to be called and the evidence that would be introduced, is that such a trial would require more than two full weeks.

Despite her best efforts to make this trial about Marnie O'Brien, Patricia McNulty, Caitriona Brady, Delaney Yonchek and other Non-Party Witnesses who previously worked for or interacted with the Forum, Plaintiff cannot escape the fact that this case is about her claims and her claims alone. Those claims should be litigated on the merits, and Defendants are entitled to defend their names and reputations on the merits of those claims. The strategy Plaintiff is attempting to employ is known to be an effective one – throw enough unsupported allegations by enough people at the jury and something is bound to stick, and force the defense to choose whether to ignore the collateral noise or to conduct a series of mini-trials on each issue, further confusing the jury. But the Federal Rules do not permit such gamesmanship, and this Court should keep the focus of the trial and the jury where it belongs – on the claims of Plaintiff Barbounis.

## 6.    In The Alternative, This Court Should Strictly Limit "Me Too" Testimony From Plaintiff And The Other Litigants.

To be clear, if the Other Litigants have probative evidence to offer that would tend to prove or disprove the claims of Plaintiff Barbounis in this case, Defendants have no objection to them providing that testimony. Such evidence might include their personal observations of any alleged sexual harassment of the Plaintiff, any party admissions they might offer relating to Plaintiff's own employment and claims, or any first-hand knowledge they might have to support (or disprove) Plaintiff's own allegations. In sum, should the Court allow the Other Litigants and/or Non-Party Witnesses to testify, the scope of their testimony should be strictly limited to that which is directly related to and probative of the Plaintiff's own claims in this case.

III.     **CONCLUSION**

This is a single-Plaintiff sex harassment and discrimination case.  Plaintiff should not be permitted to bootstrap her claims to those of Other Litigants in an effort to confuse and inflame the jury.  Nor should Plaintiff be able to introduce prior bad acts allegations concerning other women in an effort to paint Defendants as having bad character.  If she is permitted to so expand this trial, Defendants will be forced to conduct a series of mini-trials that will confuse the jury and exponentially increase the time needed for trial.  No jury instruction can cure the prejudice and confusion that would result from such a trial.

The testimony of the Other Litigants and Non-Party witnesses must be excluded entirely for witnesses who lack first-hand knowledge of facts relevant to Plaintiff's own claims.  For those that have such knowledge, their testimony must be limited to the scope of that knowledge that bears on Plaintiff's claims.  As the Third Circuit has said, and as this Court will instruct the jury, "this case is to be decided, solely, on the employer's treatment of [Plaintiff], it has nothing to do with any other employees."  *Martinelli v. Penn Millers Ins. Co*., 269 F. App'x 226, 229 (3d Cir. 2008).  This is "nothing more than an accurate statement of the law," *id*., and this Court should apply it accordingly.

Respectfully submitted,

By: */s/ Jonathan R. Cavalier*
Jonathan R. Cavalier
Leigh Ann Benson
COZEN O'CONNOR
One Liberty Place
1650 Market Street
Philadelphia, PA 19103
Phone: (215) 665-2000

*Attorneys for Defendant*
*The Middle East Forum and*
*Daniel Pipes*

By: */s/ Sidney L. Gold*
Sidney L. Gold
William Riser
SIDNEY L. GOLD & ASSOCIATES P.C.
1835 Market Street, Suite 515
Philadelphia, PA 19103
(215) 569-1999

CLARK HILL PLC
Kevin Levine, Esq. (PA Bar No. 326492)
Clark Hill PLC
Two Commerce Square
2001 Market Street, Ste. 2620

16

Philadelphia, PA 19103
(215) 640-8500

Margaret M. DiBianca, Esq. (DE No. 4539)
CLARK HILL PLC
824 N. Market Street, Ste. 710
*Admitted Pro Hac Vice*
Wilmington, DE  19801
P:  (302) 250-4748

*Attorneys for Defendant*
*Gregg Roman*

Dated: March 1, 2021

17