IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LISA BARBOUNIS<br><br>      Plaintiff,<br><br>v.<br><br>MIDDLE EAST FORUM, et al.,<br><br>      Defendants. | Civil Action No. 2:19-cv-05030-JDW<br><br>**OPPOSITION TO DEFENDANTS'<br>MOTION IN LIMINE** |

`
**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' FIFTH MOTION LIMINE TO ADMIT EVIDENCE OF
ALTERNATIVE SOURCES OF PLAINTIFF'S ALLEGED EMOTIONAL DISTRESS**

### I. PRELIMNARY STATEMENT AND ARGUMENT

First, I am not sure why Defendants are filing Attorneys-eyes-only documents on the public docket, that Defendants argue are of the most personal, private, nature and relate directly to Lisa Barbounis' emotional distress.

Notwithstanding the above, Defendants argument should be denied as a transparent attempt to introduce into evidence that no court would ever allow. Defendants have been itching to call Lisa Barbounis a slut who deserved what she got from the outset of this case. This was the motivation behind Defendants' counterclaims. Defendants counterclaims were aimed to make relevant, evidence of so-called extra-marital affairs, drug use, nasty texting, and other unfairly prejudicial information that should be excluded.[1] Defendants failed to support these claims with evidence. Defendants' Motion in Limine (Document 155) is a last ditch attempt,

---

[1] The Court referred to this as "bingeworthy (or cringeworthy) primetime soap opera: infidelity; recorded phone calls; British slang; possibly stolen money; political ambitions; jealousy; international travel; casual drug use; and a cast of colorful characters… (Document 135).

asking the Court to allow Defendants to cross examine Lisa Barbounis in a manner that would result in unfair prejudice to Plaintiff's case. The reason Defendants can only introduce this evidence through cross-examination is because Lisa Barbounis does not suffer from alternative theories of emotional distress, so there is no other way to present it   Defendants would like to call Lisa Barbounis an adulterer, a tramp, by informing the jury that Lisa Barbounis has had more than one boyfriend since she separated from her husband. The evidence that Defendants are using to support this nonsense would be funny, only Defendants are actually serious. The following bullet points come directly from Defendants' Motion (Document 155).   Defendants would like to present to the jury:

- Evidence that Lisa Barbounis' husband was physically aggressive (without any evidentiary support).

- Evidence of a family debt-load. There is no "family debt load." The exhibits produced by Defendants confirm it was not "family debt. In 2006, 2007 and 2008, before Lisa Barbounis was married, her husband had issues with the IRS. Lisa Barbounis has never had issued with the IRS. She has been a w-2 employee her entire life. Defendants have invested an entire narrative that is not accurate. This information has nothing to do with this case and has not been a source of alternative emotional distress. Document 155-1 page 4 of 7.

- Significant conflict with her in-laws. This example is absurd. Lisa Barbounis made an off-hand comment during her deposition about her mother-in-law. This is not a source of emotional distress that would even come close to rising to the level of an alternative theory.

> Q. Does that cause any tension between the two of you?
> A. I mean other than his mother hating the fact that I'm not Greek, no.

- Lisa Barbounis actually responded that it is not a source of tension, in answering "no." She simply made a joke that her mother-in-law hates that she is not Greek, like her husband. Defendants have manipulated this into "significant conflict with her in laws."

- Evidence that Lisa Barbounis and her husband both see other people. As Defendants have conceded in its motion, Plaintiff and her husband are separated. They remain together for the kids. Lisa Barbounis lives in the State of Virgina and her husband lives in the Commonwealth of Pennsylvania. Lisa works in Washington D.C., and her husband works in Philadelphia. The fact that they see other people is not a source of emotional distress. It is quite the opposite. Defendants would like to introduce this information to tell the jury that Lisa Barbounis cheats on her husband. Exhibit 1 (Document 155-1) does not indicate a severe emotional impact.

- The stress on Plaintiff's "dating life" is a naked attempt to accuse Lisa Barbounis of cheating on her husband with more than one person. Lisa Barbounis is allowed to date. The so-called stress on her dating life is supported by Document 155-2, where Lisa Barbounis is chatting with Patricia McNulty and makes an offhand comment that has nothing to do with her emotional distress claim. Lisa Barbounis uses the phrase "I'm losing my mind." Of course, this is not a literal phrase in the English language. The phrase is meant to communicate, "I don't know what to do." Defendants request to admit evidence that flies in the face of rape-shield laws, because of an off-hand comment made to a friend in a text conversation is ludicrous.

