IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LISA BARBOUNIS,**  *Plaintiff,*  v.  **THE MIDDLE EAST FORUM, et al.,**  *Defendants.* | Case No. 2:19-cv-05030-JDW |

## ORDER

**AND NOW**, this 23rd day of November, 2021, it is **ORDERED** as follows:

1. Defendants' Motion *In Limine* To Exclude Evidence Of Alleged Prior Bad Acts Concerning Other Litigants And Non-Parties (ECF No. 151) is **GRANTED IN PART** and **DENIED IN PART**, as follows:

    a. The Motion is **GRANTED** in that Plaintiff Lisa Barbounis may not testify about other lawsuits or claims that other people filed against any Defendant;

    b. The Motion is **GRANTED** as to testimony of Delaney Yonchek, Leah Merville, Alana Goodman, Laura Frank, Lara Scott, Aman Patel, Samantha Mandalas, and "Rosie (last name unknown)" because Ms. Barbounis has not demonstrated what value or relevance, if any, such evidence would have on her claims. Ms. Barbounis has not made any showing that any of them can offer relevant information at trial. In fact, other than listing them, she says nothing about the testimony they will give, the circumstances under which they supposedly experienced harassment, or anything else that might allow the Court to determine that they have admissible testimony to offer. She does not provide any explanation about who these women are, how Gregg Roman harassed them, or when those events occurred. If any Defendant opens the door to this testimony during trial, then Ms. Barbounis can raise that concern with the Court at the time; and

        c.      The Motion is otherwise **DENIED WITHOUT PREJUDICE** because Plaintiff has demonstrated that the other witnesses listed in the motion, including Marnie O'Brien, Patricia McNulty, and Caitriona Brady, could offer relevant information concerning the environment in which Ms. Barbounis worked, including testimony about the way Mr. Roman treated Ms. Barbounis, testimony about the way Mr. Roman conducted himself while Ms. Barbounis was present, the circumstances that led to the internal meeting at the Middle East Forum on November 5, 2018, and circumstances that bear on Defendants' *Farragher-Ellerth* defense. Because the Court cannot determine every situation that might justify a particular witness's testimony, or the level of detail that Ms. Barbounis will seek to introduce, the Court cannot make blanket decisions about admissibility in advance of trial.  While Defendants' concerns about the potential confusion of issues for the jury are well-taken, the Court finds that the probative value of this evidence is not substantially outweighed by the risk of some confusion, and the Court can address those concerns with appropriate jury instructions during, and at the conclusion of, trial.

        2.      Defendants' Motion *In Limine* To Preclude References To Weapons (ECF No. 152) is **GRANTED IN PART** and **DENIED IN PART**, as follows:

        a.      The Motion is **GRANTED** with respect to any references that Delaney Yonchek brought pepper spray to work for an all-staff meeting on November 5, 2018 because such evidence has almost no probative value and because Ms. Barbounis does not argue against the preclusion of this evidence in her response to Defendants' Motion; and

        b.      The Motion is **DENIED** with respect to testimony that Ms. Barbounis slept with a knife under her pillow out of fear of Mr. Roman while on a work-related trip with him in Israel. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of … unfair prejudice[.]" Fed. R. Evid. 403. Unfair prejudice "means an undue tendency

2

to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id.*, 1972 Advisory Committee Notes. Though testimony about Ms. Barbounis sleeping with a knife could provoke an emotional response from the jury, the Court "is not required to scrub the trial clean of all evidence that may have an emotional impact[.]" *United States v. Bailey*, 840 F.3d 99, 123 (3d Cir. 2016) (quotation omitted). This evidence speaks to Ms. Barbounis's perception of the severity of the alleged harassment, a key component of her hostile work environment claim. *See Hatch v. Franklin Cty.*, 755 F. App'x 194, 202 (3d Cir. 2018). The risk of a minor emotional impact does not "substantially outweigh[]" the probative value of such testimony.

