**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

LISA BARBOUNIS

                 Plaintiff,

    v.

MIDDLE EAST FORUM, et al.,

                 Defendants.

Civil Action No. 2:19-cv-05030-JDW

**PLAINTIFF'S LISA BARBOUNIS' OMNIBUS
MOTION FOR CLARIFICATION, MODIFICATION, AND/OR
RECONSIDERATION OF JUDGE WOLSON'S ORDER (DOCUMENT 173)**

Plaintiff, Lisa Barbounis files this enclosed Motion for Reconsideration of Judge Wolson's Order (Document 173) dated November 23, 2021. Plaintiff files this Motion to bring issues to the Court's attention that Plaintiff suggests requires clarification, modification, and/or reconsideration of the Court's Order (Document 173). Plaintiff's enclosed Motion tracks the Court's Order and Opinion.

1. **DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF ALLEGED PRIOR BAD ACTS CONCERNING LITIGANTS AND NON-PARTIES.**

A.       In Part 1-A of the Court's Order, the Court ruled that "Lisa Barbounis may not testify about other lawsuits or claims that other people filed against any Defendant." Plaintiff does not know if the Court meant to say:

- Lisa Barbounis cannot testify about other lawsuits.

  or

- Lisa Barbounis cannot testify about other lawsuits that other people filed.

or

- Lisa Barbounis cannot testify about other claims.

The language is important to clarify because Lisa Barbounis intends to testify about two issues that Defendants might argue falls within this category.  These two issues are:

1.  Plaintiff intends to testify about the things that caused her not to report discrimination and harassment sooner.

2.  Plaintiff intends to testify about sexual statements that Defendant, Greg Roman made to Lisa Barbounis, because these statements were the sexual harassment complained of in this lawsuit.

Plaintiff does not believe the Court intended to preclude Lisa Barbounis from testifying about either of these two categories, however, it makes sense to clarify this before trial.  Plaintiff asks for clarification, and possibly modification or reconsideration of the Court's Order, in that, Plaintiff, Lisa Barbounis should be permitted to testify about the things she knew in real time, during her employment for Defendants, that had the effect of scaring Plaintiff from reporting discrimination and harassment in the workplace.  See Minarsky v. Susquehanna Cty., 895 F.3d 303, 314 (3d Cir. 2018) ( "If a plaintiff's genuinely held, subjective belief of potential retaliation from reporting her harassment appears to be well-founded, and a jury could find that this belief is objectively reasonable, the trial court should not find that the defendant has proven the second Faragher-Ellerth element as a matter of law. Instead, the court should leave the issue for the jury to determine at trial.").  Plaintiff's fears were born from threats made about the way other women who reported sexual harassment were treated.  These other women include Tiffany Lee (who was not part of the Court's Order), Laura Frank, and Lara Szott.   These women were subjected to the same type of conduct in the same time period by the same person.   See Hurley v. Atl. City Police

Dep't, 174 F.3d 95 (3d Cir. 1999) ("Evidence that women other than plaintiff were subjected to hostile work environment is more probative than prejudicial, and thus admissible in Title VII sexual harassment action, in a number of situations.").

The Third Circuit has decided that the Plaintiff's knowledge is not required to admit the evidence of other women, however, in this context, Plaintiff is asking the Court to allow her to testify about what Plaintiff knew because of threats, and what Plaintiff knew because of direct statements made of a sexual nature by Defendant, Greg Roman. Cf. Id. ("Employee's knowledge of sexual harassment or pervasively sexist attitudes is not a requirement for admitting testimony on those subjects in a Title VII harassment suit.").

Plaintiff, Lisa Barbounis was notified about other women, who worked for Middle East Forum, just prior to Plaintiff's employment.   Plaintiff was warned that these women reported sexual harassment just months before Plaintiff began to be subjected to sexual harassment. These reports are related to the same harasser, Defendant, Greg Roman.  These reports were made in the same year, and in some cases, within months, of when Lisa Barbounis claims she began to be subjected to sexual harassment.  These reports involve almost very similar sexually harassing conduct.  Accordingly these reports relate to Plaintiff's reports in time, type, and harasser.  In fact, Lisa Barbounis and Patricia McNulty were hired to replace staff members including Tiffany Lee, Laura Frank, and Lara Szott.