- Defendants next argue that evidence of a injury Lisa Barbounis sustained while having sex with Danny Thomas should be introduced as evidence. Lisa Barbounis and Danny

    Thomas had rough sex and Lisa Barbounis had a black eye the next day. This is not evidence that relates to alternative theories of emotional distress. There is no evidence that Lisa Barbounis was effected in any way by this. Defendants simply want to notify the jury that Lisa Barbounis is a slut who had rough sex. Defendants would like to the jury to think, if she had rough sex with Danny Thomas, she must not care about the unwelcome sexual touching by Defendant, Greg Roman. Defendants do not care that the sex with Danny Thomas was consensual, while Defendant, Greg Roman's touching were unwelcome and part of a year-plus campaign of abuse.

- Defendants next seek to introduce evidence that occurred on January 6, 2021, a year-and-a-half, after her employment with Middle East Forum ended. Defendants scheduled a deposition with Lisa Barbounis on January 8, 2021. Lisa Barbounis had only one day between the riot and the deposition. During the riot, Lisa Barbounis witnessed first-hand the shooting. Accordingly, during the deposition, Lisa Barbounis was still a little shook up. There is no evidence of any lasting emotional impact this had on Lisa Barbounis.

- The next issue Defendants ask to allow is a work argument Lisa Barbounis had with Marnie O'Brien. This argument has nothing to do with the case. It also was not a source of emotional distress for Lisa Barbounis. The argument occurred because the staff had recently voted that they would like Lisa Barbounis to take over as MEF point person, after Defendant, Roman was ejected from the Philadelphia office. Lisa won the vote. Marnie O'Brien's feelings were hurt because she wanted the job. Marnie O'Brien felt betrayed by the staff. The two had an argument with raised voices. The suggestions that Lisa Barbounis suffered some kind of long term emotional impact is

absurd. Defendants are seeking to introduce this as evidence because the recording of the conversation/argument includes cursing and yelling. This is the actual and only reason Defendants are making this request.

- The next one is equally absurd. Lisa Barbounis and Patricia McNulty became friends during their employment for Defendants. They got along. Patricia McNulty was not a source of emotional distress for Lisa Barbounis. There is no evidence of this. As counsel for Barbounis reviews Defendants' Motion, it is becoming clear Defendants are attempting an "everything but the kitchen sink" strategy. Defendants are throwing as much at the wall as is available to see what sticks. Plaintiff suggests nothing should stick. Defendants argument here is based on a single incident, that Lisa Barbounis probably cared very little about, where Lisa Barbounis mentioned that she wanted recognition for a job well done.

- Moreover having a demanding job is a positive part of most people's lives. The argument that a sexual assault victim is not really impacted by the assault, but instead is impacted by their amazing job for a United States Congressman, is simply ridiculous.

- Next Defendants are arguing that because Lisa Barbounis experienced a physical injury, they should be permitted to introduce into evidence , drug use? For all of the above bullet points, including this one, Plaintiff argues that there would be significant unfair prejudice with no probative value if Defendants are permitted to present an everything but the kitchen sink strategy of Plaintiff's emotional distress. Defendants write about confusing a jury while suggesting that all of the preceding information should be presented to the jury on cross examination.

Dr. Barbara Ziv prepared a so-called expert report on behalf of Defendants. In her report, Dr. Ziv did not conclude that Lisa Barbounis suffers from emotional distress, but it is related to other issues. To the contrary, Dr. Ziv concluded that Lisa Barbounis is not suffering from emotional distress of any kind.

> "Ms. Barbounis' life currently is little changed from her life when she was working at MEF. She has a job that she loves, is attempting to spend more quality time with her children and wants to repair her strained marriage. Although Ms. Barbounis has alleged emotional difficulties related to events at the MEF, her overall social, emotional, and occupational functioning is, by and large, the same as it was prior to her employment with the MEF." Dr. Barbara Ziv.

Dr. Barbara Ziv's reports do not suggest that Lisa Barbounis is suffering from all of the above issues. Defendants should not be permitted carte-blanche, to tell the jury that anything and everything that Lisa Barbounis has experienced in her life is the real cause of her emotional distress.

## II. RAPE SHIELD LAWS MUST BE CONSIDERED BEFORE DEFENDANTS ARE PERMITTED TO INTRODUCE AS EVIDENCE PAST SEXUAL ENCOUNTERS.

Whether Plaintiff had any other sexual relations with other persons in her past is not relevant to any pending action pertaining to the sexual harassment at issue. Rape shield laws such as FRE 412 are "designed to protect victims of rape from being exposed at trial to harassing to irrelevant questions concerning their past sexual behavior." Michigan v. Lucas, 500 U.S. 145, 146 (1991). This interest is especially heightened when the sexual conduct at issue is with other persons in the past, unless it is for the purpose of showing whether the accused "was or was not, with respect to the alleged victim, the source of semen or injury." FED R. EVID. 412.