3. Defendants' Motion *In Limine* To Preclude Certain Post-November 5, 2018 Testimony (ECF No. 153) is **GRANTED IN PART** and **DENIED IN PART**, as follows:

   a. The Motion is **GRANTED** with respect to any testimony about a rumor about Marnie O'Brien that spread after November 5, 2018. The rumor does not concern Ms. Barbounis, and Ms. Barbounis does not argue against the preclusion of this evidence in her response to Defendants' Motion;

   b. The Motion is **GRANTED** with respect to any testimony about harassment or other behavior directed against anyone other than Ms. Barbounis after November 5, 2018, including but not limited to Ms. Brady; and

   c. The Motion is otherwise **DENIED WITHOUT PREJUDICE** because, subject to laying a proper foundation, Ms. Barbounis can introduce evidence concerning ongoing harassment that she experienced after November 5, 2018, including to rebut Defendants' *Farragher-Ellerth* defense.

4. Defendants' Motion *In Limine* To Preclude Evidence About Other Litigation (ECF No. 154) is **GRANTED** because evidence about the other lawsuits between Defendants and Ms.

Barbounis are irrelevant in this matter.  "[A] plaintiff seeking to collect punitive damages under Pennsylvania law must demonstrate that the conduct of the defendant was 'outrageous because of the defendant's evil motive or [its] reckless indifference to the rights of others.'" *Denham v. Children's Hosp. of Philadelphia*, No. 19-cv-794, 2020 WL 3829228, at *4 (E.D. Pa. July 8, 2020) (quoting *Feld v. Merriam*, 506 Pa. 383, 391, 485 A.2d 742, 747 (Pa. 1984)).  However, the relevant conduct must be the same conduct at issue in the underlying case—not extraneous matters.  Thus, whether Defendants utilized a so-called "lawfare" strategy to punish or retaliate against Ms. Barbounis for bringing this lawsuit is not relevant to, or a basis for punitive damages in, a case about the existence of a hostile work environment.

5.  Defendants' Motion *In Limine* To Admit Evidence Of Alternative Sources Of Plaintiff's Emotional Distress (ECF No. 155) is **GRANTED IN PART** and **DENIED IN PART**, as follows:

   a.  Ms. Barbounis has placed her emotional state at issue in this case by asserting a claim for emotional distress.  Defendants have a right to argue to the jury that other sources of stress caused the distress that Ms. Barbounis claims, if they can demonstrate that particular aspects of Ms. Barbounis's life rise to the level of emotional distress (as opposed to day-to-day frustrations). Defendants have demonstrated that certain sources of stress in Ms. Barbounis's life rise to that level, and the Court will admit them.  These include Ms. Barbounis's experience at the January 6 Capitol riots, financial stress and family debt, and her marital separation and divorce, all of which appear to have been meaningful sources of stress in Ms. Barbounis's life. The Motion is **GRANTED** as to that evidence, and Defendants may introduce evidence about those alternative sources of emotional distress;

4

b.  Defendants have not demonstrated that Ms. Barbounis's relationship with her in-laws, the demanding nature of her job, her relationships with Ms. O'Brien and Ms. McNulty at MEF, or her medical and psychological issues were anything other than normal, day-to-day irritations. They therefore do not rise to the level of alternate sources of emotional distress. In addition, presentation of evidence about these issues would be both a waste of time and unfairly prejudicial, and the time and prejudice both substantially outweigh the minimal probative value that they offer. The Motion is therefore **DENIED** as to that evidence;

c.  Defendants' request to admit evidence concerning Ms. Barbounis's dating and sexual history, including her relationship with Daniel Thomas, her dealings with Mr. Thomas's paramour Jasmin Bishop, and her relationship with a man named "Ryan," implicates Fed. R. Evid. 412 because it is offered, at least in part, to prove that Ms. Barbounis engaged in sexual behavior. Accordingly, pursuant to Fed. R. Evid. 412(c), the Court will hold a hearing, as set forth below, to determine whether to admit the evidence; and

d.  Defendants have not demonstrated that Mr. Barbounis's violent, sexual encounter with Daniel Thomas was anything other than a one-time incident, and there is no evidence that it was a source of continued stress for Ms. Barbounis, so the Motion is **DENIED** as to that evidence.