What Defendants knew about Defendant, Greg Roman is also highly relevant because it goes to notice – what Defendants knew and when they knew it.  Even though Defendants claim that they took effective, remedial measures, Plaintiff is permitted to argue that Defendants so-called corrective action was too little too late.  Therefore, Defendants knowledge and notice of the harassment are key issues upon which this case may turn.  "Although supervisor's sexual

harassment is outside scope of employment because conduct was for personal motives, employer

can be liable, nonetheless, where its own negligence is cause of harassment; employer is

negligent with respect to sexual harassment if it knew or should have known about the conduct

and failed to stop it." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S. Ct. 2257, 141 L.

Ed. 2d 633 (1998).

Plaintiff, Lisa Barbounis was notified about all three reports that Tiffany Lee, Laura

Frank, and Lara Szott made. Lisa Barbounis was informed about these women in the form of

threats. For example, Lisa Barbounis was notified that Tiffany Lee, Laura Frank, and Lara Szott

all reported sexual harassment. Lisa Barbounis was notified that all three women lost their jobs

and Defendant, Greg Roman continued as the Director of MEF. These threats had a significant

impact on Plaintiff's fear of retaliation and fear of futility.

Defendants certainly intend to argue that the jury should issue a defense verdict because

Plaintiff did not report sexual harassment until November 1, 2018. Plaintiff disagrees with the

factual basis of this argument, however, this entire case may turn on whether reports of sexual

harassment should have been made sooner than November 1, 2018. Plaintiff deserves the right

to explain why she was afraid to report sooner. Plaintiff is not offering this information for its

truth of the women's claims, but to show that she held a reasonable fear that reports would be

futile and reasonable fear that reports would result in retaliation, Plaintiff's job loss. Plaintiff

does not intend to testify about things that were discovered after her employment ended.

Plaintiff only intends to testify about the things she knew at the time of her employment that

created the fear of futility and fear of retaliation. Under the Farragher-Ellerth, affirmative

defense, the primary two questions promulgated by the Third Circuit is whether "the employer

exercised reasonable care to prevent and promptly correct any sexually harassing behavior and

that the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer to avoid harm otherwise."

Plaintiff therefore asks for clarification and/or modification of the Court's Order, so that it is clear that Plaintiff is entitled to present evidence that goes directly to the <u>Farragher-Ellerth</u> affirmative defense.   Plaintiff is asking the Court to allow evidence that goes to the heart of this case, that occurred in the same year that Plaintiff began to be subjected to sexual harassment, and the year that Plaintiff's employment began – 2017.  Again,  there is a long standing history of caselaw that provides that this information is particularly relevant when the type of reports are identical to the reports that Plaintiff made, in the same time period, related to the same harasser.

Plaintiff asks for clarification because Defendants will surely argue that the word "claims" in Part A (Document 173) has as broad an application as possible.  Plaintiff does not intend to testify about other women's lawsuits.  Plaintiff does not intend to testify about other women's claims.  Plaintiff does not even intend to testify about details related to the women's claims.  Plaintiff only intends to testify that she was made aware of these claims in the context of a threat to keep Plaintiff's mouth shut.

The second issue is that Defendant, Greg Roman spoke about the other women that he sexually harassed to Lisa Barbounis.  These comments were made in the context of suggesting that Lisa Barbounis engage in sex acts with Defendant, Greg Roman.  Lisa Barbounis intends to testify about the words that Defendant, Greg Roman used when Greg Roman sexually harassed Ms. Barbounis.  These were the sexually harassing comments to which Ms. Barbounis was subjected during her employment and these comments directly created the hostile work environment at issue.  Some of Lisa Barbounis' testimony might require Ms. Barbounis to mention the names of other women who ultimately reported sexual harassment to Defendant,

Daniel Pipes.  For example, Lisa Barbounis claims that Defendant, Greg Roman subjected her to sexual harassment by describing sex acts with other women.  Lisa Barbounis' claims are that Defendant, Greg Roman described these sex acts in detail while Defendant, Greg Roman was attempting to persuade Lisa Barbounis to engage in sex acts with him.  Plaintiff, Lisa Barbounis certainly should not be precluded to testify about the sexually inappropriate comments that Defendant, Greg Roman made directly to her.  This is part of Plaintiff's case in chief and if believed by the jury, is direct evidence of the hostile work environment.  Plaintiff therefore asks the Court for clarification and/or modification so that it is clear that Plaintiff will not be precluded from testifying about the sexually harassing comments to which she was subjected by Defendant, Greg Roman.