Under FRE 402, the evidence is only relevant under the two-factor test. The fact of Plaintiff's sexual history or her alleged drug use does not tend to make any fact that is of

consequence more or less probable. Because rape shield laws emphasize society's near universal view that chastity or sexual activity has no bearing on the character of parties or witnesses or their consent, See Gov't of Virgin Islands v. Jacobs, 634 F. Supp. 933, 936-37 (D.V.I. 1986), the portions of the phone call recording which allege long sexual histories of unidentified women must be found either barred under Rule 412, or irrelevant under Rule 401, and thus barred under Rule 402.

If the Court deems the evidence relevant for purposes of FRE 402, the evidence must still be excluded under FRE 403 because its probative value is substantially outweighed by its risk of unfair prejudice. Courts will exclude evidence of sexual history even where sexual behavior and sexual predisposition are not at issue. See Jones v. Indiana Area School Dist, 2006 WL 5277385, at *6 (W.D. Pa. 2006) (holding that sexual history evidence still barred under Rule 403 when Rule 412 does not apply). The probative value of evidence that alleges *sexual history or drug use* is very minimal, especially when viewed in light of the fact the so-called drug use are prescription medications taken under a doctor's care. Any minimal probative value will be substantially outweighed by the way the jury will view Plaintiff after hearing statements about promiscuousness or drug use, and such they should also be barred under FRE 403.

### III.   DEFENDANTS SHOULD NOT BE PERMITTED TO INTRODUCE CHARACTER EVIDENCE THROUGH THE BACK DOOR.

Plaintiff suggests that Defendants have an ulterior motive for attempting to introduce as evidence issues related to sexual relationships, drugs, work-arguments, and other insignificant events that would not cause any reasonable person to experience emotional distress. Plaintiff suggests Defendants are essentially attempting to prejudice the jury with improper character evidence. "Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." FED R. EVID. 404.

Further, evidence of "any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." *Id.* "'Rule 404(b) is a rule of general exclusion,' precluding other-act evidence unless the proponent can show a proper purpose other than propensity." Cartegena v. Serv. Source, Inc., 2019 WL 183853, at *5 (M.D. Pa. 2019) (quoting United States v. Repak, 852 F.3d 230, 240 (3d Cir. 2017)). Extrinsic evidence is also not admissible to "prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness or untruthfulness." FED R. EVID. 608.  Courts have declined to admit past alleged evidence of a witness's alleged sexual history or drug use when it is of little probative value or relevance to the case. Cartegena, 2019 WL 183853, at *4 (holding that plaintiff's previous history of drug and alcohol use had limited probative value and had a high risk of unfairly prejudicing the jury); Jones, 2006 WL 5277385, at *6.  Defendants serve only to characterize Plaintiff as a promiscuous woman who uses drugs recreationally and creates litigation schemes.  This will unfairly attack her character in the eyes of the jury in violation of Rule 404(b) and 608, and for that reason it should be excluded.

## CONCLUSION

Essentially, Defendants have presented two categories of information: (1) information that has no relevance or probative value, and (2) information that cannot only result is extreme unfair prejudice to the Plaintiff.  Both types should be excluded, and Defendants' Motion should bed denied.

**DEREK MITH LAW GROUP, PLLC**

BY: /s/ Seth D. Carson
     SETH D. CARSON
     Derek Smith Law Group, PLLC
     1835 Market Street
     Suite 2950
     Philadelphia, PA 19103
     Phone: 215.391.4790
     Facsimile: 215.893.5288
     Email: Seth@DerekSmithLaw.com

DATED: November 3, 2021

## CERTIFICATE OF SERVICE

I, Seth D. Carson, hereby certify that on this date the foregoing Motion in Limine has been electronically filed with the Court and is available for viewing and downloading from the ECF System and thereby have been served upon the following counsel of record, electronically:

TO:    Jon Cavalier
Cozen O'Connor
1650 Market Street, Suite 2800
Philadelphia, PA 19103
P: 215-665-2000
F: 215-665-2013
dwalton@cozen.com
lbenson@cozen.com

Sidney L. Gold sgold@discrimlaw.
Sidney L. Gold & Associates P.C.
1835 Market Street, Suite 515
Philadelphia, PA 19103
Tel: (215) 569-1999
Fax: (215) 569-3870
Counsel for The Middle East Forum

**DEREK SMITH LAW GROUP, PLLC**

BY: _____/s/ Seth D. Carson_____
Seth D. Carson, Esq.
Attorney ID. No. 319886
1845 Walnut Street, Suite 1601
Philadelphia, PA 19103
(215) 391-4790
seth@dereksmithlaw.com
*Attorney for Plaintiff*

DATED: November 3, 2021