6.  Ms. Barbounis's *Daubert* Motion To Exclude Opinion Testimony Of Dr. Barbara Ziv (ECF No. 156) is **GRANTED IN PART** and **DENIED IN PART**, as follows:

a.  The Motion is **GRANTED** to the extent Dr. Ziv proposes to opine about Ms. Barbounis's credibility generally. Dr. Ziv "cannot pass judgment on [Ms. Barbounis's] truthfulness in the guise of a medical opinion, because it is the jury's function to decide credibility." *Bistrian v. Levi*, 443 F. Supp. 3d 576, 578 (E.D. Pa. 2019) (quoting *Coney v. NPR, Inc.*, 312 F. App'x 469, 474

(3d Cir. 2009)). The Court notes that Defendants have stated that they will not ask Dr. Ziv to opine on Ms. Barbounis's general credibility. However, the Federal Rules of Evidence permit Dr. Ziv to base her opinion on facts that she "personally observed," including things that led her to question whether Ms. Barbounis was truthful with Dr. Ziv during their session together. Fed. R. Evid. 703. Ms. Barbounis disputes certain facts on which Dr. Ziv relied in assessing Ms. Barbounis's credibility, but the Court cannot resolve those factual disputes. Ms. Barbounis can cross-examine Dr. Ziv to try to demonstrate to the jury that Dr. Ziv's conclusion rests on incorrect factual assumptions; and

b. The Motion is **GRANTED** in that the Court will exclude the following opinions that Dr. Ziv has articulated: (i) Mr. Roman's behavior in Israel "is a far cry from sexual assault or sexual harassment" and is "entirely inconsistent with a view that Mr. Roman wanted Ms. Barbounis to be his mistress[;]" and (ii) it was unlikely that Mr. Roman "was sexually preying on Ms. Barbounis." (ECF No. 163-2 at 30.) These opinions are not the product of Dr. Ziv's psychiatric evaluation; Dr. Ziv has no basis to opine about Mr. Roman's intent or motivation; and Dr. Ziv would invade the province of the Court and jury if she opined about whether particular conduct amounts to sexual harassment; and

c. The Motion is otherwise **DENIED** because Defendants, the proponents of Dr. Ziv's expert opinion, have demonstrated that her proffered testimony is reliable, by a preponderance of the evidence. *See Wood v. Showers*, 822 F. App'x 122, 124 (3d Cir. 2020) (citing *Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 418 (3d Cir. 1999)). Dr. Ziv conducted a forensic psychiatric examination to assess Ms. Barbounis's claim of emotional distress, and she can opine on the symptoms that Ms. Barbounis exhibits (or does not exhibit) and any diagnosis that Dr. Ziv has made or ruled out. The jury can assess the factual basis for her opinions.

7. Ms. Barbounis's Omnibus Motion *In Limine* (ECF No. 157) is **GRANTED IN PART** and **DENIED IN PART**, as follows:

a. As noted above, Defendants' request that the Court deny the motion and admit evidence of Ms. Barbounis's past sexual history and dating life, including her relationship with Daniel Thomas and Jasmin Bishop, implicates Federal Rule of Evidence 412 because it is offered, at least in part, to prove that Ms. Barbounis engaged in sexual behavior. Accordingly, pursuant to Fed. R. Evid. 412(c), the Court will hold a hearing, as set forth below, to address that evidence;

b. The Motion is **GRANTED** as to Ms. Barbounis's alleged drug use. Defendants posit that Ms. Barbounis's alleged drug use might have contributed to her job performance, but there is no evidence in the record that supports that theory. Nor is there evidence that Ms. Barbounis's alleged use of drugs led her to suffer emotional distress. Whatever limited probative value evidence of drug use could have is substantially outweighed by the unfair prejudice that would result from allegations of drug use;