Part B of the Court's Order precluded Plaintiff from presenting as witnesses (1) Delaney Yonchek, (2) Leah Merville, (3) Alana Goodman, (4) Laura Frank, (5) Lara Szott, (6) Aman Patel, (6) Samantha Mandalas, and (7) Rosie (last name unknown).  Plaintiff actually does not think this will be an issue, as Plaintiff suggests that she can prove her case without these witnesses.  Notwithstanding, some of the women on the Court's list may have probative evidence that could be offered to the jury.  For example, Delaney Yonchek worked directly with Lisa Barbounis during almost all of Ms. Barbounis' employment at MEF.  Delaney Yonchek was present at the November 5, 2018, meeting when reports of sexual harassment were discussed with MEF employees in a group setting.

One of the reports discussed during the November 2018 group meeting was Leah Merville's report.  This report was a topic of discussion because of Lisa Barbounis and because of the comments that Defendant, Greg Roman made to Lisa Barbounis about Leah Merville. Lisa Barbounis is the very employee who engaged in protected activity to report issues related to

Leah Merville and to report issues related directly to Lisa Barbounis.  The facts of this case clearly indicate that on November 1, 2018, a written report was given to Defendant, Daniel Pipes.  Plaintiff suggests that the parties have agreed that this written report is part of the body of evidence agreed on by the parties.  The substance of that written report is what caused Defendant, Daniel Pipes' to act in November 2018.  Plaintiff believes that Defendant Daniel Pipes failed to act in a responsible way in the face of the allegations in that report.  Defendant, Daniel Pipes' response to that written report is one of the primary issues that Defendants will claim absolves Defendants of liability.  This written report included reports by 4 women: Leah Merville, Marnie O'Brien, Patricia McNulty, and Lisa Barbounis.  When Defendant, Pipes claims to have engaged in protected activity, he was responding to this written report.  The sufficiency of Daniel Pipes' response to this report is a material fact that the jury will be required to resolve.  For these reasons, both Delaney Yonchek and Leah Merville could conceivably offer evidence that is relevant, and Plaintiff suggests that a blanket, pre-trial Order precluding these women from testifying is not warranted.  Plaintiff does not believe that this will be an issue because Plaintiff may not offer testimony by either of these women anyway, however, Plaintiff asks the Court to deny this part of Defendant's Motion in Limine without prejudice at this time.

The other reason why these women were named is because they can offer evidence related to Defendant, Daniel Pipes' response to reports of sex and gender discrimination in the same time period as Plaintiff's claims – between 2017 and 2019, which is when Plaintiff was employed with MEF.  What was reported to Defendant, Daniel Pipes and what Defendant, Daniel Pipes did to ameliorate sex discrimination is what this case is about.  See Cummings v. Standard Register Co., 265 F.3d 56, 64 (1st Cir. 2001) (upholding admission of testimony of co-workers who also alleged discrimination, since defendant "raised, as part of its defense, its