c. The Motion is **GRANTED** with respect to evidence about Ms. Barbounis's politics and political views, including her political commentary, her work in the U.S. Congress (and, by extension, her support of or opposition to any Member's political views), and Ms. Barbounis's views about, or support for, Tommy Robinson. Nothing the in the record supports any conclusion about Ms. Barbounis's political views being a source of stress or emotional distress. At the same time, the unfair prejudice of injecting Ms. Barbounis's political views into the trial would substantially outweigh any minimal probative value. In addition, Defendants may not utilize Ms. Barbounis's job application to cross-examine her on credibility. That is because a line of questioning as to whether Ms. Barbounis lied on her application or submitted a plagiarized writing sample would lead to a mini-trial on ancillary issues such as Ms. Barbounis's job responsibilities and work product.

However, Defendants may cross-examine Ms. Barbounis about emotional distress that she has acknowledged feeling from being present for the January 6 riots at the Capitol because that line of questioning will not implicate Ms. Barbounis's political views, and it is highly relevant to her claim of emotional distress;

      d.      The Motion is **DENIED** with respect to evidence about her job performance at MEF. Defendants may introduce evidence that Ms. Barbounis's job performance at MEF deteriorated over time;

      e.      The Motion is **GRANTED** with respect to evidence of a phone call between Mr. Roman and Mr. Thomas, as Defendants acknowledge that they will not introduce those phone calls. The Court will reserve judgment on whether Defendants may introduce evidence about how any such phone call impacted Mr. Roman;

      f.      The Motion is **GRANTED** with respect to evidence about a phone call between Mr. Roman and Matthew Ebert because Defendants did not argue against the preclusion of this evidence in their opposition brief;

      g.      The Motion is **DENIED** with respect to evidence concerning alternative sources of stress that Ms. Barbounis experienced, including recordings of phone calls with Jasmin Bishop and financial stresses that Ms. Barbounis experienced. All of that evidence bears on Ms. Barbounis's claim for emotional distress. In addition, Ms. Barbounis's financial troubles are relevant to her credibility and motivation for this lawsuit. *See Burdyn v. Old Forge Borough*, 330 F.R.D. 399, 410 (M.D. Pa. 2019) ("It is unclear how Plaintiff believes that an attempt by one or more defendants to convince the jury that a plaintiff is not telling the truth in order to obtain money is not a classic example of impeachment."). Thus, Defendants may explore that issue for purposes of impeachment as well; and

   h.  The Motion is **DENIED** with respect to evidence discovered "solely due to Defendants' counterclaims." (ECF No. 157 at 2.)  Ms. Barbounis has not identified any such evidence, and the Court has no way to discern this. In any event, the purpose of discovery is to avoid trial by surprise, so information produced in discovery is fair game for trial in this matter (consistent with this Order and subject to the Court's earlier Orders governing the affirmative use of certain evidence at trial).

  It is **FURTHER ORDERED** that, pursuant to Fed. R. Evid. 412(b)(2) and (c)(2), the Court will hold a hearing on January 4, 2022, at 9:30 a.m., in Courtroom 3B, U.S. Courthouse, 601 Market Street, Philadelphia, PA 19106, to determine whether to admit evidence of Ms. Barbounis's dating and sexual history, including her relationship with Mr. Thomas and with "Ryan."  Pursuant to Rule 412(c)(2), the Court will conduct the hearing *in camera*, and the parties shall be prepared to address whether what evidence Defendants intend to introduce, whether Rule 412 applies to that evidence, whether the evidence is admissible, and whether the Court should keep the record of the hearing under seal.

  It is **FURTHER ORDERED** that, pursuant to Fed. R. Evid. 412(c)(2), the Clerk of Court shall place Defendants' Motion *In Limine* To Admit Evidence Of Alternative Sources Of Plaintiff's Emotional Distress (ECF No. 155) and its exhibits **UNDER SEAL** pending further Order of the Court.

                **BY THE COURT:**

                */s/ Joshua D. Wolson*
                JOSHUA D. WOLSON, J.