national corporate practices of nondiscrimination, making evidence challenging those claims especially relevant").  "Evidence of a discriminatory 'atmosphere' may sometimes be relevant to showing the corporate state-of-mind." <u>Cummings v. Standard Register Co.</u>, 265 F.3d 56, 63 (1st Cir. 2001) (upholding admission of testimony of co-workers who endured comparable discrimination). Also, evidence that others were similarly harassed tends to make "more credible [plaintiff's] testimony about the environment that he was exposed to." <u>Williams v. ConAgra Poultry Co.</u>, 378 F.3d 790, 794 (8th Cir. 2004) (upholding admissibility of co-worker testimony of harassment they experienced, but plaintiff did not).  The D.C. Circuit held that it was reversible error to exclude such evidence in the retaliation context, since "evidence showing that the employer followed a broad practice of retaliation and responded to any protected criticism with disciplinary action has some probative value on the issue of the employer's likely motivation here." <u>Morris v. Washington Metro. Area Transit Auth.</u>, 702 F.2d 1037, 1046 (D.C. Cir. 1983) (citing Rules 401, 404(b), Fed. R. Evid.); <u>accord</u> <u>Jones v. Washington Metro. Area Transit Auth.</u>, 946 F. Supp. 1011, 1019 (D.D.C. 1996) ("the fact that WMATA may have been engaged in widespread discrimination based upon sex, age, race or any other impermissible factor would certainly be relevant to its intent or motive to retaliate against those who complained of such discrimination").  "Evidence of sexual harassment directed at other women, derogatory remarks about women made by men outside presence of women, and incidents that occurred prior to period to which Title VII and New Jersey law against discrimination (NJLAD) liability may attach under statute of limitations was admissible in female police officer's sexual harassment action since it was crucial to jury's evaluation of work environment, allowed jury to gain insight into motives, attitudes, and intentions of defendants, gave jury opportunity to evaluate adequacy of management's response to officer's harassment complaints, and provided

jury with sense of whether events that took place during statutory period were accidental or part of overall pattern." Hurley v. Atl. City Police Dep't, 933 F. Supp. 396 (D.N.J. 1996), aff'd, 174 F.3d 95 (3d Cir. 1999).

      C.     Part C of the Court's Order allows Plaintiff to present witnesses who have relevant evidence about the work environment to which Lisa Barbounis was subjected during her employment.  The Court's Order in Part C suggests that Defendants are entitled to the affirmative defense promulgated in the Farragher-Ellerth Supreme Court cases.  Plaintiff would like to make the Court aware that Plaintiff does not believe that the Farragher-Ellerth affirmative defense is appropriate in this case.  There are two reasons why this affirmative defense should not be considered by the jury.

      The first reason is that all of the decision-makers and parties in this case, are so high up in the organization that they must be considered proxies for Middle East Forum.  Defendant, Greg Roman is the Chief Operating Officer, the Director, and the corporate secretary.  Each of these three positions independently create proxy liability for Defendant, Greg Roman's conduct.  Taken together, there can be no reasonably argument that Defendant, Greg Roman is a proxy and that the alter-ego theory of liability promulgated by the United States Supreme Court in Farragher applies.

      The second reason that the affirmative defense should not go to the jury is because this is a tangible employment action case.  Lisa Barbounis was Defendant, Greg Roman's personal assistant.  When it was decided that Defendant, Greg Roman could not longer visit the Philadelphia office, Lisa Barbounis had no more responsibilities.  To avoid terminating Lisa Barbounis, Defendant, Daniel Pipes reassigned Lisa Barbounis to an entirely different job with a lot more responsibility.  Lisa Barbounis did not receive an increase in her annual income.  Lisa

Barbounis did receive a decrease in her benefits and namely her health benefits.  This is the definition of a tangible employment action case, which precludes application of the Farragher-Ellerth defense.

### 2.  DEFENDANTS' MOTION IN LIMINE TO PRECLUDE REFERENCES TO WEAPONS (ECF 152).

Plaintiff is simply tracking the Court's Order (Document 173).  Plaintiff is not commenting either way on Part 2 of the Court's Order.

### 3.  DEFENDANTS' MOTION IN LIMINE TO PRECLUDE CERTAIN POST NOVEMBER 5, 2018, TESTIMONY (ECF 153).

Part 3 of the Court's Order (Document 173) may also create an issue that Plaintiff suggests would be better clarified before the trial.  The Court's Order seems to draw a temporal line in the sand on November 5, 2018, and states that Plaintiff cannot introduce evidence in the form of "testimony about harassment or other behavior directed against anyone other than Ms. Barbounis after November 5, 2018, including but not limited to Ms. Brady."   Plaintiff seeks clarification, and possibly modification and reconsideration with regard to Defendants ongoing efforts to respond to Lisa Barbounis' reports of discrimination and harassment in the workplace. Again, this goes to the corrective action that Defendants claim they took in response to reports of sexual harassment.  Defendants claim that what they did in November 2018, and then in March 2019 was sufficient.  In fact, Defendants believe and will certainly tell the jury, that what Defendants did in November 2018 and March 2019, was so sufficient, that it warrants a verdict in Defendants' favor.  Therefore, the so-called "corrective action" that Defendants took in November 2018 and March 2019, is what this case is about.  The corrective action that

Defendants took includes several promises that Defendant, Daniel Pipes made.  These promises include the following:

1. "Furthermore, you agree that there will be no retaliation against these three employees whatsoever, now or in the future"  Bates Stamped MEF 0000001, letter from Pipes to Roman dated November 2, 2018.

2. "You acknowledge that if there is a future case of a credible unwanted sexual advance by you toward a female staffer under your supervision, you will be fired immediately." Id.

3. That Defendant Roman would be on a "probationary status" until December 2019. See Defendant's Production generally. Bates Stamped MEF 0000031, April 23, 2019, email to Daniel Pipes.

These are just some of the promises that Defendant, Daniel Pipe made to the female staff in 2018 and 2019.  Plaintiff does not seek to litigate other women's claims of sexual harassment in this case.  Plaintiff plans to confine her case to the harassment that Plaintiff directly experienced. Notwithstanding, Plaintiff has a right to show the jury that the so-called corrective action that Defendant, Pipes claims to have taken was not sufficient, and was in fact a farce, or a sham.  See Hurley v. Atl. City Police Dep't, 174 F.3d 95, 111 (3d Cir. 1999) ("The challenged evidence creates a basis for an inference that Hurley was targeted for abuse because she was a woman. It also gives reason to infer that the ACPD knew or should have known not only what was happening to its female officers but also, and most importantly, that the written sexual harassment policy was ineffective, and patently so. Indeed, it is hard to imagine evidence more relevant to the issue of whether a sexual harassment policy was generally effective than evidence that male officers did not respect it and that female officers were not protected by it.").

Plaintiff has a right to present as evidence information that contradicts or impeaches the very promises that Defendant, Pipes made to MEF's female staff in 2018 and 2019, including Lisa Barbounis. This type of argument may require Plaintiff to show the jury that Defendants were aware that female staff both before and after November 2018 were complaining to Defendant Daniel Pipes about Defendant, Greg Roman, and that Defendant, Daniel Pipes refused to take any action to correct or ameliorate the ongoing reports. Accordingly, Plaintiff asks the Court for clarification so that it is understood that the Court's Order (Document 173) will not preclude Plaintiff from presenting as evidence information which challenges the sufficiency and credibility of Defendants' so-called "corrective action" in 2018 and 2019.

4. **DEFENDANTS' MOTION IN LIMINE TO PRECLUDE EVIDENCE ABOUT OTHER LITIGATION.**

Plaintiff is simply tracking the Court's Order (Document 173). Plaintiff is not commenting either way on Part 2 of the Court's Order.

5. **DEFENDANTS' MOTION IN LIMINE TO ADMIT EVIDENCE OF ALTERNATIVE SOURCES OF PLAINTIFF'S EMOTIONAL DISTRESS (ECF NO. 155).**

Plaintiff asks for reconsideration of the following issues that Plaintiff suggests do not fall within the category of information appropriate to be considered by the jury as alternative theories of emotional distress. First is the January 6, 2021, capital riots. There is nothing in the record of evidence to suggest that this is anything beyond a mere day-to-day issue that Lisa Barbounis experienced. The only reason this entered Defendants' base of knowledge is because Lisa Barbounis happened to sit for a deposition within a day of being present at the Capital on January 6, 2021. The morning of January 8, 2021, Lisa Barbounis testified in advance of Marnie O'Brien's trial. Lisa Barbounis had only one day (January 7) between being present at the riots

and giving testimony.  Accordingly, she was still a bit wound up when she testified that morning.

Plaintiff therefore suggests that it might be more misleading than probative for Defendants to

suggest that this is the "actual cause" of Plaintiff's emotional distress.  Moreover, Defendants

have not asked an expert to talk with Lisa Barbounis after January 6, 2021.  Accordingly, the

only way for Defendants to raise this issue is through cross-examination.  Plaintiff therefore asks

the Court to reconsider allowing Defendants to cross Plaintiff on this issue.

      The Court also writes that Defendants can go into Plaintiff's "divorce."  Plaintiff has

never been divorced and there is nothing in the record of evidence to suggest that Plaintiff's

issues with her husband are anything beyond mere day-to-day garden variety husband and wife

issues.

      Finally, the Court has ruled that Defendants can suggest to the jury that Plaintiff's motive

for this case is some other person's IRS tax issues.  In order to learn about the tax issues of Vasili

Barbounis, Defendants seem to have gotten their hands on correspondence addressed to Vasili

Barbounis.  Lisa Barbounis does not know how Defendants intercepted her husband's mail,

however, Defendants do not have evidence that Lisa Barbounis ever experienced tax issues.  In

fact she did not.  Lisa Barbounis is a w2 employee who pays her taxes as she earns income.

Defendants are making an extremely misleading argument.  Moreover, it is counsel's

understanding that Vasili Barbounis began a payment plan years ago, when this was an issue,

and that today, Vasili Barbounis is all but square with the IRS.  Accordingly, Defendants are

asking the Court to allow Defendants to raise a motivation argument using debt of another

person, other than Plaintiff.  Defendants are trying to make this argument when the issue is all

but resolved.  This is not probative evidence.  At the least, Plaintiff believes that Defendants

should be required to offer up the basis for this belief other than the misinterpretation of mail that seems to have been improperly obtained, almost 4 years ago.

## 6. MS. BARBOUNIS'S DAUBERT MOTION TO EXCLUDE OPINION TESTIMONY OF DR. BARBARA ZIV (ECF NO. 156).

Plaintiff is simply tracking the Court's Order (Document 173).  Plaintiff is not commenting either way on Part 2 of the Court's Order.

## 7. PLAINTIFF'S OMNIBUS MOTION IN LIMIE

**A.** Plaintiff is simply tracking the Court's Order.
**B.** Plaintiff is simply tracking the Court's Order.
**C.** Plaintiff is simply tracking the Court's Order.

**D.**     Part D of the Court's Order states that "Defendants may introduce evidence that Ms. Barbounis's job performance at MEF deteriorated over time."  Plaintiff asks the Court for clarification and possibly modification or reconsideration in that this evidence has zero probative value as to whether Defendant, Greg Roman subjected Plaintiff to severe and pervasive sexual harassment.  A review of the Third Circuit jury instructions for hostile work environment claims confirms that Plaintiff's job performance is not relevant to any of the elements the jury must decide.  Moreover, Defendants claim that it is an undisputed fact that in March 2019, just months before Plaintiff's employment with MEF ended,  Plaintiff received a bonus for a "job well done."  See Defendant's Statement of Facts (Document 109-3) ("In March 2019, the Forum paid a second round of discretionary performance bonuses to several in-office employees, including Plaintiff, who received $6,000.  These bonuses were for "a job well done" and increased work responsibilities, and had nothing to do with any allegations against Roman.").  Plaintiff suggests

that there is no probative value coupled with a high likelihood that the information will be

unfairly prejudicial.  Therefore, Plaintiff asks that Defendants should not be permitted to

introduce as evidence information about Plaintiff's job performance.

     **E.**  Plaintiff is simply tracking the Court's Order.
     **F.**  Plaintiff is simply tracking the Court's Order.


     G.      The Court denied Plaintiff's Motion in Limine "with respect to evidence

concerning alternative sources of stress that Ms. Barbounis experienced, including recordings of

phone calls with Jasmin Bishop and financial stresses that Ms. Barbounis experienced."

(Document 173).  Plaintiff asks the Court to be aware that these two issues are very different and

have no overlapping relationship.   Whether Plaintiff had financial issues is one thing.  Phone

calls and a recorded argument that Lisa Barbounis had with Jasmin Bishop is something very

different.  There is absolutely nothing in the record of evidence to suggest that Lisa Barbounis

suffered from emotional distress because of a phone call with some guy's ex-girlfriend, Jazmin

Bishop.  Lisa Barbounis barely known Jazmin Bishop.  They are not friends.  Lisa Barbounis

never suffered from emotional distress due to Jazmin Bishop, and Defendants only seek to

introduce this information because it is decidedly and unfairly prejudicial.  Plaintiff pleads with

the Court to at least listen to the recording in question before deciding that Defendants can play

the recording for the jury.  It is a recording that has no probative value to this case.  The recorded

call does not demonstrate emotional distress.  The call is a petty argument between two women.

One of the two women, Jazmin Bishop, has no connection to this case.   During the call, Lisa

Barbounis makes several highly inflammatory comments about abortions, which is indisputably

one of the most divisive topics in American politics today.  ***Lisa Barbounis essentially calls any***

***women who underwent an abortion procedure a "baby-killer."  Counsel is paraphrasing,***

*however, any juror who hears this recording will essentially believe that Plaintiff is saying that the juror murders babies*.  Plaintiff suggests that it would be impossible for any juror who had an abortion to put aside these highly inflammatory, and insulting statements that Lisa Barbounis made and fairly decide this case.  If evidence like this is permitted to go to the jury, than no juror who had an abortion or has a loved one who had an abortion should be permitted to sit and decide this case.  This may require a pro-life jury.  Defendants will certainly object to an all-pro-life jury.   Plaintiff suggests that there has to be an alternative so that Defendants can offer the information they seek, and make the arguments the Court deems appropriate, without feeding poison to the jury.   After the several years of litigation on both sides, this case should not turn on a heated argument between Plaintiff and another women who has no connection to the facts of this case.  Even the subject matter of the recorded conversation has no connection to this case.  It would be very easy to preclude this recorded conversation without damaging either side's arguments.  Defendants can make all the arguments they need without introducing statements to the jury where one of the parties states that anyone who had an abortion murders babies.   The Court's Order discusses the arguments with Jazmin Bishop in the same paragraph that addressed Plaintiff's possible financial issues.  These two issues are not connected.  Jazmin Bishop and Daniel Thomas had a baby together.  Therefore, Jazmin Bishop became angry when Daniel Thomas began paying attention to Lisa Barbounis.   And because this conversation deals only with petty jealousy entirely unrelated to this case, Plaintiff suggests the recording should not be played for the jury.   It is difficult to conceive of any situation where jurors could be called baby-murderers and not have it be unfairly prejudicial.

I.     **CONCLUSION**

For the reasons above, Plaintff requests the Court consider the above issues with respect to the

Court Order on the parties' Motions in Limine (Document 173).

**DEREK SMITH LAW GROUP, PLLC**

BY:__/s/_Seth D. Carson_____
        SETH D. CARSON
        1835 Market Street
        Suite 2950
        Philadelphia, PA 19103
        Phone: 215.391.4790
        Facsimile: 215.893.5288
        seth@dereksmithlaw.com

DATED:  December 3, 2021

## CERTIFICATE OF SERVICE

I hereby certify that, on June 9, 2020, a true and correct copy of the foregoing Motion was filed and served electronically through the Court's CM/ECF system.

Sidney L. Gold sgold@discrimlaw
Sidney L. Gold & Associates P.C.
1835 Market Street, Suite 515
Philadelphia, PA  19103
Tel: (215) 569-1999
Fax: (215) 569-3870
Counsel for  The Middle East Forum

Jonathan Cavalier
COZEN O'CONNOR
One Liberty Place Suite 2800
1650 Market Street
Philadelphia, PA 19103
P: 215.665.2000
F: 215.665.2013
jcavalier@cozen.com

**DEREK SMITH LAW GROUP, PLLC**

By:   _____/s/ Seth D. Carson_____
       Seth D. Carson, Esquire
       1835 Market Street, Suite 2950
       Philadelphia, Pennsylvania 19103
       Phone: 215.391.4790
       Email: seth@dereksmithlaw.com

DATED:  December 3, 2021